## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH, a/k/a "Big Russ McCullough," RYAN SAKODA, and MATTHEW R. WIESE, a/k/a "Luther Reigns," individually and on behalf of all others similarly situated,** | **LEAD CONSOLIDATED CASE CIVIL ACTION NO.**<br><br>**3:15-cv-01074-VLB** |
| **Plaintiffs,** | |
| **v.** | **August 6, 2015** |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | |
| **Defendant.** | |

### ANSWER TO THE ORDER TO SHOW CAUSE WHY SUCH ACTIONS AGAINST WWE SHOULD CONTINUE TO BE FILED IN OTHER JURISDICTIONS

Plaintiffs' Counsel hereby submit their Answer to the Order to Show Cause why further cases against WWE should be permitted to be filed in forums other than this Court, and responds that the enforceability and applicability of the forum selection clause contained in an alleged minority of contracts is a question of fact and law to be determined based upon the unique facts and circumstances presented at such time as a future injured wrestler brings an action against WWE, especially given the fact only one court has ruled on the enforceability of the forum selection clause.

### INTRODUCTION

A plaintiff can bring an action in their home jurisdiction, and the action should remain in that jurisdiction absent compelling reasons to the alternative.

**1**

The plaintiffs are severely injured and not able to pay to travel to Connecticut (in some cases from the West Coast). It would be impossible to assess every injured wrestler's rights and whether each individual wrestler is bound by a forum selection clause provision in a booking contract they may or may not have signed with WWE.

Plaintiffs' Counsel have alleged counts of fraud and negligence which alleged claims potentially violate individual states' public policy considerations, unwaivable state rights and which claims Plaintiffs' Counsel believe would invalidate WWE's forum selection clause. To prevent future plaintiffs from bringing claims in their selected forums would violate their Fourteenth Amendment due process rights since the validity of the forum selection clause is determined by the forum state, not by the forum contained in the forum selection clause. Therefore, to attempt to deny future plaintiffs' rights from filing in their home jurisdictions or jurisdictions where they were injured would fly in the face of justice and the fundamental civil procedure concepts established under the *Erie* Doctrine.

There have been three (3) related cases filed by injured wrestlers against WWE and two (2) wrongful death actions brought against WWE by some of Plaintiffs' Counsel. Of these five (5) cases, there has been only one ruling enforcing the forum selection clause provision in WWE's booking contract for one plaintiff. The issue of enforceability is still very much in dispute, as is the very existence of forum selection clauses in the majority of potential plaintiffs' contracts with WWE.

These wrestlers and plaintiffs have severe medical conditions resulting from their wrestling careers with WWE.  WWE has left many of them destitute, injured, and alone.[1]  They have no health insurance, no care and treatment, and no opportunity to protect themselves from the abuse of a billion dollar company who has for years taken advantage of these wrestlers' talents while attempting to insulate themselves from liability from the severe neurological injuries the WWE knew their wrestlers were continuously sustaining.[2]

The wrestlers themselves relied entirely on WWE's superior knowledge, care, and treatment since they did not have health insurance and could not afford personal medical care.  WWE knew this, and paid in full for any injuries sustained while on the job the WWE believed would affect the wrestlers' performances.  The WWE would assess their wrestlers before and after performances with the producers, agents, and medical personnel always watching the wrestlers.  Even the executives including Vince McMahon, Stephanie McMahon, and John Laurinaitis were very much aware of the conditions of the wrestlers.  Vince McMahon was so personally involved with wrestlers' performances and moves that protocol required his personal permission for the allowance of specific moves.

---

[1] Which the Head of Talent Relations, Stephanie Levesque, admits she is ignorant about. *See* "Interview of: Stephanie McMahon Levesque", <u>Committee on Oversight and Government Reform, U.S. House of Representatives, Washington, D.C.</u>, p. 62 (December 14, 2007).

[2] Statement by Stephanie Levesque regarding wrestlers health insurance:
     "Q: Do you provide health insurance to your wrestlers, your talent?
     A: No, we do not."
<u>Committee on Oversight and Government Reform, U.S. House of Representatives, Washington, D.C.</u>, p. 130 (December 14, 2007).

