IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS McCULLOUGH, a/k/a "Big Russ McCullough," RYAN SAKODA, and MATTHEW R. WIESE, a/k/a "Luther Reigns," individually and on behalf of all others similarly situated, | Lead Consolidated Case No. 3:15-cv-1074 (VLB) |
| Plaintiff, | |
| vs. | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Defendant. | |

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC. ("WWE") REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE CLAIMS IN THE SECOND AMENDED COMPLAINT ("SAC") OF VITO LOGRASSO AND EVAN SINGLETON**

The opposition to WWE's motion to dismiss fails to address numerous dispositive points set forth by WWE in its opening brief.[1]  Nevertheless, a few key points are now clear.

First, Plaintiffs concede that Connecticut law supplies the operative statutes of limitations and repose.  Plaintiff LoGrasso last performed for WWE in 2007 pursuant to a terminated contract and does not allege any continuing relationship with WWE since that date.  During the relationship, LoGrasso alleges that WWE did not provide adequate medical care and never warned him of the risks of blows to the head.[2]  Doc. 67, ¶¶ 101, 104.[3]  There are no allegations that

---

[1]  Due to the page limit on reply briefs, WWE cannot address all the points which Plaintiffs failed to address.  Thus, we merely highlight certain dispositive issues, and amplify on the limitations/repose issues.  However, for the Court's convenience, attached hereto as Exh. 1 is a chart identifying the substantive authorities with dispositive aspects cited by WWE which Plaintiffs ignored.

[2]  LoGrasso's claim has now mutated from the original claim that WWE somehow fraudulently concealed publicly available information to an unpled and untimely medical malpractice claim.

**WWE was actually aware of a specific medical condition requiring further treatment when its relationship with LoGrasso ended in 2007, or any factual allegations indicating that WWE had a continuing concern about a specific medical condition of LoGrasso after 2007. LoGrasso admits he did not experience any alleged post-concussion symptoms until 2008, and does not allege that WWE knew of such symptoms. In an attempt to justify the assertion of time-barred claims, LoGrasso argues that two tolling doctrines apply. First, despite the absence of the above allegations which are needed to invoke it, LoGrasso asserts that continuing course of conduct tolling applies here. Doc. 53, pp. 9-14. LoGrasso also suggests that tolling is proper under C.G.S. § 52-595, which applies when one fraudulently conceals the existence of the cause of action from the plaintiff.** *Id.* **at 14-16. He makes that assertion despite pleading none of the elements required to establish such tolling with the requisite particularity, and despite being unable to allege any affirmative act by WWE aimed at dissuading him from filing suit on time, a core element of that tolling doctrine. The limitations/repose problems are addressed more fully hereinafter.**

**Second, despite arguing that** *Jaworski v. Kiernan*, **241 Conn. 399 (1997) and its progeny do not apply to the negligence based claims, Plaintiffs squarely admit the essence of the** *Jaworski* **rule by admitting that a professional wrestler "assumes any risks that are known, apparent, or reasonably foreseeable consequences of participation." Doc. 53, p. 19. Having admitted to assumption of such risks, Plaintiffs then ignore completely the ample admissions made in their pleadings of the known, apparent and foreseeable consequences recited in**

---

[3] **With respect to documents cited herein, documents 6, 67, & 72 are filed under** *Singleton et al. v. World Wrestling Entm't, Inc.*, **Member Case, No. 3:15-CV-00425-VLB and documents 43-1 & 53 are filed under** *McCullough et al. v. World Wrestling Entm't, Inc.*, **Consolidated Case, No. 3:15-cv-1074 (VLB).**

