# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS McCULLOUGH, a/k/a "Big Russ McCullough," RYAN SAKODA, and MATTHEW R. WIESE, a/k/a "Luther Reigns," individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>        Defendant. | LEAD CONSOLIDATED CASE NO. 3:15-cv-01074-VLB<br><br><br><br><br><br>OCTOBER 16, 2015 |

**WORLD WRESTLING ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF WWE'S MOTION FOR SANCTIONS IN CONNECTION WITH**
***MICHELLE JAMES et al. v. WORLD WRESTLING ENTERTAINMENT, INC.***
**ORIGINALLY FILED IN FEDERAL COURT IN TEXAS**

| | |
|---|---|
| Thomas D. Goldberg (ct04386)<br>Jonathan B. Tropp (ct11295)<br>Jeffrey P. Mueller (ct27870)<br>DAY PITNEY LLP<br>242 Trumbull Street<br>Hartford, CT 06103<br>Phone: (860) 275-0100<br>Facsimile: (860) 275-0343<br>Email: tgoldberg@daypitney.com<br>Email: jbtropp@daypitney.com<br>Email: jmueller@daypitney.com | Jerry S. McDevitt (pro hac vice)<br>Terry Budd (pro hac vice)<br>Curtis B. Krasik (pro hac vice)<br>K&L GATES LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA 15222<br>Phone: (412) 355-6500<br>Facsimile: (412) 355-6501<br>Email: jerry.mcdevitt@klgates.com<br>Email: terry.budd@klgates.com<br>Email: curtis.krasik@klgates.com |

*Counsel for Defendant*
*World Wresting Entertainment, Inc.*

## I. INTRODUCTION

In order to find any semblance of an actual response to the specific sanction issues raised by WWE's motion, including the reason plaintiffs' counsel included pictures and paragraphs about various deceased professional wrestlers in the complaint in disregard of both Rule 11 and this Court's specific instructions at a June 8, 2015 conference on a related matter, one has to wade through 28 pages of self-serving declarations of good faith; more bombastic rhetoric about WWE; false suggestions that WWE agreed to withdraw the sanction motion; nonresponsive and inaccurate grousing about the supposed inability of plaintiffs' counsel to obtain contracts of talent; a dissertation about the meaning of the term "kayfabe"; suggestions that WWE had the obligation to secure the brain of decedent Matthew Osborne for scientific study;[1] complaints that a former physician for the WWE refused to disclose private medical matters to plaintiffs' investigator; and suggestions that the motion is improper.[2]

Once one wades through all the above, there is no real attempt to demonstrate a good faith basis for the false allegations at issue or the disregard for the operative forum selection clause here. No justification is attempted for including photographs and narratives of various deceased wrestlers who

---

[1] This particular statement is revealing. WWE does not have the legal right to dedicate parts of a deceased man's body to scientific study. That right is vested in decedent, via testamentary instructions, or his heirs. Here, Mr. Osborne's brain was evidently not examined post-mortem for CTE, yet plaintiffs' counsel have alleged that Osborne had CTE, which they elsewhere admit can only be diagnosed post-mortem by direct examination of the brain. *Compare* James Dkt. 1 at ¶ 37 with ¶¶ 177, 188, 205, 217. Thus, another false allegation is obvious.

[2] Contrary to those suggestions, the motion served by WWE fully disclosed the grounds for the motion filed by WWE, which merely added some procedural history. Moreover, the transfer of the case from federal court in Texas to Connecticut did not cure or moot the Plaintiffs' false allegations which were perpetuated in this Court or their failure to honor the forum selection clause to which Osborne agreed.

performed for multiple promotions in the course of their career.³ The Court's specific statements directly made to plaintiffs' lead counsel, Konstantine Kyros ("Kyros"), on June 8, 2015 about the propriety of including the names of other dead wrestlers in complaints are said to be of no consequence. The Court's specific orders and instructions that day are now dismissed as nothing more than the Court merely "asking" (not ordering) Mr. Kyros to file an amended complaint to add that LoGrasso had diagnosed head injuries and hearing loss.⁴ James Dkt. 37 at 32.

