## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH, a/k/a "Big Russ McCullough," RYAN SAKODA, and MATTHEW R. WIESE, a/k/a "Luther Reigns," individually and on behalf of all others similarly situated,** | **LEAD CONSOLIDATED CASE NO. 3:15-cv-01074-VLB** |
| **Plaintiffs,** | |
| **vs.** | |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | **OCTOBER 30, 2015** |
| **Defendant.** | |

## REPORT OF RULE 26(f) PLANNING MEETING

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on October 12, 2015 regarding the following consolidated matters:

## I.    SUMMARY OF CASES

| Case Caption | Date of Filing | Date of Transfer | Date of Service | Appearance by Defendant |
|---|---|---|---|---|
| **Class Actions** | | | | |
| *McCullough, et al. v. World Wrestling Entertainment, Inc.*, No. 3:15-cv-01074 (Lead Case) | 4/9/2015 (C.D. Cal.) | 7/13/2015 | 4/22/2015 | 5/11/2015 |
| *Haynes III v. World Wrestling Entertainment, Inc.*, No. 3:15-cv-01156 | 10/23/2014 (D. Or.) | 7/28/2015 | 10/28/2014 | 11/24/2014 |

| Individual Action | | | | |
|---|---|---|---|---|
| ***Singleton, et al. v. World Wrestling Entertainment, Inc.***, No. 3:15-cv-00425 | 1/16/2015 (E.D. Pa.) | 3/24/2015 | 2/3/2015 (Waiver of Service) | 2/25/2015 |
| **Wrongful Death Actions** | | | | |
| ***Frazier v. World Wrestling Entertainment, Inc.***, No. 3:15-cv-01229 | 2/18/2015 (Tenn. Cir. Ct.) | 8/13/2015 | 2/27/2015 | 3/24/2015 |
| ***James v. World Wrestling Entertainment, Inc.***, No. 3:15-cv-01305 | 6/26/2015 (N.D. Tex.) | 8/31/2015 | 7/15/2015 | 7/27/2015 |
| **Declaratory Judgment Action** | | | | |
| ***World Wrestling Entertainment, Inc. v. Windham, et al.***, No. 3:15-cv-00994 | 6/29/2015 | N/A | **Ware**-7/8 **Windham**-7/9 **Perras**-7/14 **Billington**-7/27 | 9/21/2015 |

The participants were:

1.      Attorneys Charles J. LaDuca and Michael J. Flannery for Plaintiffs Evan Singleton and Vito LoGrasso; William Albert Haynes III, individually and on behalf of all others similarly situated; and Russ McCullough, Ryan Sakoda, and Matthew Robert Wiese, individually and on behalf of all others similarly situated.

2.      Attorney R. Christopher Gilreath for Plaintiffs Cassandra Frazier, individually and as next of kin to her deceased husband, Nelson Lee Frazier, Jr. a/k/a Mabel a/k/a Viscera a/k/a Big Daddy V a/k/a King Mabel and as personal

2

representative of The Estate of Nelson Lee Frazier, Jr., Deceased; and Michelle James as mother and next friend of Matthew Osborne, a Minor Child and Teagan Osborne, a Minor Child and Defendants Robert Windham, Thomas Billington, James Ware, Oreal Perras, and various John Does ("Wrestler Defendants").

3.    <u>Plaintiffs' and Wrestler Defendants' Statement</u>:  Counsel for Plaintiffs and Wrestler Defendants apologize to the Court for the delay in filing this Rule 26(f) Report.  Plaintiffs and Wrestler Defendants strived to prepare a short, concise report in accordance with this Court's guidelines and Rule 26(f).  However, WWE contributed approximately 20 pages of briefing to the Report, most of which is a regurgitation of arguments already made in its various pending motions and memoranda, which Plaintiffs were in turn required to review, consider, and in some instances respond to prior to submission of the Report to the Court. Plaintiffs and Wrestler Defendants believe WWE's lengthy contributions confuse the purposes of Rule 26(f) andare prepared, if the Court so desires, to file a separate Rule 26(f) Report for ease and convenience of the Court.

<u>WWE's Statement</u>:  WWE disagrees with Plaintiffs' characterization of the reason for the timing and length of this Rule 26(f) report.  On the contrary, the delay in filing this report is due to the fact that, despite promising during the Rule 26(f) conference that they would provide a draft Rule 26(f) report with Plaintiffs' positions the next day (October 13, 2015), Plaintiffs' counsel did not actually send that draft until the close of business on October 20, 2015 — more than a week after the conference was held.  On October 26, 2015 (three and a half business days later), WWE responded by inserting its positions in the joint report and noting that the report should be filed promptly since it was now complete with both parties'

positions.  Plaintiffs' counsel then took another four days until October 30, 2015 to provide a revised version of the Rule 26(f) report that they indicated was acceptable for filing.  Insofar as the length is concerned, this Rule 26(f) report addresses six different consolidated cases at different stages including two class actions.  The complexities are caused solely by the fact that Plaintiffs wasted time forum shopping, and have serially amended or sought to amend every one of their complaints in these consolidated cases thereby preventing the prompt adjudication of motions to dismiss.  Moreover, the Form 26(f) Report of Parties' Planning Meeting appended to the Local Rules specifically states that "the presiding judge needs to be informed of the nature of the claims and defenses in order to evaluate the reasonableness of the parties' proposed plan."  WWE has provided such information as it believed was necessary for the Court to do so.

4.    **Plaintiffs' and Wrestler Defendants' Statement**:  As was communicated to WWE prior to the discovery conference, Attorneys LaDuca, Flannery, and Gilreath had, and continue to have, full authority to discuss all issues relevant to the Rule 26(f) report, including the possibility of early settlement.  WWE only attempted to reschedule the previously agreed upon discovery conference after they learned that Mr. Kyros would not be attending, despite undersigned counsel's repeated representations that his presence was not required to discuss the issues set forth in Rule 26(f).

**WWE's Statement**:  WWE was specifically advised by Plaintiffs' counsel that Mr. Kyros would be participating in the Rule 26(f) conference.  Upon learning that Mr. Kyros actually would not be participating in the conference, WWE offered to reschedule the conference to enable his participation.  The need for Mr.

4

Kyros' participation in the conference was then demonstrated by the fact that, after Mr. Kyros committed to amending the Frazier and James complaints by October 30, 2015, Mr. Gilreath then disavowed that commitment in the Rule 26(f) conference and in this Rule 26(f) report.

