## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH, a/k/a "Big Russ McCullough," RYAN SAKODA, and MATTHEW R. WIESE, a/k/a "Luther Reigns," individually and on behalf of all others similarly situated,**<br><br>     **Plaintiffs,**<br><br>**vs.**<br><br>**WORLD WRESTLING ENTERTAINMENT, INC.,**<br><br>    **Defendant.** | **LEAD CONSOLIDATED CASE NO. 3:15-cv-01074-VLB**<br><br><br><br><br><br>**DECEMBER 21, 2015** |

---

## DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT IN THE JAMES ACTION

---

**Thomas D. Goldberg (ct04386)**
**Jonathan B. Tropp (ct11295)**
**Jeffrey P. Mueller (ct27870)**
**DAY PITNEY LLP**
**242 Trumbull Street**
**Hartford, CT 06103**
**Phone:  (860) 275-0100**
**Facsimile:  (860) 275-0343**
**Email:  tgoldberg@daypitney.com**
**Email:  jbtropp@daypitney.com**
**Email:  jmueller@daypitney.com**

**Jerry S. McDevitt (pro hac vice)**
**Terry Budd (pro hac vice)**
**Curtis B. Krasik (pro hac vice)**
**K&L GATES LLP**
**K&L Gates Center**
**210 Sixth Avenue**
**Pittsburgh, PA  15222**
**Phone: (412) 355-6500**
**Facsimile:  (412) 355-6501**
**Email:  jerry.mcdevitt@klgates.com**
**Email:  terry.budd@klgates.com**
**Email:  curtis.krasik@klgates.com**

*Counsel for Defendant*
*World Wrestling Entertainment, Inc.*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................. 1

II. ARGUMENT ..................................................................................... 12

   A. Plaintiff's Wrongful Death Claim Is Governed By Connecticut Law.. 12

      1. Application of Texas Law to Plaintiff's Wrongful Death Claim
         Would Be Unconstitutional ..................................................... 12

      2. Connecticut Choice-of-Law Rules Dictate the Application of
         Connecticut Law to Plaintiff's Wrongful Death Claim.............. 14

   B. Because the Connecticut Wrongful Death Statute Provides the
      Exclusive Remedy for Alleged Injuries Resulting In Death Under
      Connecticut Law, All Other Counts of the FAC Should Be
      Dismissed .................................................................................. 22

   C. Plaintiff's Wrongful Death Claim Fails As A Matter of Law ................ 24

      1. Plaintiff's Wrongful Death Claim Cannot Be Maintained Under
         Connecticut's Wrongful Death Statute, C.G.S. § 52-555 .......... 24

         a. Plaintiff Lacks Standing to Sue Under § 52-555 ............ 24

         b. Plaintiff's Wrongful Death Claim Is Time-Barred
            Under § 52-555 ................................................................ 24

      2. Even if Texas Law Did Apply, Plaintiff Could Not Maintain
         A Claim Under Texas' Wrongful Death Statute......................... 28

         a. Connecticut Limitations/Repose Would Still Govern the
            Timeliness of Plaintiff's Claim Because Limitations for
            Wrongful Death Under Texas Law Is Considered
            Procedural ....................................................................... 28

         b. Plaintiff Failed to Join All Necessary and Indispensable
            Parties Required Under the Texas Wrongful Death
            Statute ............................................................................ 29

         c. Plaintiff Also Lacks Standing to Sue Under the Texas
            Wrongful Death Statute.................................................. 31

      3. Plaintiff's Wrongful Death Claim Must Be Dismissed Because
         She Has Failed to Allege A Plausible Causal Connection
         Between WWE's Alleged Wrongful Conduct and the
         Decedent's Injury ...................................................................... 32

i

D.     Plaintiff Cannot Assert Survivor Claims for Ante-Mortem Injuries Sustained By the Decedent Independent Of § 52-555 ........................ 35

     1.     Plaintiff Lacks Standing to Assert the Ante-Mortem Claims ... 35

     2.     Ante-Mortem Claims Are Time-Barred Under Connecticut Law ............................................................................................ 36

     3.     No Tolling Doctrine Salvages any of Plaintiff's Ante-Mortem Claims ...................................................................................... 39

E.     Plaintiff's Negligence and Fraud Claims Are Substantively Defective ........................................................................................ 40

F.     Plaintiff Failed to Comply with the Requirements of C.G.S. § 52-190a .......................................................................... 41

G.     Plaintiff's Seventh Cause of Action for Punitive Damages Must Be Dismissed ................................................................................ 43

H.     Plaintiff's Allegations Regarding Other Dead Wrestlers Should Be Stricken Pursuant to Rule 12(f) ............................................ 43

III.     CONCLUSION ................................................................ 44

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Town of Vernon*, 101 Conn. App. 477, 923 A.2d 748
(2007) .............................................................................................. 32-33

*Alexander v. Tyson*, No. 3:11cv710(SRU), 2013 WL 1798896
(D. Conn. Apr. 29, 2013)....................................................................... 24

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ......................................... 13

*Angersola v. Radiologic Assocs. of Middletown, P.C.*,
No. MMXCV146012179, 2015 WL 5626267
(Conn. Super. Ct. Aug. 20, 2015)........................................................ 12

*AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys.,
Inc.*, No. 3:10-cv-01539 (JAM), 2014 WL 7270160
(D. Conn. Dec. 18, 2014) ............................................................. 27, 28

*Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841 (Tex. App. 1997) ............. 29, 30

*Baxter v. Sturm, Ruger & Co.*, 230 Conn. 335, 644 A.2d 1297 (1994) ............... 28, 29

*Bennett v. New Milford Hosp., Inc.*, 300 Conn. 1, 12 A.3d 865 (2011)...................... 42

*Burns v. Hartford Hosp.*, 192 Conn. 451, 472 A.2d 1257 (1984)................................ 37

*Converse v. Gen. Motors Corp.*, 893 F.2d 513 (2d Cir. 1990) .................................... 25

*Cortlandt Street Recovery Corp. v. Hellas Telecomms.*,
790 F.3d 411 (2d Cir. 2015) .................................................................. 12

*E. Point Sys., Inc. v. Maxim*, No. 3:13-CV-00215(VLB),
2014 WL 523632 (D. Conn. Feb. 7, 2014) ............................................. 43

*Ecker v. West Hartford*, 205 Conn. 219, 530 A.2d 1056 (1987)........................... 12, 26

*Ellis v. Cohen*, 118 Conn. App. 211, 982 A.2d 1130 (2009)....................................... 24

*Fedor v. Hawley*, No. CV065003192S, 2006 WL 3360393
(Conn. Super. Ct. Nov. 3, 2006)........................................................ 35-36

*Floyd v. Fruit Indus., Inc.*, 144 Conn. 659, 136 A.2d 918 (1957) ........................ 22, 35

*Franco v. Allstate Ins. Co.*, 505 S.W.2d 789 (Tex. 1974) ..................................... 28, 29

*G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216 (RWS),
   2003 WL 193502 (S.D.N.Y. Jan. 29, 2003) ............................................... 1

*George v. Warren*, No. 0356138, 1995 WL 574771
   (Conn. Super. Ct. Sept. 15, 1995).......................................................... 35

*Greco v. United Techs. Corp.*, 277 Conn. 337, 890 A.2d 1269 (2006) ............... 12, 26

*Grody v. Tulin*, 170 Conn. 443, 365 A.2d 1076 (1976) ................................... 33

*Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979) ........................................ 15

*Halstead v. U.S.*, 535 F. Supp. 782 (D. Conn. 1982) ..................................... 16

*Hill v. Perel*, 923 S.W.2d 636 (Tex. App. 1995)............................................ 29

*Howe v. Stuart Amusement Corp.*, No. 343407, 1991 WL 273637
   (Conn. Super. Ct. Dec. 11, 1991)....................................................... 21, 22

*Isaac v. Mount Sinai Hosp.*, 210 Conn. 721, 557 A.2d 116 (1989) ........................ 24

*Jaiguay v. Vasquez*, 287 Conn. 323, 948 A.2d 955 (2008) ............................... 14-15

*Jaworski v. Kiernan*, 241 Conn. 399, 696 A.2d 332 (1997)................................. 40

*Johnson v. Morgenthau*, 160 F.3d 897 (2d Cir. 1998) ...................................... 1

*Ladd v. Douglas Trucking Co.*, 203 Conn. 187, 523 A.2d 1301 (1987).............. 22, 23

*Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 627 A.2d 1288 (1993)................. 22, 23

*Makarova v. U.S.*, 201 F.3d 110 (2d Cir. 2000) ............................................ 12

*Marsala v. Yale-New Haven Hosp., Inc.*, No. AANCV126010861S,
   2013 WL 6171307 (Conn. Super. Ct. Oct. 30, 2013) ................................. 23

*Marsala v. Yale-New Haven Hosp., Inc.*, Nos. AANCV126010861,
   AANCV126011711, 2015 WL 1727653
   (Conn. Super. Ct. Mar. 19, 2015) ..................................................... 23

*McDermott v. Conn.*, 316 Conn. 601, 113 A.3d 419 (2015) ......................... 34

*McLoughlin v. People's United Bank, Inc.*, No. 3:08-cv-00944(VLB),
   2009 WL 2843269 (D. Conn. Aug. 31, 2009) ....................................... 15

*Mendoza v. Texana Ctr.*, No. G-13-60, 2014 WL 357412
   (S.D. Tex. Jan. 31, 2014) .............................................................. 32

*Merly v. State*, 211 Conn. 199, 558 A.2d 977 (1989) ............................... 37

*Miller v. Hartford Hosp.*, No. X04MMXCV044003261S,
  2005 WL 3667347 (Conn. Super. Ct. Dec. 22, 2005)..............................22

*Morin v. Ford Motor Co.*, Nos. 3:07-CV-1700-L, 3:08-CV-779-L,
  2009 WL 2486027 (N.D. Tex. Aug. 12, 2009)...................................31, 32

*O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986) .........................15, 16, 21

*Pa. Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield,
  CT*, No. 3:11-cv-650(VLB), 2012 WL 3779140
  (D. Conn. Aug. 30, 2012)....................................................26, 38

*Phillips v. Scott*, 446 F. Supp. 2d 70 (D. Conn. 2006) ...............................19

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)................................13

*RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9
  (D. Conn. 2009)............................................................38

*Reichhold Chems. v. Hartford Accident & Indem. Co.*, 243 Conn. 401,
  703 A.2d 1132 (1997).......................................................19

*Ride, Inc. v. APS Tech., Inc.*, 11 F. Supp. 3d 169 (D. Conn. 2014) ...............26-27, 28

*Rosato v. Mascardo*, 82 Conn. App. 396, 844 A.2d 893 (2004) .........................27, 28

