# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH, a/k/a "Big Russ McCullough," RYAN SAKODA, and MATTHEW R. WIESE, a/k/a "Luther Reigns,"** individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>vs.<br><br>**WORLD WRESTLING ENTERTAINMENT, INC.,**<br><br>             Defendant. | LEAD CONSOLIDATED CASE NO. 3:15-cv-01074-VLB<br><br><br><br><br><br><br><br>JANUARY 15, 2016 |

## DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S
## REPLY IN SUPPORT OF MOTION TO DISMISS
## THE AMENDED COMPLAINT IN THE FRAZIER ACTION

Thomas D. Goldberg (ct04386)
Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Facsimile: (860) 275-0343
Email: tgoldberg@daypitney.com
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com

Jerry S. McDevitt (pro hac vice)
Terry Budd (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Phone: (412) 355-6500
Facsimile: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: terry.budd@klgates.com
Email: curtis.krasik@klgates.com

*Counsel for Defendant*
*World Wrestling Entertainment, Inc.*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................ 5

    A. Plaintiff's Claims Are Time-Barred ........................................................... 5

    B. § 52-555 Is the Exclusive Remedy for Alleged Injuries Resulting in Death ........................................................................................................ 9

    C. Plaintiff Has Not Pled Fraud ................................................................... 10

    D. Plaintiff Admittedly Failed to Comply with the Requirements of § 52-190a ................................................................................................. 11

    E. The *Jaworski* Rule Applies to Bar Plaintiff's Claims ........................... 11

    F. Plaintiff's Allegations Regarding Other Dead Wrestlers Should Be Stricken ................................................................................................... 12

III. CONCLUSION ................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.*,
2 F. Supp. 3d 192 (D. Conn. 2014) .................................................................... 1

*Coffman v. Breeze Corp.*, 323 U.S. 316 (1945) ..................................................... 9

*Connell v. Colwell*, 214 Conn. 242, 571 A.2d 116 (1990) ..................................... 7

*Ecker v. West Hartford*, 205 Conn. 219, 530 A.2d 1056 (1987) ......................... 10

*Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188 (D. Conn. 2007) ................ 11

*Estate of Joe Brown v. ARC Music Corp.*, 523 Fed. Appx. 407
(7th Cir. 2013) ................................................................................................... 9

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509 (2d Cir. 2001) ................................. 1

*Greco v. United Techs. Corp.*, 277 Conn. 337, 890 A.2d 1269 (2006) ............. 5, 6

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 761 A.2d 1268
(2000) ................................................................................................................ 9

*Kent v. Pan Am. Ballroom*, No. F038650, 2002 WL 31776394
(Cal. App. Dec. 10, 2002) ............................................................................... 12

*Lami v. Stahl*, No. 3:05cv1416(MRK), 2007 WL 3124834
(D. Conn. Oct. 25, 2007) ................................................................................... 1

*Massaro v. Allingtown Fire District*, No. 3:03-CV-00136(EBB),
2006 WL 1668008 (D. Conn. June 16, 2006) ................................................... 1

*Matthiessen v. Vanech*, 266 Conn. 822, 836 A.2d 394 (2003) ........................... 10

*McClain v. Pfizer, Inc.*, No. 3:06-cv-1795(VLB), 2008 WL 681481
(D. Conn. Mar. 7, 2008) .................................................................................... 1

*Mercier v. Greenwich Acad., Inc.*, No. 3:13-CV-4 (JCH),
2013 WL 3874511 (D. Conn. July 25, 2013) .................................................. 11

*Miller v. Imaging On Call, LLC*, No. 3:13-cv-00679, 2015 WL 150287
(D. Conn. Jan. 12, 2015) ................................................................................... 9

*Pa. Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield,*
   *CT*, No. 3:11-cv-650(VLB), 2012 WL 3779140
   (D. Conn. Aug. 30, 2012) ................................................................................ 6

