# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RUSS McCULLOUGH,** *et al.,* | : | **No. 3:15-cv-01074 (VLB)** |
| | : | **Lead Case** |
| **Plaintiffs,** | : | |
| | : | |
| *vs.* | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

| | | |
|---|---|---|
| **EVAN SINGLETON and VITO** | : | **No. 3:15-cv-00425 (VLB)** |
| **LOGRASSO,** | : | **Consolidated Case** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| *vs.* | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

### CORRECTED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF MARCH 21, 2016, ORDER WITH RESPECT TO *SINGLETON and LOGRASSO v. WORLD WRESTLING ENTERTAINMENT, INC.*[*]

---

[*]    **Defendant World Wrestling Entertainment, Inc. files this Corrected Memorandum of Law to correct a typographical error in footnote 6.**

PI-3898237 v2

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ...........................................................................................1

II.  BACKGROUND ...........................................................................................3

III. LEGAL STANDARD ....................................................................................5

IV.  ARGUMENT ................................................................................................6

A.   The Court Should Reconsider Its Determination that Singleton and LoGrasso Have Plausibly Alleged Facts that, If True, State A Claim for Fraud By Omission Under Connecticut Law ..................6

1.   Because Singleton Could Not Plausibly Have Been Harmed By WWE's Alleged Fraud By Omission, The Court Erred in Denying WWE's Motion to Dismiss Singleton's Fraud By Omission Claim .....................................6

2.   Plaintiffs' Fraud By Omission Claims Should Also Be Dismissed for the Same Reasons The Court Dismissed Plaintiffs' Affirmative Fraud Claims ..........................................8

3.   The Court Overlooked the Complete Absence of any Allegation Giving Rise to Strong Inference of Fraudulent Intent ................................................................................13

B.   The Court Should Reconsider Its Determination that LoGrasso Has Plausibly Alleged Facts that, If True, Would Support Application of An Exception to the Connecticut Statute of Repose .............................................................................................16

1.   The Second Amended Complaint Does Not Include Allegations that Plausibly Invoke the Continuing Course of Conduct Tolling Exception to the Statute of Repose ........16

2.   The SAC Does Not Include Factual Allegations that Plausibly Invoke the Fraudulent-Concealment Tolling Exception to the Statute of Repose.......................................19

V.   CONCLUSION ...........................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Citino v. Redevelopment Agency,* 51 Conn. App. 262, 721 A.2d 1197 (Conn. App. 1998)........................................................................................13

*Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP,* 281 Conn. 84, 912 A.2d 1019 (Conn. 2007)...........................................................19, 21

*Hernandez v. Cirmo*, 67 Conn. App. 565, 787 A.2d 657 (Conn. App. 2002) ..........19

*Martinelli v. Bridgeport Roman Catholic Dioceses*, 196 F.3d 409 (2d Cir. 1999) ..................................................................................21

*Neuhaus v. DeCholnoky*, 280 Conn. 190, 905 A.2d 1135 (Conn. 2006)...........16, 17

*Parola v. Citibank (S. Dakota) N.A.,* 894 F. Supp. 2d 188 (D. Conn. 2012) (VLB))......................................................................................8

*Reville v. Reville,* 312 Conn. 428, 93 A.3d 1076 (Conn. 2014)...................................9

*Shrader v. CSX Transp., Inc.,* 70 F.3d 255 (2d Cir. 1995) .........................................5

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ........5

*Witt v. St. Vincent's Medical Center*, 252 Conn. 363, 746 A.2d 753 (Conn. 2000) ......................................................................................16

### Statutes

C.G.S. § 52-577 .........................................................................................2, 16

C.G.S. § 52-595 .....................................................................................2, 19, 20

### Rules

D. Conn. L. Civ. R. 7(c)(1) .........................................................................................5

Fed. R. Civ. P. 9(b).......................................................................................... passim

## I.   __INTRODUCTION__

In its March 21, 2016, memorandum of opinion and accompanying order (Dkt. 116, the "Opinion"), the Court thoroughly addressed and resolved a host of claims based on particularly prolix and often-contradictory complaints in three consolidated lawsuits.  In the final analysis, the Court dismissed all but one claim in one complaint: the claim for fraud by omission by the two plaintiffs in *Singleton and LoGrasso v. World Wrestling Entertainment, Inc.,* No. 3:15-cv-00425 (VLB).  WWE respectfully submits that there are two distinct determinations the Court should reconsider. The effect of such reconsideration, if granted, would be the dismissal of the remaining two claims in the *Singleton/LoGrasso* second amended complaint (the "SAC").

