## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| **RUSS McCULLOUGH, *et al.*,** | : **No. 3:15-CV-01074 (VLB)** |
| | : **LEAD CASE** |
| Plaintiffs, | : |
| | : |
| **VS.** | : |
| | : |
| **WORLD WRESTLING** | : |
| **ENTERTAINMENT, INC.,** | : |
| | : |
| Defendant. | : **APRIL 20, 2016** |

---

| | |
|---|---|
| **EVAN SINGLETON and VITO** | : **NO. 3:15-CV-00425 (VLB)** |
| **LOGRASSO,** | : **CONSOLIDATED CASE** |
| | : |
| Plaintiffs, | : |
| | : |
| **VS.** | : |
| | : |
| **WORLD WRESTLING** | : |
| **ENTERTAINMENT, INC.,** | : |
| | : |
| Defendant. | : **APRIL 20, 2016** |

---

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION DIRECTED TO PLAINTIFFS EVAN SINGLETON AND VITO LOGRASSO

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ............................................................. 1

II.   BACKGROUND ............................................................................ 4

    A.   Procedural History.................................................................. 4

    B.   The Instant Discovery Disputes ............................................ 6

III.  LEGAL STANDARD ..................................................................... 9

IV.   ARGUMENT................................................................................ 10

    A.   Plaintiffs' Interrogatory Responses Are Deficient .............. 10

        1.   LoGrasso Interrogatory 16 and Singleton Interrogatory 17.......... 10

        2.   LoGrasso Interrogatory 11 and Singleton Interrogatory 12.......... 12

        3.   LoGrasso Interrogatory 13 and Singleton Interrogatory 14.......... 15

        4.   LoGrasso Interrogatory 12 and Singleton  Interrogatory 13......... 16

        5.   LoGrasso Interrogatory 14 and Singleton Interrogatory 15.......... 17

        6.   LoGrasso Interrogatory 15 and Singleton Interrogatory 16.......... 18

        7.   LoGrasso Interrogatory 10 and Singleton Interrogatory 11.......... 18

        8.   LoGrasso Interrogatory 8 and Singleton Interrogatory 9.............. 19

        9.   LoGrasso Interrogatory 1 ................................................ 21

        10.  Singleton Interrogatory 8................................................ 22

        11.  LoGrasso Interrogatory 3 ................................................ 23

        12.  LoGrasso Interrogatory 6 ................................................ 24

        13.  Second Set of Interrogatories No. 1................................ 26

    B.   Plaintiffs' Responses to Requests for Production Are Deficient ...... 27

        1.   Singleton Request 81 and LoGrasso Request 86......................... 27

        2.   Singleton Request 83 and LoGrasso Request 89......................... 30

3.      Singleton Request 94 and LoGrasso Request 102 ......................... 30

4.      LoGrasso Request 82 ........................................................................ 31

5.      LoGrasso Requests 96 and 99 ....................................................... 32

6.      LoGrasso Request 87 ....................................................................... 33

7.      LoGrasso Request 92 ....................................................................... 33

8.      Singleton Request 37 and LoGrasso Request 94 ......................... 34

9.      Singleton Request 36 ....................................................................... 35

10.     LoGrasso Request 100 and Singleton Request 92 ....................... 36

C.      Plaintiffs Have Failed to Produce A Privilege Log ............................. 37

V.     CONCLUSION ................................................................................ 38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bass v. Miss Porter's Sch.*,
   No. 3:08cv1807, 2009 U.S. Dist. LEXIS 99916 (D. Conn. Oct. 27,
   2009)............................................................................................................ 29

*Cole v. Towers Perrin Forster & Crosby*,
   256 F.R.D. 79 (D. Conn. 2009)........................................................................ 9

*Fulco v. Norwich Roman Catholic Diocesan Corp.*,
   27 Conn. App. 800 (1992) ............................................................................ 27

*Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*,
   293 F.R.D. 112 (E.D.N.Y. 2013) .................................................................. 29

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*,
   238 F.R.D. 536 (D. Conn. 2006)................................................................... 38

*Klein v. AIG Trading Group, Inc.*,
   228 F.R.D. 418 (D. Conn. 2005).................................................................. 10

*Komondy v. Gioco*,
   No. 3:12-CV-250, 2015 U.S. Dist. LEXIS 25319 (D. Conn. Mar. 3,
   2015)............................................................................................................ 28

*Miesenbock v. Chase Bank USA N.A.*,
   No. 3:06CV1519, 2008 U.S. Dist. LEXIS 92777 (D. Conn. Nov. 14,
   2008)............................................................................................................ 35

*Oppenheimer Fund v. Sanders*,
   437 U.S. 340 (1978).................................................................................... 20

*Pouliot v. Paul Arpin Van Lines, Inc.*,
   No. 3:02-CV-1302, 2004 U.S. Dist. LEXIS 10871 (D. Conn. June 14,
   2004)............................................................................................................ 26

*Reid v. Ingerman Smith LLP*,
   No. 2012-0307, 2012 U.S. Dist. LEXIS 182439 (E.D.N.Y. Dec. 27,
   2012)............................................................................................................ 29

*Ruran v. Beth El Temple of W. Hartford, Inc.*,
   226 F.R.D. 165 (D. Conn. 2005)................................................................... 38

*Session v. Rodriguez,*
 No. 3:03CV0943 (AWT), 2008 U.S. Dist. LEXIS 43761 (D. Conn.
 June 4, 2008) ....................................................................... 38

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.,*
 490 F.3d 130 (2d Cir. 2007) ................................................. 35

**Statutes**

Conn. Gen. Stat. § 31-284(a) ................................................. 27

**Rules**

D. Conn. L. Civ. 37(a) ............................................................. 1

D. Conn. L. Civ. R. 11 ............................................................ 36

D. Conn. L. Civ. R. 26(b)(5) .................................................. 31

D. Conn. L. Civ. R. 26(e) ....................................................... 38

D. Conn. L.Civ. R. 37 ............................................................... 1

Fed. R. Civ. P. 26(b)(5)(A) ..................................................... 37

Fed. R. Civ. P. 33 ..................................................................... 1

Fed. R. Civ. P. 33(c) .............................................................. 26

Fed. R. Civ. P. 33(d) ................................................ 15, 23, 24, 25

Fed. R. Civ. P. 34 ..................................................................... 1

Fed. R. Civ. P. 34(b)(2)(B) ..................................................... 28

Fed. R. Civ. P. 34(b)(E)(i) ...................................................... 37

Fed. R. Civ. P.  37 .............................................................. 1, 39

Fed. R. Civ. P. 37(a)(1) ........................................................... 9

Fed. R. Civ. P. 37(a)(4) ........................................................... 9

Fed. R. Civ. P. 37(a)(5) ......................................................... 10

Pursuant to Federal Rules of Civil Procedure 33, 34, and 37 and Local Rule of Civil Procedure 37, Defendant World Wrestling Entertainment, Inc. ("WWE") hereby submits this memorandum of law in support of its motion to compel responses to certain interrogatories and requests for production directed to Plaintiffs Evan Singleton and Vito LoGrasso ("Plaintiffs").[1]

## I.   PRELIMINARY STATEMENT

Plaintiffs have repeatedly delayed and obstructed the discovery process in this case in an attempt to hide the fact that there is no objectively reasonable basis for their sole remaining claim against WWE.

<u>First</u>, Plaintiffs have provided incomplete and evasive responses to the interrogatories served by WWE.  Plaintiffs have refused to provide basic factual details concerning the alleged omissions that underlie their remaining fraud by omission claim or any explanation as to how any such omissions could have misled them.  Plaintiffs also have failed to provide responsive answers to many other interrogatories seeking to discover the factual bases for the allegations made in support of their claim.  The one meaningful response that Plaintiffs <u>have</u> provided is an admission that LoGrasso <u>never</u> sought  or received medical treatment for <u>any</u> head injury from WWE.  Plaintiffs have attempted to conceal

---

[1] Pursuant to Local Rule 37(a), an affidavit is attached to this motion certifying that counsel for WWE have conferred with counsel for Plaintiffs in a good faith effort to resolve by agreement the issues raised by this motion without the intervention of the Court and have been unable to reach such an agreement. Further, in compliance with this Court's chambers practices, WWE sought and received permission from the Court to file the instant motion.

other fatal deficiencies in their claims by avoiding responsive answers to virtually every other interrogatory.

