UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, RYAN SAKODA, and MATTHEW ROBERT WIESE, <br><br> individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Defendant. | Case No. 3:15-cv-01074-VLB |

PLAINTIFFS' EVAN SINGLETON AND VITO LOGRASSO'S BRIEF IN OPPOSITION TO DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S
MOTION FOR RECONSIDEERATION OF MARCH 21, 2016 ORDER WITH RESPECT TO *SINGLETON and LOGRASSO v. WORLD WRESTLING ENTERTAINMENT, INC.*

I.   INTRODUCTION

Defendant World Wrestling Entertainment, Inc.'s ("WWE") motion for reconsideration demonstrates a continued, stubborn refusal to recognize that Plaintiffs Evan Singleton and Vito LoGrasso allege that the injuries they have and continue to suffer are the long-term adverse health effects, specifically numerous permanent degenerative conditions, that result from repeated head injuries caused by sub-concussive and concussive blows. Mr. Singleton was diagnosed with a single concussion, but he "often wrestled several times per week and did not have adequate time to rest between matches and was encouraged to wrestle while injured . . . [and] suffered numerous injuries to the upper body, neck and head during his career" as a result. Second Amended Complaint (SAC) ¶ 95. He

was treated like a "crash test dummy." SAC ¶ 96. Mr. LoGrasso wrestled for WWE "up to five times a week." SAC ¶ 118. He "had no reason to believe that suffering repeated injuries to his head, neck, and spine could result in long-term illnesses, diseases, and injuries and . . . that the injuries he was receiving while performing for WWE could cause latent, long-term injuries." SAC ¶ 126. Mr. Singleton now "suffers from post-concussion symptoms including but not limited to headaches, severe migraines, memory loss, behavioral changes, amnesia, involuntary twitching, inability to concentrate, panic attacks, and severe depression," and Mr. LoGrasso suffers from depression, concussive syndrome, TMJ, headaches, and deafness and is permanently disabled. SAC ¶¶ 113, 140-48.

## II. LEGAL STANDARD

The standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)); *see also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "The manifest reason for this rule is to prevent piecemeal and wasteful re-litigation of issues and to promote order, fairness, finality and judicial efficiency." *Greene v. City of Norwalk*, 2016 WL 829864, at *2 (Mar. 1, 2016). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Moreover, arguments raised for the first time in motions

for reconsideration "[a]re not properly presented to the district court . . . [and] are waived." *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir.), *cert. denied sub nom. Phillips v. City of New York, N.Y.*, 136 S. Ct. 104 (2015).

III.  ARGUMENT

    A.  The Court's Ruling on Plaintiffs' Fraud by Omission Claim is Sound

        *1.  Singleton was harmed by WWE's fraudulent omissions*

WWE's argument that Singleton could not have been harmed since he never returned to the ring was expressly made by WWE in its original motion and reply. *See* WWE's Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint ("MTD Brief") at 8-10 (Dkt. 43-1); WWE's Reply Brief in Support of Motion to Dismiss the Claims in the SAC of Vito Lograsso and Evan Singleton ("MTD Reply") at 3 (Dkt. 59). It was rightly rejected by the Court.

Singleton's fraud-by-omission claim is not based solely on the injuries he suffered on September 27, 2012. Instead, he specifically alleges that he "suffered numerous injuries to the upper body, neck and head" before suffering his career-ending injury at the hands of Mr. Rowan in 2012. SAC ¶¶ 95, 100-03. This was the result of Mr. Singleton "wrestl[ing] several times per week" without "adequate time to rest between matches," all the while being "encouraged to wrestle while injured." SAC ¶ 95. He now alleges that WWE "failed to disclose and concealed information repeated a link between repeated concussive trauma and permanent degenerative neurological conditions." Memorandum of Decision Granting in Part and Denying in Part Defendant's Motion to Dismiss the Second Amended Complaint Brought by Plaintiffs Singleton and Lograsso ("MTD Opinion") at 45

(Dkt. 116). This Court already found these allegations plausible. *Id.* at 45-47, 62-65. WWE offers no reason why its original argument should be reconsidered now.

