UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, RYAN SAKODA, and MATTHEW ROBERT WIESE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>: 3:15-cv-001074 (VLB)<br>: Lead Case<br>:<br>:<br>:<br>:<br>: |
| EVAN SINGLETON and VITO LOGRASSO,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>: 3:15-CV-00425 (VLB)<br>: Consolidated Case<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM IN SUPPORT OF SECOND EMERGENCY MOTION TO COMPEL DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S RESPONSES TO PLAINTIFFS EVAN SINGLETON AND VITO LOGRASSO'S CORRECTED <u>FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL SUMMARY ............................................................................................. 1

III. LEGAL STANDARD ................................................................................................. 2

IV.  ARGUMENT ............................................................................................................. 4

    A.   The Proper Scope of Discovery ................................................................... 4

        1.   The Relevant Time Period ................................................................ 4

        2.   The Viability of Mr. Singleton's Claim ........................................... 5

    B.   WWE's Objections ....................................................................................... 7

        1.   Documents Related to WWE Policies, Procedures, Protocols, and Training (Request Nos. 1, 6, 7, 8, 9, 15, 16, 18, 21, 27, 29, 31, 32, 34, 35, 36, and 37) ................................. 7

        2.   Internal E-mails, Meeting Minutes, Notes (Request Nos. No. 2, 4, 5, 14, and 22) .................................................................. 10

        3.   The Health and Safety of Other Wrestlers (Request Nos. 13, 14, 22, 34, 35) ............................................................................. 11

        4.   Documents Related to Bill DeMott (Request Nos. 38, 39) ....... 12

        5.   Plaintiffs' Medical Records (Request No. 19) ........................... 12

    C.   The Timeliness of WWE's Responses ................................................... 13

V.   CONCLUSION ....................................................................................................... 14

I.  INTRODUCTION

After receiving 30 days additional time to respond to Plaintiffs Evan Singleton and Vito LoGrasso's first requests for production, Defendant World Wrestling Entertainment, Inc. ("WWE") provided a paltry and untimely document production based on improper and unsupported objections.  *See generally* Ex. A, WWE's Objections and Responses to the Corrected First Requests for Production of Documents ("RFP Responses").  WWE's objections, which ignore the basic principles of openness and relevance that govern civil discovery, are based on a highly restrictive reading of this Court's January 15, 2016 Order partially lifting a stay of discovery.  The appropriate way to proceed is before this Court, so the issues can be promptly resolved and avoid a scenario where Plaintiffs do not have documents in adequate time to prepare for upcoming depositions.

II.  FACTUAL SUMMARY

Plaintiffs served requests for production on WWE on February 12, 2016.  *See* Ex. A, RFP Responses.[1]  Pursuant to agreement of the parties, the deadline for WWE's responses was extended, and WWE served its written responses on April 15, 2016.  *See* Consent Motion for Extension of Time (Dkt. 113); Order Granting Same (Dkt. 115); Declaration of Katherine Van Dyck ("Van Dyck Dec.") at ¶ 3.  On April 19, 2016, Plaintiffs asked that documents be directed to Katherine Van Dyck's office in Washington, DC.  *Id*.  WWE then sent those documents via certified mail, rather than a more expedient method such as FedEx or even

---

[1] **Plaintiffs inadvertently served a draft version of these requests on February 8, 2012.**

electronic transmission such as Dropbox, on April 20, 2016, and they did not arrive at Ms. Van Dyck's office until 4:15 pm on April 25, 2016. *Id*. After reviewing the documents, Plaintiffs informed WWE on April 28, 2016 that a conference was required to discuss a number of deficiencies in the production. *Id*. at ¶ 4. However, WWE insisted that the agenda for the conference also include other topics and that certain counsel it deemed "decision makers" participate, causing a delay in scheduling,[2] and the conference was ultimately held on May 10, 2016. *Id*. at ¶¶ 4-5.  During that conference, counsel learned that WWE was withholding documents based on unfounded relevancy and privacy objections, and the parties were unable to reach any compromise or resolution.  *Id*. at ¶ 5.  The following day, a telephonic conference was held with this Court's clerk, and the possibility of a discovery conference with the Court was discussed. *Id*.  While the parties are now scheduled to appear before this Court on May 19, 2016, Plaintiffs file the instant motion as a result of the current discovery schedule, of which only three weeks remain.

