# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RUSS McCULLOUGH, *et al.*, | : | No. 3:15-cv-01074 (VLB) |
| | : | Lead Case |
| Plaintiffs, | : | |
| | : | |
| *vs.* | : | |
| | : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| EVAN SINGLETON and VITO LOGRASSO, | : | No. 3:15-cv-00425 (VLB) |
| | : | Consolidated Case |
| Plaintiffs, | : | |
| | : | |
| *vs.* | : | |
| | : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S
REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
OF MARCH 21, 2016 ORDER WITH RESPECT TO
*SINGLETON and LoGRASSO v. WORLD WRESTLING ENTERTAINMENT, INC.***

**TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | Plaintiffs' Opposition Misrepresents the Pleadings and the Governing Law | 1 |
| | | 1. Plaintiffs Have Abandoned the Basis For Their Allegation that WWE Knew in 2005 of the Risks of Long-Term Degenerative Neurological Conditions From Wrestling | 1 |
| | | 2. Plaintiffs Misrepresent Governing Second Circuit Law On the Pleading Standard for Fraud By Omission | 4 |
| | B. | Singleton Does Not and Cannot Dispute that He Never "Re-Entered" the Ring After His Alleged Concussion | 5 |
| | C. | Plaintiffs Do Not Respond to WWE's Argument that the Only Three Facts Identified As Pleading the "Who" and "When" Necessary to Satisfy Rule 9(b) Cannot Be Fraudulent Under the Court's Own Findings | 6 |
| | D. | Plaintiffs Make No Response to WWE's Argument that There Are No Plausible Allegations of Fraudulent Intent | 8 |
| | E. | Plaintiffs Fail to Demonstrate Any Plausible Basis that WWE Had Actual Knowledge of LoGrasso's Alleged Head Injuries, Which Precludes Continuing Course of Conduct or Fraudulent Concealment Tolling | 9 |

## TABLE OF AUTHORITIES

### Cases

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................................... 3

*Citino v. Redevelopment Agency*, 51 Conn. App. 262, 721 A.2d 1197
    (Conn. App. 1998) ................................................................................................ 8

*Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84,
    912 A.2d 1019 (Conn. 2007) ................................................................................ 9

*Ferber v. Travelers Corp.*, 802 F. Supp. 698 (D. Conn. 1992) .................................... 1

*Frulla v. CRA Holdings, Inc.*, 596 F. Supp. 2d 275 (D. Conn. 2009) ......................... 5

*Hernandez v. Cirmo*, 67 Conn. App. 565, 787 A.2d 657 (Conn. App. 2002) ............. 10

*Lami v. Stahl*, No. 3:05cv1416(MRK), 2007 WL 3124834
    (D. Conn. Oct. 25, 2007) ................................................................................. 6-7

*Maio v. Aetna*, 221 F.3d 472 (3d Cir. 2000) ................................................................ 6

*McClain v. Pfizer, Inc.*, No. 3:06-cv-1795(VLB), 2008 WL681481
    (D. Conn. Mar. 7, 2008) ...................................................................................... 7

*Neuhaus v. DeCholnoky*, 280 Conn. 190, 905 A.2d 1135 (Conn. 2006) ..................... 9

*Rose v. City of Waterbury*, No. 3:12cv291(VLB), 2013 WL 1187049
    (D. Conn. Mar. 21, 2013) .................................................................................... 2

### Rules

Fed. R. Civ. P. 11 .................................................................................................... 12

### Other

5C Wright & Miller, Federal Practice and Procedure § 1364 (3d ed.) ....................... 6

## I.     INTRODUCTION

Through the serial abandonment of prior positions and recently-exposed perjury of Plaintiff Vito LoGrasso, Plaintiffs' Opposition (Dkt. 128) to WWE's Motion for Reconsideration (Dkt. 118) presents no argument against dismissal of the sole remaining claim of fraud by omission.

