# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RUSS McCULLOUGH,** *et al.***,** | : | **No. 3:15-cv-01074 (VLB)** |
| | : | **Lead Case** |
| **Plaintiffs,** | : | |
| | : | |
| **VS.** | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | **MAY 27, 2016** |

| | | |
|---|---|---|
| **EVAN SINGLETON and VITO** | : | **No. 3:15-cv-00425 (VLB)** |
| **LOGRASSO,** | : | **Consolidated Case** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **VS.** | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | **MAY 27, 2016** |

## <u>MEMORANDUM OF LAW IN OPPOSITION TO SECOND EMERGENCY MOTION TO COMPEL DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S RESPONSES TO PLAINTIFFS EVAN SINGLETON AND VITO LOGRASSO'S CORRECTED FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

Defendant World Wrestling Entertainment, Inc. ("WWE") hereby submits this memorandum of law in opposition to the Second Emergency Motion to Compel Responses to the Corrected First Requests for Production of Documents filed by Plaintiffs Evan Singleton and Vito LoGrasso ("Plaintiffs").

I.    **PRELIMINARY STATEMENT**

Plaintiffs waited until the very end of the discovery period in this case to file an "emergency motion" to compel the production of additional documents that are completely irrelevant to the narrow issues on which the Court authorized discovery and that cannot negate the dispositive admissions of Plaintiffs that will be placed before the Court in a summary judgment motion filed by WWE pursuant to the existing schedule.[1]  The Court should deny the motion to compel in its entirety and should reject Plaintiffs' renewed request to extend the discovery schedule in this case for the following reasons.

First, the Court should not permit any further discovery when the evidence and the dispositive admissions made by Plaintiffs establish that they have no viable fraud by omission claim and WWE intends to move for summary judgment on that sole remaining claim.[2]  In particular, the evidence demonstrates that Singleton's claim is frivolous because Singleton testified that he did not even

---

[1] WWE's motion for summary judgment will demonstrate in detail the full scope of the fabrication and falsification of Plaintiffs' claims of fraud and injury in this case, which cannot be comprehensively covered in this opposition brief.

[2] WWE has already filed a motion for reconsideration of the Court's ruling denying its motion to dismiss the remaining fraud by omission claim, which is fully briefed and which would result in the dismissal of this case in its entirety if granted.  *See* Motion for Reconsideration (Doc. No. 118-1.)

know that he was asserting a fraud claim or what the basis of any such claim

could be.  Such testimony included the following admissions:

> Q. And you got injured doing exactly what you signed up to do, didn't you?
> A. Yes.
> Q. And yet you're suing WWE, correct?
> A. Yes.
> Q. Why is that?
> A. <u>I don't know.</u>
> ***
> Q: Do you realize that you're claiming fraud in this case?
> A: <u>No.</u>
> Q: You don't realize that you're making a fraud claim?
> A: <u>No.</u>
> Q: Can you tell me who you think, if anybody, committed a fraud on you?
> A: I'm sorry?
> Q: Who do you think, if anybody, at WWE committed a fraud on you?
> A: <u>I don't know.</u>
> Q: Did anybody at WWE fail to tell you something that you think you should have known?
> A: <u>I don't know.</u>
> * * *
> Q: So, as you sit here today, you can't identify a single act or anything done or not done by WWE that you consider to be fraudulent to you?
> A: <u>I don't know.</u>
> Q: Well, you're the one who is bringing that lawsuit, sir, so I'm asking you: Do you have anything that you considered that was done that was fraudulent to you?
> A: <u>I don't know.</u>

Evan Singleton Deposition at 38, 164-65, Ex. 1 (emphasis added).  Even the fraud

by omission claim that has been manufactured by Singleton's attorneys has been

shown to be frivolous because WWE medical staff provided Singleton and all

talent with the very information that allegedly was fraudulently concealed from

him before he sustained his alleged injury, Singleton only sustained a single head

injury while performing for WWE, and he never wrestled again after that injury.

The evidence also conclusively establishes that LoGrasso's claim is baseless.  Like Singleton, LoGrasso testified that he was not aware of the fraud claim and that he was not claiming that anyone at WWE defrauded him.

> Q. Do you contend that people at WWE were engaged in trying to defraud you?
> A.  I didn't come out and say that they tried to defraud me.  I said they didn't give me any awareness or knowledge.
> ***
> Q. Who at WWE, if anybody, are you accusing of engaging in fraud towards you?
> A. I didn't accuse anybody of saying fraud.  All I said is they did not provide any information about CTE awareness or concussions.
> Q. And do you think, sir, that maybe a reason that they wouldn't tell you anything about CTE is either because they didn't know it either, or they probably figured you might be reading it in the newspaper like everybody else did?
> A. Well, maybe.
> ***
> Q. Well, in any manner, did they say or do anything to you that deceived you, had misled you in any way?
> A. I guess as far as being misled, it goes about time when I was going back and forth to, when I was going back and forth to Louisville and Deep South Wrestling, and I was doing a new gimmick down there and Mike and Steve Curran were working for that company, and I believe Mike was in charge of talent relations, along with the Steve Curran, and they came down to look at my new gimmick. And they had told me that I was going up to TV the week -- the next week, and then the following week I was released from WWE.
> Q. Anything else?
> A. That's about it.
> ***
> Q. Do you have any evidence that anybody at WWE ever directed anybody in the medical staff to withhold any information from you?
> A. From me personally, no.
> Q. Do you have any knowledge that anybody at WWE management or employees ever told Dr. Rios or the medical staff to lie to you about anything?
> A. Not that I'm aware of.

Vito LoGrasso Deposition at 229-230, 247-248, 377-378, Ex. 2 (emphasis added).[3]

LoGrasso's claim is also time-barred because he admitted that he never sought or received treatment from WWE for any head injury, claims to have experienced symptoms of neurological injuries as early as 2006 and did nothing in the ensuing eight years to investigate the cause, and knew about the widespread publicity surrounding the findings of CTE in a former professional wrestler in 2007.  In addition, LoGrasso committed <u>perjury</u> to support a central allegation in his complaint by testifying in his deposition that his head was injured when he was supposedly thrown into the steel steps in a match with an opponent in 2006 and that his symptoms started then.  LoGrasso subsequently admitted that such testimony was patently false when confronted with the video footage of that match that showed that his head <u>never</u> even came close to hitting the steps.

None of the additional documents that Plaintiffs seek in their motion to compel will change these dispositive facts that warrant the entry of summary judgment on their remaining claim.  If Plaintiffs contend that specific additional discovery is necessary to resist summary judgment, then they should seek relief pursuant to Rule 56(d) and the Court should decide the issue in that context.

<u>Second</u>, even if Plaintiffs' claims were not frivolous, the documents that Plaintiffs seek to compel are irrelevant to the narrow issues on which the Court

---

[3] Just this week, the Second Circuit cited with approval a First Circuit decision that dismissed fraud claims in a remarkably similar situation in which the plaintiffs were unable to articulate any basis for their claims.  *See United States ex rel. O'Donell v. Countrywide Homes Loans, Inc.*, No. 15-496, 15-499, 2016 U.S. App. LEXIS 9365 at *32, n.14 (2d Cir. May 23, 2016), citing *Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 8 (1st Cir. 2007) ("In this context, discovery obtained from the defendants could not have altered the outcome which, in the district court's view, was ordained by the plaintiffs' own deposition testimony.").

has permitted discovery in this case.  The Court has restricted discovery to only the fraud by omission claim asserted by Singleton and LoGrasso.[4]  Specifically, the Court limited discovery to whether WWE had a duty to disclose to Singleton and LoGrasso information concerning the long-term risks of degenerative neurological conditions resulting from concussions or mild traumatic brain injuries to wrestlers in the years 2005 or later.  WWE has produced the documents in its possession that are within the scope of the Court's order relating to the two individual claims that remain in the case, including all documents relating to either Singleton or LoGrasso.  However, Plaintiffs have insisted on seeking broad class action discovery on issues that are completely irrelevant to the individual claims of Singleton or LoGrasso even though their class action allegations were withdrawn more than a year ago and the other two class action cases that were filed were dismissed in their entirety.[5]  In particular, Plaintiffs impermissibly seek documents dating back to 2000 when the Court specifically limited discovery to the years 2005 or later based on Plaintiff's own

---

[4] During a hearing on June 8, 2015, the Court observed that the individual claims of Singleton and LoGrasso were likely misjoined in the same action because they wrestled at different times under different circumstances and allege that they were injured in different ways and were treated by different personnel.  *See* Transcript (Singleton Doc. No. 73) at 54-55.

