# Exhibit 11

```
                                                              1
           UNITED STATES DISTRICT COURT

             DISTRICT OF CONNECTICUT
---------------------------------x
RUSS MCCULLOUGH, et al.,

          Plaintiff,

      vs.                        No. 3:15-cv-01074 (VLB)

WORLD WRESTLING ENTERTAINMENT, INC.,


          Defendant.
---------------------------------x
EVAN SINGLETON and VITO LOGRASSO,

          Plaintiffs,

      vs.                        No. 3:15-cv-00425 (VLB)

WORLD WRESTLING ENTERTAINMENT, INC.,


          Defendant.
---------------------------------x



     VIDEOTAPED DEPOSITION OF VITO LOGRASSO

          Philadelphia, Pennsylvania

               May 18, 2016

                9:35 a.m.



Reported by:
Jennifer Ocampo-Guzman, CRR, CLR
JOB NO. 44300
```

```
                                           2
 1
 2
 3
 4
 5
 6
 7
 8              May 18, 2016
 9                9:35 a.m.
10
11     Videotaped Deposition of VITO
12   LOGRASSO, held at the offices of
13   Kleinbard, LLC, 1650 Market Street,
14   Philadelphia, Pennsylvania, pursuant to
15   notice, before Jennifer Ocampo-Guzman,
16   a Certified Real-Time Shorthand
17   Reporter and Notary Public of the
18   Commonwealth of Pennsylvania.
19
20
21
22
23
24
25
```

```
                                           3
 1   A P P E A R A N C E S:
 2
 3
 4   Attorneys for Plaintiff Vito LoGrasso
 5       POGUST BRASLOW MILLROOD, LLC
 6       Eight Tower Bridge
 7       161 Washington St., Suite 1520
 8       Conshohocken, Pennsylvania 19428
 9       BY:  ANDREW J. SCIOLLA, ESQ.
10            asciolla@pbmattorneys.com
11
12
13   Attorneys for Plaintiff Vito LoGrasso
14       KYROS LAW OFFICES
15       17 Miles Road
16       Hingham, Massachusetts 02043
17       BY:  KONSTANTINE W. KYROS, ESQ.
18            kon@kyroslaw.com
19            ANTHONY NORRIS, ESQ.
20
21
22
23
24
25
```

```
                                           4
 1   A P P E A R A N C E S (Cont.d):
 2
 3
 4   Attorneys for Defendant
 5       K&L GATES, LLP
 6       210 Sixth Avenue
 7       Pittsburgh, Pennsylvania 15222
 8       BY:  JERRY McDEVITT, ESQ.
 9            jerry.mcdevitt@klgates.com
10            STEFANIE M. LACY, ESQ.
11            stefanie.lacy@klgates.com
12
13
14   ALSO PRESENT:
15       JOSEPH WILLS, Videographer
16
17
18
19
20
21
22
23
24
25
```

```
                                           5
 1          THE VIDEOGRAPHER:  We are now on
 2   the record.
 3          My name is Joseph Wills, the
 4   videographer obtained by David Feldman
 5   Worldwide.  This is a video deposition
 6   for the United States District Court for
 7   the District of Connecticut.  Today's
 8   date is May 18, 2016, and the video time
 9   is 9:35 a.m.
10          This deposition is being held at
11   1650 Market Street, Philadelphia,
12   Pennsylvania, in the matters of
13   McCullough, et al., versus World
14   Wrestling Entertainment Incorporated and
15   Singleton and LoGrasso versus World
16   Wrestling Entertainment Incorporated.
17   The deponent is Vito LoGrasso.
18          Will all counsel please identify
19   themselves.
20          MR. SCIOLLA:  Andrew Sciolla from
21   Pogust Braslow Millrood, on behalf the
22   plaintiff, Vito LoGrasso.
23          MR. KYROS:  Konstantine Kyros,
24   Kyros Law Offices, for the plaintiff,
25   Vito LoGrasso.
```

## Page 6

1  MR. NORRIS: Anthony Norris, Kyros
2  Law Offices, for the plaintiff.
3  MR. McDEVITT: Jerry McDevitt for
4  WWE.
5  MS. LACY: Stefanie Lacy for WWE.
6  V I T O   J.   L O G R A S S O, called
7  as a witness, having been duly sworn, was
8  examined and testified as follows:
9  EXAMINATION BY
10 MR. McDEVITT:
11     Q.  Would you state your name for the
12 record, please?
13     A.  Veto J. LoGrasso.
14     Q.  Have you ever testified under oath
15 before?
16     A.  No, sir.
17     Q.  Do you understand the oath you've
18 just taken?
19     A.  Yes, sir.
20     Q.  And you understand it obligates you
21 to tell the truth, even if telling the truth
22 is against your interest?
23     A.  Yes.
24     Q.  And even if the truth is contrary
25 to what you said in court pleadings?

## Page 7

1     A.  Yes, sir.
2     Q.  What's your date of birth, sir?
3     A.  6/18/64.
4     Q.  And what is your current address?
5     A.  12 Flemming Drive, Coatesville,
6  Pennsylvania, 19320.
7     Q.  Do you own that property?
8     A.  No, I do not.  My wife does.
9     Q.  How long have you lived there?
10    A.  Two years, I think.
11    Q.  Does anybody else live there
12 besides you and your wife?
13    A.  No, just us.
14    Q.  What is your wife's name?
15    A.  Becca, B-E-C-A -- C-C-A.
16    Q.  What was her maiden name?
17    A.  Ford.
18    Q.  And am I correct, she was also a
19 previous performer in the wrestling business?
20    A.  Yes, sir.
21    Q.  But not with WWE, correct?
22    A.  No.
23    Q.  She was with WCW?
24    A.  No.
25    Q.  Who did she perform for?

