UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, RYAN SAKODA, and MATTHEW ROBERT WIESE, individually and on behalf of all others similarly situated, | : : : : : |
| Plaintiffs, | : |
| v. | : CIVIL ACTION NO. : 3:15-cv-001074 (VLB) : Lead Case |
| WORLD WRESTLING ENTERTAINMENT, INC., | : : |
| Defendant. | : |
| EVAN SINGLETON and VITO LOGRASSO, | : : : |
| Plaintiffs, | : |
| v. | : CIVIL ACTION NO. : 3:15-CV-00425 (VLB) : Consolidated Case |
| WORLD WRESTLING ENTERTAINMENT, INC., | : : |
| Defendant. | : : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION TO COMPEL COMPLIANCE WITH DEPOSITION SUBPOENA**

Plaintiffs Evan Singleton and Vito LoGrasso ("Plaintiffs") respectfully submit this memorandum in support of their Motion for Reconsideration of the Court's Order denying Plaintiffs' Motion for Leave of this Court to briefly reopen discovery so that Plaintiffs may file a Motion to Compel Compliance with the Deposition Subpoena of Chris Nowinski in Massachusetts. Due to Plaintiffs' counsels' desire to not reveal all potential subjects of questioning for Mr.

1

Nowinski, Plaintiffs may have left the Court in some confusion as to the nature of and background for Mr. Nowinski's deposition. Moreover, Plaintiffs' intentions and need for Mr. Nowinski's deposition were further muddled by Defendant's opposition papers that attempted to narrow the Court's already limited discovery order and entirely misrepresented facts, including wild and reckless accusations about Plaintiffs' counsel. For these reasons and those discussed below, Plaintiffs' believe that the Court erred in denying the Plaintiffs' motion and not granting Plaintiffs a brief extension of the discovery period to enforce their timely served subpoena and conduct their timely noticed deposition of Mr. Chris Nowinski.

## I.      Mr. Chris Nowinski Has Relevant Information

By way of background, and by utilizing only publicly available information since Defendant has refused to provide any discovery on the issue, the deponent, Chris Nowinski, was a former WWE wrestler who was forced to retire from WWE wrestling in or around June 2003 because of repeated concussions that he had personally sustained while wrestling for WWE that year. Despite retiring from the ring, *Mr. Nowinski then became an employee of WWE following retirement in 2003 and remained an employee until 2008.*[1] While employed by WWE and retired from wrestling, Mr. Nowinski has stated that, in order to understand his own symptoms and condition, he began researching the connection between repeated concussions and permanent degenerative neurological conditions.[2] In fact, his research culminated in him authoring and publishing a book about the long-term neurological consequences of repeated concussions called "Head Games" in **September 2006**, at which time Plaintiff LoGrasso was still wrestling for WWE.

---

[1] https://www.linkedin.com/in/chrisnowinski
[2] https://web.archive.org/web/20111006204225/http://www.chrisnowinski.com/head_games.html

In fact, the promotional material on Mr. Nowinski's website from October 2006, succinctly characterizes the research that Mr. Nowinski had been gathering for three years:

> "His personal quest to understand his condition led him to discover that he had suffered not one concussion, but many over the course of an amateur career in football and his professional career in wrestling, and it was the cumulative effect of these injuries that had ended his career. He also learned that the worst was not necessarily behind him, as he uncovered research linking multiple concussions with serious long-term neurological disorders like Alzheimer's disease, memory impairment, and depression."[3]

Additionally, excerpts from Mr. Nowinski's MySpace page posted on or prior to September 1, 2006 have been directly quoted by other media outlets as stating:

> "*I quickly discovered that what the medical community knows about concussions and what the sports world knows are miles apart*. I decided to bridge that gap. In the short term, sports concussions can lead to emotional, behavioral, and cognitive disorders, and sometimes even death. In the long term, they can increase one's risk of Alzheimer's, depression, and many other neurological disorders."[4]

During the entirety of Mr. Nowinski's research, he was employed by the WWE and was having regular interaction with the senior members of management. In fact, in reference to the time period after his retirement and before his book was published (June 2003 - September 2006), Mr. Nowinski stated:

