## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RUSS McCULLOUGH,** *et al.,* | : | **No. 3:15-cv-01074 (VLB)** |
| | : | **Lead Case** |
| **Plaintiffs,** | : | |
| | : | |
| *vs.* | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

| | | |
|---|---|---|
| **EVAN SINGLETON and VITO** | : | **No. 3:15-cv-00425 (VLB)** |
| **LOGRASSO,** | : | **Consolidated Case** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| *vs.* | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

### DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION TO COMPEL COMPLIANCE WITH DEPOSITION SUBPOENA

**Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits this opposition to plaintiffs' motion for reconsideration of the Court's order denying plaintiffs' motion for leave to file motion to compel compliance with deposition subpoena (Doc. 174).**

## I.    INTRODUCTION

**On June 7, 2016, this Court entered an order (Doc. 171) after receiving briefs from plaintiffs, WWE, and a third party, Christopher Nowinski ("Nowinski")**

regarding plaintiffs' attempts to enforce an invalid subpoena served on Nowinski by which they hoped to conduct discovery on matters unrelated to the narrow issues permitted by the operative orders of this Court.  An affidavit placed before the Court by Nowinski's counsel established that plaintiffs' lead counsel, Konstantine Kyros ("Kyros"), had actually told Nowinski's counsel that he wanted the deposition to develop facts for other matters, and to question Nowinski about a concocted conflict of interest theory "designed to create fodder for the press."  Doc. 168, p. 2.  Kyros has not denied making such statements to Nowinski's counsel, and plaintiffs' various counsel consistently went well beyond the scope of the Court's orders during previous depositions. Since plaintiffs had not properly subpoenaed Nowinski to appear within the time period set by the Court to complete discovery on the specific narrow issues identified by the Court, plaintiffs also sought permission to extend the discovery period.

The Court's June 7, 2016 order denied plaintiffs' motion entirely.  *See* Doc. 171.  The Court noted that plaintiffs had failed to indicate that Nowinski had "any specific knowledge relevant to the Court's discovery Order" and that "the allegations that Mr. Nowinski has both criticized and praised WWE's concussion protocol, given presentations about concussions to wrestlers and accepted a donation from WWE for the Concussion Legacy Foundation are not relevant to

the issue of WWE's knowledge or lack thereof and <u>appear aimed at an audience</u> <u>other than this Court.</u>" *Id.* (emphasis added).[1]

Additionally, the Court found in its June 7, 2016 order denying plaintiffs' motion that they had failed to show good cause pursuant to Local Rule 7(b) for why they could not have deposed Nowinski or filed a motion to compel such deposition in the months prior to the discovery deadline. *Id.*

On Friday, June 10, 2016, plaintiffs' counsel moved the Court to reconsider its order of June 7, 2016 by a motion which neither cited the standard for reconsideration nor made any attempt to satisfy it. Instead, plaintiffs' counsel presented arguments that are waived under the proper reconsideration standards, which they themselves previously cited, and resorted to a characteristically deceptive presentation attempting to suggest that Nowinski does have relevant knowledge to the narrow issues involved. Plaintiffs' counsel also attempted to blame WWE for their own lack of diligence by a narrative divorced from reality. The true purpose of the motion was again to further the storyline for *The Boston Globe* article Kyros was feeding in order to smear WWE and Nowinski, a man who has done more to raise awareness of the importance

---

[1]  This is the second time the Court has noted that the plaintiffs' counsel is using legal process for other audiences. The initial observation was in the decision on WWE's motion to dismiss. *See* Doc. 116, p. 4. The Court's observation was right on the money both times. This time, Kyros was feeding his phony conflict of interest story to a friendly reporter at *The Boston Globe* to demean and intimidate Nowinski, and fed that reporter certain of his wrestlers/clients to be sources furthering the story. Perversely, plaintiffs' counsel then acted as if that hit piece was some sort of supplemental authority justifying the Court's reconsidering its decision not to permit the deposition of Nowinski. *See* Doc. 178. In reality, Kyros' actions are just the latest in a long line of unethical and sanctionable actions in this lawsuit, the full extent of which will be placed before the Court when WWE moves for summary judgment and other relief on August 1, 2016.

of concussions than perhaps anybody in this country, with phony conflict of interest charges.[2]

On Sunday, June 12, 2016, *The Boston Globe* hit piece promoted by Kyros was published, but frankly did not get much coverage due to the Orlando terrorist attack.

