UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EVAN SINGLETON and VITO LOGRASSO,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT,<br><br>Defendant. | CIVIL ACTION<br>NO. 3:15-CV-001074 |

### NON-PARTY CHRISTOPHER NOWINSKI'S OPPOSITION
### TO PLAINTIFFS' MOTION FOR RECONSIDERATION

The Court should deny Plaintiffs' second attempt to reopen discovery, this time styled as a motion for reconsideration (Dkt. 174, the "Motion"). In their Motion, Plaintiffs once again seek to enforce an invalid and unenforceable subpoena and to depose non-party Christopher Nowinski in an obvious ploy to gain media attention, but little else. Plaintiffs still fail to articulate any legitimate basis for the deposition to go forward and rehash the same "factual" justifications that this Court previously determined were not relevant to Plaintiffs' sole remaining claim in this case.

There are three reasons why Plaintiffs' Motion fails. First, Plaintiffs do not discuss, much less satisfy, the strict standard for reconsideration. All of the "new" information included by Plaintiffs is not relevant, was available before their first motion was filed, and none of it should alter the Court's decision (Dkt. 171). Second, Plaintiffs' Motion acknowledges that the deposition subpoena was issued from the wrong court and is therefore invalid and unenforceable. Third,

1

Plaintiffs incorrectly allege facts about Mr. Nowinski's relationship to the WWE that are not accurate.

Rather than demonstrating why the Court should reach a different conclusion, the Motion demonstrates precisely why the Court's prior decision was correct.  Contrary to Plaintiffs' condescension, the Court did not suffer from "some confusion as to the nature of and the background for Mr. Nowinski's deposition."  (Dkt. 174-1, at 2).  The Court was exactly right about the "nature" of the proposed deposition and already found that the information sought is not relevant to the issues in the case and is intended for the press:

> "Even if true, the allegations that Mr. Nowinski has both criticized and praised WWE's concussion protocol, given presentations about concussions to wrestlers and accepted a donation from WWE for the Concussion Legacy Foundation are not relevant to the issue of WWE's knowledge or lack thereof and appear aimed at an audience other than this Court."

(Dkt. 171).

If their Motion left any doubt about why Plaintiffs' counsel wishes to depose Mr. Nowinski, the "Notice of Supplemental Authority" confirms it.  *See* Dkt. No. 178.  The Notice and attached Boston Globe story cover the very same issues that the Court already decided were not relevant to this case, and further demonstrate that the deposition has nothing to do with the lawsuit.  In fact, Plaintiffs acknowledge that "this article outlines the very same relevant knowledge Mr. Nowinski possesses and which Plaintiffs seek to explore."  (Dkt. 178, at 2).  As the Court already decided, this purported "relevant knowledge" has nothing to do with this case.  (Dkt. 171).

2

**Enough is enough.** Mr. Nowinski is not a party to this case. Plaintiffs' harassment of him must end, and the Court should deny the Motion. *See* FED. R. CIV. P. 26(c)(1) (protecting people "from annoyance, embarrassment, oppression, or undue burden or expense."); see also *Paisley Park Enterprises, Inc. v. Uptown Productions*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) (explaining that "the judicial branch of government, insofar as it deals with civil cases, is a system for the resolution of what usually are private disputes….Thus, courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.").

I. **Plaintiffs do not argue, and certainly do not meet, the strict standard for a motion for reconsideration.**

The standard for granting a motion for reconsideration is strict, and Plaintiffs do not even mention, much less meet, the standard. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that *the court overlooked*—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *McGuire v. Town of Stratford*, 2016 U.S. Dist. LEXIS 73113, *2 (D. Conn. June 6, 2016) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (emphasis added). Motions for reconsideration will not be granted where the party merely seeks to re-litigate an issue that has already been decided. *Id.* The three grounds for granting a motion for reconsideration are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Id.* (citing *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

