**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **RUSS McCULLOUGH, a/k/a "Big Russ McCullough", RYAN SAKODA, and MATTHEW R. WEISE, a/k/a "Luther Reigns," individually and on behalf of all Others similarly situated,** | : <br> : <br> : <br> : <br> : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO.** <br> **3:15-cv-001074 (VLB)** |
| | : | **Lead Case** |
| **v.** | : <br> : | |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : <br> : <br> : | |
| **Defendant.** | : | |

_____

| | | |
|---|---|---|
| **EVAN SINGLETON and VITO LOGRASSO** | : | **CIVIL ACTION NO.** |
| **Plaintiffs,** | : | **3:15-cv-00425 (VLB)** |
| | : | **Consolidated Case** |
| **v.** | : <br> : | |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : <br> : <br> : | |
| **Defendant.** | : | |

_____

| | | |
|---|---|---|
| **WILLIAM ALBERT HAYNES III, Individually and on behalf of all Others similarly situated,** | : <br> : <br> : | **CIVIL ACTION NO.** |
| **Plaintiffs,** | : | **3:15-cv-01156 (VLB)** |
| | : | **Consolidated Case** |
| **v.** | : <br> : | |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : <br> : <br> : | |
| **Defendant.** | : | |

_____

| | | |
|---|---|---|
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : <br> : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:15-cv-0994 (VLB)** |

1

|  |  |  |
|---|---|---|
|  | : | **Consolidated Case** |
| **v.** | : |  |
|  | : |  |
| **ROBERT WINDHAM, THOMAS** | : |  |
| **BILLINGTON, JAMES WARE, OREAL** | : |  |
| **PERRAS, and VARIOUS JOHN DOE'S,** | : |  |
| **Defendants.** | : |  |

_____

**July 21, 2016**

**MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION [Dkt. 118] OF THE COURT'S ORDER [Dkt. 116] GRANTING IN
PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS THE
*SINGLETON* AND *MCCULLOUGH* ACTIONS**

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR
RECONSIDERATION [Dkt. 119] OF THE COURT'S ORDER DISMISSING THE
*WINDHAM* ACTION AND DENYING AS MOOT WWE'S MOTION TO EXPEDITE
DISCOVERY AS TO THE IDENTITIES OF THE *JOHN DOE* DEFENDANTS [Dkt. 117].**

**MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS
THE *WINDHAM* ACTION [Dkt. 72] AND DENYING WWE'S MOTION FOR
EXPEDITED DISCOVERY OF THE *JOHN DOE* DEFENDANTS  IN THE *WINDHAM*
ACTION [Dkt. 82].**

Plaintiffs in this consolidated action are former wrestlers for World

Wrestling Entertainment Inc. ("WWE"), a Connecticut entertainment company

which produces televised wrestling programming.  Plaintiffs allege that they are

either suffering from symptoms of permanent degenerative neurological

conditions resulting from traumatic brain injuries sustained during their

employment as wrestlers for WWE or are at increased risk of developing such

conditions.

In its March 21, 2016, memorandum of opinion and accompanying Order

(the "Opinion"), the Court dismissed plaintiffs' claims that they were injured as a

result of WWE's negligence in scripting violent conduct and failing to properly educate, prevent, diagnose and treat them for concussions.

However, plaintiffs also claimed that WWE had knowledge of evidence suggesting a link between head trauma that could be sustained during WWE events and permanent degenerative neurological conditions such as CTE and either concealed such evidence or failed to disclose it in the face of a duty to disclose.  Although the Court dismissed plaintiffs' claim that WWE fraudulently misrepresented the risks of wrestling in its performances in a series of public statements, the Court held that plaintiffs LoGrasso and Singleton plausibly stated a claim that WWE fraudulently omitted known facts regarding a link between wrestling activity and permanent brain damage resulting from traumatic brain injuries.  The Court further found that this fraud claim may not be tolled by the operation of Connecticut's statutes of limitations and repose.

The Court thereafter entered an Order dismissing WWE's countersuit against Robert Windham, *et al* on the basis that the complaint failed to state a claim upon which relief could be granted as the Court could not, for the reasons stated in its Opinion, issue a declaration that WWE was not liable on the basis of Connecticut's statute of limitations.  The Court denied as moot WWE's motion to discover the identities of the unknown John Doe defendants in *Windham*.

Currently before the Court are WWE's Motions to Reconsider [Dkt. 118, Dkt. 119] its March 22, 2016 Opinion and the subsequent dismissal of the *Windham* action.  WWE argues that the Court misapplied the applicable law and alleged facts in determining that LoGrasso's claims were not time-barred and in finding

3

that Singleton and LoGrasso plausibly stated a claim for fraud by omission. WWE also argues that dismissal of the Windham action was premature and that the stated basis – failure to state a claim for relief – was not the basis of the *Windham* defendants' Motion to Dismiss [Dkt. 72] which argued for dismissal on the sole grounds of lack of subject matter jurisdiction.

For the reasons stated below, WWE's Motion for Reconsideration of the Court's Order [Dkt. 116] Granting In Part and Denying In Part Defendant's Motions to Dismiss the Singleton and McCullough Actions [Dkt. 118] is DENIED.

WWE's Motion for Reconsideration of the Court's Order [Dkt. 117] Dismissing the Windham Action [Dkt. 119] is GRANTED and, upon reconsideration, the Court's Order at Docket Number 117 dismissing the *Windham* action for failure to state a claim is hereby VACATED for the reasons articulated below.  Having vacated its dismissal of the Windham action, the Court considers the substantive arguments raised in the Windham defendants' Motion to Dismiss [Dkt. 72] for lack of subject matter jurisdiction and that motion is GRANTED IN PART AND DENIED IN PART.  WWE's Motion for Expedited Discovery of the John Doe Defendants [Dkt. 82] is DENIED AS MOOT.

   I.    Standard of Review

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "A motion for

reconsideration is justified only where the defendant identifies an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ayazi v. United Fedn. of Teachers Local 2*, 487 F. App'x 680, 681 (2d Cir. 2012) (internal citation and quotation marks omitted); *Ensign Yachts, Inc. v. Arrigoni*, 3:09–CV–209 (VLB), 2010 WL 2976927 (D. Conn. July 23, 2010) (same).  A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Further, Local Rule of Civil Procedure 7(c) requires parties seeking reconsideration to "set[] forth concisely the matters or controlling decisions which counsel believes the court overlooked in the initial decision or order." D. Conn. Loc. Civ. R. 7(c).

II.    <u>Reconsideration of the Court's Ruling With Respect to the Claims of Singleton and LoGrasso</u>

1.    <u>Singleton Plausibly Alleges Harm from WWE's Conduct</u>

WWE first argues that the Court erred in holding that Plaintiff Evan Singleton could plausibly have been harmed by WWE's alleged fraudulent omission.  In its Opinion, the Court found that, with regard to possible harm to the named plaintiffs, "information about a link to permanent degenerative conditions could plausibly have informed plaintiffs' own choices about whether and when to re-enter the ring after sustaining a head injury and could plausibly have prevented permanent brain damage."  [Dkt. 116 at 67-68].

WWE argues that "[u]nder the Court's reasoning . . . if a plaintiff never 're-

enter[ed] the ring after sustaining a head injury' he could not have been harmed by WWE's alleged fraud by omission." [Def.'s Mem. at 6]. WWE notes that Plaintiff Singleton alleged that he never wrestled again for WWE after sustaining a single serious head injury on September 27, 2012. Therefore, WWE argues, Singleton could not have plausibly been harmed by the omission of facts which would have affected any decision to re-enter the wrestling ring.

