# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RUSS McCULLOUGH, *et al.*,** | : | **No. 3:15-cv-01074 (VLB)** |
| | : | **Lead Case** |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

| | | |
|---|---|---|
| **EVAN SINGLETON and VITO** | : | **No. 3:15-cv-00425 (VLB)** |
| **LOGRASSO,** | : | **Consolidated Case** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

### DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S
### ANSWER AND AFFIRMATIVE DEFENSES TO THE SECOND AMENDED
### <u>COMPLAINT OF PLAINTIFFS EVAN SINGLETON AND VITO LOGRASSO</u>

Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully answers the Second Amended Complaint (the "SAC") of Plaintiffs Evan Singleton and Vito LoGrasso, averring as follows.  WWE hereby denies all allegations of the SAC except to the extent that such allegations are specifically admitted herein. WWE further denies all averments contained in the headings of the SAC.

### INTRODUCTION

1.       The allegations set forth in Paragraph 1 constitute Plaintiffs' characterization of their claims and do not assert factual allegations to which a

response is required.  To the extent a response is deemed necessary, those allegations are denied.

2.      It is denied that Plaintiffs have developed symptoms and been diagnosed with permanent, degenerative post-concussion brain injuries from their wrestling performances with WWE.  WWE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 2, and on that basis they are denied.

3.      It is denied that WWE has known for decades that repeated concussive and sub-concussive impacts substantially increase the probability that a wrestler will develop a permanent, degenerative brain disease.  Plaintiffs' allegation that WWE "should have known" such information is not relevant to the sole remaining fraud by omission claim and no response is, therefore, required.  It is denied that WWE hid any medical or scientific studies from the Plaintiffs and denied that WWE had any ability or motive to do so.

4.      It is denied that WWE took affirmative steps to mislead Plaintiffs into wrestling while injured resulting in the accumulation of concussive and sub-concussive impacts without sufficient recuperation time.  Plaintiff LoGrasso never sought treatment for any alleged head injury, nor reported sustaining any during his tenure with WWE.  Plaintiff Singleton reported a single concussion, for which he received extensive medical treatment and never performed again.  The remaining allegations state Plaintiffs' counsel's view of the state of science, and are denied as stated on the basis of lack of knowledge regarding the factual basis for their beliefs.  All remaining allegations are denied.

5.      The allegations set forth in Paragraph 5 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

6.      It is denied that WWE supposedly refused to acknowledge the risks it was creating and attempted to conceal those alleged risks from its wrestlers. WWE denies concealing anything related to the alleged risks of head trauma, and notes that the Court has dismissed the fraudulent concealment claims.  The remaining allegations set forth in Paragraph 6 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

7.      The allegations set forth in Paragraph 7 are denied.

8.      The allegations set forth in Paragraph 8 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.  WWE further notes that these allegations, which are couched in negligence and negligence misrepresentation terms, have been dismissed by the Court.

9.      It is admitted that physicians are subject to the standards of the profession at the time medical care was provided, and denied that any physician under contract to WWE failed to adhere to the standards of the profession in any way regarding LoGrasso and Singleton.  It is further denied that Plaintiffs cannot be expected to know the risks of their profession, including the alleged risk of head injury, all of which has been and continues to be the subject of much media attention and which risks Plaintiffs assumed by conduct and contract.  WWE

further responds that Singleton was required to attend a meeting in August 2012 where Dr. Joseph Maroon addressed the subject of head trauma with all FCW talent.

10.     The allegations set forth in Paragraph 10 constitute Plaintiffs' characterization of their claims and do not assert factual allegations to which a response is required.  To the extent a response is deemed necessary, those allegations are denied.

JURISDICTION AND VENUE

11.     It is denied that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331; rather, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs are residents of a different state from WWE and because it is alleged that the value of the matter in controversy exceeds $75,000.

12.     Admitted.

13.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegation that Singleton is a citizen of Pennsylvania, and on that basis it is denied.  It is admitted only that Singleton performed for WWE under the name Adam Mercer.  It is denied that Singleton wrestled for WWE from 2012 to 2013.

14.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegation that LoGrasso is a citizen of Pennsylvania, and on that basis it is denied.  The remaining allegations of Paragraph 14 are denied.

15.     Admitted.

16.    It is admitted only that WWE is a public company; that Vince McMahon is and has been the chief executive of WWE since its formation; and that Linda McMahon was an executive of WWE from its formation until in or around 2009.  It is further admitted that Stephanie McMahon currently is WWE's Chief Brand Officer and that Paul Levesque currently is Executive Vice President, Talent, Live Events & Creative.  The remaining allegations set forth in Paragraph 16 are denied.

