## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RUSS McCULLOUGH,** *et al.,* | : | **No. 3:15-cv-01074 (VLB)** |
| | : | **Lead Case** |
| Plaintiffs, | : | |
| | : | |
| *vs.* | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| Defendant. | : | |

---

| | | |
|---|---|---|
| **EVAN SINGLETON and VITO** | : | **No. 3:15-cv-00425 (VLB)** |
| **LOGRASSO,** | : | **Consolidated Case** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| *vs.* | : | |
| | : | |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| | : | |
| Defendant. | : | |

---

### DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS FOR FAILURE TO COMPLY WITH COURT'S ORDER ON MOTION TO COMPEL

**Thomas D. Goldberg (ct04386)**
**Jonathan B. Tropp (ct11295)**
**Jeffrey P. Mueller (ct27870)**
**DAY PITNEY LLP**
**242 Trumbull Street**
**Hartford, CT 06103**
**Phone: (860) 275-0100**
**Fax: (860) 275-0343**
**Email: tgoldberg@daypitney.com**
**Email: jbtropp@daypitney.com**
**Email: jmueller@daypitney.com**

**Jerry S. McDevitt (pro hac vice)**
**Terry Budd (pro hac vice)**
**Curtis B. Krasik (pro hac vice)**
**K&L GATES LLP**
**K&L Gates Center**
**210 Sixth Avenue**
**Pittsburgh, PA 15222**
**Phone: (412) 355-6500**
**Fax: (412) 355-6501**
**Email: jerry.mcdevitt@klgates.com**
**Email: terry.budd@klgates.com**
**Email: curtis.krasik@klgates.com**

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................1

II.   RELEVANT BACKGROUND ..............................................................9

III.  LEGAL STANDARD ........................................................................12

IV.   ARGUMENT ...................................................................................14

A.   Certain of Plaintiffs' Second Supplemental Responses
     Constitute Perjury .................................................................15

B.   Plaintiffs' Second Supplemental Interrogatory Responses Do Not
     Otherwise Comply With The Court's May 19 Compulsion Order ..........22

     1.   LoGrasso Interrogatory No. 6 (A-12 from Court's
          May 19 Compulsion Order) ............................................22

     2.   LoGrasso Interrogatory No. 11 and Singleton Interrogatory
          No. 12 (A-2 from Court's May 19 Compulsion Order) ...................26

     3.   LoGrasso Interrogatory No. 12 and Singleton Interrogatory
          No. 13 (A-4 from Court's May 19 Compulsion Order) ...................30

     4.   LoGrasso Interrogatory No. 14 and Singleton Interrogatory
          No. 15 (A-5 from Court's Compulsion Order) ................................32

     5.   LoGrasso Interrogatory No. 15 and Singleton Interrogatory
          No. 16 (A-6 from Court's Compulsion Order) ................................35

     6.   LoGrasso Interrogatory No. 16 and Singleton Interrogatory
          No. 17 (A-1 from Court's Compulsion Order) ................................36

V.    CONCLUSION ................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Freight System Inc. v. NLRB,*
510 U.S. 317 (1994) ........................................................................................22

*Alexander Interactive, Inc. v. Adorama, Inc.,*
2013 WL 6283511 (S.D.N.Y. Dec. 4, 2013) ........................................................5

*Alexander v. Caraustar Indus.,*
930 F. Supp. 2d 947 (N.D. Ill. 2013) .................................................................5

*In re AMTRAK "Sunset Ltd." Train Crash,*
136 F. Supp. 2d 1251 (S.D. Ala. 2001) ............................................................5-6

*Blumenthal v. Kimber Mfg. Inc.,*
265 Conn. 1, 826 A.2d 1088 (2003) ..................................................................4

*Brady v. United States,*
877 F. Supp. 444 (C.D. Ill. 1994) .....................................................................6

*Brown v. Clayton,*
2013 WL 1409884 (D. Conn. April 8, 2013) .......................................................5

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) ..........................................................................................22

*Cooke v. Mercedes-Benz USA, LLC,*
2014 WL 2013444 (D. Conn. May 16, 2014) ...............................................12, 13

*Cortez v. City of N.Y. (In re World Trade Ctr. Disaster Site Litig.),*
722 F.3d 483 (2d Cir. 2013) ............................................................................20

*Dotson v. Bravo,*
202 F.R.D. 559 (N.D. Ill. 2001) ......................................................................3, 6

*Excess Ins. Co., Ltd. v. Rochdale Ins. Co.,*
2007 WL 2900217 (S.D.N.Y. Oct. 4, 2007) ........................................................5

*Guinan v. Block,*
2013 WL 4873480 (Conn. Sup. Ct. Aug. 21, 2013) ............................................4

*Haas v. Del. & Hudson Ry. Co.,*
282 Fed. Appx. 84 (2d Cir. 2008) ....................................................................25

*Hazel-Atlas Glass Co. v. Hartford Empire Co.,*
322 U.S. 238 (1944) ..........................................................................................9

*John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,*
845 F.2d 1172 (2d Cir. 1988) .....................................................................12, 25

*Joseph M. Laurinaitis, et al. v. World Wrestling Entertainment, Inc.,*
  3:16-01209-WWE (D. Conn.) ..................................................................................7

*Kellogg v. J.C. Penney Corp., Inc.,*
  2013 WL 308985 (D. Conn. Jan. 25, 2013) ..................................................12-13

*Knapp v. Convergys Corp.,*
  209 F.R.D. 439 (E.D. Mo. 2002) ..............................................................................5

*Margo v. Weiss,*
  213 F.3d 55 (2d Cir. 2000) ................................................................................3, 14

*Martin v. DaimlerChrysler Corp.,*
  251 F.3d 691 (8th Cir. 2001) ....................................................................................5

*Radecki v. GlaxoSmithKline,*
  646 F. Supp. 2d 310 (D. Conn. 2009) ..................................................................3, 5

*REP MCR Realty, LLC v. Lynch,*
  363 F. Supp. 2d 984 (N.D. Ill. 2005) ........................................................................5

*Saliga v. Chemtura Corp.,*
  2013 WL 6182227 (D. Conn. Nov. 25, 2013) ...........................................................5

*Shangold v. Walt Disney Co.,*
  2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) ................................................................9

*Southern New England Telephone Co. v. Global NAPs Inc.,*
  624 F.3d 123 (2d Cir. 2010) ...................................................................................12

*Tourmaline Partners, LLC v. Monaco,*
  2014 WL 4810253 (D. Conn. Sept. 23, 2014) ......................................... *passim*

*United States v. Hoey,*
  2016 WL 270871 (S.D.N.Y. Jan. 21, 2016) ..............................................................4

*West v. Goodyear Tire & Rubber Co.,*
  167 F.3d 776, 779 (2d Cir. 1999) .............................................................................9

*Zalaski v. City of Hartford,*
  2015 WL 7257824 (D. Conn. Nov. 17, 2015) (Bryant, J.) ........................................4

<u>Statutes</u>

18 U.S.C. § 1621 .....................................................................................................20

18 U.S.C. § 1622 ................................................................................................3, 20

<u>Other Authorities</u>

Fed. R. Civ. P. 33 ............................................................................................ *passim*

**Fed. R. Civ. P. 37** ............................................................................................**12, 13**

**Fed. R. Evid. 501** ................................................................................................**4**

## I.    <u>INTRODUCTION</u>

For the reasons which follow, WWE files this motion in concert with the Motion for Summary Judgment it filed on August 1, 2016.  The matters raised herein deal with possible attempts to improperly alter the admissions of Plaintiffs relied upon to obtain summary judgment, and are independently sanctionable in any event.

In the course of this case, the Court to date has had to admonish Plaintiffs' counsel for (1) failure to adhere to the Federal Rules;[1] (2) asserting claims with no apparent factual basis;[2] (3) making allegations that are patently false even after being admonished;[3] (4) repeatedly mischaracterizing evidence to the Court;[4] and (5) attempting to speak to an audience other than the Court through their filings.[5]

Regrettably, despite these admonitions, the misconduct has now escalated

---

[1] "[A] complaint should be a compilation of facts - facts.  I'd really, really like you to read the Federal rule, give it some close consideration, perhaps read some cases on the pleadings standards, and then file this complaint again in a week." *See Singleton* Doc. No. 73 at 60.

[2] "But Mr. Kyros, neither the defense, nor the Court has time to waste.  So you need to know if you have facts, not general notions, not impressions, not feelings, but facts to support a claim and assert only those claims for which you have factual support."  *Id.* at 62-63.

[3] "Other allegations are patently false.  They are simply copied and pasted in whole cloth from one Complaint to another."  Doc. No. 116 at 8.

[4] "With regard to Stephanie McMahon Levesque's testimony, plaintiffs appear to have repeatedly misrepresented both the substance and meaning of Levesque's testimony."  *Id.* at 58.

[5] "The Complaints are also excessively lengthy, including large numbers of paragraphs that offer content unrelated to the Plaintiffs' causes of action and appear aimed at an audience other than this Court." *Id.* at 4; *see also* Doc. No. 171 (observing Plaintiffs' allegations in support of Motion for Leave to File Motion to Compel for Nowinski deposition "appear aimed at an audience other than this Court.").

to outright perjury by both Plaintiffs; probable subornation of perjury by whoever drafted the perjurious answers to certain interrogatories which this Court ordered Plaintiffs to answer on May 19, 2016 (Doc. No. 144); stubborn defiance of that Compulsion Order; making even more "patently false" allegations; and more recently the filing of yet another Complaint in this Court defying all pleading rules and admonitions of this Court in a monstrous way.  Thereafter, at the direction of Plaintiffs' lead counsel, steps were taken to prevent that case from being reassigned to the Honorable Vanessa Bryant in the hopes of avoiding her rulings.

