# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RUSS McCULLOUGH, a/k/a "Big Russ McCullough", *et al,* | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:15-cv-001074 (VLB) |
| | : | Lead Case |
| v. | : | |
| | : | |
| WORLD WRESTLING | : | |
| ENTERTAINMENT, INC., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| MICHELLE JAMES, as mother and next Friend of MATTHEW OSBORNE, a Minor Child and TEAGAN OSBORNE, a Minor Child, | : : : : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:15-cv-01305 (VLB) |
| | : | Consolidated Case |
| v. | : | |
| | : | |
| WORLD WRESTLING | : | |
| ENTERTAINMENT, INC., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| CASSANDRA FRAZIER, individually and as next of kin to her deceased husband, NELSON LEE FRAZIER, JR., and as personal representative of THE ESTATE OF NELSON LEE FRAZIER, JR, DECEASED, | : : : : : : | CIVIL ACTION NO.

3:15-cv-01229 (VLB) Consolidated Case |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WORLD WRESTLING | : | |
| ENTERTAINMENT, INC., | : | |
| Defendant. | : | |

**November 10, 2016**

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS THE *FRAZIER* ACTION [Dkt. 103] AND GRANTING DEFENDANT'S MOTION TO DISMISS THE *OSBORNE* ACTION [Dkt. 104].**

**MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION FOR SANCTIONS [Dkt. 80]**

Plaintiffs in the *Frazer* and *James* cases in this consolidated wrestling concussion litigation are the decedents of former wrestlers who performed for compensation for World Wrestling Entertainment Inc. ("WWE"), a Connecticut entertainment company which produces televised wrestling programming. Plaintiffs have brought wrongful death claims alleging that the decedents' deaths resulted from traumatic brain injuries sustained during their employment as wrestlers for WWE, and that the negligence and/or fraudulent conduct of WWE caused those injuries.

In a memorandum of opinion and accompanying Order dated March 21, 2016 (the "March 21 Opinion"), this Court dismissed similar claims brought by other retired former wrestlers alleging that they were injured as a result of WWE's negligence in scripting violent conduct and failing to properly educate, prevent, diagnose and treat them for concussions. Prior to the entry of the Court's March 21 Opinion, WWE separately moved to dismiss the Complaints in both of the instant wrongful death actions, arguing that the Plaintiffs' claims are time-barred and fail to state a claim under Connecticut's wrongful death statute. [Dkt. 103, 104]. WWE also previously filed a motion to impose sanctions against Plaintiffs' counsel, Konstantine Kyros ("Kyros"), Erica Mirabella ("Mirabella"), and R. Christopher Gilreath ("Gilreath") for their conduct, and in particular the conduct

2

of attorney Kyros, in the filing of the *James* matter in Texas.  [Dkt. 80].

Currently before the Court are WWE's motions to dismiss the two wrongful death actions in *Frazier* and *James*, as well as WWE's motion for sanctions related to the filing of the *James* matter.  For the reasons stated below, WWE's motions to dismiss [Dkt. 103, 104] are GRANTED and the *Frazier* [3:15-cv-1229] and *James* [3:15-cv-1305] actions are DISMISSED.  WWE's Motion for Sanctions [Dkt. 80] is DENIED.

### I.      Factual Background

The facts and allegations in the Amended Complaint in the action brought by Michelle James [3:15-cv-01305-VLB, Dkt. 99] (hereinafter "JAC")] are nearly identical to the facts and allegations in the Amended Complaint brought by Cassandra Frazier, *et al.* [3:15-cv-01229, Dkt. 98] (hereinafter "FAC")].  Both amended complaints are also nearly identical to the amended complaints brought by several other former WWE wrestlers against WWE in this consolidated action, including those brought by Russ McCullough [3:15-cv-01074, Dkt. 73], and Evan Singleton [3:15-cv-00425, Dkt. 67].  All of the wrestlers alleged that they were injured as a result of WWE's negligence in scripting violent conduct and failing to properly educate, prevent, diagnose and treat them for concussions.

In its March 21, 2016 Opinion, the Court exhaustively reviewed the factual allegations asserted against WWE in the complaints brought by Plaintiffs *McCullough* and *Singleton*.  As those complaints are nearly identical to the complaints brought by Plaintiffs in *Frazier* and *James* the Court incorporates that

portion of its earlier Opinion describing the factual allegations against WWE. Relevant to the instant motions are the following facts concerning the named decedents in *Frazier* and *James*, which are taken from the Amended Complaints in those respective actions.

