## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RUSS MCCULLOUGH, et al.　　　　　:
　　　Plaintiffs,　　　　　　　　:　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　:　　3:15-CV-1074 (VLB)
v.　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:　　LEAD CASE
WORLD WRESTLING　　　　　　　:
ENTERTAINMENT, INC.,　　　　　:
　　　Defendant.　　　　　　　　:
_____

WORLD WRESTLING　　　　　　　:
ENTERTAINMENT, INC.,　　　　　:
　　　Plaintiff,　　　　　　　　:　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　:　　3:15-CV-994 (VLB)
v.　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:　　CONSOLIDATED CASE
ROBERT WINDHAM, THOMAS　　:
BILLINGTON, JAMES WARE, and　:
OREAL PERRAS,　　　　　　　　:
　　　Defendants.　　　　　　　:

JOSEPH M. LAURINAITIS, et al.,　　:
　　　Plaintiffs,　　　　　　　　:　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　:　　3:16-CV-1209 (VLB)
v.　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:　　CONSOLIDATED CASE
WORLD WRESTLING　　　　　　　:
ENTERTAINMENT, INC. and　　　:　　September 29, 2017
VINCENT K. MCMAHON　　　　　:
　　　Defendants.　　　　　　　:


### ORDER REGARDING WWE'S MOTION FOR JUDGMENT ON THE PLEADINGS [DKT. NO. 205] AND WWE AND VINCENT K. MCMAHON'S MOTIONS TO DISMISS AND FOR SANCTIONS [DKT. NOS. 262, 266, 269]

I.　　**Introduction**

Declaratory Judgment Plaintiff World Wrestling Entertainment, Inc.,

("WWE"), brings an action for declaratory judgment ("DJ") against DJ Defendants

Robert Windham, Thomas Billington, James Ware, and Oreal Perras (the "*Windham* Defendants"). WWE has moved for judgment on the pleadings on the grounds that the *Windham* Defendants' tort claims are time-barred under applicable statutes of limitation and repose.

Additionally, Defendants in the *Laurinaitis* action, WWE and Vincent McMahon, have moved to dismiss the claims of the numerous wrestlers in a sixth consolidated case before the Court. Plaintiffs in this action (the "*Laurinaitis* Plaintiffs") have filed a nineteen count complaint that spans 335 pages and includes 805 paragraphs. WWE and McMahon have moved to dismiss this complaint arguing, *inter alia*, that the complaint is rife with inaccurate allegations and frivolous claims, and should be dismissed both on its merits and as a sanction for failing to comply with Federal Rule of Civil Procedure 11.

For the reasons set forth below, the Court reserves judgment on these motions pending the filing of amended pleadings consistent with this Order.

## II.  Background

### A.  *Windham* Action Facts

WWE brought a DJ action against Robert Windham and three other wrestlers in this Court on June 29, 2015, after having first been sued over a period of months in five separate actions, three of which were class actions, in five different venues (the "Prior Actions"). On June 2, 2015, the *Windham* Defendants' counsel sent WWE "Notice of Representation" letters on behalf of each wrestler to WWE's corporate headquarters in Stamford, Connecticut. [Compl. ¶ 72]. The letters stated that "the undersigned have been retained by [DJ

Defendants Windham, Billington, Ware, or Perras], a former WWE wrestler . . . who was allegedly injured as a result of WWE's negligent and fraudulent conduct." *Id.* ¶ 73. The letters went on to state that "in light of the possible litigation involving this matter," WWE should refrain from communicating directly with the *Windham* Defendants and should preserve relevant data. *Id.* ¶ 73. The *Windham* Defendants do not deny these allegations. [Answer ¶¶ 72-73].

