## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH, *et al.*,** | : **NO. 3:15-cv-01074-VLB** |
| | : **LEAD CASE** |
| **Plaintiffs,** | : |
| | : |
| **vs.** | : |
| | : |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : |
| | : |
| **Defendant.** | : |

| | |
|---|---|
| **JOSEPH M. LAURINAITIS, *et al.*,** | : **NO. 3:16-CV-01209-VLB** |
| | : **CONSOLIDATED CASE** |
| **Plaintiffs,** | : |
| | : |
| **vs.** | : |
| | : |
| **WORLD WRESTLING ENTERTAINMENT, INC., *et al.*,** | : |
| | : |
| **Defendants.** | : **NOVEMBER 17, 2017** |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND REQUEST FOR GUIDANCE AS TO FURTHER BRIEFING ON DEFENDANTS' PENDING MOTIONS TO DISMISS, MOTION FOR JUDGMENT ON THE PLEADINGS, AND MOTION FOR SANCTIONS AND/OR FILING A MOTION FOR INVOLUNTARY DISMISSAL UNDER FED. R. CIV. P. 41(b)**

| | |
|---|---|
| **Jonathan B. Tropp (ct11295)** | **Jerry S. McDevitt (pro hac vice)** |
| **Jeffrey P. Mueller (ct27870)** | **Curtis B. Krasik (pro hac vice)** |
| **DAY PITNEY LLP** | **K&L GATES LLP** |
| **242 Trumbull Street** | **K&L Gates Center** |
| **Hartford, CT 06103** | **210 Sixth Avenue** |
| **Phone: (860) 275-0100** | **Pittsburgh, PA 15222** |
| **Fax: (860) 275-0343** | **Telephone: (412) 355-6500** |
| **Email: jbtropp@daypitney.com** | **Facsimile: (412) 355-6501** |
| **Email: jmueller@daypitney.com** | **Email: jerry.mcdevitt@klgates.com** |
| | **Email: curtis.krasik@klgates.com** |

*Counsel for Defendants*

## I.   INTRODUCTION

On September 29, 2017, the Court issued its Order Regarding WWE's Motion for Judgment on the Pleadings against the *Windham* Defendants and WWE and Vincent K. McMahon's Motions to Dismiss the *Laurinaitis* action on the merits and as a sanction for Rule 11 violations (Doc. 362, the "Order"). Specifically, the Court "reserve[d] judgment on these motions pending the filing of amended pleadings consistent with this Order." *Id.* at 2; *see also id.* at 19 ("[I]n an abundance of deference to the *Windham* Defendants, the Court reserves judgment on the motion pending submission of an amended answer consistent with this order.").

The Court's Order was based on findings that the *Laurinaitis* First Amended Complaint ("FAC") "remains unnecessarily and extremely long, with an overwhelming number of irrelevant allegations.  Parsing each of the *Laurinaitis* Plaintiffs' asserted claims to figure out exactly what claims might be legally and factually supportable would be both a waste of judicial resources [and] . . . unduly prejudicial to the WWE and McMahon, because the precise contours of the *Laurinaitis* Plaintiffs' claims are so amorphous that the WWE and McMahon would be at a loss to determine how to defend against them."  *Id.* at 20.  As to the *Windham* Defendants, the Court noted that it had thoroughly evaluated the issues in the consolidated cases and determined that the claims of wrestlers who had stopped performing prior to 2005 were barred, and that the *Windham* Defendants had not offered any indication that their claims deviate from the claims previously asserted by others which had been dismissed.

As a result, the Court ordered the "*Windham* Defendants and *Laurinaitis* Plaintiffs [to] file amended pleadings which comply with Federal Rules of Civil Procedure 8 and 9 and which set forth the factual basis of their claims . . . clearly and concisely in separately numbered paragraphs." *Id.* at 20.  The Court also ordered each of the "*Windham* Defendants and *Laurinaitis* Plaintiffs [to] submit for in camera review affidavits signed and sworn under penalty of perjury, setting forth facts within each plaintiff's or DJ defendant's personal knowledge that form the factual basis of their claim or defense . . . ." *Id.* at 20.  The Order required detailed affidavits spelling out what specific WWE employees or agents said or did that forms the basis of each and every one of the claims or defenses in the wrestler's pleading, including (a) when and where such act occurred or such statement was made; (b) the identities of any and all persons present at the time of the act or statement; and (c) all facts establishing knowledge by WWE that wrestling caused any traumatic brain injuries, including CTE.  *Id.* at 21.[1]  The affidavits were to include references to the specific paragraphs of the complaint where the required information could be found.

