# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH,** *et al.*, | : NO. 3:15-cv-01074-VLB |
| | : LEAD CASE |
| Plaintiffs, | : |
| vs. | : |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : |
| Defendant. | : |

| | |
|---|---|
| **JOSEPH M. LAURINAITIS,** *et al.*, | : NO. 3:16-CV-01209-VLB |
| | : CONSOLIDATED CASE |
| Plaintiffs, | : |
| vs. | : |
| **WORLD WRESTLING ENTERTAINMENT, INC.,** *et al.*, | : |
| Defendants. | : |

**Comparison of Plagiarized Paragraphs**

*Laurinaitis et al. v. World Wrestling Entertainment, Inc. et al.*
**(Second Amended Complaint)**

**vs.**

*In re National Football League Players' Concussion Injury Litigation*
**(Amended Master Administrative Long-Form Complaint)**

# COUNT VII[1]
# FRAUD

(~~Against the NFL~~ On Behalf of All Named Plaintiffs Against Defendant WWE)

538.[2]   Plaintiffs incorporate by reference the preceding paragraphs ~~1-245 and 279-283~~ set forth above as ~~if~~ though fully set forth herein, including all referenced Exhibits. (NFL FAC ¶ 287).

539.   At least since the early ~~1950s~~ 1963, the ~~NFL~~ WWE knew (or should have known from readily available scientific literature) that repetitive head impacts and rapid decelerations in ~~football games~~ wrestling performances and full-contact practices created a~~n~~ unreasonable risk of harm to ~~NFL players~~ WWE wrestlers that was similar or identical to the risk of harm to boxers who receive the same or similar repetitive impacts to the head during boxing practices and matches. (NFL FAC ¶ 288).

540.   The ~~NFL~~ WWE knew that the risks of brain injury could be reduced by implementing changes to the ~~game~~ performance, akin to the ones ~~the NFL belatedly~~ other sports agencies had already adopted ~~in 2011~~, such as (1) the baseline cognitive testing of ~~players~~ wrestlers for comparison purposes during and after ~~contact play~~ performances; (2) the active monitoring of ~~players~~ wrestlers for signs of ~~M~~TBI, (3) the employment of a neurologist ~~on the sidelines~~ during performances; and, (4) return-to-~~play~~ring rules consistent with proper medical management of ~~M~~TBI, or the use of helmets as OSHA would have required, (and periods of extended recuperation as required by Family Health and Medical Leave Act) but for the WWE's

---

[1] This document compiles paragraphs that Plaintiffs plagiarized from the NFL Amended Master Administrative Long-form Complaint ("NFL FAC").

[2] The paragraph numbers correspond to the paragraph numbers of the *Laurinaitis* Second Amended Complaint. The text colors represent the following: (1) red text represents text that Plaintiffs copied word-for-word from the NFL FAC; (2) black text represents text that was contained in the NFL FAC, but was deleted from the *Laurinaitis* Second Amended Complaint; and (3) blue text represents text that Plaintiffs added to the *Laurinaitis* Second Amended Complaint, but is not contained in the NFL FAC.

fraudulent misclassification of their employees as "independent contractors." (NFL FAC ¶ 289).

541. The ~~NFL~~ WWE, however, withheld and actually covered up the information it knew about the risks of head injuries ~~in the game~~ suffered during WWE performances from then-current ~~NFL players~~ WWE wrestlers and former ~~NFL players~~ WWE wrestlers and ignored the known risks to all ~~NFL players~~ WWE wrestlers. (NFL FAC ¶ 290).

542. On information and belief, the ~~NFL~~ WWE deliberately delayed implementing the changes to the ~~game~~ performance it knew ~~could~~ (or should have known) would reduce ~~players'~~ wrestlers' exposure to the risk of life-altering head injuries because those changes would be expensive and would reduce the profitability of ~~the League~~ WWE. WWE knew that violence sells and was in the essence of their entertainment package and favorable ratings. (NFL FAC ¶ 291).

543. The ~~NFL~~ WWE has been aware of and understood the significance of the published medical literature dating from as early as the 1920s that there is a serious risk of short-term and long-term brain injury associated with repetitive traumatic impacts to the head to which ~~NFL players~~ WWE wrestlers are exposed. (NFL FAC ¶ 292).

