```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| RUSS McCULLOUGH, et al., | : |
|     Plaintiffs, | : |
|     v. | :   CASE NO. 3:15cv1074(VLB) |
| | :   LEAD CASE |
| WORLD WRESTLING ENTERTAINMENT, INC., | : |
|     Defendant. | : |
| | |
| EVAN SINGLETON and VITO LOGRASSO, | : |
|     Plaintiffs, | : |
|     v. | :   CASE NO. 3:15cv425(VLB) |
| | :   CONSOLIDATED CASE |
| WORLD WRESTLING ENTERTAINMENT, INC., | : |
|     Defendant. | : |

**RECOMMENDED RULING ON DEFENDANT'S MOTIONS FOR SANCTIONS**

Currently pending before this court is Defendant, World Wrestling Entertainment Inc. ("WWE") Motion for Sanctions. (Dkt. #198.) Defendant's motion seeks the imposition of sanctions under Rule 37 of the Federal Rules of Civil Procedure for failure to comply with a discovery order. Oral argument regarding the motion was held on March 2, 2017. For the foregoing reasons, the undersigned recommends that the Defendant's Motion for Sanctions (Dkt. 198) be GRANTED, in part, as outlined herein.

**Procedural History**

The procedural history of the consolidated cases spans a number of years and involves a variety of district courts across the United States. A full recitation of the entire case is not necessary here. Rather, the Court need only outline the background of the current dispute regarding the alleged failure of plaintiff to comply with Judge Bryant's discovery order dated May 19, 2016.

I. **WWE's Motion to Compel**

As was outlined in the briefs and during oral argument, the origin of the pending motion dates back to January 27, 2016, when WWE served the plaintiffs with interrogatories. The plaintiffs responded on March 7, 2016, the parties met and conferred and then WWE filed a motion to compel. (Dkt. #122.) In WWE's motion WWE argued that the plaintiffs' responses were deficient in that they were incomplete or evasive. (See Dkt. #122-1, at 10.) For purposes of the current dispute, only the interrogatories are at issue and the Court need not address any claims relating to the document requests or privilege logs also mentioned in WWE's motion.

Judge Bryant granted in part WWE's motion to compel and ordered plaintiffs to submit supplemental responses to six

different interrogatories.[1] (Dkt. #144.)  In so ruling, Judge Bryant implicitly deemed the previous responses to be inadequate.  Further, she specifically instructed that where the "Plaintiff is unable to identify a statement or speaker in response to an interrogatory, Plaintiff must state that fact." (Id.)(emphasis added).

   Thereafter, on June 15, 2016, plaintiffs served supplemental responses in an attempt to comply with Judge Bryant's ruling.[2]  However, as argued by WWE, the responses

---

[1] The Court notes that all but one of the interrogatories in question were submitted in identical form to both Mr. LoGrasso and Mr. Singleton.  Thus, there are actually 11 interrogatories to which plaintiff was ordered to reply.  The Court will differentiate between the interrogatories when necessary.

[2] The Court is aware that there was an issue related to the lack of verification signatures on the plaintiffs' supplemental responses served on June 15, 2016.  Counsel for WWE informed plaintiffs' counsel of the issue and signed verifications were provided to WWE on June 17, 2016.  WWE has argued that the circumstances surrounding the signing of the verifications shows that plaintiffs were unaware of what their answers said and did not read them before signing under the penalties of perjury. The timing surrounding the answers and the provision of the verifications raises questions regarding what Messrs. Singleton and LoGrasso knew about their sworn interrogatory responses. However, the Court is unwilling to go so far as to recommend the application of the crime fraud exception to Rule 501 of the Federal Rules of Evidence, as suggested by WWE.  Rather, as recommended and outlined herein, the plaintiff will be subject to significant sanctions in the hope of deterring further abuses of the discovery process.  However, the Court would be remiss not to warn plaintiffs and their counsel that any further suggestion of dishonesty throughout this litigation could, and likely should, result in much more dramatic sanctions up to and including the dismissal.

3

continued to be either incomplete, unchanged in any material way, or evasive. Given the responses that plaintiffs provided after Judge Bryant's order on the motion to compel, WWE filed the current motion for sanctions under Rule 37. WWE argues that plaintiffs' only remaining claim should be dismissed as a sanction. WWE argues that dismissal is appropriate because, according to WWE, plaintiffs have clearly engaged in perjury by signing the verification pages to their interrogatories and plaintiffs' counsel have suborned perjury, by allowing the plaintiffs to sign and verify knowingly false interrogatory responses. Additionally, and central to this recommended ruling, WWE also argues that plaintiffs' supplemental interrogatory responses continue to be evasive and incomplete.

