UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, RYAN SAKODA, and MATTHEW ROBERT WIESE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Defendant. | CIVIL ACTION NO.<br>3:15-cv-001074 (VLB)<br>Lead Case |
| EVAN SINGLETON and VITO LOGRASSO,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Defendant. | CIVIL ACTION NO.<br>3:15-CV-00425 (VLB)<br>Consolidated Case<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFFS SINGLETON AND LOGRASSO'S OBJECTIONS
TO MAGISTRATE JUDGE RICHARDSON'S FEBRUARY 22, 2018
<u>RULING REGARDING THEIR INTERROGATORY RESPONSES</u>**

Pursuant to 28 U.S.C.S. § 636(b) and Fed. R. Civ. P. 72, Plaintiffs respectfully submit this Objection in response to the February 22, 2018 Ruling by the Honorable Magistrate Judge Richardson regarding Plaintiffs Singleton and Lograsso's eleven interrogatory responses, Dkt. No. 371 ("Recommended Ruling"). For the reasons stated herein, Plaintiffs request the Court reject the Recommended Ruling and deny the Defendant's Motion for Sanctions.

1

Plaintiffs and Plaintiffs' Counsel supplemented WWE's Requests for Interrogatories in good faith. ("Responses"). Plaintiffs were not seeking to hinder discovery. However, the mechanical responses required by the Court to these contention interrogatories violated Plaintiffs' rights to answer their discovery Responses in a manner that does not skew their claims improperly in favor of the Defendant's position. Requiring particular language in a party's interrogatory response to a contention interrogatory is an abuse of the Court's discretionary authority. As a result, Plaintiffs had substantial justification for their Responses and to sanction Plaintiffs' Counsel for these eleven Responses is clearly erroneous and contrary to law.

I.  FACTUAL BACKGROUND

On February 22, 2018, Judge Richardson filed his Recommended Ruling issuing partial discovery sanctions against Plaintiffs' Counsel because, as he stated, Plaintiffs' Responses were "evasive and incomplete". Recommended Ruling, p. 4. Judge Richardson found Plaintiffs' Responses inadequate by referencing Judge Bryant's previous Order on WWE's Motion to Compel (Dkt. No. 144) these particular supplemental responses. *Id.*, at 3 (asserting Judge Bryant "specifically instructed that where the "Plaintiff is unable to identify a statement or speaker in response to an interrogatory, Plaintiff <u>must</u> state that fact." (Id.) (emphasis added).).

Plaintiffs believed they had complied with Judge Bryant's Order (Dkt. No. 144) when they did supplement their interrogatory responses. However, only fifty-five days later, WWE filed the underlying Motion for Sanctions (Dkt. No. 198)

without meeting and conferring with Plaintiffs' Counsel. Plaintiffs, however, offered to further supplement their Responses in both their pleadings and during oral testimony. Plaintiffs now assert their intention to provide formal supplemental Responses by March 31, 2018.

## II. STANDARD OF REVIEW

A Magistrate Judge has the authority to review, hear and "determin[e] non-dispositive motions, including, but not limited to, those relating to discovery and other matters of procedure." D. Conn. Magis. R. 72.1(C)(2). Pretrial orders of a magistrate under 28 USCS §636(b)(1)(A) are reviewable under the clearly erroneous and contrary to law standard; they are not subject to *de novo* determination as are magistrate's proposed findings and recommendations under § 636(b)(1)(B). *Merritt v. International Brotherhood of Boilermakers*, 649, F2d 1013 (5th Cir. 1981). After a party's timely objection to a Magistrate Judge's written determination, the reviewing Judge "shall set aside any order found to be clearly erroneous or contrary to law". D. Conn. Magis. R. 72.2(b). "Under the clearly erroneous standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently. Rather, the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008). "A magistrate judge's decision is contrary to law only where it runs counter to controlling authority". *Id.*

When determining whether a discovery order has been violated, the Court must consider:

> (1) the willfulness of the non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party was warned that further noncompliance could result in sanctions.

*Ruffino v. Corr. Officer Harrell*, No. 15-cv-509, 2015 WL 9451028, at *1 (D. Conn., Dec. 23, 2015) (internal citations omitted).

