UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH,** *et al.*, | : NO. 3:15-cv-01074-VLB |
| | : LEAD CASE |
| Plaintiffs, | : |
| vs. | : |
| **WORLD WRESTLING ENTERTAINMENT, INC.**, | : |
| Defendant. | : |

| | |
|---|---|
| **EVAN SINGLETON and VITO LOGRASSO,** | : NO. 3:15-cv-00425-VLB |
| | : CONSOLIDATED CASE |
| Plaintiffs, | : |
| vs. | : |
| **WORLD WRESTLING ENTERTAINMENT, INC.**, | : |
| | : SEPTEMBER 6, 2018 |
| Defendant. | : |

**REPLY IN FURTHER SUPPORT OF WORLD WRESTLING ENTERTAINMENT, INC.'S APPLICATION FOR ATTORNEYS' FEES ORDERED BY THE COURT**

Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits this reply in further support of its application (the "Application") for attorneys' fees and costs incurred in connection with its Motion for Sanctions for Failure to Comply with Court's Order on Motion to Compel dated August 8, 2016 (the "Motion for Sanctions").

I.  **ARGUMENT**

As he has done throughout these consolidated proceedings, Attorney

Konstantine W. Kyros' ("Kyros") response in opposition to WWE's Application (the "Response," Doc. 379) misrepresents the salient facts and governing law in an effort to obscure his own fraud on the Court that permeates each of the cases he has filed against WWE and particularly underlies the Motion for Sanctions for which this Court awarded WWE its attorneys' fees and costs.

**A.    Kyros Ignores that the Motion for Sanctions Concerned His Violation of a Court Order in an Attempt to Cover Up His Fraud On the Court**

The Motion for Sanctions did not merely concern six routine interrogatory responses seeking information that Kyros alternatively mischaracterizes in his Response as "largely irrelevant" (Doc. 379 at 3) and "totally unnecessary" (*id.* at 8).  Rather, the Motion for Sanctions concerned Kyros' willful violation of a Court Order in an attempt to continue to conceal his pleading fraud on the Court.  Through the Motion for Sanctions, WWE exposed that this case was premised on false and fraudulent allegations and therefore frivolous from the start.

The eleven — not six, as Kyros erroneously asserts in his Response — interrogatories at issue in the Motion for Sanctions (*see* Doc. 371 at 3 n.1), sought to expose the lack of a factual basis underlying Plaintiffs' fraudulent omission claims.  As the Court found in adopting Judge Richardson's Recommended Ruling, Plaintiffs were "unable to find documentation to back up their assertion" and, therefore, "should have stated that they were unable to identify a statement or speaker, as required by the Court's Order on WWE's Motion to Compel."  (Doc. 376 at 4 *quoting* Doc. 371 at 13).  In reality, the allegations at issue were among the many instances in this litigation in which Kyros manufactured fraudulent allegations in his pleadings.  Kyros then compounded the burden to WWE of

litigating fraudulent claims by refusing to admit that he lacked any basis for such allegations, even violating court orders requiring him to do so, which put WWE to the expense of demonstrating the falsity of the allegations through deposition testimony and ultimately assembling a comprehensive presentation for the Court to understand the magnitude of Kyros' fraudulent conduct.  Kyros' Response urges the Court effectively to reward him for his dishonesty by reducing the award to WWE of the attorneys' fees that it, in fact, was forced to incur to expose Kyros' wrongdoing.[1]

B.  **Kyros Does Not Dispute that, Under Connecticut Law, the Attorneys' Fees Paid By A Sophisticated Client Are Presumed To Be Reasonable**

In his Response, Kyros does not challenge the basic premise of *Connecticut law* that the attorneys' fees paid by a sophisticated client are presumed to be reasonable — both with respect to the hours worked and the hourly rates charged.  See *Wells Fargo Bank, NA v. Konover*, No. 3:05-CV-1924(AWT), 2014 WL 3908596, at *5-10 (D. Conn. Aug. 8, 2014); *id.* at *5 ("under

