# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RUSS MCCULLOUGH, et al.** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO.** |
| | : | **3:15-CV-1074 (VLB)** |
| **v.** | : | |
| | : | **LEAD CASE** |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| **Defendant.** | : | |

_____

| | | |
|---|---|---|
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | **3:15-CV-994 (VLB)** |
| **v.** | : | |
| | : | **CONSOLIDATED CASE** |
| **ROBERT WINDHAM, THOMAS** | : | |
| **BILLINGTON, JAMES WARE, and** | : | |
| **OREAL PERRAS,** | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **JOSEPH M. LAURINAITIS, et al.,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION NO.** |
| | : | **3:16-CV-1209 (VLB)** |
| **v.** | : | |
| | : | **CONSOLIDATED CASE** |
| **WORLD WRESTLING** | : | |
| **ENTERTAINMENT, INC. and** | : | **September 17, 2018** |
| **VINCENT K. MCMAHON** | : | |
| **Defendants.** | : | |

## MEMORANDUM OF DECISION
## GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS [DKT. NO. 205] AND TO DISMISS [DKT. NOS. 266, 269] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS [DKT, NO. 262]

**I.**   **Introduction**

On September 29, 2017, this Court issued an order (the "Order") regarding

a motion for judgment on the pleadings and motions to dismiss and for sanctions

filed by World Wrestling Entertainment, Inc. ("WWE") and Vincent McMahon (collectively, Defendants). The Order directed counsel for the Plaintiffs in the *Laurinaitis* action ("*Laurinaitis* Plaintiffs") and declaratory judgment Defendants in the *Windham* action ("DJ Defendants" or "*Windham* Defendants") (collectively, "Plaintiffs" or the "Wrestlers") to "file amended pleadings which comply with Federal Rules of Civil Procedure 8 and 9 and which set forth the factual basis of their claims or defenses clearly and concisely in separately numbered paragraphs." [Dkt. No. 362 at 20]. In order to assist Plaintiffs' counsel to meet their theretofore unsatisfied pleading obligation—as noted in the Court's prior rulings—and to mitigate any potential further prejudice to the Defendants, the Court also required the Wrestlers' counsel to demonstrate that they had conducted factual due diligence in preparation for filing an amended complaint by:

> submitting for *in camera* review affidavits signed and sworn under penalty of perjury, setting forth facts within each plaintiff's or [declaratory judgment] defendant's personal knowledge that form the factual basis of their claim and defense, including without limitation:
> 1. the date or dates on which they wrestled for WWE or any or its agents or affiliates (including the first and last date);
> 2. if they wrestled for more than one person and or entity, for whom they wrestled, and for what period of time;
> 3. whether they ever signed any agreement or other document in connection with their engagement to wrestle by or for WWE or any of its agents or affiliates;
> 4. whether they were ever or are now in possession of any document relating to their engagement to wrestle by or for WWE or any of its agents or affiliates, including without limitation W-4s, W-2s or 1099s; and
> 5. what specific WWE employees or agents said or did that forms the basis of each and every one of the claims or defenses in the wrestler's pleading, including:
>     a. a reference to the specific paragraph of the complaint;

      b. **when and where such act occurred or such statement was made;**

      c. **the identities of any and all the persons present at the time of the act or statement; and**

      d. **any and all other facts personally known to the affiant that form the basis of their belief that WWE or any or its agents or affiliates knew or should have known that wrestling caused any traumatic brain injuries, including CTE.**

*Id.* at 20-21. The Court reserved its judgment on pending motions to dismiss, for judgment on the pleadings, and for sanctions, to give the Wrestlers a final opportunity to file pleadings that complied with both the Federal Rules of Civil Procedure and the Order.

The Wrestlers filed a Second Answer in the *Windham* action [Dkt. No. 364] and a Second Amended Complaint ("SAC") in the *Laurinaitis* action [Dkt. No. 363] on November 3, 2017. The Wrestlers' counsel also submitted for *in camera* review affidavits from each Wrestler. After reviewing each of these submissions, and for the reasons that follow, the Court finds that Wrestlers' counsel did not comply with the Order and that declaratory judgment, dismissal, and sanctions are warranted.

## II. Background

On January 16, 2015, Plaintiff's counsel, Konstantine Kyros filed the first of six lawsuits on behalf of former WWE wrestlers, alleging they are either suffering from symptoms of permanent degenerative neurological conditions resulting from traumatic brain injuries sustained during their employment, or are at increased risk of developing such conditions. As set forth below, this case has been characterized by Attorney Kyros' repeated failures to comply with the clear, and unambiguous provisions of the Federal Rules of Civil Procedure and this

Court's repeated instructions and admonitions, which has resulted in a considerable waste of the Court's and the Defendants' time and resources.

A. <u>Attorney Kyros' Attempts to Evade the Court's Jurisdiction</u>

The first of the consolidated cases, with lead plaintiffs Evan Singleton and Vito LoGrasso, purported to be a class action and was transferred to this Court from the Eastern District of Pennsylvania pursuant to a forum selection clause in contracts signed by each of the plaintiffs. [Dkt. No. 6]. Thereafter, Attorney Kyros filed several purported class actions in districts other than Connecticut, each seeking the same or similar redress for the same alleged conduct as the purported class action pending before this Court. Each of these cases was subsequently transferred to this Court, with the District of Oregon noting that counsel's choice of forum showed evidence of forum shopping. Attorney Kyros them filed the *Laurinitis* action in this district but which was randomly assigned to Judge Eginton, thereupon Attorney Kyros attempted to prevent the case from being transferred to this Court, despite the clear and unambiguous language of this district's related case rule.

WWE sought sanctions against Kyros due to his persistence in filing suit in courts outside of this district. In the exercise of utmost restraint the Court denied this motion, but noted that Kyros' actions appeared to be "part of a vexatious and transparent attempt to circumvent two prior decisions by district courts in Oregon and California either enforcing the forum-selection clauses or nonetheless transferring WWE concussion litigation to this district." [Dkt. No. 253 at 25]. The Court also noted that "Plaintiffs' forum-shopping has forced

multiple district courts to exert needless effort to corral these cases to the proper forum." *Id.* Nevertheless, the Court denied WWE's motion for sanctions because Kyros had filed the most recent of the consolidated cases in the correct district. *Id.* at 25-26. The Court noted, however, that it was "open to reconsidering this finding at a later date should Kyros revert to bad habits." *Id.* at 26.

