UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS McCULLOUGH, *et al.*, | : NO. 3:15-cv-01074-VLB |
| | : LEAD CASE |
| Plaintiffs, | : |
| vs. | : |
| WORLD WRESTLING ENTERTAINMENT, INC., | : |
| Defendant. | : |

| | |
|---|---|
| JOSEPH M. LAURINAITIS, et al., | : NO. 3:16-cv-01209-VLB |
| | : CONSOLIDATED CASE |
| Plaintiffs, | : |
| vs. | : |
| WORLD WRESTLING ENTERTAINMENT, INC. and VINCENT K. MCMAHON, | : |
| Defendants. | : OCTOBER 4, 2018 |

**APPLICATION FOR ATTORNEYS' FEES ORDERED BY THE COURT
BY WORLD WRESTLING ENTERTAINMENT, INC. AND VINCENT K. McMAHON**

Defendants World Wrestling Entertainment, Inc. ("WWE") and Vincent K. McMahon respectfully make this submission in furtherance of the Court's Memorandum of Decision dated September 17, 2018 (Doc. 383), which dismissed the last pending case in these consolidated cases and ordered Attorney Konstantine W. Kyros and his law offices to pay the legal fees and costs reasonably incurred by Defendants in connection with both motions for sanctions regarding Plaintiffs' original complaint (Doc. 228) and Plaintiffs' First Amended Complaint (Doc. 262).

The fees and costs that Defendants incurred in connection with the motions for sanctions are set forth in the attached declarations of Curtis B. Krasik (Exhibit 1) and Jeffrey P. Mueller (Exhibit 2).

A.     Relevant Background

1.     The Court's September 17, 2018 Memorandum of Decision reflects the second time Attorney Kyros was sanctioned in these proceedings. He was initially sanctioned in the *Singleton/LoGrasso* case for failing to comply with the Court's order regarding defective discovery responses. (Doc. 376). The exact amount of counsel fees to be paid pursuant to that sanction order has been referred by the Court to Judge Richardson. (Doc. 384).

2.     The Court's recent decisions to sanction Attorney Kyros were preceded by numerous admonitions, both by this Court and Judge Richardson, about the adverse consequences which would ensue if Attorney Kyros continued his dishonest conduct toward the tribunal. Indeed, nearly two years ago, this Court admonished Attorney Kyros and his co-counsel to adhere to the standards of professional conduct and to the applicable rules "lest they risk future sanction or referral to the Disciplinary Committee of this Court." (Doc. 253 at 28).

3.     Having ignored all prior admonitions, and other orders of the Court, this Court not only awarded counsel fees in its September 17, 2018 Memorandum of Decision but also issued another direction for the express purpose of protecting the public. Thus, Attorney Kyros was ordered to send a copy of the September 17, 2018 Memorandum of Decision "to each of the *Laurinaitis* Plaintiffs, and any other future, current, or former WWE wrestler who has retained

or in the future does retain his legal services to file suit against WWE alleging an injury sustained during their wrestling contract with WWE." Doc. 383 at 38.

4. Attorney Kyros' actions and statements following issuance of the Court's September 17, 2018 Memorandum of Decision constitute further and additional grounds for discipline. Prior to the dismissal of the last individual case in these consolidated proceedings, Attorney Kyros was consistently dishonest <u>to</u> the Court. Since that dismissal, he has been consistently dishonest <u>about</u>, and disparaging of, the Court. In the process, and as more fully set further herein, he has violated Rules 8.2(a) and 8.4 of the Connecticut Rules of Professional Conduct.

5. One of the principal places Attorney Kyros has orchestrated his improper disparagement of the Court following the recent dismissal and sanction order is a blog site he has maintained throughout the course of his campaign to solicit clients to sue WWE and to communicate with those whom he convinced to sue WWE. He has used that blog site to post various rants designed to demonize WWE, and to post disinformation about the actual status of the litigation. Rather than post the actual September 17, 2018 Memorandum of Decision on the blog site upon issuance of the decision, an action which would be consistent with the Court's directive to send a copy to all current and future WWE clients, he instead immediately used the blog site to disparage the Court and falsely portray the Court's decision.

