UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, RYAN SAKODA, and MATTHEW ROBERT WIESE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Defendant. | CIVIL ACTION NO. 3:15-cv-001074 (VLB) <br> Lead Case |
| JOSEPH M. LAURINAITIS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WORLD WRESTLING ENTERTAINMENT, INC. *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 3:16-CV-01209 (VLB) <br> Consolidated Case |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES [DKT. NO. 386] AND
MOTION TO STRIKE IMMATERIAL AND WHOLLY IRRELEVANT ALLEGATIONS**

Plaintiffs' Counsel hereby respond in opposition to Defendants World Wrestling Entertainment, Inc., *et al.* (collectively, "WWE" or "Defendants") Application for Fees, Dkt. No. 386.

I.     INTRODUCTION

On September 17, 2018, the Court dismissed Plaintiffs' Second Amended Complaint. In the same Order, Dkt. No. 383, this Court also imposed a series of

1

sanctions under seemingly varied but largely unidentified grounds. *See* Court's 9.17 Order, Dkt. No. 383, at 39 ("Court's Order"). As a result of this Court's Order, Defendants' filed their Application for Fees, Dkt. No. 386, that Plaintiffs now oppose.

Plaintiffs' Counsel disputes both the reasonableness of the requested fees and their imposition.[1] The Court's Order failed to identify what sanctions were granted pursuant to Rule 11 and what sanctions were granted under the Court's inherent authority and whether these sanctions were imposed *sua sponte* as required by the Federal Rules. This ambiguity and nature of the fused Order granting both sanctions and dismissal greatly impact Plaintiffs and their Counsel's rights of appeal, and response to this Application for Fees.

Regardless, the fees sought are unreasonable, excessive and punitive. As with WWE's Application for Fees in the *Singleton Lograsso* case, WWE again seeks to make assertions about Plaintiffs' Counsel outside the record through peripheral tactics that disregard the Rules. The content of WWE's application leaves no doubt about its intent to punish Mr. Kyros and Plaintiffs' Counsel for representing the injured Plaintiff wrestlers.

The purpose of these sanctions should not be to abuse or penalize Plaintiffs' Counsel, but merely to address reasonable reimbursement for what stems from two sanctions motions filed <u>concurrently</u> with Defendants' Motions to Dismiss.[2]

---

[1] A Notice of Appeal shall be filed disputing the granting of sanctions and the imposed fees upon final judgment.
[2] Whether the Court had authority to reopen *sua sponte* the denied motion for sanctions is disputed.

WWE's clearly abusive tactics against Plaintiffs' Counsel throughout this litigation warrant severe capping of the requested fees. If WWE's improper intention was not overtly obvious from the face of its Application for Fees, then its own skit describing how it will bankrupt anyone who tries to sue them evidences its clear bad faith. In a seemingly prepared monologue during the pendency of this litigation, Defendant Vincent K. McMahon derides his employee, Kevin Steen, aka Kevin Owen, before the crowd on one of its flagship programs with millions of viewers and addresses what would happen if his employee were to file a lawsuit against him and his company:

> "I'm not going to fight back, I'm going to sue!"
> Well let me give you a little hint as to what happens if you filed that lawsuit
> The moment you do, I'm personally going to be on the phone to your attorney – hopefully you're there and I'm on speakerphone
> Because when you file the lawsuit you will hear these words:
> "Kevin Owens – You're fired!"
>
> Do you have any idea, any idea at all, how many lawsuits I've been in, how many court room battles I've been in?
> Do you know how many I've lost, Kevin?
> Not one.
>
> You see, for better or for worse, the laws of this land are written for people like me.
> There is a 'B' associated with my name, and that 'B' is billionaire.
> By the time that lawsuit gets to court, there is going to be a 'B' next to your name – Bankrupt.
> There is not going to be a lawsuit, there is going to be a match.

"Kevin Owen brutally attacks Mr. McMahon: SmackDown LIVE, Sept. 12, 2017", WWE Network, WWE.com, at 1:00-2:20, *available at* https://www.wwe.com/playlist/sin-city-smackdown-live-highlights-2017-09-12, *last visited on* October 24, 2018.

Mr. McMahon's triumphalism sends an unmistakable message to WWE wrestlers past, present, and future, the Plaintiffs, their Counsel, the Courts, and

WWE audiences, that money and power protect him from ordinary legal process. WWE Counsel will cast doubt on this interpretation but WWE's raison de'etre is to communicate esoterically through its own "fiction versus reality", "real versus fake", universe and narratives. *See* Second Amended Complaint, Dkt. No. 363, paras. 129-136, *and* <u>Professional Wrestling: Sport and Spectacle</u>, Sharon Mazer University of Mississippi Press 1998, Ch. 6: "Real" Life, p. 149-171.

