## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **RUSS McCULLOUGH,** *et al.,* | : **NO. 3:15-cv-01074-VLB** |
| | : **LEAD CASE** |
| **Plaintiffs,** | : |
| | : |
| **VS.** | : |
| | : |
| **WORLD WRESTLING ENTERTAINMENT,** | : |
| **INC.,** | : |
| | : |
| **Defendant.** | : |

| | |
|---|---|
| **JOSEPH M. LAURINAITIS,** *et al.,* | : **NO. 3:16-CV-01209-VLB** |
| | : **CONSOLIDATED CASE** |
| **Plaintiffs,** | : |
| | : |
| **VS.** | : |
| | : |
| **WORLD WRESTLING ENTERTAINMENT,** | : |
| **INC.,** *et al.,* | : |
| | : |
| **Defendants.** | : **NOVEMBER 5, 2018** |

### DEFENDANTS WORLD WRESTLING ENTERTAINMENT INC. AND VINCENT K. MCMAHON'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR APPLICATION FOR ATTORNEYS' FEES ORDERED BY THE COURT

Defendants World Wrestling Entertainment, Inc. ("WWE") and Vincent K. McMahon respectfully submit this reply memorandum in further support of their application ("Application") for attorneys' fees and costs incurred in connection with their motions for sanctions regarding Plaintiffs' Complaint and First Amended Complaint ("Motions for Sanctions").

## I.   INTRODUCTION

Attorney Kyros' conduct following Defendants' filing of the Application further underscores that he will not be deterred unless the Court awards

Defendants the full amount of the attorneys' fees and costs sought in the Application and considers referral to the disciplinary committee.

The day after the Application was filed, Attorney Kyros posted on his website an article that continues his baseless, unfair, and dishonest attacks on the Court, Defendants' counsel, and the sanctions orders, and ominously includes the depiction of a gun beneath the headline:



WWE Hits Kyros With $357,000 Bill & WWE Lawyer Jerry McDevitt Reveals He is Avid Reader of This Blog!!

October 5, 2018 by Konstantine Kyros Leave a Comment

(*See* Ex. A.)  Whether intended as a threat or simply a display of extraordinary lack of judgment, the use of a gun in any description of a Court order is wildly inappropriate.  Instead of acknowledging the misconduct causing the sanctions order, Attorney Kyros proceeds to falsely accuse Defendants' counsel of "fanaticism, belligerence, and sharp practice" and the Court of "ignoring" the Plaintiffs' claims and legal rights:

> The Court in its ruling dismissing the claims of these women and men ignored the wrestlers' legal rights to a safe workplace.  The court ignored the wrestlers' rights to be treated under the law as employees.  The court ignored the claims of families of some of the most famous athletes ever diagnosed with CTE including Mr. Fuji and Jimmy Snuka.  The court ignored the fact that WWE actions and inactions have led to a tragic epidemic of suicides, drug and alcohol addiction, overdoses and total health crisis that has engulfed the wrestling community.

(*Id.*)  As set forth in the Application, Attorney Kyros' attacks on the Court following its recent decisions are inappropriate and baseless.  The Court carefully and thoroughly considered Plaintiffs' claims and determined that "dismissal with prejudice is warranted because the *Laurinaitis* claims are either barred by this Court's prior rulings, time-barred, or frivolous."  (Doc. No. 383 at 21.)

Attorney Kyros' opposition to the Application ("Opposition") further confirms that his misconduct has not been deterred by the sanctions orders.

- The Opposition fails even to address Attorney Kyros' unprofessional and unethical attacks on the integrity of the Court.  Having no defense to such further misconduct, he offers none.[1]

- The Opposition argues that Attorney Kyros should not be required to pay the requested fees because "there is no sanctionable conduct" despite the Court's order finding his conduct to be sanctionable and awarding such fees.  (*See* Opp'n at 10.)

- The Opposition falsely accuses Defendants of "clearly abusive tactics against Plaintiffs' Counsel throughout this litigation" despite the fact that *Attorney Kyros* is the one who has been sanctioned for *his* abusive practices throughout this litigation.  (*See* Opp'n at 3.)

- The Opposition bizarrely accuses Defendants of acting in "bad faith" based on an entirely *fictional* storyline from a WWE television program in violation of this Court's prior rulings admonishing Attorney Kyros for making irrelevant allegations based on fictional storylines.  (*See* Opp'n at 3; Doc. No. 383 at 13 n.1; Doc. No. 362 at 7-8.)

