UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, RYAN SAKODA, and MATTHEW ROBERT WIESE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Defendant. | CIVIL ACTION NO. 3:15-cv-001074 (VLB) <br> Lead Case |
| JOSEPH M. LAURANAITIS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WORLD WRESTLING ENTERTAINMENT, INC., et al., <br><br> Defendants. | CIVIL ACTION NO. 3:16-CV-1209 (VLB) <br> Consolidated Case <br><br> NOVEMBER 14, 2018 |

**SURREPLY IN OPPOSITION TO WWE'S AND VINCENT K. MCMAHON'S REPLY MEMORANDUM [DKT. 398] TO
PLAINTIFFS' RESPONSE IN OPPOSITION TO WWE'S MOTION FOR FEES**

Plaintiffs and Plaintiffs' Counsel hereby respond to Defendants World Wrestling Entertainment, Inc.'s ("WWE") and Vincent K. McMahon's Reply [Dkt. 398] to Plaintiffs' Response in Opposition to WWE's Motion for Fees as Defendants mischaracterize the sanctions order and reference new factual allegations with the improper purpose of shifting fees to Plaintiffs' Counsel in order to deter him from exercising his First Amendment right to freedom of expression – specifically in reference to his blog posts.

1

The matter presently before the Court, however, is to determine the reasonableness of the fees to be awarded to the Defendant, if any, based on the Court's September 17, 2018 Order (Dkt. 383 at 38). The fees in question are "*legal fees that the Defendants reasonably incurred in connection with both of their Motions for Sanctions* [Dkt. 262 and 228]." *Id.* at 38 (*emphasis added*).

The Defendants have submitted an astonishing fee application to the court to impose $357,439.70 in fees and costs on a single member of the team of lawyers representing the Plaintiffs. [Dkt. 398].

Plaintiffs' Counsel contend that the fees are excessive, improper, require close review and should be reduced or disallowed on the grounds set forth in Plaintiffs' Opposition [Dkt. 389]. *Budget Rent-A-Car- Sys., Inc. v. Consol. Equity LLC*, 428 F.3d 717, 718 (7th Cir. 2005) ("When an award of fees is permissive, denial is an appropriate sanction for requesting an award that is not merely excessive, but so exorbitant as to constitute an abuse of process of the court asked to make the award.")

This is the sole issue currently before the Court. The issue is not enjoining blog posts or out-of-court media statements (by either party). Given the contentious nature of this long-running litigation, judicial review of the extremely high fees Defendants seek to force Plaintiff's counsel to pay is appropriate. The reasonableness of the fees can be examined and questioned, and it is appropriate for the Court to do so, especially given certain arguments made by Defendants.

Media statements and matters outside the pleadings, particularly those which have not been raised until now, should not be considered in the Defendants'

application for fees and any such references should be stricken from the record. The Defendants' media and pled statements have themselves been far from measured, some of which have been previously referenced in the pleadings.

A cursory review demonstrates these out-of-court and pled statements repeatedly and vigorously attack Plaintiffs' Counsels' ethics, legal skills, and integrity. Specifically, Attorney McDevitt has repeatedly made statements to international news media outlets stating that Attorney Kyros should be disbarred. These statements could certainly raise the question of whether such statements should be subject to disciplinary action and raise concerns as to whether the fees sought are reasonable. *Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Serv. Union*, 788 F.2d 894, 899 (sanctions not imposed when litigation tactics of party seeking the sanctions "hardly represented a model of propriety").

During the pendency of the consolidated cases, Mr. Kyros swore an Oath and became a member of the Court in this District. Mr. McDevitt, despite decades of representing the Defendants in Connecticut, does not appear to be a member of the District Court of Connecticut. As such he may not be aware of the "Code of Pretrial and Trial Conduct" handbook given to lawyers upon admission to this District. If he were, he may have hesitated before personally attacking opposing counsel publicly and calling for his disbarment. Plaintiffs have refrained from calling such actions to the attention of the court and have attempted not to turn this case into a series of personal attacks back and forth, but by doing so, Defendants have been allowed to convey a one-sided picture to the Court

seemingly to the disadvantage of Plaintiffs. This conduct has been on-going since the inception of the case (i.e. WWE Attorney Terry Budd stated on the record: "Talk about Exhibit A to our next indictment… against Kyros." Videotaped Deposition of Paul Levesque May 31, 2016 at P. 162). Plaintiffs' Counsel, on the other hand, have commented on the case itself but refrained from making personal attacks against Defendants' Counsel.

