UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RUSS McCULLOUGH, et al.,           :
                                   :
     Plaintiffs,                   :
                                   :
     v.                            :    CASE NO. 3:15cv1074(JAM)
                                   :    LEAD CASE
WORLD WRESTLING ENTERTAINMENT,     :
INC.,                              :
     Defendant.                    :
_____

EVAN SINGLETON and VITO           :
LOGRASSO,                         :
     Plaintiffs,                   :
                                   :
     v.                            :    CASE NO. 3:15cv425(JAM)
                                   :    CONSOLIDATED CASE
WORLD WRESTLING ENTERTAINMENT,     :
INC.,                              :
     Defendant.                    :
_____

JOSEPH M. LAURINAITIS, et al,     :
     Plaintiffs,                   :
                                   :
     v.                            :    CASE NO. 3:16cv1209(JAM)
                                   :    CONSOLIDATED CASE
WORLD WRESTLING ENTERTAINMENT,     :
INC., et al,                      :
     Defendants.                   :

## RECOMMENDED RULING ON DEFENDANT'S APPLICATION FOR ATTORNEYS' FEES

     Currently pending before this Court are Applications from

Defendant, World Wrestling Entertainment Inc. ("WWE") for

Attorneys' fees resulting from two separate orders of sanctions

issued by the Honorable Vanessa L. Bryant. (Dkt. ## 379, 386,
and 446.)  Defendant seeks a total award of Attorney fees in the
amount of $573,770.44. (Dkt. #446 at 3.)  On March 30, 2021, the
Court held oral argument regarding the pending applications.
For the foregoing reasons, the undersigned recommends that fees
be awarded in the amount of $312,143.55

A full recitation of the procedural history and facts
underlying the consolidated cases, which include over 400 docket
entries, is not necessary.  The Court presumes some familiarity
with the procedural history and the facts based on the many
published and unpublished opinions in this case.  The Court will
include additional factual detail as necessary throughout this
ruling.

In August of 2016, defendant filed a motion for sanctions
in relation to a series of interrogatory responses submitted by
the plaintiffs.  (Dkt. #198).  The undersigned issued a ruling
recommending that the motion be granted, in part.  (Dkt. #371).
The recommendation was ultimately adopted by Judge Bryant. (Dkt.
#376).

Additionally, after the plaintiffs filed their complaint
and first amended complaint, the defendant, in December of 2016,
filed a motion for sanctions under Rule 11 of the Federal Rules
of Civil Procedure. (Dkt. #262).  The motion was ultimately
granted, in part, by Judge Bryant. (Dkt. #383). Judge Bryant

then referred the case to the undersigned to make a recommendation as to the reasonable amount of sanctions in the form of attorney fees.  (Dkt. #387). The case was subsequently transferred to the Honorable Jeffrey A. Meyer (Dkt. #409), but the referral for the recommended ruling still remains.

### Standard

The sole issue before the court is the proper amount of fees to be awarded in connection with the two orders awarding sanctions.  The Court will not, and need not, address any tangential arguments raised by the parties regarding the propriety of the sanctions that were issued.

In determining the amount of attorney fees to be awarded, courts in this district traditionally utilize "[t]he loadstar amount for attorneys' fees – . . . [the] presumptively reasonable fee, is the product of reasonable hours times a reasonable rate." Lavatec Laundry Tech. GmbH v. Voss Laundry Sols., No. 3:13-CV-00056 (SRU), 2018 WL 2426655, at *15 (D. Conn. Jan. 9, 2018)(internal quotations and citations omitted).

Therefore, when determining the loadstar, the court must first determine the reasonable rate.  In the Second Circuit Court of Appeals the reasonable hourly rate is the "'prevailing market rate,' *i.e.*, the rate 'prevailing in the [relevant] community for similar services by lawyers of reasonably

3

comparable skill, experience, and reputation.'" Farbotko v. Clinton County of New York, 433 F.3d 204, 208 (2d Cir. 2005)(alteration in original)(quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)).  The analysis continues by determining the reasonable number of hours worked.  "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Lavatec Laundry, 2018 WL 2426655, at *16 (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)).  The court may remove hours that it deems to be excessive, redundant, or unnecessary and may also issue an overall reduction for hours resulting from vague or insufficient time entries. *See* Id.

When performing this function, the court may "adjust[] the result, if necessary, to arrive at a reasonable fee award, instead adopting a case-specific approach for determining a reasonable fee to award." Doe v. Darien Bd. of Educ., No. 3:11CV1581 (JBA), 2015 WL 8770003, at *1 (D. Conn Dec. 14, 2015)(citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections, 522 F.3d 182, 184 (2d Cir. 2008)).  In so doing a court should be "stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 184.  In exercising its

considerable discretion as to the appropriate fees, a court "may increase or reduce the amount of the award in accordance with equitable considerations such as the *Johnson* factors." Lavatec Laundry, 2018 WL 2426655, at *15.[1]

## DISCUSSION

Plaintiffs make several objections to the defendant's fee application.  The Court will address the most relevant objections below.  Where reasonable the Court has grouped objections together into the same section.  After resolving the objections, a final mathematical calculation based on the analysis and adjustments has been included.