**3**

Although WWE has and continues to attempt to hide behind a veil of ignorance and lack of responsibility, WWE has throughout its history taken up the responsibility for the health and well-being of its wrestlers, but has intentionally disregarded any acknowledgment of long-term care and treatment for the severe, chronic, and latent injuries including CTE, concussions, and sub-concussive injuries.[3]   Despite the duty undertaken by WWE and its medical personnel, WWE refused to diagnose, treat, and rehabilitate its wrestlers who suffered repeated concussions and sub-concussive injuries.   In fact, WWE repeatedly asserted the complete absence of concussive injuries in their wrestlers despite the overwhelming evidence to the contrary.[4]   Such negligent and fraudulent acts and omissions have resulted in the severe and life-long, permanent injuries of hundreds of WWE wrestlers.   These wrestlers are neurologically impaired and physically disabled.   Many cannot work or maintain relationships.   Many have difficulty even leaving their homes.   To enforce a forum selection clause carte blanche against all wrestlers, regardless of whether they even signed a contract containing one, requiring these permanently physically and neurologically disabled wrestlers, each with their own individual conditions and specific contracts to fight to protect their rights in a foreign forum would be unconscionable and fly in the face of justice.

---

[3] *See* <u>Committee on Oversight and Government Reform, U.S. House of Representatives, Washington, D.C.</u>, p. 114 (December 14, 2007):

        "Q: Have ringside doctors or treating physicians ever diagnosed a wrestler with a concussion and reported this to WWE?
        A: That I am aware of, no."

[4] *Id.* at 118:

        "Q: So, if I understand you correctly, since the enactment of the wellness policy, WWE has documented no concussions?
        A: As far as I know, as far as I was told -- .... no."

## II.    PROCEDURAL HISTORY

### A. *Haynes III v. World Wrestling Entertainment, Inc.*, 3:14-cv-01689-ST

Plaintiff's Counsel filed Billy Jack Haynes, III's action against WWE in October, 2014 in Portland, Oregon more than two months before the second filing.  Mr. Haynes is a lifelong Oregon resident who was recruited and performed for WWE in Oregon. Oregon was therefore the appropriate forum to file in.  Mr. Haynes never had a formal, written contract with WWE, nor *any* forum selection clause or choice of law provision.  WWE admits as much.  Plaintiff's Counsel appropriately filed in Mr. Haynes' home jurisdiction, where he had and is suffering injury.

In a blatant attempt at bullying Plaintiff's Counsel and consistent with the sharp practice by the defense, WWE's Counsel Mr. McDevitt informed Plaintiff's Counsel *in the very first phone conversation* WWE would be filing Rule 11 sanctions against Plaintiff's Counsel.  Such document was sent to Plaintiff's Counsel on March 24, 2015 accusing Mr. Kyros of criminal conduct (barratry) and incorrectly stating Mr. Kyros never represented NFL players.  This was just the beginning of Mr. McDevitt's abusive and obstreperous conduct more focused on creating a script for a WWE performance than on the fair and collegiate administration of justice.[5]

---

[5] An example of Mr. McDevitt's unprofessional behavior are his false statements to the media outlet TMZ.com, where he disparaged and mischaracterized plaintiff's counsel and the injured wrestlers themselves: Per the reporter: "the guys suing the WWE over alleged brain injuries are a bunch of 'nobodies' brainwashed by lawyers to believe they can score a quick buck. Mr. McDevitt is then quoted stating that the wrestlers only wrestled for a short time and were "being targeted by attorneys who tell them there's hundreds of thousands of dollars they can make by joining a class action suit like this". Mr. McDevitt continued, "We know these claims are fraudulent, and will fight them." "WWE Brain Injury Lawsuit Is Nothing But a Cash Grab", TMZ.com,

WWE asserted Mr. Haynes' claims were time-barred under Oregon law, challenged the jurisdiction of the Oregon court over WWE, and sought a transfer to Connecticut for lack of jurisdiction.  To save time and expense (a concept Mr. McDevitt incessantly complains of despite his aptitude for theatrics and filing of excessive and multiple motions for declaratory judgments and sanctions), Mr. McDevitt refused to bifurcate the transfer and jurisdictional arguments, allowing the transfer motion to be ruled on first before the substantive Motion to Dismiss.  Both motions were required to be briefed simultaneously.

Having fully briefed and filed the Motion to Dismiss and Motion to Transfer under Oregon law, both parties were scheduled and prepared for Oral Argument in Portland, Oregon on June 30, 2015.  On the afternoon of Thursday, June 25, the court issued a Transfer order.  This Transfer order _is not based on the applicability of any forum selection clause_.  Obviously, in Mr. Haynes' case, the applicability of a forum selection clause is moot because Mr. Haynes' never signed a formal contract with WWE and never had a forum selection clause.

Plaintiffs' Counsel believed the existence of the clause in absent class members' contracts and the lack of the clause in Mr. Haynes' agreement with WWE were not factors rightly weighed and appealed the ruling.  The ruling was affirmed July 27, 2015.