WWE's brief.  Doc. 43-1, pp. 29-30.  Plaintiffs admitted that their activities are "exceedingly dangerous;" that "head trauma is a regular and repeated occurrence," and that they "are at a grave, <u>obvious</u> risk for concussion as well as CTE."  *Id.* (emphasis added).  Having admitted that concussions are a known and obvious risk, no argument is presented to sustain Singleton's claims against WWE for allegedly sustaining a concussion during a routine maneuver, after which he never performed again.[4]  Recently, in another concussion case, a federal court noted plaintiffs' admissions that injuries were part of soccer, and ruled, as WWE argues here, that there is no duty to protect participants against risks inherent in their activities.  *Mehr v. Fed'n Int'l de Football Ass'n*, No. 14-cv-3879-PJH, 2015 WL 4366044 (N.D. Cal. July 16, 2015).   Likewise, no explanation is offered for the plead basis of Singleton's claim, which was that he should have been warned about the dangers of returning to the ring too soon after a head injury, when in fact he admitted that WWE never medically cleared him to perform again after he sustained his alleged head injury.  *See* Doc. 43-1, pp. 8-10.

Third, it is now obvious that the fraud, deceit and misrepresentation charges had no basis in fact or law whatsoever, and were made in disregard of controlling procedural and substantive law.  Despite alleging that WWE made "deceptive public statements and published articles" which downplayed the "known long-term health risks of concussions to Plaintiff" (Doc. 72, ¶¶ 222, 230)

---

[4]  The opposition asserts that WWE "wrongly" argued that Singleton now "fundamentally admits that he was injured doing one specific maneuver in one specific match;" pointing out that he alleged other unspecified injuries to his upper body, neck and head.  Doc. 53, p. 28 n.8.  As is obvious from the SAC, however, his claim is that he suffers from "severe and permanent brain damage." Doc. 72, ¶ 117.  Moreover, Mr. Kyros previously admitted as follows —"Singleton does present unique facts in the nature of how his injury occurred and I do believe that you're right Your Honor, that Singleton's case . . . is distinct because the injury alleged is — is more in line with a single incident, single event . . . ." June 8, 2015 Tr., p. 57.

none are identified.  Despite controlling law cited by WWE holding that allegations that a defendant "knew or should have known" is an inadequate basis to allege fraud (*see* Doc. 43-1, pp. 2, 20), Plaintiffs simply ignore that law and fail to address it.  Despite law cited by WWE requiring plaintiffs to plead facts giving rise to a strong inference of fraudulent intent, as well as allegations showing the concrete benefits realized by the fraud (*id.* at p. 19), Plaintiffs made no attempt to demonstrate compliance with such precepts.  Perhaps most importantly, the Plaintiffs nowhere demonstrate any allegation of a knowing misrepresentation of an existing fact to either of these Plaintiffs.  Indeed, in the context of supposedly identifying "who" made such an alleged misrepresentation, Plaintiffs argument effectively demonstrates the absence of a basis to charge fraud.  Specifically, Plaintiffs identify Stephanie McMahon and Dr. Joseph Maroon, and cite only to SAC ¶¶ 55, 64.  Doc. 53, p.26.  As to Stephanie McMahon, the alleged fraudulent statement was nothing said to either Plaintiff at all, but rather the fabricated concoctions in SAC ¶¶ 55, 64 exposed in WWE's motion to dismiss, whereby she was falsely accused of committing perjury before a Congressional Committee in 2007 and falsely accused of testifying that there were no documented concussions in WWE's history.  As to Dr. Maroon, he is smeared with a fraud charge because he opined on the NFL Network, not the WWE Network, in March of 2015, long after the fraud charges were originally made in this case, that "[t]he problem of CTE, although real, is its being over-exaggerated."  Thus, Plaintiffs are relying on the opinion of a medical doctor on the NFL Network long after they first accused WWE of fraud to justify such charges, not a false statement about an existing fact made by anybody acting on WWE's behalf to these Plaintiffs.[5]

---

[5]  The smearing of Dr. Maroon with a fraud charge because of an opinion he stated in March 2015 is especially odious because this Court specifically cautioned Mr. Kyros about including inflammatory allegations in a legal complaint