Before addressing the sparse responses to the sanctionable conduct set forth in WWE's motion, it is first necessary to address the opening thrust of the opposition that the motion represents the "worst tactics . . . in our system of jurisprudence." James Dkt. 37 at 1. WWE respectfully submits that the "worst tactics" in jurisprudence is repeatedly making things up. There is a trail of such documented misconduct which WWE has had to deal with from the inception of the litigation campaign orchestrated by Kyros. That record shows that WWE has tried to obtain compliance with pleading rules and forum selection clauses by conference, emails, and prior Rule 11 motions which were served but not filed so as to avoid collateral litigation if possible. WWE actually filed its sanctions motion in this fifth lawsuit when it became obvious that none of those steps were effective, that specific findings and directives by two federal judges were being ignored, and that such violations were getting even worse in *James.*

The pattern of Rule 11 violations began in the opening case filed in Oregon

---

³ The group includes former performers who died from 1993 to the present. As such, limitation and repose statutes would apply to the lion's share of the group if any claims were made on their behalf, and none have been made.

⁴ No citation to the transcript of the June 8, 2015 hearing is provided to support this revisionist history. Nowhere does the Court tell Kyros what is now alleged, nor would there be any need to tell him to plead hearing loss. The hearing loss claim was in the first amended complaint already. *See* LoGrasso Dkt. 67 at ¶ 105.

on behalf of Billy Jack Haynes for supposed brain injuries allegedly suffered in the 1980s. The complaint alleged that WWE "forced" and "explicitly required" performers to use illegal drugs and cocaine. Haynes Dkt. 1 at ¶¶ 15, 94. The complaint alleged that a 13 year old killed his sister trying to emulate wrestling moves (*Id.* at ¶ 70) and referenced the death of Owen Hart in 1999 from a failed stunt (*Id.* at ¶ 3). After a pre-motion conference, some but not all of the problematic allegations were removed. Thus, WWE served plaintiffs' counsel in that case with a Rule 11 motion principally seeking sanctions against Kyros, the lead counsel and architect of the lawsuit. Kyros then requested WWE not file that motion until the Court decided WWE's motion to dismiss, and WWE in fact did refrain from filing that motion.

WWE's forbearance was rewarded with the filing of a duplicative lawsuit in Pennsylvania on behalf of plaintiffs LoGrasso and Singleton. That suit began a recurrent pattern of collateral litigation to enforce forum selection clauses. *LoGrasso* also continued the pattern of manufacturing false allegations serving only to smear WWE and its personnel and medical staff. The concoction accusing Stephanie McMahon of being untruthful in 2007 Congressional testimony as an act of alleged fraudulent concealment carried over from Haynes' complaint, together with other recurrent false allegations such as that WWE has published articles downplaying the science of CTE, when in fact it has never published anything regarding CTE. It was alleged that WWE discouraged Singleton from seeing neurologists after a supposed concussion and cleared him to wrestle too soon, when in fact he was seen by multiple neurologists and never cleared to wrestle again. An amended complaint even falsely alleged that WWE's tortious conduct had killed plaintiffs, when both were alive. Once again, WWE notified the plaintiffs' lawyers repeatedly of the pleading violations, with no effect.

Kyros then caused a third duplicative class action to be filed in California,

again in violation of forum selection clauses. Kyros and his associates affirmatively concealed Kyros' role in directing the filing of that lawsuit in an attempt to defeat this Court's jurisdiction contrary to the prior agreement those same counsel eventually had made in *LoGrasso* to litigate in Connecticut. There is a long record of written requests that Kyros confirm his role in that case, and all the lawyers refused to do so. Again, WWE's response to such tactics was measured and his role was pointed out to the Court in substantive briefing giving him an opportunity to reveal the truth, which he did not do.

In the same time frame, plaintiffs' counsel filed an abusive lawsuit in Tennessee attempting to blame WWE for the heart attack of a morbidly obese former performer, Nelson Frazier, many years after he last performed. This suit ignored that Frazier had agreed to forum selection clauses and carried over false allegations from the prior suits, and added a new abusive twist — it included photographs of deceased wrestlers who had at one time performed for WWE.