5.      Attorney Jerry S. McDevitt, Curtis B. Krasik, and Jeffrey Mueller for Defendant and Plaintiff World Wrestling Entertainment, Inc. ("WWE").  WWE notes that Plaintiffs' lead counsel on all pending cases, Konstantine Kyros, refused to participate in the Rule 26(f) conference despite WWE's offer on three separate occasions to reschedule the conference for a time when Mr. Kyros would be able to participate.

6.      <u>Pending Motions</u>:  In accordance with the Court's October 2, 2015 Order (Dkt. 78), the parties agree that WWE's pending motion to dismiss the Singleton/LoGrasso case is ripe for review and adjudication by the Court.

## II.    CERTIFICATION

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan.  Counsel further certify that they have forwarded a copy of this report to their clients.

III.   **JURISDICTION**

    A.   **Subject Matter Jurisdiction**

        1.   ***Individual, Wrongful Death, and Class Actions***

**<u>Plaintiffs' Statement</u>**

    This Court has subject matter jurisdiction over the Individual and Wrongful Death Actions pursuant to 28 U.S.C. § 1332(a) based on diversity of citizenship of the parties.  This Court has subject matter jurisdiction over the Class Actions pursuant to 28 U.S.C. § 1332(d) in that the matters in controversy exceed $5,000,000.00 exclusive of interest and costs and some members of the proposed classes are citizens of states other than the state in which WWE has its primary place of business.

    **<u>WWE's Statement</u>**

    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

        2.   ***WWE's Declaratory Judgment Action***

**<u>Wrestler Defendants' Statement</u>**

    Wrestler Defendants have contested this Court's subject matter jurisdiction over the Declaratory Action brought against them in the motion to dismiss filed on September 21, 2015, alleging that WWE's case relies on speculative and contingent actions unripe for adjudication.

    **<u>WWE's Statement</u>**

    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as will be demonstrated when WWE files its opposition to the motion to dismiss on November 20, 2015.

B.     **Personal Jurisdiction**

1.     *Individual, Wrongful Death, and Class Actions*

**Plaintiffs' Statement**

Personal jurisdiction is not contested.  Plaintiffs will address the choice of law issues, raised below by WWE, in their response to WWE's Supplemental Memorandum.

**WWE's Statement**

Personal jurisdiction in this Court is not contested; however, WWE did contest the District of Oregon's jurisdiction over WWE in the Haynes Action before that case was transferred to this Court.  The Oregon court did not decide whether personal jurisdiction existed over WWE in the Haynes Action.  That unresolved issue has choice of law ramifications regarding Haynes' claims, as set forth in WWE's Supplemental Memorandum of Law Regarding the Applicable Law Governing Claims in the Haynes Action (Dkt. 84).

2.     *WWE's Declaratory Judgment Action*

**Wrestler Defendants' Statement**

Wrestler Defendants are not residents of the State of Connecticut and do not have sufficient minimum contacts with the State of Connecticut to give rise to personal jurisdiction.  Mr. Windham is a resident of the State of Florida and is confined to a wheelchair.  Mr. Billington is a resident of London, England and confined to a wheelchair.  Mr. Ware is a resident of Tennessee, and Mr. Perras is a resident of North Carolina.  Wrestler Defendants argue in the motion to dismiss pending before this Court that they do not have significant nexuses to the State of

Connecticut and did not agree to any choice of law provisions subjecting them to the personal jurisdiction of this Court.

The various John Does remain unnamed and whether they are subject to the personal jurisdiction of this Court cannot yet be determined.

### WWE's Statement

Personal jurisdiction in this Court was not contested by the Named Defendants in their motion to dismiss and any objections have been waived.  Even if the Named Defendants had not waived their objections to personal jurisdiction, this Court would have personal jurisdiction over them.

IV.    BRIEF DESCRIPTION OF CASE

A.    Individual, Wrongful Death, and Class Actions

### Plaintiffs' Statement

The Individual, Wrongful Death, and Class Actions concern WWE's egregious mistreatment of its wrestlers for its own benefit, as well as its concealment and denial of medical research and evidence concerning traumatic brain injuries suffered by WWE wrestlers.  Under the guise of providing "entertainment," WWE has, for decades, subjected its wrestlers to extreme physical brutality that it knew, or should have known, caused created latent conditions and long-term irreversible bodily damage, including brain damage, without providing adequate medical care. For most of its history, WWE has engaged in a campaign of misinformation and deception to prevent its wrestlers from understanding the true nature and consequences of the injuries they have sustained.  WWE's representations, actions, and inactions have caused its wrestlers to suffer, in the cases of Mr. Frazier and Matthew Osborne, death, and, in

8

the cases of Mssrs. Hayens, Singleton, and LoGrasso and numerous other wrestlers, long-term debilitating injuries, lost profits, premature retirement, medical expenses, and other losses.

Plaintiffs seek compensatory damages and other general relief for the wrongful death, loss of consortium, long-term chronic injuries, financial losses, expenses, and intangible human losses suffered by Plaintiffs as a result of WWE's willful, wanton, reckless, and grossly negligent conduct, which resulted in its wrestlers suffering death, brain trauma, concussions, and other related injuries.

WWE has moved to dismiss the *Singleton* and *Haynes* complaints, alleging that those claims fail based on statutes of limitations, the assumption of the risk doctrine, a lack of specificity, and a general failure to state a claim.

### *WWE's Statement*

WWE denies any liability on any of Plaintiffs' claims, and contends that the claims are the product of collusion, include fraudulent aspects, and, except for Singleton's claim, are all time-barred.  Plaintiffs' complaints assert claims for alleged traumatic brain injuries ("TBIs") sustained from voluntarily participating in activities where the risk of concussive and sub-concussive injuries are known, apparent, and reasonably foreseeable consequences of participation.  Many of the plaintiffs signed contracts expressly acknowledging that they freely assumed the risk of injury inherent in their profession.  In these circumstances, WWE did not breach any legal duty as alleged by Plaintiffs.  Additionally, WWE did not and indeed could not conceal scientific information in the public domain, nor make any factual misrepresentation to any wrestler regarding head injuries, and none have been identified in any complaint filed to date.  The publicly-available scientific

**9**

research regarding TBIs that WWE allegedly concealed is not a fact capable of supporting fraud/misrepresentation claims.  Such scientific research was recently described by another federal court judge as follows:  "The study of CTE is nascent, and the symptoms of the disease, if any, are unknown" and "[T]he speculation that repeated concussion or subconcussive impacts cause CTE remains unproven."  The scientific research cited by Plaintiffs in any event is publicly-available and therefore could not have been concealed by WWE.  Further, the claims of the various plaintiffs all involve different time periods, different science, different medical issues, and different personnel.  As such, the claims are especially inappropriate for class action treatment and are misjoined.