*Rose v. City of Waterbury*, No. 3:12cv291(VLB), 2013 WL 1187049
  (D. Conn. Mar. 21, 2013) .................................................*passim*

*Saperstein v. Danbury Hosp.*, Nos. X06CV075007185S,
  X06CV085011032S, 2010 WL 760402
  (Conn. Super Ct. Jan. 27, 2010) ...........................................26

*Slekis v. Nat'l R.R. Passenger Corp.*, 56 F. Supp. 2d 202
  (D. Conn. 1999)............................................................37

*Stephens v. Norwalk Hosp.*, 162 F. Supp. 2d 36 (D. Conn. 2001) ...................*passim*

*Tex. Health Enters., Inc. v. Geisler*, 9 S.W.3d 163 (Tex. App. 1999).....................29

*Thomas v. Walgreen E. Co.*, No. HHDCV075009127, 2011 WL 7029842
  (Conn. Super. Ct. Dec. 22, 2011) ..........................................34

*Trevino v. U-Haul Int'l, Inc.*, No. 08-cv-1409, 2009 WL 901136
  (N.D. Ill. Mar. 31, 2009) ..................................................31, 32

*Ward v. Greene*, 267 Conn. 539, 839 A.2d 1259 (2004)...............................32

*Webb v. Huffman*, 320 S.W.2d 893 (Tex. App. 1959)..................................30

*Wells Fargo Bank, N.A. v. Treglia*, No. FSTCV065001250,
2011 WL 3672037 (Conn. Super. Ct. July 25, 2011) ............................................. 35

*Wesolek v. Canadair, Ltd.*, No. B-85-693(TFGD),
1987 U.S. Dist. LEXIS 13010 (D. Conn. Mar. 11, 1987) ........................................ 21

*Wilkins v. Conn. Childbirth & Women's Ctr.*, 314 Conn. 709,
104 A.3d 671 (2014) ....................................................................................... 42, 43

**Statutes**

42 U.S.C. § 1983 ................................................................................................. 6, 12, 13

42 U.S.C. § 1988 ................................................................................................. 6, 12, 13

CONN. GEN. STAT. § 52-190a ............................................................................ 41, 42, 43

CONN. GEN. STAT. § 52-555 ............................................................................... *passim*

CONN. GEN. STAT. § 52-577 ................................................................................... 37, 38

CONN. GEN. STAT. § 52-584 ................................................................................... 37, 38

CONN. GEN. STAT. § 52-599 ................................................................................... 12, 35

TEX. CIV. PRACT. & REM. CODE § 71.001 - 71.011 ................................................... 12

TEX. CIV. PRACT. & REM. CODE § 71.004 ................................................................ 31

**Other Authorities**

12A TEX. JUR.3D CONFLICT OF LAWS § 51 (2015) ..................................................... 29

Restatement (Second) of Conflict of Laws § 6 ........................................ 15, 16, 20, 21

Restatement (Second) of Conflict of Laws § 142 ............................................... 21, 22

Restatement (Second) of Conflict of Laws § 145 ............................................... 16, 17

Restatement (Second) of Conflict of Laws § 175 ...................................................... 15

Restatement (Second) of Conflict of Laws § 188 ...................................................... 19

## I.   <u>INTRODUCTION</u>

This lawsuit was filed in Texas on behalf of a Pennsylvania resident the very day after a federal judge in Oregon found that Plaintiff's lead counsel, Konstantine Kyros ("Kyros"), was engaged in forum-shopping and working "a hit-list of potential venues" for duplicative litigation in multiple jurisdictions, and transferred the *Haynes* Action to this Court.  Undaunted by that judicial rebuke, Kyros then filed this action — the fifth lawsuit — against World Wrestling Entertainment, Inc. ("WWE") attempting to allege claims relating to traumatic brain injuries.  This latest and last suit is about the death of a former performer, Matthew Osborne ("Osborne"), who died on June 28, 2013 at age 55, which is approximately twenty years after he last performed for WWE.  He died on the premises of a girlfriend in Texas.  As was the case in the other wrongful death case filed on behalf of the widow of Nelson Frazier, who died of a heart attack and not a brain injury, the official cause of death of Osborne also had nothing to do with brain injury.  Instead, the official cause of death was the toxic effects of opiates, and investigative information was found by the medical examiner to be consistent with drug abuse causing an accidental death.[1]

The plaintiff in the case, Michelle James ("James") does not claim to have ever been married to Osborne or that she is the executor of Osborne's estate.  Instead, she brought the action as mother and next friend of two of Osborne's children.  It is not alleged that she was even in Texas when Osborne died.

---

[1]  The formal autopsy report is attached hereto as Ex. 1.  This Court can take judicial notice of it on a motion to dismiss.  *See G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216 (RWS), 2003 WL 193502, at *8 (S.D.N.Y. Jan. 29, 2003); *Johnson v. Morgenthau*, 160 F.3d 897, 898 (2d Cir. 1998).

Although James and her children all reside in Pennsylvania, Kyros filed this lawsuit in the Northern District of Texas in violation of an express forum-selection clause in Osborne's last contract with WWE requiring the litigation of any such claims in Connecticut.  As demonstrated herein, this was done because James has no standing to even bring such a lawsuit in Connecticut, and the claims are all time-barred and substantively defective under Connecticut law.

Kyros not only ignored the Oregon Court's rebuke when filing this lawsuit in Texas, but also disregarded this Court's specific admonitions on pleading standards at the June 8, 2015 status conference in the related *LoGrasso/Singleton* Action.  At that time the Court indicated, "[a]re you going to reference every wrestler that's dead in your complaint?  I don't — I don't follow that.  You really need to read and get a better grip on the pleading standard . . . ." *LoGrasso/Singleton* Dkt. 73 at 62.  During that conference, the Court reminded Kyros that the Federal Rules require a complaint to be a short and concise statement demonstrating an entitlement to relief, and that it should not include "superfluous, hyperbolic, inflammatory opinions and references to things that don't have any relevance." *Id.* at 60.  The Court's specific instructions regarding federal pleadings were completely ignored when the original complaint in *James* was subsequently filed two weeks later.  It was 71 pages in length with 263 paragraphs and included 39 separate paragraphs of allegations and color photographs of former wrestlers who died from a multitude of causes over the past twenty years.  Ignoring the admonitions about inflammatory rhetoric, the complaint had bold tabloid-style headings, designed to be highly insulting,

offensive and inflammatory, such as "WWE Created a Culture of Violence and Sacrificed Matthew Osborne's Brain for Its Own Profit."  *James* Dkt. 1 at 12. Another tabloid-style heading pronounced in misleading style "Deaths of Wrestlers in WWE," followed by depiction of 39 former performers designed to suggest they had all died while "in WWE."  *Id.* at 23.  The narratives did <u>not</u> point out that 35 of the 39 persons depicted were <u>not</u> affiliated with WWE in any way at the time of their death, or they had died years, sometimes decades, after performing for WWE.[2]  The complaint falsely depicted Osborne as having a 22 year career with WWE beginning "in 1985 and ending in 2007," when in reality he was with WWE for only a total of two years in two separate one year stints.  *Id.* at ¶¶ 1, 153, 244.  Plaintiff's counsel continued to make the same false allegations as made in other complaints about Stephanie McMahon's supposed testimony before a Congressional Committee, WWE's supposed participation in a cover-up with the NFL and that, in a newspaper article, WWE supposedly had said its Wellness Program contained promises of health care to former wrestlers.[3]  *Id.* at ¶¶ 68-73, 85.

Due to multiple Rule 11 issues, including the unjustified refusal to honor the forum selection clauses, WWE served Plaintiff's counsel with a Rule 11 motion while the case was pending in Texas.  After the case was transferred to

---

[2]  In a buried footnote, Plaintiff's counsel pointed out that "nearly all wrestlers have worked in other organizations," but did not point out that 35 of those depicted were not affiliated in any way with WWE at the time of their deaths and that some were actually working with other organizations at the time of their death.  These allegations served their intended improper purpose, as local media then published photos of the dead wrestlers in their reporting on the lawsuit, all as pointed out in WWE's Rule 11 papers.  *See McCullough* Dkt. 99 at ¶ 90 n.39.
[3]  WWE has demonstrated the falsity of those allegations in its motion to dismiss brief in *LoGrasso/Singleton*, and in a Rule 11 motion in this case.

this Court, Plaintiff's counsel made no attempt to withdraw the complaint, or the sham allegations, or the inflammatory references to the deaths of others included for an improper purpose.  Thus, WWE filed the Rule 11 motion, which has been fully briefed and is *sub judice*.  *See McCullough* Dkt. 80.  Thereafter, plaintiffs' counsel indicated they intended to amend the complaint, but declined to advise WWE of the intended amendments.

To be sure, it would not have been difficult to plead a short and concise statement of Osborne's past relationship with WWE; however, it would negate any entitlement to relief.  Those facts would roughly be as follows:

(1)    Matthew Osborne ("Osborne") was a professional wrestler who performed for many different promotions.  He performed for WWE from 1985-86; again from 1992-93; and made a special guest appearance at a WWE program in 2007 for a few minutes.[4]

(2)    During his stint with WWE in 1992-93, Osborne performed as Doink the Clown, a character created and devised by WWE, which owns the intellectual property associated with the Doink character.

---

[4]  Despite having specific information regarding when Osborne performed as a result of the Rule 11 motion, and publicly available information on his tenure, the FAC still tries to suggest that he performed at other times.  *See McCullough* Dkt. 99 at ¶ 1.  Thus, although Osborne performed for WWE in essentially two one-year stints, once in the 80's and the other in the early 90's, without any basis in fact whatsoever, and despite the Rule 11 motion pointing out the lack of a basis to allege a 22 year career, the FAC now alleges, with no basis in fact, an "approximately 30 year association as a wrestler with WWE."  *McCullough* Dkt. 99 at ¶ 17.  This is particularly inexcusable here, since Kyros has claimed to represent dozens of former performers, all of whom would know if Osborne was with WWE during various periods.  Indeed, if Osborne had worked in the late 1990s through 2007, he would have been with WWE in the same time frame as McCullough, Sakoda and Matt Wiese, plaintiffs in a related case.  Plainly, Plaintiff's counsel has no excuse for such fabrication.

4

(3)     Osborne was the person who originally portrayed Doink the Clown, but several other performers played that role after Osborne departed in 1993.

(4)     Osborne was married four times and had four children, two by Plaintiff James, who he did not marry.

(5)     Osborne's relationship with WWE was terminated in 1993 due to his problems with drug abuse.[5]

(6)     The publication of the finding that CTE had been discovered in the brain of a former NFL player, Mike Webster, occurred in July 2005, some 12 years after Osborne was last under contract with WWE.[6]

(7)     In or around September 2007, WWE established a program whereby it offered to pay for rehabilitation services if any former performer needed help for drug or alcohol abuse.