*Rose v. City of Waterbury*, No. 3:12cv291(VLB), 2013 WL 1187049
   (D. Conn. Mar. 21, 2013) ............................................................................... 2

*Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-*
   *Stratton*, 888 F.2d 239 (2d Cir. 1989) ........................................................... 1

*Trujillo v. Yeager*, 642 F. Supp. 2d 86 (D. Conn. 2009) .............................................. 12

*Vaillancourt v. Latifi*, 81 Conn. App. 541, 840 A.2d 1209 (2004) ............................... 11

*Wagner v. Our Lady of Mount Caritas, O.S.B., Inc.*,
   157 Conn. App. 788, 118 A.3d 103 (2015) .................................................. 10

.

I.     INTRODUCTION

WWE's Opening Brief (Dkt. 103-1) demonstrated that Plaintiff's claims are defective for multiple reasons.  Plaintiff's Opposition (Dkt. 105) entirely fails to respond to many of WWE's dispositive arguments.  The failure to address a dispositive argument constitutes abandonment of the claim to which the argument was directed.[1]  Specifically, the Opposition does not dispute that (a) the Restatement most significant relationship test determines the substantive law governing her wrongful death claim and that Connecticut law applies under that test;[2] (b) Plaintiff's claims, on their face, are subject to repose unless tolling applies; (c) Plaintiff admits knowledge of "some injury" by, *inter alia*, Frazier allegedly "sustain[ing] head and other long-term injures by participating" in each

---

[1] *See McClain v. Pfizer, Inc.*, No. 3:06-cv-1795(VLB), 2008 WL 681481, at *5 (D. Conn. Mar. 7, 2008) (Bryant, J.) ("[Plaintiff] did not respond to the statute of limitations argument in opposition to this motion.  The court infers from her silence that [Plaintiff] concedes this point."); *Lami v. Stahl*, No. 3:05cv1416(MRK), 2007 WL 3124834, at *1 (D. Conn. Oct. 25, 2007) ("It is well settled that a failure to brief an issue is grounds to deem the claim abandoned."); *Massaro v. Allingtown Fire District*, No. 3:03-CV-00136(EBB), 2006 WL 1668008, at *5 (D. Conn. June 16, 2006) ("When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned.").

[2] Plaintiff has impliedly consented to the application of Connecticut law by relying exclusively on Connecticut law in the Opposition and not briefing the substantive law of any other jurisdiction.  *See Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) ("The parties' briefs, however, rely on New York law.  Under the principle that implied consent to use a forum's law is sufficient to establish choice of law, . . . we will apply New York law to this case."); *see also Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001) ("The parties' briefs assume that New York substantive law governs the issues of contract interpretation and statute of limitations presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law."); *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.*, 2 F. Supp. 3d 192, 198 (D. Conn. 2014) (defendant "consented to the application of Connecticut law by relying solely on Connecticut law").

of 289 matches for WWE between 1993 and 2008, which precludes the application of tolling doctrines under the *Rosato* rule; (d) no case has applied, or could apply, continuing course of conduct tolling to § 52-555 which courts are not free to "extend, modify or enlarge;" (e) Plaintiff's wrongful death claim would be time-barred under Tennessee law as well; (f) § 52-555 is the exclusive remedy for alleged injuries resulting in death and, therefore, all other counts of the FAC should be dismissed; (g) Plaintiff failed to comply with the requirements of C.G.S. § 52-190a; (h) vicarious liability is not an independent cause of action; (i) Connecticut law does not recognize a cause of action for punitive damages and the decedent's booking contracts with WWE expressly waived such damages; and (j) Count IX for loss of consortium fails because it is derivative and Counts I-VIII are time-barred and otherwise legally defective.