The first issue is the Court's determination that Singleton and LoGrasso have plausibly alleged facts that, if true, state a claim for fraud by omission under Connecticut law.  WWE respectfully submits this determination was in error for three reasons.  First, the Court sustained that claim on the theory that information about a link between repeated head trauma and "permanent degenerative conditions could plausibly have informed plaintiffs' own choices about whether and when to re-enter the ring after sustaining a head injury and could plausibly have prevented permanent brain damage."  Opinion at 68.  But, as the Court correctly noted earlier in the Opinion, Singleton only alleges that he suffered a single head injury—on September 27, 2012—and he does not allege that WWE or its medical staff ever allowed him to re-enter the ring after sustaining that single head injury.  *Id.* at 13, 68.  Second, Singleton's and LoGrasso's fraud by omission claims are not plausible for the same reasons the

Court relied upon in dismissing their fraudulent deceit claims.  Specifically, each of the three alleged facts which the Court found satisfied the particularity requirement of Rule 9(b) cannot support a fraud by omission claim based on the same legal principles that the Court itself relied upon in dismissing Plaintiffs' fraudulent deceit claim.[1]  Third, there is a complete absence of allegations, let alone plausible ones, sufficiently demonstrating a strong inference of fraudulent intent on the part of WWE generally and specifically in regard to the three cited omissions.  The Court noted that such a strong inference was required to be raised by the pleadings but overlooked the absence of intent in its analysis.

The second issue is the application of the Connecticut statute of repose to LoGrasso's claim.  As the Court recognized, LoGrasso brought his claims long after the period of repose set forth in C.G.S. § 52-577, and he does not claim otherwise.  Instead, he argues that he sufficiently pled two tolling exceptions to repose — continuing course of conduct tolling and/or fraudulent concealment tolling.  *See* C.G.S. § 52-595.  In the Opinion, the Court held that the

---

[1]     Plaintiffs' fraud by omission claims turn on the allegation that "WWE was aware 'in 2005 and beyond' that wrestling for the WWE and suffering head trauma 'would result in long-term injuries."  *Id.* at 9.  The Court noted that this allegation "cites a link to an internet article on the website of the Mayo Clinic regarding the causes of concussions that is no longer available."  *Id.*  Using the "Wayback Machine" website, WWE was able to access the 2005 internet article posted on the Mayo Clinic website, which is integral to the SAC and attached as Exhibit 1.  Mayo Clinic: Concussion Overview, https://web.archive.org/web/20051231132226/http://www.mayoclinic.com/health/concussion/DS00320/DSECTION=1 (archived on December 31, 2005).  In reality, that article says nothing about a link between brain injury and long-term degenerative disease like CTE, either in general or in connection with professional wrestling.  Thus, the allegation that WWE knew about such a link as a result of that 2005 Mayo Clinic publication is not merely implausible but impossible.

allegations of the SAC plead sufficient facts to invoke those exceptions.[2]  With

respect, WWE believes that those conclusions are in error based on other

portions of the Court's correct analysis of the SAC.

## II.  BACKGROUND

This background discussion solely focuses on the allegations pertinent to

the sole surviving claim of fraudulent omission of Plaintiffs Singleton and

LoGrasso.

Singleton specifically alleges that he was injured on September 27, 2012,

when an opponent performing a "choke slam" threw him to the wrestling mat

and he was knocked unconscious.  *Id.* at 13.  Singleton alleges that, immediately

after that incident, a WWE trainer instructed him to rest over the weekend and

have his father and roommate monitor his condition.  *Id.*  Singleton alleges that

he was later seen by a WWE-affiliated physician who prescribed more rest and

then by a WWE-affiliated neurologist who ordered various tests.  *Id.* at 13-14.[3]

Despite an independent neurologist clearing him, it is admitted that WWE's

---

[2]    As the Court aptly noted, the *Singleton/LoGrasso* SAC is a 281-paragraph
"kitchen-sink" pleading that presents often-contradictory allegations. *See*
Opinion at 67. The SAC, like all of the complaints in these consolidated cases, is
not only self-contradictory but vague and often confusing. Such haphazard
pleading has no doubt made the Court's task more difficult.

[3]    Singleton also alleges that he was diagnosed with a "possible intracranial
hemorrhage," which the Court noted in its recitation of his claim.  Opinion at 14
(citing SAC ¶ 113).  This allegation is false, and has been known to be false by
Plaintiffs for months.  Indeed, WWE's counsel specifically advised the Court of
the falsity of this allegation at the June 8, 2015 status conference.  *See*
*Singleton* Dkt. 73 at 19-20.  Inexplicably, plaintiffs' counsel have continued to
advance that knowingly false allegation in the SAC and to this Court despite
being in possession of the records which demonstrate that Singleton did not
have an intracranial hemorrhage.

medical staff never cleared him to perform again.  There is no allegation that Mr. Singleton ever returned to the WWE wrestling ring after a single concussion.[4]

LoGrasso claims to have wrestled for WWE (and its predecessors) at various times in the 1990s and from 2005-2007.  *Id.* at 11.  While LoGrasso claims he suffered various injuries during his wrestling career, most of which in reality was for other promotions, he "does not allege that he ever approached any WWE employee to report concussion-like symptoms or that any specific WWE employee had knowledge of his condition."  *Id.* at 12.  LoGrasso claims that he did not begin to suffer "symptoms of neurological injury" until 2008, which is after he was gone from WWE.  *Id.*  While LoGrasso claims he suffered "numerous neurological injuries," the only diagnoses he specifies in the pleadings are TMJ and hearing loss.  *Id.*  As the Court explained in the Opinion, "LoGrasso never alleges that he was diagnosed with a concussion during his entire tenure with WWE."  *Id.* at 8.  Similarly, the Court made the following observation:

> Finally, plaintiffs allege that the WWE did not "properly assess, diagnose, and treat their wrestlers," although, as described below, none of the five named plaintiffs brings any allegation that on any specific date they complained to a specific WWE employee about concussion-like symptoms and were wrongfully diagnosed as having not suffered a concussion or medically cleared to wrestle without adequate rest.