      <u>Second</u>, Plaintiffs have withheld documents responsive to WWE's requests for production on the basis of frivolous objections.  After originally producing no documents, Plaintiffs then produced only a very small number of documents from or concerning Singleton or LoGrasso.  Plaintiffs have refused to produce <u>any</u> of their relevant social media information knowing that such information would expose their claims as collusive, concocted, and fraudulent.  For example, Singleton's Instagram account includes the following photographs of him preparing for a bodybuilding competition and engaging in intensive weight training in the same time frame that this Court was being told that he was completely disabled as a result of working for WWE.



#npc #ifbb #training #trex #pose #bodybuilding #beastmode #competitor #flex #sidechest #hardwork #gym #gym #gymlife #pushthroughit #proud #workhard #weights #weightlifting

1.50 pm 6/9/2015

#npc #ifbb #training #trex #pose #bodybuilding #beastmode #competitor #flex #hardwork #gym #gym #gymlife #pushthroughit #proud #workhard #weights #weightlifting

1.53 pm 6/9/2015     Juno

(*See* Exhibits A-D.)  Plaintiffs also have withheld medical records and other documents that would demonstrate that many of their alleged injuries were falsified or completely unrelated to their performances for WWE.  For example, Singleton has not produced the objective medical tests establishing that he suffered an intracranial hemorrhage as alleged in every complaint filed to date.  LoGrasso has withheld documents showing that he has suffered from deafness since childhood and not as a result of wrestling for WWE as alleged in the complaint.  Plaintiffs should not be permitted to conceal the falsity of their allegations and the weakness of their claims by refusing to produce such relevant documents.

Third, Plaintiffs have objected to the production of documents on privilege grounds but have failed to provide a privilege log despite numerous requests from WWE.  Plaintiffs' failure to provide a timely privilege log waives any claim of privilege and requires production of all documents responsive to WWE's requests that have been withheld on the basis of a claim of privilege.

This Court should not permit Plaintiffs' default on their discovery obligations any further.  The Court should compel Plaintiffs to provide complete and accurate responses to the discovery requests identified below and order them to pay the fees and costs incurred in connection with this motion.[2]

---

[2] WWE does not address all of the numerous deficiencies in Plaintiffs' written discovery responses in this motion to compel but rather chooses to focus on the deficiencies that are most significant for purposes of preparing for upcoming depositions and presenting a motion for summary judgment at the close of discovery in accordance with the Court's operative order if the Court does not grant WWE's motion for reconsideration.  WWE does not thereby waive its other concerns.

-3-

## II.   BACKGROUND

### A.   Procedural History

On June 15, 2015, Plaintiffs filed a Second Amended Complaint after being admonished about their improper pleadings techniques.  (*Singleton* Doc. No. 72.)

On June 29, 2015, WWE moved to dismiss the Second Amended Complaint in its entirety for failure to state a claim.  (*McCullough* Doc No. 43.)  On October 30, 2015, WWE moved to stay discovery in this case and the other consolidated cases pending the disposition of its motions to dismiss.  (Doc. No. 87.)  On November 10, 2015, the Court granted WWE's motion to stay to discovery in the consolidated cases until January 15, 2016.  (Doc. No. 89.)

On January 15, 2016, the Court entered an order partially lifting the stay of discovery only with respect to the claims of Plaintiffs Singleton and LoGrasso. The Court's order stated in relevant part:

> The parties are ordered to proceed with discovery as to the claims of Singleton and LoGrasso only until further order of the Court.  Discovery is to be bifurcated, with an initial liability phase extending no later than June 1, 2016.  During this initial liability phase, discovery should be limited to facts relevant to the question of (1) whether WWE had or should have had knowledge of and owed a duty to disclose to those plaintiffs the risks of long-term degenerative neurological conditions resulting from concussions or mild traumatic brain injuries to wrestlers who performed for WWE in the year 2005 or later, (2) whether and when WWE may have breached that duty, and (3) whether such a breach, if any, continued after Singleton and LoGrasso ceased performing for WWE.  Dispositive Motions, if any, on the issue of liability are to be filed by August 1, 2016.  A decision on the merits of the pending Motions to Dismiss is in progress, and the parties should expect that the scope of discovery may be adjusted based on the outcome of that decision.

Order Partially Lifting Stay of Discovery (Doc. No. 107) (emphasis added).

On March 21, 2016, the Court issued its ruling on WWE's motions to dismiss three of the consolidated cases.  (Doc. No. 116.)  The Court dismissed two of the cases in full and granted the motion to dismiss all of the claims in this action except for "the fraudulent omission claim brought by Plaintiffs Evan Singleton and Vito LoGrasso to the extent that the claim asserts that in 2005 or later WWE became aware of and failed to disclose to its wrestlers information concerning a link between repeated head trauma and permanent degenerative neurological conditions as well as specialized knowledge concerning the possibility that its wrestlers could be exposed to a greater risk for such conditions."  (*Id.* at 70.)  The Court observed that the sole remaining claim would be difficult for Plaintiffs to prove and expressed skepticism that it ultimately would survive.[3]  (*Id.* at 32, 67-68.)  The Court also noted that further factual development would be required to determine whether LoGrasso's claims were time-barred.  (*Id.* at 31, 33, 41, 43.)  The Court again expressed skepticism that LoGrasso would be able to establish any basis for tolling the statute of repose that would otherwise bar his claim.[4]

---

[3] For example, the Court noted the inherent contradiction between Plaintiffs' allegations that information regarding the link between repeated head trauma and permanent degenerative neurological conditions was publicly available and widely publicized and their allegations that Plaintiffs had no knowledge of such information and that WWE fraudulently concealed such information from them. *See* Memorandum of Decision (Doc. No. 116) at 32, 67-68.

[4] For example, the Court repeatedly noted that Plaintiff LoGrasso never alleged that he complained to any WWE employee of concussion-like symptoms or that any WWE employee had any knowledge of his condition.  Memorandum of Decision (Doc. No. 116) at 11-12, 51-52.  He has since admitted that he never sought or received treatment for any head injury while performing for WWE.  The Court also noted that LoGrasso's allegations suggested that he had discovered

**B.**     **The Instant Discovery Disputes**

On January 27, 2016, WWE served its first set of interrogatories and requests for production on Plaintiffs.  On February 10, 2016, WWE also served a second set of interrogatories on Plaintiffs which posed only one question.

On March 7, 2016, Plaintiffs served their initial objections and responses to WWE's interrogatories and requests for production.  Plaintiffs did not produce a single document responsive to WWE's discovery requests at that time or a privilege log.  Plaintiffs stated that they would not produce any documents until a Protective Order was entered in this case even though the Standing Protective Order had been in effect since the outset of the case.  Plaintiffs' initial objections and responses also failed to comply with the most basic requirements of the Federal Rules.  For example, Plaintiffs objected to the requested form of document production without identifying the form in which they intended to produce documents.  Plaintiffs asserted objections without stating whether any responsive documents were being withheld on the basis of those objections.  Plaintiffs asserted objections without stating with specificity the grounds for those objections.  Plaintiffs also responded to interrogatories by referring to records without producing those records or specifying the records in sufficient detail to enable WWE to locate and identify them.

On March 9, 2016, WWE requested a conference to discuss the numerous deficiencies in Plaintiffs' discovery responses.  WWE repeatedly invited counsel from the six different law firms representing Plaintiffs to attend the conference

---

some form of actionable harm before 2012 such that he would not be able to rely on tolling.  *Id.* at 31 n.5.

and specifically requested that counsel with full authority to discuss and resolve the disputes participate in the conference.  On March 14, 2016, WWE was informed that lead counsel for Plaintiffs would not participate, that Ms. Van Dyck from Cuneo law firm would be the only attorney who would participate for Plaintiffs, and that she would have full decision-making authority for Plaintiffs.

On March 15, 2016, counsel for both parties participated in a telephonic conference to discuss the deficiencies in Plaintiffs' responses to the discovery requests.  Counsel for WWE reviewed the failures of Plaintiffs to comply with the requirements of the Federal Rules and also reviewed the specific deficiencies in Plaintiffs' objections and responses.  Counsel for WWE explained in detail the reasons why Plaintiffs' objections to certain interrogatories and requests for production lacked merit and why their responses to others were inadequate or evasive.  Contrary to prior representations that counsel for Plaintiffs would have full authority to discuss and resolve issues at the conference, Ms. Van Dyck repeatedly stated that she would need to consult further with her co-counsel before addressing many of the arguments raised by WWE.