### 2. Plaintiffs properly pleaded fraud-by-omission claims.

Plaintiffs' fraud-by-omission claims are fundamentally different from the fraud and negligent misrepresentation claims this Court dismissed in that the particularity requirements of Rule 9(b) are far less stringent. "[A] plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007). *See also In re Nat. Hockey League Players' Concussion Injury Litig.*, 2015 WL 1334027, at *10 (citing *Sanford v. Maid–Rite Corp.*, 2014 WL 1608301, *12 (D. Minn. Apr. 21, 2014); *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1311 (D. Minn. 2014); *In re Hardieplank Fiber Cement Siding Litig.*, No. 12–md–2359, 2013 WL 3717743, at *7 (D. Minn. July 15, 2013)). Instead, Plaintiffs must "detail the omissions made, state the person responsible for the failure to speak, provide the context in which the omissions were made, and explain how the omissions deceived the plaintiff." *Frulla v. CRA Holdings, Inc.*, 596 F. Supp. 2d 275, 288 (D. Conn. 2009) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

In the instant case, Plaintiffs allege that

> WWE has known, or should have known, that wrestlers have been subjected to extremely dangerous conditions and blows at its direction.[19] Specifically, WWE was aware in 2005 and beyond that wrestling for the WWE and suffering head trauma would result in long-term injuries.[20] And it therefore should have, but never did,

warn Plaintiffs of the risks of concussions and other brain injuries associated with wrestling with WWE.

SAC ¶ 56. Plaintiffs then cite to numerous scientific studies in support of this claim. SAC ¶¶ 56-57, 66, 71. They also allege that WWE had a duty to disclose this information but failed to do so.

> (1) WWE had superior knowledge of the effects of brain injuries, (2) WWE assumed a duty to share that information with Plaintiffs when it employed doctors to monitor their health and evaluate their injuries during wrestling matches, (3) Plaintiffs relied on WWE and its medical personnel to determine whether they should return to the ring, (4) WWE concealed the risks of brain injuries from Plaintiffs to induce their continued participation in matches, and (5) Plaintiffs suffered long term brain injuries as a result of their continued participation in matches.

*See* SAC ¶¶ 6, 23-24, 31, 41, 51, 54-55, 60-61, 63-65, 67, 86, 89, 95, 130, 135, 137, 210, 226, 234. This is sufficient to give rise to Plaintiffs' fraud-based claims.

Oddly, WWE argues that numerous *statements* by Dr. Maroon, Vince and Linda McMahon, and other WWE employees cannot give rise to Plaintiffs' fraud *by omission* claims. But this misses the point. WWE knew about the findings by Dr. Omalu and others and failed to provide Plaintiffs with adequate warnings or protections.[1] This Court correctly found, consistent with the district court's

---

[1] WWE also argues that Singleton's fraud-by-omission claim is precluded by a presentation made by Dr. Maroon "to all talent training and performing in Florida, where Singleton was at the time, on the importance of telling medical staff if talent suspected a concussion and about the risk of returning to the ring before fully healed." Corrected Memorandum of Law in Support of Motion for Reconsideration of March 21, 2016, Order With Respect to *Singleton and Lograsso v. World Wrestling Entertainment, Inc.* ("Corrected Memo") at 4 n.4 (Dkt.120). However, as WWE admits, Dr. Maroon only told wrestlers to self report injuries and make sure they were fully healed before returning to the ring. Neither he nor WWE educated Singleton on the signs and symptoms of concussions, warned him of any risks of sub-concussive blows to the head, or identified any specific risks of repeated head injuries such as dementia or any of the other physical and mental illnesses afflicting Singleton.

ruling in the NHL concussion lawsuit, that is sufficient to state a fraud by omission claim. WWE's attempt to reargue the very points made in its original motion to dismiss and reply are simply an insufficient basis for reconsidering that ruling.

      **B.      The Court correctly determined that Plaintiff Lograsso had Plausibly Alleged Facts that Support Application of an Exception to the Connecticut Statute of Repose**

WWE's motion does not argue that there is newly discovered evidence or an intervening change in the law governing the tolling exceptions to the Connecticut statute of repose. It solely highlights the perceived inadequacies with this Court's opinion, and accordingly, it argues that there were clear errors of law or fact contained within the Court's reasoning. In its critique, WWE parses out snippets of this Court's opinion and fixates upon only those few statements to support its request for reconsideration. However, in addition to failing to appreciate and consider the entirety of this Court's well-reasoned analysis, WWE's motion is ultimately void of any argument establishing a manifest error of law or fact that would support its request for reconsideration. Rather, WWE has resorted to misrepresenting this Court's Opinion, the applicable law, and relevant facts. Accordingly, as this Court correctly concluded that Plaintiff LoGrasso has plausibly alleged facts that would support an exception to Connecticut's statute of repose, the instant motion must be Denied.