III.    LEGAL STANDARD

"The Supreme Court has acknowledged the 'fundamental maxim of discovery that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."'" *S.E.C. v. Rajaratnam*, 622 F.3d 159, 180-81 (2d Cir. 2010); (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist.*

---

[2] WWE has, throughout this litigation, delayed teleconferences with Plaintiffs as a result of its refusal to accept representations that various attorneys for Plaintiffs have the proper authority to participate in the call.  Van Dyck Dec. at ¶ 4.

*Court for the S. Dist. of Iowa*, 482 U.S. 522, 540 n.25 (1987)). As a result, the scope of permissible discovery is quite broad. *Marchello v. Chase Manhattan Auto Fin.*, 219 F.R.D. 217, 218 (D. Conn. 2004); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment"). The recently amended Federal Rules of Civil Procedure define it as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In the Second Circuit, "this obviously broad rule is liberally construed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). "If a factual question must be answered in order for a plaintiff to prevail on a claim or for a defendant to prevail on a defense, then information that may be helpful in answering that question is relevant for discovery purposes." *Ramsey v. NYP Holdings, Inc.*, No. 00-cv-3478, 2002 WL 1402055, at *5 (S.D.N.Y. 2002). If a party resists or objects to relevant discovery requests, Rule 37 of the Federal Rules of Civil Procedure provides that the other party, upon reasonable notice to other parties and all persons affected

thereby, may apply for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(3)(B).

IV. **ARGUMENT**

    A. <u>The Proper Scope of Discovery</u>

This Court has opened discovery on the following topics:

> (1) whether WWE had or should have had knowledge of and owed a duty to disclose to those plaintiffs the risks of long-term degenerative neurological conditions resulting from concussions or mild traumatic brain injuries to wrestlers who performed for WWE in the year 2005 or later, (2) whether and when WWE may have breached that duty, and (3) whether such a breach, if any, continued after Singleton and LoGrasso ceased performing for WWE."

Order Partially Lifting Stay of Discovery ("Discovery Order") (Dkt. 107). WWE attempts to narrow the parameters of Rule 26 by only producing documents that discuss the precise topics outlined above, rather than any documents that are *relevant to* those topics. WWE also invokes the new proportionality prong of Rule 26 in support of its position, but WWE is a large and profitable organization with significant resources to respond to the 42 requests propounded on it. The documents Plaintiffs seek are directly relevant to their fraud by omission claims and the topics set forth in the Discovery Order and will significantly advance the case, especially given that the documents already produced show that WWE was concealing the long-term neurological degenerative effects of concussions.

        1. *The Relevant Time Period*

The Discovery Order limits discovery, in part, to "whether WWE had or should have had knowledge of and owed a duty to disclose to those plaintiffs the risks of long-term degenerative neurological conditions resulting from concussions or mild traumatic brain injuries *to wrestlers who performed for WWE*

*in the year 2005 or later.*" It does not limit discovery to knowledge acquired by WWE in the year 2005 or later. As a result, Plaintiffs defined the Relevant Time Period for their document requests as "2000 to the present." Nonetheless, WWE again takes a more restrictive reading of the Discovery Order and refuses to produce anything that pre-dates the year 2005. Ex. A, RFP Responses at 2. Clearly, such documents have bearing on what WWE knew regarding the long-term risks of sub-concussive and concussive blows and should have disclosed to wrestlers, including Plaintiffs, who performed from 2005 to the present, and there is no basis for this objection.