## II.     ARGUMENT

A.   **Plaintiffs' Opposition Misrepresents the Pleadings and the Governing Law**

   1.   **Plaintiffs Have Abandoned the Basis For Their Allegation that WWE Knew in 2005 of the Risks of Long-Term Degenerative Neurological Conditions From Wrestling**

Plaintiffs have now abandoned the pled basis for the key allegation underlying their fraud by omission claim "that WWE was aware 'in 2005 and beyond' that wrestling for the WWE and suffering head trauma 'would result in long-term injuries.'" MTD Opinion at 9. As the Court noted in the MTD Opinion, this "allegation cites a link to an internet article on the website of the Mayo Clinic regarding the causes of concussions that is no longer available." *Id.* WWE attached to its Opening Brief (Dkt. 118-1) a printout of the referenced article obtained through the "Wayback Machine" website, and that article says nothing about a link between brain injury and long-term neurodegenerative disease like CTE either in general or specifically in connection with professional wrestling. *See* Opening Brief at 18 n.11. The actual document, not Plaintiffs' false characterization of it, controls. *See Ferber v. Travelers Corp.*, 802 F. Supp. 698, 702 (D. Conn. 1992) ("[T]o the extent that the written document contradicts the allegations in the complaint, the former controls.").

Thus, Plaintiffs' Opposition attempts to morph the basis for the allegation, claiming for the first time that WWE had "knowledge, concern, and suspicion about concussions no later than 2005 when Dr. Omalu published his findings regarding CTE."  Opposition at 8 (citing SAC ¶ 66).[1]  Paragraph 66 of the SAC, however, does not say one word about WWE having "knowledge, concern, and suspicion" about anything.  Rather, Paragraph 66 of the SAC merely refers to the publication of Dr. Omalu's findings of CTE in the brain of Pittsburgh Steeler Mike Webster in *Neurosurgery* in July 2005.  There is no allegation in that paragraph or elsewhere in the SAC that WWE had actual knowledge of the Omalu article in 2005.

In reality, the SAC alleges that "the risks associated with sports in which athletes suffer concussive and sub-concussive blows have been known for decades <u>to the medical community</u>," but not to an entertainment company like WWE.  *See* SAC ¶ 57 (emphasis added).  Likewise, it is generally alleged that "WWE has known <u>or should have known</u> for decades that repeated concussive and sub-concussive impacts substantially increase the probability that a wrestler will develop a permanent, degenerative brain disease."  *Id.* ¶ 3 (emphasis added).  As the Court noted in the MTD Opinion, the allegation that WWE "should have known" about such studies "undermin[es] the claim that WWE 'was aware' of the

---

[1] Such an attempt to effectively amend the pled basis for Plaintiffs' fraud by omission claim through briefing on a motion to dismiss is not permitted.  *See Rose v. City of Waterbury,* No. 3:12cv291(VLB), 2013 WL 1187049, at *1 (D. Conn. Mar. 21, 2013) (Bryant, J.) ("[I]t is well established that '[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.'").

2

medical information actually concealed." MTD Opinion at 9 (citing SAC ¶ 3).

There are, therefore, no facts pled in the SAC plausibly demonstrating that WWE knew about the "risks of long-term degenerative neurological conditions resulting from concussions or mild traumatic brain injuries to wrestlers" in 2005. As the Court found in the MTD Opinion, "[e]lsewhere, the Complaints cite to studies conducted in 2009 and 2010 and findings in 2007 that former wrestlers may have suffered from CTE." *Id.* By the time of the publication of the reported findings that Chris Benoit was diagnosed with CTE in September 2007, however, LoGrasso was not performing for WWE.[2] Because the SAC does not plausibly demonstrate that WWE actually knew of facts that LoGrasso was at risk for long-term degenerative neurological conditions when he performed for WWE, LoGrasso's fraud by omission claim fails.

The 2005 Omalu article (Ex. 2) could not serve as the alleged basis of WWE's actual knowledge for two additional reasons. First, the Omalu article dealt only with concussions in professional football.[3] The conclusion of the article states that the prevalence and mechanisms of possible adverse outcomes had not been sufficiently studied and ultimately concludes that the findings do not even confirm a causal link between pro football and CTE, let alone anything to do with professional wrestling. Such qualified statements in the context of a novel study about one football player regarding admittedly nascent science are

---

[2] The dates that LoGrasso performed for WWE are integral to the SAC and consequently the Court can consider the May 16, 2007 termination letter (Ex. 1) on this Motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[3] The 2005 Omalu article is integral to the SAC and, therefore, may be considered in connection with this Motion. *See Chambers*, 282 F.3d at 153.