[5] Nine attorneys from six different law firms purporting to specialize in class action litigation have appeared for Singleton and LoGrasso in this case.  Despite the number of attorneys who have already appeared, Plaintiffs have repeatedly sent attorneys to take or defend depositions who were not admitted *pro hac vice* and who have not appeared in the case in violation of the Local Rules.  Most recently, Plaintiffs sent a California lawyer who is not admitted in this case to take a deposition of a witness in Pennsylvania using confidential information in violation of the Court's Standing Protective Order.  Plaintiffs have refused to identify who improperly provided this attorney with such confidential information.

allegations in their Second Amended Complaint.  Plaintiffs also improperly seek all documents relating in any way to the treatment or management of concussions of <u>any</u> wrestler when the remaining fraud by omission claim relates solely to whether WWE had specific knowledge of the <u>long-term risks of degenerative neurological conditions</u> resulting from concussions and did not disclose such information to <u>Singleton or LoGrasso</u> pursuant to some fraudulent plan even though such information was widely publicized.  Plaintiffs even seek documents <u>unrelated</u> to concussions based on their false assertion that documents relating to the creation and implementation of the Wellness Program in 2006 could be relevant when all of the evidence has shown that the initial phase of that program was limited solely to the provision of cardiovascular and drug testing.  Moreover, LoGrasso admitted that he did not receive <u>any</u> treatment of any kind from the Wellness Program before or after he left WWE in 2007. Plaintiffs simply cannot meet their burden of establishing the relevance of the information they seek to the narrow issues on which the Court has permitted discovery.  All of the additional discovery that Plaintiffs seek falls outside the temporal and scope limitations of the Court's orders.

<u>Third</u>, the additional discovery that Plaintiffs seek in their motion to compel would be unduly burdensome and expensive to produce and grossly disproportional to the needs of this case.  WWE already has spent hundreds of thousands of dollars identifying, collecting, and reviewing all of the documents that it has produced to Plaintiffs that are within the scope of the Court's order. Requiring WWE to now search for and produce documents and electronically

stored information that date back to 2000 and that fall outside the scope of the issues identified by the Court would likely cost hundreds of thousands of dollars more.  Whether such discovery might be appropriate if discovery were progressing on all issues in a class action case is not the issue here notwithstanding the appearance of so many class action lawyers for two individual Plaintiffs.  The undue burden and expense that would be imposed on WWE far outweighs any benefit of additional discovery for these two individuals, particularly in view of the narrow scope of discovery during this initial phase of the case and especially since none of this discovery would assist these Plaintiffs in opposing summary judgment.

Fourth, the motion to compel should be denied because it was untimely filed.  Plaintiffs inexplicably waited until the very end of the discovery period to file their motion to compel even though they had received WWE's objections and responses to their discovery requests over a month earlier.  Plaintiffs have waived their ability to file a motion to compel at this late juncture due to their lack of diligence in pursuing discovery in this case.

Fifth, the Court should deny Plaintiffs' request for an extension of the discovery schedule for the second time.  The Court has already concluded that an extension of the discovery schedule was not warranted based on Plaintiffs' intent to file a motion to compel.  The fact that Plaintiffs have finally filed their motion changes nothing.  Plaintiffs have not established the requisite good cause to extend the discovery schedule set forth in the Court's order because they have not acted diligently in pursuing discovery in this case and cannot show that the

current discovery deadline cannot be met for reasons that were not foreseeable at the time the Court's order was entered.  After the Court partially lifted the stay to permit narrow discovery in this case, Plaintiffs waited one month to even serve requests for production.  Plaintiffs did nothing in March and nothing in April until April 29, when they began unilaterally serving deposition notices.  Plaintiffs then noticed depositions of nine witnesses at the very end of the discovery period, causing collateral motion practice.  Despite their dilatory tactics and the total disruption of WWE's business caused by such tactics, WWE has made its highest-ranking executives and its medical director available for depositions within the discovery period.[6]  Moreover, WWE has acted diligently in obtaining all of the discovery that it needs to move for summary judgment in accordance with the Court's existing schedule and would be severely prejudiced by an extension of that schedule.  The Court should maintain its existing schedule to enable WWE to file its summary judgment motion based on the indisputable evidence and then assess whether any discovery claimed by Plaintiffs is actually necessary for them to resist summary judgment pursuant to the requirements of Rule 56(d).

---

[6] WWE produced Stephanie McMahon (Chief Brand Officer) for a deposition immediately following the Court's Order on May 26, 2016 so that the current discovery deadline will not be affected.  WWE produced Vince McMahon (Chairman and CEO) for a deposition on May 27, 2016 and has agreed to produce Paul Levesque (Executive Vice President of Talent, Live Events, and Creative) in both his individual and corporate representative capacities on May 31, 2016.  In addition, WWE Medical Director Dr. Joseph Maroon was deposed on May 20, 2016 and Dr. Mark Lovell was deposed on May 23, 2016.

## II.    BACKGROUND

### A.    The Court's Order Partially Lifting the Stay of Discovery

On November 10, 2015, the Court stayed discovery in this case until it ruled on WWE's pending motions to dismiss or until January 15, 2016, whichever occurred first.  Order Granting Motion to Stay (Doc. No. 89.)  On January 15, 2016, the Court partially lifted the stay only as to "the claims of Plaintiffs Singleton and LoGrasso until further order of the Court" and limited discovery to "facts relevant to the question of (1) whether WWE had or should have had knowledge and owed a duty to disclose to those plaintiffs the risks of long-term degenerative neurological conditions resulting from concussions or mild traumatic brain injuries to wrestlers who performed for WWE in the year 2005 or later, (2) whether and when WWE may have breached that  duty, and (3) whether such a breach, if any, continued after Singleton and LoGrasso ceased performing for WWE."  Order Partially Lifting Stay of Discovery (Doc. No. 107) (emphasis added).  The Court also advised that "the parties should expect that the scope of discovery may be adjusted based on the outcome" of the Court's decision on the pending motions to dismiss.  *Id.*  Consistent with the narrow scope of discovery, the Court required this initial phase of discovery to be completed by June 1, 2016 and dispositive motions on the issue of liability to be filed by August 1, 2016.  *Id.*

### B.    The Court's Ruling on the Motion to Dismiss

On March 21, 2016, the Court issued its ruling dismissing the two pending class action cases against WWE in their entirety.  The Court also dismissed all of the claims in this case except for "the fraudulent omission claim by Plaintiffs

Evan Singleton and Vito LoGrasso to the extent that the claim asserts that <u>in 2005</u> <u>or later</u> WWE became aware of and failed to disclose to its wrestlers information concerning a link between repeated head trauma and <u>permanent degenerative</u> <u>neurological conditions</u> as well as specialized knowledge concerning the possibility that its wrestlers could be exposed to a greater risk for <u>such</u> <u>conditions</u>."  Memorandum of Decision (Doc. No. 116) at 70 (emphasis added). The Court framed the only plausible injury arising from this claim as whether "<u>during and after 2005</u>, information about a link to <u>permanent degenerative</u> <u>conditions</u> could plausibly have informed plaintiffs' own choices about whether and when to re-enter the ring after sustaining a head injury and could plausibly have prevented permanent brain damage."  *Id.* at 67-68 (emphasis added).  The ruling further narrowed the scope of discovery because the issue of whether WWE "should have known" about such information is irrelevant to a fraud by omission claim, which requires Plaintiffs to prove by clear and convincing evidence that WWE breached a duty to disclose "known facts" to Plaintiffs with the fraudulent intent to induce them to act to their detriment.  *Id.* at 61.