## Page 8

1     A.  She was more of an indie wrestler.
2     Q.  When were you married?
3     A.  September 27, 2014.
4         If I got that wrong, I die.
5     Q.  We're going ask her whether you
6  were right.
7         MR. SCIOLLA: Jerry, I don't meant
8  interrupt, but as you can see, he's
9  leaning toward you.  As much as you can,
10 keep your voice up so that he can hear.
11        MR. McDEVITT: If you can't hear or
12 understand any question I ask you, just
13 tell me and I will be glad to raise my
14 voice, but I don't want to appear like
15 I'm yelling at you.
16        I may yell at you anyway, but --
17        THE WITNESS: It's okay.
18    Q.  But seriously, if you cannot hear
19 me, tell me.
20    A.  Okay.
21    Q.  Is your wife disabled?
22    A.  Yes.
23    Q.  And what's the nature of her
24 disability?
25    A.  She has three herniated disks and

## Page 9

1  spinal stenosis.
2     Q.  And prior to moving to
3  Pennsylvania, you lived in Florida?
4     A.  Yes, sir.
5     Q.  When did you move to Pennsylvania?
6     A.  Let's see.  I'm not sure of the
7  day.  I know it was in 2014, I think.
8     Q.  The year is fine.  The year 2014?
9     A.  I think so, yeah.
10    Q.  Why did you move back to
11 Pennsylvania?
12    A.  Because I closed my wrestling
13 school, and I decided to get married.
14    Q.  Why couldn't you stay in Florida?
15    A.  My wife lives here, and she has two
16 children here.
17    Q.  Is it true you hate living in
18 Pennsylvania?
19    A.  Say that one more time?
20    Q.  You hate living in Pennsylvania?
21    A.  I'm not fond of Pennsylvania.  The
22 people are nice, but I'm not too fond of
23 Pennsylvania.
24    Q.  Have you told some of your
25 healthcare providers you hate living in

Page 58

1  medical attention from your own personal
2  doctor for these matters?
3      A.  Because I was also being treated by
4  Dr. Rios.
5      Q.  You've sworn under oath in the
6  Answers to Interrogatories here that you
7  never told Dr. Rios about any head injuries;
8  is that true?
9      A.  I told him I had headaches, I was
10 feeling woozy.  I told him that I was
11 lethargic, tired from being on the road; and
12 that's when he submitted and gave me
13 B-12 shots.
14     Q.  Did you ever tell him that you
15 thought you sustained a concussion or a head
16 injury in a specific match?
17     A.  I never told Dr. Rios that I had a
18 concussion.
19     Q.  Did you ever tell him, doctor, in a
20 match that just occurred, I think I hurt my
21 head?
22     A.  I told him that when I came back
23 from a match that I needed to collect myself
24 and that I was feeling a little woozy and I
25 had a welt on my stomach, if I'm interpreting

Page 59

1  one particular time and that I wasn't, you
2  know, I wasn't feeling right and I just
3  needed to take a shower just to cool off.
4      Q.  You told him you needed to take a
5  shower, you needed to take a shower to cool
6  off?
7      A.  Yeah.
8      Q.  But I'm being very specific here.
9  I want to make sure I understand.
10         Did you ever go to Dr. Rios and
11 say, doctor, I hit my head on something
12 during that fight, and I think I'm hurt, and
13 have him examine you for a specific head
14 injury that you reported to him?
15     A.  No, sir, I did not.
16     Q.  Including the one where you say
17 Steve Regal threw you into the steps?
18     A.  That's when I went back to him,
19 after the match; and when I went back, he
20 attended to me, because I had a lump on my
21 stomach.  And he saw that I was a little, a
22 little out of it and sweating a lot; and I
23 said that I needed to take a shower just to
24 cool down, then he attended to my stomach
25 afterwards.

Page 60

1      Q.  Did somebody point out to you, in
2  connection with coming in here today, that
3  you did go see the doctor after that event
4  with Steven Regal, but you just didn't bother
5  to report a head injury, you reported a
6  problem with your stomach?
7          MR. SCIOLLA:  Object to the form.
8  I'm going to -- are you asking about
9  what he discussed with his attorneys?
10         MR. McDEVITT:  I'm asking him if
11 somebody pointed that out to him, yes.
12         MR. SCIOLLA:  Including his
13 attorneys?
14         MR. McDEVITT:  Yes.
15         MR. SCIOLLA:  So you're asking for
16 an attorney-client privileged
17 communication?
18         MR. McDEVITT:  I'm asking -- I'm
19 entitled to anything that refreshed his
20 recollection for his testimony today.
21         MR. SCIOLLA:  That wasn't what your
22 question was.
23         MR. McDEVITT:  Let's try it this
24 way:
25     Q.  Did you look at Dr. Rios' notes in

Page 61

1  connection with preparing for your testimony
2  today?
3      A.  No, sir, I didn't.
4      Q.  Was it pointed out to you that you
5  didn't report a head injury to Dr. Rios, but
6  you reported some other thing to Dr. Rios?
7          MR. SCIOLLA:  I am going to object
8  to the form.  And to the extent he's
9  talking about attorney-client
10 communications, I don't want you to
11 answer.
12         MR. McDEVITT:  Well, which
13 attorney?  Which attorney-client --
14 which attorney are we talking about
15 privilege here?
16         MR. SCIOLLA:  Any of the ones that
17 he --
18         MR. McDEVITT:  Well, it's not any.
19 Which attorney specifically had that
20 communication you're claiming the
21 privilege with?  I'm entitled to know
22 the name of the attorney.
23         MR. SCIOLLA:  Any of the attorneys
24 he mentioned that he prepared for his
25 deposition.

16 (Pages 58 to 61)