> "The WWE has been unbelievably supportive. Not only did they fly me around the country to see any doctor I asked for and spared no expense, but even after I said I wasn't likely to come back they still honored my contract. For eighteen months after the injury I couldn't have held down a job, so that kept me from a very bad place. I love my new role with the company, and I think they like having me there."[5]

To crystallize this point, **between June 2003 and September 2006, an employee of the WWE, who had regular interaction with WWE executives, was actively researching the link between multiple concussions and serious long-term neurological disorders like Alzheimer's disease,**

---

[3] https://web.archive.org/web/20111006204225/http://www.chrisnowinski.com/head_games.html
[4] http://insidepulse.com/2006/09/01/50689/
[5] http://www.pwinsider.com/ViewArticle.php?id=21346&p=1

3

**memory impairment, and depression.** This fact alone is more than sufficient to show that Mr. Nowinski does, in fact, have specific and relevant knowledge consistent with the Court's Discovery Order about what information the WWE had procured **by 2005** and beyond about the link between multiple concussions and serious long-term neurological disorders. Moreover, since June 14, 2007, Mr. Nowinski has been the co-Founder and President of the Concussion Legacy Foundation, which has been active in researching and advocating for further investigation into the long-term effects of concussions and brain trauma suffered by athletes.

Additionally, as pointed out to the Court previously, Mr. Nowinski, with all of the knowledge from being employed by WWE, publicly criticized the concussion protocol in place at WWE both before and after leaving the employ of WWE in 2008. During the time period both before and after the publishing of his book in September 2006, Mr. Nowinski specifically took aim at WWE for failing to take any steps to prevent *repeated* concussions and therein preventing the serious long-term neurological disorders that follow. Nowinski publicly stated:

> "The worst part about the experience was that for those first few weeks (WWE) doctors couldn't, and didn't, help me - they didn't diagnose me properly, they didn't ask the right questions, they didn't warn me of the risks - and that's why I kept getting back in the ring and hurting myself further. I later found out that was because most of them didn't understand the injury."[6]

It is critically important to understand the difference between WWE taking steps to prevent concussions from taking place, such as wearing helmets during training, and WWE having an effective concussion protocol in place *after* a concussion occurs, so as to properly treat a wrestler and prevent a wrestler from reentering the ring before his/her brain has adequately healed. Mr. Nowinski's critique of WWE relates to having a concussion protocol in place **after** a wrestler suffers a concussion. As of September 2006 upon publishing his book, Nowinski maintained that

---

[6] http://www.pwinsider.com/ViewArticle.php?id=21346&p=1

4

nothing had changed at the WWE despite WWE's knowledge of (1) Mr. Nowinski's experience and long-term symptoms since 2003 and (2) Mr. Nowinski's research on the subject of the long-term effects of repeat concussions.  By not sharing the information that had been procured and by not having or instituting an effective concussion protocol to diagnose and treat concussions and/or prevent *repeat* concussions, despite already having the experience and knowledge of their employee Chris Nowinski, WWE exposed all wrestlers, including Plaintiffs, to devastating and permanent brain injuries and neurological disorders.  This is at the heart of Plaintiffs' claims against Defendant, and to insinuate or state otherwise is to ignore the blatant facts.

Additionally, as previously alleged, after continuous public critique from Mr. Nowinski both before and after his employment with WWE ended in February 2008, WWE ultimately donated $1.2 million to Mr. Nowinski's foundation in 2013.  Suddenly, the public critique stopped. Up until February 2008, while an employee of WWE, Mr. Nowinski had repeatedly expressed and shared his knowledge and understanding of the link between repeat concussions and the long-term neurological disorders with WWE.  Nevertheless, as late as 2012, Plaintiffs allege that WWE was still not adequately educating and training wrestlers, including Mr. Singleton, about the link to and the dangers of long-term neurological disorders.  Moreover, as late as 2012, WWE still had not implemented a sufficient concussion protocol for dealing with a wrestler **after** he had suffered a concussion.  The public attention was squarely on the problems of the NFL in dealing with concussions, CTE, and related litigation.  Mr. Nowinski's book, "Head Games" also centered on football and the NFL.  Accordingly, wrestlers were not making the connection from the NFL to their own health and safety.  Yet Nowinski had certainly made the connection because of his personal experience with concussions, and that experience, research and knowledge was shared by Nowinski with WWE while he was an employee.  Any and all private discussions between Chris

Nowinski and WWE outside of the public eye have not been identified or disclosed to Plaintiffs by WWE, which is another reason why Mr. Nowinski's deposition is necessary. Again, all of this information is at the heart of Plaintiffs' claims.