On June 14, 2016, this Court entered an order requesting WWE's response, if any, on or before June 21, 2016 and which noted WWE was free to stand on the arguments raised in its prior opposition.  *See* Doc. 177.  That same day, hoping to generate adverse publicity, plaintiffs' counsel filed an improper "Notice of Supplemental Authority" attaching *The Boston Globe* article and making it appear as if some journalist had just coincidently discovered the same alleged conflict of interest conjured up by Kyros in his papers before the Court.  *See* Doc. 178

---

[2]  In assessing the *bona fides* of the orchestrated character assassination of Mr. Nowinski, it is worth noting that the same class action lawyers involved here initially accused WWE of somehow fraudulently concealing public research from its wrestlers about CTE.  In discovery, they learned exactly the opposite — that WWE has for years prior to these lawsuits had medical professionals and Mr. Nowinski address talent and discuss the state of the science regarding head injury and the importance of reporting head trauma and not performing again until asymptomatic.  Plaintiffs' counsel also learned that WWE had made unrestricted gifts to the Concussion Legacy Foundation to facilitate its research and hopefully develop a test for CTE in the living and treatments for it.  Those facts alone should make anybody genuinely concerned about the health and welfare of performers happy.  Instead, lead counsel for these two plaintiffs has orchestrated a character assassination scheme against Mr. Nowinski, similar in tone and tenor to the previous character assassination of Stephanie McMahon, which the Court found included repeated mischaracterizations by plaintiffs' counsel, all while noting that a sanctions motion was pending.  *See* Doc. 116, pp. 8 n.1, 11 n.2, 58-59

For the reasons which follow, WWE largely stands on its prior opposition because plaintiffs have wholly failed to satisfy standards for reconsideration. However, WWE does wish to briefly address other falsifications and improprieties herein.

## II.   ARGUMENT

### A.   Plaintiffs Fail To Cite Or Satisfy The Standard For Reconsideration

Notably absent from plaintiffs' motion is any citation to the operative standard for seeking reconsideration.  This is not an oversight, but was done because plaintiffs realize they cannot satisfy that standard and are in fact presenting arguments which have been <u>waived under the standards plaintiffs themselves previously cited to the Court</u>.  When opposing WWE's motion to reconsider whether the sole remaining claim of fraudulent omission should be dismissed, plaintiffs advised the Court then that the grounds for reconsideration were "strict"; that the moving party must "point to controlling decisions or data" the Court overlooked which might reasonably be expected to alter the Court's conclusion; and that "arguments raised for the first time in motions for reconsideration '[a]re not properly presented to the district court . . . [and] are waived.'"  *See* Doc. 128, pp. 2-3 (citing *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015)).

Here, plaintiffs' counsel points to no controlling decision the Court overlooked.  Instead, in a filing which borders on ludicrous, plaintiffs filed a pleading styled as a Notice of Supplemental Authority (Doc. 178) to place before the Court the very media hit piece in the *Boston Globe* engineered by Kyros

5

against Nowinski and WWE.[3]  Newspaper articles, however, are not legal authority and therefore cannot properly be the subject of a notice of supplemental authority — a procedure which is to be used when new decisional authority comes down when a matter is *sub judice*.  *See Horse v. Kirkgard*, No. CV 13-155-BLG-SEH-CSO, 2014 WL 5365245, at *2 (D. Mont. Oct. 21, 2014) (disregarding notice of supplemental authority that attached newspaper article because "[n]ewspaper articles are not legal authority").  By doing so, Kyros perversely turned good deeds into some sinister conflict of interest without a shred of actual evidence to support his demonization of Nowinski and WWE.  Kyros attempts to embarrass and damage the reputation of one of the country's foremost advocates for concussion awareness caused Nowinski to post a lengthy statement regarding the attack on his work.  *See* Ex. 2.

In any event, a newspaper article is not supplemental authority, and the placement of it into the record here is just another attempt to publicize an ill-advised and unethical attack on the credibility of a person Kyros otherwise contends is a witness.