3

In particular, a party cannot raise issues or facts known before the initial motion. In *Lego v. Best-Lock*, the court was asked to reconsider the protective order it had entered, a certain provision of which had been the subject of prior contentious briefing by the parties. *Lego A/S v. Best-Lock Contr. Toys, Inc.*, 2013 U.S. Dist. LEXIS 56371 (D. Conn. April 15, 2013). After losing on that issue and bringing a motion for reconsideration, one of the parties brought up new reasons why that provision would be a burden. The court summarily rejected this tactic, explaining that the "transformation" of information "not worth mentioning in its first brief on the protective order motions to the decisive factor in support of the present motion for reconsideration after those motions were lost, furnishes a paradigmatic example of a disappointed litigant trying to plug gaps in a lost motion by taking a second bite at the apple." *Lego*, 2013 U.S. Dist. LEXIS 56371, at *7. Indeed, the court explained that "a motion for reconsideration is not the proper venue for a party, unhappy with the trial judge's discovery ruling, to buttress its original argument with additional (and previously available) case law in an attempt to obtain a more favorable ruling." *Id.* at * 7 (citation omitted). Additional information that was previously available is no different, and cannot satisfy the strict standard on a motion for reconsideration.

Here, Plaintiffs raise a host of reasons why the Court should re-open discovery, yet none of them satisfies the Plaintiffs' burden on a motion for reconsideration.

First, the Court was not confused at all, as Plaintiffs argue. Counsel's attempts to play to the press were apparent in their first motion and are even more so now.

Second, Plaintiffs complain at length about a purported discovery dispute with WWE. (Motion, at 7-10). As a non-party, Mr. Nowinski has no involvement with the parties' discovery and Plaintiffs' concerns about WWE's discovery responses are not a proper basis to depose Mr. Nowinski. *Id.* at 7-8; *see also Liberty Mutual Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000) (sanctioning a party for subpoenaing the husband of a woman who had deliberately avoided her own deposition, because the party should not have used a discovery dispute with the woman as an excuse to harass her husband). Nor do these purported concerns address the Court's admonition that they could have tried to depose Mr. Nowinski earlier, within the time frame permitted by the Court's scheduling order. *See* Dkt. No. 171 ("Furthermore, the Motion does not provide good cause pursuant to Local Rule 7(b) for why Plaintiffs' counsel, in the exercise of diligence, could not depose Mr. Nowinski or file a Motion to Compel such deposition in the six months prior to the discovery deadline."). Even if Plaintiffs have a discovery dispute with the WWE, that still does not explain why Plaintiffs did not sooner issue a deposition subpoena or timely file a motion to compel.

Third, the information referenced by Plaintiffs was all publicly available before the first motion. *See* Motion, at 2 (explaining that the Motion is "utilizing only publicly available information"). Some of the "new" facts include Mr. Nowinski's LinkedIn profile, quotes from a website promoting Mr. Nowinski's

5

book, the publication date for that book, excerpts from a MySpace page, quotes from articles on a wrestling-related website, and the fact that Mr. Nowinski co-founded a non-profit.  *See* Motion, at 2-3.  All of this was available to the Plaintiffs and, in any event, none of it changes the enforceability of the subpoena or the irrelevance of what Plaintiffs want to ask Mr. Nowinski.

Plaintiffs must demonstrate a change in the law, the availability of new evidence, or the need to correct clear error.  Plaintiffs have failed on every account and their Motion should be denied.

II.     <u>The subpoena is invalid and unenforceable, and discovery has ended</u>.

Plaintiffs also argue that the deposition subpoena was "timely served" and "timely noticed," and therefore should be enforced.  There is no good-faith basis to advance this objectively unreasonable position.

Mr. Nowinski has already articulated all the reasons why the Federal Rules preclude the enforcement of Plaintiffs' subpoena.  *See* Opposition of Christopher Nowinski, Dkt. No. 168, at 3-5.  Unable to explain why the subpoena is enforceable, Plaintiffs assert that even though the subpoena had the "wrong heading"—the heading is the Court from which the subpoena issued—it should still be enforceable because it listed the correct operative court, case caption, case number, and the details for Mr. Nowinski's deposition in the body of the subpoena.  *See* Motion, at 9.  But Rule 45(a)(2) is clear.  A subpoena must issue from the court where the action is pending or the subpoena is simply defective and facially invalid.  *See* FED. R. CIV. P. 45(a)(2).  Here, the "wrong heading" is the

wrong court. Plaintiffs failed to comply with Rule 45, so the Motion should be denied.