The Court's Opinion should not be read to identify every basis for liability which the complaint could be construed to assert. The Court held that this allegation of harm was sufficiently plausible that both plaintiffs' claims for fraudulent omission stated a claim for relief under Rule 12(b) of the Federal Rules of Civil Procedure. The plaintiff's decision to *re-enter* the ring after sustaining an injury was not the sole basis for liability asserted by the complaint. Rather, Singleton also alleged that WWE was aware of the risks of wrestling in 2005, failed to disclose the risks to its wrestlers, and that he was injured wrestling for WWE in 2012. Thus the complaint also alleges that WWE failed to disclose to Singleton information which could have prevented him from *entering* WWE's simulated wrestling ring and wrestling for WWE in the first instance. The complaint further alleges that WWE's failure to disclose the risks of wrestling could have impacted Singleton's medical decisions. To be clear, Singleton has plausibly alleged that WWE failed to disclose information which could conceivably have prevented him from wrestling, could have enabled him to mitigate the risks of wrestling and could have prompted him to obtain medical treatment promptly after wrestling.

WWE's Motion for Reconsideration on this basis is DENIED.

### 2.   Allegations Satisfying the Particularity Requirements of Rule 9(b)

WWE next argues that "none of the three alleged facts relied on by the Court" in determining that plaintiffs had adequately plead the "who" and "when" – the specific speaker(s) and the context of the alleged omissions – required by Rule 9(b) are sufficient to satisfy the requirements of Rule 9 "based on the very legal principles on which the Court relied in dismissing plaintiffs' affirmative misrepresentation claims." [Def.'s Mem. at 9]. In its Opinion, the Court had identified three paragraphs in the Second Amended Complaint of plaintiffs Singleton and LoGrasso (the "SAC") that shed sufficient light on both the speakers and the context of the alleged omissions:

> 55. ". . . WWE continues to understate the risks and dangers of CTE, as evidenced by Dr. Joseph Maroon's statements to the NFL Network, Total Access in March 2015, 'The problem of CTE, although real, is its being over-exaggerated.'

> 73. "In a joint interview for the 2007 CNN documentary Death Grip: Inside Pro Wrestling, WWE CEO Vincent K. McMahon and former WWE CEO Linda McMahon attacked Dr. Omalu and Dr. Bailes's finding that Benoit had suffered from CTE. This was part of a larger plan to deny that Benoit had suffered from CTE and to discredit the research suggesting he had."

> 125. "During his training and wrestling career with WWE, Mr. LoGrasso was told by WWE employees and at the time believed that injuries he suffered were part of 'paying his dues', and believed that having 'your bells rung', or receiving 'black and blues' and bloody noses only resulted in the immediate pain and injury with no long-term ramifications or effects."

[SAC ¶¶ 55, 73, 125]. WWE argues that Dr. Maroon's statements to NFL Network in March of 2015 cannot form the basis of a fraudulent omission claim because plaintiffs could not reasonably have relied upon a statement made after

7

plaintiffs "commenced this lawsuit, and years after they last performed for WWE." While this may be true, the March 2015 comments were not the only statements cited by the plaintiffs.  Further, they were cited by plaintiffs as *illustrative* of a continuing effort by WWE to downplay the risks of permanent brain damage to WWE wrestlers.

The Opinion referenced other statements as well.  For example, the Court noted WWE's statements to ESPN in 2009 in regards to allegations that former wrestlers Chris Benoit and Andrew Martin could have sustained permanent brain damage from wrestling.  In 2009, WWE stated that it was "unaware of the veracity" of tests conducted by Dr. Omalu which purported to diagnose Benoit with CTE, that WWE had "been asking to see the research and tests results in the case of Mr. Benoit for years and has not been supplied with them" and mocked Benoit's ability, prior to his death, to find "his way to an airport, let alone . . . remember all the moves and information that is required to perform in the ring." [SAC ¶ 69].  The Court held that the 2009 statement could not form the basis of an affirmative misrepresentation claim, but noted that "one could accuse the WWE of having made the statement perhaps with the intent of downplaying a link between wrestling and CTE."  [Opinion at 60].

The Court cited Dr. Maroon's 2015 statement as illustrative of the "what" – the context of the alleged omissions – because the 2015 statement, along with the 2009 statement to ESPN and other statements discussed in the Opinion, provide adequate notice to WWE under Rule 9(b) of the instances in which it allegedly failed to disclose a known link between wrestling and CTW: specifically, its public

statements to the media downplaying and discrediting such risks.  The 2007 interview by Vincent and Linda McMahon is cited by the Court as yet another example of such public statements.

Similarly, in the *NHL* concussion litigation cited in the Court's Opinion, Judge Nelson noted the NHL's alleged response to questions surrounding concussions in professional hockey that the league needed "more data, more research, we cannot say anything conclusive." 2008 WL 4307568 at *13.  NHL Commissioner Bettman was alleged to have said of fighting that "[m]aybe it is [dangerous] and maybe it's not." Id. at *10.  The statements identified by plaintiffs here are in sum and substance similar to those that Judge Nelson found to have supported a fraud claim in the *NHL* litigation.

WWE argues, however, that "because Mr. McMahon merely expressed his 'opinion or skepticism as to the truth' of a specific aspect of Dr. Omalu's and Dr. Bailes' findings," and that the Court's Opinion earlier held such opinions could not form the basis of an affirmative misrepresentation claim, that it is therefore "implausible that omitting that same matter could somehow become a fraud by omission."  [Def.'s Mem. at 10].  In other words, WWE argues:

> . . . . under the Court's reasoning, had WWE actually stated to LoGrasso that it did not believe Dr. Omalu's and Dr. Bailes' findings established a link between head trauma and long-term neurodegenerative disease, which it never said, it could not be fraud. But if WWE said nothing to LoGrasso because WWE did not believe that a link had been established between head trauma and long-term neurodegenerative disease based on Dr. Omalu's and Dr. Bailes' findings or because it did not know if such findings were correct, it then would become fraud.

[Id. at 11]. While the Court is sensitive to the need to prevent a legal

9

quandary as troubling as that which WWE proposes, no such quandary has been created here.  Rather, WWE has mistakenly conflated the nuanced analysis of the claims of fraudulent omission and fraudulent misrepresentation.

The Court's held that plaintiffs had plausibly alleged that WWE may have had an *independent duty* to disclose information linking its simulated wrestling performances with CTE and other neurological conditions and may have breached that duty by failing to disclose such information in public statements. Such a breach may have occurred if WWE had publicly stated that it did not believe Dr. Omalu's findings.  Or it may have occurred if WWE had privately stated to Plaintiff LoGrasso, personally, that it needed more time to study Dr. Omalu's findings.  Or it may have occurred if WWE had remained entirely silent on the issue.  If WWE knew and failed to disclose information which credibly refuted or seriously undermined the opinions and other statements of fact it expressed, it may have failed to disclose information in breach of its duty to its former wrestlers.

Wholly separate and apart from the allegation that WWE had a duty to disclose, and failed to disclose, known information linking WWE wrestling with CTE, are the plaintiffs' now-dismissed allegations that WWE executives, in several specific public statements, fraudulently misrepresented the risk of CTE to current and former wrestlers.  The Court's Opinion rejected these fraudulent misrepresentation claims on the basis *that the specific statements cited* were either expressions of opinion or statements that were not alleged to be false. While WWE could not be held liable for fraudulent misrepresentation if it had

10

stated to LoGrasso, personally, that it did not believe Dr. Omalu's findings, it could plausibly be held liable on that same theory if it had stated to LoGrasso that it did not believe those findings because the findings were published in the National Enquirer and only peer reviewed by a panel of podiatry students.

The Court reaffirms its holding that the 2007, 2009 and 2015 statements both provide adequate context and adequately identify the specific WWE executives who are alleged to have breached their duty to disclose.  WWE's Motion for Reconsideration on this basis is DENIED.

### 3.  Plausible Inference of Fraudulent Intent

WWE next urges that the Court "overlooked the complete absence of any allegation giving rise to strong [sic] inference of fraudulent intent."  [Def.'s Mem. at 13].  In its Opinion, the Court noted that "[p]laintiffs simultaneously argue on the one hand that studies and data linking [head injuries] with permanent degenerative neurological conditions were both widespread and widely-publicized, and on the other hand that plaintiffs had no knowledge of any of this widely-publicized information."  WWE argues that "[i]n light of the Court's astute observation regarding this "inherent contradiction" underlying plaintiffs' fraud claims, it is respectfully submitted that . . . [t]he admitted widespread publicity about the very information supposedly omitted renders any suggestion of fraudulent intent highly implausible." [Def.'s Mem. at 14].