## FACTUAL ALLEGATIONS

17.    It is admitted that WWE is the largest wrestling entertainment organization in the world.  The remaining allegations set forth in Paragraph 17 are denied.

18.    The allegations in this paragraph are not pertinent to the sole remaining fraud by omission claim and any other count such allegations may have been pertinent to has been dismissed.  No response is therefore required.

19.    The allegations in this paragraph are not pertinent to the sole remaining fraud by omission claim and any other count such allegations may have been pertinent to has been dismissed.  No response is therefore required.

20.    It is admitted that the winners and losers of WWE matches are predetermined.  It is further admitted that WWE programming has a storyline, and that some of the dialogue is scripted.  The allegations that cite to footnote 2 refer to a document that speaks for itself as to its content.  WWE denies such allegations to the extent that they are inconsistent with that document.  The remaining allegations of Paragraph 20 are denied.

21.     It is admitted only that WWE programming airs throughout the year, and denied that either LoGrasso or Singleton ever wrestled hundreds of times per year for WWE.  The remaining allegations set forth in Paragraph 21 are denied, including the false allegation that WWE performers "fight" in the conventional sense of that word.

22.     The allegations set forth in Paragraph 22 are denied as stated.  As to LoGrasso and Singleton, both are parties to a contract by which they agreed they were independent contractors responsible to obtain their own insurances and agreed that they assumed all risk of injury.  As to Singleton, WWE further responds that WWE paid for all medical treatment associated with his alleged concussion while under contract.

23.     It is admitted only that the winners and losers of WWE matches are predetermined.  The remaining allegations of Paragraph 23 are denied as stated.

24.     The allegations of paragraph 24 are denied.  The performers for WWE are skilled professionals who call their own moves in the ring to effectuate the storyline and are responsible for each other's safety once they enter the ring.

25.     It is denied that the primary classification of head injuries relevant to WWE are concussions and CTE, or that this case is about either.  As construed by the Court, the claims here are not for concussions but instead for fear of a risk of permanent neurodegenerative diseases.  It is further denied that CTE is a primary injury relevant to WWE, as to date exactly two performers who performed for WWE and other organizations reportedly were diagnosed post-mortem with CTE.  It is further denied that WWE wrestlers suffer repeated concussions and

countless sub-concussive blows, and specifically denied that LoGrasso suffered any concussions while with WWE or that Singleton suffered more than one concussion.  To the extent paragraph 25 contains Plaintiffs' counsel's view of the state of the science regarding the causes of CTE, such allegations are denied on the basis of a lack of knowledge or information sufficient to form a belief about the truth of their views of the state of science.

26.     The allegations that cite to footnotes 3 and 4 refer to documents that speak for themselves.  WWE denies such allegations to the extent that they are inconsistent with the content of those documents.  WWE admits that a sub-concussive blow, as defined by Plaintiffs' counsel, is one that does not produce a diagnosable medical event.

27.     WWE denies that any concussion sustained by LoGrasso and Singleton went undiagnosed and untreated.  LoGrasso never reported any concussion or suspected concussion while performing at WWE, and Singleton was properly diagnosed and treated for a single concussion.  WWE admits that a loss of consciousness is at times associated with a concussion, and that a concussion can occur without loss of consciousness.

28.     The allegations that cite to footnotes 5 and 6 refer to documents that speak for themselves.  WWE denies such allegations to the extent that they are inconsistent with the contents of those documents.  WWE further responds that physicians affiliated with WWE during the time LoGrasso and Singleton performed were familiar with the symptoms of concussions and medically

competent to diagnose and treat concussions.  The remaining allegations are not pertinent to the sole remaining claims and therefore no response is required.

29.    The allegations that cite to footnotes 7, 8, and 9 refer to documents that speak for themselves.  WWE denies such allegations to the extent that they are inconsistent with the content of those documents.  WWE denies that either LoGrasso or Singleton suffered a concussion which caused bleeding in the brain, and further responds that Singleton's allegations that he suffered an intracranial hemorrhage is a knowing falsity.  WWE further responds that at no time did LoGrasso demonstrate, or claim, any of the symptoms of post-concussion syndrome during the time he performed for WWE.

30.    The allegations that cite to footnote 10 refer to a document that speaks for itself.  WWE denies such allegations to the extent that they are inconsistent with the content of that document.  WWE further denies that second impact syndrome, as defined by Plaintiffs' counsel, has anything to do with the claims asserted by LoGrasso and Singleton.  The remaining allegations are not pertinent to the sole remaining claims and therefore no response is required.