Plaintiffs were to comply with the Court's May 19 Compulsion Order by June 15, 2016.  Fourteen minutes before midnight on that due date, WWE was electronically served with Singleton's and LoGrasso's "Second Supplemental Objections and Responses" signed by Plaintiffs' lead counsel Konstantine Kyros, but not verified by Plaintiffs themselves as required by the rules.  *See* Ex. 1.  Mr. Kyros personally attended the depositions of Singleton and LoGrasso, and heard each disavow knowledge of a fraud claim, and deny knowledge or reliance on certain statements alleged throughout this litigation to have been fraudulent by Kyros and his co-counsel.  As set forth herein, the Second Supplemental Responses subsequently signed by Kyros directly contradicted Plaintiffs' sworn deposition admissions about such matters.

Upon receipt of such unverified responses, WWE's outside counsel immediately advised Plaintiffs' counsel that the unverified answers did not comply with Fed. R. Civ. P. 33(b), and therefore were not compliant with the Court's Compulsion Order.  Ms. Van Dyck, another one of Plaintiffs' counsel, then

served a sworn declaration from each Plaintiff dated June 17, 2016 that "pursuant to 28 U.S.C. § 1746" and "under penalty of perjury that the Second Supplemental Objections and Responses to Defendant World Wrestling Entertainment, Inc.'s First Set of Interrogatories served on June 15, 2016 are true and correct."  Ex. 2. Once Plaintiffs certified the answers contained in the Second Supplemental Responses directly at odds with their own sworn testimony at their depositions, they committed perjury and fraud on this Court.  *See Radecki v. GlaxoSmithKline*, 646 F. Supp. 2d 310, 315 (D. Conn. 2009); *Dotson v. Bravo,* 202 F.R.D. 559, 567 (N.D. Ill. 2001) ("Knowingly incomplete and misleading answers to written interrogatories constitutes perjury, as well as fraud.").  Likewise, by signing responses which Mr. Kyros knew directly contradicted Plaintiffs' testimonial admissions that he heard them make in their depositions, Mr. Kyros is subject to strong sanctions.  *See* 18 U.S.C. § 1622; *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000) (sanctioning counsel for submitting false supplemental interrogatory responses that contradicted prior deposition testimony of their clients).

This series of events raises serious, legitimate questions about (1) which attorneys actually drafted and/or reviewed the Second Supplemental Responses before serving them on WWE; [6] (2) whether Plaintiffs actually reviewed the Responses signed by Mr. Kyros before WWE was served at 11:46 p.m. on June 15, and (3) whether Plaintiffs actually reviewed the Responses before signing the

---

[6] It is a virtual certainty that the responses were drafted by one or more of the many Plaintiffs' counsel here, and should have been read by all of Plaintiffs' counsel.  To properly assess which lawyers should be sanctioned for the submission of perjurious responses, WWE respectfully submits the Court should conduct hearings to make a full record regarding who drafted and reviewed the subject interrogatory responses before they were certified.

sworn declarations on June 17 or were just told to sign the declarations without ever even reading the responses.  This Court has previously held in another matter that, if Plaintiffs did not review the responses, at a minimum, the Responses should be stricken.  *See Zalaski v. City of Hartford*, 2015 WL 7257824, *1 (D. Conn. Nov. 17, 2015) (Bryant, J.).  Accordingly, WWE respectfully requests that the Court order Plaintiffs to produce to WWE and the Court all correspondence reflecting if and when the Second Supplemental Responses were sent to Plaintiffs for review, as well as all documents identifying the drafter(s) of those Responses.  Because false responses are both a crime and a fraud, there is no viable claim of privilege over such materials due to the crime/fraud exception to the privilege.  Under Fed. R. Evid. 501, Connecticut law supplies the rule of decision on privilege claims.  The crime fraud exception applies once the trial court determines there is probable cause to believe that the communications were made with intent to perpetrate a crime or civil fraud and the communications were made in furtherance of that crime or fraud.  *Blumenthal v. Kimber Mfg. Inc.,* 265 Conn. 1, 18-19 (2003); *Guinan v. Block*, 2013 WL 4873480, *4-5 (Conn. Super. Aug. 21, 2013).  The probable cause finding requires there to be a "reasonable basis" to conclude that the purpose of the communication was the perpetration of a fraud or crime.  *Blumenthal,* 265 Conn. at 18-19; *see also United States v. Hoey*, 2016 WL 270871, *1-2 (S.D.N.Y. Jan. 21, 2016) (crime-fraud exception applied when attorney and investigator "presented [client] with a prepared statement" and pressured her to sign and attorney later pled guilty to subornation as a result).

4

The actions set forth herein more than justify dismissal.[7]  *See Radecki,* 646 F. Supp. 2d at 316 (citing a string of cases in which courts have dismissed claims for perjurious interrogatory answers and other discovery violations); *Martin v. DaimlerChrysler Corp.,* 251 F.3d 691, 695 (8th Cir. 2001) (affirming sanction of dismissal for perjury in deposition and interrogatory responses); *Alexander v. Caraustar Indus., Inc.,* 930 F. Supp. 2d 947, 961-62 (N.D. Ill. 2013) (dismissing case after revelation of "pervasive" perjury); *REP MCR Realty, LLC v. Lynch,* 363 F. Supp. 2d 984, 1010-11 (N.D. Ill. 2005) (dismissal appropriate where party "destroyed significant documents and committed perjury"); *Knapp v. Convergys Corp.,* 209 F.R.D. 439, 442 (E.D. Mo. 2002) (concluding that dismissal was the appropriate sanctions for "deliberate and continued abuse of the discovery process" after finding "by clear and convincing evidence that Plaintiff gave perjurious answers in her interrogatories and during her deposition."); *In re AMTRAK "Sunset Ltd." Train Crash,* 136 F. Supp. 2d 1251, 1257 (S.D. Ala. 2001)

---

[7] In regard to the Local Rule 37(a) requirements of a "meet and confer" declaration, WWE repeatedly met and conferred with Plaintiffs' counsel regarding their deficient responses without success prior to the entry of the Compulsion Order.  *See* Doc. No. 122-1 at 6-9.  After a compulsion order issues, no purpose is served by meeting and conferring regarding the continued refusal of Plaintiffs' Counsel, as WWE is powerless to agree to alter a court order or the time by which Plaintiffs were to comply.  "[C]ourts have excused a failure to meet and confer in situations where to do so would be clearly futile, or exigent time constraints mandate immediate action."  *Brown v. Clayton,* 2013 WL 1409884, *2 n.4 (D. Conn. April 8, 2013) (quoting *Excess Ins. Co., Ltd. v. Rochdale Ins. Co.,* 2007 WL 2900217 (S.D.N.Y. Oct. 4, 2007)).  As described herein, Plaintiffs have blatantly disregarded this Court's Compulsion Order and have "dug in" with respect to their refusal to provide complete, truthful, and responsive answers to WWE's interrogatories.  *See Saliga v. Chemtura Corp.,* 2013 WL 6182227, *1 (D. Conn. Nov. 25, 2013) (ordering parties to meet and confer would be futile when they "remain at an impasse"); *Alexander Interactive, Inc. v. Adorama, Inc.,* 2013 WL 6283511, *3 (S.D.N.Y. Dec. 4, 2013) (finding that meet and confer was unlikely to resolve disputes when the parties were "dug in" on the issue).

(concluding that the plaintiff's false answers to interrogatories constituted perjury as well as fraud on the defendants and the court); *Dotson*, 202 F.R.D. at 575 (dismissing case when party provided "misleading answers on a continual basis" and "also committed perjury"); *Brady v. United States*, 877 F. Supp. 444, 452-53 (C.D. Ill. 1994) (dismissing case where party offered incomplete interrogatory answers and repeatedly perjured himself).

In addition to supplying perjurious answers, the Second Supplemental Responses continued the tact of supplying incomplete, evasive and non-responsive answers, at times being virtually identical to responses this Court ruled were insufficient when issuing the Compulsion Order.  Plaintiffs' counsel have proven that they have no intention of providing truthful and accurate responses regarding the fraud allegations, which they cannot do for a simple reason, as demonstrated in WWE's summary judgment papers — the fraud allegations were themselves fraudulent with no good faith basis in the first place.

The misconduct set forth herein is both a continuation and escalation of the misconduct in this case.  Over a year ago, this Court admonished Mr. Kyros at the June 8, 2015 status conference for his improper style of pleading and failure to verify the factual basis for allegations.  He was ordered to file a Second Amended Complaint ("SAC") that conformed to ethical and Rule 11 requirements. *See Singleton* Doc. 73 at 62.  In reviewing the subsequent SAC against WWE's Motion to Dismiss, the Court found that he had still made patently false allegations despite the prior admonitions.  *See, e.g.*, Doc. No. 116 at 4, 8, 58. Although the Court could not have known it at the time, discovery demonstrated

an even wider range of patently false allegations, some of which are demonstrated in the summary judgment briefs filed by WWE.  *See e.g.*, Statement of Facts ("SOF")[8] ¶¶ 36, 43, 47, 65-66, 68-70, 83, 90-92, 126-27, 201, 215-18, 253-55. WWE was put to the time and expense of demonstrating the falsity of key allegations in discovery, including in the deposition of Plaintiffs, during which LoGrasso was caught dead to right perjuring himself.  *Id.* at ¶ 47. Then, after the falsity and fabricated allegations were exposed in Plaintiffs' depositions, Kyros used this Court's Compulsion Order as a means to try to alter the admissions which would be used to obtain summary judgment by signing answers to interrogatories which were directly at odds with the Plaintiffs' sworn testimony he had personally heard.