### a.  Nelson Lee Frazier

Plaintiff Cassandra Frazier is the widow of Nelson Lee Frazier ("Frazier"), a deceased former WWE wrestler.  Frazier performed in at least 289 matches while affiliated with WWE between June 14, 1993 and March 11, 2008, which was the date of his last performance.  [FAC ¶¶ 117-406].  Frazier maintained a weight of approximately 500 pounds while wrestling for WWE.  [*Id.* ¶ 172].  Frazier had an admittedly "complicated medical history" that included "weight issues and heart conditions."  [*Id.* ¶ 156].  Frazier vaguely alleges that he sustained "countless head injuries" while wrestling in addition to "numerous other physical injuries." [*Id.*].  The Complaint does allege that Frazier "had large knots on his head, as the scar tissue on his skull formed into permanent lumps" and also "evidenced indentations in his skull," but does not describe how Frazier acquired those injuries or their medical significance.  [*Id.* ¶ 157].  On six specific dates in 1993, 1995, 1999 and 2005 and 2006, Frazier is vaguely alleged to have "sustained head injuries."  [Id. ¶¶ 184-190].  Plaintiff's complaint does not identify the injuries suffered.  Like many of the other named Plaintiffs in this consolidated action, Frazier generally describes the physical contact in each of the alleged incidents – a fall to the mat, for example, or a blow to the head – without alleging any specific

4

or medically-diagnosed physical injury or even alleging that he ever sought medical treatment after the incident.

The Complaint alleges that toward the end of Frazier's WWE wrestling career, he sought medical treatment from his own physician.  Frazier's personal physician told him he was an "idiot" for choosing to wrestle for a living and encouraged WWE to release him from employment.  [*Id.* at ¶¶ 168, 170].  Prior to his death, Frazier sought medical attention from for severe depression and severe migraines.  [*Id.* ¶¶ 113, 114].

Frazier died of a heart attack on February 18, 2014, nearly six years after he last performed for WWE.  The official records of Tennessee identified the immediate cause of death as "Hypertensive cardiovascular disease" and "[m]orbid obesity, diabetes mellitus" as other significant contributing conditions.[1]  Nonetheless, Frazier alleges in conclusory fashion that "[a]s a direct and proximate result of the WWE's negligence, Nelson Frazier was put in a worse-off state of well-being as evidenced by the above complications, which to a reasonable degree of medical certainty, more likely than not attributed [*sic*] to Nelson Frazier's heart attack and his inability to survive the heart attack."  [FAC ¶ 302].  This is the sole allegation raised by Plaintiff linking Frazier's heart attack with any wrongful act by WWE.

The official death certificate of Tennessee shows that no autopsy was

---

[1] A certified copy of Frazier's death certificate was attached to WWE's Motion to Dismiss as Exhibit A.  The Court takes judicial notice of it with respect to this motion to dismiss.  *See G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216 (RWS), 2003 WL 193502, at *8 (S.D.N.Y. Jan. 29, 2003); *Johnson v. Morgenthau*, 160 F.3d 897, 898 (2d Cir. 1998).

performed and that Frazier was cremated.  Notably, unlike all of the other complaints filed in the TBI cases against WWE, including the *James* Amended Complaint, the Amended Complaint in *Frazier* omitted the allegation that CTE can only be diagnosed post-mortem by direct tissue examination of the brain.  [*See, e.g.*, Dkt. 73, McCullough Amended Complaint ¶ 35]

### b.  Matthew Osborne

Plaintiff Michelle James ("James") brought suit as mother and next friend of two of the children of a deceased former wrestler named Matthew Osborne ("Osborne").  James does not allege facts suggesting that she has standing to bring this action.  She does not claim to have ever been married to Osborne or that she is the executor of Osborne's estate.

The Complaint alleges that Osborne had an "approximately 30 year association as a wrestler with WWE" ending in 2007.  [Dkt. 99, JAC ¶ 17].  WWE argues, and Plaintiff did not contest, that publicly-available information establishes that Osborne performed for WWE during two one-year stints from 1985-86 and again from 1992-93 and subsequently made a single 'special guest' appearance at a WWE program in 2007 "for a few minutes."  [Def.'s Mem. at 4, n. 4].  WWE therefore argues that the Complaint is misleading in suggesting that Osborne had a thirty-year wrestling career with WWE and that Osborne's employment relationship with WWE was terminated in 1993.

In or around September 2007, WWE established a wellness program, described in the Court's March 21 Opinion.  As part of the new wellness program,

WWE offered to pay for rehabilitation services if any former wrestler needed help for drug or alcohol abuse.  WWE acknowledges that Osborne "sought such help," and that WWE paid for Osborne to obtain drug rehabilitation services from a third party in 2008, which "he successfully completed."  [Def.'s Mem. at 5].  The Complaint alleges that Osborne died of a drug overdose on June 28, 2013 at his home in Plano, Texas.  [JAC ¶¶ 4, 187, 277].  The official conclusion of the Assistant County Medical Examiner for Collins County Texas was that his death was accidental and caused by the toxic effects of high levels of opiates.[2]

The Plaintiffs allege that CTE can only be diagnosed post-mortem by direct tissue examination of the brain, [JAC ¶ 58, 93].  While James suggests that "any tissue samples of [Osborne's] brain tissue collected during his autopsy can be studied for the presence of Tau protein for a definitive diagnosis," [id. ¶ 33] she has not alleged that the medical examiner actually collected or examined such samples.  Consequently, James has failed to allege facts that would indicate on what information she relied to determine that Osborne had CTE, or that Osborne's death from a drug overdose was caused by CTE.