Three of the *Windham* Defendants are former-professional wrestlers who previously performed for WWE. [Compl. ¶ 5]. Specifically, DJ Defendant Windham last performed for WWE in or around 1986; DJ Defendant Billington last performed for WWE in or around 1988; and DJ Defendant Ware last performed for WWE in or around 1999. *Id.* ¶ 5. The *Windham* Defendants do not deny WWE's allegations setting the timeframes in which each DJ Wrestler performed. [*See* Answer ¶¶ 5, 16-19]. DJ Defendant Perras last performed for an entity known as Capitol Wrestling Corporation. [Compl. ¶ 5]. While the *Windham* Defendants deny that Perras "last performed for an entity other than WWE and its predecessors, they offer no factual basis for this denial. [Answer ¶ 5]. The specifically named *Windham* Defendants had not complained to WWE regarding any alleged injuries in the decades since they last performed until the June 2, 2015 letters. [Compl. ¶ 74].

The *Windham* Defendants do not allege that the WWE knew of the possibility that repeated head trauma could cause permanent neurological injury while the wrestlers were performing, but fraudulently failed to inform them of this danger. Moreover, even though the *Windham* Defendants are represented by the

3

same attorneys who represent the plaintiff wrestlers six other actions, and even though all six actions (seven including the *Windham* action) have been consolidated, the *Windham* Defendants repeatedly deny that they have sufficient information regarding the other wrestlers' claims to respond to WWE's allegations.

WWE moves for judgment on the pleadings arguing that the *Windham* Defendants' claims are barred by Connecticut's statutes of limitation and repose. The *Windham* Defendants counter that additional discovery is necessary before the Court can choose to apply Connecticut law, and before the Court can determine whether the statutes of limitation and repose have been tolled.

### B. *Windham* and *Laurinaitis* Procedural History

The *Laurinaitis* action is one of six separate lawsuits against WWE filed on behalf of former professional wrestlers asserting claims that they have sustained traumatic brain injuries. The parties dispute the extent to which each of the lawsuits was "filed or caused to be filed" by Attorney Konstantine Kyros, though the verbose and inflammatory complaints in each of the first five cases are virtually identical. Five of these lawsuits were filed in different districts in an effort to avoid adjudication before this Court. The *Laurinitis* action was filed in this district but upon assignment to Judge Eginton, the *Laurinitis* Plaintiffs attempted to prevent the case from being transferred to this Court. All six cases were transferred to this Court and consolidated to prevent courts in different districts, and judges within this district, from coming to disparate conclusions regarding common questions of law and fact, particularly in light of the fact that

the lead case in this matter, which has now been dismissed, purported to be a class action. Common facts and issues include (1) the extent of WWE's knowledge about the consequences of repeated head injuries; and (2) the extent to which this knowledge was concealed from wrestlers.

The Court considered these questions in its March 21, 2016 decision on WWE's motions to dismiss the complaints of plaintiffs Russ McCullough, Ryan Sakoda, Matthew Robert Wiese, William Albert Haynes, III, Vito LoGrasso, and Evan Singleton. It held that the statutes of limitations and repose may be tolled only as to the fraudulent omission claim and only to the extent that the complaint raises questions of fact regarding whether WWE owed a continuing duty to disclose, or fraudulently concealed, information pertaining to a link between WWE wrestling activity and permanent degenerative neurological conditions. [Dkt. No. 116 at 25]. The Court further held that the plaintiffs had "plausibly alleged that WWE knew as early as 2005 about research linking repeated brain trauma with permanent degenerative disorders and that such brain trauma and such permanent conditions could result from wrestling." [Dkt. No. 116 at 39]. The Court then dismissed the claims of McCullough, Sakoda, Wiese, and Haynes on the grounds that they did not allege that they wrestled for WWE on or after 2005. [Dkt. No. 116 at 68].

Concurrently, the *Windham* Defendants filed a motion to dismiss the instant DJ action. In their motion, the *Windham* Defendants argued that the Court lacked subject matter jurisdiction to issue a declaratory judgment, because the anticipated lawsuits that WWE identified were too remote and speculative to

create a justiciable case or controversy. The Court granted the *Windham* Defendants' motion to dismiss on the grounds that it had denied WWE's motion to dismiss LoGrasso's complaint.