The Court concluded the Order by directing that "[i]f the *Windham* Defendants or *Laurinaitis* Plaintiffs fail to comply with the Court's order, (1) WWE's Motion for Judgment on the Pleadings will be GRANTED, and declaratory

---

[1] Defendants asked Plaintiffs' counsel to advise whether they submitted the affidavits required by the Order and to provide a list of the names of the affiants. Plaintiffs' counsel did not respond to this inquiry.  Defendants, therefore, do not know if there was compliance with this aspect of the Order. Based on the allegations of the second amended complaint ("SAC"), however, it is evident that the affidavits cannot contain references to specific paragraphs of the complaint that set forth the particulars that the Court ordered the *Laurinaitis* Plaintiffs to provide because the SAC does not contain all of the required particulars for each plaintiff.

judgment as to the fraudulent omission claim will be entered in favor of WWE; (2) the *Laurinaitis* complaint will be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b); and (3) pursuant to Rule 11(c)(3), the court will *sua sponte* revisit whether to award attorney's fees as a sanction on the *Laurinaitis* Plaintiffs' counsel." *Id.* at 22.

As understood by Defendants, the Court has reserved judgment on the extensive dismissal arguments previously presented by Defendants until it evaluates whether Plaintiffs' counsel complied with the Court's Order. As further understood by Defendants, if the Court determines that the *Laurinaitis* Plaintiffs did not comply with the Rules and the Court's most recent Order, the Court will dismiss the action pursuant to the authority set forth in Fed. R. Civ. P. 41(b) regarding non-compliance with the Rules and court orders and will take up sanctions on its own initiative under Fed. R. Civ. P. 11(c)(3). Thus, WWE and Mr. McMahon assume that the Court does not wish them to file new or additional briefs until the Court determines whether there has been compliance with the Rules and this Court's Order. If that is not the case, or if Defendants have misunderstood the Court's Order, Defendants stand ready to provide any additional adversarial guidance that the Court may deem appropriate in ascertaining whether there has been compliance with the Rules and the Order or regarding the viability of the SAC, including filing new dismissal briefs on the merits and as a sanction, if desired by the Court at this time.

## II.   ARGUMENT

**A.   The _Laurinaitis_ Plaintiffs Failed to Comply with the Order**[2]

The SAC filed by the _Laurinaitis_ Plaintiffs fails to comply with the Order in multiple respects.  **First**, the SAC provides no explanation of how or why each claim applies to each plaintiff.  **Second**, the SAC fails to allege the particular facts on which every claim for each individual plaintiff is predicated.  **Third**, the SAC remains unnecessarily long with an overwhelming number of allegations that are irrelevant, redundant or inflammatory.  **Fourth**, the SAC fails to comply with Rules 8 and 9 of the Federal Rules, and to set forth the factual basis of Plaintiffs' claims clearly and concisely; instead, it continues to muddle the basis for the claims being asserted on behalf of each plaintiff by asserting, among other things, that "each and every paragraph alleged in each and every Count is intended to be taken as alleged in, and incorporated by reference, in every Count as if restated." (SAC at 3.)  **Fifth**, the SAC fails to provide the information required by Paragraph 5 of the Conclusion of the Order.[3]

---

[2] Two of the _Windham_ Defendants (Windham and Perras) made clear that they do not intend to pursue claims and presented no real reason to stave off judgment on the pleadings.  The other two DJ defendants (Billington and Ware) pled no claim and no tolling doctrine which would render any claim by those two individuals timely.  Indeed, in their amended pleading, they dispute the need to plead facts demonstrating a tolling doctrine and assert that WWE has the burden to show that one of the elements of fraudulent concealment is not met.  _See_ Doc. 364 at 24.  In doing so, the DJ defendants' counsel ignore that the Court already rejected that argument and called it "incorrect" in the Order.  _See_ Doc. 362 at 16.