544. The ~~NFL~~ WWE and its agents -- employed to formulate the ~~MTBI committee and populate the published scientific literature with "studies" intent on disputing the conclusions of independent researchers regarding the long-term chronic disabilities and injuries associated with head injury~~ Talent Wellness Program -- made these material misrepresentations with the intent to defraud the Plaintiffs. (NFL FAC ¶ 293).

545. Given the ~~NFL's~~ WWE's superior and unique vantage point, and assumption of responsibility the Plaintiffs reasonably ~~looked to~~ relied upon the ~~NFL~~ WWE for guidance on head injuries and concussions. (NFL FAC ¶ 294).

546. During that time period, the ~~NFL~~ WWE knowingly and fraudulently concealed from then-current ~~NFL players~~ WWE wrestlers and former ~~NFL players~~ WWE wrestlers the risks of head injuries in ~~NFL games~~ WWE performances and practices, including the risks associated with returning to physical activity too soon after sustaining a sub-concussive or concussive injury, and the cumulative impacts of such injuries. (NFL FAC ¶ 295).

547. The ~~NFL~~ WWE, however, withheld this information from then-current ~~NFL players~~ WWE wrestlers and former ~~NFL players~~ WWE wrestlers and ignored the known risks to all ~~NFL players~~ WWE wrestlers. (NFL FAC ¶ 296).

548. During their ~~playing days~~ wrestling careers and after their retirement from the ~~NFL~~ WWE, the Plaintiffs justifiably and reasonably relied on the ~~NFL's~~ WWE's omissions and misrepresentations to their detriment. (NFL FAC ¶ 299).

549. As a result of ~~the NFL's~~ WWE's misconduct as alleged herein, ~~the NFL~~ WWE is liable to Plaintiffs. (NFL FAC ¶ 300).

550. The Plaintiffs were damaged by ~~the NFL's~~ WWE's misconduct. They have suffered and will continue to suffer substantial injuries, emotional distress, pain and suffering, permanent reductions in cognitive capacity and economic and non-economic damages that are ongoing and continuing in nature, including a substantial diminution in them. (NFL FAC ¶ 301).

551. As a result of the ~~NFL's~~ WWE's fraud, the ~~NFL~~ WWE is liable to Plaintiffs for, and Plaintiffs seek, the full measure of damages allowed under applicable law. (NFL FAC ¶ 302).

## COUNT IX
## WRONGFUL DEATHS AND SURVIVAL ACTIONS

(Against Defendant WWE, Carole M. Snuka on Behalf of the Estate of James W. Snuka. The Estate is in the Probate Division of the Circuit Court For Broward County, Florida. Gayle C. Schechter on behalf of the Estate of Jon Matthew Rechner. The Estate is in Monmouth County

3

Surrogate's Court in New Jersey. Barbara Marie Leydig and Bernard Knighton co-representatives on Behalf the Estate of Brian David Knighton. The Estate is State of Maryland Estate no: 16404. Shirley Fellows on Behalf of the Estate of Timothy Alan Smith. The Estate is in The Circuit Court For Polk County, Florida Probate Division. Ronald Scott Heard on Behalf of the Estate of Ronald Heard. The Estate is in The Circuit Court For Hillsborough County, Florida Probate Division. Kelli Fujiwara Sloan on Behalf of the Estate of Harry Masayoshi Fujiwara. The Estate is currently being established in Montgomery County, Tennessee)

552.   Plaintiffs and their representative Executors or equivalent legal representatives under applicable law (hereinafter "Executors") incorporate by reference the preceding paragraphs 1 through 245 set forth above as if though fully set forth herein, including all referenced Exhibits.  (NFL FAC ¶ 267).

553.   Plaintiffs and their respective Executors or equivalent legal representatives under applicable state law (hereinafter "Executors") incorporate by reference the preceding paragraphs 1 through 245 set forth above as if fully set forth herein.  (NFL FAC ¶ 267).

554.   The Plaintiffs' legal representatives bring this action in their representative capacity of the decedent's Estate and next of kin and on behalf of the respective survivors of those Plaintiffs.  (NFL FAC ¶ 268).

555.   As a direct and proximate cause of the conduct alleged herein, the NFL WWE caused the Plaintiffs to develop the debilitating brain diseases and conditions set forth above, which diseases and conditions caused extreme pain, suffering, and anguish and, ultimately, the deaths of some Plaintiffs.  (NFL FAC ¶ 269).

556.   The legal representatives of the deceased Plaintiffs claim damages recoverable under applicable law for all pecuniary and non-pecuniary losses suffered by the deceased Plaintiffs by reason of their deaths.  (NFL FAC ¶ 270).