## **LEGAL STANDARD**

Under Rule 37 of the Federal Rules of Civil Procedure a district court is endowed with the authority to sanction a party who fails to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(A). Sanctions, up to and including dismissal of the action, under Rule 37 "are intended to 'ensure that a party will not benefit from its own failure to comply,' to obtain specific compliance and 'to serve a general deterrent effect on the case at hand and on other litigation.'" Kellogg v. J.C. Penney Corp., Inc., No. 3:11CV733 RNC, 2013 WL 308985, at *1 (D. Conn. Jan.

25, 2013)(quoting Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 149 (2d Cir.2010)). When determining if sanctions are appropriate the court is guided by a variety of factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Southern New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010)(quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)). "The mildest sanction [available under Rule 37] is the reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate, while the harshest sanction is the order of dismissal and default judgment." Friedman v. SThree PLC., No. 3:14CV00378(AWT), 2017 WL 4082678, at *2 (D. Conn. Sept. 15, 2017)(quoting Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D. Conn. 1998)).

As mentioned, Rule 37 provides a court with the ability to impose the severe sanction of dismissal if a party does not comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A)(v). While given broad discretion in these matters, dismissal is an extreme sanction and "is appropriate 'only where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere

5

oversight.'" Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)(quoting Hochberg v. Howlett, No. 92 Civ. 1822, 1994 WL 174337, *3 (S.D.N.Y. May 3, 1994)).

## **DISCUSSION**

The focus of defendant's motion is the interrogatory responses that plaintiffs' provided after Judge Bryant granted, in part, WWE's motion to compel. After reviewing the supplemental interrogatory responses and hearing the explanations from plaintiff's counsel for the insufficiencies, the Court is unimpressed. However, in light of the very high bar required for the sanction of dismissal the Court does not recommend that Judge Bryant exercise her discretion to dismiss this case. Likewise, the Court rejects WWE's argument that the crime/fraud exception should permit WWE to obtain attorney client privileged information concerning the verifications that were signed by Plaintiffs. However, the Court does agree that plaintiffs' conduct warrants the imposition of sanctions. In this respect, "[w]hile a showing of willful disobedience or gross negligence is required to impose a harsher sanction, a finding of willfulness or contumacious conduct is not necessary to support sanctions which are less severe than dismissal or entry of a default judgment." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D. Conn. 1998).

6

After considering the interrogatory responses, and the oral arguments in this matter, the Court recommends that plaintiffs' counsel be sanctioned for their failure to comply in any meaningful way with Judge Bryant's ruling regarding interrogatory responses.

I.  Interrogatory responses

The Court has reviewed the supplemental interrogatory responses provided by plaintiffs following Judge Bryant's order. Interrogatory number 6 is an outlier, in that it is the only one of the interrogatories that was only served on Mr. LoGrasso. Interrogatory number 6 asked Mr. LoGrasso to:

> Identify all symptoms You have experienced since Your relationship with WWE ended which You contend are associated with TBI sustained while performing for WWE, including the date of onset of the symptoms, the length of the symptoms, and the identity of all health care providers who examined or treated You for such symptoms.

(Dkt. #198-4 at 7.)  During oral argument WWE's counsel stated that this interrogatory was served on Mr. LoGrasso to have him elaborate on the onset of his symptoms which was uniquely relevant to his case because of statute of limitations issues.  (Tr. 86:13-17, Mar. 2, 2017).

It appears to be undisputed that the answer to interrogatory number 6, in essence, did not change following Judge Bryant's ruling on the motion to compel.

7

Rather, the only difference between plaintiffs' initial response and his supplemental response is the language plaintiff used to express his objection to the interrogatory. During oral argument plaintiffs' counsel indicated it was difficult to respond to interrogatory number 6 given the nature of Mr. LoGrasso's medical records. (TR. 128:16-24, Mar. 2, 2017.) Counsel stated that Mr. LoGrasso was never technically diagnosed with a concussion so it was difficult to identify the onset dates. However, counsel later indicated that the requested information on symptoms was indeed located somewhere within the medical documents produced in this case. (Tr. 128:25-129:11, Mar. 2, 2017.) Counsel finally conceded that perhaps Mr. LoGrasso's response could be amended again to direct WWE to the information WWE originally requested, stating only that "perhaps we could have been more precise." (Tr. 130:5-6, Mar. 2, 2017.)