III. ARGUMENT

Plaintiffs object to three of the Recommended Rulings as clearly erroneous and contrary to law. First, Plaintiffs' Responses should not be stricken as they are responsive to the requests and are not in violation of the Rules. Second, Plaintiffs' have an affirmative obligation to supplement their Responses, which they intend to do, and sanctioning Plaintiffs for answering contention interrogatories within the confines of the Rules is contrary to the law. Finally, the singling out of Attorney Kyros and his Law Offices is not founded in fact as this Recommended Ruling was admittedly limited to only eleven interrogatory Responses and no evidence on the record indicates directed sanctionable conduct by Attorney Kyros or his Law Offices, nor was there a description of this conduct in the Recommended Ruling.

A. Plaintiffs' Responses were Substantially Justified under the Rules.

The Responses were substantially justified because they sought to provide adequate answers to WWE's interrogatory requests without prejudicing the Plaintiffs' position by responding mechanically to WWE's skewed interpretation of fraud by omission requirements. *Ruffino v. Corr. Officer Harrell*, No. 15-cv-509, 2015 WL 9451028, at *1 (D. Conn., Dec. 23, 2015) (internal citations omitted).

4

**Plaintiffs did respond to WWE's Requests and did supplement their answers. Plaintiffs assert it is unfairly prejudicial to require Plaintiffs to respond to discovery requests using the opposing party's skewed formulaic responses that do not properly address Plaintiffs' claims.**

**Regardless, as Plaintiffs' pleadings have made clear, the ability to restrict an interrogatory to specific people or specific statements does not address Plaintiffs' remaining claims.[1] Plaintiffs are not benefiting from the alleged failure to properly respond because, except for the last set, these are non-determinative interrogatories of Plaintiffs' claims for liability.** *See Update Art, Inc. v. Modiin Pub., Ltd.*, **843 F.2d 67, 71 (2d. Cir. 1988) (holding that disciplinary sanctions under Rule 37 are to serve three purposes, first of which is to ensure that a party will not benefit from its own failure to comply).**

**It is also worth noting that Plaintiffs' alleged failure to provide the mechanical responses WWE has sought to establish its version of the case should not be deemed sanctionable conduct. The evidence that is ultimately before a trier of fact will determine the value of Plaintiffs' remaining claims.**

**Forcing the Plaintiffs to only respond to the interrogatories in Court-adopted language created by the opposing party is inherently prejudicial and is an abuse of discretion. The Recommended Ruling sanctioning Plaintiffs' Counsel because of these Responses is clearly erroneous and contrary to law given Plaintiffs' substantial justification to provide their own Responses.**

---

[1] For example, Plaintiffs' remaining claim, fraud by omission, does not require specific people or specific statements to establish liability against WWE because Plaintiffs' only need to prove that WWE knew the risks associated with WWE wrestling and did not uphold its responsibility to protect its performers from those risks, which has resulted in the Plaintiffs' long-term injuries.

5

**B. Plaintiffs' Responses to These Contention Interrogatories Shall Be Supplemented.**

Finally, given Plaintiffs' affirmative duty to supplement their Responses, and their intention to do so, the imposition of sanctions on these grounds is unjust. Plaintiffs have demonstrated compliance with this Court's Orders[2] and had substantial justification for their Responses as detailed above in Section A.

Plaintiffs' and their Counsel, as demonstrated below, have the requisite information for the Interrogatory Responses and are in the process of formalizing a supplemental Response to provide to WWE. Below are a few examples meant to address some of the Court's articulated concerns with Plaintiffs' Responses.

**1. Lograsso Response No. 6.**

Mr. Lograsso intends to provide detailed symptoms that he has suffered from since his relationship with WWE ended, as also described in his deposition testimony. Particularly, Mr. Lograsso suffers from memory loss and daily, recurring headaches that he alleges he has suffered from constantly for many years. He notes that these headaches become severe three or four times a week and elevate to migraines, often causing him to wake up in the middle of the night with a severe headache. He continues to suffer from mood swings and anger issues, and often gets irrationally angry at trivial arguments. He cannot pinpoint the exact date of the onset of these symptoms but does know that he noticed them

---

[2] Attorney Kyros and his Law Offices have endeavored to comply fully with Judge Bryant's Orders in the consolidated cases, including providing the Court with 66 Affidavits, filing an Amended Complaint in *Laurinaitis*, and an Amended Answer to the *Windham* Declaratory Judgment action within the Court ordered 35-day deadline. Additionally, Attorney Kyros has also filed cases with deceased wrestlers diagnosed with CTE by Dr. Bennet Omalu in furtherance of the Court's earlier rulings in the consolidated cases.

6

after retiring from WWE and that they have gotten worse every year since. Additional medical information and medical providers will be provided in the supplemental response.