---

[1] The magnitude of Kyros' fraud on the Court is cogently demonstrated by Evan Singleton's Instagram account.  See https://www.instagram.com/evan_sngltn_strongman/ (last visited Aug. 27, 2018).  Despite maintaining in this lawsuit that he is completely disabled, Singleton avidly posted about his bodybuilding activities under the Instagram username evan_sngltn_npc prior to his deposition in May 2016.  After the inconsistency between those bodybuilding activities and his claims of complete disability to this Court was exposed in his deposition on May 11, 2016, Singleton's Instagram posts abruptly ceased.  In March 2018, the same month that the Court granted summary judgment in favor of WWE, Singleton resumed posting about his bodybuilding activities on Instagram under the new username, evan_sngltn_strongman.  The new posts currently available on Singleton's Instagram show Singleton competing in, and winning, North Carolina's Strongest Man competition as well as competing in the Giant's Live North American Championships.  The stated goal of this supposedly completely disabled man is to become the strongest man in the world.  See https://www.instagram.com/p/BkXuRhfh6nc/?taken-by=evan_sngltn_strongman.

Connecticut law, evidence of the fees and expenses [a party] actually incurred creates a presumption that such costs were reasonable"); *id.* at *5 ("there is a strong presumption that the rate a paying client actually did pay during the course of the litigation is reasonable"); *id.* at *6 ("the cases demonstrate that when a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable"); *id.* at *10 ("The presumption of reasonableness under [Connecticut law] . . . applies to the hours worked as well as the hourly rates charged."). This standard is consistent with the touchstone in the Second Circuit, as articulated in a case on which Kyros relies in his Response, that "[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007)). Unable to challenge this governing standard, Kyros cites to inapposite authority from other jurisdictions.

Kyros also does not challenge the reasonableness of the rates charged by K&L Gates LLP and Day Pitney LLP and paid by WWE. Indeed, as discussed in WWE's Application, the Honorable Alvin W. Thompson in *Konover* specifically found that the hourly rates charged by Day Pitney LLP for the services of WWE's counsel, Jeffrey P. Mueller, and those of several of its other professionals were reasonable. The hourly rates charged by K&L Gates LLP are within the range of rates charged by attorneys at Day Pitney LLP and comparable firms in Connecticut. (Doc. 378, Ex. 2 ¶ 11). As a matter of Connecticut law, therefore,

4

there is no basis for Kyros to claim that the attorneys' fees and costs actually paid by WWE in connection with the Motion for Sanctions were unreasonable.

Instead, Kyros argues only that the number of hours worked was somehow excessive. In doing so, however, Kyros ignores that he was to blame for the protracted nature of these proceedings. Specifically, the time incurred by WWE in connection with the Motion for Sanctions was directly caused by his serving false interrogatory responses to conceal the lack of a factual basis for Plaintiffs' fraud allegations; ignoring court orders that required him effectively to concede the lack of basis for such allegations if he had none; and then attempting to defend his actions through successive rounds of briefing and argument. Once more, Kyros should not be rewarded for forcing WWE to run this gauntlet of his misconduct.

In particular, Kyros' assertion that WWE incurred excessive fees in preparing for the oral argument before Judge Richardson rings decidedly hollow. Judge Richardson scheduled an all-day hearing on a very significant motion during which both sides used PowerPoint presentations. Kyros' post-hoc argument that WWE's PowerPoint presentation supposedly was unnecessary conveniently ignores that he himself thought a PowerPoint would be beneficial to the Court. Here, again, Kyros should not be rewarded and WWE punished because of WWE's successful advocacy.

C.  There Is No Factual Or Legal Basis To Reduce WWE's Attorneys' Fees Based On the Court's Supposed Rejection of Certain Arguments

Contrary to Kyros' assertion, the Court did not "reject" WWE's arguments that Kyros suborned perjury and that his communications with his clients

5

regarding verifications to the false interrogatory responses were subject to the crime-fraud exception. On the contrary, Judge Richardson did not address the merits of either of these arguments. Judge Richardson did not need to reach these arguments because he instead granted sanctions based on Kyros' willful violation of the Court's Order to fully answer the interrogatories and warned Kyros "that any further suggestion of dishonesty throughout this litigation could, and likely should, result in much more dramatic sanctions up to and including the dismissal." (Doc. 371 at 3 n.2).