**B. Attorney Kyros Repeatedly Files Complaints Rife with Irrelevant, Inflammatory, and Inaccurate Information**

The complaints in the initial actions consolidated before this Court were nearly identical. They were exceedingly long and consisted of paragraphs asserting generalities, legal conclusions and facts unrelated to the plaintiffs' claims. The Court repeatedly instructed Attorney Kyros on his professional obligations under Federal Rules of Civil Procedure 8, 9, and 11. For example, in a June 8, 2015 scheduling conference, the Court admonished Plaintiffs that "[t]he defendant shouldn't have to write a motion to dismiss, nor should the Court have to read, research, and write a decision on a motion to dismiss when it's patently clear to the parties prior to the filing of the motion, that the claim should be dismissed." [Case No. 15-cv-425, Dkt. No. 73 at 49]. The Court went on to explain that:

> "[A] complaint should be a compilation of facts – facts. I'd really, really like you to read the Federal rule, give it some close consideration, perhaps read some cases on the pleadings standards, and then file this complaint again in a week without any scrivener errors, without a lot of superfluous, hyperbolic, inflammatory opinions and references to things that don't have any relevance."

*Id.* at 60. The Court specifically noted that the *Singleton* complaint referenced a report that became public in 2014, claimed that the plaintiffs were deceased when

they were not, and referenced events that transpired in the lives of wrestlers who were not parties to the lawsuit. *Id.* at 60-64. The Court asked,

> "What does that have to do with either of your clients? They had both stopped wrestling before 2014. I see no reason to include that in the complaint, other than to inflame. It's argumentative. A complaint should be a clear and concise statement of the facts that form the basis of your claim. So you need to identify what claim you're asserting, do the research to find out what facts have to be proven in order to establish that claim and allege the facts that are necessary to prove each claim. Because the rest of that is just window dressing. And that's where you get into the trouble that you're in where you're asserting that someone's dead who's not because the complaint is full of hyperbolic stuff . . . . [I]t may be clear, but . . . it's not concise and it's not accurate.

*Id.* at 61. The Court then granted the plaintiffs leave to amend their complaint, which they did.

Despite deficiencies in the amended complaints filed in the *Singleton* case and others, the Court considered WWE's motions to dismiss the complaints on their merits, and dismissed claims (1) for negligence for failure to state a claim under Connecticut law; (2) for negligent misrepresentation and fraudulent deceit, for failure to identify with any specificity any false representation by WWE upon which the plaintiffs relied; (3) and for fraudulent concealment and medical monitoring, because neither stated a separate and independent cause of action under Connecticut law. [Dkt. No. 116 at 70]. The ruling also stated that the complaints were "excessively lengthy, including large numbers of paragraphs that offer content unrelated to the Plaintiffs' causes of action and appear aimed at an audience other than this Court." [Dkt. No. 116 at 4].

A fraudulent omission claim as to plaintiffs Singleton and LoGrasso survived the summary judgment stage, on the ground that these plaintiffs had adequately alleged that WWE knew of the risk that repeated concussions or

subconcussive blows could cause permanent degenerative neurological conditions like CTE as early as 2005 and fraudulently failed to disclose this risk.

### C. Attorney Kyros' Conduct During the Discovery and Summary Judgment Phases of *Singleton*

The parties conducted discovery into Singleton's and LoGrasso's claims, during which WWE attempted to uncover, among other things, the basis for plaintiffs' allegations that (1) Singleton experienced symptoms associated with a traumatic brain injury from which he suffered while wrestling for WWE; (2) WWE made "deceptive public statements" which "downplayed known long-term health risks of concussions"; (3) WWE attempted to criticize or discredit studies relating to brain trauma or CTE; (4) individuals associated with WWE stated "wrestlers diagnosed with brain trauma did not receive these injuries as a result of wrestling for WWE." [*See* Dkt. No. 198 at 22-35]. WWE also sought information regarding the specific fraudulent omissions or misrepresentations that formed the basis of the plaintiffs' claims. *Id.* at 36. Plaintiffs were unable or failed to do so. When the plaintiffs served deficient interrogatory responses relating to these issues, WWE filed a motion to compel, which the Court granted in part. With respect to interrogatories asking Plaintiff to identify a person or statement, the Court noted that "[w]here Plaintiff is unable to identify a statement or speaker in response to an interrogatory, Plaintiff must state that fact." [Dkt. No. 144].

Plaintiffs supplemented their responses. However, WWE judged these responses insufficient, and filed a motion for Rule 37 sanctions, arguing that plaintiffs failed to comply with the Court's ruling on WWE's motion to compel. [*See* Dkt. No. 198]. WWE specifically asked the Court to dismiss the case with

prejudice and to award attorney's fees.  On February 22, 2018, Magistrate Judge

Robert A. Richardson issued a ruling recommending that the Court order further

supplementation of these six interrogatories, and that the Court order Attorney

Kyros and his law offices to pay WWE all of the legal fees that it incurred in

connection with its motion for sanctions.  [Dkt. No. 371 at 17].  While Judge

Richardson recommended denying WWE's motion to the extent it sought

dismissal with prejudice, he noted that "plaintiffs and their counsel are now on

notice that any further noncompliance during the remainder of this litigation may

result in dismissal of the case."  *Id.* at 18.  The Court adopted this recommended

ruling on July 22, 2018.  [*See* Dkt. No. 376].

Shortly after Judge Richardson issued his recommended ruling, on March

28, 2018, the Court granted summary judgment as to Singleton's and LoGrasso's

claims on the grounds that (1) Plaintiffs failed to present any evidence that WWE

knew of the risk that concussions could cause permanent degenerative

neurological conditions prior to 2007, which was after LoGrasso's retirement

from wrestling; and (2) WWE offered undisputed evidence that it warned

Singleton of the risk before he sustained his career-ending injury in 2012.  [Dkt.

No. 374 at 18-19].  The Court also noted that Plaintiffs' counsel had once again

"asserted facts and advanced legal theories for which there is no reasonable

evidentiary and legal basis" and again "caution[ed] that such conduct subjects

counsel to Rule 11 sanctions."  [Dkt. No. 374 at 21].  The Court then advised

Plaintiffs' attorneys to discharge their ethical duty to the court by "read[ing] the

record in its entirety before filing anything with the Court to assure their reasonable belief in any and all future assertions of fact and law." *Id.*

### D. *Windham* Procedural History

WWE filed a complaint for declaratory judgment ("DJ") against the *Windham* Defendants, arguing that the potential claims raised in demand letters sent by these Defendants were barred by Connecticut's statutes of limitation and repose. The *Windham* Defendants filed a motion to dismiss the DJ action. In their motion, the *Windham* Defendants argued that the Court lacked subject matter jurisdiction to issue a declaratory judgment, because the anticipated lawsuits that WWE identified were too remote and speculative to create a justiciable case or controversy. The Court granted the *Windham* Defendants' motion to dismiss on the grounds that it had denied WWE's motion to dismiss LoGrasso's complaint.