6. Thus, on September 17, 2018, Kyros posted the following comment on his blog at http://wweconcussionlawsuitnews.com shortly after the Court's

3

decision:

> Today a single Federal Judge ruled against the 60 wrestlers and their families in the Laurinaitis case, and ignored their many personal appeals in dozens of affidavits filed with the Court. . . The opinions expressed in today's decision about my strong advocacy are inaccurate, bizarre and unworthy of the court. The reasoning of the opinion itself is flimsy as the court finds, in ignorance of the facts, that there is no reasonable basis for the assertions, despite a substantial body of medical peer reviewed literature going back almost a hundred years. In any event these are Jury issues as the plaintiffs demonstrated that the WWE knew about the risks of head injuries long before the 2007 date the court invents. . . . Additionally the WWE misclassified, exploited, injured these people in violation of labor laws and continues to ignore that CTE even exists in professional wrestling. It is a sad ruling, and we trust the wrestlers claims will be better received in the appeals courts. I will continue to fight and advocate for wrestlers [sic] legal rights despite this tragic opinion that attempts to cast down my clients [sic] hopes for better lives.

(*See* Ex. 3). Contrary to Attorney Kyros' false assertions, the Court did not ignore the affidavits of plaintiffs, but instead specifically found that Mr. Kyros did not comply with the Court's orders requiring certain specifics in those affidavits, all of which were submitted *in camera*. Kyros has subsequently posted all or portions of the affidavits of Jon Heidenreich, Marty Jannetty, and Mrs. Snuka on his blog site. It is immediately obvious that those affidavits did not even attempt to comply with the Court's Order regarding their contents. Moreover, the Court did not "invent" the 2007 date. That date, as Attorney Kyros knows full well, is the uncontested evidence of the first reported case of CTE in a wrestler.[1]

---

[1] This Court further stated: "Plaintiff's counsel has now had the opportunity to conduct extensive discovery on this issue in prior consolidated cases. He was unable to uncover any evidence showing that WWE has or had actual knowledge that concussions or subconcussive blows incurred during professional wrestling matches cause CTE. The earliest evidence they were able to uncover is the fact that WWE learned from public news reports that one wrestler, Christopher Benoit,

4

7.     Later that same day, Kyros posted another derogatory comment on his blog at http://wweconcussionlawsuitnews.com with the false and incorrect statement implying that the Court had stated or ruled that it was unconcerned about CTE studies, or alleged murder-suicides allegedly caused by CTE.  In tabloid style designed to denigrate the Court, Kyros headlined the article "Suicide Attempts, Murder Suicides, CTE Studies. Court: Not Really our Concern."  (*See* Ex. 4).  In support of this tabloid-style falsity, Attorney Kyros then linked to Plaintiffs' Motion to File a Sur-Reply in Opposition to WWE's Application for Attorneys' Fees in the *Singleton/LoGrasso* case, which had precisely nothing to do with the dismissal and sanctions motions in the *Laurinaitis* case.  In that motion, Kyros asserted, without a smidgen of evidence, that Singleton had been hospitalized because he was thinking of jumping off a bridge.  The motion to file a sur-reply also references the alleged murder-suicides of Chris Benoit and Charles Williams, neither of whom are plaintiffs in any case filed by Attorney Kyros against WWE, let alone the *Laurinaitis* case, the dismissal of which was the subject of Kyros' disparaging comment.  As such, Kyros' suggestion that the Court in any way had reason to consider such matters in dismissing *Laurinaitis* is just completely dishonest, and it was even more dishonest to imply that the Court ever stated such matters were of no concern to the Court.