Mr. McDevitt's own public statements calling for Mr. Kyros' disbarment, calling him an embarrassment to the profession, and his reference to the hundreds of thousands of dollars Mr. Kyros will owe clearly evidences WWE's punitive motives.

WWE must itself recognize the impropriety of these out-of-court taunts, as WWE seeks to hold Plaintiffs' Counsel to higher standards than it holds itself by improperly including out-of-context sections from a blog in what appears to be further requests for sanctions within its Application for Fees. Obviously, this fee application is the wrong vessel for such a request, and these irrelevant and immaterial accusations against Plaintiffs' Counsel should be stricken from its Motion and the record.

Plaintiffs' Counsel submit this Opposition to Defendants' Application for Fees as the grossly excessive amount of $357,439.70 is patently unreasonable for the limited scope of what was seemingly granted under the Court's Order. Additionally, the billing records submitted are general block billing in many cases and opaque and vague. While Plaintiffs' Counsel dispute the validity of the imposition of sanctions against them, they always have sought a fair process and

4

request these fees be denied or drastically reduced for the reasons stated herein and as justice requires.

II.     STANDARD OF REVIEW

Fees should be reduced where the amounts are excessive, redundant, or unnecessary. *See In re Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 297 (E.D.N.Y. 1995) (noting a "court is allowed to reduce a request for attorney's fees to an amount it considers reasonable"). "As a rule of fairness, when counsel fees are to be charged to the opposing party, services should be charged at the rate of the available person who can most cheaply qualify to complete the task: cost-conscious clients would expect such practices". *Id., quoting Browning v. Peyton*, 123 F.R.D. 75, 79 (S.D.N.Y. 1988). "The court uses the time records submitted as a benchmark and should exclude any hours expended that are excessive, duplicative, or inadequately documented". *Id., referencing Watkins v. Fordrice*, 7 F.3d 453, 457 (5th Cir. 1993), on remand, 852 F. Supp. 542 (S.D. Miss. 1994), aff'd, 49 F.3d 728 (5th Cir. 1995).

WWE once again relies on the assertion its fees are reasonable because WWE paid them. Dkt. No. 386, at 14. The Second Circuit recognizes the underlying fallacy because fees have been sought from the outset of this litigation and for numerous unsuccessful claims. *See In re Big R Food Warehouses*, 896 F. Supp., at 297 (finding a party, "in anticipation of attorney's fees, may have been more willing to pay the bill as charged, instead of scrutinizing the hours spent on each task…"). Simply put, the mere fact WWE paid for the work does not bridge the gap to show it is entitled to reimbursement. Moreover, WWE may not have scrutinized the bills

5

thinking that non-payment of a portion of the bill may reflect poorly on the threatened motion for sanctions. *Id.*

Out-of-district Counsel are subject to the hourly rates consistent within the District of Connecticut. *See Simmons v. New York City Trans. Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (noting out-of-district counsel should use the hourly rates used in the district where the reviewing court sits, otherwise known as the forum rule). The usual rates attributable to two motions for sanctions do not approach $357,439.70 in the District of Connecticut.

WWE had to keep contemporaneous billing records to be awarded its reasonable fees. *See NY State Ass's for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (finding that although substantial documentation was submitted, contemporaneous time records were only included for a small fraction of the total hours claimed and holding that this was not enough as "contemporaneous time records are a prerequisite for attorney's fees in this Circuit"). This District considers the requirement firm, and "from which attorneys may deviate only in the rarest of cases". *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (noting even "a district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records".

Where WWE utilized block-billing, or "the practice of aggregating multiple tasks into one billing entry", the legal fees should be reduced. *See L.V. v. New York City Dep't of Educ.*, 700 F. Supp. 510, 526 (S.D.N.Y. 2010). This is because block-billing makes it "exceedingly difficult for courts to assess the reasonableness of

the hours billed." *Wise v. Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008). "[B]lock-billing 'renders it difficult to determine whether, and/or the extent to which, the work done by … attorneys is duplicative or unnecessary...'" *Aiello v. Town of Brookhaven*, 2005 U.S. Dist. LEXIS 11462, at *10-11 (E.D.N.Y. 2005). Accordingly, courts reduce fee awards for block-billing. See*, e.g. Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 2011 WL 1322520, at *6 (E.D.N.Y. 2011) (reducing fees by 25% for block-billing); *L.V.*, 700 F. Supp., at *12 (reducing fees by 15% for block-billing).