- The Opposition asks the Court to reward Attorney Kyros' "accomplish[ments] as demonstrated in the record" even though he has

---

[1] Attorney Kyros instead moved to strike the description of his attacks on the Court.  A motion to strike cannot be used to strike material from a party's brief.  *See Carman-Nurse v. Metro. Dist. Comm'n*, No. 3:16-CV-1987, 2018 WL 3935025, at *6 (D. Conn. Aug. 15, 2018) (motion to strike "only applies to pleadings, and not to briefing in support or opposition to a motion").  Moreover, Defendants' inclusion of this information in the Application demonstrates that Attorney Kyros still has not been deterred by the entry of sanctions.

accomplished nothing in this litigation other than to cause Defendants to incur substantial fees defending frivolous claims.  (*See* Opp'n at 14.)

In summary, Attorney Kyros fails to take *any* responsibility for his own misconduct that led to the sanctions order and instead continues to deflect blame on the Court and the Defendants for the harm that he alone has caused. Accordingly, an award of the full amount of fees requested is necessary to deter Attorney Kyros, and a disciplinary referral should be considered.

II.   <u>ARGUMENT</u>

A.   <u>An Award of the Full Amount of Fees Is Necessary for Deterrence</u>

Attorney Kyros erroneously argues that "[t]he purpose of these sanctions should not be to abuse or penalize Plaintiff's counsel, but merely to address reasonable reimbursement for two sanctions motions."  (Opp'n at 2.)

It is well-established that the purpose of sanctions *is* to punish and deter. *See* Fed. R. Civ. P. 11, Adv. Committee Note (1993 Amendment) ("the purpose of Rule 11 sanctions is to deter rather than to compensate"); *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1989) (the purpose of Rule 11 "is not reimbursement but 'sanction'"); *Cooper v. Salomon Bros. Inc.,* 1 F.3d 82, 85 (2d Cir. 1993) ("Rule 11 sanctions are often punitive or aimed at deterrence"); *McMahon v. Shearson/Am. Exp., Inc.*, 896 F.2d 17, 21 (2d Cir. 1990) (the goals of Rule 11 sanctions include "punishment for violation of the Rule, compensation for victim[s] of the violation and deterrence of others"); *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, No. 93 CIV. 168, 1997 WL 225813, at *5 (S.D.N.Y. May 5, 1997) ("Sanctions under Rule 11 are designed to punish improper conduct and to deter others from engaging in similar conduct").

-4-

In addition, more severe sanctions are necessary to serve the purpose of deterrence in cases of repeated misconduct by a party or an attorney. *See* Fed. R. Civ. P. 11, Adv. Committee Note (1993 Amendment) (what amount "is needed to deter that person from repetition in the same case" and "what amount is needed to deter similar activity by other litigants" are considerations in determining the amount of the sanctions to impose); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56–57 (1991) (upholding conclusion that "full attorney's fees were warranted due to the frequency and severity of Chambers' abuses of the judicial system and the resulting need to ensure that such abuses were not repeated"); *Macolor v. Libiran*, No. 14-CV-4555, 2015 WL 1267337, at *4–5 (S.D.N.Y. Mar. 18, 2015) (imposing additional monetary sanctions and referring counsel to disciplinary authorities where "previous sanction was plainly insufficient to deter [counsel's] continued misconduct."); *Ahmed v. Gateway Group One*, No. 12 CIV. 0524, 2012 WL 2061601, at *5 (E.D.N.Y. Jun. 7, 2012) (imposing additional monetary sanctions under Rule 11 because counsel "has not been deterred in the past by having to pay his opponent's attorneys' fees"); *see also Gfeller v. Doyne Med. Clinic, Inc.*, No. 2:14-CV-01940, 2015 WL 5210392, at *9 (D. Nev. Sept. 3, 2015) ("[W]hen an attorney fails to alter her course of conduct despite previous orders admonishing or sanctioning her, courts impose progressively harsher sanctions in an attempt to obtain the deterrent effect sought.").