I. **Purpose of the Imposed Sanctions in the Court's September 17, 2018 Order**

The Defendants argue that the purpose of sanctions may be punitive. Plaintiffs' Counsel contend that it would be for the Court to explain the basis of the sanctions and articulate their purpose. The sanctions awarded in the Order state as their purpose to "deter Attorney Kyros from committing future violations of Rule 11." [Dkt. 383 at 38]. Although the Order contains numerous dicta and other conclusory assertions about Mr. Kyros and his legal skills, ethics and integrity, the Order clearly does not offer a basis for the sanction of fees and costs on the grounds Defendants state.

Defendants argue that Plaintiffs' Counsel's "conduct" following the filing of their fee application, "underscores that he will not be deterred." The "conduct" the Defendants now seek to "deter" are posts on a website that the Defendants characterize as featuring what they believe are unfair attacks on the Court, themselves and the sanctions order. [Dkt. 398 at 1-2].

Defendants' analysis is at odds with the Courts stated basis for the sanctions, which from the clear language used explains that the Court wishes to "deter" Plaintiffs' Counsel from filing further pleadings, such pleadings or papers

4

as are governed by Rule 11, that would potentially violate Rule 11. *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1268 (2d Cir. 1987) (Rule 11 is not "a mechanism for imposing sanctions for any and all improper conduct of a party or its counsel during the litigation.") *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991) (for a paper to trigger Rule 11, it must be both signed and filed in court).

The Court explained the basis of ordering Mr. Kyros to mail Dkt. 383 to various parties, as "in order to protect the public." A fair interpretation for this sanction is that the Court believed that his clients needed to be protected from his advocacy. The Court did not order Mr. Kyros to not comment on its ruling nor did it order him to change his thoughts or views about the outcome of the case, his understanding of CTE science, or his understanding of the legal rights of professional wrestlers. As such, the Court does not dictate that Mr. Kyros be punished, penalized or abused. Nor has he been deemed under Rule 11 to be "deterred" from making public statements or financially harmed in the manner the WWE argues in its memorandum. [Dkt. 398, particularly at 4-5].

A further issue for the Court to now weigh, based on the Defendants' posture and argument, is whether the Defendants are in fact presenting excessive fees with the intent to be punitive to Mr. Kyros and whether they wish to impose economic hardship upon him resulting in injustice and the appearance of retribution for bringing the wrestlers' claims. The size of the award sought, along with the pled statements made in the request strongly suggest that this is not an amount that is the "minimum to deter." *White v. General Motors Corp.* 908 F.2d 675 (10th Cir. 990)

## II.     Deterrence of Blog Posts

WWE has introduced factual assertions about blog posts. These assertions, as with Defendants' earlier papers, are not relevant to the reasonableness of the attorneys' fees being sought. Nor are these assertions relevant to any deterrence of future Rule 11 violations or any prior alleged sanctionable conduct. Indeed, the Defendants seem to assert that Mr. Kyros has no right to candidly criticize the rulings made against him and his clients. The Courts' Order does not address public statements nor does Rule 11 govern these statements. *In Re Kunstler*, 914 F.2d 505 (4th Cir. 1990) (Sanctions could not be imposed based on "publication of baseless claims through the media.")

The inclusion of these statements appears to be designed to prejudice and inflame the Court further against Mr. Kyros and penalize him for making protected speech about his views.