I.  Out of District Rates, the Forum Rule, and the Reasonableness of Defendant's Hourly Rate

A large portion of defendant's fees relate to work done by lead counsel, Attorney Jerry McDevitt, and other attorneys

---

[1] As noted in *Doe v. Darien Board of Education*, the *Johnson* factors are (1) the time and labor required by an attorney; (2) the novelty and difficulty of the questions presented by the litigation; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney because of acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
Darien Bd. of Educ., 2015 WL 8770003, at *2 n.3.

associated with his law firm K&L Gates.  Attorney McDevitt
practices in the Pittsburgh, Pennsylvania office of K&L Gates.
Plaintiffs argue that the hourly rate charged by Attorney
McDevitt was excessive and not in line with the prevailing
market rate in the District of Connecticut.  According to the
affidavits filed and the application for attorney fees, over the
course of the litigation, Attorney McDevitt billed at an hourly
rate of between $815.00 per hour and $950.00 per hour.  During
oral argument the Court asked the lawyers whether it is
appropriate in this case to use the out-of-district rate, as
opposed to the prevailing hourly rate in Connecticut.
Specifically, the Court asked whether it is required to follow
the forum rule with respect to reasonable hourly rates.

In *Arbor Hill* the Second Circuit provided a thorough and
detailed discussion on how to calculate the reasonable fee and
the role that the forum rule plays in the analysis. *See* Arbor
Hill Concerned Citizens Neighborhood Ass'n v. County of Albany &
Albany County Bd. of Elections, 522 F.3d 182, 190 (2d Cir.
2008).  "According to the forum rule, courts should generally
use the hourly rates employed in the district in which the
reviewing court sits in calculating the presumptively reasonable
fee." Simmons v. New York City Transit Auth., 575 F.3d 170, 174
(2d Cir. 2009)(internal quotation and citation omitted).  The
Second Circuit stated that there is a presumption "that a

reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." <u>Arbor Hill</u>, 522 F.3d at 191.  Importantly,

> [t]his presumption may be rebutted—albeit only <u>in the unusual case</u>—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill.

<u>Id.</u> (emphasis added).

In *Simmons* the Second Circuit further clarified the boundaries of the forum rule by stating that

> [w]e now hold that, when faced with a request for an award of higher out-of-district rates, a district court must <u>first</u> apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. Lawyers can achieve prestige and fame in numerous ways that do not necessarily translate into better results. The party seeking the award must make a <u>particularized showing</u>, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.

Simmons, 575 F.3d at 175–76 (emphasis added).

> *Simmons* makes clear that a litigant seeking an award of attorney's fees based on out-of-state rates must do more than just show that turning to out-of-state counsel was reasonable under the circumstances of the litigation. Specifically, the Defendants in this case [] "must overcome a presumption in favor of the forum rule, by persuasively establishing that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."

Lawrence v. Richman Group of Conn., LLC, 660 F. Supp. 2d 292, 301 (D. Conn. 2009), judgment clarified, No. 3:03CV850(JBA), 2009 WL 3425741, vacated sub nom. Lawrence v. Richman Group of CT LLC, 620 F.3d 153 (2d Cir. 2010)(quoting Simmons, 575 F.3d at 172.)  In rejecting the out-of-district rate in *Lawrence*, Judge Arterton stated that "Plaintiff 'should not be required to pay for a limousine when a sedan could have done the job.'" Id. at 301 (quoting Simmons, 575 F.3d at 177).

In further clarifying how a party meets its burden under the standards articulated in *Simmons*, Judge Arterton indicated that "[p]roving this 'substantially inferior result' prong does not require a distasteful presentation of either professional deficiencies or braggadocio; it requires a showing of subject matter specialization or law firm resources needed for the particular case which Connecticut firms could not adequately provide." Innis Arden Golf Club v. Bowes, No. 3:06CV1352 JBA, 2012 WL 1108527, at *3 (D. Conn. May 21, 2010).

In this case the defendant has asserted that Attorney
McDevitt, a 1980 graduate of Duquesne University School of Law,
has practiced both civil and criminal law for over 40 years.  In
addition, Attorney McDevitt has been primary outside counsel to
WWE for approximately 30 years.[2]  During oral argument Attorney
McDevitt articulated that WWE reviewed and paid all the bills
associated with this case.  In addition, Attorney McDevitt noted
that as a close friend and advisor to Vince McMahon and WWE,
none of Attorney McDevitt's bills have ever been questioned.
Attorney McDevitt also pointed to his affiliation with the WWE
concussion management program and his experience with the
training done by WWE regarding concussions as further evidence
of the need for him to litigate this case.

Defendant additionally directed the undersigned to Ceglia
v. Zuckerberg, No. 10-CV-00569A F, 2012 WL 503810, at *4
(W.D.N.Y. Feb. 14, 2012).  In Ceglia, the Court noted the
deterrent aspect of sanctions under Federal Rule of Civil
Procedure 11 and 37 as a reason not to apply to forum rule. See
Ceglia, 2012 WL 503810, at *8-*9.  However, as highlighted by
the Eastern District of New York, other courts have found that
the forum rule can be applied in sanctions cases. See 246 Sears

---

[2] The Court is aware that the defendant filed supplemental affidavits
after oral argument.  While the affidavits further articulate the
alleged reasons for WWE's selection of out-of-district counsel, they
do not sufficiently cure the deficiencies identified by the Court
throughout this ruling.

Rd. Corp. v. Exxon Mobil Corp., No. 09-CV-889 NGG JMA, 2013 WL 4506973, at *10 (E.D.N.Y. Aug. 22, 2013)(collecting cases).  The Court finds that application of the forum rule can still sufficiently serve both the compensatory and deterrent objectives of the sanctions in question here.

The evidence of Attorney McDevitt's background and affiliation with WWE is insufficient to overcome the presumption in favor of the forum rule.  Defendant has not made a particularized showing that local attorneys in Connecticut would lack the experience or resources to properly litigate this matter. As such Attorney McDevitt's hourly rate and fees will be reduced to a reasonable fee for the District of Connecticut.