WWE's Counsel has repeatedly touted the impropriety of Plaintiffs' Counsel's filings, and yet the evidence does not indicate any improper forum shopping as Plaintiff filed in the disabled Mr. Haynes' home state, a state with

---

http://www.tmz.com/2015/04/10/www-brain-damage-injury-lawsuit-scam/, (April 10, 2015), *last visited* August 5, 2015.

personal and subject matter jurisdiction, and for a plaintiff without any forum selection clause. In fact the WWE itself asserted that Oregon law applies to Haynes both in its Motion to Dismiss and Motion to Transfer.  Indeed, WWE's Counsel used the Oregon Statute of Repose and Oregon law as its substantive defense, and wrote "that "[t]his Court's [Oregon] familiarity with Oregon law strongly weighs in favor of this Court deciding WWE's Motion to Dismiss as opposed to a Connecticut court less versed in the Oregon law Issues." See Motion to Transfer Venue and Supporting Memorandum at 2 n. 1 (Dkt. 47 Mar. 31, 2015). Thus the WWE's attempt to have the Oregon court decide Rule 12 motions while simultaneously trying to transfer the matter to its home district is an obvious example of forum shopping certainly more obvious than the initiation of a lawsuit in Oregon by a lifelong Oregon resident.

Further following the transfer of the Haynes case from Oregon, the WWE has not (yet) withdrawn its motion to dismiss the action based on Oregon law. Instead of withdrawing the motion, the WWE filed a declaratory judgment action (itself procedurally strange) against four other wrestlers which contained a myriad of allegations regarding Haynes (including calling him a "drug mule"), yet curiously argued that all claims should be governed by Connecticut law. So procedurally, the WWE has left the court with the procedural quagmire created by the WWE of addressing this Order to Show Cause and the WWE's declaratory judgment action seeking application of Connecticut law against all wrestlers, while at the same time being asked by the WWE to determine the viability of the Haynes action pursuant to Oregon law.

**7**

**B.** *Singleton, et al. v. World Wrestling Entertainment, Inc.*, 3:15-cv-00425-VLB

Filed in January, 2015 in the Eastern District of Pennsylvania, both plaintiffs Evan Singleton and Vito LoGrasso are residents of Pennsylvania and both suffered disabling injuries.  Mr. LoGrasso first wrestled for WWE in 1990 and suffered repeated brutal and sustained beatings to his head resulting from the frequent addition of choreographed "heat" written into his scripts by WWE's Creative department, including by the McMahon family themselves.  Mr. Lograsso ended his career with WWE in 2007 and is disabled, unemployed, and has been diagnosed with cervical dysfunctia, depression, recurring headaches, and is deaf.

Mr. Singleton signed with WWE immediately after high school and was given no realistic opportunity to negotiate terms, but was told the contract was "take it or leave it".  He did not have a lawyer representing him.  After being instructed to perform numerous dangerous moves without the proper training and without experienced wrestlers performing the dangerous moves against him, Mr. Singleton was grabbed by the neck and thrown to the mat with excessive force suffering a blow to the head and causing brain damage which WWE refused to acknowledge for a critically long period of time.  Just one more example of WWE's attempted ignorance through blind refusal to acknowledge the severe and extreme injuries sustained by their wrestlers, Mr. Singleton required immediate medical attention to treat his life-threatening brain damage.  Instead, WWE employees sent Mr. Singleton home where his condition worsened.  Numerous WWE physicians downplayed Mr. Singleton's injuries, urging "rest".  Mr.

8

Singleton had in fact suffered a traumatic brain injury.  At the age of 22, Mr. Singleton has been diagnosed almost completely disabled.

Despite the permanently disabled nature of both Mr. Singleton and Mr. LoGrasso, WWE refused to litigate the case in the disabled wrestlers' home state of Pennsylvania resulting from the forum selection clause in Mr. Singleton's contract and in a portion of Mr. LoGrasso's contracts with WWE.  Plaintiffs' Counsel agreed to a transfer to Connecticut while reserving the argument for transfer to prevent WWE's Counsel from twisting the procedural history into the appearance that Plaintiff was acquiescing the enforceability of the forum selection clause.  Despite the clear language in the motion to the Pennsylvania court reserving the argument against transfer, WWE in their gamesmanship filed a motion after the agreement to transfer in order to create the judicial record they wanted.  A letter dated March 19 and attached hereto as Exhibit A and filed with the Pennsylvania court by the defense was in fact a substantive brief on the forum selection clause.  The letter itself acknowledges Plaintiff agreed to the transfer while reserving rights to the argument.

> Prior to the filing of the formal motion, counsel for plaintiffs agree that transfer to Connecticut was appropriate in correspondence attached to our motion, but did not appear to agree that transfer was due to forum selection clause.