**Rather than comply with the well-established law of this Circuit governing fraud claims, Plaintiffs assert that WWE "overstates" the heightened pleading requirements of Rule 9. They then disregard the controlling law in this Circuit and cite three trial court opinions from Minnesota and one from California for the notion that a "less stringent standard has been applied to 'fraud by omission' claims."[6]  Doc. 53, pp. 22-23.**

**Fourth, being caught concocting allegations of fraud does not alter the behavior of Plaintiffs' counsel. Plaintiffs had no affirmative actions or statements to support the allegation that WWE fraudulently concealed information in the public realm from them, nor any factual basis to allege that WWE had assumed a duty to provide medical care to them after their contracts with WWE expired. Thus, Mr. Kyros concocted three falsifications out of whole cloth.  *See* Doc. 43-1, p. 15.  In response to the exposure of those fabrications, Plaintiffs' counsel do not dispute that they selectively did not disclose that Stephanie McMahon had actually acknowledged the risks of concussions to a Congressional Committee in 2007 and actually disclosed that concussions had occurred. She testified on December 14, 2007, and when asked specifically if WWE had documented any concussions since the enactment of the wellness policy (which Plaintiffs know**

---

about events which occurred after Plaintiffs relationships with WWE ended.  *See* June 8, 2015 Tr., pp. 60-61, 64-65.

[6]  Plaintiffs did not plead a fraud by omission case. Without the particulars required by Rule 9(b), they accused WWE of taking "affirmative steps to mislead Plaintiffs" (Doc. 72 ¶ 4); of concealing "important medical information" (*id.* ¶ 60); of issuing "misleading statements . . . attempting to downplay the severity of concussions" (*id.* ¶ 84); of "actively" misrepresenting and concealing material facts from Plaintiffs (*id.* ¶ 154); of taking "affirmative actions" to conceal the dangers of concussions (*id.* ¶ 155); of "repeatedly" making material misrepresentations to Plaintiffs that there was no evidence linking multiple concussions to CTE (*id.* ¶ 156); and of misrepresenting risks of head injuries by "misleading and deceptive public statements and published articles" (*id.* ¶ 222).

and allege began in 2006), she testified that as far as <u>she</u> knew, and as far as she was <u>told</u>, there had not been <u>in that period</u>.  She was not asked, and did not testify, as to whether there had been any documented concussions in the entire history of WWE.  Despite being caught dead to rights inventing bogus allegations of fraud and perjury, Plaintiffs' counsel incredibly asserts that her actual testimony is "<u>precisely in line</u>" with their allegation that she testified, as alleged in SAC ¶ 64, "that there were no documented concussions <u>in WWE's history</u>." (emphasis added)  Having nothing else to point to, Plaintiffs' counsel then continue to advance this canard as one of two specific instances of fraud, and as an essential part of their tolling argument.  As to the second deliberate concoction, which falsely accused WWE of attempting to discredit 2005 studies about a Pittsburgh Steeler, (Doc. 72 ¶¶ 66-69) Plaintiffs' counsel distort what they obviously pled in an attempt to excuse that falsity, and then dismiss that false allegation as "perhaps, a non-sequitor [sic]."  Doc. 53, p. 36.  Lastly, as to the phony quotes whereby WWE supposedly admitted to an undertaking to monitor the health and safety of former performers (Doc. 43-1, pp. 4-5), Plaintiffs' counsel engage in pure sophistry and avoid admitting that there is simply nothing in the actual article whereby WWE admits to any undertaking to monitor the health of former performers no longer under contract with WWE.  Doc. 53, pp. 36-37.

Lastly, Plaintiffs do not dispute that Connecticut does not recognize an independent cause of action for medical monitoring.

I.  <u>LOGRASSO'S CLAIMS ARE TIME BARRED</u>

LoGrasso first suggests that whether he is time barred turns on when he discovered his injury and whether WWE engaged in a continuing course of conduct which tolled limitations.  Doc. 53, p. 5.  He also argues that tolling under Conn. Gen. Stat. § 52-595 is appropriate.  LoGrasso is wrong on all counts.