On June 8th, the parties appeared before the Court for a status conference in *LoGrasso*. The Court had a specific dialogue with Kyros about pleading defects and the requirements of the rules, all in the context of requiring him to file an amended complaint which complied with the Court's very specific directives. In the context of remarks Kyros made about Frazier's early death, the Court actually questioned the propriety of naming other dead wrestlers in complaints.

The first sign that Kyros would also ignore specific findings and directives of federal jurists came when he filed the second amended complaint in *LoGrasso*, which did not comply with the Court's directive. Still, WWE acted with restraint and did not file the Rule 11 motion in *LoGrasso*, choosing instead to point out the problems in its motion to dismiss that case, which remains pending.

On June 25, 2015, the Oregon court ruled that Kyros was working a "hit list" of venues in a forum shopping campaign. Kyros' response to this finding

came the next day and was the second and third indication that he would even ignore federal court directives. Ignoring the Oregon court's findings, he, Gilreath and Mirabella filed the *James* case in Texas in violation of a forum selection clause. Ignoring this Court's admonitions, he named and put photographs of other dead wrestlers in the complaint. On July 10, 2015, yet another federal judge acted to curb the forum shopping and ordered that the *McCullough* action be transferred to this Court. Still, plaintiffs' counsel refused to transfer *Frazier* and *James* to this Court. Due to the long record of disregard for pleading rules, forum selection clauses, and the falsification of allegations, WWE then served the Rule 11 motion in *James* on July 17, 2015. On August 11, the judge in the Tennessee case became the fourth federal judge to issue a transfer order. Still, they refused to transfer *James,* necessitating WWE's drafting and filing of a reply brief on August 17, 2015. Only then did they agree to withdraw their opposition to the transfer, and the Texas judge entered an order enforcing the clauses. These documented facts belie the assertion that WWE filed the Rule 11 for the purpose of silencing critics. WWE, as any litigant, is entitled to the protection of the rules which govern attorney conduct and pleading misconduct and has engaged those rules now that it has become crystal clear that those rules do not restrain these plaintiffs' counsel.

Contrary to the argument made in the opposition that there was some "implicit understanding" that the pending sanction motion would be withdrawn upon the transfer, no such agreement was ever even discussed.[5] WWE turns

---

[5] Equally disingenuous is the statement made that "Plaintiff's counsel has attempted to work with Mr. McDevitt . . . as the voluntary transfer of two cases to Connecticut shows." James Dkt. 37 at 21. The first transfer was *LoGrasso*, which required WWE to fully brief a motion to transfer due to the gamesmanship of plaintiffs' counsel. Thereafter, the same attorneys who now profess to have worked with WWE counsel filed three actions in other jurisdictions in violation of their agreement to litigate in Connecticut and required WWE to fully brief each to obtain transfer. The second case that plaintiffs supposedly worked with WWE to

now to the sparse response of plaintiffs' counsel to the actual violations which are the subject of this motion.[6]

## II. ARGUMENT

### A. Plaintiffs' Counsel Offer No Good Faith Basis for Fabricating Osborne's Tenure With WWE

WWE demonstrated that plaintiffs' counsel concocted an allegation that the decedent, Mr. Osborne, had a 22 year career for WWE from 1985 until 2007, and that he had relied on WWE's medical personnel and trainers for over 20 years of alleged misconduct. Based on these false allegations, they then argued that

---

transfer was, as noted, the James case, which was no model of cooperation. Instead, they resisted transfer until every other federal judge issued transfer orders and then withdrew their opposition after it had to be fully briefed by WWE.