Plaintiffs' description of the case in this Rule 26(f) report contains multiple inaccurate statements.  First, Plaintiffs' description newly describes claims for alleged "long-term irreversible bodily damage" and "long-term debilitating injuries."  To the extent these claims are unrelated to TBIs, no such claims are pled in Plaintiffs' complaints and consequently these are not accurate descriptions of the claims at issue.  Second, Plaintiffs incorrectly assert that WWE has moved to dismiss the Singleton/LoGrasso case on, among other grounds, assumption of the risk doctrine. In fact, WWE moved to dismiss all negligence claims on the principle that WWE owed no duty to Plaintiffs under the rule adopted by the Connecticut Supreme Court in *Jaworski v. Kiernan*, 241 Conn. 399 (1997).  That aspect of WWE's motion to dismiss was premised on the admissions by Plaintiffs of the known and obvious risk of injury inherent in participating in professional wrestling.

In the Frazier and James Actions, on October 7, 2015, Mr. Kyros agreed to file amended complaints on or before October 30, 2015.  During the Rule 26(f) conference, Mr. Gilreath refused to disclose the nature of the amendments to those two complaints and, on October 29, 2015, disavowed the commitment to file such amended complaints on October 30, 2015, as Mr. Kyros had indicated would be done.  Without knowing the precise nature and scope of the claims that Plaintiffs intend to assert, WWE reserves its right to assert any and all defenses in response to such claims.  Based on prior complaints filed by Plaintiffs, to the extent the Plaintiffs in the Frazier and James Actions claim TBIs sustained during the time they performed for WWE, those claims are fatally time-barred under the Connecticut statutes of limitation/repose and are otherwise substantively defective for the reasons described in WWE's motion to dismiss the Singleton/LoGrasso Action.  To the extent the plaintiffs assert claims for wrongful death, those claims are also time-barred and substantively defective for, among other reasons, lack of proximate causation between alleged TBIs sustained while performing for WWE and Frazier's death from a heart attack five years after his last performance and Osborne's death from a drug overdose two decades after being a regular performer.

### B.    WWE's Declaratory Judgment Action

#### *WWE's Statement*

By its declaratory judgment action, WWE seeks a declaration that claims relating to TBIs and any other tort claim on behalf of Defendants Windham, Perras, Ware and Billington that Mr. Kyros specifically threatened against WWE, and on behalf of John Doe Defendants who are former performers of WWE who have not

performed for WWE within the past three years and have signed retainer agreements with Mr. Kyros, are time-barred under the Connecticut statutes of limitation/repose.  WWE has filed a motion for expedited discovery to obtain the names of all such John Doe Defendants so the complaint can be amended to join all necessary parties and the case can proceed expeditiously.

### Wrestler Defendants' Statement

According to its complaint, WWE seeks a declaration that claims relating to alleged TBIs and/or other tort claims are time-barred by the applicable statutes of limitations and statutes of repose under Connecticut law.  Wrestler Defendants' filed a motion to dismiss based on the absence of any case or controversy creating Article III standing and the absence of ripeness needed to create subject matter jurisdiction.  WWE is simply using the Declaratory Action as a vehicle to obtain a peremptory and misinformed ruling on Wrestler Defendants' potential claims.

C.    **Claims of Plaintiffs:**

1.    *Individual, Wrongful Death, and Class Actions*

### Proposed Class

All persons who currently or formerly wrestled for WWE or a predecessor company, and who reside in the United States.

### Claims for Relief

Plaintiffs seek relief based on WWE's fraudulent concealment of the effects of repeated head injuries and the failure to provide reasonable care.  Plaintiffs allege that WWE negligently allowed and even encouraged its wrestlers to return the wrestling ring and used its position of trust and authority to discourage

wrestlers from receiving medical care and treatment.  As a result of WWE's negligent and fraudulent course of conduct, Plaintiffs and other wrestlers have suffered and continue to suffer serious, permanent, and debilitating physical injuries, emotional distress, pain, and economic damages.  Because the Individual and Class Action Plaintiffs and putative class members have suffered latent traumatic brain injuries, the symptoms of which develop over time and often manifest themselves later in life, they are exposed to increased risks of a number of medical and emotional problems.  They therefore seek a declaration requiring WWE to establish a medical monitoring program and trust fund for its operation.  All Plaintiffs also seek, for themselves and the putative class, compensatory and punitive damages, attorneys' fees and costs, and any other relief permitted.  The Wrongful Death Plaintiffs additionally seek damages for loss of consortium and the wrongful deaths of Matthew David Osborne and Nelson Lee Frazier.

2.   *WWE's Declaratory Judgment Action*

As described above, WWE seeks a declaration that claims relating to TBIs and other torts on behalf of Defendants Windham, Perras, Ware and Billington that Mr. Kyros specifically threatened against WWE, and on behalf of John Doe Defendants who are former performers of WWE who have not performed for WWE within the past three years and have signed retainer agreements with Mr. Kyros, are time-barred under the Connecticut statutes of limitation/repose.

D.   **Defenses and Claims (Counterclaims, Third Party Claims, Cross Claims) of Defendant:**

1.   *Class Actions; Individual Actions; Wrongful Death Actions*

WWE has moved and/or will move to dismiss each of Plaintiffs' complaints on multiple grounds.  First, the claims of all Plaintiffs except Singleton are time-

13

barred under the applicable Connecticut statutes of limitation/repose.  Second, Plaintiffs' negligence-based claims must be dismissed because there was no duty of care to protect Plaintiffs from injuries associated with the inherent risks of professional wrestling and within the normal expectations of professional wrestlers.  Third, Plaintiffs' fraud and misrepresentation claims must be dismissed because they fail to allege the misrepresentation or omission of a past or present material fact.  Fourth, Plaintiffs' fraud and misrepresentation claims must be dismissed because they fail to plead any facts that would give rise to a duty to disclose and no such claim can be based on information that is publicly available. Fifth, Plaintiffs' fraud and misrepresentation claims fail to comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Sixth, Plaintiffs' wrongful death claims lack both factual causation and proximate causation.