(8)     Osborne sought such help, and WWE paid for Osborne to obtain drug rehabilitation services from a third party in 2008, which he successfully completed.

(9)     Osborne died on June 28, 2013 on the premises of his girlfriend in Texas.  The official conclusion of the Assistant County Medical Examiner for Collins County Texas was that his death was accidental and caused by the toxic effects of opiates.

---

[5]   WWE attached an interview given by Osborne to its Rule 11 motion where Osborne admits this fact.  Thus, Plaintiff's counsel had Osborne's own admission as to when he last performed and when he was terminated when they falsely alleged a 30 year association in the FAC.

[6]   This allegation was in fact made in the FAC, which is misnumbered.  For clarity, WWE will cite to duplicatively-numbered paragraphs along with their page number.  *See McCullough* Dkt. 99 at ¶ 70 (p. 29).

(10)   The formal autopsy report also indicated that arteriosclerotic and hypertensive cardiovascular disease were significant and contributing factors, and that investigative information was consistent with drug abuse causing an accidental death.

(11)   Toxicology reports were indicative of high levels of the opiates morphine and hydrocodone.

(12)   During his life, Osborne made no claims against WWE for traumatic brain injuries.[7]

Nearly five months after the suit was originally filed on behalf of James, Plaintiff's counsel finally filed the FAC on November 23, 2015.  As has been consistently the case, the FAC appears driven more by a desire to spew vitriol at WWE, and now WWE's counsel, than pleading facts of temporal significance to a claim on behalf of Osborne in a studied legal document.  Thus, in a paragraph with sentence fragments, Plaintiff alleges that this is a survivor action brought pursuant to Texas and Connecticut law "as applied through 42 U.S.C. § 1983 and § 1988."  *McCullough* Dkt. 99 at ¶ 275.  No reasonably competent lawyer would ever cite the federal civil rights statutes as the basis for the personal injury claims asserted here against a publicly traded corporation.  Yet five different law firms signed on to the FAC containing such legal rubbish, further raising the question of whether any of these firms are actually reading the voluminous complaints they file.

---

[7]   In fact, the FAC did not allege that Osborne ever made any such claims against WWE during his lifetime.

6

True to form, the FAC attempts to obscure the simple facts set forth above and does not cure the defects of the original complaint, remedy the matters alleged to be Rule 11 violations, or provide anything close to a pleading that is short and concise.  As has consistently been the case with the lawsuits filed by Kyros, the allegations lack temporal relevance to the actual time periods involved in Osborne's performances for WWE, a problem which Plaintiff attempts to conceal by the false assertion that Osborne had a 30 year career with WWE ending in 2007.[8]  The FAC also contains 37 pages of even greater incendiary rhetoric about the deaths of other former performers, even though no lawsuits or claims have ever been made, or could now be made, against WWE on behalf of any of the persons depicted.  Of those 39 people, exactly two are alleged to have been diagnosed as having CTE, Andrew Martin and Chris Benoit.  *McCullough* Dkt. 99 at ¶¶ 115, 154.  Martin died on March 13, 2009, and no claim has ever been asserted against WWE by his estate, and would be time-barred if it were made.  Benoit died June 24, 2007, and his estate did not file any suit against WWE and could not now.

The inflammatory and insulting rhetoric is expanded to engage in attempted character assassination of WWE's lead counsel, no doubt as retribution for his pointing out the extensive pleading misconduct of Plaintiff's counsel in these matters.  Page after page purports to quote from various print

---

[8]  The FAC blatantly disregards this Court's specific admonition not to include irrelevant, inflammatory, and superfluous allegations concerning reports that were published well after Osborne stopped performing for WWE.  *See LoGrasso/Singleton* Dkt. 73 at 60-61, 64-65.  Throughout the FAC, Plaintiff's counsel cites events or studies that occurred in 2005, long after Osborne in reality performed for WWE, which supposedly provided WWE notice about certain scientific papers regarding concussions.  *McCullough* Dkt. 99 at ¶¶ 54, 55.

and media articles on matters having nothing to do with Osborne or traumatic brain injuries.[9]  The FAC provides incomplete and inaccurate references to the manner by which WWE and its counsel through the years have dealt with tabloid libelists or internet bloggers spreading snarky defamatory lies which all too often are the stock in trade of such sources.  Instead of pleading facts demonstrating some causal connection to Osborne's death, Plaintiff's counsel uses a federal pleading to portray incredulity that WWE would deny having anything to do with Benoit's decision to brutally murder his wife and young son in 2007, and faults WWE for not revising such a denial in light of reported findings that Benoit had CTE.  The connection between WWE's position that Benoit is the <u>only</u> person legally and morally responsible for his murderous acts with Plaintiff's burden to plead a plausible legal claim against WWE because Matt Osborne died of a drug overdose twenty years after being with WWE is neither stated nor obvious.

All these attempts to distract from the simple facts of Osborne's unfortunate death are made despite the admission of Plaintiff's counsel that "[t]he death rate among WWE wrestlers has yet to be subjected to statistical analysis by an expert qualified to conduct such a study."  *McCullough* Dkt. 99 at ¶ 155.  Even that admission is misleading, since the persons depicted in the photographic display are <u>not</u> confined to persons who died while affiliated with WWE.  Indeed, of the 39 persons depicted, the four who were associated with WWE at the time of their death are: (1) Brian Pillman, who died in 1997 from a heart attack; (2) Owen Hart, who died in 1999 when a stunt went awry and he fell

---

[9]  The personal attacks on WWE's lead counsel do not cite a single thing ever said about, or to, Osborne by WWE's counsel and, as such, are completely unrelated to any issue.

to his death; (3) Eddie Guerrero, who died in 2005 from a heart condition; and (4) Chris Benoit, who committed suicide in 2007 rather face a life sentence or the death penalty after murdering his wife and child.  The others depicted died years, sometimes decades, after any affiliation with WWE from a multitude of different causes.

The FAC proceeds to allege that wrestlers passing away from a multitude of causes having nothing to do with traumatic brain injuries, the supposed theme of this lawsuit, has been the subject of numerous news stories and articles, and thereafter lists a variety of trade journals and mainstream media stories and programs on that subject in 2002 (Wrestling Observer, ¶ 98); 2003 (HBO Real Sports, ¶ 99); 2003 (*LA Times*, ¶ 100*); 2004 (USA Today, ¶ 101); 2006 (Book, ¶ 102); 2007 (Book, ¶ 91); 2007 (NPR, ¶ 103); 2007 (CNN, ¶ 104); 2009 (Omalu Publication, ¶ 94); 2010 (Omalu Publication, ¶ 93); 2014 (a study, ¶ 92); 2014 (ESPN, ¶ 112); 2014 (*Washington Post*, ¶ 113*).

Stretching to justify the inclusion of such allegations regarding deaths of others for reasons having nothing to do with CTE in a case which attempts to suggest that Osborne had CTE and that WWE is responsible for Osborne's drug overdose twenty years after he last performed for WWE, Plaintiff's counsel then plead the legal conclusion that "[o]bviously the fact that performers are dying after they leave the WWE is the health crisis that the WWE has a duty to study, treat and address."[10]  *McCullough* Dkt. 99 at ¶ 114.  Thus, according to Plaintiff, a

---

[10]  WWE respectfully submits that filing a time-barred claim on behalf of one person with no standing to do so in the hope of litigating a supposed "health crisis" involving the deaths of persons who are not parties, who have made no

lawsuit about whether Osborne had CTE and has presented a timely claim to hold WWE responsible for his decision to take drugs twenty years later is a vehicle to litigate the facts and circumstances behind the deaths of dozens of other people from a myriad of causes <u>after</u> they leave WWE.

Having so suggested, in equally sanctimonious terms and no doubt realizing the actual claims of James were all time-barred, the FAC alleges:

> Matthew Osborne's death could have been prevented had WWE accepted the overwhelming statistical evidence of wrestler death rates, the resounding medical evidence, and had not fraudulently, negligently, and recklessly concealed these facts from Matthew Osborne, preventing him from taking appropriate action and receiving the necessary medical treatment. This fraudulent concealment continued until Matthew Osborne's death and should toll any Statute of Limitations period.

*Id.* at ¶ 198. This conglomeration proves only that if rhetoric was rice, Plaintiff's counsel could feed the world. This kind of indiscriminate charge of fraudulent concealment untethered from the rigorous requirements of Rule 9(b) has been another hallmark of this litigation campaign orchestrated against WWE. It began with the factually impossible accusation in the initial suit by Billy Jack Haynes that WWE had somehow fraudulently concealed publicly available scientific information about concussions. It has now morphed in this case, the last one filed, to the ludicrous proposition that WWE somehow fraudulently, negligently and recklessly concealed all the massive publicity on the subject of former wrestlers passing away from a variety of causes emanating from national news outlets and elsewhere over a decade, all as specifically pled by the same lawyers

_____

claims, who died from causes having nothing to do with brain injuries, and where any such claim would be time-barred anyway is an abuse of process.

who then ignore their own allegations and assert that WWE somehow concealed these published media reports from Osborne, which somehow caused him to die from a drug overdose caused by CTE.  It accuses WWE of not accepting "resounding medical evidence," as if there is some medical evidence cited in the FAC which connects the various deaths from a myriad of causes over decades to Osborne's decision to risk his life by drug abuse in a way which renders WWE liable.  It states that WWE should have "accepted the overwhelming statistical evidence of wrestler death rates," whatever that means, in the very same document which affirmatively admits that the death rate has yet to be subjected to an analysis by an expert qualified to do such a study.

Matt Osborne did not die because widespread news about others dying from varied causes was concealed from him by WWE, or because he did not receive the necessary medical treatment because he somehow missed all the media attention.  He tragically died of a drug overdose after evidently relapsing to a life-long struggle with drugs, not because WWE concealed news stories from him.

No amount of rhetoric or obfuscation can hide the multitude of legal problems with the FAC, and it is obvious that pointing out the many problems with the *bona fides* of the allegations will not deter Plaintiff's counsel.  They have shown that they do not care what the facts are or what federal judges find or state to them — they have a yarn to spin and will not let facts, or the absence of facts, get in the way.  Because all the above shenanigans do not alter the lack of legal

merit of the claims involving Osborne actually presented or the legal conclusion that all are time-barred, WWE turns now to that subject.