Unable to dispute these dispositive points, Plaintiff's counsel improperly attempts to amend the claims in the Opposition. "[I]t is well established that '[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.'" *Rose v. City of Waterbury*, No. 3:12cv291(VLB), 2013 WL 1187049, at *1 (D. Conn. Mar. 21, 2013) (citation omitted). As pled in the FAC (Dkt. 98), the wrongful death claim asserts that the decedent, Nelson Frazier, supposedly had CTE as a result of performing for WWE and that CTE somehow prevented Frazier from surviving a massive heart attack on February 18, 2014 — nearly six years after he last performed for WWE. WWE's Opening Brief demonstrated that it is not plausible to plead that Frazier had CTE because CTE can only be diagnosed by a post-mortem autopsy

2

of the brain and Frazier was cremated without such a brain autopsy. Likewise, there is no medically-plausible connection pled between CTE and a 500-pound man suffering a heart attack in the shower. Plaintiff's Opposition does not dispute either of these dispositive points but instead asserts an entirely unpled — and absurd — causation theory:

> WWE created Mr. Frazier's character: an obese, stereotyped brawler whom WWE scripted to over-indulge in food. Mr. Frazier had to maintain an unhealthy lifestyle or risk losing his position in WWE in order to sustain this scripted persona. WWE knew this, and knew the dire consequences to Mr. Frazier's long-term health, yet required Mr. Frazier to continue with these unique personas to promote WWE's brand of performances and profits. This led to a lifetime of health problems that directly contributed to Mr. Frazier's fatal heart attack on February 18, 2014.

Opposition at 4. The unpled allegations are directly contrary to the pled claim that CTE caused Frazier's death, and still do not present a timely claim. Worse, Plaintiff deliberately misleads the Court that such allegations are pled in the FAC by citing to a specific paragraph of the FAC which, in reality, pleads no such thing. *See id.* (citing FAC ¶ 160). The tactic of citing to paragraphs of the FAC as if they contain a factual allegation when in reality they do not is not episodic, but is systematic, and has been a recurrent improper tactic of Plaintiff's counsel noted in WWE's prior briefing. *See* Dkt. 59 at 5-6; Dkt. 70 at 26-27; Dkt. 102 at 5-6.

Plaintiff similarly concocts allegations out of whole cloth in an effort to avoid the pled admissions foreclosing application of continuing course of conduct tolling under *Rosato*. Attempting to contradict the extensive prior admissions that Frazier sustained traumatic brain injuries in every single match he ever performed for WWE, it is now asserted for the first time that "Plaintiff

alleges that Mr. Frazier did not understand the long term repercussions of repeated head injuries until very recently" and that "Plaintiff Did Not Discover Actionable Harm Until After Mr. Frazier's Death." Opposition at 8, 9. But there is not a single allegation in the FAC as to what was discovered about Frazier's brain after his death, which is not surprising since there was no post-mortem autopsy.

Plaintiff also newly asserts in the Opposition that WWE supposedly "had actual awareness of Mr. Frazier's injuries" (*id.* at 10) — an unpled assertion made for the first time after WWE demonstrated in its *McCullough* Reply that the absence of allegations that WWE had actual knowledge of any later manifested brain injury precluded tolling. This unpled assertion, however, again contradicts the admissions in the pleadings that (a) WWE systematically failed "to assess, diagnose and treat Nelson Frazier before, during and after matches," FAC ¶ 23; (b) WWE "did nothing to help [Frazier] manage or treat his injuries and wrestling-related medical conditions," *id.* at ¶ 51; and (c) "[a]t no time, including during the fifteen year career of Nelson Frazier, Jr., did the WWE implement a Concussion Program." *Id.* at ¶ 214. Additionally, Plaintiff falsely asserts in the Opposition that "Mr. Frazier's reliance on WWE's unique knowledge regarding his health and safety did not end when he stopped performing for WWE. WWE continued to deceive Mr. Frazier through its Wellness Program, which was created to allegedly help WWE's current and former wrestlers navigate a large range of health issues, including neurocognitive problems." Opposition at 22-23. Yet again, Plaintiff cites to paragraphs of the FAC which do not support these assertions and are completely baseless as to former wrestlers. On the contrary, the pleadings admit

that WWE did not offer medical care to Frazier after he retired. FAC ¶ 167. Indeed, the pleadings admit that Frazier was being treated by his own personal physician near the end of his WWE career and that Frazier sought medical attention from his own physicians prior to his death for severe depression and severe migraines, paying cash for medical services. *Id.* at ¶¶ 158-59, 168-70.