---

[4]   The assertion that WWE fraudulently omitted to advise Singleton of the risks of returning to the ring before a concussion fully healed is not only belied by the fact that WWE's medical staff never cleared him to return, but also by the fact that Dr. Maroon made a presentation to all talent training and performing in Florida, where Singleton was at the time, on the importance of telling medical staff if talent suspected a concussion and about the risk of returning to the ring before fully healed.  This presentation was made on August 9, 2012.  Plaintiffs' counsel has been put on notice of these facts and has not withdrawn the claim.

*Id.* at 11.

The Opinion further found that, while LoGrasso's claims are barred on their face by the statute of repose, the SAC plausibly alleges continuing course of conduct and/or fraudulent concealment tolling.

### III.   <u>LEGAL STANDARD</u>

A motion for reconsideration shall set forth "concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order."  D. Conn. L. Civ. R. 7(c)(1).  Motions for reconsideration should be granted if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Motions for reconsideration also present the Court with the opportunity "to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citations omitted).[5]

---

[5]    *Virgin Atl. Airways, Ltd.* refers to a clear error that must be corrected to prevent manifest injustice. In this case, the only remaining claim is the fraudulent omission claim.  If the Court erred, as WWE respectfully asserts in the following sections, a refusal to reconsider would subject WWE to costly and invasive asymmetrical discovery demands that would not otherwise occur.

IV.   <u>ARGUMENT</u>

A.   **The Court Should Reconsider Its Determination that Singleton and LoGrasso Have Plausibly Alleged Facts that, If True, State A Claim for <u>Fraud By Omission Under Connecticut Law</u>**

1.   **Because Singleton Could Not Plausibly Have Been Harmed By WWE's Alleged Fraud By Omission, The Court Erred in Denying <u>WWE's Motion to Dismiss Singleton's Fraud By Omission Claim</u>**

The Court denied WWE's motion to dismiss the fraud by omission claim

with respect to Singleton and LoGrasso on the basis that

> Read liberally . . . the complaints allege that increasing public and scientific awareness of the risks related to head trauma ultimately resulted in recent discoveries regarding a link between repeated head trauma and permanent degenerative neurological conditions. In particular, the WWE is alleged in the various complaints to have had knowledge of such a link as early as 2005.  For wrestlers active during and after 2005, *information about a link to permanent degenerative conditions could plausibly have informed plaintiffs' own choices about whether and when to re-enter the ring after sustaining a head injury* and could plausibly have prevented permanent brain damage.

Opinion at 67-68 (emphasis added).  Under the Court's reasoning, plaintiffs were

harmed by the omission of information that "could plausibly have informed

plaintiffs' own choices about whether and when to re-enter the ring after

sustaining a head injury."  *Id.*  By definition then, if a plaintiff never "re-enter[ed]

the ring after sustaining a head injury" he could not have been harmed by

WWE's alleged fraud by omission.

With regard to Singleton, the Court correctly found in the Opinion that

after the head injury he allegedly sustained on September 27, 2012, "Singleton

does not allege that the WWE ever cleared him to wrestle again, or <u>otherwise</u>

<u>failed to prevent additional injury or treatment.</u>"  *Id.* at 14 (emphasis added).  On

the contrary, Singleton admits in the SAC that "[h]e was not medically cleared to

6

wrestle" by WWE after his alleged injury.  *Id.*; SAC ¶ 107.  Plaintiffs' Opposition conceded that Singleton "never performed again" after his match on September 27, 2012.  Dkt. 59 at 3 (citing Dkt. 53 at 28 n.8 (conceding Singleton "suffer[ed] his career-ending injury at the hands of Mr. Rowan")).  Singleton's counsel further conceded at the June 8, 2015 status conference that "Singleton does present unique facts in the nature of how his injury occurred and I do believe that you're right Your Honor, that Singleton's case . . . is distinct because the injury alleged is — is more in line with a single incident, single event."  Dkt. 59 at 3 n.4 (quoting *Singleton* Dkt. 73 at 57).

Because Singleton admittedly was not permitted to "re-enter" the ring by WWE medical staff after allegedly sustaining the head injury on September 27, 2012, he could not have been harmed by WWE's alleged fraudulent omission of any facts which, if known, would have prevented him from re-entering the ring.[6] Singleton never made any choice — informed or not — about whether and when to re-enter the ring after sustaining a head injury.  In the absence of even a plausible injury resulting from WWE's alleged fraud by omission, the Court erred by denying WWE's motion to dismiss Singleton's fraud by omission claim (the Third Cause of Action of the SAC).