On March 21, 2016, Plaintiffs produced some documents that they previously had withheld based on the erroneous objection that there was no Protective Order in effect.  However, the limited production consisted only of publicly available articles and studies, none of which contained any confidential information that would have been subject to the Protective Order.  Among other things, news articles about one of the March Madness basketball games were

produced.  Plaintiffs did not produce <u>any</u> documents from or concerning either Singleton or LoGrasso or even a single medical record.[5]

On March 16, 2016, Ms. Van Dyck had represented that Plaintiffs would provide supplemental written responses to address certain deficiencies that had been identified by WWE during the conference by March 22, 2016.  Plaintiffs failed to honor this commitment and did not provide supplemental written responses or produce any additional documents until March 30, 2016.  (*See* Exhibits E-H.)  The supplemental interrogatory responses that were provided were not verified.  The discovery responses also remained substantively deficient for the same reasons identified by WWE during the conference.  For example, Plaintiffs maintained objections that WWE had explained had no merit during the conference, such as their objections to the production of relevant social media information.  Plaintiffs also represented that their responses were "complete" without addressing the inadequacies in those responses discussed during the conference.

On April 2, 2016, WWE advised Plaintiffs that it still had not received a privilege log even though Plaintiffs had asserted that they were withholding documents on the grounds of privilege and had represented that they would produce a privilege log in their supplemental responses.  On April 4, 2016 and April 5, 2016, WWE again advised Plaintiffs of their failure to produce a privilege log as required by the Federal Rules and Local Rules.  On April 5, 2016, Plaintiffs stated that they would provide a privilege log but did not state when it would be provided.  To date, Plaintiffs still have not provided a privilege log to WWE.

---

[5] Due to their failure to produce medical records, WWE has had to serve subpoenas on countless medical providers.

Due to the numerous deficiencies addressed above, WWE made repeated efforts to schedule a discovery conference with the Court.  On April 2, 2016, WWE requested that counsel for Plaintiffs set aside some time to jointly call chambers and request a discovery conference.  On April 4, 2016, WWE was advised that Ms. Van Dyck was not available to participate in a call to chambers and that counsel for WWE should direct their request to a Mr. Flannery from the Cuneo firm.  Mr. Flannery attempted to further delay a resolution of these issues until WWE explained to <u>him</u> the reasons why the discovery responses were deficient.  WWE advised Mr. Flannery that it had already made substantial good faith efforts to resolve the disputes between the parties with the attorney designated by Plaintiffs as having the authority to resolve discovery issues and had been unable to reach agreement.

On April 6, 2016, counsel for the parties jointly called chambers to request a discovery conference in accordance with the Court's procedures.  The parties were advised that the issues that WWE sought to raise concerning Plaintiffs' responses to its discovery requests would more appropriately be raised by a motion to compel and authorized WWE to file the instant motion.

III.    <u>LEGAL STANDARD</u>

"[A] party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "The party resisting discovery bears the burden of showing why discovery should be denied."  *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D.

79, 80 (D. Conn. 2009).  "To prevail on its objection, however, the objecting party must do more than simply intone [the] familiar litany that the [requests] are burdensome, oppressive or overly broad."  *Klein v. AIG Trading Group, Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal quotation marks omitted).  "The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  *Id.* (internal quotation marks omitted).

"If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5) (emphasis added).

IV.   <u>ARGUMENT</u>

A.   <u>Plaintiffs' Interrogatory Responses Are Deficient.</u>

Plaintiffs have provided incomplete and evasive answers to most of the interrogatories served by WWE.  The Court should order Plaintiffs to provide complete and accurate answers at least to the interrogatories identified below.

1.   <u>LoGrasso Interrogatory 16 and Singleton Interrogatory 17</u>

<u>Interrogatory</u>:  **Identify all alleged omissions or misrepresentations made by WWE to You, and for each alleged omission or misrepresentation, (a) detail the specific statement or omission; (b) identify the speaker of the statement or person responsible for the omission; (c) state where and**

-10-

when the statement was made or the context of the omission, and the manner in which it misled you; and (d) explain why the statement or omission was fraudulent or negligent.

**Response**:  See General Objections 3 & 8.  Plaintiff further objects because this is irrelevant to the parties' claims and defenses following the Court's recent ruling on WWE's motion to dismiss. Subject to and without waiving the foregoing objections, Plaintiff refers WWE to its response to Interrogatory Nos. 11 and 13 [for LoGrasso and its response to Interrogatory Nos. 12 and 14 for Singleton].

First, Plaintiffs' objection to the relevance of these interrogatories is patently frivolous.  The Court's ruling on the motions to dismiss allowed Plaintiffs to proceed only on their fraud by omission claim.  This interrogatory asks Plaintiffs to identify the alleged omissions by WWE that provide the basis for their claim and the relevant details concerning those omissions.  The Court's ruling noted that "a plaintiff must detail the omissions made, state the person responsible for the failure to speak, provide the context in which the omissions were made and explain how the omissions deceived the plaintiff."  Memorandum of Decision (Doc. No. 116) at 62.  Plaintiffs must be compelled to provide the details of their claim that are required under controlling law.[6]

Second, Plaintiffs' responses to these interrogatories are wholly inadequate.  Plaintiffs merely refer to their responses to other interrogatories that do not answer the questions presented here.  As described in detail in the sections below, those responses do not identify any alleged omissions, provide

---

[6] To the extent that the interrogatories also request that Plaintiffs identify any alleged affirmative misrepresentations made to them, such information is also relevant following the Court's ruling on the motion to dismiss.  The Court noted that the statute of repose on Plaintiff LoGrasso's claim may be tolled by fraudulent concealment and that any alleged misrepresentations made to him could be relevant to whether there were affirmative acts of concealment.  *See* Memorandum of Decision (Doc. No. 116) at 45-46.

the requested details concerning any alleged omissions, or explain how any

alleged omissions could have misled them.  Those responses also do not identify

any misrepresentations made by WWE to Plaintiffs or explain how Plaintiffs could

have been misled by any such misrepresentations.

### 2.    LoGrasso Interrogatory 11 and Singleton Interrogatory 12

**Interrogatory:  Identify each and every "deceptive public statement [ ] and published article [ ]" of or by WWE which You contend "downplayed known long-term health risks of concussions to Plaintiff[s]", as alleged in ¶¶ 222 & 230 of the Second Amended Complaint.**

**Response: See General Objections 3 & 8. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:**

**As stated in Plaintiff's Second Amended Complaint, WWE publicly attacked findings that an NFL player's suicide was attributable to head injuries and that WWE wrestler Chris Benoit suffered from severe concussion-related symptoms. SAC ¶¶ 68-69.  WWE's Chief Brand Officer Stephanie Levesque testified before the United States House of Representatives Committee on Oversight and Government Reform that there were no documented concussions during WWE's matches. SAC ¶ 64. And during an appearance on the NFL Network in March 2015, Dr. Maroon stated, "The problem of CTE, although real, is its being over-exaggerated.'" SAC ¶ 55.**

**In 2007, WWE wrestler Shawn Michaels suffered what WWE described as a "severe concussion" during a match with Randy Orton. Despite acknowledging that this was a serious injury, WWE suggested in its article publicizing the match's outcome that Mr. Michaels might continue wrestling. It also discussed Mr. Michaels's long history of head injuries, glorified his "decisions" to return to the ring after each one, and highlighted scripted matches in which "opponents" targeted Mr. Michaels's head specifically because of his existing head injuries.**

**Plaintiff also refers WWE to the publications served on March 21, 2016 in response to WWE's First Set of Requests for Production.**

Plaintiffs' responses to these interrogatories are plainly deficient.

<u>First</u>, Plaintiffs do not identify any public statements or published articles

that downplayed the known long-term risks of concussions <u>to them</u>.  Plaintiffs do

not contend that any alleged statements were made to them, that they read or heard any deceptive statements, or that they relied on them in any way.  Plaintiffs obviously cannot identify anything said or done which deceived them in any way.

Second, Plaintiffs reference mere allegations in the Second Amended Complaint in an attempt to support their false contention that WWE publicly attacked findings that an NFL player's suicide was attributable to head injuries. Paragraph 68 of the Second Amended Complaint does not allege any statements made by WWE at all.  Rather, it alleges that Dr. Maroon made certain statements in January 2006 before he was even affiliated with WWE.  Paragraph 69 does allege a statement made by WWE to ESPN in 2009 concerning former wrestler Chris Benoit, but the Court already found that allegation was insufficient to state a fraud claim because it "does not state a material fact which plaintiffs allege to be false [or] a statement upon which plaintiffs have reasonably relied." Memorandum of Decision (Doc. No. 116) at 60-61.