             *1.      The SAC Included Sufficient Allegations to Invoke the Continuing Course of Conduct Tolling Exception to the Statute of Repose*

As the Court correctly pointed out, each of the Connecticut cases upon which WWE relied upon to challenge LoGrasso's claim for a continuing duty on

the part of WWE were at the summary judgment stage of the case, after all discovery and factual development had been completed. MTD Opinion at 38 n.9. Unlike those cases, the motion before this Court was a motion to dismiss pursuant to Rule 12(b)(6). The Court correctly concluded that, when all allegations and inferences are decided in favor of LoGrasso, the SAC contains sufficient allegations to support tolling of the statute of repose under the continuing course of conduct exception. Namely, LoGrasso sufficiently pleaded that (1) WWE committed an initial wrong upon LoGrasso by failing to treat and educate him properly; (2) WWE owed a continuing duty to LoGrasso that was related to the original wrong[2]; and (3) WWE continually breached that duty. *See Witt v. St. Vincent's Med. Ctr.*, 746 A.2d 753, 762 (Conn. 2000).

WWE's challenges to LoGrasso's allegations and the Court's Opinion are illusory. As an initial matter, the Court rightfully concluded that WWE may and/or should "have had both the requisite initial and continuing concerns about the long-term health of its wrestlers such that it owed a continuing duty to warn those wrestlers about the long-term risks of head trauma sustained in the ring" no later than late-2005 or early-2006 when it began to implement its "Wellness Program." *See* MTD Opinion at 38-39; SAC ¶¶ 76-78. Nevertheless, LoGrasso received no education or training regarding sub-concussive and concussion blows or head trauma. SAC ¶¶ 136-139. Defendant curiously highlights that

---

[2] Importantly, WWE does not take issue with the Court's finding that a special relationship existed between WWE and LoGrasso that continued post-retirement. MTD Opinion at 42. Accordingly, LoGrasso has not included any further discussion on this determination and the continuing duty that WWE owed to LoGrasso because of that relationship.

**LoGrasso (1) was never diagnosed with a concussion during his entire tenure with WWE, and (2) never told WWE specifically that he was experiencing concussive-like symptoms. Corrected Memo at 17. However, such claims only further illustrate the lack of knowledge on the part of LoGrasso and lack of training and education by WWE about concussions and the repercussions and symptoms of head injuries and repeated head trauma. It was not until after his retirement when LoGrasso actually received any pamphlets or e-mails from the Wellness Program, and those of course still provided little to no information about concussions or brain trauma. SAC ¶ 148. Rather, it was WWE who had that knowledge, concern, and suspicion about concussions no later than 2005 when Dr. Omalu published his findings regarding CTE. SAC ¶ 66.**

**With that backdrop, WWE's claim to have not received adequate or actual notice of LoGrasso's head trauma is, at best, disingenuous as the instances of LoGrasso's head trauma were in plain view to the WWE as its members and doctors (1) sat ring side, (2) recorded and televised LoGrasso's fights, and (3) evaluated him with supposedly well-trained staff and doctors before and after fights. SAC ¶¶ 129-131. Not only was WWE aware of head trauma that LoGrasso received repeatedly, they celebrated and marketed the head blows and side-effects to its blood-thirsty audience. SAC ¶¶ 44-47. In one match that positioned LoGrasso against Regal in September 2006, the video of the match, which has been in Defendant's possession since it aired, shows LoGrasso (1) falling head first into steel steps that were ring side, (2) looking dazed and disoriented afterwards, (3) repeatedly holding his head with his hand, and (4) continuing to**

wrestle regardless. SAC ¶¶ 133-134. Accordingly, it rings quite hollow when WWE claims that there was no treatment, no suspicion, and no knowledge of LoGrasso's head injury at that time. Corrected Memo at pg. 18. In fact, the argument only further highlights the attempts by WWE to deny reality and continue with the same course of conduct to this day.

Finally, as pointed out by the Court, WWE continued to make public statements about its knowledge of CTE and its role, or lack thereof, in the deaths of former wrestlers while, at the same time, it touted the thoroughness and efficacy of its medical monitoring program. MTD Opinion at 39-40; SAC ¶¶ 69, 73, 80, 81, 82, 148. Following his retirement, LoGrasso relied on WWE's continuous public statements, WWE's (feigned) expressions of concern for former wrestlers, and the diligence and expertise of the highly touted Wellness Program that had been in contact with him, all to his detriment. SAC ¶¶ 140, 171, 172, 175, 187, and 189. These allegations contained within the SAC, when accepted as true, are more than sufficient for the Court to find that LoGrasso had plausibly pled the continuing course of conduct tolling exception to the statute of repose. Accordingly, WWE's Motion for Reconsideration must be denied.