Even if WWE's interpretation of the Discovery Order is correct and discovery is limited to documents related to what WWE knew in 2005 or later, it is incomprehensible that a policy established in or knowledge held in 2005 developed out of thin air and in a bubble beginning on January 1, 2005. Any policies in place during 2005, and all information relevant to procedures undertaken in 2005, were a direct result of information obtained prior to 2005 and actions undertaken and not undertaken prior to 2005. Plaintiffs have sufficiently limited the scope of their requests to not unduly burden WWE by only requesting relevant information from 2000 to the present, and WWE offers no reason that it cannot comply with this definition.

2. *The Viability of Mr. Singleton's Claim*

WWE's refusal to cooperate in discovery has largely been based on its production of a video that it says "conclusively established that WWE informed Singleton and all other talent about the very risks that he alleged were fraudulently concealed from him." Opposition to First Motion to Compel at 10

(Dkt. 137). First, Mr. Singleton denies ever seeing this presentation. Ex. B, Deposition of Evan Singleton ("Singleton Dep.") at 18:1-3; 18:20-19:3, 167:16-19, 275:5-15, 276:1-6 (May 11, 2016). Second, WWE has failed to produce any sign-in sheets showing Mr. Singleton's attendance, instead asking the Court to bar any further discovery into Mr. Singleton's claim based on inadmissible hearsay contained in an e-mail. Ex. C, E-mail from Nicole Dorazio. Third, Mr. Singleton denies receiving any other information from WWE regarding head injuries, concussions, or their long term effects. Ex. B, Singleton Dep. at 283:3-13. Fourth, Dr. Maroon's presentation only tells wrestlers to self-report injuries and make sure they are fully healed before returning to the ring. *See* Presentation by Dr. Maroon (Dkt. 132-2) (manually submitted by WWE). Fifth, documents produced by WWE directly contradict its claim that Mr. Singleton was not cleared and did not return to the ring. Ex. D, E-mail Re: NXT Visit at 2 (Feb. 4, 2013) ("■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■"). As a result, the matter of whether WWE educated Mr. Singleton on the signs and symptoms of concussions, warned him of any risks of sub-concussive blows to the head, or identified any specific risks of repeated head injuries such as dementia or any of the other physical and mental illnesses afflicting Mr. Singleton remains in dispute.[3] In any

---

[3] That the parties are even engaging in this factual dispute is remarkably premature. The discovery period has not ended, and these are not summary judgment motions. In any event, the dispute highlights the importance of discovery in the civil litigation process.

event, "there is no reason to require, as a prerequisite to discovery, that the discovering party demonstrate that he is likely to prevail on the factual dispute." *Ramsey*, 2002 WL 1402055, at *5. As a result, WWE's production of allegedly conclusive evidence is not a proper basis for withholding discovery.

    B.    <u>WWE's Objections</u>

Given the number of responses that are in dispute, Plaintiffs have grouped the individual requests into categories, which are addressed below. *See* L.R. Civ. 37(b) ("Where several different items of discovery are in dispute, counsel shall, to the extent possible, group the items into categories in lieu of an individual listing of each item.").

        1.    *Documents Related to WWE Policies, Procedures, Protocols, and Training (Request Nos. 1, 6, 7, 8, 9, 15, 16, 18, 21, 27, 29, 31, 32, 34, 35, 36, and 37)*

These requests seeks documents related to WWE policies and procedures regarding concussions, including the Talent Wellness Program; the reporting of injuries, the return of wrestlers to the ring after suffering injuries and the scripting of their performances; ImPACT Testing; training of medical personnel; the use of helmets at training facilities; and the banning of any wrestling moves. WWE's responses to these requests are minimal at best. It has provided a number of videos showing presentations made to wrestlers regarding a number of health issues including concussions, and it has provided .pdf versions of the PowerPoint slideshows used during those presentations. WWE has not produced written policies in responses to these requests, nor has it made any meaningful production of internal or external communications, meeting minutes, calendar entries, telephone logs, notes, or any other documents regarding its

concussion policies or the process by which WWE arrived at those policies. It has also not made any meaningful production of documents regarding the appointment of Dr. Joseph Maroon as its Medical Director.