3

the antithesis of a known fact necessary to support a fraud charge.

Second, Plaintiffs allege that injuries "result from repeated head injuries caused by sub-concussive and concussive blows." Opposition at 1 (emphasis added). Just as the Mayo Clinic article did not mention long-term degenerative neurological conditions, the Omalu article does not even use the word "sub-concussive" to describe anything. It, therefore, could not have provided WWE actual knowledge that sub-concussive blows had supposedly harmed LoGrasso. Once the article is properly eliminated as a basis for WWE's alleged actual knowledge of risks of long-term degenerative neurological conditions specifically from sub-concussive blows to the head, the SAC is bereft of any factual basis plausibly demonstrating that WWE had actual knowledge of a known fact necessary for LoGrasso to charge fraud.

## 2. Plaintiffs Misrepresent Governing Second Circuit Law On the Pleading Standard for Fraud By Omission

Fully aware that they have not pled, and cannot plead, a claim for fraud by omission with the specificity required by Rule 9(b), Plaintiffs repeat the canard this Court rejected in the MTD Opinion that fraud by omission claims supposedly are "fundamentally different" from fraudulent misrepresentation claims "in that the particularity requirements of Rule 9(b) are far less stringent." *Id.* at 4. Plaintiffs have repeatedly cited the same handful of cases from other jurisdictions for this foreclosed argument, and WWE has repeatedly demonstrated that this

simply is not Second Circuit law.[4]  See Dkt. 102 at 11; Dkt. 108 at 10-11.

B.  **Singleton Does Not and Cannot Dispute that He Never "Re-Entered" the Ring After His Alleged Concussion**

Singleton does not and cannot dispute that the Court sustained Plaintiffs' fraud by omission claim on the theory that information about a link between repeated head trauma and "permanent degenerative conditions could plausibly have informed plaintiffs' own choices about whether and when to re-enter the ring after sustaining a head injury and could plausibly have prevented permanent brain damage."  MTD Opinion at 68.  As the Court found in the MTD Opinion, Singleton does not and cannot allege that he ever "re-enter[ed] the ring" after sustaining a single head injury on September 27, 2012.  Id. at 14.  In fact, Singleton subsequently confirmed in his verified interrogatory responses and sworn deposition testimony that he did not.  See Exs. 3 & 4.  Singleton's admissions that he never "re-enter[ed] the ring" preclude any plausible claim that he was harmed as a result of WWE's alleged fraud by omission.

To avoid dismissal, Plaintiffs once again ignore their prior position and attempt to mislead the Court by asserting that "Singleton's fraud-by-omission claim is not based solely on the injuries he suffered on September 27, 2012" but rather Singleton supposedly "suffered numerous injuries to the upper body, neck and head" prior to that date.  See Opposition at 3.  This pretext, however, is squarely contradicted by the admission of Plaintiffs' counsel at the June 8, 2015 status conference that "Singleton does present unique facts in the nature of how

---

[4]  The one case from this Circuit cited in Plaintiffs' Opposition is in accord.  See *Frulla v. CRA Holdings, Inc.*, 596 F. Supp. 2d 275, 288 (D. Conn. 2009) ("Fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b).").

5

his injury occurred and I do believe that you're right Your Honor, that Singleton's case . . . is distinct because the injury alleged is — is more in line with a <u>single incident, single event</u>." Opening Brief at 7 (quoting *Singleton* Dkt. 73 at 57) (emphasis added). Plaintiffs do not even attempt to reconcile their argument with this admission by Plaintiffs' lead counsel in open court. *See Maio v. Aetna*, 221 F.3d 472, 485 n.12 (3d Cir. 2000) (court can "consider statements made by counsel" on a Rule 12(b)(6) motion to clarify allegations of the complaint); 5C Wright & Miller, Federal Practice and Procedure § 1364 (3d ed.) ("admissions that have been made by counsel" can be considered on a Rule 12(b)(6) motion).