The Court further expressed skepticism that Plaintiffs ultimately would be able to prove their fraud by omission claims by such clear and convincing evidence.  <u>First</u>, the Court observed that there was an "inherent contradiction" between Plaintiffs' allegations that information regarding the link between repeated head trauma and permanent neurodegenerative conditions was publicly available and widely publicized and their allegations that Plaintiffs had no knowledge of such information and that WWE fraudulently concealed such

information from them.  *Id.* at 32, 67-68.  <u>Second</u>, the Court observed that Plaintiff

LoGrasso would carry a "heavy burden" to avoid dismissal of his claims based

on the statute of repose.  *Id.* at 31 n.5.  The Court repeatedly noted that LoGrasso

never alleged that he complained to any WWE employee about concussion-like

symptoms or that any specific WWE employee had actual knowledge of his

condition.  *Id.* at 11-12, 51-52.  The Court also noted that LoGrasso should have

been aware that he had some neurological condition linked to repeated head

trauma based on his allegations concerning the symptoms that he experienced in

2008.  *Id.* 31 n.5.

     C.   <u>Plaintiffs' Delay in Pursuing Discovery</u>

     Plaintiffs waited approximately one full month after the Court partially lifted

the stay of discovery in this case to serve their first set of requests for production

on WWE on February 12, 2016.  Plaintiffs consented to an extension of time until

April 15, 2016 for WWE to respond to their requests.  WWE then spent hundreds

of thousands of dollars to collect, search, and review hard copy documents and

electronically stored information in response to Plaintiffs' requests.  On April 15,

2016, WWE timely served its written objections and responses to these requests

and asked to which of Plaintiffs' nine attorneys from six different law firms it

should send its document production.  Plaintiffs' counsel did not even respond to

WWE's counsel until April 19, 2016.  WWE's counsel promptly mailed the

document production the very next morning.  The production consisted of all

non-privileged documents that WWE had found after a reasonable search that

related to the three issues set forth in the Court's order regarding the scope of

discovery, including all documents concerning Singleton or LoGrasso.  The production included all medical records in WWE's files regarding the two Plaintiffs which demonstrated the extensive medical care provided to Singleton and which corroborated LoGrasso's testimonial admissions that he never sought or received treatment from WWE for any alleged head injury.

There also was no delay on WWE's part in scheduling a conference with Plaintiffs concerning WWE's document production.  Plaintiffs first requested a conference to discuss certain unidentified deficiencies in the document production on April 28, 2016 and asked whether WWE would be available on May 2, 2016.  That same day, WWE responded that it would be available on the date Plaintiffs suggested and also expressed its intent to discuss a possible motion for a protective order.  On May 2, 2016, Plaintiffs' counsel responded that they were coordinating schedules to ensure that the appropriate decision-makers could participate on the call and would propose times shortly.  WWE did not hear again from Plaintiffs until May 6, 2016 when Plaintiffs stated that they still wanted to discuss the undisclosed problems in WWE's document production but ignored WWE's request to confer about a protective order.  Plaintiffs then attempted to use the fact that a conference had not yet occurred due to their own unavailability as a pretext to support a motion for an extension of the discovery schedule that they filed later that day.

Between February 12, 2016 and April 29, 2016, Plaintiffs did not pursue <u>any</u> other discovery against WWE.  Plaintiffs deliberately waited until the last month of the discovery period to serve improper and untimely discovery requests in an

effort to fabricate the need for an extension of the discovery schedule.  On Sunday, May 1, 2016 at 10:04 p.m., Plaintiffs served WWE by email with interrogatories and requests for admission.  The numerous interrogatories exceeded the limits imposed by Rule 33 and the voluminous requests for admissions sought information far beyond the scope of the Court's order, including information dating back to 2000.  On Friday, April 29, 2016, after the close of business, Plaintiff noticed a Rule 30(b)(6) deposition of WWE for the day before the discovery cutoff.  On Friday, May 6, 2016, again after the close of business, Plaintiffs served deposition notices for five additional witnesses, including WWE's Chairman and CEO and three medical professionals, without making any prior attempt to schedule those depositions with WWE. Approximately thirty minutes after serving these notices, Plaintiffs filed their motion to extend the discovery schedule stating that they intended to file a motion to compel with respect to WWE's document production.

On May 9, 2016, the Court <u>denied</u> Plaintiffs' motion for an extension of the discovery schedule.  Following the Court's order, Plaintiffs then served deposition notices for two more high-ranking WWE executives.  On May 10, 2016, Plaintiffs served another deposition notice for a third-party witness.  Plaintiffs scheduled all of these depositions to take place in the last days of the discovery period thereby minimizing WWE's time to prepare its witnesses and effectively crippling corporate operations.[7]  Plaintiffs then waited until May 17, 2016 to

---

[7] Despite this, WWE is producing its witnesses, including its highest-ranking executives, for depositions within the existing discovery period.

actually file the instant "emergency" motion to compel, nearly two weeks after they represented to the Court that they planned to file such a motion.

In contrast, WWE has taken the Court's scheduling order seriously and has promptly and efficiently sought discovery within the time period specified by that order.  WWE promptly served its own discovery requests and scheduled and completed depositions of five relevant witnesses.  WWE has even incurred the burden and expense of serving over 40 subpoenas on third-party medical providers of Plaintiffs because Plaintiffs refused to produce the medical records from their own doctors.  The information adduced by WWE during discovery demonstrates that Plaintiffs' claims are without merit and that Plaintiffs have perpetrated a sham on this Court, the full scope of which WWE intends to present to the Court in its summary judgment motion.  WWE therefore would be severely prejudiced by permitting any further discovery at this late juncture.

### D.   Singleton Has No Viable Claim Against WWE

The undisputed facts establish that Singleton's remaining fraud by omission claim is frivolous and that any further discovery with respect to his claim would not save it from summary judgment.

**First**, Singleton testified that he did <u>not</u> know why he was suing WWE, did <u>not</u> know that he was pursuing a fraud claim against WWE, and did <u>not</u> know what the basis of any fraud claim against WWE could be.  Ex. 1.

**Second**, Singleton testified that he was not even aware of the statements that were alleged to have been fraudulent in the Second Amended Complaint and therefore he could not possibly have detrimentally relied on them.  Ex. 3.

**Third**, WWE openly discussed the very information that allegedly was fraudulently omitted with all WWE talent before Singleton's alleged injury.  In August 2012, one month before Singleton suffered his alleged injury, WWE held a meeting that Singleton was required to attend at which WWE medical staff specifically addressed the potential long-term risks of head injuries,[8] the corresponding need to report concussions to WWE medical staff to ensure proper treatment, and the importance of not returning to the ring until fully healed.[9]  Exs. 4 & 5.  In addition, in January 2012, before Singleton ever wrestled in a single WWE match, WWE required him to watch a separate presentation from its medical staff where similar information was provided.  Ex. 6.

**Fourth**, Singleton only suffered a single head injury while wrestling for WWE on September 27, 2012, WWE never cleared him to wrestle again after that injury, and he never did wrestle in a WWE match again after that injury.[10]  Exs. 7, 8, & 9.

---

[8] Plaintiffs incorrectly claim that the presentation did not advise wrestlers about the long-term risks of head injuries.  The presentation specifically referred to such risks, including neurological conditions such as CTE.  Ex. 4.

[9] Plaintiffs also incorrectly claim that Singleton testified that he denied that he attended this presentation. Rather, Singleton could not remember whether he attended the presentation.  Regardless of whether Singleton remembers the presentation, the mere fact that presentation was given to all talent negates any fraudulent intent not to disclose such information by WWE.

[10] Plaintiffs improperly suggest that Singleton was medically cleared by WWE to wrestle again after his injury.  This suggestion is contrary to the allegations in the Second Amended Complaint and Singleton's admissions in his deposition that he was never medically cleared by WWE to wrestle again.  *See* Ex. 8; SAC ¶ 108. The fact that Singleton briefly engaged in some light cardiovascular activity after an independent neurologist cleared him does not mean that WWE's medical staff

### E.    LoGrasso Has No Viable Claim Against WWE

The undisputed facts establish LoGrasso's fraud by omission claim is time-barred and has no merit and that any additional discovery would not enable him to resist the entry of summary judgment on his claim.