Accordingly, Mr. Nowinski's testimony is not merely relevant; rather, Mr. Nowinski is uniquely positioned to testify about the actual, rather than purported, knowledge of WWE throughout the relevant time period. This is precisely why WWE (1) has produced little to no documents related to Mr. Nowinski to Plaintiffs; (2) has entirely refused to answer **a single** interrogatory or request for admission,[7] including those related to Nowinski; (3) has repeatedly misled the Court about the relevant testimony that Mr. Nowinski possesses; and (4) coordinated with Mr. Nowinski's attorney to "play possum" by not raising any objections to Plaintiffs' subpoena for deposition for weeks and then springing the challenge on Plaintiffs' counsel once they knew it was too late to rectify. As discussed further below, Defendant has consistently and improperly dictated to Plaintiff what is relevant in this case, despite Plaintiffs' protestations to the Court, and has withheld any and all information related to Mr. Nowinski, including blockading his deposition. Accordingly, Plaintiffs were forced to seek Court intervention to compel production from Defendant, and had no choice but to delay scheduling Mr. Nowinski's deposition until relevant documents about him were produced by Defendant, which never actually occurred.

Despite all of this, the Court has again challenged Plaintiffs to explain why Mr. Nowinski's deposition was not scheduled earlier in the discovery period. The Court need only look at the Defendant's discovery responses, attached hereto, to understand precisely how Defendant has withheld relevant information and skirted its discovery obligations. Denying Plaintiffs the ability

---

[7] Attached, please find Defendant's Responses to Plaintiffs' Interrogatories and Requests for Admission, which are entirely devoid of a single substantive response. To be sure, they only offer objections.

to take Mr. Nowinski's obviously relevant testimony would only serve to sanction Defendant's tactics.

## II. Plaintiffs Were Diligent in Their Attempts to Collect Discovery from WWE related to Mr. Nowinski and Take Mr. Nowinski's Deposition During the Discovery Period

Defendant has long known that Plaintiffs intended to take the deposition of Mr. Nowinski. He was identified on May 10, 2016 as a witness for whom Plaintiffs' sought a deposition.[8] Moreover, information and documents related to Mr. Nowinski were requested from Defendant in Plaintiffs' requests for documents, requests for admissions, and interrogatories. In fact, in Plaintiffs' Requests for Documents from February 12, 2016, Plaintiffs requested "All communications made between WWE and Chris Nowinski, including emails, letters, studies, and notes related to the Concussion Legacy Foundation and/or the Health and Safety of WWE Wrestlers."[9] These requests from February were not responded to until April 15, 2016, at which time this request was objected to for numerous reasons, and only a handful of documents were provided.[10] Plaintiffs met and conferred with Defense counsel, who continued to refuse to produce relevant documents, and Plaintiffs ultimately filed their Motion to Compel Responses to this and other requests.

Subsequently, the Court granted Plaintiffs' Motion in part[11] on May 31, 2016, the day before Mr. Nowinski's scheduled deposition, and responsive documents have yet to be produced. Frankly, Plaintiffs are not expecting Defendant to comply with the Court's Order by the June 15, 2016 deadline. In fact, Defense counsel has already informed Plaintiffs and the Court that they

---

[8] *See* Notice of Deposition, attached as Exhibit B.
[9] *See* Plaintiffs' Correct First Requests for Production of Documents to Defendant, attached as Exhibit C.
[10] *See* Defendant's Objections and Responses to Plaintiffs' First Requests for Production of Documents of Defendant, attached as Exhibit D.
[11] Court's Order dated May 31, 2016 (Doc. No. 160)