---

[3]   As is evident from the content of the article, counsel for WWE spoke to the "reporter" doing the piece.  WWE's counsel confronted him with the fact he was being used by Kyros, the architect of adjudicated falsifications in this case.  At no time did the reporter deny that Kyros fed him the story and the "sources" cited in the story.  The principal source in the story — Renee Dupree — is a Kyros client who cannot sue WWE for anything as a result of two separate releases he has executed.  Thus, Kyros uses him as a pawn for various improper things, like referring him to an unsuspecting law firm to bring a different class action case against WWE which was summarily dismissed once those attorneys were made aware of his releases, or to help him recruit other former wresters to join into Kyros' vexatious litigation plans against WWE.  Indeed, Kyros and Dupree appeared at a convention of former wrestlers on Saturday, June 11, 2016, where Kyros engaged in unethical behavior such as direct solicitations of prospective clients.  *See* Affidavit of Sean Michael Waltman, Ex. 1.

The remainder of the motion relies entirely upon matters which could have been raised originally and therefore constitutes waived argument.  Indeed, plaintiffs cannot meet the reconsideration standard based on their own admission.  Plaintiffs admitted that they <u>deliberately</u> failed to raise the issues in their original motion "[d]ue to Plaintiffs' counsels' desire to not reveal all potential subjects of questioning for Mr. Nowinski."  Doc. 174-1, pp. 1-2.  As a result of plaintiffs' counsels' admitted strategic gamesmanship, such arguments now raised for the first time in a motion for reconsideration have been waived.

**B.**      <u>Plaintiffs' Motion Advances False Facts</u>

Plaintiffs' motion opens with a false premise which is a harbinger of the deceptive presentation which follows.  Thus, the Court is told that "Defendant's repeated attempts to frustrate and side-step all of Plaintiffs' discovery requests related to Mr. Nowinski have so far prove (sic) successful and are the true cause of the delay."  Doc. 174, p. 2.

Thereafter, plaintiffs' counsel attempts to justify a completely erroneous presentation about Nowinski's career with WWE, and the chronology involved, by falsely proclaiming that "Defendant has refused to provide any discovery on the issue."  Doc. 174-1, p. 2.  The Court is then told that Nowinski had to retire from wrestling "in or around June 2003 because of repeated concussions."  *Id.* The plaintiffs' narrative then states that Nowinski became an employee of WWE following his retirement as a wrestler and remained an employee until 2008.  *Id.* Plaintiffs' counsel attempts to portray Nowinski as having been employed by WWE in that period to research and write a book researching concussions which supposedly culminated in him publishing a book in September 2006.  *Id.*  In bold

**7**

print, plaintiffs' counsel proclaims — falsely and without citation to any evidence — that Nowinski was employed between June 2003 - September 2006 by WWE to actively research the links between concussions and long-term neurological disorders and regularly interacted with WWE executives.  *Id.* at 3-4.

Following these falsehoods, plaintiffs' counsel next resort to creative editing of unintelligible gibberish from internet websites to claim that Nowinski "specifically took aim at WWE for failing to take any steps to prevent <u>repeated</u> concussions and therein preventing the serious long-term neurological disorders that follow."  *Id.* at 4.[4]   Following this statement is a purported quote from some internet article which is <u>not</u> attached by plaintiffs' counsel for the Court.  *See id.*[5]   Once that article is examined, it is obvious that Nowinski was not criticizing WWE doctors at all, which is not surprising because WWE did not have doctors on staff in the period Nowinski performed as a wrestler.  To make it appear as if he was criticizing WWE doctors, plaintiffs deceptively added "WWE" in parenthesis to the purported quote to change what Nowinski reportedly said

---

[4]   None of the rhetoric about repeat concussions, of course, has any factual or legal relevance to the fraudulent omission claim of Singleton and LoGrasso.  It is undisputed now after discovery that LoGrasso never reported a single concussion to WWE medical staff or anybody for that matter.  As to Singleton, he never was permitted to wrestle again after receiving his first and only concussion, and there is videotaped evidence that WWE's medical director specifically addressed all the talent located in Florida, where Singleton was located, in August 2012 about the importance of not returning to action until completely healed from a concussion.  Singleton has also admitted that he was told and knew <u>before</u> he sustained a concussion that he would not be permitted to wrestle if he received a concussion as long as he remained symptomatic.  *See* Deposition of Evan Singleton at 84:4-85:2; 166:8-16, Ex. 3.

[5]   A copy of what is found at the cited reference in Doc. 174-1, n.6 is attached hereto.  As the Court can see, the text of the article does not even print out clearly.  *See* Ex. 4.

to their liking.  Following this most recent example of deceptive editing, a pattern in this case, the Court is told that WWE's alleged failure to have concussion protocols to prevent repeat concussions "exposed all wrestlers, including Plaintiffs, to devastating and permanent brain injuries" which are "at the heart of Plaintiffs' claims . . .  and to insinuate or state otherwise is to ignore the blatant facts."  Doc. 174-1, p. 5.