III. **Plaintiffs rely on incorrect facts in an attempt to seek information well beyond the Court-ordered discovery limitation.**

At the heart of their Motion, Plaintiffs again argue to the Court that Mr. Nowinski's deposition is relevant because his non-profit has some purported conflict of interest with WWE. Entire sections of their Motion and their Notice are devoted to outlining this purported conspiracy theory. *See* Motion, at 4-6; Notice, at 2. In particular, Plaintiffs' Notice quotes the same insinuations published by the Boston Globe (published following Plaintiffs' prior motion) and then acknowledges "this article outlines the very same relevant knowledge Mr. Nowinski possesses and which Plaintiffs seek to explore." Notice, at 2. Again, the Court has already decided that these issues are not relevant to this case: "Even if true, the allegations that Mr. Nowinski has both criticized and praised WWE's concussion protocol, given presentations about concussions to wrestlers and accepted a donation from WWE for the Concussion Legacy Foundation are not relevant to the issue of WWE's knowledge or lack thereof . . . ." *See* Dkt. No. 171.

To salvage their argument, Plaintiffs make new allegations about Mr. Nowinski's "employment" with the WWE that are simply incorrect. Plaintiffs' bolded and underlined accusation that he was an employee of the WWE who "had regular interactions with WWE executives" between June 2003 and September 2006 has no factual basis. *See* Motion, at 3. To make this assertion, Plaintiffs reference his LinkedIn profile, but omit the actual document, because it clearly

7

describes that his work with the WWE after 2003 was unrelated to concussion research.  Mr. Nowinski's LinkedIn page states that, after he retired from wrestling, Mr. Nowinski "[c]ontinued as [a] spokesperson for WWE "Smackdown Your Vote" program dedicated to increasing voter turnout for 18 to 30 year olds." (Ex. A.)  Plaintiffs also fail to provide any support for their allegation that Mr. Nowinski was an employee of the WWE until 2008.  He was not.  (Ex. B, Affidavit of Christopher Nowinski.)  He was an independent contractor who, as his LinkedIn page indicates, primarily participated in programs designed to increase youth voter turnout.  He was not a WWE employee and did not work at WWE corporate headquarters.  Separately, he was doing his own independent research on the book he eventually published in 2006, entitled *Head Games, Football's Concussion Crisis from the NFL to Youth Leagues*.  By 2007, he was forming a non-profit organization called the Sports Legacy Institute (now the Concussion Legacy Foundation).

Discovery has finished and yet Plaintiffs cannot point to a single document or piece of testimony that supports these factual assertions in their Motion.  Plaintiffs' counsel should accept the rulings of the Court and stop harassing Mr. Nowinski.

## Conclusion

The Court should deny Plaintiffs' Motion and bring Plaintiffs' harassment of Mr. Nowinski to an end.

| | |
|---|---|
| **Dated June 21, 2016** | **Respectfully submitted,** |
| | **CHRISTOPHER NOWINSKI,** |
| | **By his attorneys,** |
| | **/s/ Keith P. Carroll** |
| | **Keith P. Carroll (ct16254)** |
| | **Brian P. Dunphy (BBO # 670902)** |
| | **MINTZ, LEVIN, COHN, FERRIS,** |
| | **GLOVSKY AND POPEO, P.C.** |
| | **One Financial Center** |
| | **Boston, MA  02111** |
| | **Tel:  (617) 542-6000** |
| | **Fax:  (617) 542-2241** |
| | *KPCarroll@mintz.com* |

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

           /s/ Keith P. Carroll
           Keith P. Carroll

493391663