The Court has already considered and rejected this argument, in an earlier portion of the Court's Opinion finding that plaintiffs had pled an adequate basis

for tolling the statutes of repose due to fraudulent concealment of their underlying cause of action.  The Court noted, in particular, that "the Wellness Program was created for WWE by an attorney in response to the death of a former wrestler and appears to have immediately embraced a critic of some aspects of recent CTE studies."  [Opinion at 47].  The Court also noted that WWE's 2009 statement to ESPN was in response to allegations concerning the deaths of two specific former wrestlers who may have had claims similar to those raised by the named plaintiffs.  The Court held that these facts allow for the plausible inference that "any concealment was for the specific purpose of delaying" possible litigation.  [Id.]

Inherent in the Court's finding that the facts alleged raise a plausible inference of fraudulent concealment of plaintiffs' cause of action *to delay litigation* is a finding that WWE could have plausibly intended to conceal information from the plaintiffs *at all*.  The Court reaffirms its holding that WWE could plausibly have intended to conceal known facts from the plaintiffs for the purpose of delaying or avoiding litigation, for the purpose of delaying or avoiding the expense of greater concussion prevention effort, or perhaps for the purpose of delaying or avoiding safety measures which might negatively impact the ratings of its television programming.

The Court also discussed the reasons for its holding that plaintiffs claim for fraudulent omission could proceed despite the allegation that much of the information allegedly concealed was in the public domain.  The Court held that WWE may have had a duty to disclose publicly available information.  [Id. at 67].

But the Court also noted that WWE was also alleged to have "superior knowledge" by virtue of its Wellness Program, trained medical staff and wrestler injury reports and that "factual development could shed light on whether WWE possessed information outside the public domain that was omitted or concealed."  [Id.]  WWE has now had the opportunity to build a factual record demonstrating whether information it is alleged to have failed to disclose was reasonably discoverable by Singleton and LoGrasso.  The Court will consider this factual record at the appropriate time.  WWE's Motion for Reconsideration on this basis is DENIED.

### 4.  A Continuing Course of Conduct May Toll the Statute of Repose

WWE next argues that the Court misapplied Connecticut law in determining that Connecticut's statute of repose, Conn. Gen. Stat. Sec. 52-577, could be tolled with respect to LoGrasso's fraudulent omission claim by virtue of the continuing course of conduct doctrine.  For the continuing course of conduct exception to apply, the plaintiff must show the defendant: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the original wrong; and (3) continually breached that duty."  *Witt v. St. Vincent's Medical Center*, 746 A.2d 753, 762 (Conn. 2000).  Any continuing duty owed by a defendant must "rest on the factual bedrock of actual knowledge."  *Neuhaus v. DeCholnoky*, 905 A.2d 1135, 1142 (Conn. 2006)

In its Opinion, the Court examined the Connecticut cases cited by the parties – all of which concerned failure-to-warn cases brought against medical

care providers – and found that under Connecticut law a "continuing duty arises when the medical care provider has reason to suspect that further treatment is needed at the time of treatment." [Opinion at 38]. However, "once treatment is provided a medical care provider" there is no duty "to advise a patient in perpetuity about medical discoveries, risks and treatment for any possible condition that a patient might reasonably develop." [Id.]. The Court held that it was "at least plausibly alleged under *Neuhaus* that WWE may have had both the requisite initial and continuing concern about the long-term health of its wrestlers such that it owed a continuing duty to warn those wrestlers about the long-term risks of head trauma sustained in the ring even after they had retired." [Id. at 38-39]. Noting that the WWE was alleged to have created its Wellness program in 2006 on the advice of its attorney after the deaths of several former wrestlers and to have hired a noted neurosurgeon and head injury specialist for the NFL, the Court held that "this fact alone, indeed to WWE's credit, plausibly suggests WWE had knowledge causing it to have an early and strong concern[] about the health effects of wrestling." [Id.]

WWE argues that the continuing course of conduct exception cannot apply here, because "there is no allegation that WWE ever rendered treatment to LoGrasso for any alleged head injury." [Def.'s Mem. at 17]. And, WWE argues, "[s]ince there was no treatment, there could not have been an initial suspicion 'at the time of treatment.'" [Id. at 18]. WWE argues that the Court "substituted an alleged initial concern about wrestlers generally for actual knowledge about, and treatment of, LoGrasso specifically," contrary to the requirement under

Connecticut law that a provider's concern is "based on actual knowledge specific to the plaintiff." [Def.'s Mem. at 19, *citing Hernandez v. Cirmo*, 787 A.2d 657, 662-63 (Conn. App. 2002)].

WWE's arguments parse language in a manner which imposes a legal requirement which does not exist. In particular, WWE misplaces the word "specific" in arguing that Connecticut law requires a medical provider to have had knowledge "of a risk specific to the plaintiff" in order for the continuing course of conduct exception to apply with respect to a medical provider in a failure-to-warn case. What Connecticut law actually requires is that the provider have had knowledge "of a *specific risk* to the plaintiff." *See Hernandez*, 787 A.2d at 662 (emphasis added). That *specific risk* may be a specific risk to a particular known individual, or it may be a *specific risk* to a group of individuals who are identifiable by the defendant. In fact, in its Opinion, the Court examined the Connecticut Supreme Court's opinions in *Sherwood I* and *Sherwood II*, which held that a hospital may have had a continuing duty to warn thousands of former patients who received transfusions of untested blood after the Center for Disease Control advised the hospital of a risk of HIV transfer, but only if the hospital had knowingly administered untested blood and thus had knowledge of a specific risk. *Sherwood v. Danbury Hosp.*, 896 A.2d 777, 797 (Conn. 2006) (Sherwood II).[1]

---

[1] Consistent with this holding in *Sherwood*, other Connecticut cases, including *Hernandez*, *Witt* and *Neuhaus* make clear that a medical provider cannot be held liable for failing to warn a plaintiff of a risk that a defendant "should have known" about. Rather, in requiring a "factual bedrock of actual knowledge," Connecticut law provides that the statute of repose may be tolled in a failure-to-warn case against a medical provider based upon either: (i) an "initial concern" about a specific risk that had "never been eliminated" or (ii) evidence that the defendant

The "actual knowledge" requirement does not, as WWE suggests, require knowledge of a risk "specific to the plaintiff."  In *Sherwood*, as alleged here*,* the duty arose based on a known risk to an identifiable group of individuals.  In *Sherwood*, the court held that the defendants had a duty to disclose a known risk of HIV exposure to patients who defendants infused with untested blood.  Here, plaintiffs allege the defendant had a duty to disclose a known risk of CTE to former wrestlers which it knew to be uniquely susceptible to CTE because of the trauma inherent in performing wrestling stunts under the guidance and direction of WWE and on whose behalf it undertook to implement a Wellness Program.

The Court further notes, as it already noted in its Opinion, that while these cases concerning medical providers are helpful to the analysis of this issue, and "somewhat analogous" to the case at bar, the facts here vary to some degree in that WWE can both be characterized as a medical provider and as an entertainment company and employer.  Further, the omissions here are alleged to have been made by both WWE doctors and by non-medical-providers, including television executives.  In its capacity as a production company and employer, WWE does not "treat" anyone.  WWE's argument would mean that, in the absence of a Wellness Program, doctors and trainers, the statute of repose could never be tolled on the basis of a continuing course of conduct in a fraud claim against WWE because no litigant would ever have received medical care from the company.  This is not the outcome compelled by Connecticut law.

---

"subsequently learned that his diagnosis was incorrect."  *Neuhaus*, 905 A.2d at 1144-45.

The Court reaffirms its holding that plaintiffs have plausibly alleged that WWE: (i) committed an initial wrong by omitting information in public statements and communications with its wrestlers that it was under a duty to disclose, (ii) that this duty continued with respect to current and former wrestlers at risk of CTE and other degenerative brain conditions and (iii) that the breach of this duty has been ongoing.  WWE's Motion for Reconsideration on this basis is DENIED.