31.    The allegations set forth in Paragraph 31 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.  WWE is an entertainment company with no independent knowledge or expertise regarding alleged links between head trauma and long term neurological problems, which are subjects involving medical and specialized scientific training.  During the time LoGrasso and Singleton performed, WWE entered into contracts with physicians to treat

performers who suffered in-ring injuries, including concussions, and WWE had and has every reason to believe those physicians practiced in accordance with the standards of the medical profession.

32.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 32 as stated, and on that basis they are denied.

33.     The allegations that cite to footnote 11 refer to a document that speaks for itself as to its contents, which contain the scientific opinions of one particular forensic pathologist, Dr. Bennet Omalu.  WWE lacks knowledge or information sufficient to form a belief about the truth of those opinions and on that basis they are denied.  WWE admits that CTE can only be diagnosed post-mortem by direct tissue examination.

34.     The allegations that cite to footnote 12 refer to a document that speaks for itself as to its contents, which contain the scientific opinions of Dr. Ann McKee.  WWE lacks knowledge or information sufficient to form a belief about the truth of those opinions, and on that basis they are denied.

35.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 35, and on that basis they are denied.

36.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 36, and on that basis they are denied.

37.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 37, and on that basis they are denied.

38.    The allegations that cite to footnote 13 refer to a document that speaks for itself as to its contents, which contain scientific opinions of Dr. Kevin Guskiewicz.  WWE lacks knowledge or information regarding the research conducted on football players sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 32, and on that basis they are denied.

39.    Paragraph 39 does not identify the former wrestler referenced in that paragraph.  To the extent it is Chris Benoit, it is denied as stated.  The autopsy conducted by the medical examiner did not reveal CTE.  Thereafter, Dr. Bennett Omalu publicly reported his opinion that he had examined Mr. Benoit's brain and found CTE.  WWE lacks knowledge or information sufficient to form a belief about the truth of that opinion and on that basis those allegations are denied and plaintiffs are left to their proof.

40.    The allegations set forth in Paragraph 40 are denied as stated.  WWE admits only that the activities of professional wrestlers involve danger and inherent risk of harm, and that there is a risk of harm if performers make mistakes.  All remaining allegations are denied.

41.    The allegations set forth in Paragraph 41 are denied.

42.    The allegations set forth in Paragraph 42 are denied.

43.    The allegations set forth in Paragraph 43 are denied.

44.     It is admitted only that Paragraph 44 includes an excerpt of testimony by Stephanie McMahon to the Committee on Oversight and Government Reform, U.S. House of Representatives, on or about December 14, 2007.  The remaining allegations set forth in Paragraph 44 are denied.

45.     The allegations set forth in Paragraph 45 are not pertinent to any of the claims alleged by LoGrasso or Singleton, and are part of improper pleading techniques noted by the Court when dismissing most of the claims asserted by LoGrasso and Singleton.  Neither Plaintiff alleges being injured by metal chairs or weapons to the head while affiliated with WWE, and wrestlers are not engaged in "fights", but in simulated contests in furtherance of storyline.  The allegations of paragraph 45 are, therefore, denied.

46.     The allegations that cite to footnotes 16 and 17 refer to documents that speak for themselves as to content.  WWE denies such allegations to the extent they are inconsistent with those documents, and admits that it banned hitting opponents on the head with chairs or other objects by 2010.  The remaining allegations are not pertinent to the sole remaining claims and therefore no response is required.

47.     The allegations set forth in Paragraph 47 are denied.

48.     WWE denies that the performances by its talent involve beatings or deliberate blows to the head designed to injure opponents.  All other allegations of paragraph 48 are denied.

49.     It is admitted that professional wrestlers perform acrobatic feats, including lifting their opponents into the air.

50.     The allegations of paragraph 50 are denied.

51.     The allegations set forth in Paragraph 51 are denied.

52.     It is admitted that a bump involves falling to the mat backwards so the wrestler lands on his back and that wrestlers are taught to avoid hitting their heads.  It is denied that wrestlers injure their head if properly performed.  It is admitted that Plaintiffs LoGrasso and Singleton would have done the bump move multiple times.  All remaining allegations are denied.

53.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 53, and on that basis they are denied.

54.     The allegations set forth in Paragraph 54 are denied as stated.  It is admitted only that in September of 2007 WWE became aware of media coverage of a press conference sponsored by the Sports Legacy Institute reporting that Chris Benoit's brain had been examined and found to have had CTE.  WWE further responds that Plaintiffs' allegation that WWE "should have known" such information is not relevant to the sole remaining fraud by omission claim and no response is, therefore, required.