More recently, in a transparent attempt to circumvent this Court and the various substantive and discovery rulings made by this Court, Kyros doubled down on his improper pleading style and filed a rambling 214 page, 667 paragraph Complaint against WWE which is a textbook example of improper pleadings directly at odds with this Court's prior admonitions.  *See Joseph M. Laurinaitis, et al. v. World Wrestling Entertainment, Inc.,* 3:16-01209-WWE (D. Conn.).  That Complaint opens with the statement that "This case involves retired professional wrestlers and performers who sustained long-term neurological injuries during their tenure with WWE," and in the second paragraph identified these injuries as CTE and the effects of Traumatic Brain Injuries ("TBI"). Continuing the tactic of making false allegations despite this Court's prior

---

[8]  To avoid a voluminous filing, WWE's Local Rule 56(a)(1) Statement of Facts (Doc. No. 191) is cited herein.

admonition, that Complaint is replete with allegations which were knowingly fabricated, and easily proven to be fabrications of the kind, amount and nature which other courts have treated as undermining the integrity of the judicial process and lying to the Court.  Indeed, at least four of the firms who have been involved in the prior cases did <u>not</u> sign on for that endeavor, including his local counsel in this case, Mr. Bloss.

To prevent that case from being assigned to Your Honor, Kyros failed to notify the Clerk that it was related to these consolidated cases.  When WWE filed a Notice of Related Case, Kyros caused an opposition to be filed, falsely arguing that case is not related to this case.  To justify attempting to circumvent the Honorable Vanessa Bryant, Kyros argued the absurd proposition that "the neurological injuries sustained by the Plaintiffs are a result of the misclassification and fraud by WWE under numerous federal laws" which the new Complaint contends required wrestlers to be treated as employees, not independent contractors.  The mere assertion of such claims runs afoul of limitations and the direct precedent established by another decision of this Court in the case of *Levy, et al. v. World Wrestling Entertainment, Inc.*, 2009 U.S. Dist. LEXIS 13538 (D. Conn. 2009).  As a result, further motion practice will be necessary regarding his attempts to create a scenario whereby different judges of this Court render inconsistent rulings, and to deal with the escalating pattern of deliberate fabrications by Mr. Kyros.  Under the circumstances, WWE respectfully submits that only strong sanctions will deter and remedy the escalating misconduct of Mr. Kryros.

8

"**This Court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants.**"  *Shangold v. Walt Disney Co.*, **2006 WL 71672, \*4 (S.D.N.Y. Jan. 12, 2006).  "Indeed, 'tampering with the administration of justice . . . involves far more than injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.'"  *Id.* (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)).  Thus, when a Court is determining what sanctions are appropriate when faced with lawyer misconduct, the Court can consider "whether there is a pattern of misbehavior," "whether further misconduct is likely to continue in the future" and whether the sanction will deter parties from engaging in the same or similar behavior.  *Id.*; *see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).**

The misconduct <u>has</u> been and <u>is</u> a continuing pattern of misbehavior, warranting strong sanctions, up to and including dismissal and personal sanctions against the offending attorneys deemed proper by the Court.

## II.      RELEVANT BACKGROUND

On January 27, 2016, WWE served Plaintiffs with its First Set of Interrogatories.  *See* Ex. 3.  Plaintiffs' responses were insufficient and entirely evasive on central interrogatories aimed at fleshing out the particulars of the fraud claim.  After conferences failed to achieve compliance, WWE then filed a Motion to Compel.  *See* Doc. No. 122.

To make all good faith efforts to comply with the scheduling order, WWE

**9**

took the depositions of Singleton and LoGrasso while its motion was pending.

Mr. Kyros is the <u>only</u> counsel of Plaintiffs to attend both depositions.  Insofar as

is relevant to this motion, during those depositions:

- Neither Singleton nor LoGrasso could articulate any basis for the fraud claim in this case.  Singleton did not even know he was making a fraud claim, and LoGrasso affirmatively disavowed accusing anyone of fraud.  *See* SOF ¶¶ 126-27, 251, 253-60.  Thus, neither could provide the particulars of the fraud claim, and both denied knowledge of, or reliance upon, things subsequently identified in their perjurious responses to the interrogatories.

- Singleton and LoGrasso each admitted that they have never read any testimony given before a Congressional Committee (*see* SOF ¶¶ 124, 258).  Their admissions demonstrated further reasons why a persistent theme of Plaintiffs' counsel was a patent falsity.  That theme was that Stephanie McMahon's Congressional testimony, which this Court already found was repeatedly mischaracterized by Plaintiffs' counsel, was an act of fraud that somehow deceived and was detrimentally relied upon by these Plaintiffs.  After admitting under oath that they had not even read such testimony, their perjurious interrogatory answers claim that testimony defrauded them.

- Singleton testified that he "never heard [Chris Nowinski's] name" until his deposition (SOF ¶ 260).[9]  His subsequent sworn interrogatory answers identify unspecified statements of Nowinski as somehow defrauding him.

- LoGrasso testified that he did not know Nowinski ever suffered a concussion, that Nowinski performed concussion research or that Nowinski wrote a book (*see* SOF App. Tab 4 at 233-235).  His subsequent interrogatory answers identify Nowinski's book as somehow defrauding him.

---

[9] **As prior motions with the Court revealed, Mr. Nowinski is a Harvard educated former WWE wrestler who has dedicated his post-wrestling life to the study and research of the effects of concussions.  He has been instrumental in heightening public consciousness of the subject through his book, *Head Games,* Congressional appearances and public speaking.  WWE has also asked Mr. Nowinski in the past to address its talent and share with them his expertise and knowledge of the importance of concussion management and the emerging science regarding CTE.**

- **LoGrasso perjured himself by claiming that his head struck metal steps in an October 2006 match and that his alleged symptoms started then, (SOF ¶ 70) only to then have to admit that no such thing happened when shown a slow-motion tape of the event (*id.*). This match was the only match specifically identified in the SAC as one in which LoGrasso claimed to have been concussed.  His subsequent interrogatory answers give a different response as to the onset of symptoms.**

- **Singleton testified that he could not remember whether he attended or watched any presentations given to WWE's performers by Dr. Joseph Maroon on concussions (SOF ¶ 184) and that he could not identify anything that Dr. Maroon or anyone else at WWE ever told him that was false (*id.* at ¶¶ 254-57).  Yet his subsequent sworn interrogatory answers try to identify Dr. Maroon's presentation as somehow defrauding him.**

Shortly after these testimonial admissions fatal to their claims were given in their depositions, the Court granted WWE's Motion to Compel in part and ordered Plaintiffs to provide complete and accurate answers to WWE's interrogatories that were directed to (1) factual information concerning the onset of LoGrasso's symptoms (*see* May 19 Compulsion Order as to A-12 of WWE's Motion to Compel); (2) the factual details about specific fraudulent statements or actions that Plaintiffs alleged in the SAC, including who made the alleged statements or undertook the alleged actions and when and how Plaintiffs became aware of the statements or actions (*id.* as to A-2, A-4, A-5 and A-6); and (3) the factual details of any alleged omissions or misrepresentations Plaintiffs assert WWE made to them, including who made them, when they were made, and why the statement or omission is supposedly fraudulent.  *Id.* as to A-1.  The Court further ordered that "[w]here Plaintiff is unable to identify a statement or speaker in response to an interrogatory, Plaintiff must state that fact."  *Id.*

Despite the sworn admissions noted above, Kyros signed interrogatory

answers which falsely claimed reliance on unspecified statements by Nowinski (who Singleton never heard of and LoGrasso disavowed knowledge of); reiterated the nonsensical allegation about Congressional testimony neither ever read, and otherwise included false answers at odds with their testimony, as demonstrated below.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 37(b) "provides a non-exclusive list of sanctions that may be imposed on a party for failing to obey an order to provide or permit discovery." *Tourmaline Partners, LLC v. Monaco*, 2014 WL 4810253, *5 (D. Conn. Sept. 23, 2014).  Pursuant to Rule 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and is therefore sanctionable under Rule 37.

Rule 37 sanctions are meant to "'ensure that a party will not benefit from its own failure to comply,' to obtain specific compliance and 'to serve a general deterrent effect on the case at hand and on other litigation.'" *Cooke v. Mercedes-Benz USA, LLC*, 2014 WL 2013444, *3 (D. Conn. May 16, 2014) (citing *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)). Accordingly, possible sanctions range from an award of fees and costs up to "striking out pleadings[,] . . . staying further proceedings[,] . . . or dismissing the action." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (internal quotes omitted).

"Dismissal under Rule 37 may be justified by a showing of willfulness, bad faith, or fault on the part of the sanctioned party, including gross negligence in

following discovery orders." *Cooke*, 2014 WL 2013444 at *3 (quoting *Kellogg v. J.C. Penney Corp., Inc.*, 2013 WL 308985, *2 (D. Conn. Jan. 25, 2013)).  However, "a finding of willfulness or contumacious conduct is not necessary to support sanctions which are less severe than dismissal or entry of default judgment." *Tourmaline*, 2014 WL 4810253 at *6.

Courts are guided by the following factors in exercising their discretion to impose Rule 37 sanctions: (1) willfulness of the noncompliance; (2) efficacy of lesser sanctions; (3) length of non-compliance; and (4) whether the court previously warned the noncompliant party that further violations could result in sanctions.  *Cooke*, 2014 WL 2013444 at *3.

All of these factors indicate that strong actions are necessary here, and operate to augment the previously cited authorities dismissing cases to disincentivize perjury.  First, the conduct is willful.  "Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Tourmaline*, 2014 WL 4810253 at *6.  Second, lesser sanctions have not worked, such as the Court admonishing counsel on June 8, 2015 and subsequently finding that the falsification continued in the SAC.  As to the length of noncompliance, it has been throughout the entire case, and the Court has clearly given fair notice to counsel to correct the conduct.