---

[2] An autopsy report concerning the death of Matthew Osborne was attached to WWE's Motion to Dismiss as Exhibit 1.  The Court takes judicial notice of this document as an official record.  *See Johnson v. Morgenthau*, 160 F.3d 897, 898 (2d Cir. 1998) (holding that the court could take judicial notice of a party's death when provided with a death certificate); *Valley Surgical Ctr. LLC v. Cty. of Los Angeles*, No. CV 13-02265 DDP AGRX, 2015 WL 3825310, at *6 n.1 (C.D. Cal. June 18, 2015) (taking judicial notice of a coroner's report and its contents, where the complaint alleged facts from the report, and where no party questioned the report's authenticity).

## II.     Procedural History

*Frazier* and *James* are the fourth and fifth carbon-copy concussion cases against WWE, respectively, to be transferred to this District after originally having been filed in other jurisdictions.  In the first of these five cases to be filed, *Singleton*, Plaintiffs did not oppose transfer on the basis of a binding forum-selection clause in the employment contracts WWE signs with its wrestlers.  [Dkt 6, 11].  In the second-filed case, *McCullough*, Plaintiffs argued that the forum selection clauses were unconscionable under California law and therefore unenforceable.  [Dkt. 21].  *McCullough* was transferred to this District after a court in the Central District of California found that the forum selection clauses were valid and enforceable.  [Dkt. 24].

Plaintiffs also opposed transfer of the third-filed case, *Haynes*, on the basis that the named plaintiff in that action had not signed a contract with WWE containing a forum-selection clause.  A district court in the District of Oregon nonetheless granted WWE's motion to transfer the *Haynes* action to this District pursuant to 28 U.S.C. § 1404(a) after finding that the plaintiff's choice of forum was entitled to little weight given obvious forum-shopping by Plaintiffs' counsel and considerations of *forum non conveniens*.  [Dkt. 59].

On June 8, 2015, this Court ordered WWE and Plaintiffs' lead and local counsel to appear for a status conference in the *Singleton/LoGrasso* and *McCullough* cases*.*  Among other admonitions of counsel for inflammatory and unprofessional conduct, the Court referred Plaintiff's counsel, Konstantine Kyros, to Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to

8

consist of a short and plain statement of the facts which form the plaintiff's claims, and specifically instructed him to "read the Federal Rule, give it some close consideration, perhaps read some cases on the pleading standard, and then file this complaint again in a week without any scrivener errors, without a lot of superfluous, hyperbolic, inflammatory opinions and references to things that don't have any relevance."  [Dkt. 73 at 60].

*Haynes* was subsequently transferred to this Court on June 25, 2015.  [*Id.*] *The very next day*, Attorney Kyros filed the last of the five consolidated wrestling cases, *James*, in the Northern District of Texas.  Kyros and the numerous other counsel co-signing the James complaint on behalf of the Plaintiffs declined to heed the Court's admonition to edit the unnecessary verbiage, irrelevant allegations, conclusory statements and inflammatory language in the original complaints.

After numerous communications between various counsel for both parties concerning the veracity of several assertions repeatedly included in the carbon-copy wrestling complaints, WWE ultimately filed the instant Rule 11 motion while the *James* case was pending in Texas.  WWE did not serve a copy of the exact Rule 11 motion ultimately filed in Texas twenty-one days in advance of filing that motion – instead, a prior iteration of the motion was served on Kyros' firm bearing the case caption of the *Haynes* matter while that case was pending in Oregon.  Nonetheless, the instant Rule 11 motion seeks the imposition of sanctions against Kyros on the basis of alleged falsehoods in the *James* complaint, that WWE claims to have repeatedly pointed out to Plaintiffs' counsel,l

as well as on the basis of Plaintiffs' pattern of forum shopping.  [Dkt. 80].

The *James* case was transferred to this Court from Texas after Plaintiffs withdrew their objection to transfer.  WWE argues that Plaintiffs' counsel, however, failed to remove allegedly false assertions from the complaint when, after lengthy delay, Plaintiffs finally filed amended complaints in both *Frazier* and *James*, therefore underlining WWE's case for the imposition of sanctions.  Moreover, in filing amended complaints in *Frazier* and *James*, Kyros and numerous other co-signing counsel declined to heed this Court's admonition to edit the complaints to reduce their unnecessary length and irrelevant, inflammatory allegations.