WWE filed a motion for reconsideration of this dismissal, arguing in part that the Court erred when it presumed that the tolling doctrines which permitted LoGrasso's suit to move forward also applied to the declaratory judgment action. In particular, WWE argued:

> "The Court's conclusion that Plaintiff LoGrasso plausibly alleged a basis for tolling under the continuing course of conduct and fraudulent concealment exceptions was based on his allegations that WWE knew of information concerning a link between repeated head trauma and permanent neurological conditions *in 2005 or later*. By 2005, all of the tort claims threatened by the named Defendants in the *Windham* action would have been foreclosed for years because none of them had performed for WWE *since at least 1999*."

[Dkt. No. 119-1 at 15 (citations omitted)]. The Court granted WWE's motion for reconsideration in part, holding that a case or controversy existed with respect to the named DJ defendants, and holding that the application of Connecticut procedural law was appropriate given that several related cases were already pending in Connecticut, and that even if the *Windham* Defendants filed their cases in different districts, they would likely be transferred to Connecticut. [Dkt. No. 185 at 39-42]. The Court did not decide whether tolling the statutes of limitation or repose would be appropriate as to the *Windham* Defendants.

The Court's March 21, 2016 decision also criticized the wrestlers' counsel Konstantine Kyros for filing "excessively lengthy" complaints that included "large numbers of paragraphs that offer content unrelated to the Plaintiffs' causes of action" and which "appear aimed at an audience other than this Court."

6

[Dkt. No. 116 at 13]. This was not the first time that the Court admonished Kyros for his failure to comply with the pleading standard set forth in the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). For example, at a June 8, 2015 scheduling conference in the *Singleton* action, the Court told Kyros that the complaint was neither concise nor accurate, as it contained language copied from other lawsuits filed by other attorneys on behalf of athletes who played other sports, and that it included "superfluous, hyperbolic, inflammatory opinions and references to things that don't have any relevance," [Dkt. No. 263-2 at 60]. The Court further instructed Kyros to "read the federal rule, give it some close consideration, perhaps read some cases on the pleading standards" before filing an amended complaint. *Id.*

In spite of these instructions, Kyros has now filed a 335 page complaint with 805 paragraphs that includes numerous allegations that a reasonable attorney would know are inaccurate, irrelevant, or frivolous. *See, e.g.*, Dkt. No. 252 ¶¶ 51 (referencing a study published in October 2015 despite the fact that none of the *Laurinaitis* Plaintiffs were still performing at that time), 108 (noting that WWE instructed a female wrestler not to report a sexual assault she endured while on a WWE tour despite the fact that this has no relevance to her claims about neurological injuries or the enforceability of her booking contract), 130 (noting that WWE is a monopoly that earns $500 million annually), 157 (quoting general observations from the book of a wrestler who is not a party to this lawsuit), 159-161 (noting that the WWE does not provide wrestlers with health

insurance), 289-93 (describing a fictional storyline in which a doctor claimed on television that a wrestler who is not a *Laurinaitis* Plaintiff suffered a serious concussion, when in fact he "did not have post concussion syndrome" and the storyline was intended only to "create dramatic impact for the fans"), 302 (stating that "100% of the four wrestlers studied to date" showed signs of chronic traumatic encephalopathy ("CTE") when a publicly available study published by Bennet Omalu, a neuropatholgist mentioned elsewhere in the complaint, stated that he examined the brains of four wrestlers and founds signs of CTE in only two of them and therefore Plaintiffs knew that only 50% of a statistically insignificant number of former wrestlers were found to have had CTE). Additionally, while the Complaint devotes one long paragraph to each plaintiff, it does not specify which claims apply to which plaintiffs or how or why they do.

## III.  Legal Standard

### A.  Motion for Judgment on the Pleadings

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings is decided on the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Barnett v. CT Light & Power Co.*, 900 F. Supp. 2d 224, 235 (D. Conn. 2012) (citing *Hayden v. Paterson*, 594 F.3d 150, 159 (2d Cir. 2010)).

### B.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusion' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider documents of which the Plaintiffs had knowledge and relied upon in bringing suit, *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), so long as these documents are "integral" to the complaint and the record is clear that no dispute exists regarding the documents' authenticity or accuracy, *Faulkner v. Beer*, 463 F.3d 130, 133-35 (2d Cir. 2006). Due to the related claims in the consolidated cases, and the fact that the same counsel was involved in the

filing of each consolidated case, the allegations put forward in the consolidated cases, as well as information uncovered during discovery in those cases, is relevant to the Court's decision in the DJ action and on WWE's and McMahon's motions to dismiss.