[3] Notably, the SAC fails to specifically plead any allegedly fraudulent statements made by Mr. McMahon to any of the _Laurinaitis_ Plaintiffs to support the RICO claim asserted against him.  Of the few statements actually attributed to Mr. McMahon in the SAC, each such purported "statement" plainly is not a misrepresentation of any fact or a plausible allegation that Mr. McMahon acted with a specific intent to defraud Plaintiffs.  _See, e.g.,_ SAC at ¶ 57(iii) ("McMahon stated he 'hated lawyers'"); SAC at ¶ 58(v) (McMahon stated "if you can make more money any place else you are free to go").  Nor does the SAC plead any

Substantively, as noted in the Order, "the Court has already thoroughly evaluated the issues presented in the consolidated cases, determining that the claims of wrestlers who had stopped performing for WWE prior to 2005 are barred." *Id.* at 19.  Unable to avoid the dispositive effect of the Court's prior rulings, the SAC seeks to abandon the now-discredited allegation that WWE knew of a link between wrestling activity and permanent degenerative neurological conditions in 2005, which has fueled three years of litigation.  Instead, the *Laurinaitis* Plaintiffs now seek to employ the stratagem of Singleton/LoGrasso's opposition to WWE's motion for summary judgment which demonstrated the lack of evidence of such knowledge — they attempt to morph their fraud claim into one for patent symptoms of concussions, like post-concussion syndrome, as opposed to latent permanent degenerative neurological conditions.  Worse yet, despite two evidentiary hearings before Magistrate Judge Richardson demonstrating massive and rank plagiarism from the CTE lawsuit against the NFL, Attorney Kyros and his co-counsel have continued doing so, as set forth herein.  Consistent with the distinction that the Court has carefully-drawn in these consolidated cases in substantive rulings, discovery orders, and rulings on limitations/repose issues between mere concussions, including the ensuing patent symptoms of a concussion, and latent degenerative neurological conditions that may or may not be caused by repeated MTBIs, the Court should

---

allegations that the McMahon Family Trusts acted in any way (fraudulent or otherwise) with respect to any Plaintiff and/or that Mr. McMahon had any dealings with any Plaintiff in his capacity as a Trustee.

reject this latest attempt by Plaintiffs' counsel to inject new and still insufficient allegations into this case after prior false allegations were exposed as baseless.[4]

**B.**   **The SAC Fails to Correct the Defects Previously Noted By the Court**

In the Order, the Court stated that Attorney Kyros included "numerous allegations that a reasonable attorney would know are inaccurate, irrelevant, or frivolous" in the FAC in this case. *See* Doc. 362 at 7. The Order was not the first time such admonitions have been given to Attorney Kyros. Inexplicably, the SAC continues to ignore the Court's admonitions. A non-exhaustive list is as follows:

| | |
|---|---|
| "[R]eferencing a study published in October 2015 despite the fact that none of the *Laurinaitis* Plaintiffs were still performing at that time." (Doc. No. 362 at 7 (citing FAC ¶ 51).) | In the SAC, Plaintiffs' counsel continue to assert allegations about the exact same 2015 study and have even added allegations about an even *later* study in 2017. (SAC ¶¶ 292-293.) |
| "[N]oting that WWE instructed a female wrestler not to report a sexual assault she endured while on a WWE tour despite the fact that this has no relevance to her claims about neurological injuries or the enforceability of her booking contract." (Doc. No. 362 at 7 (citing FAC ¶ 108).) | In the SAC, Plaintiffs' counsel continue to assert allegations that Plaintiff Ashley Massaro "was later instructed by WWE not to report a serious incident at a military base while on a tour overseas." (SAC ¶ 95(v).) |