557.   As a direct and proximate result of the untimely deaths of the Plaintiffs, their respective survivors and/or surviving distributees have been deprived of the earnings,

maintenance, guidance, support and comfort that they would have received from for the rest of the respective Plaintiffs' natural lives, and have suffered commensurate pecuniary and non-pecuniary losses because of the Plaintiffs' wrongful deaths. (NFL FAC ¶ 271).

558.    The Plaintiffs' legal representatives claim the full measure of damages allowed under applicable law. (NFL FAC ¶ 272).

### COUNT ~~IV~~ X
### FRAUDULENT CONCEALMENT

(~~Against the NFL~~ On Behalf of All Named Plaintiffs Against Defendants WWE and VKM)

575.    ~~The concealment was ongoing. Dr. Casson provided oral and written testimony at the 2010 congressional hearings in which he continued to deny validity of other studies.~~ The WWE's Medical Director Dr. ~~Casson~~ Joseph Maroon also denied and downplayed the link between repetitive ~~brain~~ head impacts and short- and long-term brain damage including CTE in public interviews.  In 2015 while at WWE, Maroon telling ESPN that CTE is as "over exaggerated." (NFL FAC ¶ 281).

578.    The ~~NFL~~ WWE, therefore, concealed material facts and information with the intent to deceive and defraud, which caused Plaintiffs to become exposed to the harm referenced above.  For those Plaintiffs who had retired prior to the above-mentioned misrepresentations, the ~~NFL's~~ WWE's concerted concealment of the risks to which they had been exposed ~~on~~ in the ~~playing field~~ ring delayed their ability to plan for the~~ir~~ future ~~of themselves~~ and their families and to seek appropriate treatment of their latent neurodegenerative conditions.  (NFL FAC ¶ 282).

579.    The ~~NFL~~ WWE knew and expected that Plaintiffs would rely on the inaccurate information provided by the ~~NFL~~ WWE, and Plaintiffs in fact did reasonably rely on the inaccurate information provided by the ~~NFL~~ WWE during and after their ~~NFL~~ WWE careers.

5

(NFL FAC ¶ 283).

581.  As a direct and proximate result of the ~~NFL's~~ WWE's fraudulent conduct, Plaintiffs have suffered physical injury, including, but not limited to, existing and latent cognitive conditions that create memory loss, diminished cognitive function, non-economic losses, and economic losses.  (NFL FAC ¶ 284).

582.  As a direct and proximate result of the ~~NFL's~~ WWE's willful concealment, Plaintiffs have suffered and will continue to suffer substantial injuries, emotional distress, pain and suffering, and economic and non-economic damages that are ongoing and continuing in nature. (NFL FAC ¶ 285).

583.  As a result of the ~~NFL's~~ WWE's misconduct as alleged herein, the ~~NFL~~ WWE is liable to Plaintiffs for, and Plaintiffs seek, the full measure of damages allowed under applicable law.  (NFL FAC ¶ 286).

**COUNT X~~VII~~I**
**CIVIL CONSPIRACY~~/~~ TO COMMIT FRAUDULENT CONCEALMENT**
(On Behalf of All Named Plaintiffs Against ~~the NFL~~ Defendants WWE and VKM)

584.  Plaintiffs incorporate by reference the preceding paragraphs ~~1 through 245 and 383 through 396~~ set forth above as ~~if~~ though fully set forth herein, including all referenced Exhibits.  (NFL FAC ¶ 422).

585.  For decades, ~~the named Defendants~~ WWE, along with others who were employed by the ~~NFL~~ WWE, including those who participated in the ~~NFL MTBI Committee~~ WWE Talent Wellness Program, acted in concert to perpetrate the fraudulent concealment of the connection between repetitive ~~M~~TBI and long-term neuro-cognitive damage, illness, and decline.  (NFL FAC ¶ 423).

586.  The named Defendants, along with those who participated in the concerted efforts

6

referenced above, knowingly failed to disclose and/or made continuing misrepresentations of material fact that there was an absence of any scientific basis to believe that repetitive ~~M~~TBI created any known long-term neuro ~~cognitive~~ risks to ~~NFL players~~ WWE wrestlers. That misconduct by the named Defendants exposed Plaintiffs to an increased risk of brain injury and was the proximate cause of the Plaintiffs' brain injuries.  (NFL FAC ¶ 424).