Providing WWE with an identical response to the answer that Judge Bryant previously deemed insufficient, without even attempting to direct WWE to the information Mr. LoGrasso claims to be responsive to the interrogatory is at best careless. In light of Judge Bryant's order, LoGrasso had an affirmative obligation to make a good faith effort to supplement his response by providing sufficient and

specific information or the specific location of the responsive information. He failed to do so.

In a similar vein, interrogatory number 11 which was served on LoGrasso and interrogatory number 12 which was served on Singleton sought information regarding specific allegations made by them in their second amended complaint. The two interrogatories, which were identical, asked the plaintiffs to:

> Identify each and every "deceptive public statement[ ] and published article[ ]" of or by WWE which You contend "downplayed known long-term health risks of concussions to Plaintiff[s]", as alleged in ¶¶ 222 & 230 of the Second Amended Complaint.

(Dkt. #198-4 at 9.) The debate regarding the sufficiency of the response to these interrogatories centers on how each side read "to Plaintiff[s]." Based on representations made during oral argument, WWE intended to obtain information regarding public statements and articles that downplayed the risks of concussions and that were provided to or seen by the plaintiffs. WWE further clarified that it was seeking details regarding a specific allegation made by plaintiffs in their complaint. In contrast, plaintiffs' counsel stated that their reading of the interrogatories was that WWE was inquiring about statements that downplayed the risks of concussions that the plaintiffs could face. In other words, counsel understood "to plaintiffs" to refer to the potential risks "to plaintiffs" as opposed to

9

deceptive statements made "to plaintiffs." Admittedly, the plaintiffs could reasonably interpret the interrogatories in such a manner.

Regardless of which interpretation the Court adopts, the plaintiffs failed to sufficiently respond to these interrogatories.[3] Rather, plaintiffs simply referred WWE to previously provided documents.

In addition to generally referring to documents it had already produced, plaintiffs refferred WWE to "Dr. Maroon's public statements regarding risks of concussions," the entire book Head Games written by Chris Nowinski, and congressional testimony of Stephanie McMahon Levesque, which Judge Bryant had already admonished the plaintiffs for mischaracterizing.[4] The

---

[3] Interrogatory 12 (LoGrasso) and interrogatory 13 (Singelton), deal with alleged attempts by the WWE to discredit scientific studies related to head injuries. The plaintiffs responded by directing the WWE to the answers previously provided by LoGrasso in response to interrogatory 11 and by Singleton in response to interrogatory 12, which, as discussed were insufficient for their lack of specificity. Plaintiffs' responses also referred to the lack of information shared by WWE regarding the studies, however, that portion of plaintiffs" response was unresponsive to the actual question because it did not attempt to address actual attempts by WWE to discredit those studies.

[4] In Judge Bryant's March 21, 2016 ruling on the Defendant's Motion to Dismiss, the Court attempted to resolve any continued confusion over Stephanie McMahon Levesque's testimony before the United States Congress. In previous filings and arguments, Plaintiffs had argued that Ms. Levesque told Congress that "there were no documented concussions in WWE's history." (Ruling

10

Court concedes that there was one specific article identified in Mr. LoGrasso's interrogatory response, but no attempt was made to identify any comments within that article that plaintiffs attribute to WWE that supposedly downplay the risks of concussions.

An apparent pattern has emerged in most of plaintiffs' interrogatory responses. When confronted with their own allegations taken from their own complaint, plaintiffs simply direct the WWE to multiple documents and assert that the answer to the interrogatory is located somewhere within these documents, or the plaintiffs refer vaguely to a public statement without providing any specifics to WWE.

During oral argument the Court directly discussed this issue with plaintiffs' counsel, who conceded in relation to LoGrasso's interrogatory 15 and Singleton's interrogatory 16[5]

---

on Def. Mot. to Dismiss, Dkt. 116 at 58-59.) As Judge Bryant stated, plaintiffs' argument, made repeatedly, is "at the very least, misleading[]" noting that Ms. Levesque was only asked about documented instances of concussions after the enactment of the WWE's wellness policy. (Id. at 59.) Thereafter Judge Bryant cautioned plaintiffs' counsel that the continued misuse of "deliberately misleading language . . . undermines his and Plaintiffs' credibility[.]" (Ruling on Defendant's Motion to Dismiss, Dkt. 253 at 24, Nov. 10, 2016.)