**2. Lograsso Response 11 and Singleton Response 12.**

Plaintiffs have alleged that WWE has an ongoing history of downplaying head injuries in its performances. Plaintiffs provided specific examples in its supplemental Response, but a factual analysis was made by the Court on the validity of those examples. This determination was an abuse of discretion and Plaintiffs' Counsel should not be sanctioned for providing specific examples to the Defendant's Response. Regardless, in addition to the already provided examples, Plaintiffs also assert the following, which will be further supplemented:

> i. It's True! It's True!, By Kurt Angle, WWF Regan Books, 1st Ed. (2001), particularly pages 229-233. (describing how a wrestler continued to perform in a match with Vincent and Stephanie McMahon after hitting his head on concrete and "didn't know where the hell I was". "Match was so good maybe I should have a concussion every time").
>
> ii. In a WWE produced program called Confidential that aired between 2002 and 2004, Paul Levesque, the current WWE Executive Vice President of Live Events, praised wrestler Kurt Angle for continuing a match after being knocked out. Mr. Levesque stated on camera: "you can see it when Kurt was coming out, he was glass eyed looking around, there's a guy unconscious in the ring, he's just going and he [was] new too he [was] not like a veteran or anything… hats off to him for that".
>
> iii. In gifting millions of dollars to the CLF, WWE executives stated to USA Today: "Levesque said pro wrestling is fundamentally different from football when it comes to hard impacts. "If you're in the NFL, your goal is to try to hit the other guy as hard as possible… The goal in what we do is the exact opposite". "WWE Funds Research Into Treatment of Chronic Brain Trauma", USA Today Sports (May 16, 2013).

7

3. <u>**Lograsso Response 14 and Singleton Response 15**</u>.

Plaintiffs assert that they should not be beholden to WWE's specific language in responding to the interrogatory requests, but do have specific, affirmative statements by WWE that wrestlers did not receive their injuries from WWE performances. A couple examples, which will be further supplemented, are below:

    i.    **WWE's Full Statement to ABC News, Sept. 5, 2007, regarding Chris Benoit's murder-suicide: "It is natural that a father would try to come up with a reason why his son would tragically murder his wife and child, and then commit suicide. Based on the study by the Sports Legacy Institute that claimed Chris Benoit had the brain of an 85-year-old with dementia, Mr. Benoit asserts that head trauma was the cause of his son's aberrant, criminal behavior. However, common sense would dictate that this is impossible. Someone with the brain of an 85-year-old with dementia would be unable to keep a traveling work schedule, drive himself to arenas, and perform intricate maneuvers in the ring much less commit a methodical murder-suicide over a 48 hour period."**

    ii.    **On December 9, 2009, regarding Andrew Martin, Bailes stated: "People wondered if Mike Webster was an isolated event. And then came Terry Long and Andrew Waters. When we announced our findings about Chris, some in the media said it was 'roid rage. We said at the time the real finding was that repeated head trauma was the cause. With Andrew Martin as the second case, the WWE and the sport in general have to ask themselves, 'Is this a trend?' The science tells us that jumping off 10-foot ladders and slamming people with tables and chairs is simply bad for the brain." WWE responded to Bailes, saying, "While this is a new emerging science, the WWE is unaware of the veracity of any of these tests, be it for Chris Benoit or Andrew Martin. Dr. Omalu claims that Mr. Benoit had a brain that resembled an 85-year-old with Alzheimer's, which would lead one to ponder how Mr. Benoit would have found his way to an airport, let alone been able to remember all the moves and information that is required to perform in the ring. WWE has been asking to see the research and tests results in the case of Mr. Benoit for years and has not been supplied with them."**

8

iii. Associated Press, July 1, 2015, *available at* https://sports.yahoo.com/news/wwe-seeking-block-concussion-related-lawsuits-185521557--spt.html: "Before this guy [Attorney Kyros] started trolling around looking for people to sue, we didn't have one person, none, claiming they had any kind of traumatic brain injuries, or dementia or ALS or any of the kind of stuff you see associated with the NFL," McDevitt said."