Regardless, even if the Court had rejected WWE's perjury/crime-fraud arguments, it would not preclude the recovery of fees incurred in connection with asserting such arguments. The Second Circuit has ruled that time expended on "unfruitful" legal theories is compensable as long as the theories are not frivolous. *See Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir. 1980) ("[W]e do not approve the deduction for work on legal theories that proved 'unfruitful' but were not found to have been frivolous."). In fact, one of the principal cases on which Kyros relies in his Response cited approvingly to *Seigal* in rejecting the notion that a party should not be reimbursed for the effort expended on an unsuccessful motion, holding that the party "having been subjected to this lawsuit should not be penalized for undertaking a reasonable legal recourse." *Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 298 (E.D.N.Y. 1995) (citing *Seigal*, 619 F.2d at 164); *see also Research Commc'ns, Ltd. v. Meredith Corp.*, No. 3:00CV2179(DPM), 2008 WL 4183440, at *6 n.14 (D. Conn. Sept. 10, 2008) ("Reasonable paying clients may agree to pay[ ] their lawyers for advancing

plausible though ultimately unsuccessful arguments.") (internal citations and quotation marks omitted).

D. **WWE Did Not Excessively Bill Time Following Judge Richardson's Recommended Ruling**

Kyros' assertion that WWE's counsel excessively billed time following the entry of Judge Richardson's Recommended Ruling is completely unfounded. WWE's counsel obviously did not "anticipate" receiving fees from Kyros because WWE did not know whether the Court would adopt Judge Richardson's Recommended Ruling. As such, K&L Gates LLP and Day Pitney LLP had every incentive to be as efficient and reasonable as possible with respect to the time that each was billing WWE prior to entry of the Court's Memorandum of Decision Adopting Recommended Ruling on Defendant's Motion for Sanctions on July 22, 2018. Moreover, Kyros yet again ignores that the attorneys' fees that WWE incurred in this regard were in direct response to the extensive Objection (Doc. 372) that he chose to file in response to Judge Richardson's Recommended Ruling. Those fees, therefore, could have been avoided had he simply accepted Judge Richardson's Recommended Ruling and stopped litigating the issue.

E. **Day Pitney LLP's Billings Are Not "Unexplained" Nor Unreasonable**

Kyros' attacks on Day Pitney LLP's billings are a red herring. Kyros first demands reductions for "block billing" but then criticizes Mr. Mueller for making such reductions on the Day Pitney LLP bills in allocating fees only to work in connection with the Motion for Sanctions. Equally unfounded is Kyros' criticism of Mr. Mueller's work in connection with the Motion for Sanctions as purportedly "administrative and ministerial." (Doc. 379 at 12). Just as Judge Thompson

found in *Konover*, the billings charged by Day Pitney LLP, and actually paid by WWE, for Mr. Mueller to serve as WWE's local counsel in this case were reasonable.  In any event, Day Pitney LLP's billings were quite low (only $19,663 out of $174,408.50 of the fees for which WWE is seeking reimbursement pursuant to its Application).

## II.   CONCLUSION

For all of the foregoing reasons and the reasons set forth in WWE's Application, Attorney Kyros and his Law Offices should be ordered to pay WWE $176,486.74 in legal fees and costs that WWE has incurred in connection with the Motion for Sanctions.[2]  As WWE noted in its Application, WWE excluded several time keepers and categories of fees and prorated the fees associated with the March 2, 2017 hearing based on an allocation of the time spent on the Motion for Sanctions at the hearing in an effort to be as conservative as possible with respect to the legal fees for which it is seeking reimbursement.

                                DEFENDANT WORLD WRESTLING
                                ENTERTAINMENT, INC.,


                                By:   /s/ Jerry S. McDevitt
                                      Jerry S. McDevitt (pro hac vice)
                                      Curtis B. Krasik (pro hac vice)
                                      K&L GATES LLP
                                      K&L Gates Center

---

[2] Notably, this Court indicated that Kyros could seek contribution from his co-counsel for the sanction of attorneys' fees.  Kyros did not, however, file anything with the Court actually seeking contribution or demonstrating that any of his co-counsel had a role in the violations of the Court's compulsion order which culminated in sanctions.  Instead, Kyros simply stated in his Response that he would seek such contribution, evidently when he gets around to it.  (Doc. 379 at 2 n.1).

8

    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-6500
    Fax: (412) 355-6501
    Email: jerry.mcdevitt@klgates.com
    Email: curtis.krasik@klgates.com

    Jonathan B. Tropp (ct11295)
    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jbtropp@daypitney.com
    Email: jmueller@daypitney.com

    Its Attorneys.

**CERTIFICATION**

      **I hereby certify that on September 6, 2018 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.**

                                                      /s/ *Jeffrey P. Mueller*