WWE filed a motion for reconsideration of this dismissal, arguing in part that the Court erred when it presumed that the tolling doctrines which permitted LoGrasso's suit to move forward also applied to the declaratory judgment action. In particular, WWE argued:

> "The Court's conclusion that Plaintiff LoGrasso plausibly alleged a basis for tolling under the continuing course of conduct and fraudulent concealment exceptions was based on his allegations that WWE knew of information concerning a link between repeated head trauma and permanent neurological conditions *in 2005 or later*. By 2005, all of the tort claims threatened by the named Defendants in the *Windham* action would have been foreclosed for years because none of them had performed for WWE *since at least 1999*."

[Dkt. No. 119-1 at 15 (citations omitted)]. The Court granted WWE's motion for reconsideration in part, holding that a case or controversy existed with respect to

the named DJ Defendants, and holding that the application of Connecticut procedural law was appropriate given that several related cases were already pending in Connecticut, and that even if the *Windham* Defendants filed their cases in different districts, they would likely be transferred to Connecticut. [Dkt. No. 185 at 39-42]. The Court did not decide whether tolling the statutes of limitation or repose would be appropriate as to the *Windham* Defendants.

In the Order, the Court stated:

> [T]he DJ answer does not articulate any facts suggesting that discovery will uncover of facts which would support the defenses asserted. The Court cannot consider WWE's motion for judgment on the pleadings in a vacuum; the Court must consider the motion in the context of the sufficiency of the allegations of the complaints in all of the consolidated cases. In that regard, counsel for the *Windham* Defendants has been involved in the filing of six separate actions, some of which named plaintiff wrestlers who had ceased performing for WWE well before 2005. Despite being hundreds of pages long, in none of the complaints filed before Defendants filed the DJ action did the wrestlers' counsel plausibly allege that before 2005, WWE knew of a link between repeated head trauma and permanent degenerative neurological conditions and fraudulently failed to disclose this link to its performers. Nor do the *Windham* Defendants. . . . .

> Because (1) the Court has already thoroughly evaluated the issues presented in the consolidated cases, determining that the claims of wrestlers who had stopped performing for WWE prior to 2005 are barred; (2) the *Windham* Defendants have not offered any indication in their answer to WWE's declaratory judgment complaint that their anticipated claims would deviate from the claims asserted by the plaintiffs in the earlier consolidated cases; and (3) because additional discovery would be wasteful and unnecessary, the Court is inclined to grant WWE's Motion for Judgment on the Pleadings.

[Dkt. No. 362 at 17-19]. Nevertheless, the Court deferred judgment on WWE's Motion for Judgment on the Pleadings, to give the DJ Defendants the opportunity to amend their answer to specifically allege known facts or "facts *likely* to be discovered on further investigation" that would show that their claims were not

time-barred and to submit affidavits from each of the DJ Defendants consistent with the Order.

### E. _Laurinaitis_ Procedural History

On July 18, 2016, Attorney Brenden Leydon filed the _Laurinaitis_ complaint, which was also signed by Attorney Kyros, Anthony M. Norris, Erica C. Mirabella and Sylvester J. Boumil. This complaint named 53 plaintiffs, was 213 pages long, featured 667 separate paragraphs, and was accompanied by twelve exhibits totaling 208 pages. [Case No. 3:16-cv-1209, Dkt. No. 1]. The case was initially assigned to U.S. District Judge Warren W. Eginton, who ordered the case transferred to this Court under the District's related case policy on September 27, 2016, following motion practice. [Case No. 3:16-cv-1209, Dkt. Nos. 28, 35, 39]. On October 3, 2016, this Court consolidated the case with the other WWE concussion cases pending before this Court. [Case No. 3:16-cv-1209, Dkt. No. 45]. Defendants WWE and Vincent McMahon filed motions for sanctions and to dismiss on October 17 and October 19, respectively. [Dkt. Nos. 228-236]. The Court referred the sanctions motion to Judge Richardson on November 4, 2016. [Dkt. No. 249].

In the first sanctions motion, the Defendants stated that, pursuant to Federal Rule of Civil Procedure 11(c)(2), they served motions for sanctions on Plaintiffs on August 5, 2016 and August 19, 2016, "advising them that the Complaint made patently false allegations, asserted time-barred and frivolous legal claims . . . [and that] at least 19 of the Plaintiffs executed releases covering the claims in the Complaint." [Dkt. No. 229 at 21]. Specifically, the motion alerted

Plaintiffs that their complaints contained "patently false and nonsensical allegations" resulting from Plaintiffs' counsel's decision to "plagiarize extensive portions" of the complaint filed in the National Football League ("NFL") concussion litigation.  [Dkt. No. 229 at 23-24].  These allegations included, for example, the name NFL rather than WWE, the assertion that "wrestler" Mike Webster "sustained repeated and disabling head impacts while a player for the Steelers," despite the facts that Mr. Webster was a football player, not a wrestler, and that the Steelers are an NFL team unaffiliated with the WWE.  [Dkt. No. 229 at 24 (citing Compl. ¶ 249)].  Although Defendants identified several other obviously false allegations, Plaintiffs' counsel did not withdraw or amend their complaint within 21 days of service of the sanctions motion.  *See* Fed. R. Civ. P. 11(c)(2) (permitting a party on whom a sanctions motion is served 21 days to withdraw or amend their submission before the party seeking sanctions can file the sanctions motion before the Court).  Nearly three months after the sanctions motion was filed, Plaintiffs' counsel had not withdrawn or amended any allegations.  Not until November 9, 2016—and only after the Court referred the sanctions motion to Judge Richardson—did Plaintiffs withdraw or amend their allegations by filing their First Amended Complaint ("FAC").  [Dkt. No. 252].

While the FAC removed or edited some of the most egregiously false allegations, it still fell well short of the requirements set forth in Rules 8, 9, and 11.  Defendants filed motions to dismiss the FAC and for sanctions on December 23, 2016, which the Court addressed in the Order.  [Dkt. Nos. 262-270, 362].  The Court noted that the FAC had ballooned to 335 pages and 805 paragraphs.  [Dkt.

No. 362 at 7].  The Court also cited several examples of "inaccurate, irrelevant, or frivolous" allegations,[1] and noted:

> "Despite repeatedly requesting that plaintiffs' counsel exclude irrelevant allegations and ensure that each claim in each consolidated case have a reasonable factual and legal basis, this Court has, in an abundance of deference to the wrestler plaintiffs and to the detriment of WWE, applied a liberal pleading standard more suited to a *pro se* plaintiff than to a licensed attorney asserting claims on behalf of an entire class."

*Id.* at 19.  Nevertheless, the Court granted Plaintiffs one final opportunity to file a complaint that complied with the Federal Rules of Civil Procedure, giving notice that failure to do so would result in dismissal with prejudice and the imposition of sanctions.