8.     Next, on September 18, 2018, Attorney Kyros continued his attacks on the Court, posting the following comment on

---

was diagnosed with CTE in 2007.  Plaintiffs' counsel therefore lacks any good faith basis for asserting that WWE was aware of any association between professional wrestling and CTE prior to 2007, which was after most of the Plaintiffs retired."  (Doc. 383 at 32.)

http://wweconcussionlawsuitnews.com: "This decision will not stand, it is very poorly reasoned, ignores basic facts about the history of CTE science, as well as the rudimentary concepts of employment & labor law and is mostly a personal attack on your advocate and not on you! . . . This case is far stronger than the claims brought by NFL, NCAA and NHL athletes.  CALL ME!  We are appealing the case with the very best lawyers in the country behind us."  (*See* Ex. 5).

9. On September 19, 2018, Kyros posted another rant on http://wweconcussionlawsuitnews.com stating that the "Court Gets it Wrong" and "[t]he Judge and WWE don't GET it."  (*See* Ex. 6.)  Kyros falsely asserted that the Court "IGNORED" the affidavit filed by Carole Snuka and attached a link to her affidavit.  (*See id.*).  Kyros' assertion, however, is demonstrably false.  In fact, the Court's September 17, 2018 Memorandum of Decision expressly quoted the following statements from her affidavit in finding Snuka's wrongful death claim to be time-barred:  that 1996 was "[t]oward the end of his career," that "most of Jimmy's full-time wrestling was at the height of the 1980s," and that he was "inactive" or "largely semi-retired" between 1996 and 2015.  (Doc. 383 at 24). Furthermore, a review of the affidavit confirms the Court's finding that Kyros did not comply with the Court's September 29, 2017 Order, as the affidavit is bereft of the specific information required by the Court's Order.  For example, there is nothing in the affidavit about what specific WWE employees or agents supposedly said or did that forms the basis of each claim, including (a) a reference to the specific paragraph of the complaint; (b) when and where such act occurred or such statement was made; (c) the identities of any and all persons

6

present at the time of the act or statement; and (d) any facts personally known by Mrs. Snuka that form the basis of the belief that WWE knew or should have known that wrestling caused any traumatic brain injuries. (*See* Doc. 362 at 21.)

10. On September 19, 2018, the *Connecticut Post* published an article quoting Attorney Kyros as having stated that "Bryant missed a main point of his arguments: CTE cases, because they are developing medical conditions, are not subject to the same time limits for filing." Kyros also is quoted as stating: "The decision is wrongly decided on a number of factual and legal grounds. The court simply ignored our (statute of limitations) arguments and paid no attention to the 60 detailed personal appeals in affidavits requested by the judge almost a year ago. . . . The comments about me personally are inaccurate, and over the top." (*See* Ex. 7). To be sure, the Court did not "miss" a main point of Kyros' arguments; it is Kyros who misses — or, more accurately, ignores — that there is no distinct statute of limitations for CTE cases but rather such claims are subject to the repose aspects of Conn. Gen. Stat. § 52-577 and Conn. Gen. Stat. § 52-555(a), as the Court correctly held. Moreover, Kyros' statement that the Court "paid no attention" to the affidavits submitted by the plaintiffs is patently false as the Court specifically noted that it "review[ed] each of these submissions" and referenced several of them in its opinion. (*See* Doc. 383 at 3, 19, 24.)

11. On September 24, 2018, Kyros posted yet another smear of the Court on his blog in a comment entitled "No Justice for Jon Heidenreich? Court cites his Injuries as 'Irrelevant Allegations' In Opinion." (*See* Ex. 8). Attorney Kyros then referenced that part of the Court's September 17, 2018 Memorandum of

7

Decision pointing out that the SAC included allegations of physical injuries that have nothing to do with concussions or head trauma, including the allegation that "Plaintiff Jon Heidenreich sustained serious shoulder injuries requiring multiple surgeries." (*Id.*). Attorney Kyros also posted a link to Heidenreich's affidavit submitted pursuant to the Court's September 29, 2017 Order. Like Snuka's affidavit, Heidenreich's affidavit in reality demonstrates Kyros' complete failure to even attempt to comply with the Court's September 29, 2017 Order. Once more, there is nothing in Heidenreich's affidavit about what specific WWE employees or agents supposedly said or did that forms the basis of each claim, including (a) a reference to the specific paragraph of the complaint; (b) when and where such act occurred or such statement was made; (c) the identities of any and all persons present at the time of the act or statement; and (d) any facts personally known by Heidenreich that form the basis of his belief that WWE knew or should have known that wrestling caused any traumatic brain injuries. (*See* Doc. 362 at 21).