"A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed." *Lora v. J.V. Car Wash, Ltd.*, 2015 U.S. Dist. LEXIS 99444, *34 (S.D.N.Y. 2015) (internal citations omitted) (quoting "[w]here billing records are vague, a [percentage] reduction in fees is … appropriate"). "When time records reflect vague and duplicative entries, and entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees". *Id.*, at *34, n.18 (internal citations omitted).

"[I]nformation that is presented in a form that is redundant, does little to aid in the Court's understanding of the evidence, or could have been effectively presented through less effective means are not properly taxed." *Crandall v. City & County of Denver*, 594 F. Supp. 2d 1245 (D. Col., 2009); *Alonso v. Union Oil Co.*, 71 F.R.D. 523, 524 (S.D.N.Y. 1976) (noting that fees were not recoverable where a tool was "merely cumulative of the other evidence offered"). Additionally, any expedited service fees, appearance fees, and copies of transcripts fees are not recoverable and should not be permitted by this Court. *See PPC Broadband, Inc.*

7

*v. Corning Optical Communs. RF, LLC*, 2017 U.S. Dist. LEXIS 15223, *4-5 (N.D.N.Y., 2017).

III.   **WWE'S UNREASONABLE ATTORNEYS' FEES**

   A. <u>**WWE's Inappropriate and Immaterial PowerPoint.**</u>

Once again WWE seeks exorbitant fees for an unnecessary and superfluous PowerPoint presentation. Seemingly doubling down on its brazen disregard for appropriate standards, WWE requests at least $47,433.00 for its production of a PowerPoint presentation.[3] This request is undeniably unreasonable on its face. *See In re Big R Food Warehouses*, 896 F. Supp., at 297; *Simmons v. New York City Trans. Auth.*, 575 F.3d., at 174.

The PowerPoint can be created and billed as "clerical work" and not billed at attorneys' rates. Additionally, the cumulative evidence presented to the Court in the hearing was duplicative and unnecessary. The Court did not need such an inexplicably expensive tool. *See Alonso v. Union Oil Co.*, 71 F.R.D. 523, 524 (S.D.N.Y. 1976) (finding the physical use of a standard tool did not aid the jury in comprehending its function, operation, and proper handling, and therefore the costs of renting the tool were not recoverable due to its unnecessary cumulative effect with evidence already before the jury).

101.7 hours – at least – were spent creating a PowerPoint. The entirety of the entries relating to this PowerPoint presentation should be stricken and omitted from the Court's calculation of fees. It was a wholly unnecessary and unreasonable

---

[3] "At least" because WWE's Counsel's improper block-billing prevents Plaintiffs from conclusively establishing an exact amount for this standard tool used to provide cumulative evidence already before the Court.

8

expense and was filled with matters unrelated to the granting of fees – including the presentation of numerous issues entirely unrelated to any Rule 11 violations, including the assertion of myriad contested facts from outside the pleadings and the record, which include wrestlers post-WWE activities, wrestlers out-of-Court statements, and most, if not all, of the NFL allegations, including WWE's Counsel's false statements about Mr. Kyros not being involved in that litigation.

B. <u>Unrecoverable Fees.</u>

Although not as flagrant as the excessive $47,433 PowerPoint, WWE appears to include research for its Motions to Dismiss within its Request for Fees. It cannot recover for its pursuit of its responsive pleading. WWE chose to file its Motions for Sanctions alongside its Motions to Dismiss and cannot receive the windfall of fees for both its Motions for Sanctions and its Motions to Dismiss. Therefore, wherever the fees implicate its responsive pleading, those fees should not be recoverable and removed from the Court's calculation.