In this case, the Court repeatedly warned Attorney Kyros about the potential for sanctions for his misconduct and has now sanctioned him twice, yet his dishonesty continues.  A small sample of the warnings given to him follow:

- **On November 10, 2016, Judge Bryant "admonishe[d] Kyros and his co-counsel to adhere to the standards of professional conduct and to applicable rules and court orders lest they risk future sanction or referral to the Disciplinary Committee of this Court." (Doc. No. 253 at 27-28).**

- **On September 29, 2017, Judge Bryant instructed Attorney Kyros that if he failed to file an amended complaint in compliance with the Federal Rules of Civil Procedure, the _Laurinaitis_ case would be dismissed with prejudice and the Court would "revisit whether to award attorney's fees as a sanction on the _Laurinaitis_ Plaintiffs' counsel." (Doc. No. 362 at 22.)**

- **On February 22, 2018, Judge Richardson recommended that Attorney Kyros "be subject to significant sanctions in the hope of deterring further abuses of the discovery process" and warned "plaintiffs and their counsel that any further suggestion of dishonesty throughout this litigation could, and likely should, result in much more dramatic sanctions up to and including the dismissal." (Doc. No. 371 at 3 n.2) Judge Bryant adopted Judge Richardson's recommendation and ordered Attorney Kyros to pay all of WWE's legal fees in connection with its motion for sanctions in the _Singleton_ case. (Doc. No. 376.)**

- **On September 17, 2018, Judge Bryant recognized that "[t]he Court has been extremely forgiving of Attorney Kyros' and his appearing co-counsels' highly questionable practices throughout this case, in an effort to give each wrestler a fair hearing. However, despite second, third, and fourth chances to submit pleadings that comply with Rules 8, 9, and 11, Attorney Kyros has persisted in asserting pages and pages of frivolous claims and allegations for which he lacked any factual basis. He was warned that if he continued to do so this case would be dismissed, and he ignored this warning. Attorney Kyros has offered the Court no reason to believe that if given a fifth, sixth, or seventh chance, he would prosecute this case in a manner consistent with the Federal Rules of Civil Procedure." (Doc. No. 383 at 37-38.) Accordingly, Judge Bryant held that "only the award of attorney's fees and costs would deter Attorney Kyros from committing future violations of Rule 11" and ordered Attorney Kyros and his Law Offices to "pay all of the legal fees that the Defendants reasonably incurred in connection with both of their Motions for Sanctions." (_Id._ at 38.)**

The Court's repeated warnings and admonitions prior to imposing sanctions and its actual imposition of sanctions on two separate occasions have been ineffective at deterring Attorney Kyros. As detailed above, Attorney Kyros' misconduct has continued even after the entry of sanctions orders and the filing

of this Application.  Accordingly, an award of the *entire* amount of fees and costs requested by Defendants is necessary for effective deterrence.  *See Telesco v. Fireman's Fund Insurance Company*, No. 17CV710, 2018 WL 4426015, at *3 (D. Conn. Sept. 10, 2018) (an award of the full amount of fees was necessary to serve "Rule 11's purpose to deter frivolous and harassing litigation"); *Offor v. Mercy Med. Ctr.*, No. 215CV2219, 2018 WL 4124488, at *3 (E.D.N.Y. Aug. 29, 2018) (holding that the "only way to deter such misbehavior in the future is requiring [plaintiff's counsel] to bear the full costs of the fees incurred by the Defendants"); *Bridgestone/Firestone, Inc.*, 1997 WL 225813, at *5 (awarding full amount of attorney's fees to punish "reprehensible conduct and deter others").

   **B.    The Amount of the Requested Fees Is Reasonable**

   Attorney Kyros acknowledges the basic premise of Connecticut law that the attorneys' fees paid by a sophisticated client are presumed to be reasonable both with respect to the hours worked and the rates charged.  *See Wells Fargo Bank, NA v. v. Konover*, No. 3:05-CV-1924, 2014 WL 2908596, at *5 (D. Conn. Aug. 8, 2014) ("under Conneticut law, evidence of the fees and expenses [a party] actually incurred creates a presumption that such costs were reasonable"); *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay'").  Although Attorney Kyros suggests that this principle should not apply because Defendants anticipated receiving its fees from the outset of this litigation (Opp'n at 5), Defendants obviously could not have known that they would be reimbursed for any of their fees until Judge Bryant entered

-7-

orders sanctioning Attorney Kyros and awarding Defendants the fees incurred in connection with their Motions for Sanctions.   Accordingly, Defendants always had an incentive to litigate this case efficiently and cost-effectively.   *See Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 6, 2009) ("[T]he fact that [defendant], a highly sophisticated business client, has paid these bills" is "evidence of the reasonableness of the amount as a whole" since defendant "could not have assumed that it would be reimbursed in full, or even in part."); *Telenor Mobile Commc'ns AS v. Storm LLC*, No. 07 Civ. 6929, 2009 WL 585968, at *6 (S.D.N.Y. Mar. 9, 2009) ("This is not a case in which [plaintiff] can have assumed that it was litigating on [defendant's] ticket" and "[plaintiff's] willingness to incur the costs must primarily have been based on what it believed was necessary and proper in an effort to prosecute its case.").