The posts in question contain much important information of public concern *inter alia* detailing CTE diagnosis of his clients, donation of wrestlers' brains for CTE studies, criticism of Mr. McDevitt's false public statements about Mr. Kyros, criticism and documents related to the Defendants' testimony at the Chris Benoit hearings, videos of Mr. Kyros speaking about the wrestlers' plight and various updates of interest to the wrestling community. [The posts are to be found at http://www.concussionlawsuitnews.com].

To date, the Court has not focused its attention on matters such as the development of kayfabe, the language of wrestling, the code of silence in wrestling, the Ingroup subculture and the coercion exerted by the Defendants because of

these conditions and concepts [See SAC Para 129-151]. As such, it seems unlikely that the Court would now waste its resources discussing such topics because Defendants suddenly wish to raise these issues at this stage.

One point, however, must be addressed if only for the purpose of clarifying the record. The Defendants' Reply features stock photography from one of Plaintiffs' Counsel's blog posts depicting a Colt Python (they appear to have cropped the image for maximum inflammatory effect). The Defendants describe this "ominously" and suggest it might be a "threat." [Dkt. 398 at 2]. Although they make this intimation, they do so tepidly because the image is easily very clearly and extremely obviously a visual metaphor for the $357,000 in fees; the Colt .357 Python is one of the world's most famous revolvers, manufactured by the most famous company in Connecticut (based in Hartford). In deference to Defendants, Colt is perhaps the second most famous company based in Connecticut. *See* "Colt Python", Wikipedia, https://en.wikipedia.org/wiki/Colt_Python, last visited November 15, 2018.

If any message even resembling a threat was implicated in the image, it would most certainly be interpreted as being directed against Mr. Kyros, unambiguously so when viewed in connection with the text which describes the disputed matter of WWE's fees as "economic warfare" to silence him. Which in the context of this new argument advanced by WWE in Dkt. 398 that the sanctions were preemptively designed to deter him from comment, appears to be a fair assessment of their goals.  As such the stock photography identified in the Defendant's Exhibit in Dkt. 398 may also be viewed as a visualization of this concept.

7

Whether we like it or not, the world has evolved to the stage when visual metaphors, memes, emojis and such depictions are a primary means of mass communication in 2018. Steinmetz, Katy, "Forget Words, a Lot of Millennials Say GIFs and Emojis Communicate Their Thoughts Better Than English", Time, Time.com (June 27, 2017), http://time.com/4834112/millennials-gifs-emojis/. In any event, the concept, stock photography and contents of the blog are not material to the Court's analysis of the reasonableness of the proposed fees.

Dated: November 15, 2018.

Respectfully Submitted,

/s/ Konstantine Kyros
Konstantine W. Kyros
Bar No. ct30132
Anthony M. Norris
KYROS LAW OFFICES
17 Miles Rd.
Hingham, MA 02043
Telephone: (800) 934-2921
Facsimile: 617-583-1905
kon@kyroslaw.com
anorris@kyroslaw.com

Erica C. Mirabella, Esq.
MIRABELLA LAW LLC
132 Boylston Street, 5th Floor
Boston, Massachusetts 02116
Telephone: (617) 580-8270
Facsimile: (617) 583-1905
erica@mirabellaLLC.com

 S. James Boumil, Esq.
BOUMIL LAW OFFICES
120 Fairmount Street
Lowell, Massachusetts 01852
Telephone: (978) 458-0507
SJBoumil@Boumil-Law.com

R. Christopher Gilreath, Esq.

GILREATH & ASSOCIATES
200 Jefferson Avenue, Suite 711
Memphis, Tennessee 38103
Telephone: (901) 527-0511
Facsimile: (901) 527-0514
chrisgil@sidgilreath.com

**Brenden P. Leyden, Esq.**
TOOHER WOCL & LEYDON LLC
80 4th Street
Stamford, Connecticut 06905
Telephone: (203) 517-0456
Facsimile: 203-324-1407
BLeydon@tooherwocl.com

*Attorneys for Plaintiffs.*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 15th day of November, 2018, a copy of the foregoing was served via this Court's electronic case filing system.

                                      */s/ Konstantine Kyros*
                                      **Konstantine Kyros**