The Court notes that during oral argument, the Court pointed out that even though the plaintiffs raised the "forum rule" in their brief dated October 24, 2018 (Dkt. #389), the defendant failed to address it, and failed to identify any lawyers in Connecticut who have comparable experience and comparable rates to Attorney McDevitt.  Thus, defendants failed to establish that Attorney McDevitt's hourly rate of $815 per hour (increasing to $950 per hour) is reasonable and consistent with the prevailing market rate in Connecticut.  After the oral argument, the defendant, without first filing a motion for leave to do so, filed two supplemental affidavits regarding the reasonableness of counsel's hourly rates and fees and arguing

against the application of the forum rule. (Dkt. #449 and #450). Plaintiffs filed a motion to strike the supplemental affidavits as procedurally improper and failing on the merits.  While the Court accepts the defendant's argument that the motion to strike is not proper in relation to an affidavit, the Court finds that the motion to strike is academic and recommends that it be denied as moot.  Defendant's supplemental affidavits, which contain facts as well as legal arguments, fail to adequately remedy the deficiencies mentioned earlier with respect to the application of the forum rule.[3]

In arguing that the fees are reasonable in this case, the defendant relies heavily on Wells Fargo Bank, NA v. Konover, No. 3:05CV1924 AWT, 2014 WL 3908596, at *1 (D. Conn. Aug. 8, 2014), which is a breach of contract case involving a contract which contains an attorney fee provision.

---

[3] As articulated earlier, defendant must overcome the presumption in favor of the forum rule and thereafter show that the rates charged by the out-of-district lawyers are reasonable.  Even when the Court considers the supplemental affidavits, the defendant has failed to meet its burden.  Defendant has articulated Attorney McDevitt's long history in dealing with WWE and the WWE's issues surrounding concussions.  However, no evidence has been provided which would establish that a local law firm would lack the resources to litigate this matter or that the alleged specialized knowledge of Attorney McDevitt was required for this case.  See Innis Arden Golf Club v. Bowes, No. 3:06CV1352 JBA, 2012 WL 1108527, at *3 (D. Conn. May 21, 2010).  Although the Court considered the supplemental affidavits, the Court notes that they were filed after oral argument and more than a year after the briefing closed, leaving plaintiffs at a disadvantage to respond quickly to the new arguments and information.

In *Wells Fargo*, the Honorable Alvin W. Thompson discussed much of the law regarding attorney fee awards in Connecticut. Id. at *3-*10.  In so doing, Judge Thompson found that Day Pitney LLP charged reasonable fees for the services they rendered in the case.[4]  By analogy, defendant asserts that the K&L Gates hourly rates are reasonable in this district because they are "similar to the rates charged by attorneys at comparable firms in Connecticut." Dkt. #386 at 13. Defendant asserts that the rates of the K&L Gates attorneys are generally comparable to Day Pitney's rates, so the K&L rates must be reasonable too.  However, defendant does not provide enough information for the Court to make a meaningful determination. The Court must be able to determine if the specific K&L Gates attorneys have comparable experience and skill to the Day Pitney attorneys who bill at the same rate. By way of example, if the defendant can point to a specific partner at Day Pitney in Hartford who charges $950 per hour, the Court still needs to determine that the partner at K&L Gates has comparable experience and skill to his or her comparator at Day Pitney. In

---

[4] Although Judge Thompson did not discuss the forum rule in *Wells Fargo*, the Court notes that the rates charged by the out-of-district lawyers in that case seem to be well within the prevailing market rate in Connecticut. It does not appear as though the parties raised or briefed the forum rule or that an argument was made that the hourly rates exceeded the prevailing rate in the District of Connecticut.

its brief and during oral argument Defendant did not provide sufficient information for the Court to make this determination.

During oral argument, the defendant highlighted that, in *Wells Fargo*, Judge Thompson stated that there is a "presumption that what a client actually paid constitutes a reasonable fee[.]" Wells Fargo, 2014 WL 3908596, at *5.  Further, "when a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable." Id.  However, in establishing the loadstar for reasonable fees, the Second Circuit has stated that "evidence of the actual billing arrangement between [the party seeking fees] and its counsel should be considered a significant, though not necessarily controlling, factor in the determination of what fee is reasonable." Crescent Publ'g Group, Inc. v. Playboy Enterprises, Inc., 246 F.3d 142, 151 (2d Cir. 2001)(emphasis added).

Allowing a sophisticated client to recover the attorney fees paid to out-of-district counsel simply because the sophisticated client paid the fees without necessarily knowing it would recover them could potentially undermine the forum rule.  An out-of-district attorney could potentially recover a rate that far exceeds the prevailing rate in the local district without going through the specific and detailed analysis that

the Second Circuit articulated while discussing the forum rule in *Simmons*.[5]

In any event, the Court need not reconcile any potential conflict between the sophisticated party presumption and the presumptions associated with the forum rule because, as the Court made clear in *Simmons*, a district court is <u>first</u> required to apply a presumption in favor of the application of the forum rule. As discussed below, based on the Court's knowledge of rates charged and fees awarded in the District of Connecticut, the Court finds that the rates of $850 per hour and $950 per hour are unreasonably high in the District of Connecticut.[6]

In opposition to defendant's argument that the fees are reasonable simply because WWE is a sophisticated party and paid the bills, plaintiffs argue that a party may be less incentivized to question fees he anticipates recovering through

---

[5] In <u>Doe v. Darien Bd. of Educ.</u>, 3:11cv1581(JBA), 2015 WL 8770003, at *3 (D. Conn. Dec. 14, 2015), plaintiff relied on *Wells Fargo* and other similar decisions within the Second Circuit to argue that the rate of $650 per hour was presumptively reasonable because the client agreed to pay the hourly rate. Nevertheless, Judge Arterton found that $650 per hour was unreasonably high for civil rights cases within this District and reduced the hourly rate to $450 per hour. <u>Id</u>, at *4.