Mr. Pogust, an attorney representing Singleton and LoGrasso responded to WWE's letter to the court which is attached as Exhibit B with the following:

> Please note that although plaintiffs do not agree with all the representations set forth in counsel's letter dated March 19, 2015, plaintiffs will not be opposing defendant's motion to transfer this case to the district of Connecticut.

The Pennsylvania court made no ruling on either the applicability or enforceability of the forum selection clause.  The court did not issue a transfer order based on the forum selection clause, despite WWE's attempts to distort the procedural history.  In fact, WWE characterized the transfer as:

> After the WWE's counsel notified Kyros that both Singleton and LoGrasso had signed forum selection clauses, Kyros refused to withdraw the improperly-filed lawsuit and refile it in Connecticut. WWE then filed a motion to enforce the forum selection clauses and to transfer, and neither he nor any of the cadre of lawyers offered any justification for not honoring the forum selection clause.  The order transferring the case to this court found that plaintiffs "agree[d] the District of Connecticut is an appropriate forum.
> Complaint, *World Wrestling Entertainment, Inc. v. Windham, et al.*, No. 3:15-cv-00994, p. 11-12.

In a tactful revision of the procedural history WWE's Creative department would be proud of, WWE's Counsel created a false record of the filings and falsely implied that the court somehow ruled on the motion.  The reality is WWE's motion to enforce the forum selection clause and to transfer venue was filed after Plaintiff agreed to a non-substantive transfer while reserving the rights to such substantive arguments.  The reality is WWE's motion to transfer was never ruled on in Pennsylvania, and no motion to enforce the forum selection clauses was ever ruled on in Pennsylvania.  The reality is Plaintiffs' Counsel never engaged in improper procedure, and WWE's Counsel is merely engaging in script-writing through their motions.  In concurrence, the *Singleton, et al.* case was transferred to Connecticut on January 1, 2015 absent any order on the applicability or enforceability of the forum selection clause.

**c.** *Russ McCullough, et al. v. World Wrestling Entertainment, Inc.,* 3:15-cv-01074-VLB

In April 2015, three wrestlers alleging they suffered serious injury from their tenure with WWE filed an action against WWE in their home state of California with California counsel, Audet & Partners LLP.  Suddenly, WWE shifted their defense away from forum selection clause applicability and enforceability to a smear campaign against Mr. Kyros and the other firms representing Mr. Singleton, Mr. LoGrasso, and Mr. Haynes accusing them of "concealing their identity on the case".

In a sleight of hand, Mr. McDevitt feigned indignation and rebuke on Mr. Kyros for referring residents of California to a reputable and well-qualified California law firm to distract from the substantive issues in all the cases and to buttress WWE's twisted argument that because the lawyers on *Singleton, et al.* agreed to a transfer to Connecticut from Pennsylvania, entirely different counsel should agree to a transfer to Connecticut from California and because Mr. Kyros did not order the transfer he must be doing something improper.

WWE filed a transfer motion which was fully briefed with good faith arguments advanced establishing why three injured men who reside across the country should not be bound by the non-negotiated clauses requiring them to travel to Connecticut.  On July 13, 2015, the California court agreed with WWE for the first time in any case, ruling the clauses were enforceable under California law; albeit with questions left unresolved with respect to governing law.

In addition to the three cases above, there are two other cases filed by some of Plaintiffs' Counsel in two other jurisdictions.  Plaintiffs' Counsel believes

**11**

these cases are distinct, present different issues, and are not before the Connecticut Court at this time.  Procedurally, both cases predate the July ruling in *McCullough*.

D. *Cassandra Frazier v. World Wrestling Entertainment, Inc.*, 2:15-cv-02198-JPM-cgc

The widow of Nelson Frazier, Jr. brought a wrongful death action against WWE on February 18, 2015, the one year anniversary of Nelson Frazier, Jr.'s death.  Mr. Frazier was one of the most storied and prolific WWE performers and ranks in the top 100 most all time appearances.  One of only a few African American performers for WWE, he was billed as a 500 pound monster, in which some of his roles appear to have been exploitative and in poor taste.  Per the filing, WWE required him to wrestle hundreds of nights per year with no rest where he allegedly sustained injuries that led to his death at the age of 43.  WWE allegedly provided no health care to him during his tenure with WWE or after his retirement.