### A. Both Ordinary Limitations And Repose Have Expired

As to the two-year period of limitations, LoGrasso admits that the statute begins to run when he suffers "some" harm. Doc. 53, p. 6. He neglects, however, to acknowledge the clear law cited by WWE that the harm need not have reached its fullest manifestation before the statute runs. *See* Doc. 43-1, pp. 21, 23). He ignores his ample admissions to having "some" injury during his tenure with WWE, including unmistakable signs of serious injury and head trauma in every match in 2006. *Id.* at 43-1, pp. 23-24. LoGrasso's claim that he did not discover the full manifestation of these alleged head injuries until 2014 is irrelevant under Connecticut's two-year limitations period, and is a foreclosed argument under the authorities cited by WWE.[7] His citation to and reliance upon the decision in the NHL litigation is pointless, as it involved different state statutes, none of which operate like Connecticut and none of which had a repose component.

As to the three-year repose aspect of Connecticut statutes, LoGrasso presents no argument at all. He does not contest that C.G.S. § 52-577 is an occurrence statute which begins to run "at the moment" the act or omission occurs, not the date plaintiff first discovers an injury; that the repose statute operates to bar an action even before it accrues; and that the only facts material to the repose decision are the date of the wrongful conduct alleged in the complaint and the date the action was filed. By not contesting whether repose barred the claims, LoGrasso concedes he is time barred unless he has a tolling doctrine available, which he does not.

---

[7] LoGrasso's admission that he had discovered some form of harm during his tenure with WWE also precludes him from invoking the continuing course of conduct doctrine. *See Rosato v. Mascardo,* 82 Conn. App. 396, 405 (2004) ("the continuing course of conduct doctrine has no application after the plaintiff has discovered the harm").

### B. LoGrasso's Time-Barred Claims Are Not Subject To Tolling Under The Continuous Course Of Conduct Exception

Acknowledging that the continuous course of conduct tolling doctrine is based on policy reasons that some lawsuits are premature in ongoing relationships, LoGrasso does not, and cannot, allege that there has been an ongoing and continuous relationship with WWE since his contract terminated in 2007. Doc. 53, pp. 9-10. To create the illusion of an ongoing relationship, Plaintiffs' counsel again resort to distortion. First, it is argued that WWE concealed the risks (in ways never specified) and "forced" him back into the ring "over the course of his 17-year wrestling career."[8] *Id.* p. 12. Immediately thereafter, citing to six specific paragraphs of the SAC, the Court is told that LoGrasso had alleged that WWE and its physicians "knew Mr. LoGrasso had suffered repeated head injuries." None of the cited paragraphs allege any such thing, and the SAC nowhere identifies any doctor or WWE employee who knew of a concussion at any event or on a specific date. Next, reference is made to WWE's voluntary program whereby it offers to pay for rehabilitation to assist former wrestlers who have drug or alcohol problems. *Id.* p. 13. Having done so, Plaintiffs resort again to deception, stating that "[t]he program also offered diagnostic testing for concussions," citing to SAC ¶¶ 76, 78. To the extent counsel was attempting to suggest that WWE offered or did diagnostic testing for concussions to former talent including LoGrasso, that is deliberately false. WWE

---

[8] Since February of this year, Plaintiffs' counsel have known that Mr. LoGrasso was a regular performer for WWE only from 2005-2007, and that he appeared for WWE before that only as a "jobber," or occasional laborer, a total of 14 times in 1991, 1992, 1993, and 1997. Doc. 6 Tab 1. He performed for mostly other promotions throughout his career, often performing under the name Skull Von Krush. It is another attempt to mislead to suggest he had a 17 year career with WWE. The continuous duty which Plaintiffs seek to foist on to WWE would, if it existed, have required WWE to be monitoring LoGrasso's health and providing medical care while he actually was working with and for competitors.