[6] The argument that this Court has no authority to hear WWE's Motion For Sanctions is unavailing. It is black letter law that a transferee court has jurisdiction to impose sanctions for a Rule 11 violation based on the conduct of counsel in the transferor court. *H&D Wireless P'Ship v. Sunspot*, 118 F.R.D. 307, 309 n.2 (D. Conn. 1988); *Anderson v. Wade*, 322 Fed. Appx. 270 (4th Cir. Dec. 5, 2008) (holding that a "transferee district court has authority to impose Rule 11 sanctions for sanctionable filings made in the federal transferor court . . . ."); *Anderson v. Godley*, 3:07-318, 2009 WL 2881080 at *8-13 (W.D.N.C. Sept. 8, 2009) (on remand from the Fourth Circuit, imposing sanctions for plaintiff's filing a complaint in the Western District of Virginia to circumvent a prior ruling from a North Carolina state court); *Mayfield v. Klevenhagen*, 941 F.2d 346 (5th Cir. 1991) (affirming sanctions imposed by transferee district court and holding that "[i]t was well within the district court's discretion to dismiss the actions and to impose sanctions under Rule 11 of the Federal Rule of Civil Procedure."); *Ithaca Ventures k.s. v. Nintendo of America, Inc.*, 13-824, 2014 WL 4829027 at *8 n.4 (D. Del. Sept. 25, 2014) (granting motion to transfer and noting that defendant "should pursue its motion for Rule 11 sanctions before the transferee district court."); *Elite Sports Enterprises, Inc. v. Lococo*, 07-4947, 2008 WL 4192045 at *6 n.5 (D.N.J. Sept. 5, 2008) (granting motion to transfer and holding that "[b]ecause the Court is granting the part of defendants' motion seeking to transfer the action to the Southern District of California, defendants' motion to impose sanctions pursuant to Rule 11 will be denied without prejudice to move again before the transferee court."). Given that this case was filed in Texas in violation of a forum selection clause, it makes no sense for WWE to continue to burden the Texas court with another motion when that case is closed and the Rule 11 violations are still present here. The argument that WWE is required to have the Texas court hear one Rule 11 motion based on the improper filing of the Complaint and then have this Court hear a separate motion for the Rule 11 violations that are being perpetuated by the false allegations and claims is a continuation of plaintiffs' counsel's legal gamesmanship.

6

Osborne's alleged exposure to WWE's Wellness Program in 2006 constituted some "extra-contractual circumstance" rendering the forum selection clause of no moment. This false allegation as to his tenure was also essential to the related false allegation that WWE failed to disclose to Osborne the awareness of consequences of head injury WWE was alleged to have had by 2005 and beyond.

In response, plaintiffs' counsel do not disclose <u>any</u> good faith basis for asserting a 22 year career with WWE extending up to the wellness program in 2006, and fail to even discuss those phony allegations. They do not dispute that they advanced that factual predicate even after being told it was false. Instead, they now proclaim they are unable to communicate with Mr. Osborne because he is deceased, and complain that WWE has been unwilling to provide any employment records to plaintiffs' counsel. The inability to communicate with Mr. Osborne did not deter plaintiffs' counsel from making all sorts of allegations about his state of mind and other things only he would know. *See e.g.* James Dkt. 1 at ¶¶ 185, 187, 201. It is also false to state WWE did not provide "employment records to plaintiffs' counsel."[7] Plaintiffs' counsel were specifically provided with Mr. Osborne's last contract and the dates he performed for WWE, yet plaintiffs' counsel did not adjust, modify or withdraw their false allegations when they obtained such information. Moreover, any attorney conducting a reasonable investigation can readily determine from publicly available sources that Mr. Osborne last performed for WWE in 1993 and only for a brief period of time before. His career is set forth in Wikipedia (https://en.wikipedia.org/wiki/Matt_Osborne) and in articles available on the internet, a source cited by plaintiffs' counsel for a multitude of allegations. In fact, in one readily available source, Mr.

---

[7] Professional wrestlers are not employees, but are independent contractors. If plaintiffs' counsel contends otherwise, then all these claims are barred by the exclusivity of workers' compensation laws.

7

Osborne is extensively <u>quoted</u> as describing his lifelong struggle with substance abuse and the fact he was released by WWE in 1993 due to a cocaine problem. *See* Ex. 1. Plaintiffs' counsel may not be able to speak to him now, but Osborne's words are memorialized in perpetuity. In sum, these allegations were false when made, had no good faith basis, were relied upon to present arguments when known to be false, and not withdrawn, all Rule 11 violations.