Additionally, Plaintiffs' claims are not amenable to a putative class action when the injuries are, by their very nature, personal.  As the Court recognized at the June 8, 2015 status conference with respect to the claims of Singleton and LoGrasso, "let's face it, where's — where's the typicality in Mr. LoGrasso and Mr. Singleton?  How could you allege that they're representative of a whole class of people that fought for the WWE?" (Singleton Dkt. 73 at 56).  On the contrary, the Court correctly observed that even the individual claims of Messrs. Singleton and LoGrasso actually were misjoined.  As the Court noted, "they were both injured at different times in different places as a consequence of different conduct."  *Id.* at 55. The Court further noted, "They fought at different times, with different people, different number of times.  I'm assuming they have different medical conditions. They've been seen by different doctors.  They have different diagnosis.  They have

14

different prognosis.  Is that true?"  Mr. Kyros answered  "Yes, that is."  The Court then observed, "So they don't have the same nucleus of fact.  The only thing they have in common is that they both assert that their injuries emanated from working for the defendant."  Mr. Kyros answered, "That is correct."  *Id.* at 54-55.

### 2.    *WWE's Declaratory Judgment Action*

As set forth more full in their motion to dismiss, Wrestler Defendants assert that this Court lacks both standing and subject matter jurisdiction over the claims brought against them by WWE and that the Court lacks personal jurisdiction over Wrestler Defendants who have no minimum contacts with the State of Connecticut.

## V.    STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties are not able to enter into such a stipulation at this time.

## VI.    CASE MANAGEMENT PLAN

### A.    Standing Order on Scheduling in Civil Cases

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases, except as noted below.

### B.    Scheduling Conference with the Court

**_Plaintiffs' and Wrestler Defendants' Statement_**

Plaintiffs do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

**_WWE's Statement_**

WWE requests a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).  For the reasons set forth below,

15

**WWE believes that discovery in this case should be stayed until after the disposition of WWE's pending motions to dismiss the Singleton/LoGrasso and Haynes Actions and the motions to dismiss the McCullough Action (which will be filed by November 20, 2015) and the Frazier and James Actions (to which Plaintiffs' counsel agreed WWE would have 60 days to respond).  WWE believes that a pretrial conference with the Court would be beneficial to discuss the significant difficulties in framing a reasonable discovery plan at this time and, conversely, the substantial efficiencies for the parties and the Court to be gained by the limited stay of discovery sought by WWE.  In short, the circumstances of these consolidated cases have not changed since the parties' June 8, 2015 status conference during which the Court stated that given the fundamental pleading deficiencies — which have not been cured and rather have continued in each of the subsequent complaints filed by Plaintiffs — the Court was "not going to order discovery because it would be a waste of the defendant's time.  It's going to generate unnecessary work for the defense and unnecessary work for the Court" (Singleton Dkt. 73 at 65).  This observation by the Court remains equally true today — in the absence of a stay of discovery pending a ruling on the timeliness of Plaintiffs' claims, the Court would be deluged with collateral motions seeking to prevent costly and burdensome discovery on time-barred claims.**

**C.    Early Settlement Conference**

***Plaintiffs' and Wrestler Defendants' Statement***

**Plaintiffs certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice and**

believe and early resolution is possible and beneficial.  WWE refused to consider settlement in during the Rule 26(f) discovery conference.

Plaintiffs attempted to discuss early settlement resolution with WWE during the Rule 26(f) discovery conference.  WWE was not prepared or willing to discuss even the possibility of having future early settlement discussions on a parallel track. Plaintiffs and Wrestler Defendants believe early settlement discussions could be fruitful and have spent a lot of time thinking of creative ways to resolve these matters.  WWE's counsel seemed unprepared to discuss whether an early settlement conference should happen.

1.      Plaintiffs and Wrestler Defendants request an early settlement conference.

2.      Plaintiffs and Wrestler Defendants would agree to a settlement conference with the presiding judge, a magistrate judge, a parajudicial office, or a special master.

3.      Plaintiffs and Wrestler Defendants do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

_**WWE's Statement**_

Plaintiffs' statement misstates WWE's position on settlement and the parties' discussion in that regard during the Rule 26(f) conference.  Contrary to Plaintiffs' assertion that "WWE's counsel seemed unprepared" to discuss settlement, WWE's counsel advised in the Rule 26(f) conference that WWE has no settlement offer to make; that it has no interest in settling time-barred claims; and that the continued prosecution of time-barred claims was a continuing Rule 11 violation, for which WWE would seek remedies.  In light of WWE's pending Rule 11 motion in the

17

James Action and pending motions to dismiss Plaintiffs' complaints based on the numerous fatal deficiencies described above, WWE believes that an early settlement conference would not be a productive use of the Court's time and that the better course is to permit the Court to focus on the dispositive issues presented by WWE's motions.  WWE believes that the resolution of the pending motions would be more beneficial toward reaching an overall resolution of these cases.  The Court's decision on limitations/repose alone could eliminate all Plaintiffs, except Singleton.  If the Court then finds that Singleton's claims are substantively defective, all claims brought by the various Plaintiffs would have been dismissed.  Even if the Court decides that Singleton's claim survives dismissal motions, it would be a narrow individual claim, not a class action.  Accordingly, WWE does not request an early settlement conference.

> D.      Joinder of Parties and Amendment of Pleadings

> ***Plaintiffs' Statement***

1.      Plaintiffs should be allowed until November 23, 2015 to file motions to join additional parties and motions to amend the pleadings.  Plaintiffs should be allowed 60 days to file a response to any motions to dismiss filed by WWE.

2.      WWE should be allowed until November 23, 2015 to file motions to join additional parties and 60 days to file a response to any amended pleadings filed by Plaintiffs.

3.      Plaintiff objects to WWE's excessive and contentious verbiage concerning joinder of parties and amendment to pleadings.  WWE seeks to impose its preferred arrangement on Plaintiffs and unnecessarily create issues where none existed, simply for the purpose of tainting the Court's perception of the

Plaintiffs, rather than allowing the procedural process to unfold in due course. WWE has already stated its intention to file motions to dismiss, rather than Answers, making continued argument almost entirely irrelevant.  The dates proposed by Plaintiffs represent their best attempt to reach meaningful deadlines, while also accommodating previous requests by WWE to not have deadlines occur on top of major holidays in December.