## II.   ARGUMENT

### A.   Plaintiff's Wrongful Death Claim Is Governed By Connecticut Law[11]

#### 1.   Application of Texas Law to Plaintiff's Wrongful Death Claim Would Be Unconstitutional

The FAC asserts that "Plaintiff Michelle James, as mother and next friend of Matthew Osborne and Teagan Osborne, the minor children and successors in interest of Matthew Osborne, brings this survival action pursuant to TEX. CIV. PRACT. & REM. CODE § 71.001 - 71.011, CONN. GEN. STAT. §§ 52-555 and 52-599, and as applied through 42 U.S.C. § 1983 and § 1988." *McCullough* Dkt. 99 at ¶ 275.[12]  While the references to federal civil rights statutes proves only that Plaintiff's counsel are not even reading what they file, to the extent Plaintiff purports to assert a claim under Texas law, the application of Texas law to Plaintiff's attempted wrongful death or survivor claims would be

---

[11]  WWE contends any wrongful death claim is governed by C.G.S. § 52-555. "[T]he [time] limitation contained within § 52-555 is a jurisdictional prerequisite which cannot be waived and which must be met in order to maintain an action under § 52-555." *Greco v. United Techs. Corp.*, 277 Conn. 337, 349-50 (2006) (quoting *Ecker v. West Hartford*, 205 Conn. 219, 233 (1987)).  Thus, a motion to dismiss for failure to file suit within the time limits contained within § 52-555 is "a challenge to this court's subject matter jurisdiction." *Angersola v. Radiologic Assocs. of Middletown, P.C.*, No. MMXCV146012179, 2015 WL 5626267, at *3 (Conn. Super. Ct. Aug. 20, 2015).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Cortlandt Street Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 417 (2d Cir. 2015) ("In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint.").

[12]  The FAC refers to Matthew and Teagan "Osborne."  Osborne's own Facebook post while he was alive, however, referred to them as Matthew and Teagan "James" in distinction to his two other children, Rena and Anthony Osborne.  *See* Ex. 2.

unconstitutional.[13]  As explained in WWE's motion to dismiss in *Frazier*, the U.S. Supreme Court has ruled that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981).  "[I]f a State has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional."  *Id.* at 310-11.  The Supreme Court has ruled that "[w]hen considering fairness in this context, an important element is the expectation of the parties."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985).

WWE had no contacts whatsoever with Texas, much less "significant" contacts, relating to Osborne's death from a drug overdose twenty years after he last performed for WWE to constitutionally justify the application of Texas law. Plaintiff admittedly is not a resident of Texas and does not even allege that she was ever in Texas, by herself or with the two children she acts on behalf of. There is no allegation in the FAC that Osborne actually resided in Texas at the time of his accidental death.  In fact, Osborne posted on Facebook on June 2, 2013, less than three weeks before his death, that he had "relocated to Springfield, Mo."  Ex. 3.  Osborne died in the house of a woman referred to in

---

[13]  Plaintiff's reference to 42 U.S.C. §§ 1983 & 1988 is beyond frivolous.  This case has nothing to do with state action or constitutional rights, both of which are necessary for a claim under those statutes.  *See Rose v. City of Waterbury*, No. 3:12cv291(VLB), 2013 WL 1187049, at *4 (D. Conn. Mar. 21, 2013) (Bryant, J.) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.").  Plaintiff's lack of thought in the pleadings is further demonstrated by the sentence fragment of Paragraph 275 in which §§ 1983 & 1988 are referenced:  "Under the Texas Wrongful Death Act, and as applied through 42 U.S.C. §1983 and §1988."

various media reports as his girlfriend at the time.  *See* Ex. 4.  Thus, that Osborne was in Texas at the time of his drug overdose was a mere fortuity.  Moreover, WWE's last booking contract with Osborne dated October 31, 1992 listed an address for Osborne in Duluth, Georgia.  *See* Affidavit of C. Scott Amann ("Amann Aff.") at ¶ 4, Ex. 5.  In its subsequent dealings with Osborne, WWE directed correspondence to Osborne at residences in Pennsylvania, Ohio, New Jersey and Oregon, but never Texas.  *Id.* at ¶ 5.  Accordingly, WWE certainly could not have expected that Osborne would die in Texas of a drug overdose nearly twenty years after he last regularly performed for WWE or that it could be sued in Connecticut under Texas law if that occurred.

Due to the complete absence of contacts between WWE and Osborne in Texas relating to his drug overdose and the absence of any connection to Texas with Plaintiff or the children she represents, the application of Texas law to Plaintiff's wrongful death claim plainly would be unconstitutional.

2.    **Connecticut Choice-of-Law Rules Dictate the Application of Connecticut Law to Plaintiff's Wrongful Death Claim**

Assuming *arguendo* a choice of law analysis is even warranted, that analysis dictates the application of Connecticut law to Plaintiff's wrongful death claim.  For the same reasons explained in detail in WWE's motion to dismiss the *Frazier* FAC, Connecticut choice-of-law rules govern this lawsuit and dictate the application of Connecticut law to Plaintiff's wrongful death claim.

As discussed in *Frazier*, Connecticut courts have adopted the most significant relationship test of the Restatement (Second) of Conflict of Laws.  *See Jaiguay v. Vasquez*, 287 Conn. 323, 348-50 (2008) (noting adoption of the most

significant relationship test of the Restatement for tort actions); *O'Connor v. O'Connor*, 201 Conn. 632, 637-38 (1986) (abandoning doctrine of *lex loci delecti* in tort actions and applying most significant relationship test of the Restatement); *Stephens v. Norwalk Hosp.*, 162 F. Supp. 2d 36, 42-43 (D. Conn. 2001) (applying Restatement factors to choice-of-law analysis for wrongful death claim); *McLoughlin v. People's United Bank, Inc.*, No. 3:08-cv-00944(VLB), 2009 WL 2843269, at *6 (D. Conn. Aug. 31, 2009) ("Although Connecticut courts have traditionally determined choice-of-law by focusing on the place of injury pursuant to the doctrine of *lex loci delicti, viz,* courts now apply the 'most significant relationship test.'") (Bryant, J.).  Notably, Texas has adopted the most significant relationship test of the Restatement for tort claims as well; as such, the same analysis applies under the choice-of-law rules of both Texas and Connecticut. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).

Section 175 of the Restatement (Second) of Conflict of Laws provides:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The "[c]ontacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:  (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is

centered.  These contacts are to be evaluated according to their relative

importance with respect to the particular law at issue."  *Stephens*, 162 F. Supp. 2d

at 42.  The principles set forth in § 6 to be considered in resolving choice of law

questions include:  (a) the needs of the interstate and international systems; (b)

the relevant policies of the forum; (c) the relevant policies of other interested

states and the relative interests of those states in the determination of the

particular issue; (d) the protections of justified expectations; (e) the basic policies

underlying the particular field of law; (f) certainty, predictability and uniformity of

result; and (g) ease in the determination and application of the law to be applied.

Analysis of the Restatement factors and the relevant underlying principles dictate

the application of Connecticut law.

     *First*, the place where the injury occurred is at best neutral because it was a

mere fortuity that Osborne died of a drug overdose in Texas twenty years after he

last performed for WWE.  *See O'Connor*, 201 Conn. at 656; *Halstead v. U.S.*, 535 F.

Supp. 782, 787 (D. Conn. 1982) ("In the absence of any meaningful contact

between the litigation and the state of West Virginia other than, by pure fortuity,

the site of the crash, it would be offensive to traditional notions of justice and

normal expectations to apply West Virginia law to adjudicate plaintiffs' wrongful

death claims."); Restatement § 145, cmt. e ("Situations do arise, however, where

the place of injury will not play an important role in the selection of the state of

the applicable law.  This will be so, for example, when the place of injury can be

said to be fortuitous or when for other reasons it bears little relation to the

occurrence and the parties with respect to the particular issue.").  Particularly

because WWE could not have foreseen that Osborne would die from a drug overdose in Texas — a state in which he did not previously reside and in which he is not even alleged to have resided at the time of his death — the application of Texas law would be manifestly unwarranted.  *See* Restatement § 145, cmt. e ("[W]here the defendant had little, or no, reason to foresee that his act would result in injury in the particular state . . . [s]uch lack of foreseeability on the part of the defendant is a factor that will militate against selection of the state of injury as the state of the applicable law.").

*Second,* the place where the conduct causing the injury occurred favors Connecticut because, like *Frazier*, Plaintiff dubiously claims that Osborne's death was caused by alleged, but otherwise unspecified, omissions by WWE emanating from WWE's corporate headquarters in Connecticut  based on corporate decisions or policies made by WWE executives working out of those offices. There is no allegation that WWE did anything under any circumstances to cause Osborne to overdose in Texas.  According to the Restatement, "when the place of injury . . . is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law."  *Id.*

*Third*, the residence/place of incorporation/place of business of the parties again favors Connecticut.  WWE's principal place of business at all relevant times has been in Connecticut.  Plaintiff is a resident of Pennsylvania, not Texas. Osborne did not reside in Texas, including at the time of his death, and had

posted on Facebook that he had relocated to Missouri three weeks before his death. *See* Ex. 3. In the absence of allegations that Plaintiff or the decedent resided in Texas, the fortuity that Osborne died there is the only connection to Texas. Indeed, Connecticut is a more convenient forum for a Pennsylvania resident than Texas, which is much further away.

*Fourth*, the place where the relationship between the parties is centered unquestionably favors Connecticut. In contrast to the complete lack of contacts between WWE and Osborne to Texas, the entirety of the parties' relationship was centered in Connecticut. Like all talent, Osborne interacted extensively with WWE personnel working in WWE's corporate headquarters in Connecticut. For example, Osborne dealt with WWE in Connecticut in agreeing to and executing two different booking contracts with WWE governing the parties' respective rights and obligations. Osborne's 1992 booking contract expressly provided that it was "made in Connecticut." *See James* Dkt. 12, Ex. 2, Ex. B at ¶ 13.7. The 1992 booking contract also contained a forum selection clause that mandated the litigation of all disputes in Connecticut. *Id.* at ¶ 13.8. Osborne's 1985 and 1992 booking contracts both contained choice of law provisions that dictated the contracts were to be governed by and interpreted in accordance with Connecticut law. *See id.* at ¶ 13.7; *James* Dkt. 12, Ex. 2, Ex. A at ¶ 20.

Like *Frazier*, Osborne acknowledged in his 1992 booking contract, which is governed by Connecticut law, that (a) his participation may be dangerous and involved the risk of serious bodily injury; (b) he knowingly and freely assumed full responsibility for all such inherent risks; and (c) he released, waived, and

18

discharged WWE from all liability and covenanted not to sue WWE on account of injury resulting in serious bodily injury. *See James* Dkt. 12, Ex. 2, Ex. B at ¶ 9.11. The presence of these contractual issues provides an additional basis for the application of Connecticut law because "Connecticut has adopted the 'general presumption' of § 188 which provides that 'unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the bulk of the contracting transactions took place should be applied.'" *Phillips v. Scott*, 446 F. Supp. 2d 70, 80 (D. Conn. 2006) (quoting *Reichhold Chems. v. Hartford Accident & Indem. Co.*, 243 Conn. 401, 414 (1997)). The foregoing contractual provisions are integral and have a significant relationship to the substantive viability of Plaintiff's claims. Thus, Section 188 independently dictates the application of Connecticut law.