## II. ARGUMENT

### A. Plaintiff's Claims Are Time-Barred

The attempt to salvage Plaintiff's time-barred claims is a cut-and-paste job of the opposition to the *McCullough* Motion to Dismiss. As such, it does not even address the unique issues pertinent to a wrongful death claim. Plaintiff does not even address the specific limitations period set forth in § 52-555 that "is a jurisdictional prerequisite . . . which must be met in order to maintain an action under § 52-555." *Greco v. United Techs. Corp.*, 277 Conn. 337, 349-50 (2006). No doubt this is because, as noted at the outset, Plaintiff does not dispute that her claims are barred by the five year repose aspect of § 52-555 and continuing course of conduct tolling has not been applied, and cannot be applied to § 52-555 as a matter of law.

Instead, demonstrating the continued refusal to accept the reality of Connecticut's statutes of limitation/repose in general and § 52-555 in particular, Plaintiff's counsel incorrectly asserts — as they did in response to the *McCullough* Motion to Dismiss — that the key to determining whether the claims are timely turns on two things: (1) when Plaintiff or Frazier discovered Frazier's injuries, and (2) whether continuing course of conduct tolling applies. Opposition at 10-11. These arguments were foreclosed when presented by Plaintiffs in

5

*McCullough*, and are here as well.

**First**, Plaintiff's attempt to start limitations on a wrongful death claim only when the decedent supposedly "discovered" the injury has been rejected by the Connecticut Supreme Court.  As explained in WWE's Opening Brief, the Connecticut Supreme Court held in *Greco* that § 52-555 may "serve as a bar to a wrongful death claim in circumstances in which, as in the present case, an injured victim could not have known that he or she had a claim against the alleged tortfeasor until after the limitation period had expired."  *Greco*, 277 Conn. at 353; *see also* Opening Brief at 25-26.[3]  Plaintiff completely fails to address the controlling Connecticut law cited by WWE, and instead points to the inapposite decision in the NHL case which did not involve Connecticut law.

**Second**, even assuming *arguendo* that continuing course of conduct tolling theoretically could apply to § 52-555, the admissions in the *Frazier* pleadings negate the application of tolling to the repose aspect of § 52-555.  Under *Rosato* it is well-established that the "continuing course of conduct doctrine 'has no application after the plaintiff discovered the harm.' . . .  The harm done need not have been known in its entirety to foreclose the applicability of this doctrine."  Opening Brief at 27-28.[4]  As described in WWE's Opening Brief, Plaintiff alleges

---

[3] This is consistent with the analogous repose aspects of §§ 52-577 and 52-584. *See Pa. Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield, CT*, No. 3:11-cv-650(VLB), 2012 WL 3779140, at *3 (D. Conn. Aug. 30, 2012) (repose statute "begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff . . . could not yet have[] discovered that [it] has a cause of action").

[4] Such knowledge of the harm also precludes fraudulent concealment tolling. *See* Opening Brief at 35.  The purported bases for fraudulent concealment tolling have been addressed in WWE's prior briefing and will not be discussed again here

6

that Frazier "sustained head and other long-term injuries by participating" in each of 289 identified matches between 1993 and 2008 and that Frazier sustained "countless head injuries, concussions, and numerous other physical injuries" from these performances. These injuries constitute the "some harm" sufficient to begin limitations running and preclude continuing course of conduct tolling.[5]