---

[6] At this juncture, WWE is constrained by the operative standards and must accept as true the assertion that Singleton was unaware of the risks of re-entering the ring before fully healed after a concussion.  WWE wishes to note, however, its position that such an allegation is false and that there is concrete and indisputable evidence that WWE's medical staff specifically held an all-talent meeting in Florida on August 9, 2012, where Singleton was located, advising talent to report head trauma to medical staff promptly so that any such risks can be eliminated.

**2.    Plaintiffs' Fraud By Omission Claims Should Also Be Dismissed for the Same Reasons The Court Dismissed Plaintiffs' Affirmative Fraud Claims**

In dismissing Plaintiffs' fraud (fraudulent deceit) and negligent misrepresentation claims, the Court repeatedly found, three different times, that the complaints "utterly fail" to satisfy the Rule 9(b) particularity requirement. Opinion at 56.  The Court found that "in regard to the fraud claims the length of plaintiffs' complaints is deceiving, as the length belies an utter lack of substance." *Id.*

The Court's discussion of plaintiffs' fraud claims correctly cited and analyzed the pertinent legal principles under governing law.  *See id.* at 55-56.  In particular relevance to this motion, the Court held that "a plaintiff must 'allege facts that give rise to a strong inference of fraudulent intent.'"  *Id.* at 56 (quoting *Parola v. Citibank (S. Dakota) N.A.,* 894 F. Supp. 2d 188, 200 (D. Conn. 2012) (VLB)).  Significantly, the Court also correctly held that "an expression of an opinion or skepticism as to the truth of a matter asserted by another cannot usually support a fraud claim."  *Id.* at 60-61.  Additionally, the Court correctly held that a fraudulent misrepresentation must be made for the purpose of inducing the other party to act on it and that the party to whom the representation was made had to in fact be induced to act to his injury.  *Id.* at 55. Although the Court appropriately applied these well-settled principles in granting WWE's motion to dismiss plaintiffs' fraudulent deceit and negligent misrepresentation claims, these same principles were overlooked when sustaining the viability of the fraud by omission claims.

8

Echoing the standard the Court applied in dismissing plaintiffs' fraudulent deceit claims that fraud is about past or present facts, not opinions, the Court began its analysis with the proper premise that to make out a claim of fraud by omission "a party must allege: 'the failure to make a full and fair disclosure of *known facts* connected with a matter about which a party has assumed to speak, under circumstances in which there was a duty to speak.'" *Id.* at 61 (quoting *Reville v. Reville*, 93 A.3d 1076, 1087 (Conn. 2014) (emphasis added)). The Court further noted that the alleged non-disclosure of some known fact must be accompanied by an intent or expectation that the other party will make or continue in a mistake to their detriment. *Id.* at 61. The Court then identified three alleged facts as satisfying "both the 'who' — the specific person(s) allegedly responsible for the omissions — and the 'when' — the context of the omissions" necessary to satisfy Rule 9(b). *Id.* at 64. These alleged facts, however, cannot support a fraud by omission claim based on the very legal principles on which the Court relied in dismissing plaintiffs' affirmative misrepresentation claims, and because there are no allegations of fraudulent intent behind the three identified alleged omissions.

*First*, Dr. Maroon's statement to the NFL Network in March 2015 cannot be fraudulent — fraudulent deceit or fraud by omission — because, for the same reason the Court identified in rejecting the statement as a basis for fraudulent deceit, the complaints do not allege any "facts indicating that any plaintiff relied upon the statement — particularly given that the statement was made after the

9

first complaint in this action had already been filed." *Id.* at 58.[7]  Indeed, neither Singleton nor LoGrasso could have reasonably relied on Dr. Maroon's statement made in 2015 on the NFL Network, after they commenced this lawsuit, and years after they last performed for WWE, to have caused them to re-enter the ring for WWE many years prior to the statement.[8]  That is not plausible, but is instead impossible.

*Second*, the joint interview by Vince and Linda McMahon on the 2007 CNN documentary "Death Grip: Inside Pro Wrestling," which Plaintiffs' counsel characterize as an attack on Dr. Omalu's and Dr. Bailes' finding that Chris Benoit had suffered from CTE, cannot be fraud because Mr. McMahon merely expressed his "opinion or skepticism as to the truth" of a specific aspect of Dr. Omalu's and Dr. Bailes' findings and Mrs. McMahon observed that there was still much to be learned about the subject, which is precisely the sort of comments the Court correctly concluded "cannot usually support a fraud claim." *Id.* at 61.[9]  Given that the expression of an opinion or skepticism "as to

---

[7]    The Court also rejected Dr. Maroon's 2015 statement to the NFL Network as a basis for fraudulent deceit because (i) Plaintiffs "appear to have abandoned the claim;" and (ii) "the complaints do not allege facts indicating that at the time the statement was uttered, Dr. Maroon knew or should have known that CTE was not 'over-exaggerated.'" *Id.*  Additionally, Dr. Maroon's statement was an expression of opinion and not a misrepresentation of a past or present fact. *Id.*

[8]    WWE wishes to note that there is no allegation, nor could there be, that Dr. Maroon was acting as a representative or spokesman of WWE by appearing on the NFL Network, or that WWE is any way scripted, approved, or even knew of his appearance on the NFL Network.  Dr. Maroon is a noted physician with his own opinions regarding that the current state of the science, and nobody expressing a genuinely held opinion is engaged in fraud.