Third, Plaintiffs repeat their false allegation regarding Stephanie McMahon-Levesque's congressional testimony in December 2007 even though the Court has already admonished Plaintiffs for making this misrepresentation.  In its ruling on the motions to dismiss, the Court stated that "plaintiffs appear to have repeatedly misrepresented both the substance and meaning of Levesque's testimony."  Memorandum of Decision (Doc. No 116) at 58.  The Court observed that Ms. McMahon-Levesque was never asked about the number of concussions in WWE's history as Plaintiffs "repeatedly" and "misleadingly asserted in their complaints."  Id.  Nevertheless, Plaintiff incredibly repeat their misrepresentation

that Ms. McMahon Levesque testified that there were no documented concussions in WWE's matches in their responses to these interrogatories.[7]

   **Fourth**, Plaintiffs reference a statement made by Dr. Maroon on the NFL Network in March 2015 well **after** Plaintiffs had left WWE and **after** the original complaint in this action had been filed.  In its ruling on the motions to dismiss, the Court already rejected this statement as a potential basis for a fraud claim noting that "the complaints do not allege facts indicating that at the time the statement was uttered, Dr. Maroon knew or should have known that CTE was not over-exaggerated, or facts indicating that any plaintiff relied upon the statement." Memorandum of Decision (Doc. No 116) at 58.

   **Fifth**, Plaintiffs reference an article regarding a concussion sustained by former wrestler Shawn Michaels that was published in May 2007 at a time when neither Plaintiff was performing for WWE.  Contrary to the contention made by Plaintiffs, the article does not downplay the long-term risks of concussions.  In fact, the article repeatedly notes the serious risks associated with concussions.[8]

---

[7] As the Court noted in its opinion on WWE's Motion to Dismiss, there is a sanctions motion pending in the *James* case, and one aspect of that motion is based on the repeated falsification by Plaintiffs' counsel of Ms. McMahon-Levesque's testimony.  WWE submits that the continual misrepresentation of that point by Plaintiffs' counsel in the face of the Court's findings is strong evidence of the need for sanctions.

[8] For example, the article states: (i) "One concussion is bad enough, but multiple concussions can seriously damage the brain.  'Someone who has repeated head injuries, we worry about damage to some of the areas of the brain,' Dr. Rios explained." (ii)  "A concussion is not a 'normal' injury in that the effects can linger for a long time, and in some instances after severe concussions, people are never the same again." (iii) "The brain is perhaps the most vital part of a sports-entertainer's body, and if brain function is impaired, a Superstar could put

**Sixth**, Plaintiff improperly reference publications that were served in response to WWE's requests for production without identifying which of those publications they claim are responsive to this interrogatory in violation of Rule 33(d).  *See* Fed. R. Civ. P. 33(d) (a party must specify "the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could").

3.   LoGrasso Interrogatory 13 and Singleton Interrogatory 14

**Interrogatory**: Identify all persons employed by WWE who You contend "actively" misrepresented facts or "repeatedly made material misrepresentations" to You about the lack of evidence linking concussions to CTE, as alleged in ¶¶ 154, 156, 166, & 168 of the Second Amended Complaint, including in Your answer the date, place, and substance of each material misrepresentation made to You.

**Singleton Response**: See General Objections 3 & 8. Plaintiff further objects because this is irrelevant to the parties' claims and defenses following the Court's recent ruling on WWE's motion to dismiss. Subject to and without waiving the foregoing objections, Bill Dumott. Plaintiff refers WWE to its response to Interrogatory No. 12 for the specific misrepresentations made by these individuals.

**LoGrasso Response**: See General Objections 3 & 8.  Plaintiff further objects because this is irrelevant to the parties' claims and defenses following the Court's recent ruling on WWE's motion to dismiss. Subject to and without waiving the foregoing objections, Mr. LoGrasso was repeatedly told by WWE employee Bill Dumott that the injuries he suffered were part of "paying his dues."  These statements occurred regularly during training sessions with Mr. Dumott. In addition, Mr. LoGrasso was treated by Dr. Rios, who simply administered B-12 shots when he suffered head injuries and allowed Mr. LoGrasso to return to the ring. Dr. Rios never advised Mr. LoGrasso of the long-term risks of these head injuries.

Plaintiff Singleton's response to this interrogatory does not identify any alleged statements made to him—much less any misrepresentations to him

---

himself into a dangerous position by stepping back into the ring."  (Available at http://www.wwe.com/shows/judgmentday/2007/exclusives/michaelsconcussion.)

regarding the lack of evidence linking concussions to CTE.  Singleton identifies

Bill Dumott as the only person who allegedly made misrepresentations to him

and refers to his response to Interrogatory 12 for the specific misrepresentations

that were made by Mr. Dumott.  However, Singleton's response to Interrogatory

12 does not set forth <u>any</u> statements made by Mr. Dumott nor <u>any</u> statements

about the lack of evidence linking concussions to CTE.  Singleton also does not

provide any information regarding the date or place of any such statements.

Plaintiff LoGrasso's response does identify a statement allegedly made to

him by Bill Dumott but that statement has nothing to do with the lack of evidence

linking concussions to CTE.  LoGrasso also identifies Dr. Rios as a person who

purportedly made misrepresentations to him but does not identify any alleged

statements made by Dr. Rios—much less any statements about the lack of

evidence linking concussions to CTE.  LoGrasso's gratuitous statement that Dr.

Rios treated him with B-12 shots for head injuries is manifestly false in view of

LoGrasso's admissions elsewhere that he never sought or received medical

treatment for head injuries from WWE.  *See* Plaintiff LoGrasso's Responses and

Supplemental Responses to Interrogatories 2, 5; Memorandum of Decision (Doc.

No. 116) at 11, 12, 51-52.

### 4. LoGrasso Interrogatory 12 and Singleton  Interrogatory 13

<u>Interrogatory</u>:  Identify everything You contend was done by WWE to
discredit the studies in ¶ 66 of the Second Amended Complaint, as alleged
in ¶ 67 of the Second Amended Complaint, including in Your answer when
and how You first learned of each act or statement identified.

<u>Response</u>: See General Objections 3 & 8. Subject to and without waiving the
foregoing objections, Plaintiff refers WWE to its response to Interrogatory
[No. 11 for LoGrasso and Interrogatory No. 12 for Singleton].

Plaintiffs' answers to these interrogatories are completely non-responsive. These interrogatories seek to discover the bases for Plaintiffs' allegations that WWE attempted to discredit Dr. Omalu's studies of former football players Mike Webster and Terry Long and how these two Plaintiffs first learned of such alleged but non-existent efforts by WWE.  Plaintiffs merely refer to their responses to other interrogatories but those responses do not cite <u>any</u> statements or actions taken by WWE to discredit such studies.  Those responses also do not provide any information regarding when or how Plaintiffs first learned of any such statements or actions by WWE as required by these interrogatories.

5.      **LoGrasso Interrogatory 14 and Singleton Interrogatory 15**

**Interrogatory**: Identify in detail who at WWE specifically stated "that WWE wrestlers with diagnosed brain trauma did not receive these injuries as a result of wrestling for WWE," as alleged in ¶¶ 178 & 185 of the Second Amended  Complaint, including in Your answer the date, place and persons making such a statement and how and when such statements first came to Your attention.

**Response**:  See General Objections 3 & 8.  Subject to and without waiving the foregoing objections, Plaintiff refers WWE to its response to Interrogatory Nos. 11 and 13 [to LoGrasso and Interrogatory Nos. 12 and 14 to Singleton].

Plaintiffs' answers to these interrogatories are completely non-responsive. Plaintiffs merely refer to their responses to other interrogatories but those responses do not identify anyone at WWE who ever stated that WWE wrestlers diagnosed with brain trauma did not receive such injuries as a result of working for WWE.  Those responses also do not state the date or place of any such statements and do not identify how and when such statements first came to the attention of Plaintiffs as required by these interrogatories.

-17-

6.    **LoGrasso Interrogatory 15 and Singleton Interrogatory 16**

**Interrogatory**: Identify in detail who at WWE criticized "the legitimate scientific studies," as alleged in ¶¶ 193 & 208 of the Second Amended Complaint, including in Your answer the date, place, and person(s) rendering the criticism, and how and when the criticism first came to Your attention.

**Response**: See General Objections 3 & 8.  Subject to and without waiving the foregoing objections, Plaintiff refers WWE to its response to Interrogatory Nos. 11 and 13 [to LoGrasso and Nos. 12 and 14 to Singleton].

Plaintiffs' answers to these interrogatories are also completely non-responsive.  Plaintiffs merely refer to their responses to other interrogatories but those responses do not identify anyone at WWE who criticized scientific studies which illustrated the dangers and risks of head injuries and the long-term effects of concussions as alleged in Paragraphs 195 and 208 of the Second Amended Complaint.  Those responses also do not identify the date and place of any such criticism or how and when the criticism first came to the attention of Plaintiffs as required by these interrogatories.