### 2. The Court Correctly Concluded that the SAC Includes Sufficient Factual Allegations that Plausibly Invoke the Fraudulent Concealment Tolling Exception.

Similarly, WWE unsuccessfully challenges the Court's opinion that LoGrasso's SAC includes sufficient factual allegations to support the fraudulent concealment tolling exception to the statute of repose. The same facts and allegations discussed *supra* about WWE's affirmative statements, inaction, and nondisclosure also support tolling the statute of repose due to fraudulent

concealment. In order to toll the statute of repose for fraudulent concealment, LoGrasso must demonstrate that WWE

> (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the cause of action, (2) intentionally concealed those facts from the plaintiff, and (3) concealed those fact for the purpose of obtaining delay on the part of the plaintiff in filing a cause of action against the defendant.

*Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 912 A.2d 1019, 1033 (Conn. 2007). Intentional concealment does not necessarily require a showing of affirmative acts of concealment; rather, nondisclosure may be sufficient "when the defendant has a fiduciary duty to disclose material facts." *Id*. at 107.

To combat the Court's conclusions, WWE again takes umbrage with the idea that it had actual knowledge of LoGrasso's injuries. Corrected Memo at 20. Rather than citing to any allegations in the SAC, WWE conveniently summarizes its interpretation of the SAC. Indeed, WWE latches on to the Court's statement that "LoGrasso never alleges that he was diagnosed with a concussion during his entire tenure with WWE." *Id*. (citing MTD Opinion at 8). What has apparently been overlooked by WWE is that the lack of diagnosis is at the very center of LoGrasso's claims. Had WWE not dismissed or downplayed the scientific information in its possession about concussions and CTE, then WWE trainers and doctors would have properly recognized, evaluated, and diagnosed traumatic brain injuries suffered by wrestlers including LoGrasso. SAC ¶¶ 129-132. Had LoGrasso been educated and trained about concussions and CTE by WWE, he may have spotted his own symptoms and sought out a diagnosis and further treatment before sustaining further traumatic brain injuries from dangerous head

shots.³ SAC ¶¶ 125-126. Had WWE not concealed and ignored the long-term ramifications of repeated blows to the head, LoGrasso would not have believed his WWE trainers and doctors when they said that he could shower or shake off the concussive symptoms that he was experiencing during and after matches or simply take more B-12 shots. SAC ¶¶ 129-132.

LoGrasso fully admits that he was never formally *diagnosed* with a concussion by any WWE trainer or doctors, who were his only source of medical attention, during his tenure with WWE. However, it is clearly and repeatedly alleged that LoGrasso actually *suffered* concussions and brain trauma during his tenure with the WWE. SAC ¶¶ 130, 132-135. It is also alleged that WWE trainers and doctors specifically witnessed these concussive blows and the sustained head trauma to LoGrasso during various matches, and specifically during the ones identified in 2006, and did not properly treat, evaluate, diagnose, or educate LoGrasso despite the scientific evidence and knowledge in WWE's possession. SAC ¶¶ 132-135. Moreover, it is alleged that the LoGrasso displayed visible

---

³ As a last attempt, WWE attempts to claim that the SAC is devoid of allegations showing any due diligence on the part of LoGrasso to discover his cause of action earlier. Corrected Memo at 21. Nevertheless, the SAC details that LoGrasso left the WWE unaware of his condition or the long-term effects of repeated head trauma, began to self-treat headaches with aspirin while still unaware of their relationship to concussions, was forced to seek treatment to evaluate the progressive symptoms he was experiencing, and did not ultimately get diagnosed with concussive syndrome and a traumatic brain injury until 2015. SAC ¶¶ 138-146. Moreover, the SAC alleges that, due to his reliance on WWE's fraudulent concealment and omissions, LoGrasso did not seek out appropriate medical treatment and did not receive the necessary information that would have allowed him to discover his cause of action. SAC at ¶¶ 169-175. At this stage of the proceedings, these allegations are enough to plausibly show that LoGrasso was prevented from discovering his injury and cause of action against WWE and that he took reasonable steps after leaving WWE to ultimately discovery his injury and cause of action.