WWE's primary basis for withholding these documents is a restrictive interpretation of this Court's Discovery Order. According to WWE, it is withholding documents that discuss concussions if the documents do not also discuss "the risks of long-term degenerative neurological conditions resulting from concussions or mild traumatic brain injuries to wrestlers." Van Dyck Dec. at ¶ 5. Yet the process by which WWE arrived at its policies related to concussions certainly involved a discussion somewhere within the company regarding the risks of concussions, whether those risks necessitated the creation of a policy in the first place, and the steps WWE took to warn its wrestlers prevent repeated concussions and other head injuries.

Central among the documents Plaintiffs seek are any related to the creation and implementation of the Talent Wellness Program. Ex. A, RFP Responses at 21 (Request No. 29). WWE refuses to produce documents responsive to Plaintiffs' Request because it claims the Talent Wellness Program was not created to address concerns about concussions. Van Dyck Dec. at ¶ 5. It further objects that the Request is overbroad and unduly burdensome. Ex. A, RFP Responses at 21. WWE's objections are belied by it owns publicity.

In 2010, counsel for WWE told a reporter that the Talent Wellness Program was created, in part, to "monitor head injuries. Ex. E, Heavyweight Champions at 3. The website for the Talent Wellness Program also states that it covers ImPACT

testing and in fact sets forth the details of WWE's Concussion Management Program. Ex. F, Talent Wellness Program Summary; Ex. G, WWE & ImPACT Concussion Management Program. Moreover, WWE has employed a noted neurosurgeon, Dr. Maroon, to implement the program, indicating that WWE places a special importance on the "head injury" prong of the Talent Wellness Program. Ex. F, Talent Wellness Program Summary.

This Court already recognized the Talent Wellness Program's relevance in its ruling on WWE's motion to dismiss:

> [T]he WWE is alleged to have created its Wellness Program in 2006 on the advice of its attorney after the deaths of several former wrestlers from drug and alcohol abuse. WWE's attorney is alleged to have recommended to head this Program Doctor Maroon, a noted neurosurgeon and head injury specialist for the NFL, who, together with a colleague, invented the ImPACT concussion test. [SAC ¶ 76, n. 26]. *This fact alone, indeed to WWE's credit, plausibly suggests WWE had knowledge causing it to have an early and strong concerns about the health effects of wrestling and the long-term neurological health of WWE wrestlers*.

Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Second Amended Complaint at 39 (Dkt. 116) (emphasis added). Clearly, this program, and WWE's other policies and procedures related to concussions, are directly relevant to the topics set forth in this Court's Discovery Order and should be produced.

With respect to its claim of undue burden, WWE "must do more than "simply intone [the] familiar litany that the [requests] are burdensome, oppressive or overly broad." *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 70-71 (D. Conn. 2004) (citing *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)). WWE

"bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded by the federal discovery rules, each [request] is not relevant or how each request is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Klein v. AIG Trading Grp. Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (quoting *Compagnie*, 105 F.R.D. at 42). In the instant case, the documents requested are presumably kept within the ordinary course of business and are easily retrievable from electronic servers or other means. The Requests are specifically tailored to bear relevance to Plaintiffs' claims and the burden Plaintiffs bear to prove their fraud by omission claims.

        2.    *Internal E-mails, Meeting Minutes, Notes (Request Nos. No. 2, 4, 5, 14, and 22)*

These Requests seek a variety of documents related to the "risk, diagnosis, management, or treatment of sub-concussive blows to the head, concussions, brain injuries, and long term, degenerative neurological problems, including CTE." Ex. A, RFP Responses at 4-5. WWE raises a number of objections, but its chief complaint seems to relate to the Requests' relevance to the topics outlined in the Discovery Order. Again, WWE represented that it is not producing documents related to concussions unless those documents also discuss "long term, degenerative neurological problems" associated therewith. Van Dyck Dec. at ¶ 5. Single concussion incidents are directly relevant to Plaintiffs' claims, and fall within the scope of the Court's Discovery Order, as multiple, individual concussions equate to repeated concussions. Likewise, sub-concussive blows can lead to minor traumatic brain injuries. Thus, any discussions amongst WWE

executives, employees, and/or independent contractors regarding the "risk, diagnosis, management, or treatment of sub-concussive blows to the head, concussions, [and/or] brain injuries" have bearing on what WWE knew about the long-term risks of concussions during the Relevant Time Period.