In any event, the Court previously found in the MTD Opinion that such vague and generalized allegations of other injuries "are unspecified in the Complaint" and thus not entitled to the assumption of truth under *Iqbal* and *Twombly*. *See* MTD Opinion at 13.

C. **Plaintiffs Do Not Respond to WWE's Argument that the Only Three Facts Identified As Pleading the "Who" and "When" Necessary to Satisfy Rule 9(b) Cannot Be Fraudulent Under the Court's Own Findings**

Plaintiffs' Opposition makes no response to WWE's argument that the three alleged facts identified by the Court in the MTD Opinion as pleading "both the 'who' — the specific person(s) allegedly responsible for the omissions — and the 'when' — the context of the omissions" necessary to satisfy Rule 9(b) (MTD Opinion at 64) cannot support a fraud by omission claim based on the same legal principles the Court applied in dismissing Plaintiffs' affirmative misrepresentation claims. "It is well settled that a failure to brief an issue is grounds to deem the claim abandoned." *Lami v. Stahl*, No. 3:05cv1416(MRK), 2007 WL 3124834, at *1

6

(D. Conn. Oct. 25, 2007); see also *McClain v. Pfizer, Inc.*, No. 3:06-cv-1795(VLB), 2008 WL681481, at *5 (D. Conn. Mar. 7, 2008) (Bryant, J.) ("[P]laintiff did not respond to the statute of limitations argument in opposition to this motion. The court infers from her silence that [Plaintiff] concedes this point.").

Specifically, (a) Dr. Maroon's statement to the NFL Network in 2015 cannot be fraudulent because the SAC does not allege any facts indicating that any plaintiff relied upon the statement — particularly given that the statement was made after the first complaint in this action had already been filed (MTD Opinion at 58); (b) the joint interview by Vince and Linda McMahon on the 2007 CNN documentary "Death Grip: Inside Pro Wrestling" cannot be fraudulent because Mr. and Mrs. McMahon merely expressed their "opinion or skepticism as to the truth" of a specific aspect of Dr. Omalu's and Dr. Bailes' findings, which the Court correctly concluded elsewhere in the MTD Opinion "cannot usually support a fraud claim" (*Id.* at 60-61); and (c) LoGrasso's vague and generalized allegations of alleged statements by unnamed WWE employees at unknown times in unidentified circumstances plainly do not satisfy the particularity requirements of Rule 9(b); indeed, such alleged statements could not have been with respect to any head injury because the Court correctly observed that "LoGrasso does not allege that he ever approached any WWE employee to report concussion-like symptoms or that any specific WWE employee had knowledge of his condition." *Id.* at 8, 12. Because these three statements — the only potential factual predicates that the Court could find in the SAC — are not fraudulent, Plaintiffs' fraud by omission claim must be dismissed. See MTD Opinion at 61 ("'the

7

absence of any one' element [of fraud] 'is fatal to recovery'") (quoting *Citino v. Redevelopment Agency*, 721 A.2d 1197 (Conn. App. 1998). [5]  Furthermore, statements (a) and (b) made in 2015 and November 2007 also could not plausibly have been relied on by LoGrasso in deciding to re-enter the ring since he was terminated by WWE in May 2007.[6]

D. **Plaintiffs Make No Response to WWE's Argument that There Are No Plausible Allegations of Fraudulent Intent**

Plaintiffs' Opposition also does not respond to the argument that there is a complete absence of plausible allegations of fraudulent intent, much less allegations "that give rise to a strong inference of fraudulent intent," which the Court held was required in pleading fraud. *Id.* at 56. No response is made to the point that the Court's observation of the inherent contradiction underlying Plaintiffs' claims, namely, that "Plaintiffs allege both that information about concussion risks was both widely known by the public and at the same time fraudulently concealed from Plaintiffs," demonstrates the implausibility of fraudulent intent. The admitted widespread publicity about the precise information supposedly omitted renders completely implausible any suggestion

---

[5]  Singleton's fraud claim should also be dismissed based on his sworn deposition testimony that he did not know he was pursuing a fraud claim against WWE and does not know what the basis for any fraud claim against WWE could be. *See* Ex. 5. Such testimony demonstrates that Singleton has no good faith basis to assert a fraud claim and is required to withdraw his claim pursuant to the requirements of Rule 11.