**First**, LoGrasso was unable to articulate <u>any</u> basis for a fraud claim in his deposition or identify <u>anyone</u> at WWE who defrauded him.  LoGrasso admitted that he either was not aware of the statements alleged to be fraudulent in the Second Amended Complaint or did not believe them to be fraudulent.  LoGrasso even stated that he <u>agreed</u> with the statements made by WWE Chairman Vince McMahon regarding former wrestler Chris Benoit.[11]  Ex. 2.

**Second**,  LoGrasso never sought or received treatment for any head injury from WWE or treatment of any kind from the Wellness Program.  Exs. 10 & 11.

**Third**, LoGrasso claimed that he showed signs of neurological injury by 2006 but did nothing in the years before he filed this lawsuit to investigate the cause.  Ex. 12; SAC ¶ 140.

**Fourth**, LoGrasso was aware in 2007 of the extensive media coverage reporting that former wrestler Chris Benoit had CTE caused by head trauma sustained by wrestling.  Ex. 13.

In addition, LoGrasso committed <u>perjury</u> by falsely testifying about a key allegation of the Second Amended Complaint supporting his claim.  Specifically,

---

ever cleared him to <u>wrestle</u> (which they never did) or that he ever wrestled again for WWE (which he did not) .

[11] In particular, LoGrasso agreed with Vince McMahon's opinion that Chris Benoit did not act as if he had the brain of an 85 year old man with dementia.

LoGrasso falsely testified that he was injured when his head hit the steel steps in a match with an opponent in October 2006 and that his current symptoms began following that match.  LoGrasso finally admitted that his testimony was false after being shown slow motion footage of the match that demonstrated beyond any doubt that LoGrasso's head <u>never</u> hit the steel steps.  Ex. 14.[12]

## III.   LEGAL STANDARD

The Court must limit discovery to matters that are "relevant" and "proportional to the needs of the case" considering "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "The burden of demonstrating relevance is on the party seeking discovery."  *Hollis v. Dep't of Mental Health & Addiction Servs.*, No. 14-CV-00516, 2016 U.S. Dist. LEXIS 21997, at *2 (D. Conn. Feb. 23, 2016) (internal quotation marks omitted).

The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, or undue burden or expense" including an order "forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(A).  "Rule 26 is often invoked to avoid potentially expensive and wasteful discovery during the pendency of a determination which could reshape pending claims."  *ITT Corp. & Goulds Pumps, Inc. v. Travelers & Sur. Co.*, No. 3:12CV38, 2012 U.S. Dist. LEXIS 100033, at *6 (D. Conn. July 18, 2012).

---

[12] LoGrasso also admitted to repeatedly telling "inspirational" lies regarding whether he was deaf long before he brought this lawsuit.  Ex. 15.

IV.   **ARGUMENT**

    A.   **The Court Should Deny the Motion to Compel Because The Dispositive Facts Establish That Plaintiffs Have No Viable Claim.**

    Courts may enter an order precluding further discovery where a party has filed or intends to file a dispositive motion.  *See Cuartero v. United States*, No. 3:05CV1161, 2006 U.S. Dist. LEXIS 79641, at *3 (D. Conn. Nov. 1, 2006).  Courts consider the strength of the dispositive motion, the breadth of discovery sought, the burden of responding to it, and the prejudice to the opposing party.  *Id.* at *3-4.  An order precluding discovery is appropriate as long as the dispositive motion "appears to have substantial grounds, or stated another way, does not appear to be without foundation in law."  *ITT Corp.*, 2012 U.S. Dist. LEXIS 100033, at *6-7 (internal quotation marks and citations omitted).

    The Court should preclude Plaintiffs from seeking any further discovery because WWE has already fully complied with its discovery obligations under the order partially lifting the stay of discovery in this case, and further discovery is unwarranted because (1) WWE has filed a strong motion for reconsideration that would result in the dismissal of the sole remaining claim in this case, and (2) if reconsideration is not granted beforehand, WWE intends to file a motion for summary judgment that would result in the entry of judgment in its favor on the sole remaining claim.

    1.   **WWE's Pending Motion for Reconsideration**

    WWE has filed a strong motion for reconsideration of the Court's decision on the motion to dismiss that demonstrates that the Court's own findings and

conclusions require dismissal of the sole remaining fraud by omission claim. *See* Motion for Reconsideration (Doc. No. 118-1.)

First, WWE argued that the Court should reconsider its determination that Plaintiffs have plausibly alleged facts that, if true, state a claim for fraud by omission under Connecticut law for three reasons:  (i) Singleton could not plausibly have been harmed by WWE's alleged fraud by omission because he never wrestled again after his alleged injury; (ii) Plaintiffs' fraud by omission claims are not plausible for the same reasons that the Court dismissed their other fraud claims, namely each of the three alleged facts which the Court found satisfied the particularity requirement cannot support a fraud by omission claim based on the same principles that the Court relied upon in dismissing Plaintiffs' affirmative fraud claims; and (iii) there is a complete absence of plausible allegations of any fraudulent intent on the part of WWE.  *Id.* at 6-15.

Second, WWE argued that the Court should reconsider its determination that LoGrasso plausibly alleged facts that, if true, would invoke either the continuing course of conduct or fraudulent concealment tolling exceptions to the statute of repose including: (i) Plaintiffs did not plead that WWE ever treated LoGrasso or had actual knowledge of LoGrasso's condition necessary to impose a continuing duty to warn and (ii) since LoGrasso did not plead that WWE knew of his alleged condition, much less that LoGrasso might have a cause of action arising from that alleged condition, fraudulent concealment tolling cannot apply as a matter of law.  *Id.* at 16-22.  As explained in WWE's reply memorandum in

support of its motion, Plaintiffs were unable to refute WWE's dispositive arguments in their opposition.  *See* Reply Memorandum (Doc. No. 150).

Because WWE has filed a strong pending motion for reconsideration on its motion to dismiss the sole remaining claim in this case, the Court should preclude Plaintiffs from taking additional discovery until that motion is resolved. *See, e.g., Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987) (affirming trial court's decision to stay discovery based on motion to dismiss because permitting discovery would defeat the purpose of the motion); *ITT Corp.*, 2012 U.S. Dist. LEXIS 100033, at *10 (granting motion for protective order because the defendant's motion to dismiss was potentially dispositive and appeared to have substantial grounds); *Cuartero*, 2006 U.S. Dist. LEXIS 79641, at *5-7 (staying discovery because the defendant's motion to dismiss raised substantial issues based on the law and the facts of the case); *In re First Constitution Shareholders Litigation*, 145 F.R.D. 291, 294 (D. Conn. 1991) (holding that a stay of discovery while motion to dismiss was pending was in the interests of justice).

2.   <u>WWE's Intended Motion for Summary Judgment</u>

WWE intends to file a motion for summary judgment on the remaining fraud by omission claim demonstrating that the undisputed facts require the entry of judgment in its favor and that the claim is frivolous.

<u>First</u>, WWE's motion for summary judgment will establish that Singleton's fraud by omission claim is frivolous because Singleton testified that he did not even know that he was asserting a fraud claim or what the basis of any such fraud claim could be, WWE medical staff provided Singleton and all other talent

with the very information that allegedly was fraudulently concealed from him prior to his alleged injury, and Singleton only sustained a single head injury on September 27, 2012 and never wrestled again after that injury.  These undisputed facts establish that Plaintiffs had no objectively reasonable basis to pursue Singleton's claim and that their continued pursuit of his claim merits sanctions, as WWE intends to demonstrate.  At a minimum, the Court should preclude further abusive discovery in connection with Singleton's claim.  *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1169 (10th Cir. 2000) ("When, as is apparent here, a plaintiff brings an initial action without any factual basis evincing specific misconduct by the defendants and then bases extensive discovery requests upon conclusory allegations in the hope of finding the necessary evidence of misconduct, that plaintiff abuses the judicial process.  Therefore, the magistrate judge appropriately recognized that defendants' compliance was sufficient and the likely benefit of any further attempted fishing expedition would be negligible."); *In re Convergent Technologies Sec. Litigation*, 108 F.R.D. 328, 339 (N.D. Cal. 1985) ("[A] party who honestly feels that an opponent has asserted a frivolous claim or defense can seek a protective order that could postpone its obligation to respond to some or all of that opponent's discovery.").