7

have no intention of producing further documents.[12] Moreover, Defendant may insist that documents from 2003 and 2004 related to Mr. Nowinski are irrelevant because even the Court seems to suggest at times that documents and information from before 2005 do not somehow contribute to the basis of the WWE's knowledge in 2005. Plaintiffs' allegations and assertions have always been that the WWE had adequate knowledge *as early as* 2005 making it liable in the case. The knowledge that WWE gained in 2003 and 2004 from Mr. Nowinski would necessarily be included in the knowledge that the WWE had in 2005, as it is not as if the WWE began an entirely new basis of knowledge once 2005 began. This factual predicate seems fairly undeniable, yet Plaintiffs have not received a single document from prior to 2005. Admittedly, the lack of disclosure is likely the result of confusion related to the Court's Order granting limited discovery. However, such patently relevant information should have been produced by Defendant initially, and furthermore, should have fallen within the Court's Order granting Plaintiffs' Motion to Compel Responses to Plaintiffs' Requests for Production of Documents.

Nevertheless, without any of the relevant discovery related to Mr. Nowinski to which Plaintiffs is entitled to under the law, and because the Court continuously denied Plaintiffs' attempts to extend discovery, Plaintiffs' counsel was forced to serve Mr. Nowinski on May 16, 2016 with a subpoena for appearance at a deposition.[13] After being served with the subpoena, Nowinski's attorney had several discussions with Plaintiffs' counsel challenging the notion that Mr. Nowinski had relevant information, despite Mr. Nowinski's history with the WWE as explained *supra*.[14] Not once during these discussions did Nowinski's counsel articulate any issues

---

[12] *See* Defendant's Opposition to Motion for Leave, at p. 5, fn. 2 ("Although the Court's order granted in part and denied in part the requested relief, WWE had already fully provided the discovery for which relief was granted."). (Doc. No. 167)

[13] Subpoena to Testify at a Deposition to Christopher Nowinski (Doc. No. 163-3)

[14] *See* Declaration of Konstantine Kyros. (Doc. No. 163, Exhibit A)

that he had with the form or substance of the subpoena served on Mr. Nowinski. *Id*. Subsequent to these discussions with Plaintiffs' counsel and before the scheduled date of the deposition of Wednesday, June 1, 2016, Mr. Nowinski's attorney spoke to Defense counsel, as admitted in Defendant's own opposition papers.[15] Only then, and at the close of business on Friday, May 27, 2016 before Memorial Day weekend, did Mr. Nowinski's attorney inform Plaintiffs' counsel that he believed the subpoena was materially defective due to the subpoena heading saying District Court of Massachusetts rather than District of Connecticut.[16] The subpoena heading, which was clearly overlooked by Plaintiffs' counsel, does not negate the fact that Plaintiffs' subpoena did correctly list the District of Connecticut as the operative court, the case-caption, the case number, and the time, place, and manner for Mr. Nowinski to be deposed.[17] *See* Fed. R. Civ. P. 45(a)(1)(A). Nevertheless, after speaking with Defense counsel, Mr. Nowinski's attorneys suddenly was not satisfied with the subpoena and refused to attend the deposition.[18] Moreover, Mr. Nowinski's attorney conveniently attempted to assert the same relevance objections, verbatim, as those used by Defense counsel in discovery responses.[19] Finally, Nowinski's counsel took the extraordinary step of demanding that Plaintiffs' counsel produce any documents or information proving that Mr. Nowinski possessed potentially relevant information, which Plaintiffs' counsel is absolutely under no obligation to do.[20] Such a request is entirely ironic given that Defendant has failed to provide any such documents in discovery, a fact certainly known by Mr. Nowinski's counsel. Indeed, it is clear that the collusion between Defense counsel and Mr. Nowinski's counsel resulted in (1) the verbatim regurgitation of relevancy objections, (2) a demand for disclosure of attorney work

---

[15] *See* Opposition to Motion for Leave to Compel at pg. 3 (Doc. No. 167)
[16] Subpoena to Testify at a Deposition to Christopher Nowinski (Doc. No. 163-3)
[17] *Id*.
[18] *See* Letter from Mr. Nowinski's Counsel, dated May 27, 2016, and attached hereto as Exhibit E.
[19] *Id*.
[20] *Id*.

product, concerning the documents or information that Plaintiffs' counsel intended to use with Mr. Nowinski, and (3) Mr. Nowinski not appearing for deposition.