The party ignoring blatant facts in a transparent attempt to redefine the only claim left in this case is plaintiffs' counsel.  This case is not about what other wrestlers were exposed to in or before 2003, or whether WWE had concussion protocols which adequately protected wrestlers who performed years prior to the two plaintiffs.  It is about two specific plaintiffs who performed at much different and later times.

Moreover, this Court has specifically ruled that "This case is not about concussion prevention," which plaintiffs' counsel blatantly ignores.  *See* Doc. 160.  Moreover, it has been admitted that LoGrasso never reported any head trauma to WWE during his tenure there, and he was caught dead to rights in perjuring himself repeatedly in his deposition on his recently invented claim that he suffered multiple concussions.  There is, therefore, no issue of whether WWE failed to prevent "repeat" concussions with him even if that issue were somehow relevant to a fraudulent omission claim.  Likewise, plaintiffs' own Second Amended Complaint, and Singleton himself, admit that WWE's concussion protocols operated to prevent him from ever wrestling again after his sole reported concussion.  He did not sustain another concussion and, as WWE will

9

demonstrate in its summary judgment papers, lied to every physician he saw thereafter for two years in furtherance of what one of his physicians testified was his plan <u>not</u> to get better.  Lastly on this point, the claim here is not, as this Court has repeatedly ruled, about concussion management.  It is about whether WWE had knowledge of some fact establishing a link between concussions and long-term neurodegenerative diseases and had a duty to tell these two plaintiffs about such links.

Equally disingenuous is the plaintiffs' depiction of Nowinski as an employee working in close concert with WWE executives to study the long-term risks of head injuries from 2003-2008.  Chris Nowinski was never an employee; did not work out of WWE's corporate headquarters where its top executives work; and did not criticize WWE in the book he published in late 2006.  After his wrestling career ended in 2003, he did personal appearances for WWE as an independent contractor living in Boston, where he independently began doing the research into the book he eventually published.  He was not employed by WWE to research head injuries, but instead served as a political correspondent doing promotional work such as for a voter initiative of WWE called *Smackdown Your Vote*.  *See* Affidavit of Mark Kowal, Ex. 5.  The actual work activities of Nowinski after his wrestling days ended are readily ascertainable on the internet, and WWE has attached several articles regarding his history and work.  *See* Exs. 6-8.  Insofar as his eventual book is concerned, he repeatedly credited WWE for <u>not</u> letting him wrestle when it became known he was injured.  In actuality, he wrote that he was willing to continue wrestling, but WWE agents would not let

him and that Vince McMahon personally pulled him aside and told him to take as much time as he needed to heal, stating "It's not worth it.  You only have one brain."  *See* Ex. 9.

By 2006, Nowinski had aligned with Dr. Bennett Omalu, then a Pittsburgh-based forensic pathologist also researching head trauma who had published the first peer-reviewed article in 2005 reflecting his discovery of CTE in a football player, former Pittsburgh Steeler Mike Webster.  One month after Nowinski's book was published in October 2006, former football player Andre Waters committed suicide and Nowinski helped obtain his brain for Omalu to study, and Waters became the third football player reported to have CTE.  By 2007, Nowinski was establishing the Sports Legacy Institute ("SLI") a Boston centered non-profit involving researchers dedicated to the emerging science of CTE which was then and still is in a nascent phase.  In September 2007, SLI held a huge press conference announcing Omalu's finding that Chris Benoit, who had performed for WWE, reportedly had CTE.  All WWE witnesses have testified that this press conference was the first time they heard of any reported connection between concussions and CTE, and the plaintiffs have been provided with discovery which shows WWE's reaction to those public news reports.  Those records show that Nowinski was not an employee at that time who was being controlled by WWE.  Specifically, plaintiffs have been provided with a letter from the undersigned counsel sent to Nowinski following the September 2007 press conference asking for detailed information on the reported findings related to Benoit.  *See* Ex. 10.  Obviously, if Nowinski had been an employee working out of

WWE's Connecticut headquarters in close concert with WWE executives on brain injury matters, there would have been no need for WWE's legal counsel to have sent him a letter in Boston requesting such information.[6]