### 5.  Fraudulent Concealment May Toll the State of Repose

In its Opinion, the Court held that LoGrasso's allegations that WWE concealed information suggesting a link between repeated concussive trauma and permanent degenerative neurological conditions may implicate the tolling provision for fraudulent concealment codified by statute in Conn. Gen. Stat. § 52–595 ("Section 52-595").  In order to rely on Section 52-595 to toll the statutes of limitations and repose, a plaintiff must demonstrate that "the defendant: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the cause of action, (2) intentionally concealed those facts from the plaintiff and (3) concealed those facts for the purpose of obtaining delay on the part of the plaintiff in filing a cause of action against the defendant*."  Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105, 912 A.2d 1019, 1033 (2007).

WWE urges the Court to reverse its holding by arguing that the "allegation that WWE generally knew about research into brain trauma and a potential link to wrestling falls far short of clear and convincing evidence that WWE knew that

17

LoGrasso, specifically, had a cause of action related to brain trauma and intentionally concealed those facts from him." [Def.'s Mem. at 21]. First, the clear and convincing evidence standard is not the standard applicable on a motion to dismiss. Moreover, the Court noted in its Opinion that plaintiffs "also allege that by virtue of its Wellness Program, begun in 2007, WWE possessed superior knowledge regarding a link between participation in WWE wrestling events and such permanent conditions." [Opinion at 68]. Thus, LoGrasso's claim cannot be reduced merely to the allegation that WWE 'generally knew about research into brain trauma.'

WWE argues that fraudulent concealment "expressly requires that the defendant know that the plaintiff has a cause of action, and the knowledge must be actual rather than imputed" and that plaintiffs failed to set forth "clear and convincing evidence that WWE knew that LoGrasso, specifically, had a cause of action." [Id. citing Falls Church Grp., 912 A.2d at 1032-33]. Connecticut law imposes no such requirement. The Court is mystified as to how WWE can argue that the doctrine expressly requires the defendant to have "knowledge of the plaintiff's cause of action" when the very case cited by WWE, Falls Church Group, sets forth a test which expressly requires a defendant only to have actual knowledge "of the facts necessary to establish" a cause of action, as opposed to the 'facts necessary to prove by clear and convincing evidence a cause of action at the pleading stage of a case before the commencement of discovery.' 912 A.2d at 1033. Furthermore, WWE cites no authority for the proposition that the facts necessary to a cause of action refer only to facts which are specific to a single

18

plaintiff and not an affected group of individuals.  While factual development may ultimately reveal that WWE had no actual knowledge *of the facts necessary* to LoGrasso's cause of action, and the possible causes of action of other similarly-situated wrestlers, the allegation is nonetheless plausible.

WWE also argues that LoGrasso did not exercise due diligence to discover the cause of action WWE allegedly concealed from him.  [Id.]  The extent to which due diligence on the part of LoGrasso to discover could reasonably have led to discovery of his cause of action depends, in part, on whether WWE possessed superior knowledge outside the public domain regarding a link between wrestling and CTE.  The reasonableness of any efforts on LoGrasso's part may also depend on the extent to which a lay person could have appreciated the information that was in the public domain prior to 2012.  Both issues are fact specific and may be ripe for examination at a later stage in this case, but the Court cannot determine from the face of the SAC that LoGrasso failed to exercise reasonable diligence.

The Court reaffirms its holding that LoGrasso has plausibly alleged that WWE fraudulently concealed his cause of action pursuant to Section 52-595.  WWE's Motion for Reconsideration on this basis is DENIED.


### 6.  Conclusion

WWE's linguistic feats with respect to the 'express' requirements of Connecticut law as to actual knowledge and specific risks do not suffice for the kinds of "controlling decisions or data that the court overlooked" which WWE is required to set forth in order to obtain relief from the Court's prior Order.  *See*

*Shrader*, 70 F.3d at 257.  WWE's arguments with respect to intent and particularity seek only to re-litigate issues that the Court has already painstakingly decided. WWE's Motion for Reconsideration of the Court's Order granting in part and denying in part the defendant's Motion to Dismiss the Complaint of Evan Singleton and Vito LoGrasso is DENIED.

### III.     Reconsideration of the Court's Order Dismissing WWE's Counter-Suit Against *Windham, et al*

After entry of the Court's Opinion and Order [Dkt. 116] granting in part and denying in part WWE's Motions to Dismiss in this consolidated action, the Court entered a subsequent Order [Dkt. 117] dismissing WWE's declaratory judgment countersuit against Robert Windham, Thomas Billington, James Ware, Oreal Perras and "Various John Does" (the "*Windham*" action).  [Dkt. No. 3:15-cv-0994 (VLB)].  The Court's Order noted that, having found that a continuing course of conduct or fraudulent concealment on the part of WWE may have tolled the Connecticut statute of repose with respect to the claims brought by Vito LoGrasso, the Court could not afford WWE the relief it sought in the form of a judgment declaring that all of the named and "Various John Doe" defendants' claims against WWE were time-barred by the Connecticut statutes of limitations and repose.  The Court thereafter denied as moot WWE's Motion to Expedite Discovery as to the identities of the "John Doe" defendants.  [Dkt. 82].

WWE separately urges reconsideration of the Order dismissing the *Windham* action on the grounds that the Order denied WWE its right to notice and an opportunity to be heard.  [Dkt. 119-1, Pl.'s Mem. at 9, *citing Thomas v. Scully*,

943 F.2d 259, 260 (2d Cir. 1991)].  WWE argues that the Court's Order entered

dismissal for a stated reason – that the Court could not grant WWE the relief it

sought – that was never raised by the *Windham* defendants' in their Motion to

Dismiss [Dkt. 72].  Indeed, the *Windham* defendants' sole argument raised in

favor of dismissal was that the Court lacked subject matter jurisdiction over the

*Windham* action because no actual case or controversy existed between the

parties.  [Dkt. 72-1].[2]

 The Plaintiff is correct that a district court cannot dismiss a complaint *sua*

*sponte* for failure to state a claim on which relief can be granted without giving

the plaintiff an opportunity to be heard.  *Thomas*, 943 F.2d at 260; *see also Perez*

*v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988) ("[T]he general rule is that a district court

has no authority to dismiss a complaint for failure to state claim upon which relief

can be granted without giving the plaintiff an opportunity to be heard.").  *Thomas*

concerned a district court's *sua sponte* dismissal of a *pro se* complaint without

having provided the *pro se* litigant an opportunity to be heard.  943 F.2d at 259.

And in *Perez*, none of the consolidated defendants – police officials and

municipalities in the State of Connecticut – had yet moved to dismiss on any

basis prior to the district court's dismissal of the state law claims brought against

---

[2] The header of Section B of the Windham defendants' memorandum in support
of dismissal is "Because The Complaint Does Not Present a Case or Controversy,
and Because The Complaint Seeks Relief in Violation of the U. S. Constitution, it
Fails to State a Claim Upon Which Relief Can be Granted."  That section does
argue that because "there is no record providing evidence that the named
wrestlers are time-barred by Connecticut law . . . any declaratory judgment would
not resolve the purported controversy."  However, this argument is presented as
part of an argument that the Court lacks subject matter jurisdiction over the case.

the police defendants in their official capacities.  849 F.2d at 794.

The Court is not entirely convinced that WWE has indeed been deprived of an opportunity to be heard with respect to dismissal of the *Windham* counter-suit for failure to state a claim.  On the issue of the applicability of the Connecticut statutes of limitations and repose to the concussion-related negligence and fraud claims of former WWE wrestlers, the Court has now examined hundreds of pages of combined briefing submitted by WWE and the affected wrestlers in three different consolidated actions brought by Vito LoGrasso, William Haynes and Russ McCullough and has now devoted dozens of pages of its own memoranda of opinions setting forth, and then setting forth a second time, the Court's determinations of applicable law.  In such circumstances, it is perhaps more appropriate to question whether WWE's arguments concerning Connecticut's statutes of limitations have been heard too much, rather than too little.