55.     It is admitted only that WWE executive Stephanie McMahon stated in December 2007 that "WWE wrestlers are at risk for concussions because of the nature of their work" and that Dr. Joseph Maroon stated on the NFL Network in March 2015, after this lawsuit was filed, his medical opinion that "The problem of CTE, although real, is its being over-exaggerated."  The remaining allegations set forth in Paragraph 55 are denied.

56.     The allegations that cite to footnotes 19 and 20 refer to documents that speak for themselves as to their contents.  WWE denies such allegations to the extent they are inconsistent with those documents.  In particular, WWE denies that it supposedly was aware in 2005 and beyond that wrestling for the WWE and suffering head trauma would result in long term injuries as a result of the Mayo Clinic document cited in footnote 20, and denies that document says anything about any alleged link between head trauma and long term neurodegenerative problems in general or wrestling in particular.  WWE further denies that it knew or should have known that wrestlers have been subjected to extremely dangerous conditions and blows for decades spanning back to the 1920s, which is decades before WWE even existed.  Plaintiffs' allegation that WWE "should have known" such information is not relevant to the sole remaining fraud by omission claim and no response is, therefore, required.  The remainder of paragraph 56 contains legal conclusions to which no response is required, but such conclusions are denied in any event and, on information and belief, both LoGrasso and Singleton were aware of the risk of concussions and other injuries associated with their profession.

57.     WWE lacks knowledge or information sufficient to form a belief as to the truthfulness of the first sentence of paragraph 57, which is therefore denied. The remaining allegations describe medical literature allegedly known to the medical community which are in writing and speak for themselves as to their content.  WWE lacks knowledge or information sufficient to form a belief as to whether all or any of the medical literature cited by Plaintiffs was in fact known

for decades within the medical community and therefore denies such allegation. WWE admits only that in a press conference in 2007 it was announced that Chris Benoit had reportedly been diagnosed post-mortem as having CTE and in 2009. Andrew Martin was reportedly diagnosed post-mortem as having CTE.  WWE lacks knowledge or information sufficient to form a belief about the accuracy of those reported findings and therefore denies same and leaves Plaintiffs to their proof.

58.   The allegations set forth in Paragraph 58 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.  WWE is an entertainment company, not part of the medical community, and has no independent knowledge or expertise regarding an alleged link between head trauma and long term neurodegenerative diseases.  As stated in WWE's answer to paragraph 54 and 57, WWE first learned of the reported findings regarding Chris Benoit as a result of media coverage of a press conference held in September 2007, which was the first reported indication of CTE in a professional wrestler if true.  WWE further responds that Plaintiffs' allegation that WWE "should have known" such information is not relevant to the sole remaining fraud by omission claim and no response is, therefore, required.

59.   The allegations set forth in Paragraph 59 are denied.

60.   The allegations set forth in Paragraph 60 are denied.

61.   WWE is without knowledge or information as to the nature and extent of representations regarding safety which are alleged to have been made

directly to the Plaintiffs and therefore denies such allegations.  It is admitted that Paragraph 61 contains an excerpt of Vince McMahon's testimony to the Committee on Oversight and Government Reform, U.S. House of Representatives on or about December 14, 2007.  The remaining allegations set forth in Paragraph 61 are denied.

62.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the NFL and NHL set forth in Paragraph 62, and on that basis they are denied.

63.     The allegations set forth in Paragraph 63 are denied.

64.     The allegations set forth in Paragraph 64 regarding Ms. McMahon's testimony to the Committee on Oversight and Government Reform, U.S. House of Representatives on or about December 14, 2007 have been specifically found by the Court to have been repeatedly misrepresented both as to the substance and meaning of her testimony by plaintiffs' counsel, and those allegations are therefore denied.

65.     The allegations set forth in Paragraph 65 misrepresent Ms. McMahon's testimony to the Committee on Oversight and Government Reform, U.S. House of Representatives on or about December 14, 2007 and therefore are denied.

66.     It is admitted that Dr. Omalu reportedly diagnosed Mike Webster and Terry Long post-mortem with CTE, and that Dr. Omalu's findings regarding Webster were first published in *Neurosurgery* in 2005.  WWE lacks knowledge or

information sufficient to form a belief about the remaining allegations which are, therefore, denied.

67.     The allegations set forth in Paragraph 67 are denied.

68.     The allegations set forth in Paragraph 68 refer to a news article that speaks for itself, and WWE denies such allegations to the extent they are inconsistent with the content of that document.  The remaining allegations of Paragraph 68 are denied, including specifically the insinuation that Dr. Maroon had any relationship whatsoever with WWE at the time he reportedly expressed his opinion regarding Dr. Omalu's conclusions regarding Terry Long's death in the cited *Pittsburgh Post-Gazette* article in 2005.