The conduct set forth herein goes directly to the heart of the litigation process.  Disobedience of any Court order is serious business.  Perjury is serious business.  To disobey a Court order by supplying false and perjurious answers

13

almost certainly drafted by, and unquestionably signed by, lead counsel is about as serious as it gets.[10]  Indeed, as previously demonstrated, there are legions of cases dismissing lawsuits due to perjury in depositions and interrogatories.

## IV.   ARGUMENT

Given their inability to articulate any factual basis for a charge of fraud when deposed, and their denial they were even aware of making a fraud claim, the answers to all the subject interrogatories should have parroted their testimony and admitted there were no facts to support the charge.  Without exception, however, Plaintiffs avoided doing so by either perjurious or evasive answers in every response in direct violation of the Court's Order.[11]

---

[10] WWE would respectfully point out that this Court has already noted that Plaintiffs' counsel has made "patently false" allegations and that a sanction motion is pending in a related case.  Doc. No. 116 at 8.  This Court has also found that Plaintiffs' counsel "repeatedly misrepresented both the substance and meaning of" Stephanie McMahon's Congressional testimony.  *Id.* at 58.  That sanctionable conduct is even more egregious than originally known.  Both LoGrasso and Singleton testified they never read her testimony and, therefore, could never have been defrauded by it even if she did testify as Plaintiffs' counsel falsely alleged.  Thus, that allegation was a gratuitous fabrication from the onset.  Now, as demonstrated herein, even after both Singleton and LoGrasso admitted that they never read her testimony, and despite the Court's prior admonition about repeatedly mischaracterizing her testimony, Mr. Kyros signed supplemental interrogatory answers again citing her Congressional testimony as some alleged falsehood relied upon by Plaintiffs.  Under the circumstances, where previous admonitions are ignored, and the falsification exposed yet continually repeated, only strong sanctions will deter such misconduct.  If not enough, once these prior misrepresentations were exposed, Mr. Kyros has now embarked on a scheme to create a different set of completely fabricated allegations in the new lawsuit filed on behalf of fifty-some performers.

[11] None of the answers can properly be used to defeat summary judgment.  *See Margo*, 213 F.3d at 60-61 ("plaintiffs cannot defeat a motion for summary judgment by responding with affidavits recanting that earlier testimony.  Nor can they do so by submitting errata sheets long after their depositions were taken, or by filing 'supplemental answers' to interrogatories.") (citations omitted).  Thus, at

### A.   Certain of Plaintiffs' Second Supplemental Responses Constitute Perjury

Pursuant to the Court's May 19 Compulsion Order, both Singleton and LoGrasso were ordered to provide complete and accurate responses to the following interrogatories:

- "Identify each and every 'deceptive public statement [ ] and published article [ ]' of or by WWE which You contend 'downplayed known long-term health risks of concussions to Plaintiff[s]', as alleged in ¶¶ 222 & 230 of the Second Amended Complaint" (Singleton Interrogatory No. 12 and LoGrasso Interrogatory No. 11) (emphasis added); and

- "Identify in detail who at WWE specifically stated 'that WWE wrestlers with diagnosed brain trauma did not receive these injuries as a result of wrestling for WWE,' as alleged in ¶¶ 178 & 185 of the Second Amended Complaint, including in Your answer the date, place and persons making such a statement and how and when such statements first came to Your attention." (Singleton Interrogatory No. 15 and LoGrasso Interrogatory No. 14) (emphasis added).

Previously Singleton and LoGrasso testified in their depositions that they could not identify any basis for a fraud claim or any act or omission by WWE that deceived them. *See* SOF ¶¶ 126-27, 253-60 .   Demonstrating that this is lawyer-driven litigation, Singleton did not even know he was making a fraud claim, and then could not provide any factual basis for such a claim.  LoGrasso disavowed making any charge that anybody defrauded him.  Thus, Plaintiffs' responses should have followed the Court's May 19 Compulsion Order by simply stating "Plaintiff is unable to identify a statement or speaker in response" or "None" to these interrogatories.  Instead, as the comparison below between Plaintiffs' deposition testimony and their Second Supplemental Responses to these

---

a minimum, any such attempt by Plaintiffs' counsel should be stricken from the record on summary judgment.

interrogatories establishes, Singleton and LoGrasso were asked to and did sign

verifications which constitute perjury when they declared under 28 U.S.C. § 1746

and penalty of perjury that their answers were "true and correct."

**Singleton Response**

| Singleton's May 11, 2016 Deposition Testimony | Second Supplemental Response to Interrogatory No. 12 Served on June 15, 2016 | Second Supplemental Response to Interrogatory No. 15 Served on June 15, 2016 |
|---|---|---|
| <u>19:4-19</u><br>**Q: Have you ever read any congressional testimony by anybody?**<br>**A: I'm sorry, I don't -- congressional testimony.**<br>**Q: Of any kind.**<br>**A: What is that?**<br>**Q: Did you ever read any testimony that anybody gave before a committee of Congress?**<br>**A: I don't know**<br>**Q: Well, you'd know, did you do it or didn't you?**<br>**Mr. Pogust: Objection**<br>**A: No.**<br>**Q: Did you ever read any testimony of Stephanie McMahon?**<br>**A: No.** | **"Both Stephanie McMahon's Congressional testimony stating her unawareness of concussions in WWE wrestlers and Vince McMahon's Congressional testimony downplayed known long-term health risks of concussions to [Singleton]."** | |
| Singleton's May 11, 2016 Deposition Testimony | Second Supplemental Response to Interrogatory No. 12 Served on June 15, 2016 | Second Supplemental Response to Interrogatory No. 15 Served on June 15, 2016 |

| | | |
|---|---|---|
| **18:1-10**<br><br>**Q: Did you attend any presentations given by Dr. Maroon when you were in Florida?**<br><br>**A: Not that I remember, no.**<br><br>**Q: Not that you remember.  Did you happen to watch a tape that's been produced in this litigation of a presentation he gave?**<br><br>**Mr. Pogust: Objection**<br><br>**A: Not that I remember, no.**<br><br>**Q: You didn't watch the tape?**<br><br>**A: Not that I remember, no.**<br><br>**18:22-25**<br><br>**Q: So you don't deny or admit that you were at that presentation, you claim you don't remember either way?**<br><br>**A: I don't remember.**<br><br>**169:10-12**<br><br>**Q: Can you identify a single thing that [Dr. Maroon] told you that was false?**<br><br>**A: I don't know.** | **"Dr. Maroon's presentations, which Plaintiff continues to deny attending or otherwise viewing, downplayed the risks of concussions to WWE's wrestlers, and Dr. Maroon's public statements relating to concussions, CTE, and long-term health risks of concussions downplayed the risks to [Singleton]."** | **"[I]n the previously recorded presentations served on Plaintiff by WWE as part of discovery in this matter . . . Dr. Joseph Maroon . . . significantly downplayed the long-term risks of concussive and sub-concussive blows, particularly the risks faced by WWE wrestlers in both the main and developmental rosters."** |

17

| Singleton's May 11, 2016 Deposition Testimony | Second Supplemental Response to Interrogatory No. 12 Served on June 15, 2016 | Second Supplemental Response to Interrogatory No. 15 Served on June 15, 2016 |
|---|---|---|
| <u>117:4-9</u><br><br>Q: Do you know Chris Nowinski?<br><br>A: No.<br><br>Q. Do you know who he is?<br><br>A. No.<br><br>Q. You never heard his name until now?<br><br>A. Right, yeah. | "Christopher Nowinski's public statements regarding how effective WWE's ImPACT Testing is at monitoring and treating wrestlers downplayed the risks that [Singleton] faced and continues to face."<br><br>"Christopher Nowinski's published book, <u>Head Games</u>; and Mr. Nowinski's public statements and presentations to WWE wrestlers . . . further downplayed the known long-term health risks of concussions to [Singleton]." | "[I]n the previously recorded presentations served on Plaintiff by WWE as part of discovery in this matter . . . Chris Nowinski . . . significantly downplayed the long-term risks of concussive and sub-concussive blows, particularly the risks faced by WWE wrestlers in both the main and developmental rosters." |

<u>LoGrasso Response</u>

| LoGrasso's May 18, 2016 Deposition Testimony | Second Supplemental Response to Interrogatory No. 11 Served on June 15, 2016 | Second Supplemental Response to Interrogatory No. 14 Served on June 15, 2016 |
|---|---|---|
| <u>250:9-13</u><br><br>Q: Did you ever read any congressional testimony in the Benoit matter?<br><br>A: Read congressional testimony?<br><br>Q: Yeah.<br><br>A: No. | "[T]he McMahons' Congressional testimony" downplayed known long-terms risks of concussions to LoGrasso. | "[T]he McMahons' Congressional testimony" |

| LoGrasso's May 18, 2016 Deposition Testimony | Second Supplemental Response to Interrogatory No. 11 Served on June 15, 2016 | Second Supplemental Response to Interrogatory No. 14 Served on June 15, 2016 |
|---|---|---|
| <u>234:5-235:14</u><br><br>Q: Did you ever hear [Nowinski] got concussions?<br><br>A: Not that I was aware of.<br><br>Q. You never heard Chris Nowinski got concussions?<br><br>A. I know he runs this [concussion] foundation.<br><br>**********<br><br>Q. When did you learn that?<br><br>A. I'm not sure.<br><br>Q. But your testimony is that you never heard in the locker rooms or anywhere that Chris Nowinski had to retire from the WWE wrestling because of concussions that he received?<br><br>A. I didn't know he had to retire because of a concussion.<br><br>**********<br><br>Q. Did you know that [Nowinski] went into the area of concussion research [in 2005, 2006]?<br><br>A. No.<br><br>Q. Did you know he wrote a book?<br><br>A. No.<br><br>Q. So your testimony is you had no knowledge whatsoever of this wrestler who went into concussion research that led to all these scientific discoveries of what we're here to talk about?<br><br>A. I'm sorry, I don't read books. | "Christopher Nowinski's published book, <u>Head Games</u>; and Mr. Nowinski's public statements favorably discussing WWE's policies and protocols in treating its wrestlers" and "statements by Christopher Nowinski during his employment with WWE on November 9, 2006 to PW Insider . . . and from September 2006 with Inside Pulse" downplayed known long-terms health risks of concussions to LoGrasso. | "Christopher Nowinski's published book, <u>Head Games</u>; [and] Mr. Nowinski's public statements favorably discussing WWE's policies and protocols in treating its wrestlers". |

Singleton incorporated his perjurious response to Interrogatory No. 12 into his response to Interrogatory No. 13 and LoGrasso incorporated his perjurious responses into his responses to Interrogatory Nos. 11, 14 and 16.