In its March 21 Opinion, the Court dismissed the negligence claims asserted in *McCullough*, *Singleton*, and *Haynes*, and held that Plaintiffs' only plausible claim against WWE under Connecticut law was a single count of fraud by omission for WWE's alleged failure to disclose information linking wrestling with long-term brain damage in the face of a plausible duty to disclose such information.  The Court found that such claims could only be brought by wrestlers who performed for WWE after WWE was alleged to have acquired the knowledge which it allegedly failed to disclose – which Plaintiffs alleged was on or about the year 2005.  The Court further found that it was plausible that this fraud claim may not be barred by the operation of Connecticut's statutes of limitations and repose with respect to wrestlers who performed after 2005.

### III.     Legal Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (*quoting Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (*quoting Iqbal*, 556 U.S. at 679).  "The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in Plaintiffs' possession or of which Plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.*, Inc., 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

IV.     Discussion

a. *Connecticut Law Applies to the Claims of Both Decedents*

The *Frazier* and *James* Plaintiffs have not challenged WWE's assertion that Connecticut law applies to their claims by virtue of the forum-selection clauses in the contracts between both wrestlers and WWE; and Plaintiffs in both cases have submitted opposition briefing relying exclusively on Connecticut law.  Moreover, in the Court's March 22, 2016 Opinion, the Court had previously determined that Connecticut law applied to the claims brought by plaintiff William Haynes III, an Oregon resident who had urged application of Oregon law to his negligence

12

claims against WWE.  For the reasons stated in that opinion, the Court applies Connecticut law to the claims of the respective decedents in the two wrongful death actions.

### b.  *Wrongful Death Is the Exclusive Remedy for Both Plaintiffs Under Connecticut Law*

Connecticut's wrongful death statute provides the exclusive remedy for claims alleging injuries resulting in death.  *See Ladd v. Douglas Trucking Co.*, 203 Conn. 187, 195 (1987) ("Since its enactment our wrongful death statute has been regarded as the exclusive means by which damages resulting from death are recoverable.").  WWE therefore argues that all other counts of the *James* and *Frazier* Amended Complaints must be dismissed.

Plaintiffs argue, without citation to relevant Connecticut authority, that "multiple counts may be necessary to provide adequate relief, especially where punitive and special damages are separate and distinct from statutory claims." [Pl.'s Mem. at 27, citing *Caulfield v. Amica Mutual Ins. Co.,* 31 Conn. App. 781, 785, n. 3 (Conn. App. 1993)].  *Caulfield*, in which a Connecticut appellate court found that statutory multiple damages were not recoverable under Connecticut's uninsured motorist statute, was not a wrongful death action brought under Section 52-555, *and does not even mention* Section 52-555 or discuss the availability of alternative causes of action thereunder.

Connecticut law is clear that because Section 52-555 provides the exclusive remedy for injuries where death is a result of the wrongful act,

administrators are therefore precluded from pleading alternative common law causes of action arising from the alleged wrongful act.  *Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282, 295 (1993) (holding that Section 52-555 "is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought."); *Floyd v. Fruit Indus., Inc.*, 144 Conn. 659, 669 (1957) ("[T]here cannot be a recovery of damages for death itself . . . in one action and a recovery of ante-mortem damages, flowing from the same tort, in another action brought under [the survival statute]."); *Marsala v. Yale-New Haven Hosp., Inc.*, No. AANCV126010861S, 2013 WL 6171307, at *14 (Conn. Super. Ct. Oct. 30, 2013) (striking common law causes of action for assault and battery in action brought under Section 52-555); *Herbert v. Frontier of Northeast Conn.*, Inc., 2004 Conn. Super. LEXIS 229, at *8-11 (Conn. Super. Ct. 2004) (striking claims for punitive damages and attorney's fees).  Plaintiffs make clear throughout their opposition to the motions to dismiss that each decedent's death is alleged to be the direct result of the tortious acts of WWE, whether those acts constituted fraud or negligence.  Alternative causes of action arising from those wrongful acts directly resulting in death are therefore barred.  The common law claims asserted by both Plaintiffs in Counts I-V of both Amended Complaints are DISMISSED.

### c.  The James Action Must Be Dismissed for Lack of Standing Under Conn. Gen. Stat. 52-555

Under Connecticut law, "[s]tanding to bring a wrongful death action is . . . conferred only upon either an executor or administrator."  *Isaac v. Mount Sinai*

*Hosp.*, 210 Conn. 721, 725-26 (1989) (citations omitted); *see also Ellis v. Cohen*, 118 Conn. App. 211, 216 (2009) ("§ 52-555 creates a cause of action for wrongful death that is maintainable on behalf of the estate only by an executor or administrator.").  Where, as in the case of Michelle James, the plaintiff is neither the executor nor administrator of the decedent's estate the plaintiff lacks standing to bring a wrongful death action.