**C.** <u>Motion for Sanctions</u>

Federal Rule of Civil Procedure 11 states that "an attorney who presents 'a pleading, written motion, or other paper' to the court thereby 'certifies' that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is (1) not presented for any improper purpose, 'such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation'; (2) 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and (3) supported in facts known or *likely* to be discovered on further investigation." *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) (emphasis added) (quoting Fed. R. Civ. P. 11(b)). "If . . . the court determines that **Rule 11(b)** has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995) (quoting *Sanko Steamship Co., Ltd. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987)). However, "Rule 11 sanctions should be imposed with caution," *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994), and "district courts [must] resolve all doubts in favor of the signer," *Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir. 1993).

"**[N]ot all unsuccessful arguments are frivolous or warrant sanction,**" and "**to constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.**" *See Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir. 1990). With regard to factual contentions, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (quoting *O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir. 1996)). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quoting *Storey*, 347 F.3d at 388). This objective standard is "intended to eliminate any 'empty-head pure-heart' justification" for patently unsupported factual assertions or frivolous arguments. *See Hochstadt v. New York State Educ. Dep't*, 547 F. App'x 9, 11 (2d Cir. 2013) (quoting *Gurary v. Winehouse*, 235 F.3d 792, 797 (2d Cir. 2000)).

## IV. Discussion

### A. DJ Choice of Law

The Court applies Connecticut procedural law for the reasons set forth in its decision on WWE's motion for reconsideration of the Court's order dismissing the *Windham* action. [*See* Dkt. No. 185 at 38-40].

In addition to the arguments addressed in that decision, the *Windham* Defendants maintain that "[i]t is impossible for the Court to make a substantive determination as a matter of law without knowing whether booking contracts

exist for these named wrestlers, whether the purported contracts contain forum selection clauses or choice of law provisions, and whether WWE has engaged in any conduct that would toll the Connecticut statutes of limitation and repose were Connecticut law to apply." [Dkt. No. 217 at 8].

While WWE argues that any booking contracts that exist have Connecticut choice of law clauses, the choice of Connecticut procedural law does not depend on the existence of such clauses. "Connecticut courts consider a statute of limitation to be procedural, and therefore, Connecticut federal courts apply Connecticut's statute of limitation to common law diversity actions commenced in Connecticut district court." *State Farm Fire & Cas. Co. v. Omega Flex, Inc.*, No. 14CV1456 (WWE), 2015 WL 6453084, at *2 (D. Conn. Oct. 21, 2015) (citing *Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 353 (D. Conn. 2013)). The *Windham* Defendants cannot in good faith assert that any booking contracts relevant to this case would require that the procedural law of any state other than Connecticut should apply. They similarly offer no legal authority stating that the Court may not decide which state's procedural law should apply before contracts mentioned in a pleading are produced. Because in the absence of any contract, Connecticut procedural law applies, and because the *Windham* Defendants cannot deny that any contracts which do exist choose Connecticut law, the Connecticut statutes of limitation and repose must apply.

B. <u>Applicability of Connecticut's Statutes of Limitation and Repose</u>

Section 52-584 of the Connecticut General Statutes bars a plaintiff from bringing a negligence claim "more than three years from the date of the act or

omission complained of." Conn. Gen. Stat. § 52-584. "[T]he relevant date of the act or omission complained of, as that phrase is used in § 52-584, is the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage." *Martinelli v. Fusi*, 290 Conn. 347, 354 (2009). Therefore, any action commenced more than three years from the date of the negligent act or omission is barred by Section 52-584, "regardless of whether the plaintiff could not reasonably have discovered the nature of the injuries within that time period." *Id.* (internal quotation marks omitted).

Similarly, Section 52-577 allows a tort action to be brought within three years "from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. And, as with Section 52-584, operation of Section 52-577 cannot be delayed until the cause of action has accrued, "which may on occasion bar an action even before the cause of action accrues." *Prokolkin v. Gen. Motors Corp.*, 170 Conn. 289, 297 (1976). Thus, even if the *Windham* Defendants did not discover the actionable harm alleged until recently, their claims may still be barred by the operation of the statutes of repose.