---

[4] *See* Doc. 116 at 29 ("A single MTBI such as a concussion, and the symptoms that a discrete MTBI can manifest, are not the same 'condition' as a disease such as CTE or another degenerative neurological disorder that may — or may not — be caused by repeated MTBIs."); Doc. 116 at 67-68 n.16 ("[I]t is unclear how the complaints arrive at the year 2005 as the year in which WWE had knowledge of a link between repeated head trauma from concussive blows with permanent degenerative conditions."); Doc. 116 at 70 (dismissing all claims except "the fraudulent omission claim . . . to the extent that claim asserts that in 2005 or later WWE became aware of and failed to disclose . . . the risks of long-term degenerative neurological conditions as well as specialized knowledge concerning the possibility that its wrestlers could be exposed to greater risk for such conditions."); Doc. 160 ("This case is not about concussion prevention . . . . Rather, the sole remaining claim concerns an allegation of fraudulent non-disclosure of knowledge of a link between wrestling and permanent degenerative neurological conditions.").

| | |
|---|---|
| "[N]oting that WWE is a monopoly that earns $500 million annually."  (Doc. No. 362 at 7 (citing FAC ¶ 130).) | In the SAC, Plaintiffs' counsel continue to assert allegations that WWE's revenues were reported to be $729 million in 2016 and allegations concerning WWE's revenues for the years 2000-2009 (SAC ¶¶ 114, 462.) |
| "[Q]uoting general observations from the book of a wrestler [Jesse Ventura] who is not a party to this lawsuit." (Doc. No. 362 at 7 (citing FAC ¶ 157).) | In the SAC, Plaintiffs' counsel continue to assert allegations concerning observations made by Jesse Ventura to a journalist and to an audience on the Steve Austin show.  (SAC ¶¶ 387-388.) |
| "[N]oting that WWE does not provide wrestlers with health insurance."  (Doc. No. 362 at 7-8 (citing FAC ¶¶ 159-161).) | In the SAC, Plaintiffs' counsel continue to repeatedly assert allegations that WWE does not provide wrestlers with health insurance. (SAC ¶¶ 11, 263, 328(c), and 379.) |
| "[D]escribing [a] fictional storyline in which a doctor claimed on television that a wrestler who is not a *Laurinaitis* Plaintiff suffered a serious concussion, when in fact he 'did not have post-concussion syndrome' and the storyline was intended only to 'create dramatic impact for the fans.'" (Doc. No. 362 at 7-8 (citing FAC ¶¶ 289-93).) | In the SAC, Plaintiffs' counsel continue to assert allegations describing the same fictional storyline involving Dr. Unger and Shawn Michaels, a former WWE performer who is not a party to this lawsuit.  (SAC ¶¶ 205-215.) |

The SAC also continues to assert allegations that this Court has previously found to be false and/or deliberately misleading:

| | |
|---|---|
| This Court has admonished Plaintiffs' counsel multiple times in these Consolidated Cases for including false allegations in complaints that were copied from other lawsuits.  The Court stated that "at a June 8, 2015 scheduling conference in the *Singleton* action, the Court told [Attorney] Kyros that the complaint was neither concise nor accurate, as it contained language copied from other | In the SAC, Plaintiffs' counsel have continued to plagiarize allegations from the CTE lawsuit against the NFL and assert such allegations against WWE without any factual basis, including allegations contained within the fraud, wrongful death, fraudulent concealment, civil conspiracy, and medical monitoring counts.  (*See* SAC ¶¶ 538-51, 552-58, 578-79, 581-83 584-87, 639-45, 647-51.) For example: |