587. Plaintiffs have suffered personal injuries as a result of the named Defendants' concerted activities.  (NFL FAC ¶ 425).

### COUNT XIII
### MEDICAL MONITORING

(~~Against the NFL~~ On Behalf of All Named Living Plaintiffs Against Defendant WWE)

639. Plaintiffs incorporate by reference the preceding paragraphs ~~1 through 245~~ set forth above as ~~if~~ though fully set forth herein, including all referenced Exhibits.  (NFL FAC ¶ 249).

640. The Plaintiffs experienced repetitive ~~traumatic brain impacts~~ head injuries during their ~~respective NFL~~ WWE careers that significantly increased their risk of developing neurodegenerative disorders and diseases, including but not limited to CTE, Alzheimer's disease, and other similar neuro-cognitive ~~impairing~~ conditions as demonstrated by the plaintiffs already diagnosed.  (NFL FAC ¶ 250).

641. Repetitive ~~MTBI~~ head trauma during ~~NFL~~ WWE ~~practices and games~~ performances ~~has a~~ likely created microscopic ~~and latent effect on~~ injuries to the brain. Repetitive exposure to accelerations to the head causes deformation, twisting, shearing, and stretching of neuronal cells such that multiple forms of damage take place, including the release of small amounts of chemicals within the brain, such as the Tau protein.  Resulting in present physical injuries . ~~Among other things, the gradual build-up of Tau protein — sometimes over~~

7

decades -- causes CTE, which is the same phenomenon as boxer's encephalopathy (or "punch drunk syndrome") studied and reported by Harrison Martland in 1928. (NFL FAC ¶ 251).

642.   The WWE knew or should have known Like the organizers of boxing, the NFL was fully aware of the dangers of in exposing all NFL players WWE wrestlers to repetitive head impacts and decelerations, including the repetitive sub-concussive and concussive blows that increase the risk to NFL players WWE wrestlers of, among other latent injuries, encephalopathy. (NFL FAC ¶ 256).

643.   The latent brain injuries from which Plaintiffs suffer require specialized testing (with resultant treatment) that is not generally given to the public at large. (NFL FAC ¶ 259).

644.   The available monitoring regime is specific for individuals exposed to repetitive head trauma and is different from that normally recommended in the absence of exposure to this risk of harm. (NFL FAC ¶ 260).

645.   The medical monitoring regime requested by plaintiffs includes, but is not limited to, baseline tests and neurological diagnostic examinations, which that will assist in diagnosing the any adverse health effects associated with football wrestling-related MTBI head injuries. This diagnosis will facilitate the any treatment and behavioral and/or pharmaceutical interventions that will can help prevent or mitigate various adverse consequences of the development of latent neurodegenerative disorders and diseases associated with the repetitive sub-concussive and concussive injuries that Plaintiffs experienced in the NFL. (NFL FAC ¶ 261).

647.   The available monitoring regime and testing is reasonably necessary according to contemporary scientific principles within the medical community specializing in the diagnosis of head injuries and their potential link to, *inter alia*, memory loss, impulse rage, depression, early-

onset dementia, CTE, Alzheimer-like syndromes, and similar cognitive-impairing conditions. (NFL FAC ¶ 262).

648. By monitoring and testing Plaintiffs, the risk that Plaintiffs will suffer long-term injuries, disease, and losses will be ~~significantly~~ substantially reduced. (NFL FAC ¶ 263).

649. By monitoring and testing the Plaintiffs, ~~the~~ any risk that Plaintiffs will suffer long-term injuries, disease, and losses without adequate treatment will be ~~significantly~~ substantially reduced. (NFL FAC ¶ 264).

650. Plaintiffs, therefore, seek an injunction creating a Court-supervised, ~~NFL~~ WWE-funded medical monitoring program, which will facilitate the diagnosis and adequate treatment of Plaintiffs for neurodegenerative disorders ~~or~~ and diseases. The medical monitoring should include a trust fund to pay for the medical monitoring and treatment of Plaintiffs as frequently and appropriately as necessary. (NFL FAC ¶ 265).

651. Plaintiffs have no adequate remedy at law in that monetary damages alone cannot compensate them for the continued risk of developing long-term physical and economic losses due to concussions and sub-concussive injuries. Without Court-approved medical monitoring as described herein, or established by the Court, the Plaintiffs will continue to face an unreasonable risk of continued injury and disability. (NFL FAC ¶ 266).