[5] Interrogatory 15 (to LoGrasso) and interrogatory 16 (to Singleton) asked the plaintiffs to:

Identify in detail who at WWE criticized "the legitimate scientific studies," as alleged in ¶¶ 193 & 208 of the

11

that some of the answers were "perhaps inartfully worded." (Tr. 132:6-7, Mar. 2, 2017.) Additionally, the Court stressed that the plaintiffs had an obligation, especially in light of Judge Bryant's ruling on the motion to compel, to tell WWE where in the supplied documents or identified books and articles the information requested by the interrogatories is located. (Tr. 132:24-133:11, Mar. 2, 2017.)

In their opposition plaintiffs argue that in directing WWE to previously supplied documents or to records in WWE's possession they have complied with Rule 33(d). (Plaintiffs' Opposition, Dkt. 216 at 19.) The Court disagrees. "Rule 33 does not permit a party to avoid specific responses to interrogatories by reference to undifferentiated masses of documents." This, LLC v. Jaccard Corp., No. 3:15-CV-1606(JBA), 2017 WL 547902, at *3 (D. Conn. Feb. 9, 2017). Instead, as suggested by the undersigned's comments during oral argument, the rule "requires that a party seeking to use alternative means of responding to an interrogatory specify the records from which

---

Second Amended Complaint, including in Your answer the date, place, and person(s) rendering the criticism, and how and when the criticism first came to Your attention.

(Dkt. #198-4 at 10.) The Court notes that beyond the internal references to other insufficient responses, the plaintiffs appear to comply with Judge Bryant's ruling by indicating that there are no such statements.

a response can be ascertained." New Colt Holding Corp. v. RJG Holdings of Florida, Inc., No. CIV.3:02-cv-173(PCD), 2003 WL 22327167, at *2 (D. Conn. June 17, 2003). The plaintiffs should point to specific statements in the supplied documents that are responsive to the specific inquiry

In interrogatory 14 to LoGrasso and interrogatory 15 to Singleton, WWE sought information addressing a very specific allegation in the second amended complaint. More specifically, plaintiffs had alleged that WWE, in communications with wrestlers, not only omitted information but had in some way affirmatively stated that "WWE wrestlers with diagnosed brain trauma did not receive these injuries as a result of wrestling for WWE." (Pls.' Second Am. Comp., ¶¶ 178 and 185.) Plaintiffs once again steered the WWE to random publications and documents with little specificity or guidance and referred to conversations with a trainer and a physician, which were not responsive to the interrogatories. Furthermore, Judge Bryant's order was clear that in the event that the plaintiffs were unable to identify a statement or speaker in response to an interrogatory the plaintiffs were required to state that fact. In this instance, the plaintiffs appear unable to find documentation to back up their assertion. Therefore, the proper response should have been that the plaintiffs are unable to identify any such statements. If, in fact, the plaintiffs are

able to identify such statements, the Court is unable to determine what those statements are, despite having read the interrogatory responses multiple times and having had the benefit of oral argument.

The remaining interrogatories, number 16 to LoGrasso and number 17 to Singleton, highlight a separate issue. These interrogatories go to the heart of the remaining claim of fraud by omission. Plaintiffs' counsel appears to be sincerely unsure of the proper manner in which to respond to these interrogatories, given the nature of the fraud by omission claim. The Court notes that it appears that plaintiffs have attempted to respond to these interrogatories more fully, however, the Court does not believe that the supplemental answers are any more responsive than the original answers. While, clearly the references to other interrogatory responses provided by plaintiffs will be cleaned up in any supplemental responses, the Court stresses that this interrogatory appears to go to the very heart of plaintiff's claim. Plaintiffs should at a minimum be able to specify what information they allege was known to WWE, and how plaintiffs relied upon in some manner.

The Court finds that the plaintiffs' responses were insufficient for the reasons outlined in this recommended ruling. While the Court does not find the required level of

14

willfulness or culpability to recommend that this case be dismissed, many of the responses provided by the plaintiffs rise to a level where the Court deems it appropriate to impose sanctions on plaintiffs' counsel to dissuade further abuse of the discovery process and promote thorough compliance with court orders moving forward. Given the evasiveness of plaintiffs' responses, the fact that this conduct continued through the meet and confer discussion and after Judge Bryant's ruling on the motion to compel, the Court is of the opinion that sanctions are appropriate. Since this is a recommended ruling and the undersigned believes that the Court is fully aware of the lengthy history in this matter, the Undersigned will not recount it. The Court has admonished plaintiffs' counsel on several occasions but declined to impose sanctions after threatening to impose them.