4. **Lograsso Response 16 and Singleton Response 17.**

As Judge Richardson commented, "this interrogatory appears to go the very heart of plaintiff's claim". Recommended Ruling, p. 14. This overly broad contention interrogatory has two parts, which the Plaintiffs have already responded to throughout this litigation and discovery[3], but supplement further here, and will include additional evidence in their supplemental Response. Plaintiffs also assert that ongoing knowledge is a key element to their claims, and the evidence provided below demonstrates WWE's developing knowledge but noticeable lack of action to protect its former performers despite its duty to do so.

    i. On May 17, 2003, the WWE donated over two million dollars to the Concussion Legacy Foundation (CLF), a leading research group in concussion science. WWE Executive, Paul Levesque, holds a board seat on the CLF. A WWE press release stated: "WWE is proud to help advance this critical research to help anyone at risk of suffering CTE," said Paul Levesque, EVP Talent and Live Events for WWE.

    ii. On June 15, 2016, the Boston Globe published an article highlighting an apparent improper relationship with Nowinski's CLF and the WWE. According to the article, the WWE is the largest single financial sponsor of the organization, spending millions of dollars to finance the CLF and its research in CTE.

---

[3] Particularly, the entire sections of Plaintiffs' pleadings detailing the long and accepted history of neurological science and the pleadings detailing WWE's inherent knowledge of both the science and the physical symptoms attributed with the injuries that the Plaintiffs' displayed during their employment with WWE.

iii. The CTE studies by CLF to date have not involved any professional wrestlers – excepting one in 2007 – Chris Benoit which was the very first and only wrestler studied by the group.[4]

iv. Stein, TD, et al., "Concussion in Chronic Traumatic Encephalopathy, <u>Curr Pain Headache Rep.</u> (Oct. 2015). Financed in part by WWE, this study describes CTE as a disease with a 15-20 year latency period. Further, it finds that subconcussive hits alone appear sufficient to lead to CTE and that "chronic and repetitive nature of head trauma, irrespective of concussive symptoms, … is the most important driver of disease."

As detailed above, Plaintiffs' claims are brought in good faith and are established by the facts presented in this case. The above examples do not complete all of Plaintiffs' supplemental responses to WWE's interrogatory requests but do provide evidence of Plaintiffs' intent to supplement their Responses. WWE's ongoing and personal involvement in CTE research makes it impossible for it to disclaim responsibility to its former performers. Plaintiffs' Responses should not be sanctioned because they were answered in a manner believed to be detailing their claims, and not WWE's skewed perception of them. For these reasons, Plaintiffs' Responses were substantially justified and the Recommended Ruling is clearly erroneous.

C. Sanctions Against Attorney Kyros Are Unjust and Unarticulated.

The Recommended Ruling fails to explain the basis for the fine specifically imposed against Attorney Kyros and his Law Offices in this particular matter. *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (holding "that the sanctions must be just; and the sanction must relate to the

---

[4] As provided herein in §§ III.B.2 and 3, WWE has not accepted the findings surrounding Chris Benoit's diagnosis.

particular claim to which the discovery order was addressed"). Nowhere in the Recommended Ruling was Attorney Kyros or his Law Offices noted as having acted on this particular discovery matter so as to justify being singled out and required to solely pay WWE's attorneys' fees.

Although all Plaintiffs' Counsel have been ordered to comply with the other recommended sanctions, including having the Responses stricken, being required to submit supplemental responses, and notifying our clients, the particular singling out of Kyros for the fees is unjustified and furthers the Defendant's ongoing narrative that is not pertinent to the claims before the Court. *Id.*

Additionally, given WWE's failure to meet and confer with Plaintiffs' Counsel prior to filing its Motion for Sanctions and Plaintiffs' ongoing assertions that it will supplement their Responses, sanctions are unjustified and an abuse of discretion. Ultimately, Plaintiffs and Kyros are encouraged by Judge Richardson's note that the litigation will be "moving in a reasonable manner" and hope to facilitate that process to the best of their ability. In that vein, Plaintiffs intend to supplement their Responses by March 31, 2018.

IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court reject the Honorable Judge Richardson's Recommended Ruling, Dkt. No. 371, and DENY WWE's Motion for Sanctions because the Recommended Ruling is clearly erroneous and contrary to law. Plaintiffs additionally request oral argument on this matter.

Dated: March 8, 2018.

**Respectfully Submitted,**

**/s/ Konstantine Kyros**
**Konstantine W. Kyros**
**Bar No. ct30132**
**Anthony M. Norris**
**KYROS LAW OFFICES**
**17 Miles Rd.**
**Hingham, MA 02043**
**Telephone: (800) 934-2921**
**Facsimile: 617-583-1905**
**kon@kyroslaw.com**
**anorris@kyroslaw.com**

*Attorneys for Plaintiffs.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March, 2018, a copy of the foregoing was served via this Court's electronic case filing system.

*/s/ Konstantine Kyros*
**Konstantine Kyros**