The *Laurinaitis* Plaintiffs filed the SAC on November 3, 2017.  The SAC is 225 pages long and contains 669 paragraphs.  The Court indicated in the Order that the parties need not file any briefs or motions relating to the SAC, in an

---

[1] The Court's opinion cited the following paragraphs of the FAC:  ¶¶ 51 (referencing a study published in October 2015 despite the fact that none of the *Laurinaitis* Plaintiffs were still performing at that time), 108 (noting that WWE instructed a female wrestler not to report a sexual assault she endured while on a WWE tour despite the fact that this has no relevance to her claims about neurological injuries or the enforceability of her booking contract), 130 (noting that WWE is a monopoly that earns $500 million annually), 157 (quoting general observations from the book of a wrestler who is not a party to this lawsuit), 159-161 (noting that the WWE does not provide wrestlers with health insurance), 289-93 (describing a fictional storyline in which a doctor claimed on television that a wrestler who is not a *Laurinaitis* Plaintiff suffered a serious concussion, when in fact he "did not have post concussion syndrome" and the storyline was intended only to "create dramatic impact for the fans"), and 302 (stating that "100% of the four wrestlers studied to date" showed signs of chronic traumatic encephalopathy ("CTE") when a publicly available study published by Bennet Omalu, a neuropatholgist mentioned elsewhere in the complaint, stated that he examined the brains of four wrestlers and founds signs of CTE in only two of them and therefore Plaintiffs knew that only 50% of a statistically insignificant number of former wrestlers were found to have had CTE).

attempt to minimize the costs to the parties and the Court, and because the Court had reserved judgment on Defendants' fully briefed motions to dismiss, for judgment on the pleadings, and for sanctions.  Nevertheless, Defendants filed an informal response with a list of allegations that they asserted were still irrelevant or frivolous.  [*See* Dkt. No. 365].  Plaintiff filed a responsive brief, which primarily criticized Defendants' brief for failing to conform to the requirements for a formal motion to dismiss, and which did not attempt to explain why the allegations that the Defendants identified were relevant or non-frivolous, and did not attempt to explain why sanctions should not be imposed.  [*See* Dkt. No. 366].

I.  <u>Legal Standard</u>

A.  <u>Motion for Judgment on the Pleadings</u>

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings is decided on the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Barnett v. CT Light & Power Co.*, 900 F. Supp. 2d 224, 235 (D. Conn. 2012) (citing *Hayden v. Paterson*, 594 F.3d 150, 159 (2d Cir. 2010)).

B.  <u>Motion to Dismiss</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusion' or 'formulaic

recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider documents of which the Plaintiffs had knowledge and relied upon in bringing suit, *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), so long as these documents are "integral" to the complaint and the record is clear that no dispute exists regarding the documents' authenticity or accuracy, *Faulkner v. Beer*, 463 F.3d 130, 133-35 (2d Cir. 2006).

Defendants also moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that all of the Plaintiffs' claims are time-barred.  "A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint."

*Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated on other grounds*, 585 F.3d 559 (2d Cir. 2009), *cert. denied*, 560 U.S. 978 (2010) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.* (internal citations and quotation marks omitted). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* (internal citations and quotation marks omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citations and quotation marks omitted) (alteration in original).

### C. Motion for Sanctions

Federal Rule of Civil Procedure 11 states that "an attorney who presents 'a pleading, written motion, or other paper' to the court thereby 'certifies' that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is (1) not presented for any improper purpose, 'such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation'; (2) 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing

existing law or for establishing new law'; and (3) supported in facts known or *likely* to be discovered on further investigation." *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010) (emphasis added) (quoting Fed. R. Civ. P. 11(b)). "If . . . the court determines that **Rule 11(b)** has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995) (quoting *Sanko Steamship Co., Ltd. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987)). However, "Rule 11 sanctions should be imposed with caution," *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994), and "district courts [must] resolve all doubts in favor of the signer," *Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir. 1993).

"[N]ot all unsuccessful arguments are frivolous or warrant sanction," and "to constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *See Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir. 1990). With regard to factual contentions, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (quoting *O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir. 1996)). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy &*

*Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quoting *Storey*, 347 F.3d at 388). This objective standard is "intended to eliminate any 'empty-head pure-heart' justification" for patently unsupported factual assertions or frivolous arguments. *See Hochstadt v. New York State Educ. Dep't*, 547 F. App'x 9, 11 (2d Cir. 2013) (quoting *Gurary v. Winehouse*, 235 F.3d 792, 797 (2d Cir. 2000)).

Dismissal of a complaint with prejudice and monetary penalties "are among the permissible sanctions allowed under Rule 11." *Miller v. Bridgeport Bd. of Educ.*, No. 3:12-CV-01287 JAM, 2014 WL 3738057, at *10 (D. Conn. July 30, 2014). "Rule 11 also allows for the Court to refer the misconduct of an attorney for consideration by disciplinary authorities." *Id.* at *11. However, "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## II.  *Windham* Action

The Court first addresses whether the *Windham* Defendants' amended answer sets forth sufficient facts to toll the Connecticut statutes of limitation and repose.[2]  The DJ Defendants' Second Affirmative Defense addresses WWE's claim that the statutes of limitation and repose bar the DJ Defendants' claims. Specifically, it asserts that WWE fraudulently concealed the cause of action from the DJ Defendants until 2015. However, the Second Affirmative Defense does *not* allege that WWE knew of a link between concussive or subconcussive blows and

---

[2] The Court refers to pages 12-18 of the Order for a description of the law governing the statutes of limitation and repose and the ways in which the prior answer was deficient.

permanent degenerative neurological conditions like chronic traumatic encephalopathy ("CTE"). Rather, it provides a summary of the injuries and claimed injustices DJ Defendants suffered during their tenures as wrestlers, many of which, such as James Ware's "snapped" collarbone and Thomas Billington's inability to buy health insurance, have nothing to do with WWE's claims or the DJ Defendants' defenses. [Dkt. No. 364 at 25-26]. The Court also reviewed Mr. Ware's and Mr. Billington's affidavits. Neither sets forth any facts suggesting that WWE knew of the risks of CTE or any other permanent degenerative neurological condition before either wrestler retired and failed to disclose this risk, either fraudulently or despite a continuing duty to either wrestler to warn him of these risks. Nor do the Wrestlers point to anything in the record to support this claim in opposition to the Defendants' motion. The Wrestlers therefore have not set forth any facts that would justify tolling Connecticut's statutes of limitation and repose—either in their original or amended answers. The Court therefore enters judgment on the pleadings in favor of WWE as to DJ Defendants Ware and Billington.

Counsel for the two remaining DJ Defendants has represented that they are deceased. WWE has not sought to substitute executors or administrators of their estates. Pursuant to Federal Rule of Civil Procedure 25(a),

> "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If a motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."