12. Kyros' attacks on this Court were widely disseminated and re-published by other media outlets across the United States and throughout Connecticut, including by the Associated Press, Reuters, the N.Y. Post, the Connecticut Post, the Connecticut Law Tribune, Law 360, and numerous other online publications.

13. These types of disparaging comments by an attorney about the judge presiding over a case involving that attorney have been found to violate the Connecticut Rules of Professional Conduct and consequently can subject the attorney to disciplinary proceedings resulting in suspension of the attorney's bar

license.  *See e.g.,* Conn. R. Prof. Conduct 8.2 (a) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge. . ."); Conn. R. Prof. Conduct 8.4 ("It is professional misconduct for a lawyer to . . . (4) [e]ngage in conduct that is prejudicial for the administration of justice."); *Disciplinary Counsel v. Serafinawicz*, 160 Conn. App. 92, 123 A.2d 1279 (2015) (suspending a Connecticut attorney for 120 days for false statements concerning the trial judge and for engaging in conduct prejudicial to the administration of justice); *Chief Disciplinary Counsel v. Rozbicki*, 326 Conn. 686, 689-691, 703-04 (2017) (upholding finding that attorney violated Rules 8.2(a) and 8.4 by accusing judges of failing to be fair and impartial and failing to uphold and apply the law); *see also Evans v. Comm'r of Correction*, 37 Conn. App. 672, 676 n.6 (1995) (cautioning counsel against making statements that a judge did not review certain documents as claimed in the court's memorandum of decision).

    14.    Given his systematic disparagement of the Court, his repeated use of dishonesty to mischaracterize the Court's actual Memorandum of Decision, and his failure to post the actual Memorandum of Decision on his blog site dedicated to disinformation, counsel for WWE sent an email to Attorney Kyros, on Friday, September 28, 2018, copied to all his co-counsel in the *Laurinaitis* case, requesting confirmation that he had complied with that portion of the Court's Order requiring him to send a copy of the Memorandum of Decision to all WWE performers who have retained his services.  On Monday, October 1, 2018, Attorney Kyros gave an ambiguous response that conspicuously failed to directly

answer the question. WWE's counsel then asked for a straightforward answer to the question by return email. Without responding to the follow-up inquiry by WWE's counsel, later on Monday, October 1, 2018, Kyros posted a derogatory article on his blog site regarding the Court's requirement that he send a copy of the Memorandum of Decision to the WWE performers he represents along with a link to the Memorandum of Decision. He styled the post "To Protect the Public (Not Trees) Kyros Mails Judge's Ruling to Wrestlers." (*See* Ex. 9). With the article, he posted a photograph of Staples boxes with the September 17, 2018 Memorandum of Decision on one of the boxes. (*Id.*). Crucially, however, Kyros back-dated the article to make it appear as if he had posted it on September 29, 2018 to falsely suggest he had done the required mailing before his ambiguous response to counsel's inquiry suggesting he had complied when, in fact, he had not. (*Id.*). The back-dating of the article is apparent from the fact that the exif (exchangeable image file) data associated with the photo in the article indicates that it was created on October 1, 2018. (Ex. 10).[2]

15.  In light of the foregoing, WWE respectfully submits that the Court should now revisit the appropriateness of referring Kyros to the Disciplinary Committee of this Court. *See Miller v. Bridgeport Bd. of Ed.*, No. 3:12-cv-01287(JAM), 2014 WL 3738057, at *11 (D. Conn. July 30, 2014) (holding that referral to disciplinary authorities is proper sanction for Rule 11 violations involving false allegations). In addition, Kyros' continuing dishonesty regarding the Court and its decisions even after the Court's award of sanctions shows that

---

[2] To obtain the exif data, WWE's counsel submitted the URL of the photo in the article to www.exifdata.com.

he has not been and cannot be deterred and warrants awarding Defendants all reasonable fees sought in this Application.