Also like its PowerPoint, WWE utilized improper billing practices making it near impossible to properly ascertain exact amounts dedicated to fees applicable to this Court's consideration. Day Pitney's generic billing prevents Plaintiffs and the Court from accurately reducing the fees to only include amounts granted by the Court. As a result, all of Day Pitney's fees need to be stricken or reduced to a transparent and reasonable amount determined by the Court.

  i. *Research and Motion Practice on Plaintiffs Still Performing.*

WWE apparently seeks at least $5,431.50 for research and drafting relating to its affirmative defenses in its Motions to Dismiss. Whether Plaintiffs ability (or

9

lack thereof) to perform is a question of fact and whether it affects their recovery is an issue for trial. WWE's attempts to seek reimbursement for 18.3 hours of work relating to this issue should not be recoverable as there is no sanctionable conduct arising from Plaintiffs' inclusion of any wrestlers potentially still performing.[4]

Further, Plaintiffs' claims are based on long-term, degenerative neurological injuries that manifest in a broad spectrum of symptoms. Plaintiffs' inability to establish these symptoms and their injuries through fact discovery and trial precludes an analysis on the reasonableness of these not determined Plaintiffs inclusion in their Complaint. As a result, no sanctions could be permitted against Plaintiffs' Counsel for this issue and WWE's seeking of fees must be disregarded.

ii. *Research and Motion Practice on NFL Comparisons.*

Although much time and energy has been spent disputing the comparisons between the NFL's established failure to protect its players and WWE's continued refusal to uphold its duty to its former performers, WWE has twisted that analysis to the odd plagiarism claim that has infected the discussion for months. There is no sanctionable conduct for detailing the similarities between two lawsuits, particularly where the issues are so similar on their face. The $8,311.50 request for fees for what appears to be administrative use of redline comparisons and copying of one complaint to another is grossly disproportional to its value and is not in line with the Court's ruling. *Lora v. J.V. Car Wash, Ltd.*, 2015 U.S. Dist. LEXIS 99444, at *34, n.18. As a result, the Court should not grant these excessive fees and should disregard them from its analysis.

---

[4] No discovery was permitted in this case, and therefore only the pleadings as established under the Rules can be considered at this stage.

10

### iii. *Research and Motion Practice on the Validity of Contracts.*

WWE again seeks compensation for its affirmative defenses in its Motions to Dismiss. These are not recoverable under the Court's Order. Plaintiffs' booking contracts, nostalgia contracts, or any other agreement entered between the parties were explicitly disputed as invalid in Plaintiffs' Complaints. No fact discovery was permitted to establish or dispute this contention. Plaintiffs pled in good faith and with sufficient legal backing their claims and there is no evidence on the record that establishes sanctionable conduct relating to the existence or non-existence of valid contracts between the parties. WWE's attempts to recover for standard litigation practice is not appropriate and not permitted under the Order. Therefore, at least the $10,859.50 should be disregarded from the Court's arithmetic.

### iv. *Research and Redaction of Client's Business Information.*

Apparently WWE believes Plaintiffs should be responsible for fees attributed to WWE's Counsel's research into redacting its own business documents for its various filings (such as its Motions to Dismiss as an affirmative defense to Plaintiffs' claims). This is beyond the pale of reasonableness and simply not recoverable under the Court's Order. WWE's Counsel had a responsibility to their client to properly redact when they chose to use certain business information in their filings. The calculations and legal analyses associated with these decisions are not related to the Court's narrow imposition of sanctions. Therefore, at least the $2,910.00 should be disregarded from the Court's assessment.

As a result, at least $27,512.50 should be reduced as non-compensable fees. Additionally, all fees attributable to comparing Plaintiffs' Complaints should be

11

removed from the equation as this is basic clerical work necessary to file a responsive pleading. This is not recoverable under the Court's Order.

C. <u>Day Pitney's Unreasonable Fees.</u>

Attorney Mueller again submits blanket block-billing with fees reduced (and in some cases not reduced) as evidence of recoverable fees. These time sheets are not transparent and do not meet the strict requirements for requesting attorneys' fees. *N.Y. State Ass's for Retarded Children, Inc.*, 711 F.2d, at 1147; *Scott v. City of Ne York*, 626 F.3d, at 133. The after-the-fact reductions should be further reduced and in the cases where obvious white-outs occurred but no reduction in fees were applied, the Court should reduce the fees given the failure to provide proper contemporaneous records. *L.V. v. New York City Dep't of Educ.*, 700 F. Supp., at 526; *Wise v. Kelly*, 620 F. Supp. 2d, at 450.

This "estimate" adjusting downward the "amount of time spent in connection with" the sanctions motion is no different than starting at zero and estimating upwards to arrive at an amount of time purportedly spent on the Motions for Sanctions, which courts universally reject in fee applications such as this one because the resulting estimates are not the required contemporaneous records.