### 1.   The Hourly Rates Are Reasonable

Attorney Kyros does not appear to challenge the reasonableness of the hourly rates charged by K&L Gates LLP and Day Pitney LLP and paid by Defendants. The Court in *Konover* found the standard rates charged by Day Pitney LLP attorneys to be reasonable, and the hourly rates charged by K&L Gates LLP are within the range of rates charged by Day Pitney LLP and comparable firms in Connecticut.[2] (*See* Doc. No. 386-1 at 5; Doc. No. 386-2 at 4.)

---

[2] Attorney Kyros states that "[o]ut-of-district counsel are subject to the hourly rates consistent within the District of Connecticut"  (Opp'n at 6), but the Court is not required to apply the forum rule in the context of attorney's fees awarded as sanctions.  *See Ceglia v. Zuckerberg*, No. 10-CV-00569A F, 2012 WL 503810, at *8 (W.D.N.Y. Feb. 14, 2012) ("[T]he court has discretion to use out-of-district rates in fixing the amount of an attorney's fee awarded as a sanction.").

Accordingly, there is no claim and no basis to claim that the hourly rates paid by Defendants were unreasonable.

### 2. The Hours Worked Are Reasonable

Attorney Kyros' claim that the hours spent on various categories of work in connection with the Motions for Sanctions were excessive ignores the reasons for and scope of the Court's sanctions order.

**Research and Motion Practice on NFL Complaint:**  Attorney Kyros argues that Defendants should not be reimbursed for their efforts detailing his many patently false allegations plagiarized from the NFL lawsuit because "[t]here is no sanctionable conduct for detailing the similarities between the two lawsuits." (Opp'n at 10-11.)  The false allegations plagiarized from the NFL lawsuit were a central part of both Motions for Sanctions (Doc. No. 229 at 23-24; Doc. No. 263 at 10-13), and the Court expressly relied upon those arguments in its sanctions order (Doc. No. 383 at 11-12).  Because the fees for work on this issue were incurred in direct connection with the Motions for Sanctions, Defendants are entitled to recover them under the Court's order.  (*See* Doc. No. 383 at 38.)

**Research and Motion Practice on Plaintiffs Who Were Still Performing:**  Attorney Kyros argues that Defendants should not be reimbursed for their efforts demonstrating that he had asserted frivolous claims on behalf of 18 Plaintiffs who continued to actively wrestle after they filed this lawsuit because the Plaintiffs were not provided with an opportunity to prove their claims through "fact discovery and trial."  (*See* Opp'n at 9-10.)  Attorney Kyros again ignores that Defendants argued in their Motion for Sanctions that the claims of Plaintiffs who

continued performing despite their allegations in this lawsuit were frivolous (Doc. No. 263 at 39-40) and that the Court held that none of the Plaintiffs were entitled to fact discovery or trial *because* of their "frivolous" claims.  (Doc. No. 383 at 21, 35, 37-39.)  Because the fees for researching and briefing this issue were incurred in connection with the Motions for Sanctions, Defendants are entitled to recover them under the Court's order.  (*See* Doc. No. 383 at 38.)

**Research and Motion Practice on the Validity of Contracts**:  Attorney Kyros argues that Defendants should not be reimbursed for research and briefing on Plaintiffs' unconscionable contracts claim because "[n]o fact discovery was permitted" on this claim and "there is no evidence on the record that establishes sanctionable conduct relating to this claim."  (Opp'n at 11.)  Once again, Attorney Kyros ignores that Defendants had argued that the unconscionability claim was frivolous and time-barred in their Motion for Sanctions (Doc. No. 263 at 31, 35, 41) and that the Court expressly held that the "unconscionable contracts claims are frivolous"  and "time-barred" in its ruling  (Doc. No. 383 at 28).  Because fees for researching and briefing the unconscionable contracts claim were incurred in connection with the Motions for Sanctions, Defendants are entitled to recover them under the Court's order.  (*See* Doc. No. 383 at 38.)