[6] As the court noted in <u>Bosal Indus.-Georgia, Inc. v. PM Engineered Sols., Inc.</u>, No. 3:14 CV 2635, 2017 WL 11451006, at *2 (N.D. Ohio July 31, 2017), "while actual payment may be persuasive evidence of reasonableness, it is not dispositive. (Citations omitted). For example, Connecticut courts also recognize the 'forum rule,' under which the 'prevailing [hourly rate]' in the local legal market is considered presumptively reasonable." <u>Id</u>.

litigation.  Plaintiffs' argument is that WWE would not be
concerned about paying fees, even if WWE considered the fees
high, if WWE assumed it would be reimbursed for the fees in
litigation.  In support of this argument, plaintiffs cite to a
case in which the Eastern District of New York found that a
party "in anticipation of an award of attorney's fees, may have
been more willing to pay the bill as charged, instead of
scrutinizing the hours spent on each task." Big R Food
Warehouses v. Local 338 RWDSU, 896 F. Supp. 292, 297 (E.D.N.Y.
1995).  Given the Court's finding that the K&L rates are
unreasonably high for this District, the Court need not address
this argument.

    The next inquiry is whether Attorney McDevitt's fees are
reasonable in the District of Connecticut for reasons other than
the simple fact that WWE paid the bills.  The Court notes that
"the fee applicant has the burden of showing by satisfactory
evidence—in addition to the attorney's own affidavits—that the
requested hourly rates are the prevailing market rates."
Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir.
2005)(internal quotation omitted).

    During oral argument, when the Court noted that defendant's
briefs failed to identify any attorneys in Connecticut who had
comparable experience to Attorney McDevitt and who had a similar
billable rate (initially $815 per hour but then increasing to

$950 per hour), the defendant, for the first time, mentioned two current members of Day Pitney LLP. More specifically, defendant mentioned Attorney Stanley Twardy and Attorney Christopher Droney.[7] During oral argument, defendant did not identify the hourly rates of the two proposed comparators and did not attempt to compare their background and experience to Attorney McDevitt's background and experience. Thus, at the time of the oral argument, plaintiffs had no meaningful opportunity to respond to defendant's new argument.

Although the Court never granted leave for the defendant to file such affidavits, defendant filed supplemental affidavits after the oral argument, attempting to address the deficiencies that the Court pointed out during oral argument. (Dkt. #449 and #450).  The supplemental affidavits, which incorporate new legal arguments, disclose the hourly rates for the two proposed comparators. However, they do not provide much information regarding each comparator's background and experience.  Since the Court is familiar with the skill, reputation and experience of the two proposed comparators, a brief discussion of their backgrounds seems appropriate.

---

[7] The Court concedes that defendant attempted to fix the problem in the supplemental affidavits. However, after reading the supplemental affidavits, the Court remains unconvinced that Attorney Twardy and former Judge Droney are reasonable comparators when evaluating Attorney McDevitt's skill, experience and reputation and determining the prevailing market rate in the District of Connecticut.

Attorney Twardy is the managing partner at Day Pitney and has been practicing law for approximately 45 years. Prior to joining Day Pitney, Attorney Twardy served as the U.S. Attorney for the District of Connecticut from 1985 through 1991 and, after leaving the U.S. Attorney's Office, he served as Chief of Staff to former Connecticut Governor Lowell Weicker. Among other activities, he is a member of the American Bar Association's Criminal Justice Section and the White-Collar Crime Committee, and has authored or co-authored several articles on legal topics.

Attorney Christopher Droney joined Day Pitney after he retired from the bench in 2020.  During his illustrious career, he worked at the law firm of Reid & Riege for 14 years and was a partner when he left.  While at Reid & Riege, he served as the Mayor of West Hartford from 1985 through 1989. He left Reid & Riege in 1993 to become the U.S. Attorney for the District of Connecticut and served in that position from 1993 through 1997. Thereafter, he served as a District Judge for the District of Connecticut for over 14 years before being appointed to the U.S. Court of Appeals for the Second Circuit, where he served for almost 10 years.

Defendant asserts that Attorney Twardy and former Judge Droney are reasonable comparators for Attorney McDevitt and establish that the market rate for attorneys with 40 or more

years of experience is $950 per hour.[8]  Although Attorney

McDevitt has an impressive resume and has obtained a

substantially impressive result for the defendant in this case,

the Court is not persuaded that he is sufficiently comparable to

Attorney Twardy or former Judge Droney in skill, experience and

reputation to use them as comparators for billing purposes. *See*

Townsend v. Benjamin Enters., Inc.*,* 679 F.3d 41, 59 (2d Cir.

2012)("[D]etermination of a reasonable hourly rate 'contemplates

a case-specific inquiry into the prevailing market rates for

counsel of similar experience and skill to the fee applicant's

counsel,' an inquiry that may 'include judicial notice of

the rates awarded in prior cases and the court's own familiarity

with the rates prevailing in the district.'")

(quoting Farbotko, 433 F.3d at 209).  The Court does not

question Attorney McDevitt's experience or the fact that he is a

highly qualified litigator.  However, his background and

experience are not comparable to the two former U.S. Attorneys

he mentions, one of which is a highly respected former Judge who

served this District with great distinction for almost 25 years.