Despite the tragedy of Nelson Frazier, Jr.'s death, and the objective reasonableness of bringing such a suit against WWE, and instead of merely offering condolences to the family of Nelson Frazier, Jr., Mr. McDevitt replied to the media that he would likely "seek sanctions" against Mr. Kyros for bringing "frivolous lawsuits".[6]  Mr. McDevitt continued, "It's an embarrassment to be a lawyer sometimes. It's ridiculous that someone can...try to blame someone because a gentleman with a weight problem died of a heart attack in the shower

---

[6] *See* **Boston Herald**, *available at*
http://www.bostonherald.com/news_opinion/columnists/2015/03/full_court_press_wwe_mass_law
yer_in_legal_cage_match, *last visited* August 5, 2015.

eight years after he last performed. It's ridiculous to try and blame someone for that." *Id.* These statements by WWE's Counsel encapsulates their view that latent injuries arising from damage occurring while wrestling for WWE is not their problem. They refuse to accept responsibility for any type of latent injury resulting from the abusive and dangerous workplace they fostered and created, yet concealed this reality from their employees.

Plaintiffs' Counsel asserts that Tennessee is the most appropriate forum for this case, and the issue has been fully briefed, filed, and argued as to why WWE's forum selection clause should not govern his widow's claims under Tennessee and Connecticut law. The Tennessee court has not yet ruled on WWE's transfer motion.

E. *James v. World Wrestling Entertainment, Inc.*, 3:15-cv-02146-L

This wrongful death action was filed on behalf of Michelle James, the mother of two minor children whose father, Matt Osborne, died June 28, 2013 allegedly due to injuries and drug addiction resulting from his WWE career. The case was filed in Texas where Mr. Osborne resided at the time of his death. WWE, not surprisingly at this point, but in violation of Texas local rules, has already served Rule 11 sanctions against Plaintiffs' Counsel in this matter. The case was filed June 26, 2015, two weeks before the *McCullough* ruling and three days before the two year Statute of Limitations in Texas would have run. Yet Mr. McDevitt seems to believe protecting clients' rights is sanctionable under Rule 11.[7]

---

[7] Further, despite Mr. McDevitt's theatrics, this case resembles the wrongful death action filed by the Estate of Curtis Whitley, an NFL player whom died of a drug overdose in 2008 allegedly from

WWE's Counsel emphasizes the *Haynes'* transfer order was issued one day before *James* was filed in Texas.  However, the transfer order did not determine the validity of the forum selection clause in Texas, nor would it have been reasonable to presume the requirement that we file a Texas wrongful death action in Connecticut because a transfer order from Oregon was issued and before Plaintiffs' Counsel's opportunity to appeal the transfer order.

The *James* case presents unique issues yet to be decided – namely, does a forum selection clause bind the minor children of a decedent under governing law.  A related issue (does such a clause bind a widow) at the time of this writing is still pending in federal court in the Western District of Tennessee.

Both this case and the *Frazier* case are examples why such a purported forum selection clause cannot be _the_ determining factor in deciding the jurisdiction for future filings.  Each case is unique, with distinct parties, sets of facts, and specific contracts and agreements.

F. *World Wrestling Entertainment, Inc.*, v. Windham, et al., 2:15-cv-00994

In similar language from the initially threatened Rule 11 sanctions in Oregon, Mr. McDevitt recycled most of his rambling, irrelevant allegations verbatim for use in a declaratory judgment action in this Court.  Plaintiffs' Counsel had sent letters of representation for four wrestlers to WWE and requested that their booking contracts be provided.  Instead of providing the booking contracts, WWE filed a declaratory judgment against the four wrestlers requesting the court to determine that Connecticut law governs the wrestlers'

---

complications of head injuries related to his NFL career. *See Camarena v. National Football League*, No. 3:12-cv-02290-EDL (ND CA 2012).

actions and that the Connecticut Statute of Limitations applies to their claims. WWE has since sought to identify other retained clients that may have claims in a John Doe action.

Plaintiffs' Counsel believes three of the wrestlers did not have booking contracts with WWE, a fact supported by the WWE's affidavits, the years they wrestlers performed for WWE, and the declaration by WWE that the forum selection clauses were introduced at a very late stage in the history of WWE – sometime around 1991 and fully integrated in 2000.

Two of the men are confined to wheelchairs, and none are residents of Connecticut.  Instead of working with Plaintiffs' Counsel in the interests of judicial economy, WWE choked-out any efforts at collegiality by filing this unusual lawsuit that ignored the fact some performers in question (Plaintiffs' Counsel believes three of the four) do not have contracts with forum selection clauses or choice of law provisions and are severely disabled.  Mr. McDevitt, in yet another attempt at scriptwriting, went to the media:

> "WWE attorney Jerry McDevitt said the company is being targeted by a lawyer who is improperly shopping lawsuits to former wrestlers across the country. He said the wrestlers are being convinced they can make a windfall similar to former NFL players who brought similar litigation. "Before this guys started trolling around looking for people to sue, we didn't have one person, none, claiming they had any kind of traumatic brain injuries, or dementia or ALS or any of the kind of stuff you seek associated with the NFL", McDevitt said.
> "WWE Seeking to Block Concussion – Related Lawsuits", AP News, http://bigstory.ap.org/article/8e0c9cb3f7d748b29fb1d4d595f9d7bd/wwe-seeking-block-concussion-related-lawsuits, *last visited August 5, 2015*