8

has not done so, and once again SAC ¶¶ 76, 78 does not allege that WWE ever did so for LoGrasso or any former talent.  Yet, Plaintiffs' brief clearly hopes to convey that notion, claiming in the next sentence that "it" provided a false sense of security that Plaintiffs' health was "being adequately monitored, both in the ring and as former wrestlers."  Doc. 53, p. 13 (emphasis added).  This false, and implausible allegation, is contradicted right afterwards when it is admitted that LoGrasso never received any medical information regarding concussions while with WWE and that there was no monitoring.  Based on these arguments, LoGrasso maintains that WWE had a "continuing duty to warn" him of the risks he faced as a result of the injuries he allegedly sustained as a wrestler, including CTE, and other serious medical conditions.  *Id.*  As such, Plaintiffs wish to cast upon WWE, an entertainment company, a legal obligation to continually update former performers of developments in medical science regarding potential risks of head trauma.[9]  Such a duty has been consistently rejected by the Connecticut Supreme Court, even when medical professionals are the defendants.  In *Neuhaus v. DeCholnoky*, 280 Conn. 190 (2006), the Connecticut Supreme Court specifically rejected an argument that a duty to warn extended as long as the damaging consequences from the original failure to warn were still ongoing, holding that such a theory would eliminate repose in duty to warn cases.  In *Neuhaus*, the alleged wrongful conduct was an omission, specifically not telling the plaintiff of the risk associated with a specific condition upon discharge or in the subsequent six years.  The court emphasized that a continuing duty must rest

---

[9]   In support of their duty to warn theories, Plaintiffs cite *Pelletier v. Sordoni/Skanska Constr. Co.*, 264 Conn. 509, 518 (2003).  Doc. 53, p. 29.  *Pelletier* has nothing to do with whether there is a duty to warn, or a continuous duty to warn.  The language quoted by Plaintiffs is the exception to the general rule that a general contractor is not liable for the torts of its subcontractors on a construction project.

"on the factual bedrock of actual knowledge," and that expecting a doctor to provide follow-up treatment when there is no awareness of a wrong diagnosis and no ongoing relationship was beyond public policy expectations. The court held that the legislative choices in 52-584 were to be respected because any tolling may compromise the goals of the statute. In the absence of any continuing treatment, the court refused to impose such a duty on either the hospital or treating physician, noting that imposing a continuing duty to warn of the "universe of potential risks" would openly invite every plaintiff to use failure to warn theories to defeat repose limitations.

In *Neuhaus*, and later in *Bednarz v. Eye Physicians of Cent. Conn.*, 287 Conn. 158 (2008), the Connecticut Supreme Court addressed their earlier decision in *Witt v. St. Vincent's Med. Center*, 252 Conn. 363 (2000), the case relied upon by Plaintiffs here. Doc. 53, pp. 10-14. Both decisions interpreted *Witt* as holding that it was the physician's initial <u>and</u> continuing concern that had triggered his continuing duty to disclose, resulting in tolling. The court referred to it as a "heightened" actual knowledge requirement of the need for further warning or treatment.

Next, in *Martinelli v. Fusi*, 290 Conn. 347 (2009), the Connecticut Supreme Court refused to impose a continuing duty to warn on a physician unless the doctor had <u>actual knowledge</u>, not implied knowledge, of an identified medical condition that required ongoing treatment. Furthermore, to impose such a continuing duty to warn about medical matters even on a physician, and to toll limitations, the court required the defendant to have provided ongoing treatment or monitoring of the medical condition after the allegedly negligent conduct, and the action to be brought within the statutory period after that treatment ended.

Lastly, in *Flannery v. Singer Asset Finance Co.*, 312 Conn. 286 (2014), the Connecticut Supreme Court made clear that the doctrine cannot apply in the

absence of a continuing special relationship[10] unless there is a subsequent wrongful act related to the prior negligence which occurs <u>before</u> the three-year repose period has run.