**B.     Plaintiffs' Counsel Do Not Dispute That They Concocted False Allegations About Stephanie McMahon**

Despite filing multiple complaints and amended complaints with liberal exhortations of fraud, plaintiffs' counsel have yet to identify a single false statement of fact ever made to any of the plaintiffs by anybody at WWE. Having none, plaintiffs' counsel repeatedly concocts allegations of fraudulent concealment. Thus, they recited again the now recurrent falsity about Stephanie McMahon's testimony to a Congressional committee in 2007. As a threshold matter, testimony by Stephanie McMahon behind closed doors in 2007 could never be considered a fraudulent statement to a performer who last performed for WWE in 1993 and whose claims were time-barred long before 2007.

The response does not, and cannot dispute, that plaintiffs' counsel concocted an audacious charge against Stephanie McMahon by selective and deceptive editing to make it appear that she had denied the risks of concussions in her 2007 testimony which another unnamed WWE executive had supposedly acknowledged elsewhere in 2007. Plaintiffs' counsel do not dispute that was their intent, and do not dispute that she never testified that there were no documented concussions in WWE's history, which is what they have repeatedly and falsely alleged. Instead, they launch into another tirade of what they think they will prove if in fact there is a claim that is not dismissed. Without ever explaining how her testimony has any relevance whatsoever to the claims in *James*, plaintiffs'

8

counsel rearrange the allegations to assert that she "withheld relevant facts" and that this testimony will be an "important basis to show WWE concealed the risks of concussions." James Dkt. 37 at 30. There is simply no logic to this excuse for fabricating allegations about a person — there is no way testimony in 2007 unrelated to Osborne in good faith can be said to have fraudulently concealed something from Osborne in 1993 when he last regularly performed for WWE.

C.  **Plaintiffs' Response to the Falsification of Charges of CTE Science Suppression is a Further Rule 11 Violation**

In this branch of WWE's motion, it was demonstrated that plaintiffs' counsel also fabricated other charges that WWE attempted to conceal the science of head injuries. Once again, the false allegations are completely extraneous to any claim regarding Osborne based on actual dates involved as opposed to the false allegation that he performed for 22 years up to 2007. Plaintiffs falsely accused WWE of attempting to discredit certain 2005 studies regarding NFL players. Previously, WWE pointed out those falsities in e-mails to plaintiffs' counsel, and in moving to dismiss the *LoGrasso* second amended complaint which made the same false allegation. In response, plaintiffs' counsel dismissed these false allegations as a "*non-sequitor*" [sic]. McCullough Dkt. 53 at 36. Now, under a non-responsive heading stating that "WWE Attempts to Hide Behind Its Medical Director Who Has a History of Concealing Head Injuries and the Risks of Brain Damage," plaintiffs' counsel offer only two sentences and no explanation whatsoever for continuing to make these false allegations. In yet another regrettable demonstration of deliberately misquoting people, they state that Dr. Maroon "routinely makes statements such as 'Concussions are exaggerated,'" citing to an internet article. James Dkt. 37 at 31. However, Dr. Maroon, who in fact has spent his life treating and helping countless people with concussions, never said "concussions are exaggerated." As is evident from the article quoted,

9

what Dr. Maroon did say in 2015 on the NFL Network, <u>long after Mr. Osborne passed away</u>, was much different and was not about concussions.  Instead, in a statement which echoes the finding made by a distinguished federal jurist in the NFL litigation, he opined:  "The problem of CTE, although real, is being over-exaggerated."  Whether Dr. Maroon was or was not "a major figure in the NFL concealment of head injuries," as plaintiffs' counsel postulate, is no basis at all to argue concealment by WWE, a completely different entity.  Tellingly, even when attempting to rebut charges that they repeatedly falsified facts and quotes, plaintiffs' counsel proved the point by the false quote attributed to Dr. Maroon.