### WWE's Statement

In accordance with the Court's October 2, 2015 Order, WWE's counsel repeatedly asked Plaintiffs' counsel if they intended to prosecute the Frazier and James Actions and, if so, when they intended to file amended complaints in those cases.  After WWE's counsel was forced to send six separate emails attempting to confirm these basic points because various of Plaintiffs' counsel kept refusing to answer and referring the questions to other Plaintiffs' counsel, WWE's counsel was finally advised in writing by Mr. Kyros on October 7, 2015 that Plaintiffs intended to amend the Frazier and James complaints by October 30, 2015. Plaintiffs' counsel further agreed that WWE would have at least sixty (60) days to respond from the date those amended complaints are filed.  Notwithstanding Mr. Kyros' representation that Plaintiffs would file their amended complaints in the Frazier and James Actions on October 30, 2015, Plaintiffs' counsel have now repudiated that commitment and indicate in their statement that they purportedly now request until November 23, 2015 to file amended pleadings.  Plaintiffs' counsel did not explain in the Rule 26(f) conference and do not explain in their statement why they need so long for such amendments.  WWE believes Plaintiffs do not need until November 23, 2015 to file amended complaints in the Frazier and

19

James Actions.  Those cases were filed on February 19, 2015 and June 26, 2015, respectively, and thus Plaintiffs' counsel have had more-than-sufficient time to determine any amendments to their pleadings that may be necessary.  More specifically, in *James*, Plaintiffs have had over three months to amend since being served with WWE's motion for sanctions on July 17, 2015 but have not done so.  Similarly, in *Frazier*, Plaintiffs have had over four and one-half months since the parties' June 8, 2015 status conference to amend their complaint to, among other things, delete the allegations and photographs of unrelated dead wrestlers about which the Court specifically admonished Plaintiffs' counsel in that conference but Plaintiffs again have not done so.  In fact, Plaintiffs already missed their deadline to amend the complaint in *Frazier*.  Plaintiffs' previous Motion to Postpone Status Conference and to Enter Interim Scheduling Order (Dkt. 57) seeking to postpone the status conference that had been scheduled by the Court for August 27, 2015 specifically requested that "plaintiffs should have until September 18, 2015 to file amended complaints in *McCullough* and *Frazier*."  The Court granted Plaintiffs' motion on August 21, 2015 and ordered that "[t]he deadline for responsive pleadings will be extended to September 20, 2015.  Further extensions of this deadline will not be permitted" (Dkt. 58).  Although Plaintiffs filed an amended complaint in *McCullough* on September 21, 2015, no amended complaint was filed in *Frazier*.  Plaintiffs previously amended their pleadings in the Singleton/LoGrasso, Haynes and McCullough Actions and consequently no further amendments are permitted under the Federal Rules absent leave from the Court.  Moreover, Plaintiffs' serial amendment of their pleadings — nine original or amended pleadings have been filed to date — has prevented the efficient

adjudication of motions to dismiss to determine whether any of the Plaintiffs has asserted a cognizable claim.  As such, Plaintiffs should not be permitted to further amend any other complaints and should be held to their agreement to amend the Frazier and James complaints by October 30, 2015, with WWE's response due 60 days thereafter.  To the extent Plaintiffs now suggest that they did not commit to amend by the October 30th date, and are just proposing dates to accommodate WWE during the holidays, that statement is false in both respects.  Mr. Kyros specifically committed in writing to amend the Frazier and James complaints by October 30, 2015 and WWE indicated in writing that it would file its motions to dismiss 60 days thereafter notwithstanding the fact that it interfered with the holidays.

     2.     WWE has a pending motion for expedited discovery in connection with the Declaratory Judgment Action (Dkt. 60).  If granted by the Court, WWE should be allowed until thirty (30) days after WWE receives full compliance with its subpoena from Kyros Law PC identifying the John Doe Defendants in the Windham Action to amend its complaint.  If not granted by the Court, WWE should be allowed thirty (30) days after denial of its motion for expedited discovery to add other defendants.  Thereafter, WWE should have the right to seek leave to amend if additional John Doe Defendants are identified.

     E.     Discovery

     ***Plaintiffs' and Wrestler Defendants' Statement***

     1.     This Court's Standing Order on Pretrial Deadlines provides that "[t]he filing of a motion to dismiss shall not result in the stay of discovery or extend the

time for completing discovery."  Plaintiffs and Wrestler Defendants anticipate that discovery will be needed on, among other things, the following subjects:

      a.      The involvement of Jerry McDevitt and law firm of K&L Gates in creating, implementing, and administering WWE's Wellness Program;

      b.      WWE's creation, implementation, and administration of its Wellness Program;

      c.      WWE's representations to the public and to its wrestlers, trainers, medical staff, and other  employees and independent contractor regarding its Wellness Program;

      d.      WWE's policies and procedures related to the medical monitoring and treatment of its wrestlers before, during, and after performances;

      e.      WWE policies regarding any medical clearances required to participate in performances;

      f.      Research conducted by or funded by WWE related to traumatic brain injuries;

      g.      WWE's knowledge of research and science related to traumatic brain injuries;

      h.      WWE's representations to its wrestlers, trainers, medical staff, other employees and independent contractors, and the public related to traumatic brain injuries;

      i.      Identities and qualifications of medical staff and trainers employed, either directly or as independent contractors, by WWE;

      **j.**      **Training provided or required by WWE of its medical staff, trainers, and any other employees or independent contractors responsible for monitoring the health and safety of its wrestlers before, during, and after exhibitions;**

      **k.**      **Training provided or required by WWE for its wrestlers; and any other employees or independent contractors who had responsibility for monitoring the health and safety of its wrestlers before, during, and after exhibitions;**

      **l.**      **Agreements entered into between WWE and its medical staff, trainers, and**

      **m.**      **Agreements entered into between WWE and its wrestlers;**

      **n.**      **Agreements entered into by WWE related to its pay-per-view and other live exhibitions; and**

      **o.**      **All documents, including e-mails and other correspondence, related to the topics listed above.**

      **2.**      **Initial disclosures pursuant to Rule 26(a)(1) will be exchanged by the parties on November 9, 2015.**

      **3.**      **All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced immediately following the entry of a scheduling order by this Court and completed (not propounded) within 12 months.**

      **4.**      **Discovery will not be conducted in phases.**

      **5.**      **Plaintiffs and Wrestler Defendants anticipate that they will require a total of 20 depositions of fact witnesses. The depositions will commence be completed by the close of discovery.**

6.      Plaintiffs will request permission to serve more than 25 interrogatories.

7.      Plaintiffs in the Individual, Wrongful Death, and Class Actions intend to call expert witnesses at trial. Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) two months after the close of discovery. Depositions of any such experts will be completed seven months after the close of discovery.

8.      WWE will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) three months after the close of discovery.  Depositions of any such experts will be completed seven months after the close of discovery.

9.      Damages analyses in the Individual, Wrongful Death, and Class Actions will be provided by any party who has a claim or counterclaim for damages two months after the close of discovery.

### *WWE's Statement*

WWE believes that all discovery deadlines should be stayed until after the disposition of WWE's pending motions to dismiss the Singleton/LoGrasso and Haynes Actions and the motions to dismiss the McCullough Action (which will be filed by November 20, 2015) and the Frazier and James Actions.[1]  In the Haynes Action, the parties agreed and jointly moved to defer Rule 26 obligations until after the court decided the motion to dismiss since such expenses would be avoided if the case was dismissed (Haynes Dkt. 38).  The court so ordered (Haynes Dkt. 39).