Osborne also dealt extensively with WWE personnel in Connecticut in connection with WWE arranging to send Osborne to drug rehabilitation in 2008. Specifically, in February 2008, Osborne contacted WWE personnel seeking to take advantage of a humanitarian program established by WWE whereby it will pay for drug or alcohol rehabilitation services for former talent if requested to do so. *See* Amann Aff. at ¶ 7. Osborne then communicated with WWE personnel to coordinate his enrollment in a treatment program. *Id.* at ¶ 8. In or around February 2008, Osborne entered an in-patient treatment program at the Menninger Clinic. *Id.* at ¶ 9. WWE personnel working out of WWE's Connecticut headquarters made all of the logistical and financial arrangements to facilitate Osborne's participation in that program. *Id.* at ¶ 10. Upon Osborne's discharge

from the Menninger Clinic in or around May 2008, WWE personnel working out of WWE's Connecticut headquarters again made all of the logistical and financial arrangements for Osborne to enter a ninety (90) day post-treatment program at J Walker Lodge in Colorado.  *Id.* at ¶ 11.  Invoices for Osborne's treatment at both the Menninger Clinic and J Walker Lodge were sent to, and paid out of, WWE's Connecticut headquarters.[14]  *Id.* at ¶ 12.

Separately, for the same reasons described in the *Frazier* motion to dismiss, the relevant principles set forth in Section 6 of the Restatement, including "the relevant policies of the forum" and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," buttress the application of Connecticut law.  In particular, Plaintiff's claims are time-barred under Connecticut's applicable statutes of limitation/repose.  In *Stephens*, in determining that Connecticut (not New York) statutes of limitation should apply to a wrongful death claim against Connecticut defendants by a New York resident who died in New York, Judge Arterton noted three separate times in her opinion that (1) "Connecticut has a <u>strong interest</u> in . . . protecting its courts and defendants within its borders from stale claims;" (2) "as far as the application of statute of limitations and tolling provisions to this action is concerned, Connecticut has a <u>more significant interest</u> than does New York in this case;" and (3) "the purpose of the statute of limitations and tolling provision at issue here is to protect defendants from stale claims, and Connecticut has a <u>significantly greater interest</u> in application of that rule to

---

[14]   The FAC alleges that WWE provided and paid for Osborne to attend a drug rehab program in or around 1999.  *See McCullough* Dkt. 99 at ¶ 183.  That is not correct, as set forth in Mr. Amann's affidavit.  *See* Amann Aff. at ¶ 13.

defendant domiciliaries." *Stephens*, 162 F. Supp. 2d at 43-44 (emphasis added). The Section 6 principles also include "the protection of justified expectations" and, as described above, the justified expectation of WWE was certainly <u>not</u> that it would be sued under Texas' wrongful death statute because Osborne died of a drug overdose in Texas decades after last regularly performing for WWE. Moreover, Texas has no identifiable interest at all in this case. Neither the decedent, James, nor their two children were residents of Texas, and Plaintiff does not allege any Texas interest whatsoever.

Finally, Section 142 of the Restatement provides an independent basis to apply Connecticut statutes of limitation/repose. *See Howe v. Stuart Amusement Corp.*, No. 343407, 1991 WL 273637, at *3 (Conn. Super. Ct. Dec. 11, 1991) ("[T]he *O'Connor* case adopted in full applicable sections of the Restatement (Second) Conflict of Laws, and that the Restatement favors application of forum law to matters of procedure."); *see also O'Connor*, 201 Conn. at 649-50 ("It is therefore our conclusion that we too should incorporate the guidelines of the Restatement as the governing principles for those cases in which application of the doctrine of lex loci would produce an arbitrary, irrational result."); *Wesolek v. Canadair, Ltd.*, No. B-85-693(TFGD), 1987 U.S. Dist. LEXIS 13010, at **29-31 (D. Conn. Mar. 11, 1987) (applying § 142 in holding that because wrongful death claim was barred under § 52-555, the claim is time-barred and discussion of other states' limitations periods "is academic"). Section 142 "favors application of a forum statute of limitations that bars an action," setting forth the "'black letter' caveat that a forum apply its own statute of limitations barring the claim, and that the

21

forum apply its own statute of limitations permitting the claim, unless a state with a more significant relationship to the parties or the occurrence would bar the claim." *Howe*, 1991 WL 273637, at **3-4.  Because Plaintiff's wrongful death claim is time-barred under Connecticut law, Connecticut statutes of limitation/repose apply under Section 142.

**B.    Because the Connecticut Wrongful Death Statute Provides the Exclusive Remedy for Alleged Injuries Resulting In Death Under Connecticut Law, All Other Counts of the FAC Should Be Dismissed**

Connecticut's wrongful death statute provides the exclusive remedy for alleged injuries resulting in death.  *See Ladd v. Douglas Trucking Co.*, 203 Conn. 187, 195 (1987) ("Since its enactment our wrongful death statute has been regarded as the exclusive means by which damages resulting from death are recoverable."); *Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 295 (1993) ("The wrongful death statute; General Statutes § 52-555; is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought.").

Claims for ante-mortem damages resulting from the same conduct that allegedly caused death must be brought under the wrongful death statute.  *See Floyd v. Fruit Indus., Inc.*, 144 Conn. 659, 669 (1957) ("[T]here cannot be a recovery of damages for death itself . . . in one action and a recovery of ante-mortem damages, flowing from the same tort, in another action brought under [the survival statute]."); *Miller v. Hartford Hosp.*, No. X04MMXCV044003261S, 2005 WL 3667347, at *5 (Conn. Super. Ct. Dec. 22, 2005) ("Our appellate authority holds that any action for pre-death injuries are merged into the statutory wrongful death action if the decedent dies as a result of those injuries"); *see also Ladd,* 203

22

Conn. at 190 ("[T]he damages suffered before his death are one of the elements of the 'just damages' to be awarded and must be sought in that action rather than in a separate suit under the survival actions statute."); *Lynn*, 226 Conn. at 294 n.10 ("If the injuries were fatal, an action for wrongful death allows the victim to recover damages suffered before death as well as after.").

Alternative common law causes of action seeking recovery for both ante-mortem damages and death arising from the same alleged conduct must be dismissed. *See Marsala v. Yale-New Haven Hosp., Inc.*, Nos. AANCV126010861, AANCV126011711, 2015 WL 1727653, at *9 (Conn. Super. Ct. Mar. 19, 2015) (plaintiff "cannot legally bring a separate claim for medical malpractice seeking damages for ante-mortem harms and death itself that is untethered to the wrongful death statute"); *Marsala v. Yale-New Haven Hosp., Inc.*, No. AANCV126010861S, 2013 WL 6171307, at *14 (Conn. Super. Ct. Oct. 30, 2013) (striking common law causes of action for assault and battery because "General Statutes § 52-555 provides the exclusive available remedy for injuries where death is a result of the wrongful act and therefore precludes the administrator from pleading alternative common law causes of action").

The common law causes of action asserted by Plaintiff allege that Osborne suffered injuries that "caused or contributed to his untimely death," and seek damages for the consequences of his death. *See McCullough* Dkt. 99 at ¶¶ 210, 221, 238, 250, 266 & 287. Such common law causes of action alleging injuries to Osborne were required to be brought pursuant to the wrongful death statute.

**C.**     **Plaintiff's Wrongful Death Claim Fails As A Matter of Law**

    **1.**     **Plaintiff's Wrongful Death Claim Cannot Be Maintained Under Connecticut's Wrongful Death Statute, C.G.S. § 52-555**

        **a.**     **Plaintiff Lacks Standing to Sue Under § 52-555**

Under Connecticut law, "[s]tanding to bring a wrongful death action is . . . conferred only upon either an executor or administrator."  *Isaac v. Mount Sinai Hosp.,* 210 Conn. 721, 725-26 (1989) (citations omitted); *see also Ellis v. Cohen,* 118 Conn. App. 211, 216 (2009) ("§ 52-555 creates a cause of action for wrongful death that is maintainable on behalf of the estate only by an executor or administrator.").  Where the plaintiff "is neither the executor nor administrator of the decedent's estate . . . [she] lacks standing to bring a wrongful death action." *Alexander v. Tyson*, No. 3:11cv710(SRU), 2013 WL 1798896, at *2 (D. Conn. Apr. 29, 2013).  Here, Plaintiff is not alleged to be the executor or administrator of Osborne's estate.  Nor are Plaintiff's children, on whose behalf she purports to have filed suit, alleged to be the executor or administrator.  As such, Plaintiff lacks standing to sue under § 52-555.

        **b.**     **Plaintiff's Wrongful Death Claim Is Time-Barred Under § 52-555**

Plaintiff's wrongful death claim is time-barred under both prongs of § 52-555:  (1) the claim was not brought within two years of the date of Osborne's death, and (2) the claim was not brought within five years of the act or omissions complained of.  First, Plaintiff's claim is time-barred because it was not "commenced" under Connecticut law within two years of the date of Osborne's death.  Connecticut law holds that an action is commenced for purposes of tolling the statute of limitation not when it is filed, but instead when the complaint

24

is actually served on the defendant. *See Converse v. Gen. Motors Corp.*, 893 F.2d 513, 514-516 (2d Cir. 1990); *Stephens*, 162 F. Supp. 2d 38-40. The FAC alleges that Osborne died on June 28, 2013. *See McCullough* Dkt. 99 at ¶ 277. Although the original complaint in this action was filed on June 26, 2015, it was not served on WWE until July 15, 2015. *See James* Dkt. 16. According to Connecticut law, therefore, the statute of limitations was not tolled until July 15, 2015 — more than two weeks after the two-year statute of limitation had expired.

Second, Plaintiff's wrongful death claim was not brought within five years of the act or omission complained of. Plaintiff alleges that "Matthew Osborne's untimely death on or about June 28, 2013 was a direct and proximate result of having suffered multiple past traumatic brain injuries while wrestling for WWE." *McCullough* Dkt. 99 at ¶ 277. As described above, Osborne last regularly performed for WWE in 1993 and once in 2007. Because the latest date on which Osborne could have suffered a traumatic brain injury while regularly wrestling for WWE was in 1993, the five-year repose aspect of § 52-555 for any injuries to that date expired in 1998 — over fifteen years before Plaintiff's suit was commenced by service on WWE on July 15, 2015.[15] And, on the one date he performed in 2007, the five-year repose aspect of § 52-555 expired in 2012 — still years before this lawsuit was commenced.