**Third**, Plaintiff has not in fact pled a basis to invoke continuing course of conduct tolling in any event. The FAC does not plead any facts establishing any relationship between Frazier and WWE after his departure in 2008, much less an ongoing special relationship providing Frazier with medical care. Thus, as in *McCullough*, Plaintiff is reduced to desperate distortions to try to create the illusion of an ongoing relationship. Plaintiff simply pronounces — contrary to *Twombly/Iqbal* — that the Court must accept as true their erroneous legal conclusion that "WWE maintained an ongoing relationship and duty to Mr. Frazier until his death in 2014 to inform him of the severe, hidden injuries caused by WWE's dangerous work environment." Opposition at 11. Plaintiff then goes on to assert, echoing the same flaws as in *McCullough*, that "[t]hrough its Wellness Program, its public statements, its ongoing fiduciary relationships with Mr.

---

except to note that the Opposition does not identify any statements by WWE specifically made to Frazier; any actual knowledge by WWE of Frazier's alleged injuries; or anything done by WWE specifically to delay Frazier from filing suit.

[5] As discussed in WWE's *McCullough* Reply, the continuing duty that Plaintiff seeks to impose on WWE to warn of medical risks has no legal support, even as to health care providers, which WWE is not. Plaintiff asserts that "**[e]ach time** WWE learned of a new concussion event, a new discovery in concussion research, or a new treatment in concussive injuries, WWE owed Mr. Frazier a duty to inform him of the severe injuries it knew it subjected Mr. Frazier to throughout his career." Opposition at 20 (emphasis in original). The notion that Plaintiff's claims are tolled because WWE failed to notify Plaintiff of its alleged prior negligence is foreclosed by *Connell v. Colwell*, 214 Conn. 242, 254-55 (1990).

7

Frazier, including payment of royalties for the footage of the severe head trauma he suffered while performing for WWE, its ongoing maintenance of its dedicated webpage to former Talent, and its continuing research into concussions and concussion syndrome, WWE maintained an ongoing duty and continuous conduct with Mr. Frazier." *Id.* at 18-19.  For those remarkable assertions, Plaintiff cites FAC ¶¶ 23, 216, which do not allege any such thing and would not establish a continuing medical relationship anyway.  Elsewhere, Plaintiff cites to FAC ¶¶ 216-218 for the assertion that WWE's Wellness Program "was created to allegedly help WWE's current and former wrestlers navigate a large range of health issues, including neurocognitive problems." *Id.* at 22-23.  These allegations again say no such thing and, in particular, the partial quote regarding WWE's Wellness Program says absolutely nothing to suggest that the Wellness Program was created to help <u>former</u> wrestlers with health issues or neurocognitive problems.  As described in WWE's *McCullough* Reply, this is one of many instances in which Plaintiff's arguments devolve into fantasia.  Other examples of fantasia include that (a) unidentified "public statements" not made to Frazier somehow establish an ongoing duty to Frazier; (b) WWE somehow monitored Frazier's health and wellness by a non-interactive webpage; and (c) unspecified continuing research into concussions somehow established an ongoing duty to Frazier.  Perhaps most bizarrely, Plaintiff asserts that WWE's "payment of royalties for the footage of the severe head trauma he suffered while performing for WWE" establishes an ongoing fiduciary relationship with Frazier.  *Id.* at 18-19.  In reality, WWE pays royalties once a quarter for the exploitation of WWE's copyrighted works in which

8

he performed — the content of his performances is irrelevant — in accordance with post-termination obligations of Frazier's booking contracts. Such an obligation to pay royalties is not a fiduciary one. *See Coffman v. Breeze Corp.*, 323 U.S. 316, 323 (1945) ("The obligation to pay royalties, as we have said, appears to be no more than a debt. There is no contention that it is a fiduciary obligation . . . ."); *Estate of Joe Brown v. ARC Music Corp.*, 523 Fed. Appx. 407, 410 (7th Cir. 2013) (rejecting contention that contractual obligation to pay royalties creates a fiduciary duty). Indeed, an arms-length contractual relationship, as once existed between Frazier and WWE, is not a fiduciary or special relationship under Connecticut law. *See Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 38-39 (2000); *Miller v. Imaging On Call, LLC*, No. 3:13-cv-00679, 2015 WL 150287, at *6 (D. Conn. Jan. 12, 2015) ("The parties had an independent contractor relationship; there was no fiduciary or employment relationship."). Even if WWE could be construed as a fiduciary to Frazier with respect to the payment of residual royalties, it certainly would not make WWE a fiduciary with respect to providing medical care as well. If so, then every attorney, accountant or stock broker would be equally liable for their clients' medical care — an absurd proposition.