[9]    Again, Plaintiffs did not attach the transcript of Mr. and Mrs. McMahon's statements in the CNN documentary so the Court did not have the benefit of reviewing what they actually said.  Because the documentary is integral to the SAC and the Court's ruling, WWE respectfully submits that, the Court should

the truth of a matter asserted by another" cannot constitute fraud, it is implausible that omitting that same matter could somehow become a fraud by omission.  In other words, under the Court's reasoning, had WWE actually stated to LoGrasso that it did not believe Dr. Omalu's and Dr. Bailes' findings established a link between head trauma and long-term neurodegenerative disease, which it never said, it could not be fraud.  But if WWE said nothing to LoGrasso because WWE did not believe that a link had been established between head trauma and long-term neurodegenerative disease based on Dr. Omalu's and Dr. Bailes' findings or because it did not know if such findings were correct, it then would become fraud.  There is no logical (or legal)

---

consider the attached transcript of the conversation with Mr. and Mrs. McMahon depicted in the documentary.  *See* Exhibit 2.  As the transcript demonstrates, Mr. McMahon did not address Dr. Omalu's and Dr. Bailes' scientific findings at all, but merely questioned that aspect of their statements that Benoit had the brain of an 85 year old with dementia from the common sense standpoint of a layman who knew and worked with Mr. Benoit.  Thus, Mr. McMahon stated "from a layman's standpoint . . . if you're an 85-year-old and you suffer from dementia, you can't do what Chris Benoit did for a living.  It's impossible.  You can't function as a normal human being in terms of even getting to the airport to come to work."  As to the science, Mrs. McMahon evenhandedly stated "I think it's a very new science, and there is still a lot of investigation to be done."  Significantly, as illustrated in WWE's memorandum of law in support of its motion to dismiss (Dkt. 43), this very same comment was echoed eight years later by the Honorable Anita Brody in approving the settlement of the NFL CTE litigation.  *See* Dkt. 43 at 11-12 ("[The] . . . complex scientific and medical issues [have] not yet [been] comprehensively studied.") & ("[T]he association between repeated concussive trauma and long-term neurocognitive impairment remains unclear.").  Indeed, as recently as March 27, 2016, the *New York Times* published an article, nine years after Mr. McMahon's observation that it was very new science, headlining that CTE science "Remains in its Infancy," and quoted some of the leading researchers and an academy of brain injury specialists saying the same thing.  *See* Exhibit 3.  Such statements are entirely proper and a necessary aspect of free speech on matters of public importance, and not the stuff of fraud claims.

difference between saying something because of an opinion or skepticism and declining to say something because of an opinion or skepticism.

Additionally, as with Dr. Maroon's 2015 statement to the NFL Network, LoGrasso does not and cannot plausibly allege that he relied on any statement or omission made by either Mr. or Ms. McMahon in the 2007 CNN documentary to have caused him to re-enter the ring for WWE because the CNN documentary aired in November 2007, which was nearly six months after LoGrasso was terminated by WWE.  Indeed, there is no claim he even saw it.  Likewise, Singleton does not claim to have seen it in 2007, and cannot and does not claim reliance on it in 2012 as he never re-entered the ring after his injury.

*Third*, the Court found that LoGrasso's allegations that he was told by unnamed WWE employees in unidentified circumstances "that injuries he suffered were part of 'paying his dues', and believed that having 'your bell rung', or receiving 'black and blues' and bloody noses only resulted in the immediate pain and injury with no long-term ramifications or effects" could be a fraudulent omission.  *Id.* at 64.  Such vague and generalized allegations, on their face, do not satisfy the particularity requirement of Rule 9(b) or the related requirement to allege facts "that give rise to a strong inference of fraudulent intent" to withhold some unidentified known facts about links to long-term degenerative disease, a requirement which the Court correctly found to apply to all fraud claims.  While the specific participants or circumstances are not identified, these statements are *not* alleged to have been made with respect to any head injury reported to WWE or its medical staff because the Court correctly observed that "LoGrasso does not allege that he ever approached any WWE

12

employee to report concussion-like symptoms or that any specific WWE employee had knowledge of his condition." *Id.* at 8, 12.[10]  The Court further noted that "none of the five named plaintiffs [including LoGrasso] brings any allegation that on any specific date they complained to a specific WWE employee about concussion-like symptoms." *Id.* at 11.  Since LoGrasso admittedly never reported any concussion-like symptom to WWE, these allegations do not cross the plausibility line that such unsubstantiated allegations could be the predicate for fraud under the stringent Rule 9(b) pleading standards.  Because none of the three alleged facts relied on by the Court for pleading the "who" and "when" required by Rule 9(b) plausibly could be fraudulent under the governing legal principles relied on by the Court in dismissing plaintiffs' fraudulent deceit claims, the Court erred in not likewise dismissing Singleton's and LoGrasso's fraud by omission claims.