7.    **LoGrasso Interrogatory 10 and Singleton Interrogatory 11**

**Interrogatory**:  Identify all experts You intend to rely upon to raise issues of fact regarding any of the three issues set forth in the Court's order of January 15, 2016 and the subject matter and basis for all testimony to be offered by such experts.

**Response**:  See General Objections 2, 3, & 8. Plaintiff further objects to this Interrogatory as it is premature and seeks the current mental impressions of Plaintiff's attorneys.

Plaintiffs' objections to these interrogatories are baseless.  The Court has ordered any dispositive motions on the issue of liability to be filed by August 1, 2006.  *See* Order Partially Lifting Stay of Discovery (Doc. No. 107).  If Plaintiffs

intend to use evidence from experts in any attempt to create factual issues in opposition to a dispositive motion on the issue of liability, then WWE is entitled to know the identity of those experts and the basis for any testimony to be offered by those experts now so that there is adequate time to address such issues before the deadline for dispositive motions.[9]

### 8.    LoGrasso Interrogatory 8 and Singleton Interrogatory 9

**Interrogatory**: Identify all instances where You received concussive or sub-concussive blows while engaged in activities other than performing for WWE including, but not limited to, high school wrestling, when performing for other professional wrestling promotions, doing mixed martial arts, or otherwise.

**Response**:  See General Objection 8. Plaintiff further objects because this impermissibly seeks premature disclosure of experts and expert information; requires Plaintiff to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony; and is not related to the limited discovery permitted and enumerated in Court's January 15, 2016 Order.

These interrogatories seek information that is plainly relevant to the issues in the case following the Court's order on the motion to dismiss.  Both Plaintiffs have performed for other wrestling organizations.  Before joining WWE, Plaintiff Singleton was a high school wrestler and performed in an ultra-violent form of wrestling known as Combat Zone Wrestling.  (*See* Exhibits I-J.)  Before and after performing for WWE, Plaintiff LoGrasso performed for many other wrestling

---

[9] As the Court recognized in its ruling on the motion to dismiss, Plaintiffs are required to establish that WWE failed to disclose a <u>known</u> fact in order to prove their fraud by omission claim.  *See* Memorandum of Decision (Doc. No. 116) at 55-56, 61, 67-68.  Therefore, expert testimony that WWE <u>should have known</u> a particular fact would not assist Plaintiffs in proving a fraud by omission claim. However, Plaintiffs need expert testimony to establish a basis for asserting that they are at risk for some neurodegenerative disease as a result of head injuries while performing for WWE.

promotions, including under the stage name Skull Von Krush.  (*See* Exhibit K.)
Information concerning whether Plaintiffs received concussive or sub-concussive
blows in other activities or while wrestling for other organizations and whether
Plaintiffs received any warnings about their long-term risks is central to many of
the issues in this case including (i) whether Plaintiffs' alleged injuries were
caused while performing for some wrestling organization other than WWE or
participating in other activities, (ii) whether Plaintiffs had prior knowledge of the
alleged long-term risks of concussions from other activities such that they could
not have detrimentally relied on any alleged non-disclosure of such risks by
WWE, and (iii) whether Plaintiff LoGrasso's claims are time-barred because he
was aware of such risks more than three years before this action was
commenced.  *See* Memorandum of Decision (Doc. No. 116) at 32, 67-68.  All such
issues are relevant to dispositive motions on the issue of liability that must be
filed by August 1, 2016.  *See* Order Partially Lifting Stay of Discovery (Doc. No.
107).  Because relevance is broadly construed to encompass any matter that
reasonably could lead to the discovery of relevant evidence, discovery
concerning activities outside of WWE is plainly relevant to the issues raised by
the Court's order.  *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

These interrogatories also do not seek premature disclosure of experts or
expert information.  They seek factual information concerning circumstances in
which Plaintiffs claim to have received concussions or sub-concussive blows in
other activities.  Moreover, to the extent that Plaintiffs intend to use expert
information to create factual issues on the issue of liability, disclosure of such

-20-

information is not premature in view of the deadline established by the Court for

dispositive motions.

>    9.    <u>LoGrasso Interrogatory 1</u>
>
>    <u>Interrogatory</u>:  Identify all of the dates on which You claim to have suffered
>    a TBI while You performed for WWE or any other wrestling organization,
>    the persons involved in any matches in which each injury occurred, the
>    location or venue where each such injury occurred, and how each such
>    injury occurred.
>
>    <u>Response</u>:  See General Objections 5, 6, 7 & 8. Plaintiff further objects
>    because this impermissibly seeks premature disclosure of experts and
>    expert information or requires Plaintiff to disclose analyses, comparative
>    analyses, opinions, or theories that will be the subject of expert testimony.
>    Consistent with the Court's January 15, 2016 Order, Plaintiff is limiting his
>    answer to only those relevant dates, 2005 or later, during which he was
>    performing for WWE. Plaintiff claims that he suffered a TBI on multiple
>    occasions during this time frame of his employment with WWE . . .

Plaintiff LoGrasso improperly limits his response to this interrogatory to

dates on which he claims to have suffered a TBI to <u>2005 or later while he was

performing for WWE</u>.  This interrogatory also seeks relevant information

concerning whether LoGrasso suffered a TBI in other wrestling organizations in

which he performed.  As discussed above, information concerning whether

LoGrasso suffered TBIs in such organizations is directly relevant to LoGrasso's

ability to prove causation attributable to WWE.

Plaintiff LoGrasso also improperly objects to this interrogatory on the

grounds that it seeks premature disclosure of experts and expert information.

This interrogatory merely seeks factual information concerning the dates on

which LoGrasso claims that he suffered a TBI while performing for any wrestling

organization and the factual details of such instances.  Moreover, to the extent

that Plaintiffs intend to use expert information to create factual issues on the

issue of liability, disclosure of such information is not premature in view of the

deadline established by the Court for dispositive motions.

10.    **Singleton Interrogatory 8**

**Interrogatory**:  Identify all persons who have examined and/or treated
You for psychiatric, psychological, and/or emotional issues at any
time in Your life, including in Your answer any diagnosis made by
each person so identified and the date such diagnosis was provided
to you.

**Response**:  See General Objections 3, 5, & 8. Subject to and without
waiving these objections, Plaintiff identifies the following health care
providers, all of whom have only treated Plaintiff since his TBI on
September 27, 2012: Dr. Darren Rothschild, a psychiatrist, who
diagnosed and treated Plaintiff for depression; Dr. Karen Milo, a
psychologist, who diagnosed and treated Plaintiff for depression; Dr.
Nancy Rodgers-Neame, a neurologist, who diagnosed and treated
Plaintiff for his TBI and various related symptoms; Dr. Garry Mueller,
a primary care physician, who treats Plaintiff's depression; and Dr.
Wen Wu-Chen, a neurologist, who treats various symptoms related
to Plaintiff's TBI.

Plaintiff Singleton improperly limits his response to this interrogatory to

only those providers who treated him after September 27, 2012 when he claims to

have suffered a TBI while working for WWE.  This interrogatory also seeks

information concerning any treatment or diagnosis that Singleton received for

psychological issues before September 27, 2012.  Such information is directly

relevant to whether his claimed injuries were caused by the TBI that he allegedly

suffered while working for WWE.  As to those providers who treated Singleton

after September 27, 2012, his response to this interrogatory is incomplete

because it does not state the specific dates on which the diagnoses were

provided to him as required by the interrogatory.