symptoms and signs of a concussion for WWE to recognize and acknowledge, given their knowledge and the special relationship that existed between WWE and its wrestlers, including LoGrasso. SAC ¶¶ 133-134. Defendant continues to rely on the use of misdirection by asserting the SAC states that none of LoGrasso's symptoms began until 2008. Corrected Memo at 20. On the contrary, it was the symptoms of LoGrasso's permanent and debilitating neurological disorder, which had still remained undiagnosed but can be identified in hindsight, that began to surface as early as 2008. SAC at ¶¶ 140-146. Indeed, the concussive symptoms displayed by LoGrasso during his matches were on full display to and were fully known by the WWE, who was sitting ring side. SAC at ¶¶ 133-134.

Moreover, as the Court correctly determined, the SAC sufficiently alleges that WWE also had actual knowledge about the research linking repeated head trauma with permanent degenerative disorders and that such brain trauma and such permanent conditions could result from wrestling. MTD Opinion at 45; SAC ¶¶ 56-59, 68-72. Accordingly, WWE had knowledge of the scientific literature and concurrent knowledge of LoGrasso's repeated head trauma and concussive symptoms. Taken together, it is clear that LoGrasso sufficiently alleges that WWE's public statements and medical inaction were, in fact, attempts by WWE to affirmatively conceal the LoGrasso's cause of action and delay its discovery. For this reason, the Court correctly determined that LoGrasso properly invokes the fraudulent concealment tolling exception to the statute of repose in the SAC, and WWE's motion must be denied.

IV.   CONCLUSION

In short, WWE's motion for reconsideration is an attempt "to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. It fails to raise any "controlling decisions or data that the court overlooked." *Id*. (citing *Schonberger*, 742 F. Supp. at 119; *Adams*, 686 F. Supp. at 418). Thus, there is no reason for this Court to reconsider its decision to deny WWE's motion to dismiss Plaintiffs' fraud by omission claims, based on Rule 9(b) or Connecticut's statutes of limitations and repose, and Plaintiffs respectfully request that this Court deny WWE's motion for reconsideration.

Dated:  May 9, 2016

Respectfully Submitted,

*s/ Michael J. Flannery*
**Michael J. Flannery**
**CUNEO GILBERT & LADUCA, LLP**
**7733 Forsyth Boulevard, Suite 1675**
**St. Louis, MO  63105**
**Telephone:       (314) 226-1015**
**Facsimile: (202) 789-1813**
**mflannery@cuneolaw.com**

**Charles J. LaDuca**
**CUNEO GILBERT & LADUCA, LLP**
**8120 Woodmont Avenue, Suite 810**
**Bethesda, MD 20814**
**Telephone: (202) 789-3960**
**Facsimile: (202) 789-1813**
**charles@cuneolaw.com**

**Konstantine W. Kyros**
**KYROS LAW OFFICES**
**17 Miles Rd.**
**Hingham, MA 02043**
**Telephone: (800) 934-2921**
**Facsimile: 617-583-1905**
**kon@kyroslaw.com**

**William M. Bloss**
**Federal Bar No: CT01008**
**KOSKOFF, KOSKOFF & BIEDER**
**350 Fairfield Avenue**
**Bridgeport, CT 06604**
**Telephone: 203-336-4421**
**Facsimile: 203-368-3244**

**Robert K. Shelquist**
**Scott Moriarity**
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
**100 Washington Ave., S., Suite 2200**
**Minneapolis, MN 55401-2179**
**Telephone: (612) 339-6900**
**Facsimile: (612) 339-0981**
**rkshelquist@locklaw.com**
**samoriarity@locklaw.com**

**Harris L. Pogust, Esquire**
**Pogust Braslow & Millrood, LLC**
**Eight Tower Bridge**
**161 Washington Street Suite 940**
**Conshohocken, PA 19428**
**Telephone: (610) 941-4204**
**Facsimile: (610) 941-4245**
**hpogust@pbmattorneys.com**

**Erica Mirabella**
**CT Fed. Bar #: phv07432**
**MIRABELLA LAW LLC**
**132 Boylston Street, 5th Floor**
**Boston, MA 02116**
**Telephone: 617-580-8270**
**Facsimile: 617-580-8270**
**Erica@mirabellaLLC.com**

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2016, a copy of the foregoing Opposition to WWE's Motion for Reconsideration was served via this Court's electronic case filing system.

.

*s/Michael J. Flannery*
**Michael J. Flannery**