### 3. The Health and Safety of Other Wrestlers (Request Nos. 13, 14, 22, 34, 35)

These requests relate to what WWE knew about the incidence of concussions and head injuries in other wrestlers and what information was provided to those wrestlers. WWE objects to their relevancy and raises privacy concerns. With respect to relevancy, any information WWE had regarding the incident rate of concussions and the effects of those concussions on its other wrestlers bears on what knowledge WWE had regarding the risks Plaintiffs faced when entering the ring. Any information WWE gave to other wrestlers regarding the risks of concussions reflects the knowledge WWE had and should have shared with Plaintiffs at the time. Finally, any documents related to OSHA bear on what information WWE was instructed to share with wrestlers, including Plaintiffs.

Regarding privacy, Plaintiffs understand WWE's concerns about disseminating the medical information of non-parties. However, WWE has not identified any specific privilege that attaches to records in its possession, custody, or control. In addition, WWE has chosen the most restrictive manner of protecting wrestlers' identities. Here, the Court has entered a protective order which allows for the designation of certain information as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS EYES ONLY." *See* Standing Protective Order at ¶

2 (Dkt. 27). Additionally, WWE offers no reason that it cannot simply redact the names and any other identifying information from the records in its possession. As a result, its objections based on privacy must fail. *See In re Rezulin Products Liab. Litig.*, No. 00 CIV 2843(LAK), 2002 WL 418028, at *1 (S.D.N.Y. Mar. 18, 2002) (permitting the production of relevant third party medical information with appropriate redactions).

    4.    *Documents Related to Bill DeMott (Request Nos. 38, 39)*

Mr. DeMott was "the head Coach of the WWE Performance Center" in Orlando, Florida when Evan Singleton was training and injured there. *See* LinkedIn Profile for Bill DeMott, *available at* https://www.linkedin.com/in/bill-demott-309487a0 (last accessed May 17, 2016); Second Amended Complaint ("SAC") ¶ 97, 99. He encouraged Mr. Singleton to return to the ring after his career-ending injury in September 2012. SAC ¶¶ 107-08. He also has direct knowledge regarding Mr. Singleton's training, the circumstances under which Mr. Singleton was injured, the treatment he received thereafter, and the circumstances under which he was cleared to return to practice. Ex. D, E-mail Re: NXT Visit at 2 (discussing ▮▮▮▮▮▮▮▮▮▮); SAC ¶¶ 97, 99, 107, 108 (discussing Mr. DeMott's involvement with WWE and Mr. Singleton). As a result, WWE has no basis for withholding documents responsive to these Requests.

    5.    *Plaintiffs' Medical Records (Request No. 19)*

On January 28, 2016 (just one day after serving Plaintiffs with its own discovery requests), WWE began serving Plaintiffs' medical providers with third-party subpoenas. *See* Ex. H, Subpoenas Duces Tecum; Van Dyck Dec. at ¶ 6.

Plaintiffs accordingly requested – through document request, through e-mail, over the phone, and in person – that WWE produce any of Plaintiffs' medical records in its possession, custody, or control.  Ex. A, RFP Responses at 16; Van Dyck Dec. at ¶ 6.  To date, WWE has refused to produce the medical records it received pursuant to subpoena, aside from those produced by Dr. Mattingly, Dr. Rogers-Neame, and Dr. Adams.  *Id.*  In support, WWE points to *Tota v. Bentley* in support of the position that it can withhold these documents.  No. 06-cv-514S, 2008 WL 3540375, at *5 (W.D.N.Y. Aug. 12, 2008).  However, that case involved a party seeking production of its own medical records who had not submitted any document requests for those records.  *Id.*  That is obviously not the case here.  The medical records WWE has received – and any other documents WWE subpoenaed that are responsive to Plaintiffs' document requests – are in WWE's possession, and it is obligated to produce them.  *See Umbach v. Carrington Inv. Partners (US), LP*, No. 08-cv-484, 2009 WL 3287537, at *10 (D. Conn. Oct. 9, 2009) (requiring parties to produce relevant documents received pursuant to non-party subpoenas).  Plaintiffs have offered to discuss some cost-sharing arrangement to ameliorate the expense of obtaining the records, and WWE's outright refusal to produce them is unreasonable and without support.  Van Dyck Dec. at ¶ 6.