[6]  Not only did LoGrasso not rely on any statement made by the McMahons in the 2007 interview or believe anything to be fraudulent, in his deposition he actually agreed that Chris Benoit did not act like an 85 year old with dementia, further establishing that the fraud allegations here are lawyers' inventions. *See* Ex. 6.

8

that WWE somehow intentionally omitted facts from Plaintiffs to induce them to re-enter the ring after sustaining a head injury. Indeed, WWE never allowed Singleton to wrestle after his injury and LoGrasso never reported such an injury. Thus, the SAC does not plead a single fact, let alone sufficient facts, plausibly giving rise to a strong inference of intent to defraud Plaintiffs into re-entering the ring after a head injury.

E. **Plaintiffs Fail to Demonstrate Any Plausible Basis that WWE Had Actual Knowledge of LoGrasso's Alleged Head Injuries, Which Precludes Continuing Course of Conduct or Fraudulent Concealment Tolling**

Plaintiffs do not dispute that LoGrasso's claim is barred by the statute of repose in the absence of tolling. As explained in WWE's Opening Brief, application of either continuing course of conduct tolling or fraudulent concealment tolling turns on WWE's actual knowledge of LoGrasso's alleged injuries. Under continuing course of conduct tolling, a medical provider has a continuing duty to warn the plaintiff of medical risks only if the medical provider had "actual knowledge" at the time of treatment that the plaintiff had a condition that required further warning. *See Neuhaus v. DeCholnoky*, 905 A.2d 1135, 1144 (Conn. 2006). Likewise, under fraudulent concealment tolling, the first element that the plaintiff must prove by clear and convincing evidence is that the defendant "had actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff's cause of action." *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 912 A.2d 1019, 1032-33 (Conn. 2007).[7] LoGrasso

---

[7] A plaintiff must also prove by clear and convincing evidence that the defendant intentionally concealed these facts from the plaintiff for the purpose of obtaining

9

**does not and cannot dispute this controlling Connecticut law.**

**In its Opening Brief, WWE respectfully submitted that the Court correctly cited these principles but erred by focusing on an alleged "initial and continuing concern about the long-term health" of WWE wrestlers generally instead of actual knowledge about, and treatment of, LoGrasso specifically. Connecticut courts have ruled that continuing course of conduct tolling cannot be based on a defendant's generalized knowledge but must focus on actual knowledge specific to the plaintiff.** *See, e.g., Hernandez v. Cirmo*, **787 A.2d 657, 662-63 (Conn. App. 2002).**

**Plaintiffs again do not dispute this key distinction or the authorities cited by WWE in its Opening Brief. Additionally, Plaintiffs do not dispute that WWE did not have, and could not have had, such actual knowledge regarding LoGrasso given the Court's findings in the MTD Opinion that "none of the five named plaintiffs [including LoGrasso] brings any allegation that on any specific date they complained to a specific WWE employee about concussion-like symptoms and were wrongfully diagnosed as having not suffered a concussion or medically cleared them to wrestle without adequate rest" and "LoGrasso does not allege that he ever approached any WWE employee to report concussion-like symptoms or that any specific employee had knowledge of his condition." MTD Opinion at 11, 12.**

**Plaintiffs' only argument in their Opposition is that "WWE may and/or should" have had concerns about LoGrasso based on the unsubstantiated**

---

**a delay by the plaintiff in filing his cause of action — neither of which can be proven here either.** *Id.*

10

assertion that LoGrasso's head trauma supposedly was "in plain view to the WWE" from observing his matches. Opposition at 7-8.[8] Plaintiffs then impugn WWE and its audience, asserting that WWE "celebrated and marketed the head blows and side-effects to its blood thirsty audience." *Id.* In particular, Plaintiffs assert, "[i]n one match that positioned LoGrasso against Regal in September 2006, the video of the match . . . shows LoGrasso (1) falling head first into steel steps that were ring side, (2) looking dazed and disoriented afterwards, (3) repeatedly holding his head with his hand, and (4) continuing to wrestle regardless." *Id.* at 8-9. In his recent deposition, LoGrasso testified to the same effect and even claimed that his symptoms first appeared following being thrown into the steel steps during this match. *See* Ex. 7. Following a break in the deposition, WWE's counsel asked LoGrasso if he wished to recant and, after he declined, then showed slow motion footage of the match that demonstrated beyond peradventure that LoGrasso's head did not come anywhere close to hitting the steel steps. In fact, LoGrasso was forced to admit that his prior testimony was false. Accordingly, LoGrasso committed rank perjury by falsely testifying in his deposition that his head had hit steel steps in that match when he subsequently admitted that was false. LoGrasso cannot use such patently false