<u>Second</u>, WWE's motion for summary judgment will establish that LoGrasso's fraud by omission claim is time-barred and meritless.  In particular, the undisputed facts demonstrate that LoGrasso, like Singleton, could not articulate any basis for a fraud claim, admitted that he never sought or received treatment for any head injury from WWE, and claimed that he was experiencing

the symptoms of neurological injury by 2006 but did nothing for eight years to ascertain the cause despite being aware of the widely publicized findings that former wrestler Chris Benoit had CTE in 2007.  These undisputed facts conclusively establish that (i) LoGrasso's fraud by omission claim is time-barred, (ii) LoGrasso could not reasonably have relied on the alleged omission by WWE, and (iii) WWE could not have had the requisite fraudulent intent.  Moreover, discovery has confirmed that a central allegation in the Second Amended Complaint was false.  In his deposition, LoGrasso committed <u>perjury</u> by testifying that he was injured when his head hit the steel steps in a match with an opponent in October 2006 and that this injury marked the onset of his current symptoms. LoGrasso subsequently admitted that the allegation was patently false after being shown the video footage of the match demonstrating that he never hit his head. LoGrasso's admission, combined with the dispositive admissions discussed above, warrant the entry of summary judgment in WWE's favor on his claim.

Because WWE intends to file a dispositive motion for summary judgment as to the sole remaining claim in the case, the Court should preclude Plaintiffs from taking additional discovery until that motion is resolved.  *See Covell v. Chiari & Ilecki*, LLP, No. 12CV660A, 2013 U.S. Dist. LEXIS 96851, at *18 (W.D.N.Y. July 11, 2013) (granting motion for protective order in anticipation of motion for sanctions and motion for summary judgment); *Wyrick v. Underwriters at Lloyd's, London*, No. 3:06cv578, 2007 U.S. Dist. LEXIS 47661, at *2-3 (D. Conn. June 29, 2007) (granting motion to stay discovery pending court's ruling on motion for summary judgment because no further discovery was necessary to determine the

issue presented on the motion); *Murphy v. Grabo*, No. 94-CV-1684, 1998 U.S. Dist. LEXIS 5044, at *13-14 (N.D.N.Y Mar. 16, 1998) (granting motion for protective order staying discovery pending final resolution of motion for summary judgment); *Solargen Electric Motor Car Corp. v. American Motors Corp.*, No. 80 Civ. 3809, 1981 U.S. Dist. LEXIS 11093, at *4 (S.D.N.Y. 1981) ("Pending resolution of a summary judgment motion it is appropriate to stay discovery which is unnecessary for resolving the motion and threatens to impose a needless yet significant burden on one of the parties.").

The Court should end discovery as scheduled on June 1, 2016 to permit WWE to file its motion for summary judgment demonstrating the speciousness of Plaintiffs' claims pursuant to the existing schedule.  If Plaintiffs contend that any additional discovery is necessary to enable them to oppose summary judgment, then the Court may consider such a request pursuant to Rule 56(d).  *See*  Fed. R. Civ. P. 56(d) (court may allow time to take discovery "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment).  This rule requires Plaintiffs to demonstrate through an affidavit what facts would be obtained through additional discovery that could be used to avoid summary judgment on their claims before they are entitled to such discovery.  *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (stating that a party can request discovery to oppose summary judgment only if it files an affidavit describing how the facts that it seeks to obtain are reasonably expected to raise a genuine issue of material fact); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)

(stating that a court can reject a request for additional discovery even if it is properly and timely made through an affidavit if the request is based on speculation as to what potentially could be discovered); *Gray v. Darien*, 927 F.2d 69, 74 (2d Cir. 1991) (stating that "an opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of a summary judgment motion") (internal quotation marks omitted).

In contrast, permitting Plaintiffs to engage in a fishing expedition regarding every document that WWE may have referring to concussions and expanding the relevant time period for discovery by five additional years serves no purpose other than to increase delay and expense.  Such additional discovery would not affect the outcome of the motion for summary judgment because the indisputable facts described above entitle WWE to summary judgment on Plaintiffs' claims regardless of what additional facts may be discovered.[13]  *See Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 8 (1st Cir. 2007) ("In this context, discovery obtained from the defendants could not have altered the outcome which, in the district court's view, was ordained by the plaintiffs' own deposition testimony."). Plaintiffs are simply not entitled to further discovery that will have no impact on the Court's decision on the summary judgment motion.  *See Gomes v. United States*, No. 3:11-CV-01825, 2012 U.S. Dist. LEXIS 164526, at *28-30 (D. Conn. Nov. 19, 2012) (Bryant, *J.*) (denying request for additional discovery because "Plaintiff

---

[13] For example, given the legal requirement of detrimental reliance, nothing in WWE's files will allow Plaintiffs to overcome Singleton's and LoGrasso's dispositive admissions that they could not articulate the basis for a fraud claim. Likewise, given WWE's production of all records related to LoGrasso, none of which discuss any head injury, nothing else in WWE's files will allow LoGrasso to overcome his admission that he never disclosed a head injury to WWE.

has failed to show how the additional discovery request would create a genuine issue of material fact or is essential to his opposition to Defendant's motion."); *United States v. Fireman's Fund Ins. Co.,* No. 99 Civ. 2622, 2001 U.S. Dist. LEXIS 804, at *14-15 (S.D.N.Y. Jan. 30, 2001) ("A party's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a Rule 56(e) motion for summary judgment."); *Scott v. Newsday, Inc.*, No. CV-88-0152, 1989 U.S. Dist. LEXIS 2295, at *28 (E.D.N.Y. Feb. 28, 1989) ("[C]ourts have not hesitated to award summary judgment over claims of inadequate discovery where it is clear from the affidavits that there exists no real question of fact.").  Accordingly, the Court should deny the motion to compel unless and until Plaintiffs can show how the additional discovery they seek could overcome WWE's summary judgment motion.

> ## B.    Plaintiffs Seek Discovery of Information That Is Not Permitted Under the Court's Orders.

Plaintiffs impermissibly seek to compel the production of documents that exceed the temporal and scope limitations on discovery imposed by the Court's orders.  The Court specifically limited the time period for discovery to the years 2005 or later and the scope of discovery to three narrow issues relating to the remaining fraud by omission claims of Singleton and LoGrasso.  Represented by an army of class action lawyers, the two individual Plaintiffs blatantly disregard these limitations and continue to seek broad-based class action discovery untethered to their individual claims even though their class action allegations were withdrawn more than a year ago and the two other class action cases that

were filed have been dismissed in their entirety.  The documents that Plaintiffs

seek to compel are irrelevant to the issues on which the Court has authorized

discovery and would not assist Plaintiffs in opposing summary judgment in view

of the dispositive facts establishing that they have no viable claim.

1.     <u>Documents From Before 2005</u>

Plaintiffs improperly seek the production of documents from 2000 to the

present.  The Court's order specifically limited the scope of discovery to WWE's

knowledge of the risks of long-term neurodegenerative conditions resulting from

head injuries to wrestlers "<u>in the year 2005 or later</u>."  Order Partially Lifting Stay

of Discovery (Doc. No. 107).  The Court's order restricting the temporal scope of

discovery was based on Plaintiffs' own allegations about when WWE supposedly

knew of a possible link between head trauma and long-term neurodegenerative

diseases.  *See* Memorandum of Decision (Doc. No. 116) at 9.[14]  Plaintiffs have

never made <u>any</u> allegations that WWE had actual knowledge of such information

<u>before</u> 2005.  Based on their own allegations, documents from before 2005 are not

relevant to Plaintiffs' remaining fraud by omission claim.  For this reason, during

the telephonic conference held on May 19, 2016, the Court stated that it is not

---

[14] The Court's order limited discovery to 2005 and later based on Plaintiffs' allegations that WWE became aware of such information as a result of a Mayo Clinic article published in 2005.  As WWE has shown, the article posted on the Mayo Clinic website did not mention any link to long-term neurodegenerative conditions either in general or in connection with professional wrestling.  *See* Reply in Support of Motion for Reconsideration (Doc. No. 150) at 1.  Further, WWE has searched its hard copy records and electronically stored information for the referenced article and no copy of the article has been found in its files.