Accordingly, on the day of the scheduled deposition, which was also the last day of the discovery period, Plaintiffs were forced to seek relief from this Court in an attempt to preserve their right to procure Mr. Nowinski's appearance at a deposition after the discovery deadline. The history of the discovery disputes related to Mr. Nowinski discussed *supra* is well-documented, and it clearly reveal that Plaintiffs have been entirely diligent in attempting to collect discovery about Mr. Nowinski from the WWE and take his deposition.

Given the representations above, Plaintiffs respectfully request that this Court reconsider its Order on Plaintiffs' Motion for Leave to File Motion to Compel Compliance with Deposition Subpoena.

**WHEREFORE,** as Plaintiffs have shown the Court how and why Mr. Nowinski has relevant information related to Plaintiffs' remaining claim, and as Plaintiffs have clearly been diligent in attempting to procure relevant discovery, including Mr. Nowinski's deposition, Plaintiffs respectfully submit that this Court should reconsider its previously ruling on Plaintiffs' Motion for Leave to File a Motion to Compel Complaint, and grant a short extension of the discovery deadline for completion of this deposition.

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

**DATED: June 10, 2016.**

               */s/ Andrew J. Sciolla*
               **Andrew J. Sciolla, Esquire**
               **Harris L. Pogust, Esquire**
               **Pogust Braslow & Millrood, LLC**
               **Eight Tower Bridge, Suite 940**
               **161 Washington Street**

**Conshohocken, PA 19428**
**Telephone: (610) 941-4204**
**Facsimile: (610) 941-4245**
**asciolla@pbmattorneys.com**
**hpogust@pbmattorneys.com**

**Konstantine W. Kyros**
**Anthony M. Norris**
**KYROS LAW OFFICES**
**17 Miles Rd.**
**Hingham, MA 02043**
**Telephone: (800) 934-2921**
**Facsimile: 617-583-1905**
**kon@kyroslaw.com**
**anorris@kyroslaw.com**

**Charles J. LaDuca**
**CUNEO GILBERT & LADUCA, LLP**
**8120 Woodmont Avenue, Suite 810**
**Bethesda, MD 20814**
**Telephone: (202) 789-3960**
**Facsimile: (202) 789-1813**
**charles@cuneolaw.com**

**Michael J. Flannery**
**CUNEO GILBERT & LADUCA, LLP**
**7733 Forsyth Boulevard, Suite 1675**
**St. Louis, MO  63105**
**Telephone:     (314) 226-1015**
**Facsimile: (202) 789-1813**
**mflannery@cuneolaw.com**

**William M. Bloss**
**Federal Bar No: CT01008**
**KOSKOFF, KOSKOFF & BIEDER**
**350 Fairfield Avenue**
**Bridgeport, CT 06604**
**Telephone: 203-336-4421**
**Facsimile: 203-368-3244**

**Robert K. Shelquist**
**Scott Moriarity**
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
**100 Washington Ave., S., Suite 2200**
**Minneapolis, MN 55401-2179**
**Telephone: (612) 339-6900**

**Facsimile: (612) 339-0981**
**rkshelquist@locklaw.com**
**samoriarity@locklaw.com**


**Erica Mirabella**
**CT Fed. Bar #: phv07432**
**MIRABELLA LAW LLC**
**132 Boylston Street, 5th Floor**
**Boston, MA 02116**
**Telephone: 617-580-8270**
**Facsimile: 617-580-8270**
**Erica@mirabellaLLC.com**

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of June, 2016, a copy of the foregoing Memorandum in Support of Motion for Reconsideration was served via this Court's electronic case filing system to all counsel of record.

                                          */s/Andrew J. Sciolla*
                                          **Andrew J. Sciolla**