**C.    Plaintiffs' Counsel Does Not Dispute The Subpoena On Nowinski Was Invalid**

Nowhere in plaintiffs' meandering presentation do they dispute a key point despite requesting leave to move to compel compliance with the subpoena served on Nowinski — it is an invalid subpoena not issued by the proper court. Both Nowinski's counsel and WWE have cited the authority demonstrating that point of law, and it is not disputed.  Indeed, plaintiffs' counsel admits that the fact the subpoena was issued from the wrong court was "clearly overlooked by Plaintiffs' counsel."  Doc. 174-1, p. 9.  Plaintiffs' counsel, therefore, have nobody to blame but themselves for not reading and following the rules.  As this Court noted, one does not need leave from one court to enforce a valid subpoena from another court.  *See* Doc. 171.  Plaintiffs' problem is that this Court is the one which can issue a proper subpoena for Nowinski under the rules, and it remains an oxymoron to ask for leave of this Court to enforce a subpoena issued by the federal court in Massachusetts.

**D.    Plaintiffs' Belated Excuse For their Lack Of Diligence Is Pretext**

Having nobody to blame but themselves for serving an invalid subpoena

---

[6]   The information requested by WWE was actually in the hands of Dr. Bennett Omalu, the forensic pathologist who claims to have actually discovered CTE in Benoit's brain.  The information requested by that letter was not provided to WWE by Dr. Omalu then or since.  In fact, Dr. Omalu's counsel has advised that he does not have any chain-of-custody records demonstrating that the brain depicted on histological slides was in fact the brain of Benoit.

on Nowinski on May 16, 2016, plaintiffs' counsel espouse yet another fantastic tale to explain away their lack of diligence — it was WWE's fault!

Thus, plaintiffs' counsel advises the Court that WWE "has produced little to no documents related to Mr. Nowinski"; that WWE "refused to answer a single interrogatory or request for admission, including those related to Nowinski;" that WWE has "withheld any and all information related to Mr. Nowinski"; that the supposed lack of disclosure "is likely the result of confusion related to the Court's Order granting limited discovery;" and that the Court is at fault "because even the Court seems to suggest at times that documents and information from before 2005 do not somehow contribute to the basis of the WWE's knowledge in 2005."  Doc. 174-1, pp. 6-8.  In a transparent attempt to redefine their claim after the pled claim was shown in discovery to be false, plaintiffs' counsel states that their allegation has always been that WWE had adequate knowledge (of what is not said) as early as 2005 making it liable in the case.  *Id.*  Not true, and plaintiffs' counsel knows it is not true.

The specific allegation on which the fraud claim was allowed to proceed was the allegation in paragraph 56 of the SAC.  Citing to a specific Mayo Clinic article as the alleged source of WWE's knowledge, plaintiffs' counsel alleged "[s]pecifically, WWE was aware in 2005 and beyond that wrestling for the WWE and suffering head trauma would result in long-term injuries."  SAC ¶ 56.  Indeed, the allegation that WWE was allegedly aware "in 2005 and beyond," and the citation to the Mayo Clinic article, was discussed in the Court's opinion on the

motion to dismiss and has been an integral part of numerous rulings ever since.
*See* Doc. 116, p. 9.[7]

Contrary to the suggestion that there has been confusion on the subject of
the scope and time period involved in the Court's numerous orders, there has
been precisely no confusion other than that now feigned by plaintiffs' counsel.
From the entry of the order on January 15, 2016 lifting the stay for the three
narrow issues set forth in that order to the present time, the Court has been
crystal clear on the point.  As stated recently by the Court on May 31, 2016 in its
decision on plaintiffs' motion to compel — "Plaintiffs have not presented any
factual predicate whatsoever entitling them to discover documents or information
dated prior to the year 2005."  Doc. 160.  The Court therein also provided specific
guidance on the criteria to be used by WWE in producing records from 2005
forward, which were the same criteria WWE had understood all along to use and
did use in searching for and producing records to plaintiffs.