However, WWE also argues that "[t]he Court's conclusion that Plaintiff LoGrasso plausibly alleged a basis for tolling the statute of repose in the Singleton Action cannot justify dismissal [of the Windham action]," and on this basis the Court agrees that reconsideration is necessary.  WWE notes that the *Windham* defendants "have not yet asserted any basis for tolling the statute of repose" in the *Windham* action as they have yet to answer WWE's complaint. [Pl.'s Mem. at 12].  Moreover, the Court notes that the four named defendants in the *Windham* action are residents of Florida, Tennessee, North Carolina and the United Kingdom.  In addition, the named defendants dispute whether they have signed booking contracts with WWE that contained forum-selection clauses

22

mandating application of Connecticut law to any claims arising from their wrestling careers.  As to each named defendant against WWE, the Court would first need to undertake a factual review and to determine whether Connecticut law applies by virtue of a forum-selection clause in a contract, or whether another state's statute of limitations should be applied by virtue of a choice-of-law analysis.  Only then would the Court be in a position in which it could determine whether the declaratory judgment sought by WWE – that the claims of the named defendants are time-barred – should issue.

As WWE correctly points out, the Court would then need to determine whether each defendant has asserted facts sufficient to toll the applicable statute of limitations and/or repose.  Although the Court has concluded that LoGrasso plausibly alleged a basis for tolling under Connecticut law by virtue of fraudulent concealment and a continuing course of conduct alleged to have begun in 2005, that same basis for tolling the statute of limitations may not similarly apply to the named plaintiffs, who retired from WWE wrestling in 1999 or earlier.  Finally, even if the defendants to the *Windham* action have a plausible basis for tolling the applicable statutes of limitations and repose, WWE is correct that discovery would be then necessary to determine whether evidence existed to support the defendants' allegations that a tolling doctrine or provision was applicable.

For the reasons stated above, WWE's Motion for Reconsideration of the Court's Order dismissing the *Windham* action [Dkt. 119] is GRANTED.  The Court's Order entered at docket number 119 is hereby VACATED.

## IV.   Opinion Denying Defendants' Motion to Dismiss the Windham Action

Having vacated the Court's Order dismissing the *Windham* action on the basis of a failure to state a claim upon which relief may be granted, the Court now considers the *Windham* defendants' arguments, raised in their Motion to Dismiss [Dkt. 72], that the Court lacks subject matter jurisdiction over the action.  For the following reasons, defendants' Motion is GRANTED IN PART AND DENIED IN PART.

### 1.   Factual Background

From October, 2014 to June, 2015, five separate lawsuits against WWE were filed in different jurisdictions on behalf of former professional wrestlers asserting claims that they have sustained traumatic brain injuries.  The parties dispute the extent to which each of the lawsuits was "filed or caused to be filed" by Attorney Konstantine Kyros, though the lengthy and inflammatory complaints in each case are virtually identical.  All five of these lawsuits were subsequently transferred to the District of Connecticut and consolidated before this Court.

On June 2, 2015, Attorney Konstantine Kyros sent letters to WWE threatening similar claims on behalf of four additional professional wrestlers who performed for WWE.  On June 29, 2015, WWE commenced the *Windham* declaratory judgment counter-suit against these former wrestlers seeking a declaration that the claims of Kyros' wrestling clients relating to traumatic brain injuries are time-barred by the applicable statutes of limitations and repose under Connecticut law.  WWE also sought a declaration that the claims of wholly

unidentified former wrestlers, described only as "Various John Does," are also barred for the same reasons.  These "Various John Does" are not reputed to have threatened to sue WWE.

### 2.  The *Windham* Action Presents an Actual Case or Controversy Only as to the Named Defendants

The Declaratory Judgment Act permits a district court to exercise jurisdiction over a proposed declaratory judgment action when an actual controversy exists.  *See* 28 U.S.C. § 2201(a).  A district court has broad discretion when considering whether to exercise its jurisdiction under the Declaratory Judgment Act ("DJA").  *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).  Thus, under the Declaratory Judgment Act, a district court must first determine whether an actual controversy exists and then decide whether it will exercise jurisdiction over that controversy.  *Id.*

An actual controversy is one where "the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (*quoting Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).  Any analysis of the immediacy and reality of a legal dispute is guided by "whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some

25

contingency that may or may not come to pass." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F.Supp.2d 394, 406–07 (S.D.N.Y.2002) (*citing Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)), *aff'd*, 346 F.3d 357 (2d Cir. 2003).

The *Windham* defendants argue, without citation to authority in this jurisdiction, that the "letters of representation and preservation" sent to WWE on behalf of the four named defendants "did not institute litigation, nor . . .  provide sufficient immediacy and reality to warrant the issuance of a declaratory judgment" because the letters provided "for the possibility [that] litigation would never be initiated" and did not state "what claims might be brought against WWE."  [Def.'s Mem. at 11].  According to the *Windham* defendants, such letters must state with particularity the legal claims at issue in order to present an actual case or controversy.  Defendants cite *Kegler v. United States DOJ*, 436 F. Supp. 1204 (D. Wyo. 2006), in which an individual was found to lack standing in a suit brought against the Department of Justice seeking a declaratory judgment that a Wyoming expungement statute restored his right to own and transport a firearm across state lines notwithstanding the prohibition outlined in 18 U.S.C. Sec. 922(g) rescinding such rights for individuals serving sentences of probation.  The Wyoming court found that an opinion letter authored by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) which informed the Wyoming Attorney General that, in the view of ATF, the Wyoming statute would have "[no] effect whatsoever on Federal law" did not by itself present any "genuine threat of imminent prosecution against the plaintiff."  *Id.* at 1206, 1216.

26

Plaintiff's purported injury resulting from this letter was found to be "wholly conjectural and hypothetical." *Id.* at 1218.

WWE notes that the Second Circuit has found an actual case or controversy exists where one party notifies the other of its intent to file a lawsuit. *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 559 (2d Cir. 1991) (defendant notified declaratory judgment plaintiff that it intended to file a lawsuit after a ten day "standstill agreement" had passed).  WWE also argues that a "history of fierce litigation between parties strongly evidences a justiciable controversy."  [Pl.'s Mem. at 29, *citing Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir. 1969)].  Finally, WWE argues that because the duty to preserve documents only attaches at the time that litigation is reasonably anticipated, Kyros' preservation letters must therefore present WWE with the reasonable anticipation of litigation.  *See Zubulake v. UBS Warburg LLC*, 230 F.R.D. 212, 217 (S.D.N.Y. 2003) ("The duty to preserve attached at the time that litigation was reasonably anticipated.").

A "representation and preservation" letter" need not necessarily state the specific legal claims that a Plaintiff intends to pursue in order to present a party in receipt of such a litter with a sufficiently-accrued liability and a sufficiently-immediate risk as to present an actual case or controversy.  In circumstances where, as here, the declaratory judgment plaintiff has been informed by a particular individual or by an  identified class or group of individuals of an intent to file suit identifying the subject matter of the dispute and the time period and alleged injury involved,  there is an actual case or controversy presented and a

27

declaratory judgment action may be appropriate under the DJA, particularly where the plaintiff *has already been sued* on identical claims by other plaintiffs represented by the same counsel that authored the representation letter. *See PharmaNet, Inc. v. DataSci Liab. Co., No. CIV. 08-2965 (GEB), 2009 WL 396180, at *10 (D.N.J. Feb. 17, 2009) (actual case or controversy presented where letter sent from defendant's attorney "explicitly raised" an offer for plaintiff to license a specific patent, "mention[ed] by name four of the companies against whom Defendant had filed infringement suits," and "requested an answer by a date certain," as it was "objectively reasonable for a reader to perceive that failure to respond by that date would result in the filing of an infringement suit")

This finding only resolves the case or controversy requirement as to the named defendants on whose behalf Kyros has sent "representation and preservation" letters to WWE.  Separately, however, the Court finds that WWE's suit against unnamed "John Does" on whose behalf Kyros has not threatened suit is impermissibly preemptive.  WWE's request for a declaratory judgment against wholly unidentified persons WWE describes as "Various John Does" who are presumed to be clients of Attorney Kyros, but for whom no specific threat of imminent litigation has been established, has little support under the cases interpreting the requirements of the DJA.  WWE argues that "Kryos' public statements that he represented dozens of former wrestlers" and his statement that "if every wrestler who believes that they'd been harmed by the WWE right now decided to file a lawsuit against the WWE, this would surely decide I think an outcome" suggest that it is "reasonable to assume that such other wrestlers who

have retained Kyros — i.e., the John Doe Defendants — intend to sue WWE." [Pl.'s Mem. at 30].  In fact, WWE argues that "there would be no other reason for them to have retained Kyros except to sue WWE."  [Id.].