69.     The allegations set forth in Paragraph 69 refer to a recorded interview that speaks for itself, and WWE denies such allegations to the extent they are inconsistent with the content of that document.  In particular, the allegations are denied insofar as they insinuate that the statements attributed to WWE were made in 2005 and/or in response to Dr. Omalu's reported findings regarding Mike Webster or Terry Long.

70.     WWE denies the allegation that its request to examine the research and tests was feigned.  Shortly after the 2007 press conference announcing Dr. Omalu's reported finding on Chris Benoit, WWE requested to see various records including, but not limited to, chain-of-custody records demonstrating that the brain tissue examined was in fact that of Chris Benoit.  That request was reiterated in writing multiple times thereafter, and sought by subpoena in this case.  To this day, Dr. Omalu has not produced any chain-of-custody records.  It

is admitted that Dr. Maroon visited at some point with Dr. Omalu at West Virginia University on behalf of the NFL and was shown various slides of what Dr. Omalu represented were NFL players and Benoit.  It is denied that Dr. Omalu produced any chain-of-custody records at that time either.  The remaining allegations that are cited in footnote 24 refer to a document that speaks for itself as to its content. WWE denies such allegations to the extent they are inconsistent with that document.

71.     It is admitted only that Dr. Omalu reportedly diagnosed Terry Long with CTE post-mortem.  The remaining allegations set forth in Paragraph 71 refer to a document that speaks for itself as to its contents, and WWE denies such allegations to the extent they are inconsistent with that document.

72.     The allegations that cite to footnote 25 refer to a document that speaks for itself as to its contents.  WWE denies such allegations to the extent they are inconsistent with that document.

73.     It is admitted only that Vince and Linda McMahon appeared on a 2007 CNN documentary entitled Death Grip: Inside Pro Wrestling.  The remaining allegations set forth in Paragraph 73 are denied.

74.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 74, and on that basis they are denied.

75.     The allegations set forth in Paragraph 75 are both illiterate and denied.

76.     The allegations that cite to footnote 26 refer to a document that speaks for itself as to its contents.  WWE denies such allegations to the extent they are inconsistent with that document.  It is denied that Dr. Maroon was selected to head the Wellness Program in 2006, and denied that he was selected because of alleged efforts to discredit Dr. Omalu.  He was selected in 2008 because of his extensive experience in sports medicine, neurology, and in the state of the art cognitive testing used in the treatment and management of concussions known as Impact Testing.  The remaining allegations are not pertinent to the sole remaining claims and therefore no response is required.

77.     The allegations set forth in Paragraph 77 are denied.

78.     It is admitted only that WWE's corporate website as of February 13, 2015 included the statement quoted in Paragraph 78.  It is denied that the Wellness Program included each of these aspects at the time it was implemented in February 2006 and, in particular, it is denied that the Wellness Program included ImPACT testing as of February 2006.

79.     The allegations that cite to footnote 31 refer to a document that speaks for itself as to its contents.  WWE denies such allegations to the extent they are inconsistent with that document.  WWE further responds that the Impact Testing method was state of the art when adopted and continues to be used on a broad scale throughout the country to assist in the diagnosis and treatment of concussions.

80.     The allegations set forth in Paragraph 80 are denied and, in particular, it is denied that the Wellness Program provides any medical services

to former wrestlers.  It is admitted that WWE has a voluntary and humanitarian program which pays for drug or alcohol rehabilitation services needed by any former performer.  That program was not intended to, and does not, offer medical advice to former talents about their health or the state of the science of head injuries.

81.     The allegations set forth in Paragraph 81 are denied as stated and constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

82.     The allegations set forth in Paragraph 82 are denied.

83.     The allegations set forth in Paragraph 83 are denied.

84.     The allegations set forth in Paragraph 84 are denied.

85.     The allegations set forth in Paragraph 81 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

86.     It is denied that WWE hired medical personnel whose stated purpose was to monitor and assess the wrestlers inside and outside of the ring.  The remaining allegations set forth in Paragraph 86 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

87.     The allegations set forth in Paragraph 87 constitute legal conclusions, in fact unpled medical malpractice claims against unnamed doctors and medical personnel, to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

88.     The allegations set forth in Paragraph 88 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

89.     The allegations set forth in Paragraph 89 are denied as stated.  It is admitted only that WWE has regularly collected wrestler injury reports since 2005.  The remaining allegations of Paragraph 89 are denied.