Whoever, in a declaration pursuant to 28 U.S.C. § 1746, "willfully subscribes as true any material matter which he does not believe to be true" is guilty of perjury.  18 U.S.C. § 1621.  Likewise, "[w]hoever procures another to commit any perjury is guilty of subornation of perjury."  18 U.S.C. § 1622. The Second Circuit requires interrogatory responses to be sworn under oath or certified consistent with 28 U.S.C. § 1746, which "impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements."  *Cortez v. City of N.Y. (In re World Trade Ctr. Disaster Site Litig.)*, 722 F.3d 483, 488 (2d Cir. 2013).  The materiality of these false statements is obvious; they go directly to the heart of the sole remaining claim.

There can be no doubt that the false responses were willful and, therefore, constitute perjury.  Both Plaintiffs verified under penalty of perjury that the Congressional testimony given by the McMahons "downplayed known long-term health risks of concussions to [them]" as alleged in paragraphs 222 & 230 of the SAC.  Yet, during their earlier depositions, both squarely testified under oath that they had never even read such Congressional testimony.

This Court found long ago that Plaintiffs' counsel had repeatedly mischaracterized Stephanie McMahon's testimony.  That was not done because Plaintiffs had read the testimony and conveyed some misunderstanding to counsel, who then repeated it in the Complaint.  Instead, the whole allegation was

a fabrication by counsel who had to know these Plaintiffs never read it, heard it, or relied on it in any way, as they freely admitted under oath, at least before Kyros had them verify a contradictory answer under oath.

Likewise, on the one hand, Singleton testified under oath that he could not recall if he attended a presentation by Dr. Maroon and could not identify anything Dr. Maroon told him that was false.  Yet the subsequent lawyer-crafted responses have Singleton swearing under oath that Dr. Maroon downplayed the risks. Similarly, Singleton testified that he knew nothing about Chris Nowinski, and LoGrasso testified he did not know Nowinski was involved in concussion research or had written a book, claiming that he did not read books.  Yet in the subsequent perjurious responses drafted by counsel, both swear that unspecified statements by Nowinski, including in his book, somehow defrauded them.

The Plaintiffs' supplemental interrogatory responses are not the first time perjury has infected this case.  LoGrasso blatantly lied under oath on multiple issues at his deposition about the sole head injury he identified in the SAC.  *See* SOF ¶ 70.  He lied about hitting his head on the metal steps during a specific match in 2006; lied when he graphically pointed to a spot on his head which he said had hit the metal stairs in that match; and refused to recant until his perjury became manifest.  He admitted that he had lied only after confronted with irrefutable video evidence that he <u>never</u> hit his head on the steps.  *Id.*

As the previously cited cases establish, dismissal is appropriate where, as here, a party has committed perjury during discovery.  The Supreme Court has

long held that dismissal is within the power of the Court when a litigant's conduct abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).  As aptly stated by the late Justice Scalia, "[t]he principle that a perjurer should not be rewarded with a judgment ─ even a judgment otherwise deserved ─ where there is discretion to deny it, has a long and sensible tradition in the common law." *ABF Freight Sys.,  Inc. v. NLRB,* 510 U.S. 317, 329 (1994) (Scalia, J., concurring).

Here, Singleton and LoGrasso's deposition testimony and interrogatory responses cannot be reconciled.  Neither claimed fraud under oath in their depositions.  Both denied ever reading Congressional testimony.  Both denied knowing anything about Chris Nowinski or his book.  Singleton could not identify anything false Dr. Maroon ever said to him.  Their supplemental responses to the contrary are false and constitute perjury.  Plaintiffs here deserve the same sanction as perjurious plaintiffs in other cases and this Court has the same interest in preserving the integrity of its proceedings.

Accordingly, for this reason alone, the Court should impose sanctions on Plaintiffs, including dismissal.

**B.**     **Plaintiffs' Second Supplemental Interrogatory Responses Do Not Otherwise Comply With The Court's May 19 Compulsion Order**

The Second Supplemental Responses also failed to comply with the Court's May 19 Compulsion Order because the "supplemental" responses are incomplete, evasive and non-responsive answers.

**1.  LoGrasso Interrogatory No. 6 (A-12 from Court's May 19 Compulsion Order)**

Interrogatory: **Identify all symptoms You have experienced since Your**

22

relationship with WWE ended which You contend are associated with TBI sustained while performing for WWE, including the date of onset of the symptoms, the length of the symptoms, and the identity of all health care providers who examined or treated You for such symptoms.

**LoGrasso's First Supplemental Response: See General Objections 6, 7 & 8. Plaintiff further objects because this impermissibly seeks premature disclosure of experts and expert information or requires Plaintiff to disclose analyses, comparative analyses, opinions, or theories that will be the subject of expert testimony. Subject to and without waiving these objections, Plaintiff states that he presently recalls having suffered from severe headaches, hearing loss, post-concussion syndrome, memory problems, disorientation, loss of concentration, confusion, trouble sleeping, sleep apnea, Temporomandibular Joint Disorder (TMJD), anxiety, and depression both before and after his employment with WWE ended. These symptoms have been chronic since the time of their inception in approximately 2007. Plaintiff presently recalls being treated by those doctors identified supra for these symptoms with the exception of Dr. Ferdinand Rios. Pursuant to Rule 33(d), Plaintiff refers WWE to the medical records he is producing in this matter.**

**LoGrasso's Second Supplemental Response: Subject to the objections already made and in addition to the information already set forth in Plaintiff's initial and supplemental responses, Plaintiff states that he presently recalls having suffered from severe headaches, hearing loss, post-concussion syndrome, memory problems, disorientation, loss of concentration, confusion, trouble sleeping, sleep apnea, Temporomandibular Joint Disorder (TMJD), anxiety, and depression both before and after his employment with WWE ended. These symptoms have been chronic since their inception in approximately 2007. Plaintiff presently recalls being treated by those doctors already identified, with the exception of Dr. Ferdinand Rios.  Pursuant to Rule 33(d), Plaintiff refers WWE to the medical records already produced in this matter.**

In complete defiance of the Court's May 19 Compulsion Order, LoGrasso

failed to supplement his response to Interrogatory No. 6 in any way.

First, the language highlighted above in the Second Supplemental

Responses is word-for-word identical to the verbiage highlighted above in the

First Supplemental Responses which the Court already held to be insufficient.

The only exception is that LoGrasso refers WWE to the medical records "already

produced in this matter" instead of medical records LoGrasso "is producing in

23

this matter" as was written in the First Supplemental Responses that was subject to WWE's Motion to Compel.  Doc. No. 122-1 at 24-25.[12]  By making only this non-substantive change without any change to the substantive portion of the response, LoGrasso and his lawyers <u>willfully</u> chose to ignore the Court's May 19 Compulsion Order.  *See Tourmaline*, 2014 WL 4810253 at *6 ("Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control.").

<u>Second</u>, he improperly incorporates "the objections already made" even though the Court overruled those objections by granting WWE's Motion to Compel on this Interrogatory.

<u>Finally</u>, the substance of LoGrasso's Second Supplemental Response remains inadequate for the same reasons set forth in WWE's original Motion to Compel:

- LoGrasso still fails to identify the precise date of the onset of each of his alleged symptoms.  LoGrasso repeats the same answer — that the symptoms have been chronic since approximately 2007 but does not identify when in 2007 such symptoms began.  He again gloms 12 different symptoms together; and then labels them chronic since "inception in approximately 2007," the same inadequate answer previously given.  LoGrasso's answer is further suspect because it contradicts both his deposition testimony where he falsely testified that he hit his head on metal steps in October 2006, and that "things changed for me and my health changed with my head" as a result, and the allegations in the SAC stating that he did not begin experiencing such symptoms until 2008 (Doc. No. 72 at ¶140).

---

[12] In reality, LoGrasso and Singleton did not produce all their medical records, which was another abusive tact.  Thus, WWE had to incur the time and expense of subpoenaing multiple healthcare providers for their records.  Perversely, Plaintiffs' counsel then moved the Court to compel WWE to produce those records to Plaintiffs, which was denied.  Doc. Nos. 142-1 & 160.

- **LoGrasso still includes the false claim that his hearing loss was caused by TBIs allegedly sustained while wrestling for WWE which WWE proved was false in LoGrasso's deposition <u>before</u> he verified his Second Supplemental Responses.  *See* SOF ¶¶ 83-84.**

- **LoGrasso's response continues to violate Rule 33(d) in order to conceal that his symptoms did not arise when he now claims and in fact are a recent fabrication invented for this lawsuit.  His response directs WWE to unspecified medical records and does not specify the specific records or where in those records information about the onset of each of his symptoms is documented, as required by the rules.  *See* Fed. R. Civ. P. 33(d) (a party must specify "the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could").**

It is telling that LoGrasso and his lawyers, despite being subject to the May 19 Compulsion Order, still refuse to provide the most basic information about LoGrasso's alleged symptoms and continue to give answers that contradict his sworn testimony and prior allegations.  Such willful disregard for discovery orders makes dismissal appropriate.  *See John B. Hull,* 845 F.2d at 1176-77 (dismissing claim and awarding attorney's fees as sanction for party's failures to comply with court orders to provide adequate interrogatory responses).  To be sure, a lesser remedy at times is to strike the response and preclude the Plaintiff from introducing any evidence responsive to this interrogatory.  *See Tourmaline* 2014 WL 4810253, at *7 (precluding defendant from offering a defense based on any discovery materials he failed to provide); *see also Haas v. Del. & Hudson Ry. Co.,* 282 Fed. Appx. 84, 87 (2d Cir. 2008) (striking an affidavit submitted by plaintiff in opposition to summary judgment because the affiant was not, but should have been, identified in response to defendant's earlier interrogatories).