Plaintiffs do not contest Michelle James' lack of standing.  On the contrary, Plaintiffs repeatedly request that this Court "out of equity and in the interests of judicial economy and justice . . . permit the constructive refiling of the action within a reasonable period of time after an estate has been established, an administrator appointed, and Plaintiff serves WWE anew under the accidental failure of suit statute, Conn. Gen. Stat. § 52-592."  [Pl.'s Mem. at 4, 42, 44]. In the alternative, Plaintiffs request "an extension of time under Rule 6(b) to remedy any procedural inadequacies which might affect Plaintiff's pursuit of her valid, substantive claims."  [*Id.*].

After the *James* action was filed in Texas, Plaintiffs had nearly six months to address these "procedural inadequacies" prior to the filing of WWE's motion to dismiss.  Plaintiffs also had the opportunity to file an Amended Complaint, and an extension of time was provided to plaintiffs' counsel to accommodate the filing of that Amended Complaint.  At no time did counsel for Plaintiffs invest the minimal effort and expense necessary to establish an estate and appoint an administrator in order to confer standing to bring the instant suit.

Nonetheless, in the interests of equity and justice to the families of the

decedents, the Court might have been inclined to dismiss the action without prejudice to re-filing notwithstanding the conduct of the Kyros firm and its co-counsel, described above.  However, for the reasons stated below, the Court finds that leave to re-file would be futile as Plaintiffs have not pled a plausible cause of action under the wrongful death statute.  The *James* action is DISMISSED.

### d. Plaintiffs Fail to Allege A Plausible Causal Relationship Between the Decedents' Deaths and the Wrongful Acts Alleged

To state a claim under Connecticut's wrongful death statute, the plaintiff bears the burden "to prove an unbroken sequence of events that tied [his] injuries to the [defendant's conduct] . . . This causal connection must be based upon more than conjecture and surmise."  *Alexander v. Town of Vernon,* 101 Conn. App. 477, 485 (2007) (citations omitted).

True to form, in over forty pages of briefing submitted in opposition to WWE's motion to dismiss, counsel for Plaintiffs could identify only four vague and conclusory assertions of 'fact' to link Frazier's death with the more than one hundred pages of alleged wrongful conduct on the part of WWE detailed in the prolix Amended Complaint.  These four assertions are listed below:

I.    "WWE created and maintained a dangerous work environment that caused Mr. Frazier to suffer serious injuries . . ."
II.   "Mr. Frazier incurred many of these injuries. . . ."
III.  "These injuries, *along with the poor lifestyle Mr. Frazier was forced to maintain throughout his employment*, directly caused his death." (emphasis added)
IV.   "WWE continued, until Mr. Frazier's death, to act and omit [sic] information regarding Mr. Frazier's injuries, health, and well-being

16

which prevented Mr. Frazier from receiving necessary medical treatment and which ultimately led to his death."

[Pl.'s Mem. at 33]. The Court notes that Plaintiffs cited the exact same four 'facts' with respect to causation in opposition to WWE's motion to dismiss the *James* case. [Pl.'s Mem. at 34].

The bare requirements of *Iqbal* and *Twombly*, however, demand more than these bald assertions, unsupported specific facts, that an individual was 'injured' many times and that those undetermined 'injuries' led to that individual's death. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1957 (2007) ("a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed"), *citing Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 528, n. 17 (1983).

The Court notes, in particular, the facially specious assertions by Plaintiffs' counsel that, "upon information and belief," both Frazier and Osborne "had CTE." [FAC ¶ 35]. The complaints contain no information from which such a belief could be derived. In the first three carbon-copy wrestling complaints filed by Kyros and his numerous co-counsel in these consolidated cases, Kyros specifically alleged that CTE could *only* be diagnosed post-mortem through an autopsy of the subject's brain. There, the allegation that CTE could only be diagnosed post-mortem was included to *bolster* the claims of the other named Plaintiffs, who had to allege that they have been 'injured' due to being at *greater risk of developing CTE*, because, by its very nature, the disease could not be diagnosed without an autopsy. It is no wonder, then, as WWE points out, that

17

Plaintiffs chose to remove the allegation regarding the diagnosis of CTE from the *Frazier*'s complaint.  Frazier's brain has been destroyed and cremated, and James has alleged no facts to indicate that Osborne's autopsy included the relevant analysis of his brain tissue or that any brain tissue samples from this autopsy have been preserved.  It is impossible to plausibly allege, much less prove that either wrestler had CTE.  Kyros and his co-counsels' assertion that either wrestler had the condition "upon information and belief" must therefore be knowingly false.