Nonetheless, the Connecticut Supreme Court has recognized that Section 52-584 "may be tolled under the continuing course of conduct doctrine." *Neuhaus v. DeCholnoky*, 280 Conn. 190, 201 (2006). In addition, Conn. Gen. Stat. § 52-595 tolls any statute of limitations or repose, including Section 52-584 and Section 52-577, if a defendant fraudulently conceals a cause of action from a plaintiff. *See Connell v. Colwell*, 214 Conn. 242, 245 n.4 (1990) (concluding that "the exception contained in § 52-595 constitutes a clear and unambiguous

general exception to any Connecticut statute of limitations that does not specifically preclude its application.").

The Connecticut statutes of repose may be tolled under the continuing course of conduct doctrine if the defendant: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the original wrong; and (3) continually breached that duty." *Witt v. St. Vincent's Med. Ctr.*, 252 Conn. 363, 370 (2000). Where Connecticut courts have found a duty "continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 435 (2013).

This Court considered the applicability of Sections 584 and 577 as they applied to consolidated case plaintiffs Singleton, LoGrasso, McCullough, Haynes, Sakoda, and Wiese. The Court held:

> [T]he complaints plausibly allege the existence of a continuing course of conduct that may toll the statutes of repose on the basis of an initial concern about possible long-term effects of head injuries sustained while wrestling that was ongoing and never eliminated. The Court also finds the possible existence of a special relationship based on the complaints' allegations of WWE's superior knowledge as well as later wrongful conduct related to the initial failure to disclose. Thus, the statutes of repose may tolled by virtue of a continuing duty.

[Dkt. No. 116 at 42].

The Court also held that the statutes of repose could be tolled because of alleged fraudulent concealment pursuant to Section 52-595, which provides that "[i]f any person, liable to an action by another, fraudulently conceals from him the

14

existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." In order to rely on Section 52-595 to toll the statutes of limitations and repose, a plaintiff must demonstrate that "the defendant: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the cause of action, (2) intentionally concealed those facts from the plaintiff and (3) concealed those facts for the purpose of obtaining delay on the part of the plaintiff in filing a cause of action against the defendant." *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105 (2007). The Court held that the complaint alleged that in 2005 or later, WWE became aware of and failed to disclose to its wrestlers information concerning a link between repeated head trauma and permanent degenerative neurological conditions, as well as specialized knowledge concerning the possibility that its wrestlers could be exposed to a greater risk for such conditions.

The Court ultimately dismissed all negligence claims to which either exception to the statutes of limitation or repose would apply, on the grounds that the WWE could only be held liable for reckless and intentional conduct, and not ordinary negligence. [Dkt. No. 116 at 53-54]. The Court also dismissed the negligent misrepresentation and fraudulent deceit claims on the grounds that the plaintiffs failed to plead specific facts indicating that WWE made any specific statement that it knew or should have known to be false at the time, upon which plaintiffs reasonably relied. [Dkt. No. 116 at 61]. As the *Windham* Defendants have not alleged facts to support a claim of reckless and intentional conduct or

constituting false representations on which the *Windham* Defendants may have relied, the Court considers only whether the *Windham* Defendants' claims for fraudulent omission are time barred.

In the instant case, the *Windham* Defendants argue that they are not required to put forward facts sufficient to show that the statutes of repose should be tolled in their responsive pleading. Specifically, they argue that discovery is required before they can identify any of the WWE's fraudulent omissions and whether they occurred while the *Windham* Defendants were still performing for WWE. The *Windham* Defendants are incorrect. Pursuant to Rule 11, by filing the DJ answer, Attorney Kyros certified that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the pleading was supported in facts known or facts *likely* to be discovered on further investigation.