| | |
|---|---|
| lawsuits filed by other attorneys on behalf of athletes who played other sports." (Doc. 362 at 7.) During that conference, the Court specifically told Attorney Kyros that "this isn't football." (Doc. 73 at 60.) In rulings dismissing other cases, the Court further admonished Attorney Kyros and his co-counsel for asserting "patently false allegations" that were "simply copied and pasted in whole cloth from one complaint to another." (Doc.116 at 8.) | (1) Plaintiffs' counsel copied the allegation in the NFL complaint that "the NFL and its agents . . . employed to formulate the MTBI committee . . . made these material misrepresentations with the intent to defraud the Plaintiffs" but changed the allegation to falsely claim that it applied to the "WWE" and agents of its "Talent Wellness Program" even though no misrepresentations by WWE are identified and no Plaintiff alleges that he or she had any interaction with any of the medical professionals involved with WWE's Talent Wellness Program, which began in March 2008. (*Compare* SAC ¶ 544 with NFL FAC ¶ 293, Ex. 1.)<br><br>(2) Plaintiffs' counsel copied the allegation in the NFL complaint that "[f]or decades, the named Defendants, along with others who were employed by the NFL, including those who participated in the NFL MTBI Committee, acted in concert to perpetrate the fraudulent concealment of the connection between repetitive MTBI and long-term neuro-cognitive damage" but changed the allegation to again falsely claim that it applied to "WWE" and its "Talent Wellness Program." (*Compare* SAC ¶ 585 with NFL FAC ¶ 423, Ex. 1.)<br><br>(3) Plaintiffs' counsel copied the allegation in the NFL complaint that the "NFL has been aware of and understood the significance of the published medical literature dating from as early as the 1920s that there is a serious risk of short-term and long-term brain injury associated with repetitive impacts to the head to which NFL players are exposed" but changed the allegation to falsely claim that it applied to "WWE" and "WWE wrestlers," despite the fact that |

| | the NFL was formed in the 1920s but WWE, according to Plaintiffs' own allegations, was not formed until decades later.  (*Compare* SAC ¶ 543 with NFL FAC ¶ 292, Ex. 1.)<br><br>(4) Plaintiffs' counsel copied the allegation in the NFL complaint that "Dr. Casson [head of the NFL's MTBI committee] also denied . . . the link between repetitive head impacts and short and long-term brain damage . . . in public interviews" but changed the allegation to falsely claim that "WWE's Medical Director Dr. Joseph Maroon" denied such a link even though no such denial by Dr. Maroon is pled and no Plaintiff alleges that he or she had any interaction with Dr. Maroon who was not hired to be WWE's medical director until March 2008.  (*Compare* SAC ¶ 575 with NFL FAC ¶ 281, Ex. 1.) |
|---|---|
| This Court previously admonished Attorney Kyros for falsely alleging that WWE attempted to discredit CTE studies of former football player Terry Long by reference to statements made by Dr. Maroon before he was retained by WWE in March 2008, stating that "[o]nce again, Kyros' deliberately misleading language suggesting that WWE directly contested a specific CTE study in 2005 further undermines his and Plaintiffs' credibility."  (Doc. No. 253 at 24.) | In the SAC, Plaintiffs' counsel again falsely suggest that WWE has denied the validity of CTE studies by reference to a statement made by Dr. Maroon before he was affiliated with WWE.  Plaintiffs continue to rely on a statement made by Dr. Maroon to the Pittsburgh Post-Gazette in 2006 about the death of former football player Terry Long, but omit the date of the statement to obscure the fact that the statement was made before Dr. Maroon became affiliated with WWE.  (SAC ¶ 576.) |
| In prior pleadings, Attorney Kyros cited to statements made by Dr. Maroon on the NFL Network in 2015. WWE challenged that allegation as misleading, and the Court ruled that Dr. Maroon's statements in 2015 on the NFL Network did not support a fraud charge and that Attorney Kyros had abandoned that argument by not addressing it.  (Doc. 116 at 58.) | In the SAC, this same abandoned allegation is falsely recharacterized to read as if Dr. Maroon had made the alleged statement as WWE's Medical Director on ESPN when, in fact, the prior pleadings demonstrate that Attorney Kyros knows the statement was made by Dr. Maroon not as WWE's Medical Director on ESPN, but in his capacity as a spokesperson for the NFL on the NFL |

| | Network.  (SAC ¶ 575.) |
|---|---|

The SAC likewise reasserts claims that the Court has previously dismissed.