The Court would be remiss not to mention that Plaintiffs' counsel, specifically Attorney Kyros, has been on notice that plaintiffs need to comply with Court orders and the Federal Rules of Civil Procedure throughout this litigation.[6] The Court

---

[6] During a June 8, 2015 status conference Judge Bryant expressed concerns over the quality and content of plaintiffs' filings. Judge Bryant spoke in clear terms regarding the federal rules, pleading standards, and her own expectations for this litigation going forward. Counsel was reminded that "you've got to have a good faith belief in the claim that you file at the time you file[] it." (Transcript of Status Conference, 3:15-cv-425-VLB, Dkt.73 at 47.) Counsel was

15

hopes that this, a lesser sanction than dismissal, will be sufficient to get this litigation moving in a reasonable manner.

---

instructed to file an amended complaint which did not have "any scrivener errors, hyperbolic, inflammatory opinions and references to things that don't have any relevance" to the claims being made. (Id.) Judge Bryant pointed out that "[a] complaint should be a clear and concise statement of the facts that form the basis of [the] claims." (Id. at 61.) Counsel was warned that anything beyond the facts necessary to establish a claim "is just window dressing." (Id.)

In a subsequent ruling Judge Bryant noted that plaintiffs excessively long complaint contains "precious few allegations which detail specific instances of conduct that have wronged" the named plaintiffs. (Ruling on Def. Mot. to Dismiss, Dkt. 116 at 7.) Adding that some allegations are "patently false" and "copied and pasted in whole cloth from one Complaint to another."

Lastly, Judge Bryant has noted that Attorney Kyros and co-counsel have "declined to heed the Court's admonition to edit the unnecessary verbiage, irrelevant allegations, conclusory statements and inflammatory language in the original complaints." (Ruling on Def. Mot. to Dismiss and for Sanctions, Dkt. #253 at 9.) Further the Court stated that Attorney "Kyros' false and misleading statements, identified by WWE above, together with other statements the Court has examined – including [Attorney] Kyros' unprovable claim that deceased and, in at least one case, cremated former wrestlers had CTE 'upon information and belief' – are highly unprofessional." (Id. at 27.) Specifically Judge Bryant admonished "[Attorney] Kyros and his co-counsel to adhere to the standards of professional conduct and to applicable rules and court orders lest they risk future sanction or referral to the Disciplinary Committee of this Court. " (Id. at 27-28.)

16

**CONCLUSION**

Based on the foregoing, the undersigned recommends that defendant's motion for Sanctions (Dkt. # 198) be GRANTED, in part.

The undersigned recommends that the plaintiffs' second supplemental responses be stricken and the plaintiffs provide yet another round of supplemental responses to WWE's interrogatories by March 15, 2018.[7] The responses are to be in compliance with Judge Bryant's previous ruling, provided in good faith, be specific, and must address the issues raised in the specific interrogatories. It is recommended that if Plaintiff, once again, fails to answer the interrogatories fully and specifically that plaintiffs be precluded from introducing evidence relating to the allegations addressed by the interrogatories.

In addition, the undersigned recommends that Attorney Kyros and his Law Offices pay all of the legal fees that the defendant reasonably incurred in connection with this motion for sanctions. All fees paid pursuant to this order are to be paid

---

[7] In the event that either party objects to this recommended ruling the March 15, 2018 deadline will become moot. In that instance, if the recommendation is affirmed, the Court should set whatever deadline for supplemental responses it deems reasonable and appropriate.

by the law firm and not by the client, nor are the fees to be recovered through any judgment rendered in this or future related litigation. Lastly, it is recommended that plaintiffs' counsel be required to provide this and any subsequent ruling related to this motion for sanctions to their clients.

Furthermore, plaintiffs and their counsel are now on notice that any further noncompliance during the remainder of this litigation may result in the dismissal of the case.

Any party may seek the district court's review of this recommendation. *See* 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within fourteen days after service of same); Fed. R. Civ. P. 6(a), 6(d) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992). Failure to timely object to a magistrate judge's report will preclude appellate review. Small v. Sec'y of Health and Human Serv., 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED this 22nd day of February 2018, at Hartford, Connecticut.

                                             /s/
                                  Robert A. Richardson
                                  United States Magistrate Judge