The DJ Defendants have failed to file a formal suggestion of death with this Court, nor have they offered any indication that they have served such suggestion of death on the executors or representatives of the estates of DJ Defendants Windham and Perras, in accordance with Rule 25(a).  *See Gothberg v. Town of Plainville*, 305 F.R.D. 28, 29-30 (D. Conn. 2015) (holding that service of a suggestion of death on counsel for the parties, and not on the executors or administrators of the decedents estates was insufficient to trigger the 90-day period within which a motion for substitution may be filed); *George v. United States,* 208 F.R.D. 29, 31 (D. Conn. 2001) (stating that death must be "formally" suggested "upon the record.").

If Windham or Perrasis is deceased, the Court cannot enter judgment against him unless an opportunity to file a suggestion of death is afforded.  The Court therefore dismisses these two Defendants.  If either party wishes to substitute the executor or administrator of either estates, it must file a a formal suggestion of death filed and served on all interested parties within 30 days, and a proper motion for substitution must be filed within 90 days of service of the suggestion of death.  If no party seeks to substitute a duly authorized representative for  Windham or Perras within the time period allotted, all claims against them shall be dismissed with prejudice without further order of the Court.

III.    The *Laurinaitis* Action

The Court next addresses Defendants' Motions to Dismiss [Dkt. Nos. 263, 266, and 269].  Defendants sought dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and as a Rule 11(c) sanction.  The Court finds

that dismissal with prejudice is warranted because the *Laurinaitis* claims are either barred by this Court's prior rulings, time-barred, or frivolous, and that amendment would be futile.

**A. Plaintiffs' Fraudulent Concealment and Medical Monitoring Claims are Barred by the Court's Prior Rulings**

Plaintiffs assert separate counts of "fraudulent concealment" and "medical monitoring" despite this Court's clear holding, in the very first of the WWE concussion cases that Attorney Kyros filed, that neither constitute causes of action under Connecticut law. [*See* Dkt. No. 116 at 54 (stating that "fraudulent concealment is not a separate cause of action"); Dkt. No. 116 at 69 (stating that "[a] particular type or measure of damages and a cause of action entitling a person to a particular type or measure of damages are separate and distinct legal principles" and dismissing the medical monitoring claim because "plaintiffs have failed to articulate any authority supporting the proposition that plaintiffs can bring a cause of action of 'medical monitoring' separate and apart from their cause of action for fraudulent omission under Connecticut law")]. Nor has he filed or prevailed on an appeal of the Court's rulings or filed a motion for reconsideration pointing out any error in the Court rulings. Attorney Kyros simply ignores the Court's rulings in violation of the law-of-the-case doctrine. *See United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case . . . . [T]he law-of-the-case doctrine [is] driven by considerations of fairness to the parties, judicial economy, and the

societal interest in finality.").  These claims must therefore be DISMISSED once again.

**B.  Plaintiffs Have Asserted Numerous Patently Time-Barred Claims**

The first complaint in this action was filed on July 18, 2016.  The SAC does not allege that any Plaintiff wrestled for WWE and suffered a head injury while wrestling later than 2011.  Similarly, with limited exceptions, the Complaint does not state when each Plaintiff first entered into a contract classifying him or her as an independent contractor.  However, the wrestler who retired most recently, Salvador Guerrero, signed a booking contract in which he was classified as an independent contractor in 2001, when he first started wrestling for WWE.  [SAC, Exh. A.].  It is therefore reasonable to assume that booking contracts were signed when each wrestler began wrestling for WWE.  Terry Brunk began wrestling for WWE most recently—in 2006.  [SAC ¶ 63].

**1.  Tort Claims**

It is not subject to challenge that the statute of limitations for tort claims set forth in Conn. Gen. Stat. 52-577 applies to Plaintiff's claims for fraud, fraudulent nondisclosure, and civil conspiracy to commit fraudulent concealment.  Section 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."  "The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury."  *Collum v. Chapin*, 40 Conn. App. 449, 451-52 (1996) (citing *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212-13 (1988)).  "The relevant date of the act or

omission complained of, as that phrase is used in § 52-577, is the date when the negligent conduct of the defendant occurs and not the date when the plaintiffs first sustain damage . . . .  Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation." *Kidder v. Read*, 150 Conn. App. 720, 726-27 (2014).

Plaintiffs' tort claims arise out of their allegation that WWE concealed the risk that concussions or subconcussive blows could cause permanent degenerative neurological conditions in order to induce Plaintiffs to continue to continue wrestling.  This omission must have occurred at a time when the Plaintiffs were still wrestling and could still suffer head injuries while wrestling. With the possible exception of Plaintiff James Snuka, discussed in the next section, no Plaintiff has alleged that he or she wrestled for WWE later than 2011.

### 2.  Wrongful Death and Survival Actions

The estates of five wrestlers—James Snuka, John Matthew Rechner, Brian David Knighton, Timothy Alan Smith, Ronald Heard, and Harry Masayoshi Fujiwara—also assert wrongful death and survival claims.  Wrongful death claims must be brought "within two years from the date of death" except that "no such action may be brought more than five years from the date of the act or omission complained of."  Conn. Gen. Stat. § 52-555(a).  "Section 52-555 may "serve as a bar to a wrongful death claim" even if "an injured victim could not have known that he or she had a claim against the alleged tortfeasor until after the limitation period had expired."  *Greco v. United Techs. Corp.*, 277 Conn. 337, 353 (2006). Conn. Gen. Stat. § 52-594 provides that if the time for bringing an action has not

elapsed at the time of a person's death, the executor of that person's estate may bring an action within a year of the death.

Fujiwara last wrestled in 1996, [SAC ¶ 55], Rechner last wrestled in 2008, [SAC ¶ 85], Knighton last wrestled in 2005 [SAC ¶ 86], and Heard last wrestled in 1989 [SAC ¶ 109]. The Complaint alleges that Snuka appeared in WWE performances between 2005 and 2015. [SAC ¶ 52]. However, the affidavit of the executor of Mr. Snuka's estate, submitted for in camera review, stated that 1996 was "[t]oward the end of his career," that "most of Jimmy's full-time wrestling was at the height of the 1980s," and that he was "inactive" or "largely semi-retired" between 1996 and 2015. The complaint does not allege, and the affidavit does not support any allegations, that Mr. Snuka suffered any head injuries or risked incurring such injuries later than 1996. All these wrestlers, with the possible exception of Mr. Snuka, retired more than five years before this lawsuit was filed. And Mr. Snuka has not alleged that any of his alleged injuries were incurred during WWE appearances post-dating 1996. Wrongful death actions are therefore barred by Section 52-555. Survival actions are barred because the statutes of limitation or repose for each of the deceased Plaintiffs' other claims have elapsed.

### 3. Misclassification Claims

Plaintiffs assert misjoined claims that they were misclassified as independent contractors and thereby denied the benefits and protections of the Occupational Safety and Health Act, the National Labor Relations Act, the Employee Retirement Income Security Act, and the Family and Medical Leave Act.