B.    Reasonableness of the Fees

16.    As the Court recognized in its September 17, 2018 Memorandum of Decision, the legal fees that Defendants were forced to incur in connection with their motions for sanctions, in fact, were significant because of the oversized length of Plaintiffs' original complaint and FAC as well as the extent of false allegations, frivolous legal claims, and time-barred causes of action asserted in each complaint.

17.    With respect to the motion for sanctions concerning the original complaint, Defendants were required to review a 214-page and 667-paragraph complaint asserting 17 claims on behalf of each of 53 plaintiffs; prepare and serve a Rule 11 motion and supplemental Rule 11 motion; engage in extensive briefing, including a 46-page memorandum of law in support of the motion cataloging plaintiffs' massive plagiarism of allegations from the NFL complaint, numerous other patently false allegations, and frivolous legal claims, including the assertion of non-existent causes of action, time-barred claims, and released claims; prepare and file 40 exhibits in support of the motion; and prepare for and attend a full-day hearing on the motion before Judge Richardson at which both sides made extensive oral arguments and audiovisual presentations.

18.    With respect to the motion for sanctions concerning the FAC, Defendants were required to review a 305-page and 805-paragraph complaint asserting 19 claims on behalf of each of 60 plaintiffs; prepare and serve another

11

**Rule 11 motion; engage in further extensive briefing, including another 46-page memorandum of law in support of the motion cataloguing plaintiffs' continued pattern of making false allegations (including allegations that the Court previously found to be false and that plaintiffs knew were false from prior discovery), making numerous irrelevant and inflammatory allegations, and asserting frivolous legal claims, including claims on behalf of 20 plaintiffs who signed releases and 18 plaintiffs who continued wrestling even after the filing of the complaint; and prepare and file 81 exhibits in support of the motion.**

**19.     Despite the Court's repeated admonitions to Attorney Kyros about his misconduct throughout the course of the litigation and the filing of two detailed and comprehensive motions for sanctions, Attorney Kyros continued his pattern of making false and irrelevant allegations and asserting baseless legal claims in a Second Amended Complaint, which the Court has now dismissed in its entirety.**

**20.     Attorney Kyros' misconduct has caused Defendants to incur substantial and unnecessary fees and expenses in connection with both motions for sanctions.  A full description of the fees and costs charged by Defendants' counsel, K&L Gates LLP and Day Pitney LLP, in connection with the motions for sanctions with respect to the original complaint and the FAC are set forth in the attached declarations of Curtis B. Krasik (Ex. 1) and Jeffrey P. Mueller (Ex. 2).**

**21.     Notably, in addition to preparing two sizeable sanctions briefs, WWE also had to incur equally substantial fees researching and writing two substantial motions to dismiss and supporting briefs regarding complaints built on Rule 11**

violations. Those substantial costs are not included herein, but are directly caused by the Rule 11 violations.

22. In total, Defendants are seeking reimbursement of $357,439.70 in attorneys' fees and costs (K&L Gates LLP — $222,616.70; Day Pitney LLP — $134,823) that they have incurred in connection with the two motions for sanctions. This total is comprised of $237,664.20 in attorneys' fees and costs incurred in connection with the motion for sanctions with respect to the original complaint and $119,775.50 in attorneys' fees and costs incurred in connection with the motion for sanctions with respect to the FAC.

23. This figure also does not include the full amount of the attorneys' fees charged by K&L Gates LLP and Day Pitney LLP to, and paid by, Defendants in connection with the two motions for sanctions. In this Application, Defendants have excluded numerous time entries in an effort to be as conservative as possible with respect to the attorneys' fees for which they are seeking reimbursement. Defendants also are not seeking reimbursement for the time of additional attorneys who did limited work related to the motions for sanctions.

24. As described at length in the Krasik and Mueller declarations, the fees charged by K&L Gates LLP and Day Pitney LLP in connection with the motions for sanctions were reasonable for the services provided, particularly given the quality of the services provided and the results obtained.