Additionally, a portion of Attorney Mueller's work, a Partner at Day Pitney, involved administrative and clerical work. This included filing the Motions for Sanctions and providing chambers copies. Fees should be consistent with the quality of the work provided and awarding Partner's fees for administrative and clerical work is unreasonable. *Lora v. J.V. Car Wash, Ltd.*, 2015 U.S. Dist. LEXIS

99444, at *34, n.18; *Browning v. Peyton*, 123 F.R.D., at 79. Therefore, the Court should reduce these fees as well.

All of Day Pitney's fees should be reduced a percentage equal to the reduction calculation applied above to KL Gates. WWE seeks numerous fees not recoverable under the Rules or the Court's Order. Day Pitney's failure to properly bill requires the Court to reduce by a significant portion the amounts within its Application for Fees.

IV. **WWE'S IRRELEVANT AND IMMATERIAL ALLEGATIONS SHOULD BE STRICKEN FROM ITS APPLICATION FOR FEES**

The *Laurinaitis* matter was dismissed at the Motion to Dismiss stage, and the record is limited to those facts as alleged in the Complaint and its accompanying attachments. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d. Cir. 2007). The Court should only consider such facts as properly on the record. *Id.* The Court should strike evidence not on the record or where that evidence is inadmissible at this juncture. *Monroe v. Bd. Of Ed. Of Town of Wolcott, Connecticut*, 65 F.R.D. 641, 645 (D. Conn. 1975) (citing Fed. R. Civ. P. 12(f), the court noted a motion to strike asks the court to remove "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

WWE included a series of exhibits unrelated to this matter of fees. Included for the sole purpose of once again tainting the Court's analysis of the proper issue before it, these exhibits and the related portions of its Motion should be stricken as no discovery will take place on this matter, no evidentiary assessment on these documents will occur, and, most importantly of all, none of it relates to WWE's

13

Application for Fees. *Deydo v. Baker Engineering New York, Inc.*, 1998 U.S. Dist. LEXIS 132 (S.D.N.Y. 1998).

The Court's analysis is limited to WWE's Application for Fees in light of the Court's Order granting in part WWE's Motions for Sanctions. Nothing else should be included and everything else should be stricken. *Id.*

## V. CONCLUSION

Counsel implores the Court to consider what Mr. Kyros actually did accomplish as demonstrated in the record. Mr. Kyros' advocacy on behalf of the Plaintiffs helped lead to the diagnoses of Chronic Traumatic Encephalopathy in several deceased professional wrestlers, provide an overlooked section of society with a united voice against a company and its Chairman actively seeking to silence them through economic power, and sought adequate healthcare and compensation for these Plaintiffs' long-term and often debilitating injuries. Considered in the context of this contentious case, the size of WWE's requested fee award against Mr. Kyros and his law firm is punitive, excessive, and simply not justifiable.

Plaintiffs' Counsel requests WWE's immaterial allegations stricken from its Application for Fees and its request for fees denied or substantially reduce as detailed above.

Dated: October 24, 2018.

                                          Respectfully Submitted,

                                          /s/ Konstantine W. Kyros
                                          Konstantine W. Kyros, Esq.
                                          Bar No. ct30132
                                          Anthony M. Norris
                                          KYROS LAW OFFICES

17 Miles Road
Hingham, MA 02043
Telephone: (800) 934-2921
Facsimile: 617-583-1905
kon@kyroslaw.com

S. James Boumil, Esq.
BOUMIL LAW OFFICES
120 Fairmount Street
Lowell, Massachusetts 01852
Telephone: (978) 458-0507
SJBoumil@Boumil-Law.com

Brenden P. Leydon, Esq.
TOOHER WOCL & LEYDON LLC
80 4th Street
Stamford, Connecticut 06905
Telephone: (203) 517-0456
Facsimile: 203-324-1407
BLeydon@tooherwocl.com

Erica C. Mirabella, Esq.
MIRABELLA LAW LLC
132 Boylston Street, 5th Floor
Boston, Massachusetts 02116
Telephone: (617) 580-8270
Facsimile: (617) 583-1905
erica@mirabellaLLC.com

R. Christopher Gilreath, Esq.
GILREATH & ASSOCIATES
200 Jefferson Avenue, Suite 711
Memphis, Tennessee 38103
Telephone: (901) 527-0511
Facsimile: (901) 527-0514
chrisgil@sidgilreath.com

*Counsel for Plaintiffs.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 24 day of October, 2018, the above Response was served via this Court's electronic case filing system.

                              */s/ Konstantine W. Kyros*
                              **Konstantine W. Kyros**