**Redaction of Client's Business Information**:  Attorney Kyros incorrectly argues that Defendants should not be reimbursed for fees for redacting exhibits to their Motions for Sanctions.  (Opp'n at 11-12.)  Defendants included many exhibits with their Motions for Sanctions, including contracts that demonstrated that at least 20 Plaintiffs released the claims asserted in this lawsuit.  These

contracts required redaction in order to safeguard the confidentiality of WWE's proprietary business information.  Because fees for redacting these exhibits were incurred in connection with the Motions for Sanctions, Defendants are entitled to recover them under the Court's order.  (*See* Doc. No. 383 at 38.)

<u>PowerPoint Presentation</u>:  Attorney Kyros' argument that Defendants should not be reimbursed for fees incurred in preparing a PowerPoint presentation for use during the all-day hearing on the Motions for Sanctions is incorrect and disingenuous.  (*See* Opp'n at 8-9.)  Attorney Kyros' claim that the PowerPoint presentation involved "clerical work" ignores that substantial attorney time was required to develop, organize, and present the content of the presentation.  His claim that the PowerPoint presentation was "unnecessary and superfluous" conveniently ignores that he also used a PowerPoint presentation at the hearing and believed that it would be beneficial to the Court.[3]  Defendants should not be penalized for using a tool that both sides believed would facilitate their arguments to the Court and aid in its understanding of the issues.

### 3.   <u>Day Pitney LLP's Fees Are Reasonable</u>

Attorney Kyros' attacks on the reasonableness of Day Pitney LLP's fees are baseless and unfounded.  (*See* Opp'n at 12-13.)

First, Attorney Kyros argues that Day Pitney LLP's fees should be reduced for a purported lack of contemporaneous time records in reliance on cases in which a party did not submit *any* invoices or billing statements.  *See Scott v. City*

---

[3] Unlike the Defendants, however, Attorney Kyros had technical issues with his PowerPoint presentation, resulting in a substantial delay of the hearing that wasted the time of both the Court and Defendants' counsel.

*of New York*, 626 F.3d 130, 134 (2d Cir. 2010) (no records provided); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (only some records provided).   In contrast to those cases, Day Pitney LLP supplied invoices with contemporaneous time entries for *all* of the claimed fees in connection with the Motions for Sanctions.  (*See* Doc. No. 386-2 at Ex. A.)

Second, Attorney Kyros improperly argues that Day Pitney LLP's fees should be reduced for block billing.  The Day Pitney LLP invoices specifically allocate the amount of time spent to the tasks relating to the Motions for Sanctions so that the Court can determine the reasonableness of those fees, thereby eliminating the concern with block billing.

Third, Attorney Kyros' criticism of Day Pitney LLP's work in connection with the Motion for Sanctions as "administrative and clerical" is unfounded.  It is readily apparent from a review of the invoices that nearly all of Mr. Mueller's time was spent researching and drafting the Motions for Sanctions.  (*See* Doc. No. 386-2 at Ex. A.)   Accordingly, as the Court found in the *Konover* case, the fees charged by Day Pitney LLP and paid by Defendants for Mr. Mueller's services were reasonable.  (*See* Doc. No. 386-2 at 4.)

III.   **CONCLUSION**

For these reasons and those set forth in the Application, Attorney Kyros and his Law Offices should be ordered to pay Defendants $357,439.70 in fees and costs that Defendants incurred in connection with the Motions for Sanctions, and a disciplinary referral should be made.  As noted in the Application, Defendants excluded several timekeepers and categories of fees in an effort to be conservative with respect to the fees for which they are seeking reimbursement.

**DEFENDANTS WORLD WRESTLING ENTERTAINMENT, INC. and VINCENT K. McMAHON,**

By: */s/ Jerry S. McDevitt*

    Jerry S. McDevitt (*pro hac vice*)
    Curtis B. Krasik (*pro hac vice*)
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-6500
    Fax: (412) 355-6501
    Email: jerry.mcdevitt@klgates.com
    Email: curtis.krasik@klgates.com

    Jonathan B. Tropp (ct11295)
    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jbtropp@daypitney.com
    Email: jmueller@daypitney.com

    **Their Attorneys**

## CERTIFICATION OF SERVICE

I hereby certify that, on November 5, 2018, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    */s/ Jeffrey P. Mueller*
    Jeffrey P. Mueller (ct27870)