     "Reasonable hourly rates 'are in line with those prevailing

in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation.'" Parris v. Pappas,

---

[8] According to the supplemental affidavit, Attorney Twardy and former
Judge Droney each bill at $955 per hour. (Dkt. #450, at 2)

844 F. Supp. 2d 262, 266 (D. Conn. 2012)(quoting <u>Blum v.
Stenson</u>, 465 U.S. 886, 895 (1984)).  "To determine whether a fee
is reasonable, a court may take 'judicial notice of the rates
awarded in prior cases and the court's own familiarity with the
rates prevailing in the district.'" <u>Goff v. Chivers</u>, No.
3:15CV00722(SALM), 2017 WL 2896022, at *2 (D. Conn. July 7,
2017)(quoting <u>Farbotko</u>, 433 F.3d at 209)(collecting cases)).  As
mentioned earlier, aside from the *Wells Fargo* case, which does
not specifically address the reasonableness of out-of-district
fees for K&L Gates, the Court has been provided very little
evidence to support Attorney McDevitt's request for an hourly
rate of up to $950 per hour or the other amounts billed by
attorneys at K&L Gates.  While the defendants attempt to
analogize the fees that Judge Thompson found reasonable for Day
Pitney in *Wells Fargo* to the rates that K&L Gates has proposed
in its affidavits, the defendants failed to provide the Court
with sufficient information to confirm that the rates are, in
fact, similar.

 After reviewing the submissions in this case, the Court
finds that the hourly rates charged by Day Pitney LLP in this
matter for Attorney Mueller[9] are reasonable based largely on

---

[9] The Court is informed that Attorney Mueller, a partner at Day Pitney,
has been litigating state and federal civil cases for over 10 years.
Attorney Mueller is a 2007 graduate of Yale Law School and served as a
law clerk for the Honorable Alvin W. Thompson from 2007 to 2008.
(Dkt. #386-2 at 3). His rate of $415 increasing to $480 is reasonable.

Judge Thompson's decision in *Wells Fargo* and based on the
Court's knowledge of the prevailing market rates in
Connecticut.[10]

However, the rates requested by K&L Gates are not
reasonable in light of the application of the forum rule and the
Court's familiarity with the current rates in the District of
Connecticut.  The Honorable Sarah A.L. Merriam issued a ruling
in 2017, the timeframe during which most of the fees in this
case were incurred, and the rates Judge Merriam cited in her
ruling were well below the rates that K&L Gates is seeking in
this case.  Judge Merriam's ruling collected the following
cases:

> See, e.g., Trustees of the I.B.E.W. Local Union No. 488
> Pension Fund v. Norland Elec., Inc., No. 3:11CV709(CSH),
> 2015 WL 3581011, at *5 (D. Conn. June 5, 2015) (finding
> $250 a reasonable rate for an attorney with 14 years of
> experience practicing ERISA law); Crawford v. City of
> New London, No. 3:11CV1371(JBA), 2015 WL 1125491, at *3
> (D. Conn. Mar. 12, 2015) (noting that "an examination of
> more recent attorneys' fees awards in this district
> demonstrates that $450/hour is on the high end and is
> generally reserved for particularly distinguished
> attorneys successfully taking on difficult or novel
> cases" (collecting cases)); Rousseau v. Morris, No.
> 3:11CV01794(SRU), 2014 WL 941476, at *1 (D. Conn. Mar.
> 11, 2014) (finding $350 a reasonable hourly rate for a
> nationally-recognized attorney with over 35 years'
> experience litigating consumer
> matters); Parris v. Pappas, 844 F. Supp. 2d 262, 266
> (D. Conn. 2012) (finding $275 per hour a reasonable rate
> for an attorney with more than eleven years of legal

---

[10] The Court is aware that *Wells Fargo* was decided in 2014, however, it
does not appear that the increase in Day Pitney's fees over time has
been unreasonable.

experience); <u>Valley Hous. Ltd. P'ship v. City of Derby</u>, No. 3:06CV1319(TLM), 2012 WL 1077848, at *6 (D. Conn. Mar. 30, 2012) (finding $400 per hour a reasonable rate for a civil rights attorney with thirty years of experience, and $350 per hour reasonable for an attorney with twenty-five years of civil rights law experience); <u>Bridgeport & Port Jefferson Steamboat Co.</u> <u>v. Bridgeport Port Auth.</u>, No. 3:03CV599(CFD), 2011 WL 721582, at *5 (D. Conn. Feb. 22, 2011) (finding $325 per hour a reasonable rate for a partner with eighteen years of experience, and $275 per hour reasonable for senior associates with more than eight years of experience).

<u>Friedman v. SThree PLC.</u>, No. 3:14CV00378(AWT), 2017 WL 4082678, at *6 (D. Conn. Sept. 15, 2017). The following year, the Honorable Stefan R. Underhill stated that "a rate of $525 per hour would be among the highest <u>ever</u> awarded in Connecticut." <u>Lavatec Laundry Tech. GmbH v. Voss Laundry Sols.</u>, No. 3:13-CV-00056 (SRU), 2018 WL 2426655, at *15 (D. Conn. Jan 9, 2018) (emphasis added). In *Lavatec*, Chief Judge Underhill awarded Attorney David Slossberg, who had 29 years of complex litigation experience at the time, the rate of $535 per hour.

Although defendant suggests that the prevailing market rate for an attorney with 40 years of experience is $950 per hour, the fee awards in this District do not support that conclusion.

In <u>Goff v. Chivers</u>, 3:15cv00722 (SALM), 2017 WL 2896022 (D. Conn. July 7, 2017), the Honorable Sarah A.L. Merriam awarded the rate of $500 per hour to Attorney John Williams, absent objection. Judge Merriam noted that Attorney Williams has been practicing for more than 49 years, has tried several civil

rights cases to verdict, and is a frequent lecturer on Section 1983 litigation. Id. at *2.