Ironically, a few paragraphs later Mr. Windham, one of the wrestlers targeted by WWE in its lawsuit tells the AP reporter that he is in fact diagnosed

**15**

with dementia.  Additionally, the statement by Mr. McDevitt is not true as WWE was investigated by Congress after its main star killed himself and his family.  His autopsy revealed he had CTE and brain trauma of the type found in many NFL players.  This diagnosis is something Mr. McDevitt continues to dispute.  WWE continues to intentionally hide behind feigned ignorance of the neurological diseases and illnesses their wrestlers and former wrestlers suffer from, and the causes that WWE promotes and allows to repeatedly occur.

WWE filed a lawsuit against its own disabled retired wrestlers with the goal to strip them of any state law claims where they reside and drag them into a Connecticut court that WWE believes will bar their claims by statute.  This case will be argued in coming months, but it should be noted to the Court WWE is committed to a policy of distorting the factual record regarding the serious injuries wrestlers sustained while performing for WWE, the procedural history and context of the cases, as well as the existence, prevalence, and effect of the forum selection clauses in wrestlers' booking agreements.

III.   THE EXISTENCE, PREVALENCE, AND EFFECT OF FORUM SELECTION CLAUSES IN PUTATIVE CLASS MEMBERS' BOOKING AGREEMENTS REMAIN A FACTUAL DISPUTE

WWE has continually asserted the prevalence of forum selection clauses in the booking contracts for WWE wrestlers and by extension, the plaintiffs in the above mentioned cases and potential future plaintiffs.  However, once again this is a distortion of the truth and an effort to conceal the facts.  In reality, many wrestlers were labeled as "jobbers" or "enhancement talent" that performed for WWE.  These jobbers had no booking contract with WWE and had no forum

16

selection clause.  These wrestlers could have performed just as often or more than wrestlers with contracts, and were employed for many decades as part of WWE's business model.  Jobbers would perform the same moves, and sustain the same injuries as any other wrestler performing for WWE.

In a declaration to the court in the *Haynes* case, Mr. Kyros stated: "I have spoken with many wrestlers who wrestled in WWF/WWE events after 1991 who state that they performed with no booking contract.  Additionally, I have reason to believe based on investigation that there are hundreds of such wrestlers.  These are wrestlers that are asked to perform in WWF/WWE events as 'jobbers' or 'enhancement talent' with no WWE booking agreements."

Plaintiffs' Counsel stands by the above assertions as factually accurate observations that WWE and most of the wrestling world knows to be true despite WWE's Counsel asserting that the entire declaration should be disregarded as "wholly conclusory- hearsay statements that summarize his alleged conversations with certain unidentified wrestlers." *See* Exhibit C attached hereto.

Besides the jobbers and enhancement talent that never even had a contract, numerous wrestlers before 1991 never had a forum selection clause or choice of law provision in their contracts, and even after 1991 it will be a question of fact to be determined during discovery whether one actually existed in each individual wrestler's booking contract or agreement as that wrestler comes forward and decides to bring an action against WWE for the injuries he or she sustained while performing for WWE.  Ultimately, it will be a question of fact

whether a forum selection clause actually exists.  If a forum selection clause does not exist, then the plaintiff's choice of forum must be given deference.

## IV.    ENFORCEABILITY OF FORUM SELECTION CLAUSE IS DETERMINED BY PLAINTIFF'S CHOSEN FORUM

"There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) (noting that the plaintiff's choice of forum is given greater deference when the plaintiff has chosen the home forum); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (SD NY 2009) (holding a plaintiff's choice of forum is entitled to substantial deference and that presumption is even stronger where the chosen forum is also the plaintiff's home).  However, where a contract with a valid forum selection clause exists, "the valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 581 (2013)

"Because *Atlantic Marine's* rule only applies in the context of a valid forum selection clause, district courts must consider arguments that the clause is invalid." *Bayol v. Zipcar, Inc.*, No. 14-cv-02483-THE, 2014 U.S. Dist. LEXIS 135953, 2014 WL 4793935 (N.D. Cal., Sept. 25, 2014).  Here, to properly assess whether a WWE forum selection clause would apply to any future plaintiff, first it must be determined whether the plaintiff actually has a forum selection clause in his or her contract with WWE.  *Atlantic Marine* makes clear that the strict calculus

**18**

removing plaintiff's convenience only applies with a "valid" forum selection clause.