These cases are fatal to LoGrasso's attempt to circumvent repose. He does not allege that WWE had actual awareness that he had any residual symptoms of head trauma when his relationship ended in 2007, nor any factual allegations indicating WWE had any actual knowledge of or continuing concerns about any medical condition after he left. Indeed, LoGrasso claims his physical and mental health worsened after 2007. Doc. 53, p. 8. He claims "pounding headaches" began in 2008. *Id.* In 2010, he claims to have been diagnosed as being deaf and having TMJ, and not being diagnosed for post-concussion syndrome until after filing suit. If he did not have actual knowledge, WWE could not have it, and he does not allege ever advising WWE of any problems. Absent such actual knowledge or any continuing concern on the part of WWE, LoGrasso cannot impose such a duty on WWE as a matter of law. *See also Golden v. Johnson Mem'l Hosp., Inc.*, 66 Conn. App. 518 (Conn. App. 2001) (the existence of a continuing duty is question of law for court, and no duty exists when no awareness and no ongoing relationship).

---

[10] Conclusory allegations about superior knowledge, skill and expertise are not plausible allegations of the "special relationship" needed to invoke the continuing course of conduct doctrine. *Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178 (2d Cir. 2011). Here, Plaintiffs make conclusory allegations that WWE knew or should have known about various scientific opinions which they otherwise allege were well-known <u>in the medical community</u>. Doc. 72, p. 16. No suit has been brought against any of the doctors who LoGrasso now charges committed malpractice. Moreover, under Connecticut law, a regular contractual relationship does not create a special relationship. *AT Engine Controls, Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-cv-01539 (JAM), 2014 WL 7270160 (D. Conn. Dec. 18, 2014).

### C. LoGrasso Cannot Rely On C.G.S. § 52-595

LoGrasso does not dispute that he must plead with particularity facts sufficient to establish the three elements set forth in § 52-595. He does not allege that WWE had actual awareness of any of the alleged injuries he now claims when he departed in 2007 or in ensuing years. He does not allege that he ever told WWE about any of these alleged ailments, nor does he explain in any plausible fashion how WWE could conceal his own ailments from him. Likewise, he points to nothing done by WWE towards him attempting to conceal anything from him. He points to no diligence on his part in the period 2007-2010 that was somehow thwarted by WWE. And lastly, he points to nothing done or said by WWE with the intent to obtain delay on his part in suing.

There is no concealment of a cause of action unless the defendant makes an affirmative act or statement concealing the cause of action. Mere silence is not sufficient. *Johnson v. Wadia*, No. CV85 0075560 S, 1991 WL 50291 (Conn. Super. Mar. 28, 1991). There must be independent acts of fraudulent concealment separate and distinct from the underlying cause of action directed to the very point of obtaining the delay which afterward is taken advantage of by pleading the statute of limitations. *World Wrestling Entm't, Inc. v. THQ, Inc.*, 46 Conn. L. Rptr. 407 (2008). *See also Orange Street Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999) (applying C.G.S. § 52-595 and dismissing case because plaintiff failed to plead with particularity any activity directed to the very point of obtaining delay); *Bartone v. Robert L. Day Co.,* 232 Conn. 527, 535 (1995) (reversing trial court due to absence of evidence of fraudulent intent to delay plaintiffs in filing suit).

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.,**

By:   /s/ Jerry S. McDevitt
**Jerry S. McDevitt (pro hac vice)**
**Terry Budd (pro hac vice)**
**Curtis B. Krasik (pro hac vice)**
**K&L GATES LLP**
**K&L Gates Center**
**210 Sixth Avenue**
**Pittsburgh, PA 15222**
**Phone: (412) 355-6500**
**Fax: (412) 355-6501**
**Email: jerry.mcdevitt@klgates.com**
**Email: terry.budd@klgates.com**
**Email: curtis.krasik@klgates.com**

Thomas D. Goldberg (ct04386)
Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: tgoldberg@daypitney.com
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com
**Its Attorneys**

## **CERTIFICATION**

      I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                                 */s/ Jeffrey P. Mueller*
                                                 **Jeffrey P. Mueller (ct27870)**