D.     **Plaintiffs' Counsel Do Not Respond to the Distortion About WWE's Wellness Program**

In yet another use of quotes to distort what was actually said, or even if something was said at all, plaintiffs' counsel deceptively falsified and quoted WWE as saying something about its wellness program not said and that the alleged statements had somehow assured Osborne that his health and safety was being monitored "both in the ring and as a former wrestler."  James Dkt. 1 at ¶ 86.  Notably, the difficulty in ascertaining <u>when</u> Osborne performed for WWE now claimed by plaintiffs' counsel did not prevent them from making this palpably false allegation about his supposed state of mind and sense of security.  In reality, the alleged but non-existent quote is from a 2010 article, and as such plainly could not have given him any sense of security when performing in the ring for WWE, which ended in 1993.  And, it could not have given him a sense of security that WWE was somehow mysteriously monitoring his health decades after he last performed because the article does not ever claim that WWE was doing so.  Not surprisingly, plaintiffs' counsel offer <u>no</u> explanation whatsoever for this particular falsification.

### E. Plaintiffs' Counsel Offer No Good Faith Basis for Including Photos of Deceased Wrestlers

In perhaps the most troubling non-response to the serious Rule 11 violations, plaintiffs' counsel distort the status conference held on June 8, 2015, into a "Stay of Discovery hearing" in which the Court merely "asked" Mr. Kyros to amend the *LoGrasso* complaint to "add Mr. LoGrasso's diagnosed head injuries and hearing loss." James Dkt. 37 at 32. The specific instructions the Court gave to Mr. Kyros regarding the need to get a grip on pleading standards and practices, including the statement that there was no basis to reference every wrestler that is dead, are reduced to meaningless musing by a federal judge free to be ignored.

Thus, no explanation is given for why Kyros felt free to disregard those instructions when he filed the *James* case in the wrong forum, generating adverse publicity. Equally important, no explanation is given for any proper purpose for doing so, or how any of those allegations about other former wrestlers who performed for WWE and any number of other organizations have anything to do with whether WWE is responsible for the fact Osborne died from a drug overdose two decades after last performing for WWE.

### F. The Sanctionable Conduct of Ignoring Forum Selection Clauses is not Moot

As demonstrated in WWE's brief, amidst a documented history of attempting to avoid this Court's jurisdiction after agreeing to it, it is undisputed that the *James* case was filed in Texas <u>one day</u> after Kyros was specifically found to be forum shopping. It is undisputed that no evidence justifying their refusal to honor the forum selection clause was presented, and undisputed that they did not agree to transfer it even after being specifically provided with Osborne's contract and within the safe harbor period.

The sanctionable conduct is not moot, as is now suggested because this

conduct was not remedied before the safe harbor period expired and before WWE incurred additional expenses. The suggestion that the filing occurred to preserve a claim facing a statute of limitation claim is not relevant to the motion, as the relevant statute of limitation is Connecticut, which plaintiffs' counsel were trying to avoid, and filing in Texas does not alter the limitation problem, but tried improperly to avoid it.

Lastly, Plaintiffs' counsels' final explanation for their conduct of bringing duplicative lawsuits and ignoring the forum selection clauses is utterly disingenuous and totally lacking in candor to the Court. Specifically, they state they did so because "many wrestlers do not have a Booking Contract restricting such actions to Connecticut." James Dkt. 37 at 33-34. <u>Without exception</u>, every single case after *Haynes* involved wrestlers with contracts which did restrict said actions to Connecticut, as found by four different federal judges, and <u>plaintiffs' counsel had every single one of those contracts</u>. Instead of honoring the contracts they unquestionably had for every single plaintiff, plaintiffs' counsel continued to resist transfer by a host of foreclosed arguments completely without any evidence ever being offered to support those positions. For them to claim otherwise now is yet another example of a lack of candor to the Court.

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.,**

By:   /s/ Jerry S. McDevitt
Jerry S. McDevitt (pro hac vice)
Terry Budd (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com

Email: terry.budd@klgates.com
Email: curtis.krasik@klgates.com


Thomas D. Goldberg (ct04386)
Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: tgoldberg@daypitney.com
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com


Its Attorneys.

## CERTIFICATION

    I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                          /s/ Jeffrey P. Mueller