_____

[1] WWE concurrently is filing a formal motion to stay discovery.

Additionally, the Court recognized at the parties' June 8, 2015 status conference in the Singleton/LoGrasso Action that "until you have a complaint that's worthy of discovery, it's pointless to order the defense to conduct discovery because the defense would be wasting their time . . . . [A]s long as the complaint is riddled with irrelevant and hyperbolic material, it is a waste of time — a violation of Rule 1 in fact to have defendant proceed with discovery" (Singleton Dkt. 73 at 63-64).  The Court went on to admonish Plaintiffs' counsel that "your complaint doesn't [put the defendant on notice of the plaintiffs' claims].  Your complaint puts the defendant on notice of things that aren't claims, that are general notions, that are irrelevant . . . It's punctuated with a lot of superfluous information."  *Id.* at 64-65.  As a result of these fundamental pleading deficiencies — which have not been cured and rather have continued and actually worsened in each of the subsequent complaints filed by Plaintiffs — the Court ruled it was "not going to order discovery because it would be a waste of the defendant's time.  It's going to generate unnecessary work for the defense and unnecessary work for the Court."  *Id.* at 65.  Accordingly, the Court did not permit Plaintiffs to commence discovery following the June 8, 2015 status conference.

These observations by the Court remain equally true today; if anything, they have been exacerbated.  Ignoring the Court's specific admonition to Plaintiffs' counsel at the June 8, 2015 status conference that there is no basis to "reference every wrestler that's dead" or other "superfluous, hyperbolic, inflammatory opinions and references to things that don't have any relevance" under the Federal Rules' pleading standard, *see id.* at 60, 62, Plaintiffs' counsel included in the James Complaint filed on June 26, 2015 <u>nearly 3 weeks after the status</u>

**conference** — **just as they had in the Frazier Complaint** — **thirty-eight separate paragraphs of allegations and color photographs of wrestlers who died but have no relevance or connection whatsoever to the place, time, or events surrounding the death at issue in that lawsuit.** *See* **James Dkt. 1 at ¶¶ 92-130.  In the Rule 26(f) conference, WWE's counsel asked if these allegations and photographs regarding such irrelevant deceased wrestlers would be removed from the amended Frazier and James complaints.  Plaintiffs' counsel refused to answer yes or no, responding instead that they are still looking into that.  More generally, Plaintiffs' counsel could not answer WWE's counsel's questions as to how they intend to amend the Frazier or James complaints in any respect.**

**WWE cannot frame a meaningful discovery plan without such information. Plaintiffs' counsel have made clear that the allegations of the Frazier and James complaints will change, but have refused to explain the scope or nature of those changes.  The scope and nature of the changes could have a profound effect on the cost, scope, and length of discovery.  To the extent that the allegations and photographs of other dead wrestlers remain part of the pursuit of time-barred claims in either the Frazier or James amended complaints, WWE would be compelled to not only move to dismiss but to strike such allegations.  If not stayed pending decision on such motions, WWE would have to conduct discovery on the cause and manner of death of approximately 40 people who are not parties to any of these related cases.  Dozens of these people died long after any affiliation with WWE, and many died decades ago creating issues with stale evidence.  Worse still, Plaintiffs' counsel stated in the Rule 26(f) conference that they intend to file additional lawsuits against WWE on behalf of new plaintiffs, which they previously**

agreed would not be filed prior to discussing such actions at the next status conference with the Court (Dkt. 57).  Thus, contrary to their position in moving to dismiss WWE's complaint in the Windham Action that there is no actual case or controversy about additional lawsuits, Plaintiffs' counsel effectively conceded that there is an actual case or controversy between WWE and John Doe Defendants who currently have not filed suit.  This revelation of an intent to file additional lawsuits against WWE underscores WWE's inability to frame a meaningful discovery plan without knowing the scope of the allegations and claims asserted against it by currently-unnamed plaintiffs represented by Plaintiffs' counsel.

Although the full scope of allegations and claims is not known at this time, based on WWE's current understanding of the nature of Plaintiffs' claims, the cost and scope of discovery on such claims will be substantial, which is especially egregious since all but one plaintiff is time-barred.  Plaintiffs' claims heavily rely on the alleged state of the science underlying CTE and concussions at various times, WWE's alleged knowledge of that science, and allegations that WWE somehow concealed this publicly-available information.  Indeed, the term CTE was not coined to describe the pathological condition until after it was first discovered in a NFL player in 2002 by the medical examiner of Allegheny County, Pennsylvania in the case of Mike Webster.  As a result, WWE must conduct fact discovery regarding the numerous scientific papers cited in Plaintiffs' complaints, including depositions of their authors, as well as other scientists and experts who published papers with findings contrary to the conclusions alleged in Plaintiffs' complaints.  Additionally, WWE must seek discovery of the multiple wrestling organizations, many of which are now defunct, to obtain the medical and injury

histories of the Plaintiffs who performed for other promotions in addition to WWE. Such extensive factual discovery of third parties undoubtedly will be costly, difficult, and time-consuming.

The cost and scope of discovery will be materially affected and indeed squarely determined by the Court's rulings on WWE's pending and anticipated motions to dismiss, particularly as to whether Plaintiffs' claims are barred by the Connecticut statutes of limitation/repose.  WWE believes that all of the plaintiffs' claims are time-barred except for those of Singleton (whose claims are substantively defective for the reasons explained in WWE's motion to dismiss). Singleton is not a class action claim, but all of the claims of alleged class representatives are time-barred for reasons WWE has articulated in the motions to dismiss previously filed in the Haynes Action and the Singleton/LoGrasso Action. As a way to expedite matters and simplify the remaining briefing schedule and decisions for the Court, WWE's counsel proposed in the Rule 26(f) conference that Plaintiffs identify the purported basis, if any, for asserting tolling of limitations/repose in the Frazier, James and McCullough Actions and for the named defendants in WWE's Declaratory Judgment Action, and the parties would then brief the applicability of any such tolling doctrines.  Plaintiff's counsel, however, rejected this proposal.  Accordingly, WWE believes that discovery should be stayed in order to avoid substantial costs and expenses that would be unnecessary if the Court dismisses the plaintiffs' claims in their entirety.