Third, as explained in the *Frazier* motion to dismiss, WWE has not found any cases in Connecticut allowing the time limits of § 52-555 to be modified by

---

[15] The FAC misleadingly alleges that Osborne wrestled for WWE "beginning in 1985 and ending in 2007." *McCullough* Dkt. 99 at ¶ 277. Even if Plaintiff's allegation were taken as true, the repose aspect of § 52-555 still expired in 2012 — approximately three years before Plaintiff commenced this action — making the wrongful death claim time-barred under any circumstances.

the continuing course of conduct tolling doctrines discussed in regard to common law claims.  *See McCullough* Dkt. 103-1 at 26-28.  Given the clear holdings of the Connecticut Supreme Court in *Greco* and *Ecker* that courts are not free to "extend, modify or enlarge" the scope of that statute; that the time limits go to subject matter jurisdiction; and the inability of parties to confer subject matter jurisdiction on a court, WWE respectfully submits that continuing course of conduct tolling cannot apply as a matter of law to § 52-555 without violating this controlling precedent.  *See Greco*, 277 Conn. at 349-50; *Ecker*, 205 Conn. at 233; *see also Pa. Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield, CT*, No. 3:11-cv-650(VLB), 2012 WL 3779140, at *3 (D. Conn. Aug. 30, 2012) (Bryant, J.) (noting "[i]n theory, at least, the legislative bar to subsequent action is absolute, subject to <u>legislatively created</u> exceptions . . . set forth in the statute of repose") (emphasis added).  The continuing course of conduct doctrine is not a legislatively created exception, but rather a common law tolling doctrine.[16]

In any event, as in *Frazier*, the admissions in the pleadings negate any factual basis to toll the repose aspect of § 52-555 based on continuing course of conduct tolling.  It is well-established that "the continuing course of conduct doctrine 'has no application after the plaintiff discovered the harm.' . . . The harm done need not have been known in its entirety to foreclose the applicability of this doctrine."  *Ride, Inc. v. APS Tech., Inc.*, 11 F. Supp. 3d 169, 187 (D. Conn.

---

[16] Additionally, "jurisdictional time limits, such as those contained in § 52-555, are not subject to equitable tolling."  *Saperstein v. Danbury Hosp.*, Nos. X06CV075007185S, X06CV085011032S, 2010 WL 760402, at *13 n.14 (Conn. Super Ct. Jan. 27, 2010).

2014) (quoting *Rosato v. Mascardo*, 82 Conn. App. 396, 405 (2004)); *see also AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, No. 3:10-cv-01539 (JAM), 2014 WL 7270160, at *15 (D. Conn. Dec. 18, 2014).  Among other things, Plaintiff has alleged that (a) "[o]ver his career, Matthew Osborne suffered repeated concussions and countless sub-concussive blows;" (b) Osborne "sustained repeated concussions day after day over many years, resulting in a greatly increased chance of CTE and related illnesses;" (c) "[i]n many instances, these chair shots have delivered dangerous levels of force to the recipient's skull including to Matthew Osborne;" (d) "[i]nstead of stopping events when Matthew Osborne sustained injuries, WWE allowed such events to continue, requiring Matthew Osborne to fight through the pain;" (e) "[e]ven the most basic wrestling move, the 'bump,' involves the risk of injury to the head and spine. . . . [D]epending on the speed at which they are taking the bump, wrestlers hit their heads or necks resulting in head injuries.  Matthew Osborne conducted this move multiple times over his career;" (f) Osborne "sustained thousands of hits to his head as part of scripted and choreographed moves;" (g) WWE "prematurely allowed Matthew Osborne to return to the ring or to practice, even when injured. As a result, wrestlers, including Matthew Osborne, suffered serious permanent and debilitating injuries and damages;" and (h) WWE "failed to properly monitor, diagnose, and treat Matthew Osborne before, during and after the wrestling matches, in some cases allowing him to return to the ring despite 'wooziness' — a sign of brain trauma;"   *See McCullough* Dkt. 99 at ¶¶ 50, 67 (p. 21), 70 (p. 22), 76 (p. 23), 77 (p. 23-24), 75 (p. 23), 64 (p. 27), 159.  These admissions of "some harm"

start ordinary limitations running and also operate to preclude continuing course of conduct tolling under the *Rosato* doctrine and to bar fraudulent concealment tolling, as discussed at length in prior briefings.  *See McCullough* Dkt. 95-1 at 23-25; *see also Rosato*, 82 Conn. App. at 404-05 (continuing course of conduct tolling exception has no application once statute begins to run, which does not require full manifestation of injuries); *Ride,* 11 F. Supp. 3d at 187 (holding "[t]he harm done need not have been known in its entirety to foreclose the applicability of [the continuing course of conduct] doctrine"); *AT Engine Controls Ltd.,* 2014 WL 7270160, at *15 (finding the fact of damages may be grounds for tolling but the extent of damage is not).

     2.    **Even if Texas Law Did Apply, Plaintiff Could Not Maintain A Claim Under Texas' Wrongful Death Statute**

        a.    **Connecticut Limitations/Repose Would Still Govern the Timeliness of Plaintiff's Claim Because Limitations for Wrongful Death Under Texas Law Is Considered Procedural**

Once again for the reasons described in the *Frazier* motion to dismiss brief, even if the Court found that Texas substantive law applies under the Restatement factors, the Court would still have to determine if Texas' statute of limitation for wrongful death is "interwoven with the cause of action" such that it is considered a substantive limitation on the right itself.  *See McCullough* Dkt. 103-1 at 28-29.  If not, the statute of limitations is considered procedural and Connecticut limitation/repose periods would apply.  *See Baxter v. Sturm, Ruger & Co.*, 230 Conn. 335, 340 (1994).  The Texas wrongful death statute does "not contain any time limitations." *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 792-93 (Tex. 1974).  Rather, "the time limitation for filing such an action is found in . . . a general

statute of limitations."  *Id.*; *Hill v. Perel*, 923 S.W.2d 636, 639 (Tex. App. 1995)

("Only when the very statute that created a right of action incorporates an

express limitation upon the time within which the suit could be brought is the

statute of limitations considered substantive."); 12A TEX. JUR.3D CONFLICT OF LAWS

§ 51 (2015) ("A general limitations referencing the statutory cause of action will

be considered merely procedural.").

Because the statute of limitation for wrongful death under Texas law is not

"interwoven with the cause of action," both Connecticut and Texas would regard

it as merely a limit on the remedy and therefore procedural.  Thus, under *Baxter*

the limitation period set forth in Connecticut's wrongful death statute

nonetheless would govern the timeliness of James' claim.

> **b.    Plaintiff Failed to Join All Necessary and Indispensable Parties**
> **Required Under the Texas Wrongful Death Statute**

Plaintiff's wrongful death claim is defective for other reasons under Texas

law, which WWE submits does not apply in any event.  Nevertheless, under Texas

law, a proper litigant is required to join all necessary and indispensable parties

required under the Texas wrongful death statute.  The Texas wrongful death

statute "contemplates that only one suit shall be brought, which shall be for the

benefit of all parties entitled to recover."  *Avila v. St. Luke's Lutheran Hosp.*, 948

S.W.2d 841, 850 (Tex. App. 1997).  Thus, "all the beneficiaries named in the act are

necessary parties."  *Id.*  "When it does not appear from the record that all

beneficiaries have been made a party to the lawsuit, the judgment cannot stand."

*Tex. Health Enters., Inc. v. Geisler*, 9 S.W.3d 163, 169 (Tex. App. 1999); *see also*

*Avila*, 948 S.W.2d at 850-51 ("All of the parties who are to share in the recovery

must appear on the face of the petition . . . . When it appears from an inspection of the petition that it does not contain the proper averments to enable the court to distribute the damages among all entitled as contemplated by the statute, it is subject to special exception, plea in abatement or some other appropriate pleading."); *Webb v. Huffman*, 320 S.W.2d 893, 900 (Tex. App. 1959) (holding that failure to join mother of deceased in wrongful death action was "fundamental" error).  "The provision of the act requiring all of the beneficiaries to be parties was enacted chiefly for the benefit of the defendant in such suit, to protect it against the bringing of several suits arising out of the same transaction."  *Avila*, 948 S.W.2d at 850.

Here, Plaintiff purports to bring this action solely "as the mother and next friend of Matthew David Osborne and Teagan Lynn Osborne, the children and successors-in-interest of Matthew Wade Osborne."  *McCullough* Dkt. 99 at ¶ 1. Plaintiff asserts that "[m]inor children Teagan and Matthew Osborne are statutory beneficiaries, and may bring this action for the wrongful death of their beloved father."  *Id.* at ¶ 275.  Osborne, however, had at least two other children, Anthony and Rena, who also are statutory beneficiaries under Texas' wrongful death statute.  *See* Ex. 3.  Because Osborne's children, Anthony and Rena, are not parties to this lawsuit (and cannot be represented in this lawsuit by Plaintiff who is not their mother), Plaintiff's wrongful death claim fails to name all necessary parties and therefore is defective for that additional reason.

       **c.**    **Plaintiff Also Lacks Standing to Sue Under the Texas Wrongful Death Statute**

      The Texas wrongful death statute provides that if none of the enumerated statutory beneficiaries "entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals."  TEX. CIV. PRACT. & REM. CODE § 71.004 (West 2015). Interpreting the plain language of the statute, two federal courts have found that if no wrongful death action is commenced within three months after the decedent's death, <u>only</u> the executor or administrator of the estate has standing to file suit. *See Morin v. Ford Motor Co.*, Nos. 3:07-CV-1700-L, 3:08-CV-779-L, 2009 WL 2486027, at *2 (N.D. Tex. Aug. 12, 2009) ("Because none of the individuals entitled to bring an action . . . commenced a wrongful death action within three calendar months after [the decedent's] death . . . , [the personal representative of the estate] is the only person entitled to bring and prosecute this wrongful death action under the Act."); *Trevino v. U-Haul Int'l, Inc.*, No. 08-cv-1409, 2009 WL 901136, at *3 (N.D. Ill. Mar. 31, 2009) (holding that Texas wrongful death statute "authorizes any of the [statutory] beneficiaries to commence a lawsuit within the first three months after the death of the injured individual . . . . However, after that initial time period, the Texas statute provides that only the 'executor or administrator shall bring and prosecute the action unless requested not to by all those individuals.'").  For example, in *Morin*, the Northern District of Texas ruled that a wrongful death action filed by the decedent's widow almost one year after the decedent's death "was untimely" because "[a]t that time . . . only the executor

31

or administrator was entitled to bring and prosecute the action unless he or she was requested not to do so by all statutory beneficiaries." *Morin*, 2009 WL 2486027, at **2, 6.