B.    **§ 52-555 Is the Exclusive Remedy for Alleged Injuries Resulting in Death**

Plaintiff does not dispute that § 52-555 is the exclusive remedy for alleged injuries resulting in death. Under the authorities cited above, that argument is conceded. While not addressing that law, Plaintiff asserts that § 52-555 supposedly "does not provide complete redress for her injuries and those of Mr. Frazier" and that Plaintiff's relief supposedly is not limited "solely to the wrongful death statute." Opposition at 27. In support of that assertion, Plaintiff cites three

9

Connecticut cases, none of which contradict the Connecticut Supreme Court precedents cited by WWE or even discuss § 52-555.[6] Moreover, the proposition for which Plaintiff cites these cases — that the legislature may eliminate a common law right only if the intent to do so is clear — reflects complete ignorance of the law. Simply put, "no action for wrongful death existed at common law." *Ecker v. West Hartford*, 205 Conn. 219, 231 (1987).[7]

C.   Plaintiff Has Not Pled Fraud

In response to WWE's arguments for the dismissal of Plaintiff's fraud claims, Plaintiff and her counsel cut and paste nearly verbatim those sections from the *McCullough* Opposition. Once again, Second Circuit law is ignored and this Court is told that "a less stringent standard has been applied to 'fraud by omission' claims," followed by citations to Minnesota trial court decisions, including the NHL case, and a single California trial court decision. Opposition at 34-35. As explained in WWE's *McCullough* Reply, this Court has held a plaintiff charging fraud by omission must plead: "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions

---

[6] Plaintiff cites another case for the proposition that "Connecticut has recognized that '[t]he absurdity and injustice [of wrongful death recovery limitations] have become increasingly apparent.'" Opposition at 28. That case, however, is a New York court applying Massachusetts law and says nothing about Connecticut law.

[7] Plaintiff seeks to hold WWE vicariously liable for punitive damages for the actions of its employees and agents. *See* Opposition at 27-28. This is not legally tenable. In a case cited by Plaintiff, the Connecticut Supreme Court held "at common law, there is no vicarious liability for punitive damages." *Matthiessen v. Vanech*, 266 Conn. 822, 837 (2003). Further, fraud is the only asserted claim on which punitive damages could be recovered. *Wagner v. Our Lady of Mount Caritas, O.S.B., Inc.*, 157 Conn. App. 788, 802 n. 10 (2015) ("Negligent conduct cannot provide a basis for [punitive damages]."). But Plaintiff's fraud claims are subject to dismissal for the reasons described in WWE's Opening Brief.

and the manner in which they misled the plaintiff[;] and (4) what defendant obtained through the fraud." *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 192 (D. Conn. 2007).

Additionally, despite pointing out in three prior motions to dismiss that "knew or should have known" allegations are insufficient for fraud under Connecticut law, *see, e.g.,* Dkt. 43-1 at 20, Plaintiff's counsel argues that "Plaintiff alleges sufficient facts to show that WWE knew or should have known of the risks of repeated head trauma." Opposition at 36. Such deficient allegations mandate the dismissal of Plaintiff's fraud claims.

D.   <u>Plaintiff Admittedly Failed to Comply with the Requirements of § 52-190a</u>

As noted at the outset, Plaintiff's counsel does not dispute, or indeed address at all, WWE's argument that Plaintiff failed to comply with the requirements of § 52-190a. Consequently, that argument is conceded and is an independent basis for dismissal.