      **3.**      **The Court Overlooked the Complete Absence of any Allegation Giving Rise to Strong Inference of Fraudulent Intent**

It is respectfully submitted that the Court completely overlooked the complete absence of any allegation demonstrating that any omissions, or the three noted by the Court, were made with the intent to defraud either LoGrasso or Singleton.  As noted by the Court, the pleading rules require allegations giving rise to a *strong* inference of such bad intent.  As the Court correctly noted, "'the absence of any one' element [of fraud] 'is fatal to a recovery.'"  *Id.* at 61 (quoting *Citino v. Redevelopment Agency*, 721 A.2d 1197 (Conn. App. 1998)).

---

[10]      This absence of allegations has now been confirmed in LoGrasso's responses to WWE's First Set of Interrogatories in which he admitted that "he did not seek or receive any treatment" for any head injury he now alleges he supposedly sustained with WWE.

Plaintiffs' claim of omissions due to fraudulent intent is particularly implausible for the same reason expressed by the Court with respect to the "inherent contradiction which underlies plaintiffs' fraud claims." *Id.* at 32.  As the Court appropriately recognized, "Plaintiffs simultaneously argue on the one hand that studies and data linking [head injuries] with permanent degenerative neurological conditions were both widespread and widely-publicized, and on the other hand that plaintiffs had no knowledge of any of this widely-publicized information." *Id.*  Thus, the Court noted that plaintiffs' complaints "certainly seem to present contradictory claims" in that "Plaintiffs allege both that information about concussion risks was both widely known by the public and at the same time fraudulently concealed from Plaintiffs." *Id.* at 67.

In light of the Court's astute observation regarding this "inherent contradiction" underlying plaintiffs' fraud claims, it is respectfully submitted that the Court overlooked the importance of its observation on the plausibility of any assertion of fraudulent intent to omit to tell Plaintiffs such information.  The admitted widespread publicity about the very information supposedly omitted renders any suggestion of fraudulent intent highly implausible.  The more plausible inference is that there is no need to tell people about matters that are constantly in the news, and which could not be concealed even if one wanted to do so.  Thus, the SAC does not plead a single fact, let alone enough facts, to plausibly give rise to a strong inference of intent to defraud plaintiffs regarding an alleged link between head injuries and long-term neurodegenerative disease.  As a practical matter, it would have been the worst fraud scheme in history for WWE to have attempted to defraud plaintiffs by not telling them what was, and

14

has been, the subject of ubiquitous media attention for many years — a fact plaintiffs alleged and the Court noted.

The absence of fraudulent intent allegations becomes more manifest when examined with respect to the three things found by the Court to possibly have been omissions.  There are simply no facts connecting the three alleged omissions or the actus rea with the requisite mens rea of fraudulent intent. There are no allegations that WWE management told Dr. Maroon to make statements on the NFL Network in 2015 to influence LoGrasso or Singleton in any way, or even wrestlers in any way.

As to the 2007 CNN interview, the McMahons were not addressing LoGrasso at all and would not even have known Singleton at that time.  Neither made any statement about when it was safe to return to the ring after a concussion, nor did they suggest or state that it was safe to do so before fully healed.  Finally, the third statement about paying dues, made only by LoGrasso and not Singleton, is so bereft of context and content one cannot conclude it satisfied the requirement of creating a strong inference of fraudulent intent on behalf of the otherwise unidentified speaker.

**B.    The Court Should Reconsider Its Determination that LoGrasso Has Plausibly Alleged Facts that, If True, Would Support Application of An Exception to the Connecticut Statute of Repose**

        **1.    The Second Amended Complaint Does Not Include Allegations that Plausibly Invoke the Continuing Course of Conduct Tolling Exception to the Statute of Repose**

As the Court correctly held, § 52-577 provides a three-year statute of repose for tort claims of fraud and deceit. The Court also noted that LoGrasso does not contest that the wrongful acts or omissions that form the basis for his fraud-by-omission claim allegedly occurred no later than the end of 2007. Opinion at 35 n.7.  Thus, unless some exception to the statute of repose applies, LoGrasso's sole remaining claim of fraud by omission is barred.