11.   **LoGrasso Interrogatory 3**

**Interrogatory: Identify all health care providers who have examined or treated You since You began your career as a professional wrestler.**

**Response: See General Objections 5, 6 & 8. Consistent with the Court's January 15, 2016 Order, Plaintiff is limiting his answer to only those relevant dates, 2005 or later, during which he was performing for WWE. Subject to and without waiving these objections, Plaintiff states that during his employment with WWE from 2005 on, he currently recalls being treated by WWE's Dr. Ferdinand Rios as well as: Dr. Daniel Stein, 5602 Marquesas Circle, Suite 108, Sarasota, FL 34233; Dr. Anthony DiMarco, 950 S. Octorara Trail, Parkesburg, PA, 19365; Dr. Joseph Handler, 1011 West Baltimore Pike, Suite 101, West Grove, PA 19390; Dr. Robert Cavoto, 152 Garrett Rd, Upper Darby, PA 19082; Dr. Jeffry Tambor, 265 Mason Ave, Staten Island, NY 10305; Dr. Bradford Smith, MD, 100 E. Lancaster Ave, 33 Lankenau Medical Building West, Wynnewood, PA 19096; and Marie Kerr, Human Services, 410 Boot Rd, Downington, PA 19335; Dr. Joseph L. Smith II, 80 W Welsh Pool Rd # 103, Exton, PA 19341; Robert Satriale, 213 Reeceville Rd, Ste 36, Coatesville, PA 19320; Dr. Joe Snyder, address unknown. Pursuant to Rule 33(d), Plaintiff refers WWE to any and all medical records to be produced by Plaintiff and/or in WWE's possession for the identity of other health care providers who treated Plaintiff during that time period.**

**First**, Plaintiff LoGrasso improperly limits his response to this interrogatory to only those health care providers who have treated or examined him <u>during his employment with WWE from 2005 on</u>.  This interrogatory also seeks information concerning providers who have treated or examined LoGrasso since he began his career as a professional wrestler.  A complete list of providers would be necessary to determine whether LoGrasso was examined or treated for head injuries during his wrestling career at other promotions and whether any such providers gave him warnings related to the long-term effects of concussive injuries.  Such information would be relevant to the causes of LoGrasso's alleged injuries in this lawsuit and his state of knowledge concerning the long-term effects of concussions.  In addition, the absence of any such warnings from other

providers who treated LoGrasso for injuries sustained during his wrestling career would be relevant to whether any duty to disclose such information should be imposed on a non-medical provider such as WWE.

**Second**, Plaintiff LoGrasso's interrogatory response is incomplete even as to those health care providers who treated him after 2005.  For example, LoGrasso revealed in social media posts that he underwent surgery performed by Dr. Peter Candelora, who was not disclosed in his interrogatory responses.[10] (*See* Exhibit L.)  Without a complete list of providers, WWE cannot know whether there are additional medical records that are relevant and should be produced.

**Third**, Plaintiff LoGrasso improperly answers this interrogatory by referring to medical records that were not even produced by him in violation of Rule 33(d). *See* Fed. R. Civ. P. 33(d) (stating that a party can respond to an interrogatory by producing its records if it specifies "the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could").

### 12.   LoGrasso Interrogatory 6

**Interrogatory**:  Identify all symptoms You have experienced since Your relationship with WWE ended which You contend are associated with TBI sustained while performing for WWE, including the date of onset of the symptoms, the length of the symptoms, and the identity of all health care providers who examined or treated You for such symptoms.

**Response**:  See General Objections 6, 7 & 8.  Plaintiff further objects to the extent this Interrogatory seeks premature disclosure of experts and expert information or requires Plaintiff to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony. Subject to and without waiving these objections, Plaintiff states that he

---

[10] WWE subsequently undertook the time and expense to subpoena LoGrasso's records from Dr. Candelora.

presently recalls having suffered from severe headaches, hearing loss, post-concussion syndrome, memory problems, disorientation, loss of concentration, confusion, trouble sleeping, sleep apnea, Temporomandibular Joint Disorder (TMJD), anxiety, and depression both before and after his employment with WWE ended.  These symptoms have been chronic since the time of their inception in approximately 2007.  Plaintiff presently recalls being treated by those doctors identified supra for these symptoms with the exception of Dr. Ferdinand Rios. Pursuant to Rule 33(d), Plaintiff refers WWE to the medical records he is producing in this matter.

First, this interrogatory does not seek premature disclosure of experts and expert information.  It seeks factual information concerning symptoms that LoGrasso claims to have suffered in his complaint.

Second, LoGrasso's response to this interrogatory is inadequate because it does not identify the precise date and length of each of his alleged symptoms.  LoGrasso only states that the symptoms have been chronic since approximately 2007 but does not identify when in 2007 such symptoms began.  Because LoGrasso last performed for WWE in January 2007, it is relevant whether or not his symptoms began after January 2007.  LoGrasso's answer is suspect because it contradicts the allegations in the Second Amended Complaint stating that he began experiencing such symptoms in 2008.  His response also contradicts other evidence and public statements made by LoGrasso that he has been deaf since birth, demonstrating the falseness of his claim that his hearing loss was caused by TBIs allegedly sustained while wrestling for WWE.  (See Exhibit M.)

Third, LoGrasso improperly responds to this interrogatory by referring generally to medical records without specifying where in the records information about the dates that his symptoms began can be located in violation of Rule 33(d).  See Fed. R. Civ. P. 33(d) (a party must specify "the records that must be

-25-

reviewed in sufficient detail to enable the interrogating party to locate and identify

them as readily as the responding party could").

13.   <u>Second Set of Interrogatories No. 1</u>

<u>Interrogatory</u>:  State whether You contend that You were an employee and not an independent contractor of WWE and, if so, state all facts that and bases for Your contention.

<u>Response</u>: See General Objections 2, 3, 4, 7 & 8. Plaintiff further objects because this calls for a legal analysis and/or mental impressions of Plaintiff's counsel and is also a premature contention interrogatory. Subject to and without waiving these objections, Plaintiff states that WWE controlled all aspects of his performances while at WWE; the outcome, place, and location of the matches; and who his opponents would be. WWE provided referees, constructed the ring, and directed and controlled the safety of the moves performed.

Plaintiffs never state whether they contend that they are employees or

independent contractors in response to these interrogatories.  Plaintiffs'

objection that these are premature contention interrogatories that seek mental

impressions of counsel has no merit.  An interrogatory is not objectionable

merely because it asks for an application of law to fact.  *See* Fed. R. Civ. P. 33(c)

("An interrogatory is not objectionable merely because it asks for an opinion or

contention that relates to fact or the application of law to fact."); *Pouliot v. Paul*

*Arpin Van Lines, Inc.*, No. 3:02-CV-1302, 2004 U.S. Dist. LEXIS 10871, at *3-5 (D.

Conn. June 14, 2004) (overruling objection that contention interrogatories were

premature).  Moreover, there is no order that allows Plaintiffs to delay disclosure

of their contentions in this case.

Plaintiffs must provide a direct answer to these interrogatories.  Although

the Booking Contracts with Plaintiffs state that they are independent contractors,

Plaintiffs appear to contend that they were WWE employees in several of their

other interrogatory responses.  (*See* LoGrasso Interrogatory Responses 1, 3, 6-7;

Singleton Interrogatory Response 5.)  If Plaintiffs contend that they were

employees rather than independent contractors, then they have filed this action

in the improper forum because the workers' compensation system provides the

exclusive remedy for personal injuries suffered by employees in the workplace.

*See* Conn. Gen. Stat. § 31-284(a); *Fulco v. Norwich Roman Catholic Diocesan*

*Corp.*, 27 Conn. App. 800, 807 (1992).

      B.     <u>Plaintiffs' Responses to Requests for Production Are Deficient.</u>

      Plaintiffs have withheld relevant documents from production on the basis

of frivolous objections.  The Court should order Plaintiffs to provide complete

and accurate responses at least to the requests for production identified below.

      1.     <u>Singleton Request 81 and LoGrasso Request 86</u>

<u>Request</u>:  All Facebook, Twitter or social media posts by You since Your
contractual relationship with WWE ended relating to this lawsuit, Your
physical or medical condition, and/or WWE.

<u>Response</u>:  Plaintiff objects as this is overly broad, vague, ambiguous, and
unduly burdensome and seeks documents outside the scope of the
Discovery Order and irrelevant to the parties' claims and defenses.
Pursuant to these objections, Plaintiff is withholding all responsive
documents in his possession, custody, or control.

      Plaintiffs improperly have refused to provide <u>any</u> social media information

in response to these requests, which are carefully limited to three specific

subjects:  (1) this lawsuit; (2) their medical and physical condition; and (3) WWE.

The requests do not intrude into personal matters.  Both Plaintiffs in this case

have been very active on various social networking websites and their accounts

contain information that is plainly relevant to this case.  For example, Singleton's

publicly available Instagram account contains photographs of him regularly working out in a gym and preparing for a bodybuilding competition around the same time that he filed the Second Amended Complaint in this action alleging that he was almost completely disabled.  (*See* Exhibits A-D.)  LoGrasso's publicly available Facebook account reflects frequent comments about this case, including posts soliciting other former wrestlers to join his class action lawsuit within days of filing of an amended complaint withdrawing all of the class action allegations.  (*See* Exhibit N-P.)  Most of Plaintiffs' social media accounts, however, are private and cannot be accessed by the public.  Plaintiffs may not withhold relevant information in the private portions of their accounts on the basis of their improper objections.

First, Plaintiffs cannot withhold information on the basis of general objections without demonstrating how these requests are improper.  *See* Fed. R. Civ. P. 34(b)(2)(B) (objections must "state with specificity the grounds for objecting to the request, including the reasons"); *Komondy v. Gioco*, No. 3:12-CV-250, 2015 U.S. Dist. LEXIS 25319, at *7-8 (D. Conn. Mar. 3, 2015) ("the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden") (internal quotation marks omitted).  Plaintiffs' objections should be overruled for that reason alone.