    C.    <u>The Timeliness of WWE's Responses</u>

"The spirit of the discovery rules does not in any case support meticulous objections and evasive answers from experienced counsel."  *Falk v. United States*, 53 F.R.D. 113, 115 (D. Conn. 1971).  As set forth above, Plaintiffs did not receive WWE's document production until April 25, 2016, leaving them one month in which to confer with WWE regarding their objections, compel proper

responses, review WWE's production, and conduct depositions using those documents. When Plaintiffs consented to an extension of WWE's response deadline to April 19, 2016, WWE's evasive responses and additional delay, as well as WWE's refusal to produce witnesses or non-party documents, were not what Plaintiffs envisioned. Plaintiffs therefore renew their request to extend the deadline by 45 days to allow sufficient time to review any additional productions by WWE and schedule depositions in a manner that is convenient for the witnesses and the parties.

## V. CONCLUSION

In sum, WWE produced 942 documents to Plaintiffs on April 25, 2016. Van Dyck Dec. at ¶ 3. A number of these documents are duplicates, and a vast majority of Plaintiffs' relevant and proportional requests remain unanswered. *Id*. For all the reasons and those set forth above, Plaintiffs respectfully request that this Court grant its motion and compel WWE to provide documents responsive to the requests detailed above for the time period defined in Plaintiffs' requests.

Dated:  May 17, 2016                    Respectfully Submitted,

*s/ Michael J. Flannery*
Michael J. Flannery
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO  63105
Telephone:  (314) 226-1015
Facsimile: (202) 789-1813
mflannery@cuneolaw.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

charles@cuneolaw.com

**Konstantine W. Kyros**
**KYROS LAW OFFICES**
**17 Miles Rd.**
**Hingham, MA 02043**
**Telephone: (800) 934-2921**
**Facsimile: 617-583-1905**
**kon@kyroslaw.com**

**William M. Bloss**
**Federal Bar No: CT01008**
**KOSKOFF, KOSKOFF & BIEDER**
**350 Fairfield Avenue**
**Bridgeport, CT 06604**
**Telephone: 203-336-4421**
**Facsimile: 203-368-3244**

**Robert K. Shelquist**
**Scott Moriarity**
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
**100 Washington Ave., S., Suite 2200**
**Minneapolis, MN 55401-2179**
**Telephone: (612) 339-6900**
**Facsimile: (612) 339-0981**
**rkshelquist@locklaw.com**
**samoriarity@locklaw.com**

**Harris L. Pogust, Esquire**
**Pogust Braslow & Millrood, LLC**
**Eight Tower Bridge**
**161 Washington Street Suite 940**
**Conshohocken, PA 19428**
**Telephone: (610) 941-4204**
**Facsimile: (610) 941-4245**
**hpogust@pbmattorneys.com**

**Erica Mirabella**
**CT Fed. Bar #: phv07432**
**MIRABELLA LAW LLC**
**132 Boylston Street, 5th Floor**
**Boston, MA 02116**
**Telephone: 617-580-8270**
**Facsimile: 617-580-8270**
**Erica@mirabellaLLC.com**
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2016, a copy of the foregoing Memorandum in Support of Plaintiffs' First Motion for Compel was served via this Court's electronic case filing system.

>  *s/Michael J. Flannery*
>  Michael J. Flannery