---

[8] Plaintiffs also cite to Paragraph 148 of the SAC for the proposition that "[i]t was not until after his retirement when LoGrasso actually received any pamphlets or emails from the Wellness Program, and those of course provided little to no information about concussions or brain trauma." Paragraph 148, however, says no such thing. Indeed, LoGrasso never received any communications after he left WWE "from the Wellness Program." He merely received offers from WWE to assist with substance abuse problems, which said nothing whatsoever about "concussions or brain trauma."

11

allegations, relied upon in his Opposition, to attempt to avoid dismissal of his claim. Rule 11 requires him to immediately withdraw his reliance on those allegations in the Opposition. *See* Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments (providing that a Rule 11 violation occurs when a litigant reaffirms to the court and advocates positions contained in pleadings and motions after learning that they cease to have any merit).

While LoGrasso's perjury is fatal to Plaintiffs' argument, Plaintiffs' reliance on the assertion that WWE "may and/or should" have had concerns is the antithesis of the "actual knowledge" standard mandated by the Connecticut Supreme Court and thus equally fatal. Moreover, such speculation about what WWE supposedly may and/or should have had concerns cannot contradict the specific findings the Court made in the MTD Opinion that LoGrasso never "approached any WWE employee to report concussion-like symptoms or that any specific employee had knowledge of his condition." MTD Opinion at 12. In the absence of allegations that WWE had actual knowledge of LoGrasso's alleged head injuries, let alone that WWE treated, and had subjective concern about the need for future treatment of, such injuries, continuing course of conduct tolling cannot apply. The lack of allegations that WWE had actual knowledge of LoGrasso's alleged head injuries equally is fatal to the application of fraudulent concealment tolling.[9]

---

[9] Additionally, Plaintiffs do not dispute WWE's argument that fraudulent concealment tolling cannot apply because no facts are pled demonstrating any due diligence by LoGrasso after admittedly experiencing symptoms in 2008 — seven years before filing suit — particularly given the widespread publicity of these issues admitted in the SAC and recognized in the Court's MTD Opinion.

12

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.,**

**By: /s/ Jerry S. McDevitt**
**Jerry S. McDevitt (pro hac vice)**
**Terry Budd (pro hac vice)**
**Curtis B. Krasik (pro hac vice)**
**K&L GATES LLP**
**K&L Gates Center**
**210 Sixth Avenue**
**Pittsburgh, PA 15222**
**Phone: (412) 355-6500**
**Fax: (412) 355-6501**
**Email: jerry.mcdevitt@klgates.com**
**Email: terry.budd@klgates.com**
**Email: curtis.krasik@klgates.com**


**Thomas D. Goldberg (ct04386)**
**Jonathan B. Tropp (ct11295)**
**Jeffrey P. Mueller (ct27870)**
**DAY PITNEY LLP**
**242 Trumbull Street**
**Hartford, CT 06103**
**Phone: (860) 275-0100**
**Fax: (860) 275-0343**
**Email: tgoldberg@daypitney.com**
**Email: jbtropp@daypitney.com**
**Email: jmueller@daypitney.com**

**Its Attorneys.**

---

**Plaintiffs merely assert that the bald allegation that LoGrasso relied "on WWE's fraudulent concealment and omissions" in supposedly not seeking treatment is sufficient at this stage of the proceedings. Opposition at 11 n.3. The conclusory allegation cited by Plaintiffs should not even be credited under *Iqbal/Twombly*, much less dispense with the need for a plausible factual basis for tolling.**

13

## **CERTIFICATION**

      I hereby certify that on this 23rd day of May, 2016, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                              */s/ Jeffrey P. Mueller*