26

inclined to order the production of documents from before 2005.  *See* Transcript (Doc. No. 154) at 4.

There is no reason to permit discovery predating 2005 in this case because LoGrasso signed with WWE in 2005 and Singleton signed with WWE in 2011. Because the relevant issue is whether WWE owed either of <u>these</u> Plaintiffs a duty to disclose information about the long-term neurodegenerative risks of repeated head trauma in wrestling, the relevant time frame is necessarily 2005 and beyond.

There also is no reason to believe that WWE had any knowledge of the link between repeated head trauma and long-term degenerative neurological conditions in wrestlers before <u>September 2007</u>.  As Plaintiffs know full well, the first reported case of CTE in a professional wrestler involved Chris Benoit. Nothing produced in discovery suggests that WWE had any knowledge of information concerning a link between repeated head trauma and long-term neurodegenerative conditions in wrestlers until the findings that Chris Benoit had CTE were first announced in a press conference in September 2007 (after LoGrasso had already left WWE).  Accordingly, there is no factual or legal basis to require WWE to produce documents dating back before 2005.

Moreover, Plaintiffs have been fully able to explore the state of WWE's knowledge as of 2005 in the depositions that have been taken in this case. Additional discovery of information prior to 2005 is unduly burdensome in proportion to the needs of the case, particularly considering the irrelevance of events before 2005 to these Plaintiffs' remaining claims.

2.   **Documents Outside the Scope of the Court's Orders.**

The Court's order specifically limited the scope of discovery in this case to only the claims of Singleton and LoGrasso and only to whether (1) WWE had knowledge of the risks of long-term neurodegenerative conditions resulting from concussions or mild traumatic brain injuries to wrestlers,[15] (2) whether it may have breached a duty to disclose such information to Singleton or LoGrasso, and (3) whether any breach continued after Singleton and LoGrasso ceased performing for WWE.  *See* Order Partially Lifting Stay of Discovery (Doc. No. 107). Consistent with this order, WWE produced documents and communications that related to the risks of long-term neurodegenerative conditions resulting from head injuries, including presentations to Singleton and other talent advising them of such reported risks.   WWE also produced all documents and communications concerning Singleton and LoGrasso.  Thus, WWE produced Singleton's complete medical file, including documents relating to ImPACT tests given to Singleton and treatment provided to Singleton following his single reported concussion.  WWE also produced LoGrasso's complete medical file, which demonstrated that he never sought or received treatment for any head injury from WWE.  Plaintiffs' complaint that WWE has not produced other documents related neither to WWE's knowledge of the risks of long-term neurodegenerative conditions generally nor to these Plaintiffs specifically should be rejected.

---

[15] As discussed above, the Order also referred to whether WWE "should have had knowledge" but the Court subsequently dismissed all of Plaintiffs' claims except their fraud by omission claim, including their negligence claim.

a.     **Documents Regarding Concussions**

The Court did not authorize broad discovery into WWE's treatment of head injuries or concussions generally.  As the Court observed in its ruling on the motion to dismiss, "Plaintiffs have alleged that the injuries they sustained are <u>not</u> the discrete head injuries they suffered while wrestling for WWE, but <u>rather</u> the increased risk of developing <u>permanent neurological conditions</u>, including but not limited to CTE, as a result of their wrestling activity."  Memorandum of Decision (Doc. No. 116) at 12 (emphasis added).  Moreover, the Court stated that Plaintiffs could only pursue a claim to the extent that "information about a link to <u>permanent degenerative conditions</u> could plausibly have informed plaintiffs' own choices about whether and when to re-enter the ring after sustaining a head injury and could plausibly have prevented permanent brain damage."  *Id.* at 68.

The Court therefore recognized the important distinction between information about concussion incidents and information about any long-term neurodegenerative effects of concussions (such as Alzheimer's or CTE).  Only discovery concerning WWE's knowledge of the latter could possibly be relevant to Plaintiffs' remaining fraud by omission claim under the Court's order.  WWE has already produced documents concerning the long-term neurodegenerative risks of concussions.  However, documents concerning concussions generally or the treatment and management of concussions sustained by other WWE wrestlers do not have any bearing on Plaintiffs' sole surviving fraud claim unless they reflect information concerning <u>long-term neurodegenerative risks</u> because the remaining claim asserted by Singleton and LoGrasso only relates to a failure

to disclose information about <u>those</u> particular risks.  In addition, requests relating to the treatment of other WWE wrestlers for concussions would impermissibly require WWE to produce documents reflecting protected medical information of WWE performers who are not parties to this lawsuit and would raise substantial issues regarding privacy rights.

   b.   <u>Documents Concerning WWE's Wellness Program</u>

   The Court's Order also did not permit discovery concerning the creation and implementation of the Wellness Program.  Plaintiffs' request for such documents is based on their continued mischaracterization of the Wellness Program and its evolution over time.

   When it was first created in 2006, the Wellness Program only provided cardiovascular testing and drug testing to current performers.  Exs. 16 & 17.  The Wellness Program was not expanded to include the ImPACT concussion management program until March 2008 when WWE hired Dr. Maroon as its medical director, which was <u>after</u> LoGrasso's stint with WWE ended.  Ex. 16.  WWE has already produced its contract with ImPACT and documents concerning ImPACT testing of Singleton.  By his own admission, LoGrasso did not seek or receive treatment of any kind from the Wellness Program and, as noted, he left WWE before ImPACT testing was ever done.  The Court's Order does not permit discovery that is unrelated to the claims of Singleton or LoGrasso or unrelated to the long-term neurodegenerative effects of concussions.  Accordingly, documents regarding the creation and implementation of the Wellness Program

have no relevance to the fraud by omission claim asserted by Plaintiffs Singleton and LoGrasso.[16]

### c.  Documents Relating to Certain Wrestling Maneuvers

Plaintiffs' request for documents related to WWE's ban on the use of chair strikes to the head and other maneuvers also has no relevance to the claims of Plaintiffs Singleton or LoGrasso.  Neither Singleton nor LoGrasso alleges that he was injured as a result of chair shots to the head or other prohibited moves in any WWE match.[17]  Ex. 14 & 18.  Rather, both Singleton and LoGrasso testified that they did not receive such blows and admitted that their alleged injuries were sustained in conventional wrestling matches and that they freely assumed the risk of injury inherent in their profession.  *Id.*

### d.  Documents Relating to Bill DeMott

Plaintiffs improperly seek the production of documents regarding former trainer Bill DeMott.  WWE has already produced communications with DeMott that relate to either Singleton or LoGrasso.  Indeed, Plaintiffs examined DeMott extensively about these communications in his deposition.  Nevertheless, Plaintiffs continue to demand documents concerning alleged misconduct by DeMott at WWE's developmental facilities unrelated to Plaintiffs and documents

---

[16] Plaintiffs' claim that the Wellness Program was created to monitor head injuries based on a newspaper article attached as Exhibit E to their motion is false.  The article states that the program that WWE <u>now</u> has in place monitors head injuries.  However, to the extent the article can be read to suggest that the Wellness Program monitored head injuries before 2008, it is incorrect.

[17] However, LoGrasso admitted that he was repeatedly struck on the head with chairs and many other foreign objects in matches sponsored by <u>other</u> wrestling promotions including WCW and ECW.  Ex. 15.

concerning the termination of WWE's relationship with DeMott.  Such documents are completely irrelevant to whether WWE defrauded Singleton or LoGrasso. Plaintiffs' requests are vexatious and harassing rather than calculated to lead to discoverable information.