Contrary to plaintiffs' inconsistent statements that WWE produced "little to
no" documents regarding Nowinski, the reality is the plaintiffs served exactly

---

[7]   As WWE demonstrated in its motion asking the Court to reconsider whether
the sole remaining fraud by omission claim should have been dismissed, which is
*sub judice*, the allegation that the Mayo Clinic article provided knowledge to WWE
of some risk of long-term neurodegenerative diseases was itself just one of a
parade of false allegations made to get past motions to dismiss and into
discovery.  The Mayo Clinic article, which the Court noted it could not access
when deciding the motion to dismiss (Doc. 116, p. 9), says absolutely nothing
about such alleged risks.  *See* Doc. 118-2 & Doc. 120, p. 2 n.1.  And, once in
discovery, plaintiffs' counsel made no attempt to prove that the Mayo Clinic
article was ever seen by or known to anybody at WWE.  In reality, it was one of a
staggering number of fabricated allegations exposed as such in discovery, and
the full scope of the refusal to abandon falsified positions will be placed before
this Court on or about August 1, 2016.

three requests for production for communications in any way related to Nowinski: (1) communications between WWE and Nowinski "related to the Concussion Legacy Foundation and/or the Health and Safety of WWE Wrestlers;" (2) documents "related to the WWE's sponsorship of the Concussion Legacy Foundation"; and (3) "documentation, information, and communication relating to Paul Levesque's  appointment to the Concussions Legacy Foundation's Board of Directors."  Doc. 174-5, pp. 10-11.  WWE produced all records responsive to these requests within the time period and scope defined by the Court.  Those records included correspondence to Nowinski regarding the Benoit findings in 2007; correspondence between Nowinski and Vince McMahon in 2010 and 2011; correspondence regarding the scheduling of certain of his presentations to WWE performers; and correspondence regarding WWE's financial contribution to the Concussion Legacy Foundation to support research into CTE.  In sum, all of the documents regarding Nowinski which plaintiffs requested within the scope of the Court's orders were sent to plaintiffs' counsel on April 20, 2016.

Lastly, the contention that WWE's objections to the massive and late requests for admission and excessive interrogatories impacted plaintiffs' counsels' ability to serve a proper subpoena on Nowinski is more transparent pretext.  First of all, both of those discovery requests were untimely in that responses were not due until after discovery closed, which was one of the many reasons WWE objected to them.  There is, therefore, no way plaintiffs' counsel could have expected to have any information from those requests available to question Nowinski before the close of discovery.  Secondly, and more

importantly, there is not a single request for admission regarding Nowinski and only Interrogatory number 20 has anything to do with Nowinski, and that interrogatory has nothing to do with the fraud issues in the case.  That is why plaintiffs' counsel did not point to a single interrogatory or request for admission it needed responses to in order to depose Nowinski.  Indeed, both discovery requests exemplify how plaintiffs' counsel ignored the operative orders of the Court limiting discovery, and attempted to burden WWE with discovery having nothing to do with the fraudulent omission claim.  For example, request for admission numbers 69 and 88 asked WWE to admit:

> Request No. 69:  You require WWE wrestlers to comply with dress code requirements when they are not performing but are in public.
>
> and
>
> Request No. 88:  You paid lobbyists to deregulate wrestling from oversight by State Athletic Commissions, claiming that wrestling was not a genuine athletic contest.

In conclusion, plaintiffs have shown no basis for the Court to reconsider its lack of diligence finding.

### III.   CONCLUSION

For the foregoing reasons and those set forth in WWE's opposition to plaintiffs' original motion to compel, plaintiffs' motion for reconsideration should be denied and the existing schedule for dispositive motions should not be modified.

DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.,

By: _ /s/  Jerry S. McDevitt _____
    **Jerry S. McDevitt (*pro hac vice*)**
    **Terry Budd (*pro hac vice*)**
    **Curtis B. Krasik *(pro hac vice*)**
    **K&L GATES LLP**
    **K&L Gates Center**
    **210 Sixth Avenue**
    **Pittsburgh, PA 15222**
    **Phone: (412) 355-6500**
    **Fax: (412) 355-6501**
    **Email: jerry.mcdevitt@klgates.com**
    **Email: terry.budd@klgates.com**
    **Email: curtis.krasik@klgates.com**

    **Thomas D. Goldberg (ct04386)**
    **Jonathan B. Tropp (ct11295)**
    **Jeffrey P. Mueller (ct27870)**
    **DAY PITNEY LLP**
    **242 Trumbull Street**
    **Hartford, CT 06103**
    **Phone: (860) 275-0100**
    **Fax: (860) 275-0343**
    **Email: tgoldberg@daypitney.com**
    **Email: jbtropp@daypitney.com**
    **Email: jmueller@daypitney.com**

    **Its Attorneys**

## CERTIFICATION

I hereby certify that on this 21st day of June, 2016, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 */s/ Jeffrey P. Mueller*