WWE cites to three opinions finding an actual case or controversy at least in part on the basis of threatening public statements made by counsel for a declaratory judgment defendant.  None of the three cases were brought against unnamed and unidentified "John Doe" defendants.  *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (finding an actual case or controversy based, in part, on <u>named</u> defendant's "recent public statements . . . [that] confirm its intent to continue an aggressive litigation strategy"); *PharmaNet, Inc. v. DataSci Ltd. Liab. Co.*, Civ. No. 08-2965 (GEB), 2009 WL 396180, at *8 (D. N.J. Feb. 17, 2009) (actual case or controversy based in part on a <u>named</u> defendant's public statements announcing a "strategy to sue"); *Shell Oil Co. v. Hickman*, 716 F. Supp. 931, 934 (W.D. Va. 1989) ("based on the . . . actions and representations of the defendants' counsel, the plaintiffs' fears of an impending suit filed on behalf of [<u>named decedent</u>] were real and immediate.").

The Court does not dispute WWE's argument that public statements may contribute to a court's finding of an actual case or controversy between two parties.  The Court notes, however, that the cited Kyros statements are too vague to threaten any immediate or specific future suit.  Kyros hints at the mere possibility of future claims from his unidentified clients, and not real and immediate controversies.  Kyros does not purport to represent all former WWE wrestlers, yet WWE seeks a declaration of the rights of all former wrestlers.

Moreover, the Kyros statements do not constitute a threat of suit.  Instead he states what might occur "if every wrestler who believes that they'd been harmed by the WWE" filed suit.   By its express terms, the Kyros statement does not state that every former wrestler would bring suit, nor does he state that every former wrestler believes he or she suffered harm.  Such statements are too equivocal to create a case or controversy.

If there are circumstances in which a court could find that a DJA action against unidentified persons, not constituting members of a class action, presents a dispute of "sufficient immediacy and reality" as to present an actual case or controversy, even though the declaratory plaintiff *does not even know the identity of the class members*,[3]  it is the view of this Court that such a class would likely be defined by *a common injury alleged,* specific and narrow in scope, *that has already accrued* and not merely a common attorney or common legal representation.  WWE urges the Court to take on faith and logic that a former

---

[3] In *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726 (2d Cir. 1993), the Second Circuit vacated a district court's finding that an actual case or controversy was presented where a declaratory judgment plaintiff, Keene, sought to file a mandatory class action against all present or future asbestos claimants against it.  Keene argued that a global settlement with such a mandatory class would be "most efficient" and that after reaching such a settlement, it could obtain a declaratory judgment of non-liability against future claimants seeking compensation outside the confines of the global settlement. *Id.* at 731.  The Second Circuit did not explicitly examine the issue of whether a declaratory judgment countersuit against an unnamed class of defendants can ever be an appropriate use of the DJA, and instead found that an actual controversy was not presented as "the existence of the settlement is an essential element entitling Keene to a declaratory judgment of non-liability." *Id.*  The court further noted that the suit was essentially an attempt to avoid application of the Bankruptcy Code and reminiscent of a "reorganization plan and 'cram down' . . . followed by a discharge."  *Id.*

WWE wrestler would not retain the Kyros law firm unless they intended a real and immediate suit against WWE for the same concussion-related causes of action as that claimed by Singleton, LoGrasso and others.  In the court's view, even assuming one or more of the "Various John Does" had retained Kyros to advise them whether to bring suit against WWE, any assumption that they actually intended to file suit, however logical, would be a presumptuous invasion of the sanctity and privacy of the attorney-client relationship as well as an infringement of a Plaintiff's sole right to determine *whether* to litigate a claim at all and the full extent of his or her damages giving rise to such a claim.  *See  Cunningham Bros. v. Bail*, 407 F.2d 1165, 1169 (7th Cir. 1969) (declaratory judgment action improper where plaintiff sought to "force an injured party to litigate a claim which he may not have wanted to litigate at a time which might be inconvenient to him or which might precede his determination of the full extent of his damages").

The Court lacks subject matter jurisdiction over WWE's claim for declaratory relief as against the "Various John Doe" defendants.  All claims against the John Doe defendants are DISMISSED.  The Court now considers whether, in the exercise of its broad discretion, the Court should exercise jurisdiction as to WWE's claims against the named defendants.

### 3.  The Court  Will Exercise Jurisdiction Over the Named Defendants Despite WWE's Procedural Fencings

Even where an actual controversy exists, the Court nonetheless retains broad discretion to exercise jurisdiction over a declaratory judgment action. In 1969, the Second Circuit articulated a two-pronged test to guide district courts in

the exercise of this discretion, asking: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved, and (2) whether a judgment would finalize the controversy and offer relief from uncertainty" and further stating that "if either of these objectives can be achieved the action should be entertained." *Broadview Chem. Corp.*, 417 F.2d 1000.  In recent years, however, the Second Circuit has noted that "[o]ther circuits have built upon this test, to ask also:  (3) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata;" (4) whether the use of declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy.  *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003).

WWE essentially argues that the Second Circuit has never explicitly abrogated its language in *Broadview Chem. Corp.* that if either of the first two factors are met a district court must not decline to exercise jurisdiction, and therefore it is only the first two factors which "control[] this Court's discretion." [Pl.'s Mem. at 39].  The reason for WWE's argument is clear, as the Court later explains – WWE does not wish this Court to consider "procedural fencing" as a factor in examining whether the exercise of jurisdiction over this matter is appropriate.

The Court disagrees with WWE's statement of the controlling Second Circuit test.  WWE overstates *Broadview.*  There, the Second Circuit stated that the district court should entertain the matter, not that it must.  It stands to reason

32

that there are circumstances in which the *Broadview t*est is met and yet providence dictates that the district court not entertain a case.  In noting the factors it did in *Dow Jones*, the Second Circuit signaled its expectation that district courts would exercise their discretion prudently and in the spirit of the Declaratory Judgment Act.  Clearly a declaratory judgment may serve a useful purpose or finalize a controversy but yet counterbalancing negative consequences outweigh these benefits.  The factors identified in *Dow Jones* are among those which may suggest such improvidence.

WWE also understates *Dow Jones.* There, the Second Circuit affirmed a district court's decision to decline jurisdiction over a declaratory judgment action after examining *all five* of the combined factors described above, and rejected the declaratory plaintiff's argument on appeal that "the district court should have balanced the various factors differently" and further stated that the district court's decision was not "premised on an erroneous view of the law."  *Dow Jones & Co.*, 346 F.3d at 360.  When the Second Circuit next examined a district court's decision to decline jurisdiction over a declaratory judgment action in *New York v. Solvent Chem. Co.*, 664 F.3d 22, 26 (2d Cir. 2011), the court did not cite the two-pronged test from *Broadview Chem. Corp.* and simply stated that "[w]hen faced with a request for a declaratory judgment pursuant to . . . 28 U.S.C. § 2201(a), a district court *must inquire*" into all five of the above listed factors.  *See Solvent Chem. Co.*, 664 F.3d at 26 (emphasis added) (*citing Dow Jones & Co.*, 346 F.3d at 359–60).  Thus, the law is clear that not only should the Court consider all five factors from *Dow Jones*, the Court is indeed *required* to do so.