90.     The allegations set forth in Paragraph 90 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

91.     The allegations set forth in Paragraph 91 are denied and, in particular, it is denied that either plaintiff was ever injured with a blow to the head by a steel chair in any WWE match.

92.     The allegations in this paragraph are not pertinent to the sole remaining fraud by omission claim and any other count such allegation may have been pertinent to have been dismissed.  No response is therefore required.

93.     It is admitted only that Singleton performed for WWE under the name Adam Mercer.  It is denied that Singleton signed with WWE in 2012 and that he wrestled for WWE from 2012 to 2013.  WWE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 93, and on that basis they are denied.

94.     The allegations in this paragraph are not pertinent to the sole remaining fraud by omission claim and any other count such allegations may have been pertinent to has been dismissed.  No response is therefore required.

95.     The allegations set forth in Paragraph 95 are denied.

96.     The allegations set forth in the first sentence Paragraph 96 are denied.  It is denied that Singleton ever characterized his role to anybody at WWE to be that of a crash test dummy.

97.     The allegations in this paragraph are not pertinent to the sole remaining fraud by omission claim and any other count such allegations may have been pertinent to has been dismissed.  No response is therefore required.

98.     The allegations in this paragraph are not pertinent to the sole remaining fraud by omission claim and any other count such allegations may have been pertinent to has been dismissed.  No response is therefore required.

99.     No response is necessary to paragraph 99 as it involves allegations of negligence which were dismissed by the Court.

100.    It is admitted only that Singleton performed in a match with Erick Rowan on September 27, 2012 in Tampa, Florida and performed a choke slam as part of the performance.  The remaining allegations set forth in Paragraph 100 are denied.

101.    It is admitted only that Erick Rowan is promoted as standing 6 feet 8 inches and weighing 315 pounds.  WWE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 101, and on that basis they are denied.

102.    The allegations set forth in Paragraph 102 are denied.

103.    It is admitted that Singleton claims to have suffered a blow to his head during the September 27, 2012 match; that he was pinned in a planned

finish to the match, and that he walked back to the training room.  The remaining allegations set forth in Paragraph 103 are denied.

104.    It is admitted that Singleton saw a trainer after the September 27, 2012 match and was told, among other things, to rest over the ensuing weekend. The remaining allegations set forth in Paragraph 104 are denied.

105.    It is admitted that Singleton was treated by Dr. Lovell after the September 27, 2012 match.  It is denied that Dr. Lovell downplayed Mr. Singleton's injury by providing his opinions as to whether Singleton was exaggerating his symptoms, an opinion shared by other health care providers. The remaining allegations set forth in Paragraph 105 are denied.

106.    It is admitted only that Singleton was also treated by Dr. Amann and a neurologist, Dr. Greenberg, after the September 27, 2012 match and that Singleton received multiple MRIs including one on November 14, 2012.  The remaining allegations set forth in Paragraph 106 are denied.

107.    It is admitted only that on January 18, 2013 Singleton was cleared by Dr. Greenberg to return to normal activity with no restrictions or limitations and in February 2013 Singleton got in the ring to assess his physical condition without any contact, after which he was sent home to rest.  The remaining allegations in Paragraph 107 are denied.

108.    WWE lacks knowledge or information sufficient to form a belief as to the truthfulness of the allegations as to what Singleton has stated as set forth in Paragraph 108, which are therefore denied.  It is denied that Singleton was abused and denied that he ever came back to work.

109.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 109, and on that basis they are denied.

110.    It is admitted only that in February 2013 WWE arranged for Singleton to be treated by additional doctors unaffiliated with WWE.  The remaining allegations set forth in Paragraph 110 are denied.

111.    It is admitted only that an EEG was performed in July 2013.  The remaining allegations set forth in Paragraph 111 are denied.

112.    It is admitted only that referral to an inpatient facility was one of the treatment options under consideration for Singleton in November 2013.  The remaining allegations of Paragraph 112 are denied.

113.    It is denied that Singleton was ever diagnosed with a possible intracranial hemorrhage, and averred that three different MRIs indicated he did not have such a hemorrhage.  The allegations set forth in Paragraph 113 that Singleton was diagnosed with an unspecified intracranial hemorrhage are based on false information evidently supplied by Singleton to Dr. Rodgers-Neame.  The remaining allegations are denied.

114.    The allegations set forth in Paragraph 114 are denied.

115.    It is admitted that Singleton was also treated by psychiatrist, Dr. Darren Rothschild.  The remaining allegations set forth in Paragraph 115 are denied.

116.    It is admitted only that Singleton took a Migraine Disability Assessment Test and, based on his own self-assessment of his symptoms,

Singleton scored a grade of IV severe disability.  WWE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 116, and on that basis they are denied.