Here, however, that is an ineffective remedy.  The issue of when LoGrasso's alleged symptoms arose was directly relevant to limitations/repose

issues.  Through different pleadings and different sworn answers, LoGrasso has now asserted three different and contradictory answers as to when his symptoms began:  (1) 2008 (the year after he left WWE); (2) at some unspecified time in 2007; and (3) in October 2006 after being thrown into steps in his perjurious deposition testimony.  His generalized reference to medical records fails to point to <u>any</u> specific medical record in any of those years documenting the onset of even one of the symptoms he now claims.  WWE should not have to pick between different sworn answers when it is obvious he has perjured himself, and had to demonstrate in its summary judgment briefs why his claim is time barred regardless of which of his three different answers is used.

**2.  <u>LoGrasso Interrogatory No. 11 and Singleton Interrogatory No. 12 (A-2 from Court's May 19 Compulsion Order)</u>**

> **<u>Interrogatory</u>: Identify each and every "deceptive public statement [ ] and published article [ ]" of or by WWE which You contend "downplayed known long-term health risks of concussions to Plaintiff[s]", as alleged in ¶¶ 222 & 230 of the Second Amended Complaint.**

> **<u>Plaintiffs' First Supplemental Response</u>:  See General Objections 3 & 8. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:**

> **As stated in Plaintiff's Second Amended Complaint, WWE publicly attacked findings that an NFL player's suicide was attributable to head injuries and that WWE wrestler Chris Benoit suffered from severe concussion-related symptoms. SAC ¶¶ 68-69. WWE's Chief Brand Officer Stephanie Levesque testified before the United States House of Representatives Committee on Oversight and Government Reform that there were no documented concussions during WWE's matches. SAC ¶ 64. And during an appearance on the NFL Network in March 2015, Dr. Maroon stated, "The problem of CTE, although real, is its being over-exaggerated.'" SAC ¶ 55.**

> **In 2007, WWE wrestler Shawn Michaels suffered what WWE described as a "severe concussion" during a match with Randy Orton. Despite acknowledging that this was a serious injury, WWE suggested in its article publicizing the match's outcome that Mr. Michaels might continue**

wrestling. It also discussed Mr. Michaels's long history of head injuries, glorified his "decisions" to return to the ring after each one, and highlighted scripted matches in which "opponents" targeted Mr. Michaels's head specifically because of his existing head injuries.

Plaintiff also refers WWE to the publications served on March 21, 2016 in response to WWE's First Set of Requests for Production.

<u>LoGrasso's Second Supplemental Response</u>: Subject to the objections already made and in addition to the information already provided in Plaintiff's initial and supplemental responses, Plaintiff refers WWE to the publications served on March 21, 2016 in response to WWE's First Set of Requests for Production; Dr. Maroon's public statements regarding the risks of concussions and CTE in professional sports; Christopher Nowinski's published book, Head Games; and Mr. Nowinski's public statements favorably discussing WWE's policies and protocols in treating its wrestlers, and the McMahons' Congressional testimony.

Additionally, Plaintiff refers WWE to the statements by Christopher Nowinski during his employment with WWE on November 9, 2006 to PW Insider, *available* at http://www.pwinsider.com/ViewArticle.php?id=21346& p=1, and from September 2006 with Inside Pulse, *available* at http://insidepulse.com/2006/09/01/50689/.

<u>Singleton Second Supplemental Response</u>: Subject to the objections already made and in addition to the deceptive public statements and published articles identified by Plaintiff in his initial and supplemental interrogatory responses, Plaintiff responds that Dr. Maroon's presentations, which Plaintiff continues to deny attending or otherwise viewing, downplayed the risks of concussions to WWE's wrestlers, and Dr. Maroon's public statements relating to concussions, CTE, and long-term health risks of concussions downplayed the risks to Plaintiff. Further, Christopher Nowinski's public statements regarding how effective WWE's ImPACT Testing is at monitoring and treating wrestlers downplayed the risks that Plaintiff faced and continues to face. Both Stephanie McMahon's Congressional testimony stating her unawareness of concussions in WWE wrestlers and Vince McMahon's Congressional testimony downplayed known long-term health risks of concussions to Plaintiffs. Plaintiff also refers WWE to the publications served on March 21, 2016 in response to WWE's First Set of Requests for Production; Christopher Nowinski's published book, Head Games; and Mr. Nowinski's public statements and presentations to WWE wrestlers that further downplayed the known long-term health risks of concussions to Plaintiff.

27

Plaintiffs failed to rectify any of the deficiencies that WWE raised in its Motion to Compel and that the Court ordered Plaintiffs to correct in its May 19 Compulsion Order.

First, Plaintiffs still do not identify any specific public statements or published articles by WWE, or for that matter anybody, that downplayed the known long-term risks of concussions to them. Indeed, Plaintiffs' responses consist of general characterizations of unspecified statements at unspecified times, including Congressional testimony and a book by Nowinski which both Plaintiffs testified they had not seen or read.

Second, Plaintiffs continue their failure to identify with specificity the public statements and published articles where they contend WWE supposedly "downplayed known long-term health risks of concussions" at all. Indeed, they have yet to identify a single article published by WWE which downplayed health risks for a simple reason — it is another fabricated allegation with no basis in fact. Likewise, they do not identify by date, place or content any specific public statement by anybody at WWE which downplayed known health risks of concussions to them. Instead, on the contrary, they (1) refer WWE to unidentified statements in unidentified publications, which are by other persons or entities, and which were served by Plaintiffs during discovery, in violation of Rule 33(d), just as they did in their first supplemental responses; (2) fail to identify with any specificity the supposed "public statements" Dr. Maroon made "regarding the risks of concussions and CTE in professional sports," including what the statements were, when they were made, whether any such statements were made

28

on behalf of WWE, and how such statements came to the attention of Plaintiffs; (3) refer to Chris Nowinski's entire <u>Head Games</u> book despite their testimonial admissions they had not read it without identifying any specific statements from the book or any basis to attribute his statements to WWE;[13] (4) fail to identify with any specificity the supposed "public statements" by Mr. Nowinski "favorably discussing WWE's policies and protocols in treating its wrestlers," including what the statements were, when they were made, how they came to the attention of Plaintiffs, or how any such statements by Nowinski constitute deceptive public statements by WWE downplaying concussion risks to them; (5) fail to identify with any specificity any statements within the Congressional testimony by the McMahons that they claim deceptively downplayed known long-term health risks of concussions; (6) fail to disclose how Plaintiffs learned about such testimony when both previously testified they did not read such testimony; and (7) refer to statements that occurred when neither Singleton nor LoGrasso were even performing for WWE (*e.g.*, LoGrasso left WWE before Dr. Maroon became WWE's medical director, neither Singleton nor LoGrasso were at WWE when the McMahons provided the referenced congressional testimony).

Plaintiffs' Second Supplemental Responses simply are not responsive to the Interrogatory, although also perjurious.  Specifically, the Interrogatory seeks public statements or articles <u>of or by WWE</u> where WWE supposedly <u>downplayed known long-term risks of concussions</u> to <u>these Plaintiffs</u>.  Despite responding three times, Plaintiffs' counsel has yet to identify the alleged "published articles,"

---

[13] Chris Nowinski is also not WWE, and did not write <u>Head Games</u> on behalf of WWE.

which is plural, by WWE downplaying concussion risks to them, or anybody for that matter.  There are no public statements of any WWE executive identified doing so, and the only mention of any corporate executive allegedly doing so is to the unspecified Congressional testimony of Stephanie McMahon and Vincent McMahon, which neither read.  Aside from that, the response takes customary shots at Dr. Maroon with not one iota of specifics, and adds a person who has not been affiliated with WWE for many years, Chris Nowinski, and takes cheap and non-specific shots at his book, again without citation to a specific passage, and by directing WWE to two different 2006 internet articles about Nowinski.  Neither of those articles is by WWE, neither contains any statements by Nowinski downplaying concussion risks, and neither were read or known to Plaintiffs according to their sworn testimony.  One of the articles notes that Nowinski was actually a consultant for Trinity Partners, and both articles are actually about how Nowinski is going to enlighten people about concussion risks.  *See* Exs. 4-5. None of this demonstrates compliance with the Court's Order; it is defiance of it.

3. <u>LoGrasso Interrogatory No. 12 and Singleton Interrogatory No. 13 (A-4 from Court's May 19 Compulsion Order)</u>

> <u>Interrogatory</u>: Identify everything You contend was done by WWE to discredit the studies in ¶ 66 of the Second Amended Complaint, as alleged in ¶ 67 of the Second Amended Complaint, including in Your answer when and how You first learned of each act or statement identified.
>
> <u>Plaintiffs' First Supplemental Response:</u>  *See* General Objections 3 & 8. Subject to and without waiving the foregoing objections, Plaintiff refers WWE to its response to Interrogatory No. 11 [to LoGrasso and Interrogatory No. 12 to Singleton].
>
> <u>LoGrasso's Second Supplemental Response</u>: Subject to objections already made and in addition to the information already set forth in Plaintiff's initial and supplemental responses, Plaintiff refers WWE to its response to

Interrogatory No. 11.  Further, Plaintiff states that WWE never discussed the importance or relevance of the studies to his career or his short- and long-term health.