Not only have Plaintiffs failed to plausibly allege that their decedent had CTE, neither Plaintiff has alleged facts linking their decedent's death with CTE.  In a wrongful death action under Connecticut law, a plaintiff must allege specific facts tending to show a plausible connection between the death of the decedent and the wrongful conduct alleged against the defendant.  *See, e.g., Rose v. City of Waterbury*, Civil Action No. 3:12cv291 (VLB), 2013 WL 1187049, at *10 (D. Conn. Mar. 21, 2013) (granting Rule 12(b)(6) motion where wrongful death Plaintiffs failed "to allege any causal relationship between the Hospital's conduct and [plaintiff's] death").  Here, yet again, counsel for Plaintiffs resort only to rank speculation, alleging without any factual support that:

> As a direct and proximate result of the WWE's negligence, Nelson Frazier was put in a worse-off state of well-being as evidenced by the above complications, which to a reasonable degree of medical certainty, more likely than not attributed [*sic*] to Nelson Frazier's heart attack and his inability to survive the heart attack."

[FAC ¶ 302].  By Plaintiffs' own admission, Frazier was a six-foot-nine-inch, nearly 500-pound man who "suffered from diabetes, an enlarged heart, and

obesity" and suffered a heart attack in the shower.  [FAC ¶ 50, 160].  Even if the Court assumes for the purposes of this motion that Plaintiffs' unprovable allegation that Frazier "had CTE" were true, the Amended Complaint does not contain a single allegation that heart failure can be a symptom or consequence attributable to a neurologically degenerative condition like CTE.  Thus, counsel's allegation that Frazier's "inability to survive the heart attack" can be "more likely than not attributed" to his CTE is yet another bald and baseless allegation, unprovable and unsupportable, which the Court deems unworthy of the barest measure of credibility.

In sum, Plaintiffs have not pled specific facts tending to show that Frazier's death resulted from specific injuries sustained while wrestling for the WWE much less that his death was the result of fraudulent conduct on the part of WWE but for which Frazier would not have contracted CTE.  The *Frazier* action is DISMISSED.


### e.  The Court Denies WWE's Request for Sanctions

Rule 11 sanctions may be properly assessed against (1) any attorney who "present[s] to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it" that violates the requirements of Rule 11, or (2) any attorney who is responsible for such violation.  Fed. R. Civ. P. 11(b).  An attorney violates Rule 11 when he "mak[es] false, misleading, improper, or frivolous representations to the court."  *Housatonic Habitat for Humanity, Inc. v. General Real Estate Holdings, LLC*, 3:13-01888, 2015 WL 3581242 at *2 (D.

Conn. June 5, 2015) (quoting *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008)).

Rule 11 sanctions are also appropriate "when court filings are used for an 'improper purpose.'" *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58 (2d Cir. 2012). A pleading is filed for an improper purpose if it is used to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Similarly, the Court may impose sanctions under 28 U.S.C. § 1927 on "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. "Although the decision to impose sanctions . . . is uniquely within the province of a district court . . . any such decision must be made with restraint and discretion. *Mantell v. Chassman*, 512 Fed. Appx. 21, at *1 (2d. Cir. 2013) (citations omitted).

Fed. R. Civ. P. Rule 11(c)(1) provides a twenty-one day "safe harbor" provision to Rule 11 and reads as follows:

> (2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. Rule 11(c)(1). The safe harbor provision is "a strict procedural requirement" to the enforcement of Rule 11. *Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d. 170, 175 (2d. Cir. 2012).

"[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock," and informal warnings or letters are insufficient to trigger proper notice. *Gal v. Viacom Int'l., Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005).

WWE first served Kyros with a Rule 11 motion in the *Haynes* action (the "*Haynes* Motion") on July 17, 2015, while that action was still pending in the District of Oregon.  After some, but not all, of the allegations that gave rise to the *Haynes* Motion were removed following a pre-filing conference, the parties agreed to delay WWE's filing of a Rule 11 motion until WWE's motion to dismiss the *Haynes* case in its entirety was decided.  It is undisputed that after Kyros caused the *James* action to be filed in Texas, WWE filed the instant Rule 11 Motion without serving it on Kyros and co-counsel for the purposes of satisfying the 21 day safe harbor period.  Kyros thus argues that "WWE has failed to properly serve Plaintiffs' Counsel with the as filed Motion for Sanctions" and therefore "the safe harbor period has not yet begun to run and this Motion should be denied."  [Pls.' Opp. at 10].

WWE responds that "the motion served by WWE fully disclosed the grounds for the motion filed by WWE, which WWE argues "merely added some procedural history."  [Def.'s Rep. at 1, n. 2].  WWE cites no authority for the proposition that a substantially similar Rule 11 motion, identifying the allegedly improper conduct at issue, but served in a case pending in the District of Oregon and bearing the Oregon case caption, with at least some noticeable changes to text, can satisfy Rule 11's safe harbor provision with respect to another Rule 11

motion filed in a separate case pending in the Northern District of Texas.  On the contrary, prior courts have strictly enforced Rule 11's safe harbor provision even where the allegedly offending party was served with a substantially similar motion putting that party on notice of the conduct at issue.  *See, e.g.*, *Intravaia v. Rocky Point Union Free School Dist.*, 2014 U.S. Dist. LEXIS 176235, at *9 (E.D.N.Y. Dec. 22, 2014) (holding that Rule 11 motion that was not prepared as a separate motion did not satisfy Rule 11's safe harbor provision even if it was served more than 21 days prior to the filing of a separate motion for sanctions and put counsel on notice of the improper conduct alleged).