A pleading cannot be filed without any factual support on vague hopes that discovery will possibly unearth helpful facts, and the DJ answer does not articulate any facts suggesting that discovery will uncover of facts which would support the defenses asserted. The Court cannot consider WWE's motion for judgment on the pleadings in a vacuum; the Court must consider the motion in the context of the sufficiency of the allegations of the complaints in all of the consolidated cases. In that regard, counsel for the *Windham* Defendants has been involved in the filing of six separate actions, some of which named plaintiff wrestlers who had ceased performing for WWE well before 2005. Despite being hundreds of pages long, in none of the complaints filed before Defendants filed the DJ action did the wrestlers' counsel plausibly allege that before 2005, WWE

knew of a link between repeated head trauma and permanent degenerative neurological conditions and fraudulently failed to disclose this link to its performers.  Nor do the *Windham* Defendants.

By order entered nearly two years ago dated January 15, 2016, the Court lifted the discovery stay and directed the parties to conduct discovery on the questions of (1) whether WWE had or should have had knowledge of, and owed a duty to disclose the risks of, long-term degenerative neurological conditions resulting from concussions or mild traumatic brain injuries to wrestlers who performed for WWE in the year 2005 or later, (2) whether and when WWE may have breached that duty, and (3) whether such a breach, if any, continued after Singleton, who wrestled for WWE from 2012 to 2013, and LoGrasso, who retired in 2006, ceased performing for WWE.  [Dkt. No. 107].  The Court also ordered the parties to file dispositive motions on the issue of liability by August 1, 2016.  [Dkt. No. 107].  Thereafter, on March 21, 2016, the Court granted in part WWE's motion to dismiss explaining the legal standard for a continuing duty to warn, fraudulent concealment, fraud by omission, contact sports exception, negligent misrepresentation, and tolling the statutes of limitations and repose.

Notwithstanding having had the opportunity to conduct discovery on the issue of liability, and in particular if and when WWE became aware of a wrestler's risk of contracting CTE, having filed lengthy complaints asserting innumerable facts in the consolidate cases, and having the benefit of the court's explication on the applicable legal standards, the *Windham* Defendants have not moved to amend their DJ answer to assert facts sufficient to support a defense that the

statutes of limitation and repose should be tolled.  Nor have they stated with any specificity what additional discovery they need to do so.  While discovery was limited to the period which post-dated the time the *Windham* Defendants ceased to wrestle for WWE, it is reasonable to conclude that if WWE did not know after 2005 that concussions or mild traumatic brain injuries sustained by wrestlers caused long-term degenerative neurological conditions, they would not have known it before 2005.[1]  Indeed in a separate lawsuit asserting the same claims, summary judgment is fully briefed following completion of discovery, and the 56(a)(2) statement filed by plaintiffs' counsel is devoid of any admissible evidence that a particular agent of WWE knew before 2005 that wrestling could cause a long-term degenerative neurological condition.

With respect to jurisdiction and venue, the Wrestlers are in possession of all of the information they would need to deny that they have not performed with WWE since 1999.  They presumably have their contracts, tax statements and tax returns, and other records and documentation of their own activity.  A party is not entitled to information from an opposing party if he already has it.  *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to non-privileged, relevant, information that is "proportional to the needs of the case, considering . . . the parties' relative access to relevant information."); *Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2016 WL 7340282, at *5 (D. Conn. Dec. 19, 2016) (denying a motion to compel where the discovery sought was "equally available to both parties.").  The

---

[1] While the *Laurinaitis* complaint appears to assert that WWE knew before 2005 of the risks of repeated head trauma, for the reasons discussed in Section V., *infra*, the Court defers judgment on whether such allegations are legally sufficient to permit the cases of wrestlers who retired before 2005 to proceed.

*Windham* Defendants have asserted no facts establishing that they are entitled to discovery from WWE on this issue.

Because (1) the Court has already thoroughly evaluated the issues presented in the consolidated cases, determining that the claims of wrestlers who had stopped performing for WWE prior to 2005 are barred; (2) the *Windham* Defendants have not offered any indication in their answer to WWE's declaratory judgment complaint that their anticipated claims would deviate from the claims asserted by the plaintiffs in the earlier consolidated cases; and (3) because additional discovery would be wasteful and unnecessary, the Court is inclined to grant WWE's Motion for Judgment on the Pleadings. However, in an abundance of deference to the *Windham* Defendants, the Court reserves judgment on the motion pending submission of an amended answer consistent with this order.