| This Court previously dismissed a medical monitoring claim asserted by Plaintiffs' counsel in these Consolidated Cases because it is not a separate and independent cause of action under Connecticut law.  (Doc. 116 at 54-55, 69-70.) | Plaintiffs' counsel in this case have continued to assert a legally baseless claim for medical monitoring as a separate cause of action in the SAC.  (SAC, Count XII ¶¶ 639-651.) |
|---|---|
| This Court previously dismissed a fraudulent concealment claim asserted by Plaintiffs' counsel in these Consolidated Cases because "fraudulent concealment is not a separate cause of action."  (Doc. 116 at 54-55, 70.) | Plaintiffs' counsel in this case have continued to assert legally baseless claims for fraudulent concealment and conspiracy to commit fraudulent concealment as separate causes of action in the SAC.  (SAC, Count X ¶¶ 559-583, Count XI ¶¶ 584-587.) |
| This Court previously dismissed a fraud claim asserted by Plaintiffs' counsel in these Consolidated Cases because "plaintiffs have failed to plead specific facts indicating that WWE made any specific statement that it knew" was "false at the time upon which plaintiffs reasonably relied." (Doc. 116 at 61, 70.) | Plaintiffs' counsel in this case have continued to assert a legally baseless fraud claim in the SAC without pleading with the requisite particularity any knowingly false statement of fact made by anyone at WWE to any Plaintiff, much less to each of the 60 Plaintiffs named in SAC.  (SAC, Count VII ¶¶ 538-551.) |
| This Court previously dismissed fraud by omission claims asserted in these Consolidated Cases by any plaintiffs who were "alleged to have wrestled on or after 2005, when WWE's knowledge of the non-disclosed facts [concerning a reported link between repeated head trauma and permanent degenerative neurological conditions in wrestling] is alleged to have begun."  (Doc. 116 at 67-68.)  This Court also observed that "in a separate lawsuit asserting the same claims, summary judgment is fully briefed following the completion of discovery, and the [Local Rule] 56(a)(2) statement filed by plaintiffs' counsel is devoid of any admissible | Plaintiffs' counsel in this case have continued to assert a legally baseless fraudulent nondisclosure claim in the SAC on behalf of Plaintiffs who last performed for WWE before 2005 despite the absence of any evidence that WWE had actual knowledge of a reported link between wrestling and long-term degenerative neurological conditions before September 2007.  (SAC, Count I ¶¶ 312-324.) |

| | |
|---|---|
| evidence that a particular agent of WWE knew by 2005 that wrestling could cause a long-term degenerative neurological condition." (Doc. 362 at 18.)[5] | |
| This Court previously dismissed wrongful death and survival claims asserted by Plaintiffs' counsel in these Consolidated Cases because there was no plausible causal connection between the alleged conduct of WWE and the deaths of other decedents from a heart attack and an accidental drug overdose many years after they last performed for WWE. (Doc. 253 at 16-19) | Plaintiffs' counsel in this case have continued to assert legally baseless wrongful death and survival claims in the SAC without alleging any plausible causal relationship between WWE's conduct and the death of the decedents, including decedents who died many years after they last performed for WWE from causes completely unrelated to alleged traumatic brain injuries. (SAC ¶ 55, Count IX ¶¶ 552-558.) For example, the wrongful death count includes claims relating to the sudden death of Jonathan Rechner from cardiovascular disease and Brian Knighton from an accidental drug overdose, both many years after they last performed for WWE. *See* Doc. No. 267-5 (Knighton Autopsy Report); Doc. No. 267-6 (Rechner Autopsy Report). |
| This Court (Judge Dorsey) previously dismissed claims by former WWE performers in a prior lawsuit alleging that they were misclassified as independent contractors because the plaintiffs failed to state a claim and their claims were time-barred since the action was not commenced within six years of the inception of their services for WWE or the execution of their | Plaintiffs' counsel in this case continue to assert misclassification claims in the SAC that are legally frivolous and time-barred in view of this Court's prior rulings dismissing identical claims by other former WWE performers. (*See* SAC Counts II-V ¶¶ 325-425, Count VII ¶¶ 537.) |