Because Plaintiffs assert that the misclassification was part of a "scheme to defraud the Plaintiffs" and "achieved by the presentation to the Plaintiffs of boilerplate Booking Contracts," the misclassification claims are governed either by the three-year statute of repose for tort actions, Conn. Gen. Stat. § 52-577, or the six-year statute of limitations for contract actions, Conn. Gen. Stat. § 52-576.

The District of Connecticut has previously considered the statute of limitations for misclassification claims relating to WWE booking contracts. In *Levy v. World Wrestling Entertainment, Inc.*, No. CIV.A.308-01289(PCD), 2009 WL 455258, at *1 (D. Conn. Feb. 23, 2009), Judge Dorsey held that misclassification claims arose "at the inception" of the booking contracts. Plaintiff has not offered this Court any compelling justification for disregarding Judge Dorsey's holding. As noted above, it appears that booking contracts were entered into when each wrestler joined WWE. To the extent any of the Plaintiffs did not sign a booking contract, but instead made "handshake deals" or worked as "jobbers," these wrestlers must have known of their classification as independent contractors either when these deals were first made, or when each of these wrestlers received tax paperwork within the year of making that deal. Plaintiffs also would have been aware throughout their employment that they were not being awarded the same benefits as individuals classified as employees of WWE. Indeed, Plaintiffs expressly state in their complaint that they were not given retirement or health benefits.

The Plaintiff who most recently joined WWE did so in 2006—approximately ten years before this case was filed. Therefore, none of the Plaintiffs can

establish that they were first misclassified as independent contractors within six years of the date they filed the complaint in this action. Plaintiffs' ERISA and OSHA reporting claims are predicated on this misclassification claim, and Plaintiff has not offered the Court any authority to suggest that these claims may survive after the misclassification claim is dismissed.

### 4. RICO Claims

Plaintiffs' claims under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1132(a)(3) are also time-barred. Civil RICO actions have a four-year limitations period. *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 104 (D. Conn. 2014), *aff'd sub nom.*, *Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156-57 (1987)). This limitations period "begins to run when the plaintiff discovers or should have discovered the RICO injury." *Id.* (quoting *In re Merrill Lynch P'ship Litig.*,154 F.3d 56, 58 (2d Cir. 1998)). "The four-year limitation period begins anew [for a civil RICO claim] each time a plaintiff discovers or should have discovered a new and independent injury." *Id.* However, "actual knowledge of the fraudulent scheme is not necessary; an objective standard is used to impute knowledge to the victim when sufficient 'storm clouds' are raised to create a duty to inquire." *Id.* at 106. Plaintiffs acknowledge that CTE was only diagnosable by an autopsy performed after death.

Because Plaintiffs' RICO claims are predicated on Plaintiffs' alleged misclassification as independent contractors, and such misclassification must have taken place when each Plaintiff was first hired, the limitations period runs

from when each Plaintiff signed a booking contract, began working for WWE, first received a tax statement classifying him or her as an independent contractors, or noticed he or she was not receiving the benefits to which WWE employees were entitled.  No Plaintiff has alleged that he or she did so less than ten years before this action was filed.  Plaintiffs' RICO claims are therefore time-barred.

### 5.  FMLA Claims

The Family and Medical Leave Act provides that "an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  For a willful violation, the limitations period is three years.  29 U.S.C. § 2617(c).  With the exception of Mr. Snuka, each Plaintiff stopped working for WWE more than three years before this case was filed.  They therefore cannot establish that their FMLA claims arose within the limitations period.  Plaintiff Snuka has not alleged that he even asked for family or medical leave between 2013 and 2016.  He also has not alleged that he was improperly denied such leave or punished for taking such leave within the limitations period.  The Plaintiffs' FMLA claims are therefore time-barred.

### 6.  Successor Liability

Because all of the substantive claims against WWE are time-barred, and all the claims that arise out of Plaintiffs' work for ECW or WCW predate their WWE claims, these ECW and WCW claims are also time-barred.  The Court therefore need not specifically address whether WWE should be liable for claims arising out of its relationship with ECW or WCW.

## C. Plaintiffs' "Unconsionable Contracts" Claims are Frivolous

Plaintiffs claim that their booking contracts were void as unconscionable, but they attach the contracts of only two wrestlers to their complaint, and identify no particular unconscionable terms.  Rather, Plaintiffs allege generally that they were coerced into signing unfavorable "boilerplate" contracts without the assistance of their own attorney or under threat that they would be fired or not hired if they refused to sign, and that these contracts misclassified the wrestlers as independent contractors.  The Court has already established that misclassification claims are time-barred.  The remaining allegations regarding the condition under which these contracts were signed are not claims that the contracts were unconscionable.

Even if the Court were to liberally construe these claims as undue influence claims, they would not be actionable and are therefore frivolous.  The Connecticut Supreme Court has held that "ratification results, as a matter of law, 'if the party who executed the contract under duress accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul or avoid it.'"  *Young v. Data Switch Corp.*, 231 Conn. 95, 103 (1994) (quoting *Gallon v. Lloyd-Thomas Co.*, 264 F.2d 821, 826 (8th Cir. 1959)).  This reasoning also applies when a contract is voidable for undue influence.  *See Gengaro v. City of New Haven*, 118 Conn. App. 642, 653 (2009) (holding that "the reasoning set forth in *Young* can be applied" to actions to void a contract because of undue influence).  And the Connecticut Supreme Court has held that a delay of 17 months constitutes a "considerable length of time."  *See Young*, 231 Conn. at 103.  Each Plaintiff who signed a booking

contract with WWE enjoyed the benefits of those contracts without seeking legal intervention for years following the execution of the contracts, and indeed, years following the termination of each Plaintiff's employment with WWE. Binding Connecticut precedent bars these claims, and Plaintiff's counsel has set forth no non-frivolous argument for modifying or reversing this law.

### D. The Statutes of Limitation Should Not Be Tolled Under the Continuing Course of Conduct Doctrine

Under appropriate circumstances, the Connecticut statutes of repose may be tolled under the continuing course of conduct doctrine. The plaintiff must show the defendant: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the original wrong; and (3) continually breached that duty." *Witt v. St. Vincent's Med. Ctr.*, 252 Conn. 363, 370 (2000).

Where Connecticut courts have found a duty "continued to exist after the act or omission relied upon: there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 435 (2013). The existence of a special relationship "will depend on the circumstances that exist between the parties and the nature of the claim at issue." *Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*, 312 Conn. 811, 835 (2014). Connecticut courts examine each unique situation "in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." *Alaimo v. Royer*, 188 Conn. 36, 41 (1982). Specifically, a "'special relationship' is one that is built upon a

fiduciary or otherwise confidential foundation characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Saint Bernard Sch.*, 312 Conn. at 835.