25. The hourly rates charged by K&L Gates LLP and Day Pitney LLP are similar to the rates charged by attorneys at comparable firms in Connecticut. In fact, a recent decision by the Honorable Alvin W. Thompson of the U.S. District

Court for the District of Connecticut specifically found that the hourly rates charged by Day Pitney LLP for Mr. Mueller's services and those of several of its other professionals were reasonable.  *See Wells Fargo Bank, N.A. v. Konover*, No. 3:05-CV-1924, 2014 WL 3908596, at *4-19 (D. Conn. Aug. 8, 2014).

26. WWE reviewed and approved all of the invoices submitted by K&L Gates LLP and Day Pitney LLP in this matter and has paid all such invoices. WWE and Mr. McMahon are sophisticated commercial clients, both of whom have maintained active involvement in this matter and the invoices of outside counsel are reviewed by the General Counsel of WWE.

27. Under Connecticut law, where attorneys' fees have been paid by the client, the amount paid is presumed to be reasonable, especially if the client is sophisticated.  *See Konover*, 2014 WL 3908596, at *5 ("under Connecticut law, evidence of the fees and expenses [a party] actually incurred creates a presumption that such costs were reasonable"); *id.* at *5 ("there is a strong presumption that the rate a paying client actually did pay during the course of the litigation is reasonable"); *id.* at *6 ("the cases demonstrate that when a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable"); *id.* at *10 ("The presumption of reasonableness under [Connecticut law] applies to the hours worked as well as the hourly rates charged.").

28. The amount of attorneys' fees that Defendants seek in this case is reasonable. The U.S. Supreme Court, the Second Circuit, and courts in jurisdictions around the country have routinely upheld awards of sanctions in

excess of one million dollars in attorneys' fees — awards in excess of the amount of fees sought here.  *See, e.g., Chambers v. Nasco, Inc.*, 501 U.S. 32, 58 (1991) (affirming $1 million sanction award); *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 630-35 (2d Cir. 2018) (affirming $2.7 million sanction award); *Wachovia Bank v. Tien*, 406 Fed. Appx. 378, 382-83 (11th Cir. 2010) (affirming $3.4 million sanction award); *Scott v. Metro. Health Corp.*, 234 Fed. Appx. 341, 345 (6th Cir. 2007) (affirming $1.6 million sanction award); *In re Delta/Airtran Baggage Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2015 WL 4635729, at *28 (N.D. Ga. Aug. 3, 2015) (awarding sanction of $2.7 million); *U.S. v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 26 (D.D.C. 2004) (awarding sanction of $2.75 million); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598 (D.N.J. 1997) (awarding sanction of $1 million).

WHEREFORE, Attorney Konstantine Kyros and his Law Offices should be ordered to pay Defendants $357,439.70 in attorneys' fees and costs that Defendants have incurred in connection with the motions for sanctions.

    DEFENDANTS WORLD WRESTLING
    ENTERTAINMENT, INC. AND VINCENT K.
    McMAHON

    By:   /s/  Jerry S. McDevitt
        Jerry S. McDevitt (pro hac vice)
        Curtis B. Krasik (pro hac vice)
        K&L GATES LLP
        K&L Gates Center
        210 Sixth Avenue
        Pittsburgh, PA 15222
        Phone: (412) 355-6500
        Fax: (412) 355-6501
        Email: jerry.mcdevitt@klgates.com
        Email: curtis.krasik@klgates.com

        **Jonathan B. Tropp (ct11295)**
        **Jeffrey P. Mueller (ct27870)**
        **DAY PITNEY LLP**
        **242 Trumbull Street**
        **Hartford, CT 06103**
        **Phone: (860) 275-0100**
        **Fax: (860) 275-0343**
        **Email: jbtropp@daypitney.com**
        **Email: jmueller@daypitney.com**

        **Their Attorneys.**

## **CERTIFICATION**

       I hereby certify that on October 4, 2018 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

       */s/ Jeffrey P. Mueller*