In A. v. Hartford Bd. of Educ., 3:11cv01381 (GWC), 2017 WL 187138 (D. Conn. Jan. 17, 2017), the Honorable Geoffrey W. Crawford awarded Attorney David Shaw the rate of $450 per hour.[11] Attorney Shaw is a Connecticut attorney who had more than 40 years of legal experience at the time.

In Doe v. Darien Bd. of Educ., 3:11cv1581(JBA), 2015 WL 8770003, at *3 (D. Conn. Dec. 14, 2015), the Honorable Janet B. Arterton awarded lead counsel, who had 35 years of jury trial experience, the rate of $450 per hour.

WWE has not identified any ruling in Connecticut that has awarded a rate higher than $535 per hour, let alone $950 per hour. Had WWE identified such a ruling, it still would need to explain or articulate how Attorney McDevitt would be comparable in skill, experience and reputation to the attorney who was awarded that hourly rate.

As previously mentioned, Attorney McDevitt is a 1980 graduate of Duquesne University School of Law and has practiced

---

[11] The fee application in *Hartford Bd. of Educ.* included an affidavit from Attorney John Yavis. Attorney Yavis, who is a Connecticut attorney with over 40 years of experience, opined that the prevailing hourly rate in "complex civil litigation by Connecticut attorneys with more than 40 years of litigation experience is within the range of $500 to $550." *Hartford Bd. of Educ.*, 2017 WL 187138, at *4. While the court did not award such a rate, Attorney Yavis' sworn statement, coupled with the cases cited in this ruling, contradict WWE's assertion that $950 per hour is the prevailing rate in Connecticut.

both civil and criminal law for over 40 years.  In addition, he has been primary outside counsel to WWE for approximately 30 years.  Taking his years of experience into consideration as well as the result he obtained for the defendant in this case, the Court recommends that Attorney McDevitt's hourly rate be set at $550/hour for the purpose of the fee application.  Given the submissions and the published decisions, the rate of $550 per hour is near the top end for the District of Connecticut and appropriate given Attorney McDevitt's credentials.

Attorney Krasik, a partner at the Pittsburgh, Pennsylvania office of K&L Gates, is a 1997 graduate of the University of Pennsylvania Law School.  Attorney Krasick asserts that he has worked with Attorney McDevitt for over 20 years representing WWE in lawsuits throughout the country.  Taking into account the same considerations that have been discussed already regarding reasonable fees in the District of Connecticut, the Court recommends setting Attorney Krasik's hourly rate at $500 per hour for the purpose of the fee application.

Associate Attorney Stefanie Lacy and associate Attorney Brian Kluckman both billed time in this case.  The defendant has provided no information for the Court to review in relation to their backgrounds, credentials or experience.  Attorney Lacy billed at rates ranging from $305 per hour to $365 per hour. Attorney Kluckman billed at a rate of $350 per hour for his very

limited work on this case.  The Court finds that these rates are slightly excessive for the district, particularly in light of the cases cited above and the absence of any information relating to each lawyer's background and experience.[12]  Based on the cases in this District and the Court's awareness of rates awarded in this District, the Court recommends setting an hourly rate of $300 per hour for Attorney Lacy and Attorney Kluckman.

Paralegal R.C. Sobolak was included in several entries in the invoices that K&L Gates submitted as part of its fee application.  Paralegal Sobolak's time was billed at $285 per hour and increased to $290 per hour over the course of the litigation.  The Court finds that this hourly rate is excessive for this District.  In a recent case, the Honorable Jeffrey A. Meyer found that a rate of $230 per hour for paralegal time was excessive.  *See* Bruce Kirby, Inc. v. LaserPerformance (Europe) Ltd., No. 3:13-CV-00297 (JAM), 2020 WL 502653, at *5 (D. Conn. Jan. 21, 2020).  In light of the complexities of that case, Judge Meyer reduced the paralegal's hourly rate to $150 per hour. *See* Id. In this matter, which was also a complex case, the Court finds that the rate of $150 per hour is also reasonable for the paralegal time.

---

[12] As noted earlier, as the fee applicant, WWE has the burden of providing satisfactory evidence that the requested hourly rates are the prevailing market rates. Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005).

II.  Defendant's Time for PowerPoint Preparations

Defendant took the initiative to develop and utilize lengthy in-depth PowerPoint presentations during multiple hearings in this case.  Including, the hearings held by the undersigned in relation to sanctions.  While the PowerPoint presentations were undoubtably useful to defendant in organizing its thoughts, the Court did not seek or require visual aids in relation to the hearings on sanctions.[13]  As such, the Court recommends that the amount for the preparation, review, and editing of the PowerPoint presentations be excluded from the final award of fees.

Upon review of the information submitted with the fee application, there are several entries that mention the PowerPoint presentations.  The total amount of the hours excluded from the fee application relating to the Rule 37 sanctions is 50.7.  Additionally, with respect to the fee application relating to defendant's Rule 11 sanctions, the line items related to PowerPoint presentations total 103.85.  The

---

[13] By way of example, during oral argument on the motions for sanctions, defendant presented a PowerPoint presentation which quoted Judge Bryant's admonitions to plaintiffs' counsel. However, defendant's brief had already quoted or discussed the admonitions in great detail. (*See* Dkt. #198-1 and #229). The Court notes that both parties prepared PowerPoint presentations in connection with the hearings on sanctions but the Court did not request or need those presentations.