Plaintiffs' Counsel asserts that many, if not most, of the injured wrestlers and potential putative class never signed an agreement with a forum selection clause as WWE themselves asserted the forum selection clause provision was only implemented in 1991 and was not fully implemented until 2000.  If no forum selection clause exists, then a plaintiff has the right to bring an action in a reasonable jurisdiction of his or her choosing.

In the event a forum selection clause actually exists in contract with a hypothetical future plaintiff, then the forum state that future plaintiff brings the action in must determine the validity of the forum selection clause based upon that individual state's public policy considerations and the unique facts of that case.  To attempt to analyze the overwhelming plethora of potential facts and circumstances which could give rise to the unenforceability or enforceability of the forum selection clause at this time with hypothetical future plaintiffs would be a task laden with futility.

"Accordingly, the Supreme Court's framework as set forth in *Atlantic Marine* requires a two-part analysis.  First, a district court must determine whether the forum selection clause is valid and enforceable." *Silvis v. Ambit Energy, LP, et al.*, No. 2:14-cv-05005-ER, Paper No. 30, p. 5 (ED PA, March 13, 2015) (stating forum selection clauses are "prima facie valid and should be enforced <u>unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances</u>") (emphasis added) (internal quotations omitted).  "In

other word, that the agreement is undermined by "fraud, undue influence, or overweening bargaining power". *Id.* at 5-6. The second step is considering whether "extraordinary circumstances" exist to find the forum selection clause unenforceable. *Atl. Marine*, 134 S. Ct. at 581.

Further, many states recognizing the two-part test post-*Atlantic Marine* analyzing the enforceability of a forum selection clause based upon state law and state considerations before applying the *Atlantic-Marine* modified 1404(a) test have assessed the validity of the forum selection clauses differently. *See Bayol v. Zipcar, Inc.*, No. 14-cv-02483-THE, 2014 U.S. Dist. LEXIS 135953, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (holding a court must apply *Bremen* to determine whether a forum selection clause is valid before engaging in *Atlantic Marine's* calculus); *Martinez v. Bloomberg LP*, 740 F.3d 211, 227-28 (applying Second Circuit's version of the *Bremen* test to determine forum selection clause validity); *Loeffelholz v. Ascension Health, Inc.*, No. 3:13-cv-1495-J-25JRK, 34 F. Supp. 3d 1187, 2014 U.S. Dist. LEXIS 106571 (M.D. Fla. June 25, 2014 (recognizing the applicability of the Eleventh Circuit's *Bremen* test post-*Atlantic Marine*).

What is constant, however, is the deference the forum state is provided in determining the enforceability of the forum selection clause based upon the individual state's public policy considerations. *See Saladworks, LLC v. Sottosanto Salads, LLC*, No. 13-3765, 2014 U.S. Dist. LEXIS 85525 (E.D. Pa. June 24, 2014) (examining public policy of the forum state to determine whether a forum-selection clause was valid for purposes of *Atlantic Marine*); *see also* (*Trevino v. Cooley Constructors, Inc.*, No. 5:13-cv-00924-DAE, 2014 U.S. Dist.

LEXIS 79154 (W.D. Tex. June 9, 2014); *Turfworthy, LLC v. Dr. Karl Wetekam & Co.*, No. 1:13-cv-390, 26 F. Supp. 3d 496, 2014 U.S. Dist. LEXIS 81930 (M.D.N.C. June 17, 2014); *TempWorks Software, Inc. v. Careers USA, Inc.*, No. 13-2750 (DSD/SER), 2014 U.S. Dist. LEXIS 69617 (D. Minn. May 21, 2014).

Depending on the forum state, the assessment would also critically analyze any choice of law provisions the future plaintiff might have with WWE and such clause can be found invalid just as a forum selection clause. *Bayol*, at 4-10.  In this case, it would be up to the forum state selected by the future plaintiff to determine whether Connecticut law should apply to this future plaintiff's claims and therefore it would be impossible at this juncture to determine whether Connecticut law would even govern over this future plaintiff.

The Supreme Court has not identified the test a court should apply to determine whether the forum selection clause is valid. *See Black Hills Truck & Trailer, Inc. v. MAC Trailer Mfg.*, No. 13-4113-KES, 2014 U.S. Dist. LEXIS 157968, at 10-11 (SD SD, Nov. 6, 2014) (noting, however, that the 'interest of justice' test for invalidating a forum selection clause was still appropriate as the public policy of the forum state must be part of the analysis).  Therefore, the reasonable forum state selected by the future plaintiff, in the event WWE chose to file a transfer motion to enforce a forum selection clause that may or may not exist, would be required to determine its validity based upon its own public policy considerations and interests of justice given the unique facts and circumstances in that case. *See Verdugo v. Alliantgroup, LP*, 237 Cal. App. 4th 141 (May 28, 2015) (establishing that an employer seeking to enforce a forum selection clause in an employment

**21**

agreement bore the burden to show that litigating wage and hour claims in the designated forum of Texas would not diminish in any way the employee's substantive rights under California law, which under the California Labor Code could not be waived).