1.      In the event that discovery is not stayed and WWE is denied repose under Connecticut law on all pled claims of all Plaintiffs, the scope of discovery based on the current allegations of Plaintiffs' complaints would be massive,

expensive and contentious.  WWE fundamentally disputes the relevance and discoverability of most, if not all, of the subjects on which Plaintiffs claim to need discovery — indeed the very first subject identified by Plaintiffs is the deposition of WWE's lead trial counsel and subpoena to its law firm — which portends contentious discovery disputes that will need to be adjudicated by the Court in lieu of focusing on the dismissal motions.  Additionally, discovery into purported findings of CTE by various third party entities and brain banks will be difficult and will in all probability raise privacy issues regarding certain findings.  For example, there are many published reports as to the identities of persons tested who did have CTE as well as the ante-mortem symptoms of such persons.  There are also public reports indicating that persons suspected of having CTE did not have it upon testing but those names and associated concussion histories are not typically disclosed, perhaps due to privacy issues.  Nevertheless, discovery as to these individuals is as important as discovery about those who did test positive for CTE.  If the Court permits discovery to proceed unrestrained by principles of repose, WWE anticipates that discovery will be needed on, among other things, the following subjects:

    a. Collusion and conversations among various Plaintiffs regarding their claims in, and expectations about, these lawsuits, including the bases for such claims and expectations;

    b. Reconstruction of a complete medical history of each Plaintiff;

    c. Medical examination of each Plaintiff pursuant to Fed. R.  Civ. P. 35;

    d. Complete examination of each Plaintiff's wrestling activities outside of WWE;

e.  **Complete history of each Plaintiff since last performing for WWE;**

f.  **Discovery of each Plaintiff's employment and other activities since last performing for WWE, including criminal histories with respect to at least Haynes, Windham and Osborne.**

g.  **Third party discovery of other wrestling organizations for which various of the Plaintiffs performed, including defunct organizations such as World Championship Wrestling (WCW) and Extreme Championship Wrestling (ECW);**

h.  **Third party discovery of all doctors who have treated each Plaintiff before, during, and after performing for WWE;**

i.  **Third party discovery of scientific research regarding TBIs and CTE underlying Plaintiffs' complaints;**

j.  **Third party discovery regarding the authors of the at least seventeen publications regarding TBIs and CTE cited in Plaintiffs' complaints;**

k.  **Wrestler understandings of the known risks of participation in professional wrestling;**

l.  **Conversations each Plaintiff claims to have had with anyone at WWE regarding TBIs;**

m. **Medical treatment, if any, of each Plaintiff by WWE;**

n.  **Third party discovery regarding the allegations that two professional wrestlers were diagnosed with CTE, including, without limitation, examination of Dr. Bennett Omalu, discovery as to whether there is chain of custody evidence for the brains of the two wrestlers he claims to have**

examined, and complete reconstruction and analysis of evidence on which those diagnoses supposedly were based;

o.  Third party discovery regarding any diagnosis of CTE, whether in a professional wrestler, football player, hockey player, etc.;

p.  Third party discovery regarding the identity, concussion history, and behavioral history of persons who have been tested for CTE and found not to have it;

q.  Third party discovery of the basis for Plaintiffs' allegation that a consensus has developed that certain symptomology is associated with CTE;

r.  Communications between or among Plaintiffs on social media relating to the lawsuits;

s.  Posts by Plaintiffs on social media relating to the lawsuits;

t.  Third party discovery of internet service providers that host any social media used by Plaintiffs; and

u.  All solicitations and communications by Mr. Kyros or other lawyers affiliated with him, and retainer agreements, sent to wrestlers who did <u>not</u> agree to be represented by Mr. Kyros.

2.      WWE does not believe that a date for the exchange of initial disclosures should be set at this time for the reasons described above.

3.      Plaintiffs' statement that all discovery should be completed in 12 months is wildly unrealistic and, in fact, internally inconsistent with the rest of Plaintiffs' proposed discovery deadlines.  For example, despite proposing that all discovery including depositions of expert witnesses should be completed within

12 months, Plaintiffs inconsistently propose that expert reports should be provided two months after the close of discovery for plaintiffs and three months after the close of discovery for defendant, and depositions of any such experts should be completed seven months after the close of discovery.  Thus, in reality, Plaintiffs are proposing 19 months — not 12 months — to complete all discovery, which remains completely unfeasible based on the current allegations of Plaintiffs' complaints.

4.      Until the Court issues rulings on the motions to dismiss and, if necessary, motions to strike, it is premature to assess whether discovery should be conducted in phases.  It is possible that, depending on the Court's rulings on the motions to dismiss, phased discovery may be beneficial in a number of respects.  For example, as noted above, all of the complaints (except for Singleton's) are time-barred on their face and, therefore, depend on whether available tolling doctrines have been pled.  While WWE contends that no such tolling doctrines have been pled and consequently WWE's motions to dismiss should be granted, in the event the Court were to determine that a tolling doctrine had been sufficiently pled, it would be efficient to conduct limited discovery on the actual facts related to tolling followed by briefing on the applicability of any such tolling doctrine for the Court to ascertain if a timely claim exists before engaging in costly and burdensome discovery on the merits.  Likewise, in the event the Court does not dismiss the Haynes or McCullough complaints, bifurcated discovery on class certification and merits issues would be appropriate.  In any event, to the extent Plaintiffs are found to have stated any viable claim, it would be appropriate to phase fact and expert discovery, as Plaintiffs propose in their

statement.  Although fact and expert discovery should be phased, because Plaintiffs' factual allegations heavily rely on the alleged state of the science underlying CTE and TBIs, it must be noted that fact discovery would include depositions and discovery from experts involved in the historical scientific findings and publications.

5.    WWE does not know the basis for Plaintiffs' claimed need for 20 depositions of fact witnesses; however, based on Plaintiffs' current allegations WWE anticipates that it would need significantly more than the 10 depositions provided under the Federal Rules given that there currently are 11 named former-wrestler plaintiffs/defendants and Kyros has publicly stated that he has been retained by dozens more former-wrestlers who would fall within the definition of John Does in the Windham Action.  Any physicians who have treated any of the Plaintiffs would need to be deposed.  Other performers identified by Plaintiffs as having injured them would need to be deposed.  Plaintiffs also identified at least 17 publications in their complaints on which their claims purport to rely and WWE would need to depose the authors of these publications.

6.    WWE's position on whether it requires more than 25 interrogatories depends on how the Court is treating each case in these consolidated proceedings.  WWE believes that it should be permitted 25 interrogatories for each distinct plaintiff.  Conversely, WWE believes that Plaintiffs collectively should be permitted to serve a total of 25 interrogatories on WWE.  WWE also believes that the Court should order the use of "fact sheets" to be answered by each plaintiff under penalty of perjury to efficiently facilitate the disclosure of certain basic information relevant to this litigation without the need for separate interrogatories

33

or document requests.  Additionally, given the nature of Plaintiffs' claims, there is a pronounced need for contention interrogatories to flesh out the basis for their claims because each plaintiff makes various allegations about the purported state of the science but then also asserts that they did not know that state of the science.