Plaintiff filed this lawsuit on June 26, 2015, nearly two years after Osborne's death on June 28, 2013. *McCullough* Dkt. 99 at ¶ 277. At that time, only the executor or administrator of Osborne's estate was entitled to file suit under the Texas wrongful death statute. As discussed above in the context of Plaintiff's lack of standing under Connecticut's wrongful death statute, neither Plaintiff nor her children are alleged to be the executor or administrator of Osborne's estate. Accordingly, Plaintiff lacks standing to sue under the Texas wrongful death statute in any event.[17]

### 3. Plaintiff's Wrongful Death Claim Must Be Dismissed Because She Has Failed to Allege A Plausible Causal Connection Between WWE's Alleged Wrongful Conduct and the Decedent's Injury

To state a claim under Connecticut's wrongful death statute, "[t]he plaintiff must prove not only a violation of a standard of care as a wrongful act, but also a <u>causal relationship</u> between the injury and the resulting death." *Ward v. Greene*, 267 Conn. 539, 546 (2004) (emphasis added). "A causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case." *Id.* "[I]t is the plaintiff who bears the burden to prove an <u>unbroken sequence of events</u> that tied [his] injuries to the

---

[17]   In candor to the Court, WWE points out that in *Mendoza v. Texana Ctr.*, No. G-13-60, 2014 WL 357412, at *3 (S.D. Tex. Jan. 31, 2014), the court rejected the argument that only an estate executor may bring a wrongful death action if the surviving parents or children failed to do so within three months of death. In doing so, the court noted that the defendants had cited no case law supporting that position. Evidently, the defendants in that case did not bring the *Trevino* or *Morin* decisions to that court's attention.

[defendant's conduct]. . . .  This causal connection must be <u>based upon more than conjecture and surmise</u>."  *Alexander v. Town of Vernon,* 101 Conn. App. 477, 485 (2007) (citation omitted) (first emphasis added, second emphasis in original).

The Connecticut Supreme Court has ruled that "[i]f the chain of causation of the damage, when traced from the beginning to the end, includes an act or omission which . . . is or becomes of no consequence in the result or so trivial as to be a mere incident of the operating cause, it is not such a factor as will impose liability for those results."  *Grody v. Tulin*, 170 Conn. 443, 448-49 (1976).  This Court has relied on the *Grody* rule of causation to dismiss wrongful death claims at the motion to dismiss phase.  *See Rose*, 2013 WL 1187049, at *9 (granting Rule 12(b)(6) motion because "[p]laintiffs have failed to allege any causal relationship between the Hospital's conduct and Brown's death to maintain a wrongful death claim against the Hospital").

Here, Plaintiff alleges that "Matthew Osborne's untimely death on or about June 28, 2013 was a direct and proximate result of having suffered multiple past traumatic brain injuries while wrestling for WWE."  *McCullough* Dkt. 99 at ¶ 277.  Insofar as causation is concerned, however, Plaintiff also curiously alleges that "Matthew Osborne's death could have been prevented had WWE accepted the overwhelming statistical evidence of wrestler death rates, the resounding medical evidence, and had not fraudulently, negligently, and recklessly concealed these facts from Matthew Osborne, preventing him from taking appropriate actions and receiving the necessary medical treatment."  *Id.* at ¶ 198.  Both of these causation allegations are entirely implausible allegations completely divorced from the

official cause and manner of death, which indicate that Osborne died of a drug overdose after evidently relapsing to a life-long struggle with drugs, not because WWE concealed media reports from him or due to a brain injury.

This simple truth is confirmed by Osborne's autopsy, which concluded as follows:  Osborne "died as a result of toxic effects of opiates.  Another significant and contributory factor was arteriosclerotic and hypertensive cardiovascular disease.  Investigative information is consistent with his death being an accident related to drug abuse."  *See* Ex. 1.  There is no finding of CTE or any indication CTE had anything to do with the cause of death.  Given the years, indeed decades, between when Osborne performed for WWE and his death from a drug overdose, there could never be an "unbroken sequence of events" tying any injuries to his death.  Indeed, in the only significant event between the two, WWE actually tried to help Osborne overcome his drug addiction by paying for his rehabilitation.  Plaintiff's Sixth Cause of Action for Wrongful Death should, therefore, be dismissed.  *See McDermott v. Conn.*, 316 Conn. 601, 616 (2015) (holding that the harm actually suffered must be of the same general type as that which makes the defendant's conduct tortious in the first place); *see also Rose*, 2013 WL 1187049, at *9; *Thomas v. Walgreen E. Co.,* No. HHDCV075009127, 2011 WL 7029842, at *3 (Conn. Super. Ct. Dec. 22, 2011) (no duty when the nexus between a defendant's alleged tort and the particular consequences to plaintiff are too attenuated).

**D.    Plaintiff Cannot Assert Survivor Claims for Ante-Mortem Injuries Sustained By the Decedent Independent Of § 52-555**

**1.    Plaintiff Lacks Standing to Assert the Ante-Mortem Claims**

As discussed above, the Connecticut wrongful death statute is the exclusive remedy for alleged injuries resulting in death.  Claims for ante-mortem damages resulting from the same conduct that allegedly caused death must be brought under the wrongful death statute.  *See Floyd*, 144 Conn. at 669.

Assuming *arguendo* that survivor claims for negligence and fraud arising out of alleged injuries sustained by Osborne prior to his death could be asserted independent of § 52-555, Plaintiff lacks standing to assert them.  C.G.S. § 52-599 provides that "[a] cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator."  Connecticut courts have interpreted this statute to mean that "[w]hile an executor or administrator may bring a cause of action on behalf of the decedent, the heirs or beneficiaries of the decedent may not."  *Wells Fargo Bank, N.A. v. Treglia*, No. FSTCV065001250, 2011 WL 3672037, at *3 (Conn. Super. Ct. July 25, 2011); *see also Rose*, 2013 WL 1187049, at *4 (finding father of decedent "lacks standing to assert a claim on behalf of his deceased son" because he was neither executor or administrator of son's estate).  Thus, "[t]he proper suit, upon a cause of action arising in favor of or against the decedent <u>during his lifetime</u>, is in the name of the fiduciary rather than of the heirs or other beneficiaries of the estate."  *Treglia*, 2011 WL 3672037, at *3 (quoting *George v. Warren*, No. 0356138, 1995 WL 574771, at **2-3 (Conn. Super. Ct. Sept. 15, 1995)) (emphasis in original); *see also Fedor v. Hawley*, No. CV065003192S, 2006 WL 3360393, at *3 (Conn.

35

Super. Ct. Nov. 3, 2006) (granting motion to dismiss claims that the defendant "made fraudulent misrepresentations *to* the decedent" because plaintiffs were not fiduciaries of the decedent's estate at the time action was commenced) (emphasis in original).

Neither Plaintiff nor her minor children, on whose behalf she purportedly filed suit, are alleged to be the executor or administrator of Osborne's estate. Accordingly, Plaintiff, either individually or on behalf of her children, lacks standing to assert the ante-mortem claims.

### 2.   Ante-Mortem Claims Are Time-Barred Under Connecticut Law

Even if Plaintiff did not lack standing to assert survivor claims for ante-mortem injuries sustained by the decedent, which she does, those claims would be time-barred under Connecticut law.  Under C.G.S. § 52-594, which applies to survivor actions, a cause of action that is time-barred prior to the decedent's death may not be asserted posthumously by his estate; if a cause of action has not previously expired, the deceased's personal representative is given one year to assert an action therefor.

This case, like the *LoGrasso/Singleton*, *McCullough*, and *Frazier* Actions, was transferred to this Court pursuant to the enforcement of a forum-selection clause in Osborne's booking contract with WWE.  In the *LoGrasso/Singleton* motion to dismiss and the *McCullough* motion to dismiss, WWE fully briefed why Connecticut statutes of limitation/repose apply to the transferred claims.  In responding to WWE's motions to dismiss, plaintiffs did not dispute that Connecticut limitations/repose apply or that Connecticut law governs the substantive claims at issue.  In the absence of opposition to WWE's prior motions

to dismiss on this issue, WWE simply incorporates those arguments herein since there is no dispute that Connecticut limitations/repose and Connecticut substantive law apply to the common law claims.

The application of Connecticut statutes of limitation/repose to Plaintiff's negligence and fraud claims is the same as was discussed in WWE's motion to dismiss the *Frazier* Action:  Plaintiff's negligence claim (Fifth Cause of Action) is subject to C.G.S. § 52-584 and Plaintiff's fraud and negligent misrepresentation claims (First, Second, Third and Fourth Causes of Action) are subject to C.G.S. § 52-577.  To avoid burdening the Court with duplicative filings, WWE's discussion of those statutes of limitation/repose in the *Frazier* motion to dismiss is incorporated herein by reference.  *See McCullough* Dkt. 103-1 at 33-38.

The two-year limitations period of § 52-584 begins to run when a plaintiff sustains "some injury" and is not tolled until the injury "reached its fullest manifestation," *See Slekis v. Nat'l R.R. Passenger Corp.*, 56 F. Supp. 2d 202, 206 (D. Conn. 1999) (citing *Burns v. Hartford Hosp.*, 192 Conn. 451, 460 (1984)); *see also Merly v. State*, 211 Conn. 199, 206 (1989).  Plaintiff alleges that "Matthew Osborne sustained repeated concussions day after day over many years, resulting in a greatly increased chance of CTE and related illnesses." *McCullough* Dkt. 99 at ¶ 67 (p. 21).  Plaintiff further alleges that Osborne "suffer[ed] repeated injuries to his head, neck, and spine . . . while performing for WWE."  *Id.* at ¶ 173.  Plaintiff then admits that Osborne performed for WWE "from 1985-1986, 1992-1993, and again in 2007."  *Id.* at ¶ 193.  Given Plaintiff's admissions that Osborne sustained "some injury" while performing for WWE

37

which triggered the running of the two-year statute of limitation under § 52-577, and that Osborne last regularly performed in 1993 and last performed entirely in 2007, the two-year statute of limitation expired by 1995 and, at the latest, by 2009 — long before Plaintiff filed suit in 2015.