E.   <u>The *Jaworski* Rule Applies to Bar Plaintiff's Claims</u>

Plaintiff asserts that the *Jaworski* Rule does not apply here because Plaintiff's claims are against Frazier's employer and organizer of the events at issue and not against another competitor in those events. However, the Connecticut Appellate Court and this Court have specifically applied the *Jaworski* Rule to claims against non-participants, namely, organizers and supervisors of sporting events. *See Vaillancourt v. Latifi*, 81 Conn. App. 541, 548-50 (2004) (applying *Jaworski* to claims against organizer of a recreational softball league); *Mercier v. Greenwich Acad., Inc.*, No. 3:13-CV-4 (JCH), 2013 WL 3874511, at *5 (D. Conn. July 25, 2013) (applying *Jaworski* to concussion claims against coach and

11

the organizing schools); *Trujillo v. Yeager*, 642 F. Supp. 2d 86, 91 (D. Conn. 2009) (applying *Jaworski* to claims against coach and organizing school).[8]

### F. Plaintiff's Allegations Regarding Other Dead Wrestlers Should Be Stricken

Seeking to defend scurrilous allegations about other former performers who passed away, Plaintiff asserts that these allegations "methodically outline[d] the clear evidence WWE had of dozens of its former wrestlers suffering and dying from severe neurological injuries." Opposition at 37. A sentence later it is asserted that "each . . . died as a result of the long-term injuries sustained while employed for WWE." *Id.* These assertions are self-evidently pretext, as demonstrated by the FAC itself. Of the 40 deaths over a 20 year period alleged in the FAC, Owen Hart died while performing a stunt during a WWE event, 20 people died from a heart attack or heart condition, 12 died from a drug overdose, 6 died by suicide, and one died from "wrestling-related injuries." None of these wrestlers died from "severe neurological injuries" or "long-term injuries," and neither did Frazier.

### III.   CONCLUSION

For all of the foregoing reasons, the FAC should be dismissed in its entirety with prejudice and Paragraphs 65 through 109 of the FAC should be stricken pursuant to Rule 12(f).

---

[8] Equally unavailing is Plaintiff's attempt to distinguish *Jaworski* by asserting that WWE is a "controlled, scripted and choreographed performance" and not a competitive sport. Contrary to Plaintiff's newly-minted argument, the FAC alleges Frazier was injured "in a completely unregulated contact sport controlled and conduct [*sic*] by WWE." FAC at ¶ 17. Regardless, as WWE explained in its *McCullough* Reply, the distinction Plaintiff attempts to draw makes the assumption of inherent risk by WWE performers more, not less, manifest relative to competitive sports. *See* Dkt. 102 at 10; *Kent v. Pan Am. Ballroom*, No. F038650, 2002 WL 31776394, at *3 (Cal. App. Dec. 10, 2002).

12

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.**


By:   **/s/ Jerry S. McDevitt**
**Jerry S. McDevitt (pro hac vice)**
**Terry Budd (pro hac vice)**
**Curtis B. Krasik (pro hac vice)**
**K&L GATES LLP**
**K&L Gates Center**
**210 Sixth Avenue**
**Pittsburgh, PA 15222**
**Phone: (412) 355-6500**
**Fax: (412) 355-6501**
**Email: jerry.mcdevitt@klgates.com**
**Email: terry.budd@klgates.com**
**Email: curtis.krasik@klgates.com**

**Thomas D. Goldberg (ct04386)**
**Jonathan B. Tropp (ct11295)**
**Jeffrey P. Mueller (ct27870)**
**DAY PITNEY LLP**
**242 Trumbull Street**
**Hartford, CT 06103**
**Phone: (860) 275-0100**
**Fax: (860) 275-0343**
**Email: tgoldberg@daypitney.com**
**Email: jbtropp@daypitney.com**
**Email: jmueller@daypitney.com**

**Its Attorneys.**

## **CERTIFICATION**

I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                */s/ Jeffrey P. Mueller*