LoGrasso relied on the continuing course of conduct tolling doctrine. That doctrine requires a plaintiff to show that (1) the defendant committed an initial wrong upon the plaintiff; (2) the defendant owed a continuing duty to the plaintiff that was related to the original wrong; and (3) the defendant continually breached that duty. *See Witt v. St. Vincent's Medical Center,* 746 A.2d 753, 757 (Conn. 2000).  In the Opinion, the Court agreed with WWE that *Witt*, as clarified by the Connecticut Supreme Court's subsequent decision in *Neuhaus v. DeCholnoky,* 905 A.2d 1135, 1146 (Conn. 2006), "stands for the proposition that a continuing duty arises when the medical care provider has reason to suspect that further treatment is needed <u>at the time of treatment</u>; and not for the proposition that once treatment is provided a medical care provider has a duty to advise a patient in perpetuity about medical discoveries, risks and treatment for any possible condition that a patient might reasonably develop."  Opinion at 38.  (Emphasis added).  The Court also correctly characterized *Neuhaus* as

16

holding that "because there was no evidence that the doctor was ever
confronted with actual knowledge that the child's treatment at the hospital 'had
been mishandled' or became 'aware that his original assessment . . . may have
been incorrect,' the hospital did not have a continuing duty to warn." *Id.* at 37.
Thus, the Connecticut Supreme Court emphasized that a continuing duty must
rest "on the factual bedrock of *actual* knowledge." *Neuhaus*, 905 A.2d at 1144
(emphasis added). To conclude otherwise, according to the court, would
impose a continuing duty to warn of the "universe of potential risks" and would
invite every plaintiff to use failure to warn theories to effectively nullify the
statute of repose contrary to legislative intent. *Id.* at 1146.

Under this governing legal standard, as recognized by the Court, the
allegations—or, more particularly, absence of allegations—in the SAC cannot
plausibly establish the actual knowledge necessary to impose a continuing duty
on WWE regarding LoGrasso. In short, there is no allegation that WWE ever
rendered treatment to LoGrasso for any alleged head injury for the simplest of
reasons — he never reported a head injury or sought any such treatment. On the
contrary, the Court correctly found that LoGrasso "never alleges that he was
diagnosed with a concussion during his entire tenure with WWE" and "none of
the five named plaintiffs [including LoGrasso] brings any allegation that on any
specific date they complained to a specific WWE employee about concussion-
like symptoms and were wrongfully diagnosed as having not suffered a
concussion or medically cleared to wrestle without adequate rest." Opinion at
8, 11. The Court also noted that "LoGrasso does not allege that he ever
approached any WWE employee to report concussion-like symptoms or that any

17

specific WWE employee had knowledge of his condition," *id.* at 12 — a fact that has now been confirmed by LoGrasso's interrogatory responses.  The absence of such allegations negates any potential application of continuing course of conduct tolling in LoGrasso's case.  Since there was no treatment, there could not have been an initial suspicion "at the time of treatment" that LoGrasso had sustained head injuries which warranted further treatment in the future.

In the Court's Opinion, the Court did not apply these findings about lack of treatment specifically to LoGrasso but instead spoke of "long-term health of its wrestlers" generically:

> WWE may have had both the requisite initial and continuing concern about the long-term health of its wrestlers such that it owed a continuing duty to warn those wrestlers about the long-term risks of head trauma sustained in the ring even after they had retired. As to an initial concern, it is at least plausibly alleged that WWE knew as early as 2005 about research linking repeated brain trauma with permanent degenerative disorders and that such brain trauma and such permanent conditions could result from wrestling.

*Id.* at 38-39.[11]  In doing so, the Court appears to have substituted an alleged initial concern about wrestlers generally for actual knowledge about, and treatment of, LoGrasso specifically.  The Connecticut courts, however, have clearly ruled that continuing course of conduct tolling cannot apply to a defendant's generalized knowledge but must focus on whether a defendant had

---

[11]     In making the finding that "it is at least plausibly alleged that WWE knew as early as 2005 about research linking repeated brain trauma with permanent degenerative disorders and that such brain trauma and such permanent conditions could result from wrestling," the Court was required to accept as true Plaintiffs' citation to the Mayo Clinic webpage which the Court was unable to access.  In fact, that allegation is not plausible in light of the actual content of that webpage (attached as Ex. 1), which does not actually say anything about long-term neurodegenerative diseases like CTE and most certainly does not say anything about such conditions resulting from wrestling.

a concern based on actual knowledge specific to the plaintiff. *See, e.g.,*
*Hernandez v. Cirmo,* 787 A.2d 657, 662-63 (Conn. App. 2002).

The Court's rationale for concluding that the SAC plausibly invoked
continuing course of conduct tolling would, in LoGrasso's case, impose an even
broader duty than the Connecticut Supreme Court has already rejected: a
defendant with no actual knowledge of a plaintiff's condition and no actual
concern about it would be held to have a continuing duty to inform the plaintiff
of a generalized risk without any reason to believe it specifically affected the
plaintiff.