-28-

**Second**, the requests seek relevant information from Plaintiffs' social media posts concerning this lawsuit, their physical or medical condition, and WWE.  As demonstrated above, Plaintiffs' social media accounts are likely to contain admissions that are contrary to their interests in this case and that are grotesquely inconsistent with their portrayal in this case.  For example, the portrayal of Singleton to this Court as a decrepit and disabled young man who could not even drive a car is belied by his Herculean poses announcing that he is in "beast mode."  (*See* Exhibits A-D.)  Plaintiffs' social media posts also may contain information about the state of their knowledge concerning the symptoms and conditions that they claim were caused by traumatic brain injuries suffered while wrestling for WWE.  Numerous courts have ordered production of such social media information in similar circumstances.  *See Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 116 (E.D.N.Y. 2013) ("Postings or photographs on social networking websites that reflect physical capabilities inconsistent with a plaintiff's claimed injuries are relevant."); *Reid v. Ingerman Smith LLP*, No. 2012-0307, 2012 U.S. Dist. LEXIS 182439, at *2 (E.D.N.Y. Dec. 27, 2012) ("Courts have found, particularly in cases involving claims of personal injuries, that social media information may reflect a plaintiff's emotional or mental state, her physical condition, activity level, employment, this litigation, and the injuries and damages claimed.") (internal quotation marks omitted); *Bass v. Miss Porter's Sch.*, No. 3:08cv1807, 2009 U.S. Dist. LEXIS 99916, at *3-4 (D. Conn. Oct. 27, 2009) ("Facebook  usage depicts a snapshot of the user's relationships and state of mind at the time of the content's posting.").

**Third**, the request for social media information is not overly broad or unduly burdensome.  It is limited in both scope and time period, and Plaintiffs have offered no explanation or evidence to substantiate their claim of burden.

2.    **Singleton Request 83 and LoGrasso Request 89**

**Request**:  All documents reflecting and/or relating to Your membership in a gym since Your contractual relationship with WWE ended.

**Response**: Plaintiff objects because this is overly broad, vague, ambiguous, and unduly burdensome; outside the scope of the Discovery Order; and irrelevant to the parties' claims and defenses. Pursuant to the foregoing general and specific objections, Plaintiff is withholding all responsive documents in his possession, custody, or control.

Plaintiffs improperly have withheld documents concerning their membership in a gym since the end of their contractual relationship with WWE on the basis of general objections without demonstrating how these requests are not relevant or how the requests are overly broad or unduly burdensome.  Such documents are directly relevant to demonstrating the falsity of Plaintiffs' claim that they are disabled as a result of working for WWE.  *See* Second Am. Compl. ¶¶ 116-117 (Singleton); ¶¶ 141-142, 147 (LoGrasso).  Moreover, there is clearly no undue burden associated with accessing and producing documents evidencing Plaintiffs' membership in a gym.

3.    **Singleton Request 94 and LoGrasso Request 102**

**Request**:  Any non-privileged communication or statement by You concerning the subject matter of this lawsuit or the events alleged in the Second Amended Complaint.

**Response**: Plaintiff objects because this is overly broad, vague, ambiguous, and unduly burdensome; seeks documents in WWE's possession, custody, or control; and is beyond the scope of the Discovery Order.  Plaintiff further objects because this seeks disclosure of the mental impressions, conclusions, opinions, and legal theories of Plaintiffs'

counsel. Subject to the foregoing general and specific objections, Plaintiff [Singleton] has produced all relevant, non-privileged, responsive documents in his possession and [Plaintiff LoGrasso is not in possession of non-privileged, responsive documents]. A privilege log describing communications being withheld pursuant to the attorney-client privilege will be produced in accordance with Rule 26(b)(5).

Plaintiffs' objection to this request on the grounds of privilege has no merit. The request explicitly seeks only <u>non-privileged</u> communications or statements made by Plaintiffs concerning this lawsuit or the events alleged in the Second Amended Complaint. Moreover, Plaintiff LoGrasso's claim that he is not in possession of any non-privileged responsive documents is patently false. As demonstrated above, LoGrasso has regularly made statements concerning this lawsuit on social media that he should be compelled to produce.

   4.   <u>LoGrasso Request 82</u>

**Request**: All documents reflecting and/or relating to any examination or treatment of You by health care providers for a TBI or concussion You sustained prior to and/or after Your contractual relationship with WWE.

**Response**: Plaintiff objects because this is outside the scope of the Discovery Order and irrelevant to the parties' claims and defenses. Plaintiff further objects because this impermissibly seeks premature disclosure of experts and expert information; is duplicative of subpoenas already served by WWE on Plaintiff's medical providers; and requires Plaintiff to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony. Subject to the foregoing general and specific objections, responsive documents will be produced.

<u>First</u>, Plaintiff LoGrasso's objections to the production of documents relating to treatment of him for TBIs or concussions sustained prior to or after his contractual relationship with WWE have no merit. LoGrasso's relevance objection has no merit because such documents are relevant to (i) whether his

alleged injuries were caused by wrestling for WWE, (ii) when he became aware of symptoms or conditions associated with TBIs or concussions, and (iii) whether and when he received any warnings about the long-term effects of TBIs and concussions.  LoGrasso's objection that the request seeks premature disclosure of experts and expert information is baseless because the request seeks factual information concerning the treatment that he has received for TBIs or concussions.  Finally, LoGrasso's objection that the request seeks information that is duplicative of subpoenas served by WWE is improper because he has an independent obligation to produce responsive records from his providers.

**Second**, Plaintiff LoGrasso states that responsive documents will be produced but does not state when such documents will be produced.  To date, LoGrasso has only produced an incomplete set of documents from a few of the providers who have treated him.

5.   **LoGrasso Requests 96 and 99**

**Request No. 96**: All documents reflecting and/or relating to Your wrestling school, including, without limitation, promotional materials, social media posts, documents provided to those who enrolled, and contracts with trainees.

**Response**: Plaintiff objects because this is outside the scope of the Discovery Order claims and defenses. Pursuant to the foregoing general and specific objections, Plaintiff is withholding all responsive documents in his possession, custody, or control.

**Request No. 99**: All documents reflecting statements You have made in the media, on the internet, in social media, or in sales solicitations about Your wrestling school, relating to WWE.

**Response**: Plaintiff objects because this is overly broad, unduly burdensome, confusing; seeks documents irrelevant to the parties' claims and defenses; and is beyond the scope of the Discovery Order.  Plaintiff further objects because this seeks publicly available documents that are

not in his possession, custody, or control and to which WWE has equal access. Pursuant to these objections, Plaintiff is withholding all responsive documents in his possession, custody, or control.

Plaintiff LoGrasso has withheld relevant information concerning the wrestling academy that he opened in Florida after his relationship with WWE ended.  Information concerning whether LoGrasso has advised students in his wrestling school about the long-term risks of concussions is relevant to (i) LoGrasso's state of knowledge concerning the risks of concussions, and (ii) whether a wrestling organization has a duty to disclose the potential long-terms risks of concussions to wrestlers.  Contrary to his objection, LoGrasso is uniquely in the possession of responsive documents concerning his own wrestling school.

**6.   LoGrasso Request 87**

**Request**:  All documents reflecting and/or relating to communications between You and WWE since Your contractual relationship with WWE ended.

**Response**: Plaintiff objects as this is overly broad, vague, ambiguous, and unduly burdensome; duplicative of other requests; and seeks documents to which WWE has equal or better access.  Subject to the foregoing general and specific objections, responsive documents, to the extent they exist and are in Plaintiff's possession, custody, or control, will be produced.

Plaintiff LoGrasso has stated that he will produce any documents reflecting communications between him and WWE since his contractual relationship with WWE ended but has not  produced <u>any</u> such documents.  LoGrasso should be compelled to produce any such documents or to state that he does not have any such documents in his possession, custody, or control.

**7.   LoGrasso Request 92**

**Request:**  Documents sufficient to show any income or revenue You received from professional wrestling performances rendered to WWE, whether as a jobber or pursuant to a Booking Contract.

**Response:**  Plaintiff objects because this is outside the scope of the Discovery Order.  Plaintiff further objects because this seeks documents already in WWE's possession. Pursuant to the foregoing general and specific objections, Plaintiff is withholding all responsive documents in his possession, custody, or control.