> e.    **Plaintiffs' Medical Records Produced by Third Parties**

WWE has already produced its compete medical files for both Plaintiffs. Plaintiffs nevertheless continue to demand production of medical records produced to WWE by third parties.  WWE is not required to produce to Plaintiffs their own medical records that it obtained from subpoenas served on the third parties.  *See Tota v. Bentley*, 2008 U.S. Dist. LEXIS 61885, at *13-15 (W.D.N.Y. Aug. 12, 2008) ("[D]efendants are not obliged to produce plaintiff's medical records for him.").

WWE had to incur the substantial burden and expense of subpoenaing Plaintiffs' medical records from over 40 health care providers because Plaintiffs failed to comply with their own obligations to produce such records in response to WWE's discovery requests.  Plaintiffs were required to produce these records because they are within their control and can be accessed upon request.  *See Guest v. Alzheimer's Res. Ctr.*, No. 3:08-CV-1247, 2009 U.S. Dist. LEXIS 42324, at *4-5 (D. Conn. May 19, 2009) ("[P]laintiff is reminded that she must produce all responsive documents that are in her possession, custody or control.  This includes items, such as medical records, that are not in her personal possession but which she can obtain upon request.").  Indeed, Plaintiffs have demonstrated that they know how to request and obtain their own medical records from their

own providers because they did so prior to Dr. Rodgers-Neame's deposition in this case.  Plaintiffs have cited no legal authority that would require WWE to produce their medical records after WWE has undertaken the effort and expense to obtain those records from third parties as a result of Plaintiffs' non-compliance with their own discovery obligations.[18]

C.   The Additional Discovery Sought By Plaintiffs Is Unduly Burdensome

Requiring production of the additional documents sought by Plaintiffs in their motion to compel would be unduly burdensome and expensive for WWE. *See* Fed. R. Civ. 26(b)(1) (courts must limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit").

First, it is unduly burdensome to require WWE to identify, collect, and review additional documents and electronically stored information that bear no relevance to the narrow issues on which the Court has authorized discovery. This is particularly so here because the discovery sought also will have no bearing on the viability of Plaintiffs' claims, either in the face of WWE's pending motion for reconsideration or WWE's intended motion for summary judgment.

Second, the cost associated with the identification, collection, and review of such additional documents would be substantial.  WWE has already spent approximately $400,000 identifying, collecting, and reviewing the documents that are within the scope of the Court's discovery order and producing them to Plaintiffs in this case.  There would be significant additional costs associated

---

[18] The case cited by Plaintiffs, *Umbach v. Carrington Inv. Partners (US), LP*, No. 08-CV-484, 2009 U.S. Dist. LEXIS 95046 (D. Conn. Oct. 9, 2009), is wholly inapposite and did not even concern the production of medical records.

with the identification, collection, and review of documents from the time period of 2000 to 2004.  Such costs are unwarranted where neither Plaintiff signed with WWE until 2005 or thereafter and the operative allegation is that WWE became aware of long-term neurodegenerative risks of head injuries as a result of a 2005 Mayo Clinic article.  WWE also would incur substantial costs to review documents related to the treatment or management of concussions involving other performers which does not reflect information concerning the long-term neurodegenerative risks of concussions.  Because WWE has already produced all non-privileged documents that it was able to locate from the relevant time frame after a diligent search that relates to the long-term neurodegenerative risks of concussions, the marginal utility of the additional documents Plaintiffs seek is outweighed by that cost.  In sum, it would be unduly expensive and time-consuming for WWE to comply with the unreasonable demands made in Plaintiffs' motion to compel.[19]

The undue burden and expense that would be imposed on WWE far outweighs the likely benefit of such discovery because the requested documents are not relevant to the narrow issues under the Court's order, are not proportional to the needs of this case, and would not affect the outcome of WWE's motion for

---

[19] Though WWE believes its opposition to the present motion is sufficiently supported by the arguments raised in the text, WWE was not able in the limited time available to comply with the Court's order of May 24, 2016 to obtain a declaration from the employee with personal knowledge of these details prior to the deadline for its response because he is traveling.  If the Court requests, WWE will be prepared to supplement this submission next week with a sworn declaration detailing the burdens and costs that compliance with the demands made in Plaintiffs' motion to compel would impose.

summary judgment on Plaintiffs' fraud by omission claim or its pending motion for reconsideration.

    **D.**    <u>The Court Should Deny the Motion to Compel Because It Is Untimely</u>

    "The broad discretion afforded courts over discovery matters includes the discretion to determine whether a movant's tardiness constitutes undue delay." *Joseph v. Sikorsky Aircraft Corp.*, No. 14-CV-00424, 2015 U.S. Dist. LEXIS 120091, at *9 (D. Conn. Sept. 9, 2015) (internal quotation marks and citation omitted). "[A] motion to compel should not be served at the last minute. A number of courts have found that motions to compel filed days before the discovery deadline were untimely." *Id.* at *10 (internal quotation marks omitted). "Where, as here, the plaintiff has been dilatory in pursuing discovery and the information sought is of marginal (if any) relevance, the Court will not further extend the discovery period and grant a motion to compel." *Id.* (quotation marks omitted).

    In this case, Plaintiffs received WWE's objections and responses to their requests for production on April 15, 2016. Despite a minor delay due to their own lack of responsiveness, Plaintiffs received the actual documents on April 26, 2016. Knowing that the end of the discovery period was approaching, Plaintiffs waited until May 6, 2016 to advise this Court that they intended to file a motion to compel in their motion to extend the discovery schedule. Plaintiffs then waited until May 17, 2016 to actually file the "emergency" motion to compel with only two weeks left in the discovery period. As a result, WWE has had to prepare its response to this motion in 10 days rather than the three weeks that would

ordinarily be permitted under the rules.  Moreover, compliance with any order to produce documents would not be due until <u>after</u> the current close of discovery.

Under these circumstances, the Court should exercise its discretion to deny the motion to compel in its entirety and conclude that Plaintiffs waived their ability to pursue additional discovery due to their lack of diligence.  *See Joseph*, 2015 U.S. Dist. LEXIS at *9-12 (denying motion to compel filed six days before the end of the discovery period because the plaintiff was not diligent in pursuing discovery); *Coudert v. Janney Montgomery Scott, LLC*, No. 3:03-CV-324, 2004 U.S. Dist. LEXIS 21135, at *2 (D. Conn. Oct. 7, 2004) (denying motion to compel where plaintiff was dilatory in pursuing discovery and the requested discovery was of marginal relevance); *Hyland v. Homeservices of Am., Inc.* No. 3:05CV612, 2012 U.S. Dist. LEXIS 67028, at *18-22 (W.D. Ky. May 14, 2012) (denying motion to compel filed ten days before the close of discovery because plaintiffs failed to file the motion in a timely manner that would have allowed sufficient time for the production of the requested documents); *West v. Miller*, No. 05C4977, 2006 U.S. Dist. LEXIS 56243, at *14-17 (N.D. Ill. Aug. 11, 2006) (denying motion to compel that was filed eleven days before the close of discovery and concluding that the undue delay was sufficient to waive the party's rights to pursue the discovery); *Hyland v. Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) ("[I]f the moving party has unduly delayed, the court may conclude that the motion to compel is untimely.") (internal quotation marks omitted).

**E.**   **The Court Should Reject Plaintiffs' Request to Extend the Discovery Schedule In this Case**

Plaintiffs have renewed their request for an extension of the discovery deadline based on their motion to compel the production of additional documents from WWE.  The Court already rejected this argument when it denied Plaintiffs' motion to extend the discovery schedule the first time and should do so again. *See* Order Denying Motion for Extension of Time (Doc. No. 29).  During the subsequent teleconference held on May 19, 2016, the Court reiterated that it "was disinclined to even consider any motions for extensions of time" because it could see no reason why the parties could not meet the current discovery deadline. *See* Transcript (Doc. No. 154) at 5-6.