The *Windham* defendants raise no argument that the instant matter would increase friction between sovereigns or encroach on the domain of a state court and raise no argument that there is a more effective remedy available to WWE. Defendants also raise no specific arguments that the *Windham* action would not serve a useful purpose in settling the issues involved, finalizing the controversy, and offering all parties relief from uncertainty.[4]  Therefore, the sole question presented is whether WWE engaged in procedural fencing and if so whether its procedural fencing is so foul and improper as to alone warrant dismissal in the exercise of the Court's broad discretion.  As the Court explains below, although WWE did engage in procedural fencing, its conduct is outweighed by the ability of the *Windham* action to fully and finally settle the issues between the named plaintiffs and the defendant, relieve the parties of uncertainty and preserve limited judicial resources.

The *Windham* defendants argue in support of dismissal that declaratory judgments should not be used to "anticipate [an] affirmative defense."  [Pl.'s Mem. at 27].  Plaintiffs cite to *BASF Corp. v. Symington*, 50 F.3d 555 (8th Cir. 1995), in which the Eighth Circuit held after surveying numerous cases that "where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise

---

[4] The *Windham* defendants raise a series of arguments that do not directly address any of the five listed factors.  The defendants argue that it is improper to "preemptively litigate state-law tort claims," that it is improper to deprive an injured party of his or her right to determine the forum and timing of a suit, that it is improper to use the DJA to litigate statute of limitations defenses and that WWE seeks to "improperly leverage" a ruling against one wrestler as to all others.  [Def.'s Mem. at 23-29].

legitimate choice of the forum and time for suit, no declaratory judgment should issue." *Id.* at 558-559.  However, WWE notes that the Eighth Circuit's survey found that courts, including the Second Circuit itself, have "regularly consider[ed] the merits of affirmative defenses raised by declaratory plaintiffs." *Id.* at 558*, citing, e.g.*, *Hoelzer v. City of Stamford*, 933 F.2d 1131, 1135–37 (2d Cir. 1991) (examining declaratory plaintiff's affirmative defense based upon New York's statute of limitations).

The *Windham* defendants also argue, almost in passing, that WWE's action has engaged in procedural fencing by denying "the wrestlers the right to determine the place and timing of suit." [Def.'s Mem. at 27].  Indeed, courts are reluctant to entertain efforts by an alleged tortfeasor to use the DJA in a race-to-the-courthouse effort to shop for a forum with the most favorable statute of limitations.  *See Dow Jones & Co.*, 237 F. Supp. 2d at 440 (rejecting Dow Jones' "rush to file first" in anticipation of litigation in the United Kingdom and in order to apply United States law to the declaratory defendant's potential defamation claim). And the Eighth Circuit in *BASF Corp.* declined to exercise jurisdiction where the declaratory action by BASF in North Dakota, filed one day after the declaratory defendant had already filed in New Jersey, was "chiefly calculated to take advantage of favorable statute of limitations" in North Dakota and was "a misuse of the declaratory judgment act."  50 F.3d at 559.  The Eighth Circuit surveyed a number of cases and found that in the instances in which courts have permitted a declaratory judgment action on the basis of an affirmative defense, including the cases cited by WWE, the declaratory action did not "involve[] a

35

threat to an injured party's right to choose its forum." *Id.* Other circuits are in agreement with this holding in *BASF*. *See AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir. 2004) (finding abuse of discretion where declaratory action was "an effort to engage in procedural fencing to secure the Banks' choice of forum"); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) ("a suit for declaratory judgment aimed solely at wresting the choice of forum from the "natural" plaintiff will normally be dismissed and the case allowed to proceed in the usual way"); *Pac. Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) (no abuse of discretion in declining jurisdiction where district court found that declaratory plaintiff sought merely to control the forum of the natural plaintiff's cause of action).

WWE does not squarely address the procedural fencing factor in briefing, stating only the mere truism that the "proposed remedy is not procedural fencing, but rather goes to the important policy of repose and involves a pure legal issue that is involved in every other case filed by Kyros." [Pl.'s Mem. at 39]. However, an examination of the very cases cited by WWE in favor of finding an actual case or controversy reveals the extent to which the procedural fencing in the instant matter must be distinguished as procedurally improper.

In *Shell Oil*, the declaratory plaintiff had been sued by counsel for the declaratory defendants on behalf of another Mississippi resident in the District of Mississippi in an obvious attempt to take advantage of Mississippi's six-year statute of limitations for wrongful death actions despite that individual's claims having accrued in Virginia, where they were time barred. 716 F. Supp. at 932-333.

The first Mississippi action was transferred to Virginia, but counsel then threatened to file another action in Mississippi on behalf of the declaratory defendants.  *Id.*  Plaintiff filed a DJA action in Virginia seeking a determination that the Virginia statute of limitations applied to the declaratory defendants' claims and that such claims were time-barred.  *Id.* at 933.  The Virginia district court held that "declaratory relief is an appropriate remedy" in part because "entry of declaratory judgment for the plaintiffs would promote judicial economy."  *Id.* at 934.  However, key to the Virginia district court's finding that declaratory relief would be appropriate was its holding that the two-year Virginia statute of limitations would apply and bar defendants' claims *regardless of whether the action was filed in Mississippi or Virginia* under Mississippi's choice-of-law rules.  *Id.*  The Court further noted that counsel for defendants admitted at oral argument that counsel would not have opposed transfer to Virginia had defendants filed first in Mississippi.  *Id.*

Similarly, the Second Circuit in *Hoelzer v. City of Stamford*, also cited by WWE, examined an appeal brought by a New York resident and art restorer who had filed a declaratory judgment action to quiet title to a series of murals in his possession based upon the statute of limitations having run on the City of Stamford's delayed demand for the return of those murals.  933 F.2d at 1131-1135.  Applicability of New York's statute of limitations was not disputed on appeal given that demand for the return of the artwork was made in New York, the artwork resided in New York and therefore the claim accrued in New York.  *Id.* at 1136.  Furthermore, the Second Circuit affirmed the district court's holding that

the New York statute of limitations did not bar defendant's claim, and therefore the declaratory plaintiff's choice of forum did not appear to affect the outcome of the matter. *Id.* at 1137-1138.

These cases illustrate that where a declaratory judgment plaintiff seeks a declaration of non-liability on the basis of an affirmative defense and the use of the DJA *does not impact the application of the law to the parties claims*, notwithstanding the deprivation of the declaratory plaintiff's traditional right to determine the time and place of the suit, exercising jurisdiction over the action may be appropriate. *See, e.g., Hoelzer*, 933 F.2d at 1136. However, where exercising jurisdiction over a declaratory judgment action would *affect the application of one or more state's laws to the claims of the parties* through, for example, the enforcement of a stricter statute of limitations in a forum where the natural plaintiff's claim may not have actually accrued, obvious procedural fencing may outweigh the benefits of exercising jurisdiction over the suit. *See BASF Corp.*, 50 F.3d at 559; *Dow Jones & Co.*, 237 F. Supp. 2d at 440

It cannot be disputed here that via the *Windham* action WWE seeks to preemptively apply Connecticut's statutes of limitations and repose to bar the claims of four named defendants, who reside in four different domestic and foreign jurisdictions other than the State of Connecticut, who likely wrestled in a number of jurisdictions other than Connecticut, without presenting evidence that *any* of the four wrestlers signed contracts with WWE selecting Connecticut as the

exclusive forum for claims arising out of their performances for WWE.[5]  In effect,

WWE seeks to hale Messrs. Windham, Billington, Ware and Perras into a ring they

have built here in the District of Connecticut in order to use the Connecticut

statutes of limitations to potentially constrain claims that these wrestlers have yet

to even state with specificity.[6] Use of the DJA for such a pre-emptive strike is

suspect on its face.