117.    The allegations set forth in Paragraph 117 are denied.

118.    It is admitted only that LoGrasso performed, not fought, under various names including Big Vito and that LoGrasso sporadically performed for WWE in certain years of the 1990's as a "jobber."  WWE lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 118, and on that basis they are denied.

119.    The allegations set forth in Paragraph 119 are denied.

120.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 120, and on that basis they are denied.

121.    The allegations set forth in Paragraph 121 are denied.

122.    The allegations set forth in Paragraph 122 are denied.

123.    It is admitted only that LoGrasso signed a booking contract with WWE in 2005.  The remaining allegations set forth in Paragraph 123 are denied.

124.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 124, and on that basis they are denied.

125.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 125, and on that basis they are denied.

126.    The allegations set forth in Paragraph 126 are denied.

127.    WWE is without knowledge or information sufficient to form a belief that as to the truthfulness of LoGrasso's allegation that he was never informed by WWE that head trauma could result in a concussion or sub-concussion and therefore denies those allegations.  By way of further response, LoGrasso knew as early as 1999 that head trauma could not only cause concussions, but also disabling concussions.  LoGrasso never reported any suspected concussion to anybody while at WWE.

128.    The allegations set forth in Paragraph 128 are denied.

129.    It is admitted only that Dr. Rios was a doctor for WWE in-ring events from in or around 2005 through in or around November 2007 and that Dr. Rios administered Vitamin B-12 shots to LoGrasso on certain occasions at LoGrasso's request.  The remaining allegations set forth in Paragraph 129 are denied.

130.    The allegations set forth in Paragraph 130 are denied and, in particular, it is denied based on LoGrasso's own admissions that he never sought or received treatment for any alleged head trauma.

131.    It is admitted only that trainers generally were present at WWE events.  The remaining allegations set forth in Paragraph 131 are denied and, in particular, it is denied based on LoGrasso's own admissions that he never sought or received treatment for any alleged head trauma.

132.    The allegations set forth in Paragraph 132 are denied and, in particular, it is denied based on LoGrasso's own admissions that he never sought

or received treatment for any alleged head trauma.  It is further denied that LoGrasso ever "fought" for WWE or that he performed for over 20 years for WWE.

133.    It is admitted only that in 2006 LoGrasso performed in certain matches with Sir William Regal.  The remaining allegations set forth in Paragraph 133 are denied.

134.    The allegations set forth in Paragraph 134 are denied, and have been shown to be perjurious.

135.     The allegations set forth in Paragraph 135 are denied and, in particular, it is denied based on LoGrasso's own admissions that he never sought or received treatment for any alleged head trauma, and that he considered Dr. Rios to be a good doctor.

136.    It is admitted only that LoGrasso's tenure with WWE ended in 2007. The remaining allegations set forth in Paragraph 136 are denied and, in particular, it is denied based on LoGrasso's own admissions that he never sought or received treatment for any alleged head trauma.

137.    The allegations set forth in Paragraph 137 are denied.

138.    The allegations set forth in Paragraph 138 are denied.

139.    It is admitted that LoGrasso never sought any information from WWE or Dr. Rios regarding concussions and never reported any concussion to WWE or Dr. Rios and therefore never received any information in response.  WWE further responds that LoGrasso knew concussions could be caused by head trauma which was disabling in nature despite there being no loss of consciousness, and that he knew so before signing a contract with WWE in 2005.

140.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegation set forth in Paragraph 140 that by 2008 LoGrasso allegedly was showing symptoms of neurological injury in the form of residual, pounding headaches, and on that basis it is denied.  The remaining allegations set forth in Paragraph 140 are denied.

141.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegation set forth in Paragraph 141 that LoGrasso's headaches supposedly continued to manifest through 2009 and 2010, and on that basis it is denied.  The remaining allegations set forth in Paragraph 141 are denied.

142.    It is denied that LoGrasso was first diagnosed in 2014 as deaf.  WWE lacks knowledge or information sufficient to form a belief about the truth of the allegation set forth in Paragraph 142 that in 2014 LoGrasso's headaches supposedly became so unbearable that he saw Dr. Demarco, a primary care physician, who sent him to Dr. Smith, an ENT specialist, and on that basis it is denied.  The remaining allegations set forth in Paragraph 142 are denied.

143.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 143, and on that basis they are denied.

144.    WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 144, and on that basis they are denied.

145.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 145, and on that basis they are denied.

146.     It is admitted that LoGrasso is deaf in whole or in part but denied that any alleged symptom or injury is caused by head injury while performing for WWE.  The remaining allegations set forth in Paragraph 146 are denied.