<u>Singleton's Second Supplemental Response</u>: Subject to objections already made and in addition to the information already set forth in Plaintiff's initial and supplemental responses, Plaintiff has no specific information relevant to this Interrogatory and has no recollections of the specific instances when WWE discredited the studies, as WWE never informed Plaintiff of the relevance of the studies to the injuries he suffered and the long-term risks he now knows he faces as a result. Plaintiff also refers WWE to his response to Interrogatory No. 12 and further states that he relied on WWE to inform him of any information related to how his wrestling career with WWE might impact his short-term and long-term health, and WWE specifically omitted this information when misrepresenting the risks associated with WWE wrestling to Plaintiff.

Plaintiffs' Second Supplemental Responses to this Interrogatory are again completely non-responsive and deliberately so.  The allegations in the SAC in question are that WWE supposedly did something to discredit seminal CTE studies done by Dr. Bennet Omalu on two former Pittsburgh Steelers in 2005.  *See* SAC ¶¶ 66, 67.  In reality, WWE never made any comments at all about Dr. Omalu's 2005 findings regarding two NFL players, and would have no reason to do so.  Previously, when WWE pointed out in Motion to Dismiss briefing the utter falsity of this allegation, Plaintiffs' counsel dismissed the falsity as "perhaps, a non-sequitor (sic)".  Doc. No. 53 at p. 36.  Now, rather than withdrawing the phony allegation or responding in an intellectually honest way to admit that WWE did nothing to discredit Dr. Omalu's 2005 findings about NFL players, Plaintiffs' counsel engages in more confabulation which wholly fails to address the specific question.

Thus, LoGrasso and Singleton refer in their Second Supplemental Responses to LoGrasso Interrogatory No. 11 and Singleton Interrogatory No. 12 respectively, which for the reasons explained above fail to comply with the Court's May 19 Compulsion Order, including failing to identify when or how Plaintiffs "learned of each act or statement identified."  Moreover, those responses simply do not cite any statements or actions taken by WWE to discredit Dr. Omalu's studies of former football players Mike Webster and Terry Long as alleged in SAC ¶¶ 66-67, which is the subject of this Interrogatory.

**4.  LoGrasso Interrogatory No. 14 and Singleton Interrogatory No. 15 (A-5 from Court's Compulsion Order)**

**Interrogatory**: Identify in detail who at WWE specifically stated "that WWE wrestlers with diagnosed brain trauma did not receive these injuries as a result of wrestling for WWE," as alleged in ¶¶ 178 & 185 of the Second Amended Complaint, including in Your answer the date, place and persons making such a statement and how and when such statements first came to Your attention.

**Plaintiffs' First Supplemental Response:**  See General Objections 3 & 8. Subject to and without waiving the foregoing objections, Plaintiff refers WWE to its response to Interrogatory Nos. 11 and 13 [to LoGrasso and Interrogatory Nos. 12 and 14 to Singleton].

**LoGrasso's Second Supplemental Response**: Subject to objections already made and in addition to the information already set forth in Plaintiff's initial and supplemental responses, Plaintiff refers WWE to the publications served on March 21, 2016 in response to WWE's First Set of Requests for Production; Dr. Maroon's public statements regarding the risks of concussions and CTE in professional sports; Christopher Nowinski's published book, Head Games; Mr. Nowinski's public statements favorably discussing WWE's policies and protocols in treating its wrestlers; and the McMahons' Congressional testimony.

Additionally, Plaintiff was repeatedly told by WWE employee Bill DeMott that the injuries he suffered were part of "paying his dues." These statements occurred regularly during training sessions with Mr. DeMott. In addition, Plaintiff was treated by Dr. Rios, who simply administered B-12 shots when he suffered head injuries and allowed Plaintiff to return to the

ring. Dr. Rios never advised Plaintiff of the long-term risks of these head injuries. By not treating Plaintiff's head injuries, Plaintiff was not informed of the connection between wrestling and his long-term injuries.

<u>Singleton's Second Supplemental Response</u>: Subject to objections already made and in addition to the information already set forth in Plaintiff's initial and supplemental responses, Plaintiff has no specific information relevant to this Interrogatory. However, in the previously recorded presentations served on Plaintiff by WWE as part of discovery in this matter, Bill Demott, Dr. Joseph Maroon, Chris Nowinski, Stephanie McMahon, and the other presenters each significantly downplayed the long-term risks of concussive and sub-concussive blows, particularly the risks faced by WWE wrestlers in both the main and developmental rosters.

Given the specificity of the allegations in question — that WWE specifically stated as quoted, one would think Plaintiffs' counsel could readily identify where that was said and by whom and, if not, they would comply with the order to so state they could not do so.  Instead, the first half of LoGrasso's Second Supplemental Response to this interrogatory copies the evasive, non-responsive Second Supplemental Response that LoGrasso gave to Interrogatory No. 11. Accordingly, his response to this Interrogatory does not comply with the Court's May 19 Compulsion Order for the same reasons explained above in Section IV.B.2.

The second half of LoGrasso's Second Supplemental Response also is non-responsive.  Although LoGrasso identifies a statement allegedly made to him by Bill DeMott, that statement has nothing to do with WWE allegedly specifically stating that "wrestlers with diagnosed brain trauma did not receive these injuries as a result of wrestling for WWE," which is the allegation in question.  LoGrasso also identifies Dr. Rios but does not identify any alleged statements made by Dr. Rios—much less any statement on behalf of WWE that wrestlers with diagnosed brain trauma did not receive those injuries as a result of wrestling for WWE.  The

gratuitous statement that Dr. Rios treated him with B-12 shots for head injuries is manifestly non-responsive, and false in view of LoGrasso's admissions that he never sought or received medical treatment for head injuries from WWE (*see* Plaintiff LoGrasso's Responses and Supplemental Responses to Interrogatories 2, 5; Memorandum of Decision (Doc. No. 116 at 11, 12, 51-53)) and his deposition testimony where he further admitted that he never told Dr. Rios he had a concussion, never had Dr. Rios examine him for a head injury, thought Dr. Rios was a "good doctor" and had no knowledge or evidence that Dr. Rios was told to lie to him about concussions or anything else. *See* SOF ¶¶ 28, 32, 131-34. LoGrasso also fails to identify how and when an alleged statement by WWE that wrestlers with diagnosed brain trauma did not get such injuries as a result of wrestling for WWE first came to his attention.

As to Singleton's response, he concedes he had no basis for his allegation in ¶ 178 of the SAC by admitting that he "has no specific information relevant to this Interrogatory."  In addition, the Court should strike the remainder of the response which generically identifies recorded presentations that WWE produced as part of <u>discovery</u> for four reasons.  <u>First</u>, that portion of the response is wholly inconsistent with Singleton's admission that he has no specific information relevant to the Interrogatory.  <u>Second</u>, this gratuitous inclusion serves no purpose in light of that admission other than to improperly muddy the record. <u>Third</u>, the generic characterization by Singleton of what was stated in those recorded presentations is non-responsive to the Interrogatory as it does not identify any statements by WWE responsive to the question.  <u>Finally</u>, Singleton's

answer fails to identify how and when the presentations first came to his

attention.

5. **LoGrasso Interrogatory No. 15 and Singleton Interrogatory No. 16 (A-6 from Court's Compulsion Order)**

> **Interrogatory**: Identify in detail who at WWE criticized "the legitimate scientific studies," as alleged in ¶¶ 193 & 208 of the Second Amended Complaint, including in Your answer the date, place, and person(s) rendering the criticism, and how and when the criticism first came to Your attention.

> **Plaintiffs' First Supplemental Response:**  *See* General Objections 3 & 8. Subject to and without waiving the foregoing objections, Plaintiff refers WWE to its response to Interrogatory Nos. 11 and 13 [to LoGrasso and Nos. 12 and 14 to Singleton].

> **LoGrasso's Second Supplemental Response**: Subject to objections already made, in addition to the information already set forth in Plaintiff's initial and supplemental responses, and consistent with the Court's May 19, 2016 Order, Plaintiff is limiting his response to where Plaintiff can identify a statement or speaker in response to this interrogatory. Plaintiff refers WWE to his response to Interrogatory No. 14.

> **Singleton's Second Supplemental Response**: Subject to objections already made, in addition to the information already set forth in Plaintiff's initial and supplemental responses, and consistent with the Court's May 19, 2016 Order, Plaintiff is limiting his response to where Plaintiff can identify a statement or speaker in response to this interrogatory. Subject to the foregoing, Plaintiff states that he has no recollection of a specific person who downplayed the legitimate scientific studies, as WWE failed to relate the studies to Plaintiff and inform him of the risks promoted by the scientific studies which would indicate Plaintiffs' injuries.

Without any explanation or justification, Plaintiffs duck the question by

asserting that "consistent with the Court's May 19, 2016 Order," they are limiting

their "response to where Plaintiff[s] can identify a statement or speaker in

response to this interrogatory."  The Court's May 19 Compulsion Order puts no

such limitation on what information Plaintiffs were ordered to provide WWE.  On

the contrary, the Court ordered that if Plaintiffs were "unable to identify a

statement or speaker in response to an interrogatory," then "Plaintiff[s] must state that fact," a much different requirement.  There is nothing in that language that gives Plaintiffs the right to ignore that the interrogatory also asks Plaintiffs to identify "the date, place, and person(s) rendering the criticism, and how and when the criticism first came to Your attention."

LoGrasso's answer to this Interrogatory also is completely non-responsive as it merely refers to his response to Interrogatory No. 14 which does not identify anyone at WWE who criticized scientific studies which illustrated the dangers and risks of head injuries and the long-term effects of concussions as he alleged in ¶ 208 of the SAC.