Even if the Court were inclined to overlook the failure to serve an exact copy of the instant Rule 11 motion, the Court finds that such relief is not warranted on the grounds presented.  "'[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate.'"  *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995) (quoting *Sanko Steamship Co. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987)).  However, "courts may issue Rule 11 sanctions only in extraordinary circumstances," and they should "always be a (very) last resort." *Jackson v. Connecticut Dep't of Pub. Health*, No. 3:15-CV-750 (CSH), 2016 WL 1531431, at *4 (D. Conn. Apr. 15, 2016) (citations omitted).  Sanctionable conduct is, therefore, often willful and the product of bad faith.  *Id.* (denying motion for sanctions where "no facts suggest [party] acted in bath faith" and party's "behavior fails to indicate the willful misconduct implicated by Rule 11.")  The Court observes that there often exists a fine line between bad faith, willful misconduct and overly zealous advocacy.  At this stage of the litigation, it is

difficult to determine on which side of the divide Kyros' actions fall.  WWE
presents five grounds for the imposition of Rule 11 sanctions, each of which
provide examples of Kyros' habit of deceptive and inflammatory rhetoric in
Plaintiffs' filings throughout these consolidated wrestling cases.  However, none
of the five grounds presented merit further use of judicial resources for the
purpose of imposing a sanction.

First, WWE argues that Kyros misled the Court by alleging that Osborne
wrestled for WWE "beginning in 1985 and ending in 2007" as part of "an
approximately twenty-two year career and until his untimely death."  [JAC ¶ 2].
WWE argues that Osborne only performed for WWE from 1985-86 and from
October 1992 to October 1993.  Osborne did not wrestle again for WWE until a
one-time appearance, literally for a few minutes, at a special anniversary show in
2007."  [Def.'s Mem. at 27].  Kyros' allegation of a twenty two-year career is
deceptive and misleading – it suggests that Osborne wrestled for WWE for
twenty-two years as opposed to approximately two years.  At best, the statement
is a half-truth, in that Osborne likely wrestled for other employers and events not
sponsored by WWE between 1993 and 2007.  As discussed above, however, the
length of Osborne's career does not impact the Court's determination that the
wrongful death claim asserted by Michelle James must be dismissed.  Kyros'
half-truths undermine his credibility and the credibility of the filings submitted by
Plaintiffs' counsel.  However, the Court does not deem this particular allegation
worthy of sanction because the duration of his career is superfluous—it is a
collateral matter not probative of his claim.

WWE next argues that Kyros misled the Court with respect to the allegation that WWE executive Stephanie McMahon concealed the concussion risks involved in WWE wrestling in testimony before Congress.  [JAC ¶¶ 59, 64-65].  In its March 22 Opinion, the Court examined this allegation and found it to be without merit, rebuking Kyros for "repeatedly misrepresent[ing] the substance and meaning of [McMahon's] testimony."  [Op. at 58].   WWE also argues that Kyros misled the Court with respect to his allegation that WWE "attempted to discredit" studies linking the deaths of two former NFL players with CTE.  [JAC ¶¶ 70-73].  At the time of 2005 comments made by Dr. Joseph Maroon regarding these studies, Dr. Maroon was not in the employ of WWE.  Nonetheless, Kyros goes on to allege that WWE "responded" to the studies on ESPN, quoting a WWE statement contained in a ESPN article published in 2009, four years later.  [JAC ¶ 73].  Once again, Kyros' deliberately misleading language suggesting that WWE directly contested a specific CTE study in 2005 further undermines his and Plaintiffs' credibility, but does not merit the imposition of sanctions.

WWE argues that Kyros "instituted this case in violation of the valid, enforceable mandatory forum-selection clause that Osborne agreed" in his 1992 contract with WWE.   WWE cites to several cases in which prior courts have sanctioned attorneys under Rule 11 for patently frivolous filings in jurisdictions other than those named in presumptively valid forum-selection clauses.  *See, e.g.*, *Smith v. Martin*, 02-1624, 2004 WL 5577682 at *4 (D.D.C. Jan. 28, 2004) (imposing Rule 11 sanctions for "patently frivolous" claims that were barred by forum-selection and arbitration clauses); *Freeman v. Bianco*, 02 Civ. 7525, 2003

WL 179777 at *5-6 (S.D.N.Y. Jan. 24, 2003) (holding complaint filed in violation of presumptively valid choice of forum clause violated Rule 11); *Jayhawk Investments, L.P. v. Jet USA Airlines, Inc.*, 98-2153, 1999 WL 588195 at *1 (D. Kan. June 8, 1999) (imposing sanctions under Rule 11 where Plaintiffs filed suit in Kansas despite a presumptively valid forum- selection clause mandating filing in New York).