### C. *Laurinaitis* Complaint

Despite repeatedly requesting that plaintiffs' counsel exclude irrelevant allegations and ensure that each claim in each consolidated case had a reasonable factual and legal basis, this Court has, in an abundance of deference to the wrestler plaintiffs and to the detriment of WWE, applied a liberal pleading standard more suited to a *pro se* plaintiff than to a licensed attorney asserting claims on behalf of an entire class. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). While the *Laurinaitis* complaint is, mercifully, not a carbon copy of the complaint filed in the first five consolidated

cases, it remains unnecessarily and extremely long, with an overwhelming number of irrelevant allegations. Parsing each of the *Laurinaitis* Plaintiffs' asserted claims to figure out exactly which claims might be legally and factually supportable would be both a waste of judicial resources. It would also be unduly prejudicial to the WWE and McMahon, because the precise contours of the *Laurinaitis* Plaintiffs' claims are so amorphous that the WWE and McMahon would be at a loss to determine how to defend against them.

## V. Conclusion

In the interests of justice, fairness to WWE and McMahon, the efficient and effective management of the Court's docket, in an abundance of deference to the *Windham* Defendants and *Laurinaitis* Plaintiffs in their heretofore unsuccessful efforts to file pleadings in conformity with the Federal Rules of Civil Procedure, and finally, to assure disposition of this case on the merits, it is hereby ordered that within 35 days of the date of this Order, the *Windham* Defendants and *Laurinaitis* Plaintiffs shall file amended pleadings which comply with Federal Rules of Civil Procedure 8 and 9 and which set forth the factual basis of their claims or defenses clearly and concisely in separately numbered paragraphs. Also within 35 days of the date of this Order, each of the *Windham* Defendants and *Laurinaitis* Plaintiffs shall submit for *in camera* review affidavits signed and sworn under penalty of perjury, setting forth facts within each plaintiff's or DJ defendant's personal knowledge that form the factual basis of their claim or defense, including without limitation:

1. the date or dates on which they wrestled for WWE or any or its agents or affiliates (including the first and last date);

2. if they wrestled for more than one person and or entity, for whom they wrestled, and for what period of time;

3. whether they ever signed any agreement or other document in connection with their engagement to wrestle by or for WWE or any of its agents or affiliates;

4. whether they were ever or are now in possession of any document relating to their engagement to wrestle by or for WWE or any of its agents or affiliates, including without limitation W-4s, W-2s or 1099s; and

5. what specific WWE employees or agents said or did that forms the basis of each and every one of the claims or defenses in the wrestler's pleading, including:

   a. a reference to the specific paragraph of the complaint;

   b. when and where such act occurred or such statement was made;

   c. the identities of any and all the persons present at the time of the act or statement; and

   d. any and all other facts personally known to the affiant that form the basis of their belief that WWE or any or its agents or affiliates knew or should have known that wrestling caused any traumatic brain injuries, including CTE.

The Court assumes that Attorney Kyros had a good faith belief that the allegations in the *Laurinaitis* complaint and *Windham* answer were true based on interviews with his clients, in which each revealed information about his or her relationship with WWE.  Counsel should therefore have no difficulty producing these affidavits within 35 days.

   If the *Windham* Defendants or *Laurinaitis* Plaintiffs fail to comply with the Court's order, as set forth in the preceding paragraphs, and for the foregoing reasons:  (1) WWE's Motion for Judgment on the Pleadings will be GRANTED, and declaratory judgment as to the fraudulent omission claim will be entered in favor of WWE; (2) the *Laurinaitis* complaint will be DISMISSED with prejudice pursuant to Federal Rule of Civil Procedure 41(b); and (3) pursuant to Rule 11(c)(3), the Court will *sua sponte* revisit whether to award attorney's fees as a sanction on the *Laurinaitis* Plaintiffs' counsel.


                    IT IS SO ORDERED.

                    _____/s/_____
                    Hon. Vanessa L. Bryant
                    United States District Judge


Dated at Hartford, Connecticut: September 29, 2017