[5] Discovery in the *Singleton* case established that WWE did not have knowledge of the alleged long-term risks of neurodegenerative conditions from head injuries in wrestling until at the earliest September 2007 when the findings that Chris Benoit had been diagnosed with CTE were first publicly announced. Moreover, as the summary judgment filings in the *Singleton* action demonstrated, far from fraudulently concealing these reported risks, WWE promptly instituted a concussion management program in March 2008, pursuant to which its medical staff has provided regular presentations advising all talent of such risks.

| Booking Contracts in which their classification as independent contractors was expressly stated.  *See Levy v. World Wrestling Entertainment, Inc.*, No. 3:08-cv-01289, 2009 2009 WL 455258 (D. Conn. Feb. 23, 2009); *Levy v. World Wrestling Entertainment, Inc.*, No. 3:08-cv-1289, 2009 WL 2382022 (D. Conn. July 31, 2009). | |

Additionally, Plaintiffs' counsel improperly continue to assert claims on behalf of at least 23 Plaintiffs who signed binding releases that clearly and unambiguously bar the claims alleged in this action.[6]  In the SAC, Plaintiffs' counsel falsely allege that the performers who signed releases "without exception do not currently have this document in their possession."  SAC ¶ 29 (emphasis added).  This is yet another knowingly false statement because Defendants twice provided copies of the releases to Plaintiffs' counsel in connection with their motions for sanctions and their motions to dismiss the prior complaints in this action.  *See* Doc. 229, 234, 264, 268, 279.  Despite the false statement that none of the plaintiffs have copies of their signed releases, Plaintiffs' counsel then attempt to claim in Count III of the SAC that all contracts Plaintiffs entered into with WWE, evidently including the 23 releases, are unconscionable and therefore declared void, even though no procedural or

---

[6] Releases were signed by Plaintiffs Carlene Moore-Begnaud, Rodney Begnaud, Terry Brunk, Mark Canterbury, Bryan Emmett Clark Jr., Marc Copani, Michael Enos, Bill Eadie, George Gray, Michael Halac, James Harrell, James Harris, Marty Jannetty, Mark Jindrak, Rick Jones, Joseph Laurinaitis, Troy Martin, Anthony Norris, Paul Orndorff, Perry Satullo, James Snuka-Reiher, Terry Szopinski, and John Nord.

substantive unconscionability is specifically alleged with respect to any individual release.

   The SAC also continues to assert claims by at least <u>17</u> Plaintiffs that are legally frivolous and a fraud on the Court because such Plaintiffs continued to wrestle and perform for other wrestling organizations despite their allegations of traumatic brain injuries caused by WWE's failure to warn them of the alleged long-term neurological risks associated with wrestling.[7]

**C.   <u>The SAC Purports to Add A New Plaintiff Without Obtaining Leave of Court</u>**

   In addition to failing to comply with the Rules and the Order as described herein, the SAC purports to assert claims by a new plaintiff, Kelli Fujiwara Sloan on behalf of the Estate of Harry Masayoshi Fujiwara ("Mr. Fuji").  All such claims should be dismissed because the Order did not permit the addition of new plaintiffs.  *See Palm Beach Strategic Income, LP v. Salzman*, 457 Fed. Appx. 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.") (collecting cases); *Dhar v. City of New York*, No. 12-cv-3733, 2015 U.S. Dist. LEXIS 96962, at *5-6 (E.D.N.Y. July 16, 2015) (dismissing claims where  plaintiff disregarded the court's instruction "by adding both new claims and a new defendant" in an amended complaint); *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 597, n.5 (S.D.N.Y. Mar. 22, 2013) (dismissing "each of