However, "a mere contractual relationship does not create a fiduciary or confidential relationship," *id.* at 835-36, and employers do necessarily not owe a fiduciary duty to their employees, *Grappo v. Atitalia Linee Aeree Italiane, S.P.A.*, 56 F.3d 427, 432 (2d Cir. 1995); *Bill v. Emhart Corp.*, No. CV 940538151, 1996 WL 636451, at *3-4 (Conn. Super. Ct. Oct. 24, 1996). The law will imply [fiduciary responsibilities] only where one party to a relationship is unable to fully protect its interests [or where one party has a high degree of control over the property or subject matter of another] and the unprotected party has placed its trust and confidence in the other." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 41 (2000).

Plaintiffs have not established that WWE had any continuing duty with respect to their health or their employment status after they left WWE. For example, Plaintiffs allege that WWE "sends substance dependency letters annually to its former performers offering free treatment, as well as community updates and quarterly royalty payments" and maintains a "Talent helpline." [SAC ¶¶ 270, 271]. It is reasonable to infer, based on WWE's offer to provide substance abuse treatment, that the hotline is related to substance abuse prevention or treatment. It is not reasonable to conclude from the allegations in the complaint that WWE has a continuing duty to keep itself apprised of former wrestlers' health

or to provide comprehensive health care to these wrestlers.  It is similarly unreasonable to infer that retired wrestlers would not seek medical treatment from sources outside of WWE after their retirement.  Indeed, Plaintiffs do not allege that WWE purported to be their primary health care provider, or that WWE diagnosed, treated, monitored, or advised the Plaintiffs regarding their health, including their mental health, after they retired.  Similarly, the Court is at a loss to imagine how continuing royalty payments give rise to any duty to the Plaintiffs regarding their alleged misclassification as independent contractors decades earlier.

   E.  <u>The Statutes of Limitation and Repose Should Not Be Tolled Under the Fraudulent Concealment Doctrine</u>

Connecticut has codified the doctrine of fraudulent concealment in Conn. Gen. Stat. § 52-595, which provides: "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."  In order to rely on Section 52-595 to toll the statutes of limitations and repose, a plaintiff must demonstrate that "the defendant: (1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish the cause of action, (2) intentionally concealed those facts from the plaintiff and (3) concealed those facts for the purpose of obtaining delay on the part of the plaintiff in filing a cause of action against the defendant."  *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105 (2007).

Fraudulent concealment under Section 52-595 must be pled with sufficient particularity to satisfy the requirements Fed. R. Civ. P. 9(b) with regard to fraud claims, because a claim that the statute of limitations should be tolled because of fraud, is "obviously, a claim for fraud." *In re Publ'n Paper Antitrust Litig.*, No. 304MD1631SRU, 2005 WL 2175139, at *5 (D. Conn. Sept. 7, 2005). In addition, a plaintiff must show that due diligence "did not lead, and could not have led, to discovery" of the cause of action. *Martinelli v. Bridgeport Roman Catholic Dioceses*, 196 F.3d 409, 427 (2nd Cir. 1999). "Typically, a plaintiff will prove reasonable diligence either by showing that: (a) the circumstances were such that a reasonable person would not have thought to investigate, or (b) the plaintiff's attempted investigation was thwarted." *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 509 (D. Conn. 2007). Affirmative acts of concealment are not always necessary to satisfy the requirements of Section 52-595. *McCullough v. World Wrestling Entm't, Inc.*, 172 F. Supp. 3d 528, 555 (D. Conn.), *reconsideration denied*, No. 3:15-CV-001074 (VLB), 2016 WL 3962779 (D. Conn. July 21, 2016), and *appeal dismissed*, 838 F.3d 210 (2d Cir. 2016). "[M]ere nondisclosure may be sufficient when the defendant has a fiduciary duty to disclose material facts." *Id.*

Plaintiff's counsel has now had the opportunity to conduct extensive discovery on this issue in prior consolidated cases. He was unable to uncover any evidence showing that WWE has or had actual knowledge that concussions or subconcussive blows incurred during professional wrestling matches cause CTE. The earliest evidence they were able to uncover is the fact that WWE

learned from public news reports that one wrestler, Christopher Benoit, was diagnosed with CTE in 2007. Plaintiffs' counsel therefore lacks any good faith basis for asserting that WWE was aware of any association between professional wrestling and CTE prior to 2007, which was after most of the Plaintiffs retired.

The Court is also unwilling to find that the diagnosis of one wrestler with CTE is sufficient to imbue WWE with actual awareness of a probable link between wrestling and CTE. Further, counsel lacks a good faith basis for asserting that Plaintiffs who retired after 2007 could not on their own, in the exercise of due diligence, uncover information timely about CTE or the risks that concussions or subconcussive blows could cause CTE. For example, the circumstances surrounding Mr. Benoit's death were so tragic and so horrifying that it would have been reasonable for his fellow wrestlers to follow news developments about him and about CTE, through which they could have deduced that they were at risk of developing CTE and sought medical opinions about risks to their own health. This information was widely available in public news sources, such that WWE did not have superior access to it, and could not have thwarted any attempted investigation. Tolling on the basis of fraudulent concealment is therefore baseless.

F. **Amendment Would Be Futile**

As noted above, Plaintiffs have asserted numerous patently time-barred claims that have nothing to do with Plaintiffs' alleged head trauma, any long-term consequences of such trauma, or WWE's concealment of the risk that such trauma could cause permanent degenerative neurological conditions. The Court

has also repeatedly admonished the Wrestlers' counsel, Attorney Kyros and his appearing co-counsel regarding his inclusion of irrelevant and inflammatory facts in its pleadings.  [*See, e.g.*, Dkt. No. 362 at 7, 20 (stating that the *Laurinaitis* complaint included "numerous allegations that a reasonable attorney would know are inaccurate, irrelevant, or frivolous"); Dkt. No. 263-2 at 60 (noting that prior complaint included "superfluous, hyperbolic, inflammatory opinions and references to things that don't have any relevance"); Dkt. No. 116 at 13 (criticizing counsel for including in pleadings "content unrelated to the Plaintiffs' causes of action")].

In addition, the Court has repeatedly criticized Attorney Kyros for filing "excessively lengthy" complaints, [Dkt. No. 116 at 13], including the FAC in the *Laurinaitis* action, which the Order noted was 335 pages long, and included 805 paragraphs.  The Court clearly instructed Attorney Kyros that if he failed to file an amended complaint that complied with Federal Rules of Civil Procedure 8, 9, and 11, the case would be dismissed with prejudice.  In addition, the Court reminded Attorney Kyros and his appearing co-counsel of the due diligence required to be undertaken to assure compliance with the rules, and ordered them to file evidence that the process of reaching a good faith belief in the facts asserted had been conducted.   They have persistently ignored this Court's orders and persisted in filing complaints, including filing a mark-up of a previously critiqued deficient complaint, which fail to remotely satisfy the pleading standards.