Court recommends that these hours be excluded from the final award.[14]

## III. Time Spent on Crime-Fraud Exception and Subornation of Perjury Argument

Plaintiffs argue that they should not be required to pay for the hours defendant spent researching or briefing the crime fraud exception or the subornation of perjury argument in relation to defendant's motion for sanctions under Rule 37. (Dkt. # 198).

Defendant argues that there is nothing that requires the hours spent on an unsuccessful argument to be precluded from a recovery of fees. Defendant cites to authority that indicates that unless the service was deemed frivolous such fees may be recoverable. Seigal v. Merrick, 619 F.2d 160, 164 (2d Cir. 1980).

Regarding the fees that were incurred in connection with defendant's subornation of perjury argument, although the Court's recommended ruling dated February 22, 2018 did not include a detailed analysis of the merits, the Court explicitly rejected the argument. *See* Dkt. #371 at 6. In this district it

---

[14] The Court notes that most of these entries were explicitly, and only, related to preparing, editing, reviewing, and discussing the PowerPoint presentations for the hearings on the motions for sanctions. Some of the entries listed additional tasks, without itemizing the hours for such tasks. In those instances, where the Court was unable to ascertain the number of hours spent specifically on PowerPoint matters, the Court discounted those entries by 50% of the asserted hours.

has been held that "a court should not <u>necessarily</u> disallow fees for every motion that a prevailing party did not win. Reasonable paying clients may agree to pay[ ] their lawyers for advancing plausible though ultimately unsuccessful arguments." <u>Research Communications, Ltd. v. Meredith Corp.</u>, No. 3:00CV2179(DFM), 2008 WL 4183440, at *6 (D. Conn. Sept. 10, 2008)(internal quotation omitted)(emphasis added).

Plaintiffs request that all the general entries on defendant's invoices that relate to the subornation of perjury argument should be excluded from the fee award.  The Court does not agree.  However, the Court does find it reasonable to exclude time explicitly related to only the arguments concerning the crime fraud exception or subornation of perjury.  A review of the invoices shows that 17.1 hours were explicitly related to the subordination or perjury argument.  The undersigned recommends that these hours be excluded from the final fee award.

IV.  <u>Time Related to the Settlement Conference and Time Following the Appeal</u>

On March 8, 2021, defendant filed a supplemental application for fees which included work performed following the ruling from the Second Circuit Court of Appeals on September 9,

2020.[15]  *See* Dkt. #446.  In the supplemental application for fees, the defendant seeks compensation for an additional $39,844.00 in fees incurred. Plaintiffs argue that all fees incurred after the Second Circuit's ruling should be excluded from the fee award.

After reviewing the affidavits and invoices that were filed with the supplemental application for fees, the Court recommends that these hours should be excluded.  When Judge Bryant issued her award of sanctions, the sanctions did not include future events such as the status conference that was subsequently held before the Honorable Jeffrey A. Meyer or the settlement conference that was eventually held by the Honorable Robert M. Spector.

To mitigate the risks and costs of litigation, judges will often encourage parties to attend a settlement conference and make a good faith attempt to resolve the case. It is often in the best interests of both parties to attend such a conference. Thus, ordering a party to reimburse his or her adversary for fees incurred by the adversary in connection with a settlement conference does not seem fair or reasonable, especially when there is no allegation that the party who is being asked to pay

---

[15] The Second Circuit Court of Appeals affirmed the Honorable Vanessa L. Bryant's decision dismissing the case.

the fees engaged in bad faith conduct during the settlement conference.[16]  Awarding fees under these circumstances would likely discourage parties from engaging in settlement conferences. As a result, the Court recommends against ordering the plaintiffs to reimburse defendant for the attorney fees it incurred in connection with the settlement conference. Accordingly, the total of $39,844 is excluded from the award.

V.   Unreasonable Hours and Vague Billing

Plaintiff's final set of arguments relate to the total amount of hours billed by defense counsel and the description of those services on the invoices.  Plaintiffs make specific objections to hours billed and assert that some entries are duplicative. Further, plaintiffs argue that many of the hours defense counsel spent comparing plaintiffs' complaint with the complaint in the NFL concussion litigation, reviewing releases, and researching the current status of whether the individual plaintiffs were still performing as wrestlers, are services that were unrelated to the motions for sanctions.

---

[16] As the Honorable Joan G. Margolis has observed, the type of conduct for which parties have been sanctioned for failing to act in good faith during a settlement conference is narrow. 456 Corp. v. United Foods, Inc., 2011 WL 5930467 at *5-7 (D. Conn. 2011). Here, there has been no allegation or finding that the plaintiffs engaged in any bad faith conduct during the settlement conference. Thus, it would seem incongruous to punish the plaintiffs for simply attending a settlement conference in good faith and trying to get the case settled.

The Court does not agree. "The Second Circuit has left determination of redundancy in fee applications to the discretion of the district court." <u>Bridges v. Eastman Kodak Co.</u>, No. 91 CIV. 7985 (RLC), 1996 WL 47304, at *6 (S.D.N.Y. Feb. 6, 1996) *aff'd*, 102 F.3d 56 (2d Cir. 1996). Based on a review of the invoices and the briefs and based on the Court's familiarity with the underlying litigation, the Court finds that the issues referenced above were closely linked to defendant's motion to dismiss and the motions for sanctions.  Thus, the Court concludes that the time spent on these projects is compensable. By way of example, one of the arguments that the defendant made in support of the motion for sanctions was that the plaintiffs copied the contents of the very lengthy complaint in the NFL case and then adopted it (including the factual assertions) as their own complaint without making a good faith effort to delete facts or allegations that did not apply to this case. The time spent comparing the two complaints was closely tied to the motion to dismiss and at least one of the motions for sanctions. The releases that were signed by some of the wrestlers were also related to the motion to dismiss and the motions for sanctions. Thus, the Court finds that no reduction is necessary for the types of services rendered.