Plaintiffs' Counsel asserts and has asserted in the cases described above that WWE has engaged in fraudulent and deceptive conduct intentionally designed to shroud the realities of concussion-based injuries from their wrestlers to prevent WWE wrestlers from receiving necessary medical care and treatment in order to maintain the grueling wrestling schedule required to keep up with WWE's Creative scripts necessitating wrestlers' performance on demand to increase WWE's massive profits from its entertainment empire.

WWE was aware of the dangers of receiving concussions and sub-concussive injuries, yet not only omitted any information on preventing concussions and the signs and symptoms of concussions from their wrestlers, but actively downplayed their occurrence in WWE and routinely incorrectly diagnosed their wrestlers with not having concussions and clearing their wrestlers to perform which resulted in multiple, compounding concussions leading to severe, permanent neurological injuries latent until years later where such significant symptoms as dementia, Alzheimer's, and death can and has occurred.

These claims and injuries suffered by wrestlers can certainly fit within the public policy considerations urging a plaintiff's selected forum court to find a forum selection clause and choice of law provision invalid as a result of WWE's

fraudulent and negligent conduct. *See Bayol*, at 10 (quoting the *Bremen* standard by stating "a forum selection clause is invalid if enforcement would contravene a strong public policy of the forum in which suit is brought") (internal quotations omitted); *see e.g. Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009) (finding a forum selection clause invalid where the clause was in violation of the forum state's antiwaiver provision, "as well as California's 'strong public policy' to 'protect consumers against unfair and deceptive business practices'").

It is not unreasonable to presume that a fully neurologically and physically disabled wrestler destitute as a result of his injuries sustained while employed by WWE decides to bring an action against WWE for those injuries in the disabled wrestler's home state.  To deny that severely injured and disabled wrestler the opportunity to argue against the enforcement of a hypothetical forum selection clause which would significantly burden him in his or her own state would be a gross miscarriage of justice and a violation of the disabled wrestler's Fourteenth Amendment due process rights.

Finally, where no class has been established or certified, no notice provision enacted, and no method of obtaining contact information for potential class members has been initiated, any attempt to limit future plaintiffs' rights at this point would be a clear violation of their due process rights under the Fourteenth Amendment. *See Phillips Petroleum, Co. v. Shutts*, 472 U.S. 797 (1985).

Therefore, in an action involving potentially hundreds of individuals each with unique circumstances, as in the instant cases involving numerous

individuals with distinct facts and specific contracts (or non-existent contracts), this Court should not prevent Plaintiffs' Counsel from filing actions in other jurisdictions as it is impossible to determine the actual validity of the forum selection clause at this time, or even the existence of the forum selection clause in current or potential plaintiffs' contracts without further discovery.  Since the hypothetical future plaintiff is entitled substantial deference in his choice of forum and has the right to argue the validity of a forum selection clause, to prevent all future, disabled, hypothetical plaintiffs from bringing a claim in their home jurisdiction to argue the validity of a forum selection clause would be grossly unconscionable.

Plaintiffs' Counsel requests a hearing on this matter.

DATED: August 6, 2015

Respectfully submitted,

By:_ /s/ Konstantine W. Kyros
Konstantine W. Kyros
KYROS LAW OFFICES
17 Miles Rd. Hingham, MA 02043
Telephone: (800) 934-2921
Facsimile: 617-583-1905
kon@kyroslaw.com

William M. Bloss
Federal Bar No: CT01008
Koskoff, Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, CT  06604
Telephone: 203-336-4421
Facsimile: 203-368-3244

Charles J. LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810

Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
brendant@cuneolaw.com

Robert K. Shelquist
Scott Moriarity
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Ave., S., Suite 2200
Minneapolis, MN 55401-2179
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
samoriarity@locklaw.com

Harris L. Pogust, Esquire
Pogust Braslow & Millrood,LLC
Eight Tower Bridge
161 Washington Street
Suite 940
Conshohocken, PA 19428
Telephone: (610) 941-4204
Facsimile: (610) 941-4245
hpogust@pbmattorneys.com

Erica Mirabella
CT Fed. Bar #: phv07432
MIRABELLA LAW LLC
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: 617-580-8270
Facsimile: 617-580-8270
Erica@mirabellaLLC.com

Attorneys for Plaintiffs