7.     At this time, WWE cannot decide, and has not decided, what, if any, experts it would call at any trial which might occur.  For the reasons described above, WWE does not believe it is possible to set a schedule with respect to the disclosure of expert reports or expert depositions at this time.  Nevertheless, it is clear that Plaintiffs' statement in this regard is internally-inconsistent and unfeasible.  Because Plaintiffs' have the burden of proof, Plaintiffs must disclose any expert reports and make any such experts available for depositions before WWE will be in a position to determine if it desires to retain experts and/or prepare its own expert reports.  WWE should then have at least two months after the deadline for deposing Plaintiffs' experts for disclosing its expert reports.

Due to the uncertainties described above, Defendant reserves the right to seek to modify the limitations of the Federal Rules of Civil Procedure on interrogatories and depositions, if necessary, at a later date.

8.     Undersigned counsel have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such

information.  The parties agree to abide by their general obligations under the Federal Rules of Civil Procedure and common law to preserve documents and information.

9.      Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties will follow the procedures set forth in Paragraph 18 of the Court's Standing Protective Order for asserting claims of privilege after production.

### H.  Dispositive Motions

*__Plaintiffs' and Wrestler Defendants' Statement__*

Dispositive motions will be filed one month after the close of discovery, including all expert discovery.

*__WWE's Statement__*

Plaintiffs' statement does not make sense because, under the proposed schedule, dispositive motions would be due before expert discovery is even completed.  WWE believes that dispositive motions may be filed at any time and not later than 60 days after the close of discovery, including all expert discovery.

### I.  Class Certification Motions

*__Class Action Plaintiffs' Statement__*

Class certification motions will be filed nine months after the close of discovery, including all expert discovery.  The current deadline for filing a motion for class certification in the *McCullough* action is November 20, 2015 (60 days from the filing of the Amended Complaint), notwithstanding WWE's histrionics regarding the procedural history of these cases.  The Rule 26(f) Report is the appropriate

vehicle, at this early stage of litigation when no discovery plan has been put in place by the Court, for seeking a modification of that deadline.

### WWE's Statement

WWE believes the deadline for filing motions for class certification in the Standing Order on Scheduling in Civil Cases should not be modified.  Under the Standing Order, motions for class certification must be filed within 60 days after the transfer of an action from another District.  Here, the motion for class certification in the McCullough Action was due on September 11, 2015 (60 days from transfer on July 13, 2015) and the motion for class certification in the Haynes Action was due on September 28, 2015 (the next business day after 60 days from transfer on July 28, 2015).  WWE disagrees with Plaintiffs' statement indicating that the current deadline for moving for class certification in the McCullough Action is November 20, 2015 and further notes that Plaintiffs do not dispute that the deadline for moving for class certification in the Haynes Action was September 28, 2015.  Accordingly, Plaintiffs have defaulted on their time to file motions for class certification.

This outcome is appropriate given the procedural gamesmanship of Plaintiffs' counsel in the litigation of such class actions.  After the Singleton Action was transferred to this Court, which at the time purported to be a class action, Mr. Kyros caused the virtually identical McCullough Action to be filed as a putative class action in the U.S. District Court for the Central District of California and then attempted to conceal his involvement in the McCullough Action by retaining local California counsel to sign the pleadings in order to maximize their ability to distance themselves from Mr. Kyros' prior "agree[ment] that the District of Connecticut is an appropriate forum" (Singleton Dkt. 11).  WWE's counsel

36

requested on no fewer than nine separate occasions that Kyros and his associates confirm or deny Kyros' involvement in the McCullough Action and his representation of those plaintiffs, but they refused to do either.  Finally, but only after the Central District of California thwarted his deception by transferring the McCullough Action to this Court, Kyros admitted that he "referr[ed] residents of California to a reputable and well-qualified California law firm" (Dkt. 51 at 11).  After filing the McCullough Action, Plaintiffs' counsel abandoned the class-based allegations in the first amended complaint filed in the Singleton Action in an effort to circumvent this Court's jurisdiction and instead pursue the class action in California, which does not have statutes of limitations/repose as strict as Connecticut.  When that gamesmanship failed, the same class action allegations that Plaintiffs' counsel abandoned in their first amended complaint in the Singleton Action were then re-asserted in the McCullough amended complaint.  Plaintiffs' counsel could have filed their motion for class certification in the Singleton Action months ago instead of abandoning it, as well as in the Haynes and McCullough Actions since those actions were transferred to this Court.  Plaintiffs' counsel should not be effectively rewarded for their unsuccessful gamesmanship in seeking to circumvent this Court's jurisdiction and the strict Connecticut statutes of limitation/repose.

### J.  Joint Trial Memorandum

#### *Plaintiffs' and Wrestler Defendants' Statement*

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed on a date to be set by the Court following the completion of briefing on class certification.

### *WWE's Statement*

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed within sixty (60) days after the Court rules on all summary judgment motions, if any claim remains to be tried.

## VI.  TRIAL READINESS

### *Plaintiffs' and Wrestler Defendants' Statement*

The case will be ready for trial by within 2 years of the commencement of discovery.

### *WWE's Statement*

WWE believes that it is not feasible that these consolidated cases will be ready for trial by within 2 years of the commencement of discovery based on the current allegations of Plaintiffs' complaints.  WWE believes that it is not possible to state when any claims would be ready for trial until the Court issues its decisions on the motions to dismiss, including, most specifically, the statute of limitation/repose issue.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

*Individual and Class Action Plaintiffs*

By: *s/ William  M. Bloss*            Date: October 30, 2015


   *s/ Charles J. LaDuca*          Date: October 30, 2015
   Charles J. LaDuca

**Wrongful Death Plaintiffs and Wrestler Defendants**


**By:** *s/ R. Christopher Gilreath*       **Date:** October 30, 2015
       R. Christopher Gilreath


**WWE**


**By:** *s/ Jerry S. McDevitt*       **Date:** October 30, 2015
       Jerry S. McDevitt

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day October, 2015, a copy of foregoing Report of Rule 26(f) Planning Meeting was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*s/ William M. Bloss*
**William M. Bloss**

## ATTESTATION

Pursuant to this Court's CM/ECF Policies and Procedures Manual, I attest that concurrence in the filing of this document has been obtained from the other signatories.

*s/ William M. Bloss*

**William M. Bloss**