In addition to being time-barred under the two-year limitations period under § 52-584, all of Plaintiff's survivor claims are otherwise time-barred under the three-year repose provisions of §§ 52-577 and 52-584.  As noted in WWE's prior briefing, this Court has found the repose provisions of §§ 52-577 and 52-584 to be occurrence statutes that do not follow the so-called discovery rule of other jurisdictions.  *See Pa. Mfs. Indem. Co.*, 2012 WL 3779140, at *3 (noting that § 52-584 bars suit more than three years after the negligent conduct "regardless of when a plaintiff discovers the proximate cause of his harm or any other essential element of a negligence cause of action");  *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 34 (D. Conn. 2009) (Bryant, J.) (noting that statute is an occurrence statute).  By definition, the latest WWE could have committed an act or omission causing any injury to Osborne was 1993 when he last regularly performed for WWE and, under any circumstances, not later than 2007 when he last appeared for WWE in any respect.  Thus, these claims were barred by repose as of 1996 and, at the latest, 2010.  Because Plaintiff did not commence this action until July 2015, at least five and in reality nearly twenty years after repose attached, all of Plaintiff's claims are plainly time-barred under the three-year repose provisions of §§ 52-577 and 52-584.

3.      **No Tolling Doctrine Salvages any of Plaintiff's Ante-Mortem Claims**

No tolling doctrine salvages any of Plaintiff's claims for the same reasons described in the *Frazier* motion to dismiss, which again, to avoid duplicative filings, are incorporated herein by reference.  Despite this clear law, Plaintiff asserts five conclusory paragraphs in what appears to be a futile attempt to invoke equitable tolling.  *See McCullough* Dkt. 99 at ¶¶ 194-198.  Those paragraphs, however, do not plead any recognized tolling doctrines under Connecticut law.  Rather, they largely reiterate the substance of the claim that WWE supposedly omitted to tell Osborne about the dangers of concussions.

Without satisfying the requirements of Rule 9(b) or C.G.S. § 52-595, or identifying any particulars whatsoever, Plaintiff baldly alleges that "WWE affirmatively concealed facts, and continues to conceal facts, which prevented Matthew Osborne from discovering his claims."  *Id.* at ¶ 196.  Plaintiff then goes on to assert that "the statute of limitations is tolled because of Defendants' [sic] fraudulent concealment of the dangers and adverse effects of head injuries, the risks associated with wrestling, the injuries suffered while wrestling, and the negligent medical care provided to Matthew Osborne through WWE."  *Id.* at ¶ 197.  These legal conclusions are meritless and disregarded under *Twombly*, and fail to meet the requirements of § 52-595 in any event.

It also is noteworthy that the prolix complaint does not allege that (a) WWE ever treated Osborne for a concussion; (b) Osborne ever reported a suspected concussion; or (c) WWE ever provided medical care or services for such matters after Osborne last regularly performed for WWE in 1993 —over twenty years ago.

On the contrary, the FAC alleges that "WWE's routine and systematic failure to assess, diagnose, and treat Matthew Osborne before, during, and after matches during his WWE career . . . ultimately resulted in his untimely death." *Id.* at ¶ 21. Despite conclusory allegations of law that WWE owed or assumed a duty of continuing care to Osborne, all of which are to be disregarded under *Twombly*, the actual factual allegations belie application of the continuing course of conduct doctrine. After 1993, he appeared once at a special event of WWE in 2007. By then, the statute of repose had long prohibited any claims for injuries during the years he regularly performed. In 2008, WWE financially paid the treatment center for his rehab as a humanitarian gesture, again long after repose had attached. Thereafter, there was no contacts or relationship of any kind. These factual admissions negate any tolling doctrine under Connecticut law, which WWE previously briefed in the *McCullough* and *Frazier* motions to dismiss.

E.    Plaintiff's Negligence and Fraud Claims Are Substantively Defective

Plaintiff's negligence and fraud claims are otherwise substantively defective for the reasons described in WWE's prior briefing which, to avoid burdening the Court with duplicative filings, is not repeated here. Specifically, all negligence claims of the FAC are subject to dismissal under the contact sports exception, adopted in *Jaworski v. Kiernan*, 241 Conn. 399 (1997), as explained in WWE's prior briefing.[18] Additionally, the fraud and misrepresentation claims of

---

[18] Plaintiff alleges that professional wrestling is a "contact sport" (*McCullough* Dkt. 99 at ¶¶ 15, 107), and like the other plaintiffs in these consolidated proceedings, Plaintiff specifically acknowledged the inherent risks of participating in professional wrestling, including, for example, the following allegations: (a) "It is commonplace for WWE wrestlers to experience numerous concussions over their careers, during which many fight hundreds of times each

the FAC are substantively defective for the same reasons described in WWE's previously-filed motions to dismiss the *Haynes, LoGrasso/Singleton,* and *McCullough* Actions, namely:  (1) they do not comply with the heightened pleading standards of Rule 9(b); (2) they fail to allege the misrepresentation or omission of a past or present material fact to Osborne by anybody; (3) they fail to allege with particularity how WWE fraudulently concealed publicly-available information regarding scientific research regarding CTE and concussions that supposedly has existed in the public domain for decades from Osborne; (4) they fail to sufficiently plead scienter or any motive to commit fraud; and (5) no relationship between the parties is pled giving rise to a duty to disclose and, even if a duty to speak did exist, that duty is merely to refrain from deliberate misrepresentations, none of which are alleged.

F.    **Plaintiff Failed to Comply with the Requirements of C.G.S. § 52-190a**

As in *Frazier*, Plaintiff's claims must be dismissed because Plaintiff did not file a certificate of good faith or an opinion letter from a health care provider

---

year.  A wrestler such as Matthew Osborne sustained repeated concussions day after day over many years, resulting in a greatly increased chance of CTE and related illnesses;" (b) "Matthew Osborne's WWE scripted and directed performances would utilize props such as glass beer bottles, metal chairs, and metal chains which Matthew Osborne would have hit on his head and broken over his head repeatedly throughout his tenure with WWE;" (c) "During WWE matches, wrestlers including Matthew Osborne, performed activities that are exceedingly dangerous to himself and to his adversaries;" (d) "Even where no mistakes occur, these stunts can result in detrimental blows to the head;" (e) "Matthew Osborne sustained thousands of hits to his head as part of scripted and choreographed moves;" (f) "Even the most basic wrestling move, the 'bump,' involves the risk of injury to the head and spine;" (g) "WWE demanded Matthew Osborne perform acts which it knew or should have known cannot be performed safely.  For example, the use of dangerous weapons like steel chairs against the head by wrestlers cannot be done safely."  *McCullough* Dkt. 99 at ¶¶ 65 (p. 21), 67 (p. 21), 68 (p. 21), 75 (p. 23), 77 (p. 23), 163, 171.

stating that medical negligence has occurred as required by C.G.S. § 52-190a.
"[D]ismissal is the mandatory remedy when a plaintiff fails to file an opinion letter
that complies with § 52-190a(a)."  *Bennett v. New Milford Hosp., Inc.*, 300 Conn. 1,
28 (2011).  Section 52-190a applies to any action in which injury or death is
allegedly caused by the negligence of a health care provider even if the party
sued is not a health care provider.  The "health care provider" referenced in the
statute is "the person who allegedly committed the medical malpractice, not the
person or institution that ultimately may be held liable for that malpractice."
*Wilkins v. Conn. Childbirth & Women's Ctr.*, 314 Conn. 709, 722-23 (2014).

The requirements of Section 52-190a plainly apply to this case because
Plaintiff repeatedly alleges that Osborne suffered injuries and death as a result of
negligence by WWE's medical staff.[19]  *See McCullough* Dkt. 99 at ¶¶ 158, 159, 176,
177, 179, & 182.  Among other allegations against medical personnel, the FAC
specifically alleges that "WWE's doctors and medical personnel failed to properly
monitor, diagnose, and treat Matthew Osborne before, during, and after the
wrestling matches."  *Id.* at ¶ 159.  Plaintiff further alleges that "Matthew Osborne
reasonably relied on the medical advice provided by WWE's doctors, as well as
the medical advice not provided, including the failure to diagnose concussions
and sub-concussive injuries, and the failure to prescribe the necessary treatment
for these injuries."  *Id.* at ¶ 177.  These allegations make clear that expert
testimony would be required to establish that WWE had medical staff, which was

---

[19]   Throughout the FAC, allegations are made against unnamed "[m]edical
personnel, including doctors hired by WWE."  *See McCullough* Dkt. 99 at ¶ 177.
Given the time period when Osborne actually performed in the late 1980s and
early 1990s, WWE has no idea who is being referred to in these allegations
because WWE did not at that time typically have medical staff present at events.

negligent, and therefore an opinion from a similar health care provider is required.  *See Wilkins*, 314 Conn. at 723 n. 4 ("If an expert is needed to establish the standard of care, a fortiori, an opinion letter is required from a similar health care provider.").  Plaintiff's failure to comply with the § 52-190a requirements mandates dismissal.  *See Rose*, 2013 WL 1187049, at *8.

**G.     Plaintiff's Seventh Cause of Action for Punitive Damages Must Be Dismissed**

Plaintiff's Seventh Cause of Action for punitive damages must be dismissed for two separate and independent reasons.  First, Connecticut law does not recognize an independent cause of action for "punitive damages."  Thus, this Court has dismissed a punitive damages count independently pled in a complaint.  *See E. Point Sys., Inc. v. Maxim*, No. 3:13-CV-00215(VLB), 2014 WL 523632, at *11 (D. Conn. Feb. 7, 2014) (Bryant, J.); *Rose*, 2013 WL 1187049, at *10.  Second, the decedent's 1992 booking contract with WWE expressly provided, "[i]n no circumstances, whatsoever, shall either party to this Agreement be liable to the other party for any punitive or exemplary damages; and all such damages, whether arising out of the breach of this Agreement or otherwise, are expressly waived."  *James* Dkt. 12, Ex. 2, Ex. B at ¶ 12.4.

**H.     Plaintiff's Allegations Regarding Other Dead Wrestlers Should Be Stricken Pursuant to Rule 12(f)**

As in the *Frazier* First Amended Complaint, Plaintiff inappropriately included in the FAC allegations and color photographs of 39 former-wrestlers who performed for various wrestling promotions and died from different causes, under disparate circumstances, over an approximately 25 year period.  Although

43

WWE respectfully submits that the FAC should be dismissed in its entirety with prejudice, to the extent it is not, WWE moves to strike paragraphs 115 through 154 of the FAC pursuant to Fed. R. Civ. P. 12(f).  Those allegations are immaterial, impertinent, and/or scandalous and therefore should be stricken for the same reasons set forth in the *Frazier* motion to dismiss which are incorporated herein by reference.

### III.   CONCLUSION

For all the foregoing reasons, the FAC should be dismissed in its entirety with prejudice.

DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.,

By:   /s/ Jerry S. McDevitt
Jerry S. McDevitt (pro hac vice)
Terry Budd (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: terry.budd@klgates.com
Email: curtis.krasik@klgates.com


Thomas D. Goldberg (ct04386)
Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343

Email: **tgoldberg@daypitney.com**
Email: **jbtropp@daypitney.com**
Email: **jmueller@daypitney.com**


Its Attorneys.



## CERTIFICATION

I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*