> 2. **The SAC Does Not Include Factual Allegations that Plausibly Invoke
> the Fraudulent-Concealment Tolling Exception to the Statute of
> Repose**

The fraudulent concealment doctrine provides tolling where "any person,
liable to an action by another, fraudulently conceals from him the existence of
the cause of such action . . . ." C.G.S. § 52-595.  The Connecticut Supreme
Court has held that, to invoke fraudulent concealment tolling, a plaintiff must
prove by clear and convincing evidence that the defendant (1) had actual
awareness, rather than imputed knowledge, of the facts necessary to establish
the plaintiff's cause of action; (2) intentionally concealed these facts from the
plaintiff; and (3) intentionally concealed the facts for the purpose of obtaining
delay on the plaintiff's part in filing a complaint on his cause of action. *See Falls
Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP,* 912 A.2d 1019, 1032-33 (Conn.
2007).

The important findings made by the Court, but overlooked when applying
these legal standards, were that "[t]he Complaints are replete with theoretical

allegations of conditions from which a hypothetical person could suffer without alleging that any particular plaintiff actually suffers from such a condition which has been causally connected by an expert to such plaintiff's performance at WWE events," that "LoGrasso never alleges that he was diagnosed with a concussion during his entire tenure with WWE," that none of the plaintiffs make any allegation "that on any specific date they complained to a specific WWE employee about concussion-like symptoms and were wrongfully diagnosed as having not suffered a concussion or medically cleared to wrestle without adequate rest" and, most importantly, that "LoGrasso does not allege that he ever approached any WWE employee to report concussion-like symptoms or *that any specific WWE employee had knowledge of his condition."* Opinion at 7, 8, 11 and 12 (emphasis added).

The Court clearly reviewed the SAC carefully and concluded, correctly, that LoGrasso never alleged that WWE had actual knowledge that he had the condition he now alleges he has. Indeed, the SAC alleges the symptoms did not begin until 2008, the year <u>after</u> the last performed for WWE. Section 52-595 requires that a plaintiff prove that the defendant knew that the plaintiff had a cause of action. The Court's analysis demonstrates that LoGrasso has not even pleaded that WWE knew of his alleged condition, much less that WWE knew that LoGrasso might have a cause of action arising from that alleged condition. Section 52-595 cannot apply as a matter of law.

In holding that Section 52-595 could potentially apply to the facts alleged in the SAC, the Court once again focused on the plaintiffs' generalized allegations that WWE "had actual knowledge about research linking repeated

brain trauma with permanent degenerative disorders and that such brain trauma

and such permanent conditions could result from wrestling…[.]"  Opinion at 45.

WWE respectfully submits that the Court erred in relying on those broad factual

allegations to conclude that LoGrasso had plausibly pleaded fraudulent

concealment for purposes of Section 52-595.  The fraudulent concealment

tolling doctrine expressly requires that the defendant know that the plaintiff has

a cause of action, and the knowledge must be actual rather than imputed. *See*

*Falls Church Grp.,* 912 A.2d at 1032-33. An allegation that WWE generally knew

about research into brain trauma and a potential link to wrestling falls far short

of clear and convincing evidence that WWE knew that LoGrasso, specifically,

had a cause of action related to brain trauma and intentionally concealed those

facts from him.

As a separate and independent basis for reconsideration, the Court held

that to establish fraudulent concealment tolling "a plaintiff must show that due

diligence 'did not lead, and could not have led, to discovery' of the cause of

action."  Opinion at 44 (quoting *Martinelli v. Bridgeport Roman Catholic*

*Dioceses*, 196 F.3d 409, 427 (2d Cir. 1999)).  Despite correctly citing this

requirement, the Court did not find that LoGrasso's allegations satisfied this

requirement.  It does not.  The SAC is devoid of allegations showing any due

diligence whatsoever by LoGrasso, much less any allegations as to why he

somehow could not have earlier discovered his cause of action, particularly

given the widespread publicity of these issues admitted in the SAC and

recognized elsewhere by the Court.  The complete absence of any allegations

plausibly establishing LoGrasso's due diligence precludes the application of fraudulent concealment tolling under the Court's holding above.

### V.   <u>CONCLUSION</u>

For all of the foregoing reasons, WWE respectfully requests that the Court reconsider its order of March 21, 2016, with respect to the discrete issues described above.

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.,**

**By:**   <u>/s/ Jerry S. McDevitt</u>
**Jerry S. McDevitt (pro hac vice)**
**Terry Budd (pro hac vice)**
**Curtis B. Krasik (pro hac vice)**
**K&L GATES LLP K&L Gates Center**
**210 Sixth Avenue**
**Pittsburgh, PA 15222**
**Phone: (412) 355-6500**
**Fax: (412) 355-6501**
**Email:** jerry.mcdevitt@klgates.com
**Email:** terry.budd@klgates.com
**Email:** curtis.krasik@klgates.com

**Thomas D. Goldberg (ct04386)**
**Jonathan B. Tropp (ct11295)**
**Jeffrey P. Mueller (ct27870)**
**DAY PITNEY LLP**
**242 Trumbull Street**
**Hartford, CT 06103**
**Phone: (860) 275-0100**
**Fax: (860) 275-0343**
**Email:** tgoldberg@daypitney.com
**Email:** jbtropp@daypitney.com
**Email:** jmueller@daypitney.com

**Its Attorneys**

## CERTIFICATION

I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey P. Mueller*