Plaintiff LoGrasso has improperly withheld documents reflecting income or revenue that he received from professional wrestling performances rendered to WWE.  Such documents are relevant to establishing the dates when LoGrasso performed for WWE and to refuting his false allegation that he performed for WWE for over 20 years.  *See* Second Am. Compl. ¶ 132.  LoGrasso's objection that the request seeks documents in WWE's possession presumes that WWE maintains records from decades ago regarding casual laborers.  LoGrasso has the obligation to produce what he has regardless of his perception about whether WWE has such records.

### 8.    Singleton Request 37 and LoGrasso Request 94

**Request No. 37:**  All documents reflecting Your sources of income since You last performed for WWE.

**Singleton Response:**  Plaintiff objects because this is overly broad; seeks documents outside Plaintiff's possession, custody or control; and is outside the scope of the Discovery Order Pursuant to the foregoing general and specific objections, Plaintiff is withholding all responsive documents in his possession, custody, or control.

**Request No. 94:**  All documents reflecting income or revenue You have received since Your contractual relationship with WWE ended, including, without limitation, the source(s) of such income or revenue.

**LoGrasso Response:**  Plaintiff objects because this seeks documents outside Plaintiff's possession, custody or control and is outside the scope of the Discovery Order. Pursuant to the foregoing general and specific

objections, Plaintiff is withholding all responsive documents in his possession, custody, or control.

Plaintiffs improperly have withheld documents reflecting their sources of income and revenue since they last performed for WWE.  Such documents are plainly relevant to refuting their allegations in the Second Amended Complaint that they are disabled and that their injuries may affect their ability to work.  *See* Second Am. Compl. ¶¶ 116-117 (Singleton); ¶¶ 141-142, 147 (LoGrasso).  Such documents are also relevant to establish other sources of information from which Plaintiffs may have learned of the long-term risks of concussions.

9.    **Singleton Request 36**

**Request**:  All documents reflecting anything You read about concussions prior to, during, and/or after Your career as a professional wrestler.

**Response**:  Plaintiff objects because this is overly broad, vague, and ambiguous. Plaintiff further objects because this seeks disclosure of the mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel. Subject to the foregoing general and specific objections, Plaintiff is not in possession of responsive documents.

Documents reflecting what Plaintiff Singleton has read about concussions are directly relevant to his state of knowledge concerning the long-term risks of concussions.  Singleton's response that he is not "in possession" of responsive documents does not account for the fact that he must also produce any responsive documents that he can access or that are within his custody or control.  *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[I]f a party has access and the practical ability to possess documents not available to the party seeking them, production may be required"); *Miesenbock v. Chase Bank USA N.A.*, No. 3:06CV1519, 2008 U.S. Dist. LEXIS 92777 (D. Conn.

Nov. 14, 2008) ("The plaintiff is reminded that he must produce all responsive

documents that are in his possession, custody or control. This includes

documents that he does not have in his own files but has access to.").[11]

### 10.    LoGrasso Request 100 and Singleton Request 92

**Request**:  All documents upon which You base Your allegation that WWE had a duty to warn Plaintiffs or a duty to disclose information to Plaintiffs, as alleged in ¶¶ 8, 160, 172, 202 & 217 of the Second Amended Complaint.

**LoGrasso Response**:  Plaintiff objects because this is vague and ambiguous and seeks disclosure of the mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel. Plaintiff further objects because this seeks documents already in WWE's possession, custody, or control. Subject to the foregoing general and specific objections, responsive documents, Plaintiff has produced all responsive, non-privileged documents in his possession.

**Singleton Response**:  Plaintiff objects because this is irrelevant to the parties' claims and defenses following the Court's recent ruling on WWE's motion to dismiss.  Plaintiff further objects because this seeks documents already in WWE's possession, custody, or control. Subject to the foregoing general and specific objections, Plaintiff has produced all responsive, non-privileged documents in his possession.

These requests seek any documents on which Plaintiffs base their

allegations that WWE had a duty to warn them about the long-term effects of

concussions.  Plaintiffs stated that they have produced all responsive and non-

privileged documents in their possession but do not identify which of the

---

[11] In addition to materials that Singleton may have read regarding concussions, evidence produced in discovery by WWE reveals that WWE held a meeting that Singleton attended one month before Singleton suffered his concussion in which WWE's medical staff advised talent of the potential long-term risks of head injuries and TBIs, the need to report concussions to WWE, and the importance of not returning to the ring until any symptoms have resolved.  Such evidence conclusively establishes that Singleton's fraud by omission claim lacked any good faith basis in fact and should never have been made.  Having been made and shown to be categorically false by the recording of the medical meeting, it should have been withdrawn under the command of Rule 11.

documents that they have produced are responsive to these requests and such documents are not ascertainable by WWE.  *See* Fed. R. Civ. P. 34(b)(E)(i). Moreover, Plaintiffs improperly have withheld documents on the grounds of privilege without providing a privilege log.  As discussed below, the failure to produce a privilege log waives the privilege as to all responsive documents.

> C.     **Plaintiffs Have Failed to Produce A Privilege Log.**

Plaintiffs have stated that they have produced responsive and <u>non-privileged</u> documents in response to many requests.  (*See* Requests for Production to Singleton 1-9, 12-14, 18-19, 24-25, 27, 29, 39, 44, 47, 49, 50, 53-58, 60-70, 73-76, 82, 89-94; Requests for Production to LoGrasso 1-9, 12-14, 20-21, 26-27, 31, 40-41, 47, 50-51, 58, 60-63, 66-74, 76-77, 98, 100-102).  Plaintiffs have withheld other responsive and purportedly <u>privileged</u> documents from their production but have not produced a privilege log.  The failure of Plaintiffs to provide a timely privilege log waives any claim of privilege.

Both the Federal Rules and the Local Rules provide that Plaintiffs must provide a privilege log when a claim of privilege or work product is asserted as a basis for withholding otherwise discoverable information.  *See* Fed. R. Civ. P. 26(b)(5)(A) ("<u>When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must</u>: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the

claim.") (emphasis added); D. Conn. L. Civ. Rule 26(e) ("<u>When a claim of privilege or work product protection is asserted in response to a discovery request for documents or electronically stored information</u>, the party asserting the privilege or protection <u>shall</u> provide the following information in the form of a privilege log.") (emphasis added).  Plaintiffs' failure to provide a timely privilege log results in a waiver of the privilege.  *See Session v. Rodriguez*, No. 3:03CV0943 (AWT), 2008 U.S. Dist. LEXIS 43761, at \*6 (D. Conn. June 4, 2008) ("The failure to produce a privilege log waives the privilege."); *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006) ("Failure to produce a privilege [log] is sufficient grounds to deem the privilege waived."); *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 168-169 (D. Conn. 2005) ("Where a party fails to perfect a claim of privilege that privilege is deemed waived.").

In this case, Plaintiffs did not produce a privilege log when they provided their initial or supplemental discovery responses despite the fact that they have withheld otherwise discoverable material on the grounds of privilege.  Counsel for WWE repeatedly asked Plaintiffs for their privilege log on three separate occasions.  Plaintiffs still have not provided any privilege log to date.  Plaintiffs therefore have waived any claim of privilege and should be compelled to produce all responsive and privileged documents forthwith.

V.    <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant WWE's motion to compel and should order Plaintiffs to:  (1) provide complete and accurate responses to First Set of Interrogatories 1, 3, 6, 8, and 10-16 directed to

-38-

LoGrasso, First Set of Interrogatories 8, 9, and 11-17 to Singleton, and Second Set of Interrogatories 1 directed to Plaintiffs; (2) provide complete and accurate responses to Requests for Production 82, 86, 87, 89, 92, 94, 96, 99, 100, and 102 directed to LoGrasso and Requests for Production 36, 37, 81, 83, 92, and 94 directed to Singleton; (3) produce all responsive documents withheld on grounds of attorney-client privilege or the work product doctrine because Plaintiffs have waived the privilege as a result of their failure to provide a privilege log; and (4) pay the attorney's fees and costs incurred by WWE in connection with this motion as required by Federal Rule of Civil Procedure 37.

**DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.,**

By:  */s/  Jerry S. McDevitt*
    **Jerry S. McDevitt (*pro hac vice*)
Terry Budd (*pro hac vice*)
Curtis B. Krasik (*pro hac vice*)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: terry.budd@klgates.com
Email: curtis.krasik@klgates.com**

    **Thomas D. Goldberg (ct04386)
Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: tgoldberg@daypitney.com
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com**

## CERTIFICATION OF SERVICE

    **I hereby certify that, on April 20, 2016, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.**

    */s/ Jeffrey P. Mueller*
    **Jeffrey P. Mueller (ct27870)**

-40-