"A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "A finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  "In addition to diligence, other factors to consider when assessing whether to enlarge a discovery deadline include:  (1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence." *Casagrande v. Norm Bloom & Son, LLC*, No. 3:11-CV-1918, 2014 U.S. Dist. LEXIS 158752, at *6  (D. Conn. Nov. 10, 2014) (internal quotation marks and citations omitted).

Plaintiffs have failed to establish the requisite good cause to extend the discovery deadline set forth in the scheduling order because they have not acted

diligently in pursuing discovery in this case and have not shown that the current discovery deadline cannot be met for reasons that were not foreseeable to them at the time the scheduling order was entered.  Plaintiffs' lack of diligence is even more inexcusable given that they have been represented in these proceedings by counsel from six different law firms and therefore have had ample resources to complete discovery by the deadline set by the Court.

Moreover, WWE has already provided Plaintiffs with written discovery responses, an extensive document production, and deposition testimony from its highest-ranking executives on matters that fall within the scope of the Court's discovery order.  If WWE's dispositive motions are granted, then this action will be dismissed in its entirety and the parties will have saved considerable resources on additional discovery that is unnecessary.  Under these circumstances, no extension of the discovery schedule is warranted.

1.   **The Lack of Diligence on the Part of Plaintiffs Precludes An Extension of the Discovery Schedule.**

The Second Circuit has emphasized that "the primary consideration" in determining whether to extend the deadlines in a scheduling order "is whether the moving party can demonstrate diligence."  *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Plaintiffs have not acted diligently in pursuing (or responding to) discovery in this case.  Plaintiffs knew that the Court's scheduling order provided less than five months to complete discovery limited to three narrow and specific issues. Plaintiffs nevertheless waited an entire month after the Court's order to serve their requests for production on WWE.  Plaintiffs then waited until the last month

of the discovery period to serve an untimely set of interrogatories and requests for admissions and to unilaterally notice nine depositions.  Plaintiffs waited to serve these deposition notices until the last minute even though they knew about these witnesses long before discovery commenced and had identified nearly all of them in their Second Amended Complaint.  Such dilatory tactics on the part of Plaintiffs warrant the denial of their motion to extend the discovery schedule. *See, e.g., Gray v. Darien*, 926 F.2d 69, 74 (2d Cir. 1991) (holding that the district court did not abuse its discretion in precluding further discovery where the plaintiffs failed to seek discovery in the six months provided by the scheduling order); *Odom v. Matteo*, 772 F. Supp. 2d 377, 404-407 (D. Conn. 2011) (holding that plaintiff did not establish good cause for extension of the discovery schedule due to lack of diligence) (Bryant, *J.*).

Plaintiffs cannot claim that an extension of the discovery schedule is warranted by delays in WWE's document production.  Unlike Plaintiffs, WWE provided its responses by the deadline agreed to by the parties and was prepared to produce the responsive documents to Plaintiffs on the due date.  The minor delay in receiving the documents was attributable to Plaintiffs' own failure to respond for days to WWE's inquiry about where to send them.  Plaintiffs also cannot blame WWE for any alleged delay in holding a meet-and-confer concerning WWE's document production.  WWE's counsel advised Plaintiffs that they were available for a conference on the exact date suggested by Plaintiffs but Plaintiffs then failed to have the conference due to their own unavailability.

Plaintiffs also have failed to meet their burden of establishing that the additional documents that they seek to compel would negate the dispositive admissions and evidence WWE will rely upon for summary judgment in this case or would even be relevant to the specific issues identified by Court in its discovery order.  *See Jennite v. City of New York Dep't of Bldgs.*, No. 09 Civ. 3464, 2010 U.S. Dist. LEXIS 63435, at \*4-7 (S.D.N.Y. June 21, 2010) (denying motion to extend discovery period because "[a] party's assertion that further discovery is needed, without more, will not suffice to modify a scheduling order") (internal quotation marks and citations omitted).  In view of the indisputable evidence demonstrating that Plaintiffs have no viable claim, extending discovery will serve no other purpose than to increase costs and harass WWE.  The Court should maintain its case management schedule to enable WWE to file its summary judgment motion based on the indisputable evidence pursuant to the existing schedule.  Any claimed need for discovery to resist summary judgment should be assessed in that context pursuant to the requirements of Rule 56(d).

2.   The Additional Factors Considered By Courts Weigh Against An Extension of the Discovery Schedule.

The additional factors considered by courts also weigh against a modification of the scheduling order.  First, WWE strongly opposes any extension of the discovery schedule in this case.  If the Court does not grant the pending motion for reconsideration, which WWE respectfully urges the Court to do because it is the most efficient way to resolve the remaining issues in the case, then the Court should receive summary judgment briefing in accordance

with the current schedule and decide in that context whether Plaintiffs are entitled to any additional discovery under Rule 56(d).

<u>Second</u>, an extension of the discovery schedule would be extremely prejudicial to WWE.  An extension of the discovery schedule would punish WWE for its diligence in pursuing discovery within the existing schedule and reward Plaintiffs for their gamesmanship and dilatory tactics.  An extension of the schedule would serve only to add greater expense to the defense of the sole remaining claims in an already costly and ultimately frivolous litigation waged by class action lawyers for their own benefit rather than for the benefit of two individuals who know next to nothing about "their" fraud claims.

An extension of the schedule would also severely prejudice WWE because it intends to file a motion for summary judgment demonstrating that Plaintiffs' claims are meritless and that any additional discovery would be unnecessary and unduly burdensome.  Plaintiffs should not be permitted to harass WWE with continued discovery in the face of indisputable evidence that their claims are baseless.  The Court should not extend the discovery period and disrupt the current schedule for dispositive motions.  *See Jennite*, 2010 U.S. Dist. LEXIS 63435, at *5-6 ("Although the assigned district judge has not set a trial date for this action, the defendant has requested a pre-motion conference, seeking leave to move for summary judgment.  Under these circumstances, the defendant would be prejudiced by the delay necessitated by reopening discovery.").

<u>Third</u>, Plaintiffs reasonably should have foreseen the need to move to compel sooner in light of the deadlines established by the Court.  Plaintiffs knew

that the Court established a limited time period to complete discovery on three narrow issues but inexplicably delayed serving their discovery requests, then delayed conferring with WWE about their concerns, and finally delayed filing the present motion seeking to compel production of additional documents until so close to the end of the discovery period that timely adjudication, much less compliance with any order on the motion, would be impossible.

<u>Finally</u>, further discovery is not likely to lead to relevant evidence and would not affect the dispositive issues in this case.  The undisputed facts demonstrate that neither Singleton nor LoGrasso could articulate any basis for a fraud claim against WWE.  Singleton's claim is also frivolous because WWE specifically advised him and all other talent of the risks that allegedly were fraudulently concealed from him before he suffered his alleged head injury.  In addition, LoGrasso's claim is both time-barred and frivolous because he never sought or received medical treatment from WWE for any head injury and was aware of the extensive media coverage reporting that former wrestlers had CTE caused by head trauma no later than 2007.  Because Plaintiffs have not explained how any additional discovery could be used to oppose WWE's motion for summary judgment, their request for an extension of the discovery schedule should be denied.  *See Longuidice v. City of Hartford*, No. 3:11-CV-00786, 2015 U.S. Dist. LEXIS 33328, at *6 (D. Conn. Mar. 18, 2015).  ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. Disregard of the order would undermine the court's ability

to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.").

IV.    **CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' Second Emergency Motion to Compel Responses to the Corrected First Requests for Production of Documents in its entirety.

DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.,

By:  /s/ Jerry S. McDevitt
    Jerry S. McDevitt (*pro hac vice*)
    Terry Budd (*pro hac vice*)
    Curtis B. Krasik (*pro hac vice*)
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-6500
    Fax: (412) 355-6501
    Email: jerry.mcdevitt@klgates.com
    Email: terry.budd@klgates.com
    Email: curtis.krasik@klgates.com

    Thomas D. Goldberg (ct04386)
    Jonathan B. Tropp (ct11295)
    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: tgoldberg@daypitney.com
    Email: jbtropp@daypitney.com
    Email: jmueller@daypitney.com

## CERTIFICATION OF SERVICE

I hereby certify that, on May 27, 2016, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)