However, in its March 21, 2016 Opinion, this Court already undertook a

choice-of-law analysis to determine whether to apply Connecticut or Oregon law

to the claims in the *Haynes* action, as there was no evidence that plaintiff Haynes

had signed a booking contract with WWE.  [Opinion at 20-24].  First, the Court

noted Attorney Kyros' own pattern of obvious forum-shopping in prior suits

against WWE.  [Id. at 18, 23-24].  The Court determined that under Connecticut

law, the applicable statutes of limitations are considered procedural where the

underlying cause of action existed at common law, and therefore Connecticut's

statute of limitations applied to Haynes' common law fraud and negligence claims

notwithstanding his Oregon residency and the filing of his action in Oregon.  [Id.

---

[5] WWE argues that the counsel for the Windham defendants, in several of the
previously-filed suits against WWE, agreed to transfer those cases to Connecticut
and that one such case was a purported class action that would have
encompassed the Windham defendants as class members.  However, prior suits
were transferred to Connecticut in part on the basis of evidence that the named
plaintiffs had signed contracts with WWE containing forum-selection clauses
limiting such claims to this jurisdiction.  [Opinion at 17].
[6] The Court notes that while, up to this point, all of the complaints filed by Kyros'
wrestling clients have been virtual carbon copies and have raised identical
claims, the Windham action would restrict the claims of the named plaintiffs
based solely on the litigation choices of the wrestlers who have already filed.
This point might have more significance had the prior plaintiffs not filed ten-count
complaints raising virtually every plausible cause of action.

at 24].  The Court also found that because plaintiff LoGrasso's claim for fraud by omission also plausibly implicated the tolling doctrine of fraudulent concealment and continuing course of conduct, LoGrasso's claims were not necessarily time-barred.  [Id. at 35-47].  It is these three determinations that militate against dismissal of the *Windham* action, notwithstanding WWE's procedural fencing.

*First*, in cases such as the instant matter, where the subject matter of the litigation is nationwide in scope, where the declaratory judgment defendants have their own history of abusive forum shopping and procedural fencing and where *similar actions were already pending in the same forum chosen by the declaratory judgment plaintiff*, the Court's nominal concern for the declaratory defendant's own choice of forum and its effect on the application of the law to the claims presented is more circumscribed.  Unlike the declaratory plaintiffs in *BASF Corp.* and *Dow Jones*, the declaratory plaintiff here is not attempting to use the DJA to introduce a new and rival forum into the equation, but rather is seeking merely to prevent the inefficient and time-consuming forum-shopping in which Kyros has engaged at the expense of the judicial resources of a number of district courts.

*Second*, even if Messrs. Windham, Billington, Ware and Perras had elected to file suit in the *loci* of their choice, it is likely, based upon the same factors which led three different courts to transfer the *Haynes*, *Frazier* and *Osborne* actions to the District of Connecticut from three different judicial districts, that their suits would similarly be transferred here and face application of Connecticut procedural law, including the Connecticut statutes of limitations.

*Third*, and perhaps most importantly, the Court suspects that application of the Connecticut statutes of limitations in particular – as opposed to the statutes of limitations of another jurisdiction – is unlikely to have an impact on the eventual determination of whether WWE is liable to any of the *Windham* defendants.  Specifically, *if* there is sufficient evidence for a trier of fact to conclude that WWE fraudulently omitted material information from LoGrasso concerning permanent head injuries, it is likely that WWE has also fraudulently concealed LoGrasso's cause of action, as LoGrasso's discovery of his cause of action would have been thwarted by the fraudulent omissions.[7]  The same logic applies to the *Windham* defendants.  By contrast, if no such evidence exists with respect to LoGrasso, it is unlikely that the *Windham* defendants can state any claim for relief for fraud, regardless of whether such claims are time-barred under the laws of different jurisdictions.

Because WWE's procedural fencing is not likely to impact the ultimate disposition of the claims of the *Windham* defendants, the Court finds that this factor is outweighed by the other factors articulated in *Dow Jones* and *Broadview Chem. Corp.*[8]  Specifically, the Court finds that the *Windham* action will assist in

---

[7] WWE will soon be filing a dispositive motion as to its liability with respect to Singleton and Lograsso. After months of extensive discover and depositions of witnesses by Singleton and LoGrasso, the evidence will either show that a reasonable trier of fact could find that WWE was under a duty to disclose knowledge in its possession or readily obtainable and failed to do so in a continuing course of fraudulent conduct, or that WWE had no such duty or knowledge or that the conduct was not continuous after the initial wrong.

[8] The Court emphasizes, however, the limited and fact-specific nature of its finding that exercising jurisdiction is appropriate here despite WWE's obvious procedural fencing and the precedent set by numerous prior courts in refusing to

clarifying and settling the legal issues involved by helping to identify whether WWE is liable to any active or former wrestlers and, if so, continuing to refine the possible group of persons to whom WWE could be liable.  In addition, a judgment in favor of WWE would provide finality with respect to the named defendants' claims and would relieve WWE of the uncertainty it has faced since it received the "representation and preservation" letters from the four defendants.  WWE may also elect to amend its *Windham* complaint and seek a declaration of non-liability on grounds other than the statutes of limitations should the progression of the Singleton and LoGrasso matter indicate that WWE's non-liability is ultimately premised on a different legal or factual theory.

Finally, the exercise of jurisdiction over the *Windham* action would preserve limited judicial resources by avoiding, with respect to the named defendants, the tortuous path to the District of Connecticut that Attorney Kyros' other clients have been forced to walk.  In continuing to file carbon-copy concussion suits on behalf of former wrestlers in other jurisdictions, only to have those suits eventually transferred to this District upon WWE's motion, Kyros is only delaying his own clients' potential recovery and wasting limited judicial resources.  Against a defendant as well-represented as WWE, such tactics are

---

entertain such actions where a declaratory plaintiff seeks to pre-emptively apply a stricter state law than that which would be applicable in the declaratory defendant's natural choice of forum.  Because it is likely that the declaratory defendants' claims in this action would have been transferred to this district, where other similar claims were already pending, that Connecticut law would likely have been applied, and that application of Connecticut law instead of the law of another state will not determine the outcome of this matter, WWE's procedural fencing is not likely to bear a significant role in this case.

unlikely to increase, and certain to delay, his clients' own chances of a recovery. Although, in dismissing the John Doe defendants, the Court declines to hale all of Kyros' wrestling clients to Connecticut *as a class*, it is possible – even probable – that the Court will hear the claims of these clients in this District at some point in the future.

Once all of the lawyers, entertainers, and lawyer-entertainers involved in this case have entered the proper ring, perhaps then the parties will stop dancing around the ropes with one another and begin to wrestle these cases toward a fair and just resolution.

For the foregoing reasons, Defendants' Motion to Dismiss the *Windham* *a*ction for lack of subject matter jurisdiction is GRANTED with respect to the claims against the unknown "John Does" and DENIED with respect to the claims against the four named defendants.  The John Does are DISMISSED.  Messrs. Windham, Billington, Ware and Perras are to be REINSTATED as defendants in this consolidated action.


V.      **WWE's Motion to Expedite Discovery in the *Windham* Action**

As the John Doe defendants have been dismissed, WWE's Motion for Expedited Discovery of the John Doe Defendants is DENIED AS MOOT.


VI.     **Conclusion**

In conclusion, WWE's Motion for Reconsideration of the Court's Order [Dkt. 116] Granting In Part and Denying In Part Defendant's Motions to Dismiss the

*Singleton* and *McCullough* Actions [Dkt. 118] is DENIED.  WWE's Motion for Reconsideration of the Court's Order [Dkt. 117] Dismissing the Windham Action [Dkt. 119] is GRANTED.  The Court's Order at Docket Number 117 is hereby VACATED.

Defendants' Motion to Dismiss the Windham Action [Dkt. 72] is GRANTED IN PART AND DENIED IN PART.  The John Doe defendants are DISMISSED. Messrs. Windham, Billington, Ware and Perras are to be REINSTATED as defendants in this consolidated action.

WWE's Motion for Expedited Discovery of the John Doe Defendants [Dkt. 82] is DENIED AS MOOT.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 21, 2016