147.     WWE lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 147, and on that basis they are denied.

148.     The allegations set forth in Paragraph 148 are denied.

149.     The allegations set forth in Paragraph 149 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

150.     The allegations set forth in Paragraph 150 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

151.     The allegations set forth in Paragraph 151 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

152.     The allegations set forth in Paragraph 152 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

153-164.    Singleton's First Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

### SECOND CAUSE OF ACTION

165-176.    LoGrasso's Second Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

### THIRD CAUSE OF ACTION

177.    WWE incorporates herein by reference its responses to each of the foregoing paragraphs of this Answer, as though fully set forth at length.

178.    The allegations set forth in Paragraph 178 regarding alleged duties constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.  It is denied that WWE ever specifically stated that WWE wrestlers with diagnosed brain traumas did not receive such injuries as a result of wrestling for WWE.  It is denied that WWE ever attempted to mislead Singleton about head injuries.

179.    The allegations set forth in Paragraph 179 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

180.   The allegations set forth in Paragraph 180 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

181.   The allegations set forth in Paragraph 181 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

182.   The allegations set forth in Paragraph 182 are denied and, in particular, such allegations are denied because Singleton never in fact "returned to the ring" after his alleged injury.

183.   The allegations set forth in Paragraph 183 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

## FOURTH CAUSE OF ACTION

184.   WWE incorporates herein by reference its responses to each of the foregoing paragraphs of this Answer, as though fully set forth at length.

185.   The allegations set forth in Paragraph 185 regarding alleged duties constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.  It is denied that WWE ever specifically stated that WWE wrestlers with diagnosed brain traumas did not receive such injuries as a result of wrestling for WWE.  It is denied that WWE ever attempted to mislead Singleton about head injuries.

186.    The allegations set forth in Paragraph 186 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

187.    The allegations set forth in Paragraph 187 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

188.    The allegations set forth in Paragraph 188 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

189.    The allegations set forth in Paragraph 189 are denied and, in particular, such allegations are denied based on LoGrasso's own admission (*see* Response to IROG No. 2) that he never sought or received treatment for any alleged head trauma.

190.    The allegations set forth in Paragraph 190 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

**FIFTH CAUSE OF ACTION**

191-205.    Plaintiff Singleton's Fifth Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

**SIXTH CAUSE OF ACTION**

206-220.     Plaintiff LoGrasso's Sixth Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

## SEVENTH CAUSE OF ACTION

221-228.     Plaintiff Singleton's Seventh Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

## EIGHTH CAUSE OF ACTION

229-236.     Plaintiff LoGrasso's Eighth Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

## NINTH CAUSE OF ACTION

237-245.     Plaintiff Singleton's Ninth Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

## TENTH CAUSE OF ACTION

246-254.     Plaintiff LoGrasso's Tenth Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

## ELEVENTH CAUSE OF ACTION

255-267.     Plaintiff Singleton's Eleventh Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.

## TWELFTH CAUSE OF ACTION

**268-281.** **Plaintiff LoGrasso's Twelfth Cause of Action was dismissed pursuant to the Court's Memorandum of Decision dated March 21, 2016 and, therefore, no response is required.**

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to state claims on which relief may be granted.

#### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations/repose.

#### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' assumption of the risk, which risks were assumed by conduct and by contract.

#### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because any such claims were released pursuant to Plaintiffs' contracts with WWE.

#### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because any such claims were waived pursuant to Plaintiffs' contracts with WWE.

#### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive damages are barred by Plaintiffs' contracts with WWE.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate their alleged damages.

## PRAYER FOR RELIEF

WHEREFORE, WWE prays for judgment as follows:

a.       Plaintiffs' remaining Third and Fourth Causes of Action for fraud by omission be dismissed with prejudice.

b.       Plaintiffs' Prayer for Relief be denied in its entirety;

c.       Judgment be entered in favor of WWE and against Plaintiffs.

d.       WWE be awarded its costs and such other and further relief as the Court may deem just and proper.


Respectfully Submitted,


DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.


By:   /s/ Jerry S. McDevitt
Jerry S. McDevitt (pro hac vice)
Terry Budd (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222

34

Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: terry.budd@klgates.com
Email: curtis.krasik@klgates.com

Thomas D. Goldberg (ct04386)
Jonathan B. Tropp (ct11295)
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: tgoldberg@daypitney.com
Email: jbtropp@daypitney.com
Email: jmueller@daypitney.com

Its Attorneys.

## CERTIFICATION OF SERVICE

I hereby certify that, on August 4, 2016, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

  /s/ Jeffrey P. Mueller
Jeffrey P. Mueller (ct27870)