Singleton's answer to this interrogatory proves that he had no basis for his allegation in ¶ 193 of the SAC as he concedes that "he has no recollection of a specific person who downplayed the legitimate scientific studies."  Instead of a clear answer, the remainder is a continuation of confabution.

6. **LoGrasso Interrogatory No. 16 and Singleton Interrogatory No. 17 (A-1 from Court's Compulsion Order)**

> **Interrogatory**: Identify all alleged omissions or misrepresentations made by WWE to You, and for each alleged omission or misrepresentation, (a) detail the specific statement or omission; (b) identify the speaker of the statement or person responsible for the omission; (c) state where and when the statement was made or the context of the omission, and the manner in which it misled you; and (d) explain why the statement or omission was fraudulent or negligent.

> **Plaintiffs' First Supplemental Response:**  See General Objections 3 & 8. Plaintiff further objects because this is irrelevant to the parties' claims and defenses following the Court's recent ruling on WWE's motion to dismiss. Subject to and without waiving the foregoing objections, Plaintiff refers WWE to its response to Interrogatory Nos. 11 and 13 [for LoGrasso and its response to Interrogatory Nos. 12 and 14 for Singleton].

**LoGrasso's Second Supplemental Response**: **Subject to objections already made and in addition to the information already set forth in Plaintiff's initial and supplemental responses Plaintiff refers WWE to its response to Interrogatory Nos. 11, 13, and 14.**

**Plaintiff further responds that WWE has made numerous omissions or representations to him during his WWE career, particularly representations that WWE would provide medical care and treatment for in-ring injuries, a WWE-endorsed statement that was reiterated in WWE's 30(b)(6) deposition, that WWE maintained injury reports and monitored its wrestlers' health, safety and performance, and would prevent Plaintiff from wrestling if injured. Plaintiff was misled by WWE's failure to affirmatively state that it would not provide care and treatment for in-ring injuries if those injuries were long-term; that WWE did not monitor its wrestlers' health and safety, particularly through re-evaluations of Plaintiff's baseline and ongoing injuries; and by failing to properly evaluate Plaintiff prior to his return to the ring after being injured.**

**Plaintiff further responds that WWE encouraged him to wrestle after suffering head injuries, failed to adequately warn him of the risk of increased injury, and failed to warn him that, by continuing to wrestle after suffering a head injury and returning to the ring before his brain had healed, he would suffer increased injuries and face long-term risks of degenerative neurological conditions resulting from the repetitive blows to the head.**

**Additionally, Plaintiff states that WWE misrepresented its ongoing duties to the Plaintiff, who believed that WWE continued to monitor his health and safety through ongoing research into the injuries suffered by its wrestlers' in-ring, and through the public statements that WWE made pledging support to its wrestlers. The Wellness Program letters provided to Plaintiff led him to believe that WWE had concern for former wrestlers' health and well being. Plaintiff also states he was told by Nicole D'orazio that both house show and injury reports were maintained by WWE.**

**Singleton's Second Supplemental Response**: **Subject to objections already made and in addition to the information already set forth in Plaintiff's initial and supplemental responses, Plaintiff responds that WWE has made numerous omissions or representations to him during his career with WWE, particularly representations that WWE would provide medical care and treatment for in-ring injuries, a WWE-endorsed statement that was reiterated in WWE's 30(b)(6) deposition, that WWE maintained injury reports and monitored its wrestlers' health, safety and performance, and would prevent Plaintiffs from wrestling if injured. Plaintiff was misled by the failure of WWE to affirmatively state that WWE would not provide care and treatment for in-ring injuries if those injuries were long-term, that WWE**

did not monitor its wrestlers' health and safety, and by clearing Mr. Singleton to return to the wrestling ring.

Plaintiff further responds that WWE, through agents such as Bill DeMott, encouraged him to wrestle after suffering a head injury and failed to correctly warn him of the risk of increased injury and failed to inform him that, by continuing to wrestle after suffering a head injury and returning to the ring before the brain had healed, he would suffer increased injuries and long-term risks of degenerative neurological conditions resulting from the repetitive blows to the head. Bill DeMott failed to inform Plaintiff of the evidence linking concussions to CTE. Finally, WWE failed to educate Mr. Singleton, a member of its developmental roster, in the same manner it educated the more prominent main wrestler rosters. Specifically, Mr. Singleton does [sic] remember attending or otherwise viewing the various presentations made by Dr. Maroon to WWE's main roster regarding concussions.

The blather in response to this Interrogatory completely ignores that the sole remaining claim in this case is a fraud by omission claim "to the extent that claim asserts that in 2005 or later WWE became aware of and failed to disclose to its wrestlers information concerning a link between repeated head trauma and permanent degenerative neurological conditions as well as specialized knowledge concerning the possibility that its wrestlers could be exposed to a greater risk for such conditions."  Doc. No. 116 at 70.  Plaintiffs' answers rail on about issues wholly divorced from "a link between repeated head trauma and permanent degenerative neurological conditions" including supposed omissions or misrepresentations that:

- WWE would provide medical care and treatment for in-ring injuries;

- WWE maintained injury reports;

- WWE monitored its wrestlers' health and safety; and

- WWE would prevent Plaintiffs from wrestling if injured.

LoGrasso's non-response also includes the false claim that WWE encouraged him to continue to wrestle after suffering head injuries and/or failed to adequately warn him of the risk of increased injury if he continued to wrestle after suffering head injury when, in fact, LoGrasso has admitted he never sought or received medical treatment from WWE for a head injury.  Moreover, LoGrasso fails to provide any of the details requested in the Interrogatory including the <u>specific</u> statements WWE made <u>to him</u>, who made the statements and when and where the statements were made.

Singleton's response includes manifestly false claims that once again prove he and his counsel have no intention of making truthful, well-founded allegations in this case.  Singleton has already admitted that he never wrestled in a match for WWE after his alleged injury (SOF ¶ 236), that he had no basis to claim WWE cleared him to continue wrestling (SOF App. Tab 46 at 176-78) and that WWE sent him to multiple neurologists, neuropsychologists and an epilepsy specialist after his injury.  *See* SOF ¶ 213.  Yet, in his sworn non-response to this Interrogatory, Singleton falsely claims that WWE cleared him "to return to the wrestling ring," "encouraged him to wrestle after suffering a head injury" and failed to inform him that "by continuing to wrestle after suffering a head injury and returning to the ring before the brain had healed, he would suffer increased injuries and long-term risks of degenerative neurological conditions resulting from the repetitive blows to the head."

In addition, Singleton incredibly claims that through WWE's presentations to talent, WWE "failed to educate" him on concussions "in the same manner it

educated the more prominent main wrestler rosters" even though Singleton claimed under oath he had no recollection of attending the presentations. *Id.* at ¶ 184.  Finally, Singleton fails to provide any of the details requested in the Interrogatory including the <u>specific</u> statements WWE made <u>to him</u>, who made the statements and when and where the statements were made.

### V.    <u>CONCLUSION</u>

As the foregoing establishes, despite the Court's May 19 Compulsion Order, Plaintiffs' counsel served WWE with Second Supplemental Responses to WWE's interrogatories that are perjurious and as substantively deficient as the First Supplemental Interrogatory responses that the Court already held did not comply with the Federal Rules of Civil Procedure.  It is now clear that Plaintiffs and their counsel have no intention of truthfully and legitimately responding to WWE's interrogatories for a simple reason — the allegations which are the subject of the interrogatories were fabricated to begin with and thus there was no evidentiary basis which Plaintiffs could cite to in order to respond.  Thus, perjury and confabulation are substituted for truthful and complete responses.  WWE requests an order striking the Second Supplemental Objections and Responses and precluding Plaintiffs from introducing any evidence that would have been responsive to the interrogatories subject to the Court's May 19 Compulsion Order.  WWE respectfully submits that the Court consider dismissing the sole remaining claim of fraudulent omission not only for the reasons set forth in the summary judgment motion filed on August 1, 2016, but also as a sanction for violating the Court's Compulsion Order and the perjury set forth therein.  WWE

further requests an order requiring Plaintiffs' counsel to either produce or

provide to WWE or to the Court their correspondence reflecting if and when they

reviewed the Second Supplemental Responses and sanctioning Plaintiffs'

counsel for submitting false supplemental interrogatory responses that

contradicted their client's deposition testimony.  Lastly, WWE respectfully

requests an order compelling Plaintiffs and their counsel to pay WWE's costs for

preparing this motion.

> **DEFENDANT WORLD WRESTLING
> ENTERTAINMENT, INC.,**
>
> **By: /s/ Jerry S. McDevitt**
> **Jerry S. McDevitt (pro hac vice)**
> **Terry Budd (pro hac vice)**
> **Curtis B. Krasik (pro hac vice)**
> **K&L GATES LLP**
> **K&L Gates Center**
> **210 Sixth Avenue**
> **Pittsburgh, PA 15222**
> **Phone: (412) 355-6500**
> **Fax: (412) 355-6501**
> **Email: jerry.mcdevitt@klgates.com**
> **Email: terry.budd@klgates.com**
> **Email: curtis.krasik@klgates.com**
>
>
> **Thomas D. Goldberg (ct04386)**
> **Jonathan B. Tropp (ct11295)**
> **Jeffrey P. Mueller (ct27870)**
> **DAY PITNEY LLP**
> **242 Trumbull Street**
> **Hartford, CT 06103**
> **Phone: (860) 275-0100**
> **Fax: (860) 275-0343**
> **Email: tgoldberg@daypitney.com**
> **Email: jbtropp@daypitney.com**
> **Email: jmueller@daypitney.com**
>
> **Its Attorneys.**

## <u>CERTIFICATION</u>

    **I hereby certify that on August 8, 2016 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.**

                                           *__/s/ Jeffrey P. Mueller_____*