It is clear that Kyros filed the *James* action in Texas as part of a vexatious and transparent attempt to circumvent two prior decisions by district courts in Oregon and California either enforcing the forum-selection clauses or nonetheless transferring WWE concussion litigation to this district.  Kyros and co-counsel apparently believed that they could convince a district court that because the *James* action was a wrongful death action filed by a survivor of the wrestler-decedent who, obviously, never signed their own contract with WWE, the claims alleged in *James* were "extra-contractual."  [Dkt. 22 at 1].  Kyros was wrong; Plaintiffs' argument was not convincing, and the *James* action was transferred to this district.

Ten months later, in July of 2016, Kyros filed a new action on behalf of fifty named wrestlers against WWE in the District of Connecticut.  It therefore appears that Kyros and co-counsel have finally given up on their obvious and unsupportable attempts to circumvent the jurisdiction of this Court.  Although Plaintiffs' forum-shopping has forced multiple district courts to exert needless effort to corral these cases to the proper forum, sanctions are not needed at this time to prevent Plaintiffs from venturing into vexatious forum shopping with

respect to future claims against WWE.  The Court is open to reconsidering this finding at a later date should Kyros revert to prior bad habits.

Finally, WWE notes that, contrary to this Court's instructions at the June 8 status conference, Kyros and co-counsel declined to remove numerous paragraphs from the Amended Complaint that bear little to no relevance to the Osborne's death.  In particular, WWE points to "thirty-nine separate paragraphs of allegations and color pictures" depicting former performers who have died but which have no relevance or connection to the place, time or events surrounding Osborne's death.  One such paragraph describes the death of a former wrestler, Owen Hart, during a wrestling stunt that went awry in 1999.  Plaintiffs have not provided any explanation for how Hart's death relates to Osborne's or to CTE or concussions generally.  To the extent such pictures and specific prior injuries sustained by other wrestlers are included to offer visual evidence that wrestling involves violent contact and risk of injury, they are unnecessary and unduly inflammatory.

Baseless claims that are included in a complaint as part of a media campaign to pressure the defendant with negative public relations have been found to evidence bad faith and improper purpose on the part of filing counsel. *See Galonsky v. Williams*, 96 CIV. 6207, 1997 WL 759445 at *6 (S.D.N.Y. Dec. 10, 1997) (noting "baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement")*.*  And at least one other district court has sanctioned counsel for the deliberate inclusion of inflammatory content in a pleading after receiving a prior warning against doing

so.  *See Marceaux v. Lafayette City-Parish Consol. Gov't*, Nos. 14-31043, 14-31213, 2015 WL 3544648, at *1-3 (5th Cir. 2015) (affirming imposition of Rule 11 sanctions where counsel because asserted in an amended complaint "the same impertinent, immaterial, and scandalous allegations . . . which they had been warned" by the district court not to include).

The Court would be well within its broad discretion to sanction counsel for their failure to adhere to the Court's instructions and trim the inflammatory content and unnecessary length of the carbon-copy complaints in these consolidated cases.  Their failure to do so forced the Court to needlessly expend resources combing through hundreds of paragraphs of allegations, to find a single shred of relevant factual content indicating whether Plaintiffs asserted a plausible claim.  In doing so, however, the Plaintiffs only further underlined for the Court the lack of substantive factual content actually contained in these complaints.  Although it is perhaps a close question, the Court finds that no Rule 11 sanction is merited for counsel's disregard of the Court's comments at the June 8 conference.

Kyros' false and misleading statements, identified by WWE above, together with other statements the Court has examined – including  Kyros' unprovable claim that deceased and, in at least one case, cremated former wrestlers had CTE "upon information and belief" – are highly unprofessional.  These misleading, deceptive, and baseless allegations are precisely the types of statements that many state bar associations have targeted in promulgating rules of professional conduct which demand that admitted attorneys speak with candor to the trier of

fact.  The Court admonishes Kyros and his co-counsel to adhere to the standards of professional conduct and to applicable rules and court orders lest they risk future sanction or referral to the Disciplinary Committee of this Court.

## V.    Conclusion

For the reasons stated above, WWE's motions to dismiss [Dkt. 103, Dkt. 104] are GRANTED and the *Frazier* [3:15-cv-1229] and *James* [3:15-cv-1305] actions are DISMISSED.  WWE's Motion for Sanctions [Dkt. 80] is DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  November 10, 2016

28