---

[7] **These include Plaintiffs Carlene Moore-Begnaud, Rodney Begnaud, Terry Brunk, Barry Darsow, Bill Eadie, Sylvain Grenier, Salvador Guerrero IV, Michael Halac, Earl Hebner, Jon Heidenreich, Marty Jannetty, Mark Jindrak, Troy Martin, Charles**

the new causes of action in the Second Amended Complaint with prejudice"
where the Court granted Plaintiffs permission to replead only certain claims and
"Plaintiffs did not seek or receive permission, pursuant to Federal Rule of Civil
Procedure 15, to amend their complaint further"); *Ebron v. Lantz*, No. 3:04-CV-
1375, 2006 U.S. Dist. LEXIS 81232, *3 (D. Conn. Nov. 6, 2006) (dismissing claims
asserted against new defendants in an amended complaint because the court
"did not grant [the plaintiff] permission to add new, unrelated claims or new
defendants, and [the plaintiff] never sought that permission"); *Pagan v. N.Y. State
Div. of Parole*, No. 98 Civ. 5840, 2002 U.S. Dist. LEXIS 4236, *9 (S.D.N.Y. 2002)
(dismissing with prejudice new claims asserted in amended complaint where the
court's order only granted plaintiff leave to replead certain claims that were
raised in the original complaint); *Willet v. City Univ. of N.Y.*, No. 94CV3873, 1997
WL 104769, at *2 (E.D.N.Y. Feb. 18, 1997) (declining to consider new claims in
amended complaint on the basis that they exceeded the scope of the court's
order granting plaintiff leave to amend).

Moreover, the wrongful death and survival claims asserted on behalf of Mr.
Fuji's estate are defective on their face because the caption to Count IX of the
SAC concedes that such an estate does not currently exist and Ms. Sloan
therefore cannot have been appointed to be the executor or administrator of the
estate.  *See* SAC at 181 ("The Estate is currently being established in
Montgomery County, Tennessee.").  As such, Ms. Sloan does not have standing
to maintain wrongful death and survival claims on behalf of Mr. Fuji's estate

---

Bernard Scaggs, Tracy Smothers, Terry Szopinksi, and Sione Havea Vailahi.

under this Court's prior rulings.  *See* Doc. 253 at 15.  Furthermore, such claims are patently time-barred and futile because Plaintiffs fail to adequately plead any plausible causal relationship between WWE's conduct and the death of Mr. Fuji at the age of *82*, more than *twenty (20) years* after he last performed for WWE.

### III.   CONCLUSION

For all of the foregoing reasons and the reasons set forth in Defendants' pending motions, in accordance with the Order, the Court should grant WWE's Motion for Judgement on the Pleadings against the *Windham* Defendants, dismiss the *Laurinaitis* complaint with prejudice, and award attorney's fees as a sanction on the *Laurinaitis* Plaintiffs' counsel.  In the alternative, WWE stands ready to provide any additional adversarial guidance that the Court may deem appropriate in ascertaining the viability of the SAC, including filing new dismissal briefs on the merits and as a sanction in the *Laurinaitis* case; filing a new motion for judgment on the pleadings in the *Windham* case; and/or filing a plenary motion and brief supporting dismissal under Rule 41(b) documenting the history of repeated violations of the Rules and this Court's orders by Plaintiffs' counsel which include, but are not limited to, the matters summarized herein.  If the Court desires any or all such motions and briefs, Defendants respectfully request such instruction from the Court and a reasonable time to prepare such filings.

DEFENDANTS WORLD WRESTLING ENTERTAINMENT, INC. and VINCENT K. MCMAHON,

By:  _/s/  Jerry S. McDevitt_
    Jerry S. McDevitt (pro hac vice)
    Curtis B. Krasik *(*pro hac vice)

**K&L GATES LLP**
**K&L Gates Center**
**210 Sixth Avenue**
**Pittsburgh, PA 15222**
**Phone: (412) 355-6500**
**Fax: (412) 355-6501**
**Email: jerry.mcdevitt@klgates.com**
**Email: curtis.krasik@klgates.com**

**Jonathan B. Tropp (ct11295)**
**Jeffrey P. Mueller (ct27870)**
**DAY PITNEY LLP**
**242 Trumbull Street**
**Hartford, CT 06103**
**Phone: (860) 275-0100**
**Fax: (860) 275-0343**
**Email: jbtropp@daypitney.com**
**Email: jmueller@daypitney.com**

**Their Attorneys.**

## CERTIFICATION

I hereby certify that on November 17, 2017 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 _/s/ Jeffrey P. Mueller_____