Rule 8(a)(2) states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 9

requires the Wrestlers to "state with particularity the circumstances constituting fraud or mistake," which is of particular relevance to claims that WWE fraudulently failed to disclose the risks that concussions and subconcussive blows could cause permanent degenerative neurological conditions like CTE, or fraudulently concealed any causes of action.

The SAC remains unreasonably long, asserts claims that this Court has previously dismissed, and continues to assert facts which Plaintiffs' counsel has no reason to believe are true. While the SAC has now been reduced to 225 pages and 669 paragraphs, counsel accomplished this by single spacing roughly 54 pages, and through the liberal use of subparagraphs. While it is clear that Attorney Kyros made some revisions to the prior complaint, he made no effort to present a short and plain statement of the Plaintiffs' entitlement to relief, as required by Rule 8. Nor have Attorney Kyros and his appearing co-counsel demonstrated that they have conducted due diligence sufficient to have a good faith belief in the facts asserted in the SAC. Moreover, the SAC is rife with allegations: (1) that this Court has previously considered and dismissed; (2) that are patently irrelevant to the issues present in this lawsuit (including those the Court previously identified as being irrelevant); and (3) that any reasonable attorney would know are frivolous.

For example, its order regarding WWE's motions to dismiss the first two of the *Laurinaitis* Plaintiffs' complaints, the Court specifically noted that a reference to a study published in October 2015 was irrelevant because none of the Plaintiffs were still wrestling in 2015. [Dkt. No. 362 at 7]. Nevertheless, in the SAC,

Plaintiffs cite several news reports and studies published between 2013 and 2017 in support of its claim that "it is not plausible that the WWE is unaware of the risks of CTE in its performers." [SAC ¶¶ 284-94]. What is really at issue in this case is whether WWE knew of the risk that repeated head trauma could cause permanent degenerative neurological conditions, fraudulently failed to disclose these risks to wrestlers, and then fraudulently concealed facts which it had a legal duty to disclose that would have given rise to legal claims between each Plaintiff's retirement and the date that this action was filed. Whether WWE *currently* is or could be in possession of evidence that concussions can cause CTE is immaterial.

The Court also previously identified as irrelevant the assertion that "WWE is a monopoly that earns $500 million annually," "general observations from . . . a wrestler who is not a party to this lawsuit," and the fact that "WWE does not provide wrestlers with health insurance." [Dkt. No. 362 at 7-8]. This non-exhaustive list of irrelevant allegations seems to have had little to no effect on Attorney Kyros' decision-making, because the SAC still lists WWE's revenues, observations that former wrestler and non-party Jesse Ventura made on a television show, and the fact that WWE did not provide wrestlers with health insurance. [SAC ¶¶ 11, 114, 263, 387-88, 328, 379, 462]. In addition to these irrelevant allegations are numerous others, including a list of physical injuries that have nothing to do with concussions or head trauma, incurred by several Plaintiffs in the ring. [*See* SAC ¶ 37 (alleging that "Plaintiff Jon Heidenreich

sustained serious shoulder injuries requiring multiple surgeries" and that "Plaintiff Marty Jannetty sustained a severe broken ankle"].

Attorney Kyros' decision to assert frivolous claims has required the Court to waste considerable judicial resources sifting through three unreasonably long complaints filed in the *Laurinaitis* action, with the vague hope that some claim, buried within a mountain of extraneous information, might have merit. "The function of the pleadings is to give opposing parties notice of the facts on which the pleader will rely." *Van Alstyne v. Ackerley Grp., Inc.*, 8 Fed. App'x 147, 154 (2d Cir. 2001). Counsel's inclusion of numerous allegations which are unrelated to any non-frivolous claim, and do nothing more than paint WWE as a villain, does not provide Defendants with such notice. Instead, it needlessly increases the cost of litigation by, for example, burdening Defendants with the task of drafting and prosecuting multiple motions to dismiss and for sanctions, none of which prompted Attorney Kyros to withdraw factually unsupportable allegations or frivolous claims during the safe harbor period set forth in Rule 11(c)(2). Furthermore, if the Court required the Defendants to engage with a complaint comprised primarily of irrelevant and inflammatory factual allegations, it would be shirking its responsibility to employ the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive" disposition of this action. *See* Fed. R. Civ. P. 1.

The Court has been extremely forgiving of Attorney Kyros' and his appearing co-counsels' highly questionable practices throughout this case, in an effort to give each wrestler a fair hearing. However, despite second, third, and

fourth chances to submit pleadings that comply with Rules 8, 9, and 11, Attorney Kyros has persisted in asserting pages and pages of frivolous claims and allegations for which he lacked any factual basis.  He was warned that if he continued to do so this case would be dismissed, and he ignored this warning. Attorney Kyros has offered the Court no reason to believe that if given a fifth, sixth, or seventh chance, he would prosecute this case in a manner consistent with the Federal Rules of Civil Procedure.

Accordingly, the Court finds that further amendment would be futile and that only the award of attorney's fees and costs would deter Attorney Kyros from committing future violations of Rule 11.  Attorney Kyros and his Law Offices shall pay all of the legal fees that the Defendants reasonably incurred in connection with both of their Motions for Sanctions [Dkt. Nos. 262 and 228].  All fees paid pursuant to this order are to be paid by the law firm and not by the client. Further, in order to protect the public, Attorney Kyros is ordered to send by a receipted mail delivery service a copy of this ruling to his appearing co-counsel and to each of the *Laurinaitis* Plaintiffs and any other future, current, or former WWE wrestler who has retained or in the future does retain his legal services to file suit against WWE alleging an injury sustained during their wrestling contract with WWE.

IV.     **Conclusion**

**For the foregoing reasons:**

1.  **WWE's Motion for Judgment on the Pleadings [Dkt. No. 205] is GRANTED and declaratory judgment will enter as to DJ Defendants Ware and Billington.**

2.  **The action against DJ Defendants Windham and Perras is DISMISSED without prejudice to reopening upon the filing and service within 28 days of a formal suggestion of death and the filing within 90 days thereafter of a motion to substitute the administrators or executors of Windham's and Perras' estates.**

3.  **The Court GRANTS Defendants' Motions to Dismiss [Dkt. Nos. 266, 269].**

4.  **The Court GRANTS IN PART Defendants' Motion for Sanctions [Dkt. No. 262] to the extent it sought the award of attorney's fees and costs.**

5.  **Nothing in this decision shall preclude Attorney Kyros from seeking contribution from other appearing co-counsel.**

6.  **The Court does not retain jurisdiction for purpose of resolving sanction-sharing disputes among the attorneys.**

**The Clerk is directed to enter judgment for the Defendants, close this case and to terminate all pending motions in this consolidated case.**

**IT IS SO ORDERED.**

**_____/s/_____**

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: September 17, 2018**