Plaintiffs argue that the defendant overbilled on certain tasks or included arguably administrative tasks at attorney

rates and, therefore the Court should make an across-the-board reduction. As the Second Circuit has held,

> [h]ours that are "excessive, redundant, or otherwise unnecessary," are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application,

Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (internal citation and quotation ommitted). "Where the requested amount of fees is excessive because the number of hours stated is greater than should have been required, the Court should reduce the stated hours accordingly." Barile v. Allied Interstate, Inc., No. 12 CIV. 916 (LAP) (DF), 2013 WL 795649, at *2 (S.D.N.Y. Jan. 30, 2013) *report and recommendation adopted*, No. 12 CIV. 916 (LAP), 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013); *see e.g.* Doe v. Darien Bd. of Educ., 3:11cv1581(JBA), 2015 WL 8770003, at *7 (D. Conn. Dec. 14, 2015)(after finding that four attorneys and one paralegal working on the same brief for a total of 85.9 hours was excessive, the court imposed an across-the-board reduction).

In this instance, although the Court is not suggesting or implying that it was intentional, the Court finds that the number of hours spent on the motions for sanctions is excessive. Even with the reductions that the Court made earlier in this ruling, a number of lawyers spent 599.35 hours in connection

with the motion for sanctions under Rule 11 and 254.30 hours in connection with the motion for sanctions under Rule 37, for a combined total of 853.65 hours.  The Court finds that this is excessive in this district and will exercise its discretion to trim the fat or reduce the hours with an across-the-board discount of 15%.

Plaintiff also argues that the defendants have included block billing in their invoices and that Day Pitney's invoicing practices are faulty. The Court does not agree.  In the Second Circuit, the rule is that an attorney must submit a contemporaneous time record in order to obtain fees.  *See* Darien Bd. of Educ., No. 2015 WL 8770003, at *6. In *Darien*, Judge Arterton aptly summarized the required detail that a party should submit in his or her application,

> Counsel seeking fees are "not required to record in great detail how each minute of [their] time was expended," *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983), but they are obliged "to keep and present records from which the court may determine the nature of the work done, [and] the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested," *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987). "[C]ounsel should at least identify the general subject matter of his [or her] time expenditures," and in the absence of such identification, a court may refuse to award fees based on those entries. *Electro-Methods, Inc. v. Adolf Meller Co.*, 473 F. Supp. 2d 281, 305-06 (D. Conn. 2007).

Id. at *8.  The Court has reviewed the defendant's submissions and is not persuaded that they require reduction.  It was sufficiently clear to the Court what was being worked on and how the hours were spent.

### Final Calculation

In light of the above considerations the Court has determined that it is appropriate to award attorneys' fees to defendant WWE as follows:

In relation to WWE's application for fees under the Rule 37 Sanctions, dkt. #378, the Court awards $113,665.00 in fees. Attorney hours were reduced accordingly.  Fees associated with K&L Gates are granted as follows:

| K&L Gates Fees | Rate | Hours | Total |
|---|---|---|---|
| Attorney McDevitt | $550 | 91.8 | $50,490 |
| Attorney Krasik | $500 | 49.3 | $24,650 |
| Attorney Kluckman | $300 | 21.6 | $6,480 |
| Attorney Lacy | $300 | 35.2 | $10,560 |
| Paralegal Sobolak | $150 | 12.7 | $1,905 |
| | | | Total: $94,085 |

In addition, the Court reduced Attorney Mueller's hours by .2 in relation to a time entry on June 29, 2016 regarding the crime fraud exception.  This resulted in a reduction of Day Pitney's fees by $83.00.  The total awarded for Day Pitney and Attorney Mueller in relation to the Rule 37 sanctions therefore is $19,580.

In relation to WWE's application for fees in relation to the Rule 11 sanctions, Dkt. #386, the Court awards $253,562.70 in fees and costs. This incorporates the above referenced reductions in hourly rates for K&L Gates.  Hence the final award of fees for K&L Gates is as follows:

| K&L Gates Fees | Rate | Hours | Total |
|---|---|---|---|
| Attorney McDevitt | $550 | 104.2 | $57,310 |
| Attorney Krasik | $500 | 46.45 | $23,225 |
| Attorney Lacy | $300 | 89.8 | $26,940 |
| Paralegal Sobolak | $150 | 48.7 | $7,305 |
| | | | Total: $114,780 |

In addition, the award should include K&L Gates costs in the amount of $3959.70 in relation to the travel and lodging expenses indicated in their application.

There has not been any reduction to the fees requested by Attorney Mueller and Day Pitney for the Rule 11 Sanctions application.  The total awarded to Day Pitney is $134,823.

In light of the foregoing calculations, and the application of the 15% across-the-board reduction, the undersigned recommends a total sanction award of $312,143.55.

## CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's Applications for Attorneys' fees and costs (Dkt. ##

379, 386, and 446.) be GRANTED in part. The total amount of the award is recommended to be $312,143.55.

Any party may seek the district court's review of this recommendation. *See* 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within fourteen days after service of same); Fed. R. Civ. P. 6(a), 6(d) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).  Failure to timely object to a magistrate judge's report will preclude appellate review.  Small v. Sec'y of Health and Human Serv., 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED this 2nd day of September 2021, at Hartford, Connecticut.

                              _____/s/_____
                              Robert A. Richardson
                              United States Magistrate Judge