# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RUSS McCULLOUGH, *et al.*,

                Plaintiffs,

VS.

WORLD WRESTLING ENTERTAINMENT, INC.,

                Defendant.

: NO. 3:15-cv-01074-VLB
: LEAD CASE
:
:
:
:
:
:
:
:

---

EVAN SINGLETON AND VITO LOGRASSO,

                Plaintiffs,

VS.

WORLD WRESTLING ENTERTAINMENT, INC., *et al.*,

                Defendants.

: NO. 3:15-CV-00425-VLB
: CONSOLIDATED CASE
:
:
:
:
:
:
:
:

---

JOSEPH M. LAURINAITIS, *et al.*,

                Plaintiffs,

VS.

WORLD WRESTLING ENTERTAINMENT, INC., *et al.*,

                Defendants.

: NO. 3:16-CV-01209-VLB
: CONSOLIDATED CASE
:
:
:
:
:
:
: SEPTEMBER 16, 2021

---

## DEFENDANTS' OBJECTION TO RECOMMENDED RULING ON APPLICATION FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

STANDARD OF REVIEW ..................................................................................................... 4

ARGUMENT ........................................................................................................................... 4

    I.     The Forum Rule Does Not Apply Because These Cases Originated Outside of Connecticut. ................................................................................................................ 4

    II.    The Forum Rule Does Not Apply To The Sanctions Awards In These Cases. ............. 7

    III.   The Forum Rule Does Not Apply In This Case Because It Involves A Sophisticated Paying Client. ....................................................................................... 10

    IV.   An Exception to The Forum Rule Applies In Any Event Because Defendants' Selection of Out-of-District Counsel Was Likely to Produce A Substantially Better Result. ............................................................................................................... 12

    V.    The Number of Hours Expended on the Motions for Sanctions Was Reasonable. ..... 16

    VI.   The Time Spent on the Perjury and Crime-Fraud Arguments Was Compensable. ..... 18

CONCLUSION ....................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2007)................................................................9, 11

*Bilodeau v. Vlack*,
  No. 07-CV-1178, 2010 WL 2232480 (D. Conn. May 26, 2010)..............................4

*Blum v. Stenson*,
  465 U.S. 886 (1984)........................................................................11

*Ceglia v. Zuckerberg*,
  No. 10-CV-00569, 2012 WL 503810 (W.D.N.Y. Feb. 14, 2012) ............................7

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
  246 F.3d 142 (2d Cir. 2001)................................................................9

*Diplomatic Man, Inc. v. Nike, Inc.*,
  No. 08-CV-139, 2009 WL 935674 (S.D.N.Y. Apr. 7, 2009) .................................10

*Hynes v. Squillace*,
  143 F.3d 653 (2d Cir. 1998)..............................................................4, 15

*Innis Arden Golf Club v. Bowes*,
  No. 3:06-CV-1352, 2012 WL 1108527 (D. Conn. Mar. 30, 2012) .........................12

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
  No. 3:06-CV-1352, 2010 WL 11561319 (D. Conn. May 21, 2010) .......................16

*Offor v. Mercy Med. Ctr.*,
  327 F.R.D. 32 (E.D.N.Y. 2018)...........................................................8

*On Time Aviation, Inc. v. Bombardier Capital, Inc.*,
  354 F. App'x 448 (2d Cir. 2009) .........................................................7

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010).......................................................................9

*Polk v. N.Y. State Dep't of Corr. Servs.*,
  722 F.2d 23 (2d Cir. 1983)................................................................4

*United States ex rel. Rai v. KS2 TX, P.C.*,
  No. 3:17-CV-834, 2019 WL 1397290 (D. Conn. Mar. 27, 2019) .......................6, 14

*Research Commc'ns, Ltd. v. Meredith Corp.*,
    No. 3:00-CV-2179, 2008 WL 4183440 (D. Conn. Sept. 10, 2008)........................................18

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017)........................................................................................................14

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    No. 3:10-CV-1827, 2015 WL 5787019 (D. Conn. Sept. 30, 2015), *vacated and remanded on
    other grounds,* 866 F.3d 1330 (Fed. Cir. 2017) ............................................................10, 15

*Segarra v. Messina*,
    158 F.R.D. 230 (N.D.N.Y. 1994) ...........................................................................................4

*Seigal v. Merrick*,
    619 F.2d 160 (2d Cir. 1980)..................................................................................................18

*Simmons v. New York City Transit Authority*,
    575 F.3d 170 (2d Cir. 2009)...........................................................................................11, 12

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    No. 07-CV-6929, 2009 WL 585968 (S.D.N.Y. Mar. 9, 2009) ...............................................10

*Telesco v. Fireman's Fund Ins. Co.*,
    No. 17-CV-710, 2018 WL 4426015 (D. Conn. Sept. 10, 2018)................................................8

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*,
    No. 3:10-CV-60, 2012 WL 4092515 (D. Conn. Sept. 17, 2012)...........................................15

*Wells Fargo Bank, NA v. Konover*,
    No. 3:05-CV-1924, 2014 WL 3908596 (D. Conn. Aug. 8, 2014), *aff'd,* 630 F. App'x 46 (2d
    Cir. 2015) ...............................................................................................................10, 15, 16

**Statutes**

28 U.S.C. § 636(b)(1) ....................................................................................................................4, 15

**Rules**

Fed. R. Civ. P. 54(d)(2)(D) ...............................................................................................................4

Fed. R. Civ. P. 72(b)(3)................................................................................................................4, 15

**Other Authorities**

*2nd Circ. Tosses WWE Injury Suits After 'Fatal' Inaction* (Sept. 9, 2020),
    https://www.law360.com/articles/1308542/2nd-circ-tosses-wwe-injury-suits-after-fatal-
    inaction......................................................................................................................................8

Dave Collins, *Former WWE wrestlers' lawsuit over brain damage is dismissed*, AP News (Sept. 9, 2020), https://apnews.com/article/nfl-new-york-city-head-injuries-new-york-nhl-018105b0a317dd35bdf679e2dca0507b ...................................................................................8

John Russell, *Wrestling Brain-Injury Appeal Thrown Out as Untimely*, Courthouse News Service (Sept. 9, 2020), https://www.courthousenews.com/wrestling-brain-injury-appeal-thrown-out-as-untimely/...................................................................................................................8

Defendants World Wrestling Entertainment, Inc. ("WWE") and Vincent K. McMahon ("McMahon") (collectively, "Defendants") respectfully submit this objection to Magistrate Judge Richardson's Recommended Ruling on their Application for Attorneys' Fees (ECF No. 453).

## INTRODUCTION

Magistrate Judge Richardson erred by slashing the attorney's fees sought and paid by WWE in connection with three sanctions orders entered by this Court against Attorney Konstantine Kyros *by nearly 50%*. Much of this reduction was attributable to the Court's improper application of the forum rule to cut the rates actually paid by Defendants for the services of their lead counsel, Attorney McDevitt and his law firm, K&L Gates.

*First*, the forum rule does not apply here because the underlying litigation originated outside of Connecticut. WWE reasonably retained Attorney McDevitt and his national law firm to defend these cases because Attorney Kyros initially filed five cases in multiple jurisdictions around the country other than Connecticut—including the *LoGrasso* case filed in Attorney McDevitt's home state of Pennsylvania. It would not have been reasonable for WWE to retain any Connecticut counsel to defend those cases. Nor would it have been reasonable for WWE to dismiss Attorney McDevitt and his firm after successfully securing transfer of those cases to Connecticut and defending those cases for nearly two years and then retain only Connecticut counsel to defend the *Laurinaitis* case filed in Connecticut for the sole purpose of satisfying the forum rule in the event that attorney's fees were awarded as Rule 11 sanctions in that particular case.

*Second*, the forum rule does not apply in these cases because the attorney's fees were awarded as sanctions—not pursuant to a fee-shifting statute. As the Second Circuit has recognized, courts are not constrained to apply the forum rule where attorney's fees are awarded

as sanctions because the purpose of sanctions is both deterrence and compensation.  Magistrate Judge Richardson's significant reduction of the sanctions award in this case from $573,770.44 to $312,143.55 serves neither purpose.  It does not come close to fully compensating WWE for the fees paid in connection with litigating the three sanctions motions—much less the *millions of dollars* incurred in defending the six baseless lawsuits brought Attorney Kyros over the past seven years.  It also is wholly inadequate to deter Attorney Kyros, whose serious misconduct has only escalated in the face of numerous warnings and admonitions from the Court, the entry of multiple sanctions orders against him, and the filing of WWE's fees applications.  Indeed, Attorney Kyros still refuses to admit that he engaged in any wrongdoing and has publicly maligned both the judges of this Court and the Second Circuit for their rulings.

*Third*, the forum rule does not apply in these cases because there was a sophisticated paying client.  Although the forum rule applies in a statutory fee-shifting case to approximate the hourly rate that a reasonable paying client *would* pay, it does not apply in these cases where there actually *was* a reasonable paying client who did pay.  WWE was a sophisticated client that reviewed the bills and paid the fees incurred in connection with the three motions for sanctions without knowing at the time whether it would actually recover those fees.  Although Magistrate Judge Richardson acknowledged the strong presumption in this circuit that the rates paid by a sophisticated client are reasonable, he failed to explain how that presumption was rebutted here.

*Fourth*, and even if the forum rule applies here (which it should not), an exception to the rule exists because WWE's selection of Attorney McDevitt and his firm was likely to produce a substantially better net result and in fact did so.  As Attorney McDevitt's detailed 11-page affidavit established (ECF No. 449), he had unique expertise and experience in CTE matters, advising WWE on CTE matters, and defending WWE in the CTE cases before their transfer and

consolidation in this Court that was not possessed by any Connecticut attorney.  Indeed, there are no reported decisions where CTE claims were previously litigated—or have been litigated since these cases—in any Connecticut court by any Connecticut attorney.  Moreover, no Connecticut attorney could have obtained a better result for WWE in these cases—all the cases were dismissed with prejudice, the judgments were affirmed on appeal, and sanctions were imposed on counsel for the plaintiffs.  Indeed, the results achieved by Attorney McDevitt for WWE in these cases were far superior to the results achieved by Manhattan-based firms with higher billing rates in CTE cases brought against other sports leagues.

In addition, Magistrate Judge Richardson erred in concluding that the number of hours spent on the sanctions motions was excessive.  The presumption of reasonableness in cases involving a paying client applies to both the rates paid and the hours worked.  That presumption cannot be rebutted here given the amount of work that was required to expose the breadth and extent of the pervasive misconduct by Attorney Kyros.  Defendants were forced to engage in multiple rounds of lengthy briefing with voluminous exhibits in connection with three different sanctions motions, including two Rule 11 motions directed at the numerous false allegations and defective legal claims contained in two complaints that each spanned hundreds of pages, and to prepare for and attend two extensive hearings on the motions before the Court.

Magistrate Judge Richardson also erred in excluding the time spent explicitly related to WWE's arguments that Attorney Kyros suborned perjury and that communications in furtherance of that perjury were subject to the crime-fraud exception in the motion for Rule 37 sanctions in the *LoGrasso* case.  Under Second Circuit law, the time spent on reasonable arguments that are ultimately unsuccessful is still compensable.  Although Magistrate Judge Richardson did not recommend sanctions based on the perjury and crime-fraud arguments, he did

-3-

not find those arguments to be unreasonable.  To the contrary, it was plainly reasonable for WWE to pursue those arguments given the established falsity of the sworn interrogatory answers served by Attorney Kyros.

## STANDARD OF REVIEW

A district court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."  Fed. R. Civ. P. 54(d)(2)(D).  The district court must then review objections to the magistrate judge's recommended ruling *de novo* and may "receive further evidence" in connection with that review.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).  Accordingly, this Court must review Defendants' objections to Magistrate Judge Richardson's recommended ruling on their applications for attorneys' fees *de novo*.  *See Bilodeau v. Vlack*, No. 07-CV-1178, 2010 WL 2232480, at *1 (D. Conn. May 26, 2010).

## ARGUMENT

## I.     The Forum Rule Does Not Apply Because These Cases Originated Outside of Connecticut.

Magistrate Judge Richardson erred in applying the forum rule because he failed to consider the fact that the underlying consolidated cases began in other jurisdictions outside of Connecticut.  When WWE had to select lead counsel to represent it in the onslaught of litigation regarding CTE initiated by Attorney Kyros, none of the original cases were filed in Connecticut. The Second Circuit has held that the forum rule does not apply to a case that was initially brought in another district but was subsequently transferred to the forum.  *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) (stating that out-of-district rates are appropriate when a lawyer "filed suit in his home district, and the case was transferred to the forum district"); *Segarra v. Messina*, 158 F.R.D. 230, 235 (N.D.N.Y. 1994) (noting the forum

rule does not apply "when a lawyer files suit in his or her home district that is properly maintainable there, and the case is transferred to the forum district") (internal quotation marks omitted).

As the record and Attorney McDevitt's supplemental affidavit (ECF No. 449) establishes, the CTE cases filed by Attorney Kyros originated in other jurisdictions.

- The first case (*Haynes*) was a purported class action filed in Oregon in 2014.

- The second case (*LoGrasso*) was a duplicative class action filed in Pennsylvania in 2015.

- The third case (*McCullough*) was a duplicative class action filed in California in 2015.

- The fourth case (*Frazier*) was a wrongful death case filed in Tennessee in 2015.

- The fifth case (*Osborne*) was another wrongful death case filed in Texas in 2015.

Prior to their transfer and eventual consolidation in Connecticut, Attorney McDevitt was retained to defend WWE in each of these cases. As his affidavit establishes, Attorney McDevitt had been advising WWE on CTE matters since the first reported case of CTE in a WWE wrestler in 2007 and had unique connections to the medical examiner's office where the initial CTE discovery was made in Pittsburgh. (ECF No. 449 ¶¶ 6-20.) Attorney McDevitt's law firm, K&L Gates LLP, had offices in all of the jurisdictions in which the cases brought by Attorney Kyros were filed except for Tennessee and therefore was uniquely situated to implement a coordinated defense. The *LoGrasso* case (in which Rule 37 sanctions were awarded) was initially filed in Pennsylvania, the state in which Attorney McDevitt's office is located. Attorney McDevitt successfully obtained transfer of all of the cases to Connecticut, where all cases were then consolidated. (*Id.* ¶¶ 25-29.) At the time these cases were transferred, the plaintiffs were all represented by non-Connecticut firms, including firms that had acted as counsel in the CTE litigation against the NHL. At the time of the transfer, no Connecticut firm had been engaged in

defending against CTE claims or had developed the expertise representing WWE in CTE matters that Attorney McDevitt had developed.  (*Id.*  ¶¶ 30-31.)

By the time the *Laurinaitis* case (a mass action involving 50 plaintiffs) was filed in Connecticut in July 2016 and consolidated with the other cases, Attorney McDevitt already had been defending WWE in CTE litigation for almost two years, successfully secured transfer of all of the previously-filed cases to Connecticut, obtained dismissal of two of the individual cases, devised a strategy for obtaining dismissal or summary judgment in the remaining cases, and knew of the previous serial misconduct of Attorney Kyros and the series of prior admonitions given to him by Judge Bryant.  (*Id.* ¶¶ 32-35.)   In addition to asserting CTE claims, the *Laurinaitis* case also asserted claims that WWE had misclassified performers as independent contractors—claims with which Attorney McDevitt was already familiar as a result of his successful defense of WWE against virtually identical claims in a prior case in federal court in Connecticut.  (*Id.* ¶ 36.)  Accordingly, when the *Laurinaitis* case was filed in Connecticut and consolidated with the cases previously filed by Attorney Kyros, it would have made no economic sense and would not have been in the best interests of WWE to dismiss Attorney McDevitt and his firm and retain only Connecticut counsel in order to satisfy the forum rule for purposes of the Rule 11 motions that were necessitated by the complaint and amended complaint in that case. (*Id.* ¶ 35.)  Nor would it have made sense for WWE to have retained Connecticut counsel to defend the CTE cases initially filed in other jurisdictions because of the possibility that Attorney Kyros could file a mass action complaint in Connecticut that violated Rule 11 years later. Because the CTE cases originated in other jurisdictions, it was entirely reasonable for WWE to pay the rates charged by Attorney McDevitt and his national law firm for their services.  *See United States ex rel. Rai v. KS2 TX, P.C.*, No. 3:17-CV-834, 2019 WL 1397290, at *5 (D. Conn.

Mar. 27, 2019) (upholding the hourly rates of out-of-district counsel because where "no party, whether relator or defendant, was represented solely by counsel from within this District or the Southern District of Texas (where Relators first filed their complaint), providing further indication that a reasonable, paying client would be likely to hire national counsel to investigate and litigate this case").

Although Magistrate Judge Richardson noted his "familiarity with the procedural history and the facts based on the many published and unpublished decisions in this case" and purportedly considered Attorney McDevitt's supplemental affidavit (ECF No. 453 at 2, 11),[1] he completely failed to consider or address the fact that the cases originated outside of Connecticut in determining whether the forum rule should apply or the reasonableness of the fees incurred and paid by WWE.

## II.   The Forum Rule Does Not Apply To The Sanctions Awards In These Cases.

Magistrate Judge Richardson also should not have applied the forum rule to the attorney's fees awarded as sanctions against Attorney Kyros.  Under Second Circuit law, the Court need not apply the forum rule when attorney's fees are awarded as sanctions because the purpose of sanctions is *deterrence* and not merely compensation.  *See On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 F. App'x 448, 452 (2d Cir. 2009) (holding that court was entitled to use out-of-district hourly rates to calculate attorney's fees awarded as Rule 11 sanctions because "[t]he reasoning behind the calculation of awards under fee-shifting statutes" is not "precisely analogous to that applicable to Rule 11 awards" since "[t]he purpose of a Rule 11

---

[1] Although Magistrate Judge Richardson noted that Attorney McDevitt's supplemental affidavit was filed after the oral argument in response to the questions asked during the hearing, he reviewed and considered it in connection with his ruling.  (ECF No. 453 at 9 n.2, 11, n.3.)  Even if Magistrate Judge Richardson had not reviewed and considered the supplemental affidavit, this Court may "receive further evidence" in connection with its review of his recommended ruling.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).

award is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses") (internal quotation marks omitted); *Ceglia v. Zuckerberg*, No. 10-CV-00569, 2012 WL 503810, at *6-8 (W.D.N.Y. Feb. 14, 2012) (stating that the court is not required to apply the forum rule and instead can "use out-of-district rates in fixing the amount of an attorney's fee awarded as a sanction" because "attorney's fees awarded as sanctions are not intended only as compensation of reimbursement for legal services, but also serve to deter abusive litigation practices").

Although Magistrate Judge Richardson found that "application of the forum rule can still sufficiently serve both the compensatory and deterrent objectives of the sanctions in question here" (ECF No. 453 at 10), his nearly 50% reduction in the fees awarded to WWE serves neither the purpose of deterrence or compensation.

**First,** Magistrate Judge Richardson's drastic reduction of the fee award hardly serves the purpose of deterrence. Attorney Kyros has not been deterred by (i) the Court's repeated warnings and admonitions to him prior to the imposition of sanctions—all of which he ignored (ii) the Court's entry of Rule 37 sanctions in the *LoGrasso* case and admonition that further misconduct could lead to dismissal, (iii) the Court's entry of Rule 11 sanctions for both the original and amended complaints in the *Laurinaitis* case, or (iv) Defendants' application for an award of $573,770 in attorney's fees. To the contrary, Attorney Kyros has obstinately refused to admit that he engaged in *any* wrongdoing and has continued to publicly malign both the judges of this Court and the Second Circuit because of their rulings. (*See* ECF No. 386 at 2-11; ECF No. 398 at 3-6.)[2] The conduct of Attorney Kyros here was not isolated or inadvertent. It was

---

[2] Defendants previously summarized the history of Attorney Kyros' disparagement of this Court. (ECF No. 386 at 2-11; ECF No. 398 at 3-6). Attorney Kyros' campaign of disparagement continued after the Second Circuit unanimously affirmed this Court's rulings. On September 9, 2020, the Associated Press published an article in which Attorney Kyros demeaned the Second Circuit's decision as a "rubber stamp" of this Court's decision and

reflective of a complete lack of ethics and was so bad that Judge Bryant also issued orders designed to protect the public from him.  (ECF No. 383 at 38.)  Attorney Kyros' actions have shown that only an award of the *entire* amount of fees requested (or at least an amount close to the entire amount) is necessary for effective deterrence.  *See Telesco v. Fireman's Fund Ins. Co.*, No. 17-CV-710, 2018 WL 4426015, at *3 (D. Conn. Sept. 10, 2018) (stating that an award of the full amount of fees was necessary to serve "Rule 11's purpose to deter frivolous and harassing litigation"); *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 36-37 (E.D.N.Y. 2018) (holding that the "only way to deter such misbehavior in the future is requiring [plaintiff's counsel] to bear the full costs of the fees incurred by the Defendants").

**Second**, Magistrate Judge Richardson's significant reduction of the fee award does not serve the compensatory purpose of the sanctions because it does not make WWE whole. Magistrate Judge Richardson only awarded WWE slightly more than 50% of the fees that it actually paid and sought in connection with three different sanctions motions.  Moreover, WWE has not received *any* compensation for the *millions* of dollars in fees incurred and paid as a result of defending the abusive litigation practices of Attorney Kyros—including securing transfer of the five cases improperly filed by Attorney Kyros in jurisdictions across the country, obtaining dismissal or summary judgment in all six of the baseless lawsuits consolidated in the District of

---

falsely declared that its opinion was "utterly devoid of any original reasoning or engagement with the legal issues raised in the wrestlers' appeal." Dave Collins, *Former WWE wrestlers' lawsuit over brain damage is dismissed*, AP News (Sept. 9, 2020), https://apnews.com/article/nfl-new-york-city-head-injuries-new-york-nhl-018105b0a317dd35bdf679e2dca0507b.  On September 9, 2020, Law 360 published an article in which Attorney Kyros falsely claimed that "the Second Circuit found that professional wrestlers not only have no rights to a safe workplace, no rights to get help for neurological diseases like CTE but that they have no right to access the justice system itself," when in fact the Second Circuit made no such findings.  *2nd Circ. Tosses WWE Injury Suits After 'Fatal' Inaction*, Law360 (Sept. 9, 2020), https://www.law360.com/articles/1308542/2nd-circ-tosses-wwe-injury-suits-after-fatal-inaction.  On September 9, 2020, Courthouse News published an article in which Attorney Kyros called the Second Circuit's ruling "bizarre" and "devoid of content." Josh Russell, *Wrestling Brain-Injury Appeal Thrown Out as Untimely*, Courthouse News Service (Sept. 9, 2020), https://www.courthousenews.com/wrestling-brain-injury-appeal-thrown-out-as-untimely/.

Connecticut, and securing unanimous affirmance of the judgments by the Second Circuit and denial of certiorari by the United States Supreme Court.

### III.   The Forum Rule Does Not Apply In This Case Because It Involves A Sophisticated Paying Client.

Magistrate Judge Richardson further erred in applying the forum rule to calculate the lodestar amount of attorney's fees in this case.  Because there was an actual paying client in this case, there was no need to perform a lodestar calculation to arrive at a presumptively reasonable fee award.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (stating "the lodestar method produces an award that *roughly approximates* the fee that the prevailing attorney would have received *if he or she had been representing a paying client* who was billed by the hour in a comparable case") (emphasis added).

Under Second Circuit law, the amount of attorneys' fees paid by a sophisticated client is already ***presumed reasonable***.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007) ("The reasonable hourly rate is the rate a paying client would be willing to pay."); *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."); *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10-CV-1827, 2015 WL 5787019, at *2–3 (D. Conn. Sept. 30, 2015) (noting the fact that "a sophisticated client[] has actually paid [plaintiff's counsel] the fees he seeks here, persuade[s] the Court that [his] hourly rate is reasonable"), *vacated and remanded on other grounds,* 866 F.3d 1330 (Fed. Cir. 2017); *Wells Fargo Bank, NA v. Konover*, No. 3:05-CV-1924, 2014 WL 3908596, at *5-6 (D. Conn. Aug. 8, 2014) ("Under *Arbor Hill*, there is a ***strong presumption*** that the rate a paying client actually did pay during the course of the litigation is reasonable.") (emphasis added), *aff'd*, 630 F. App'x 46 (2d Cir. 2015).  The fact that Defendants

-10-

could not have assumed that the Court would award sanctions in these cases and therefore had an incentive to litigate them efficiently and cost-effectively further reinforces the presumption of reasonableness. *See Wells Fargo Bank*, 2014 WL 3908596, at *5 ("[T]he cases demonstrate that when a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable."); *Diplomatic Man, Inc. v. Nike, Inc.,* No. 08-CV-139, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) ("[T]he fact that [defendant], a highly sophisticated business client, has paid these bills" is "evidence of the reasonableness of the amount as a whole" since defendant "could not have assumed that it would be reimbursed in full, or even in part."); *Telenor Mobile Commc'ns AS v. Storm LLC,* No. 07-CV-6929, 2009 WL 585968, at *2 (S.D.N.Y. Mar. 9, 2009) ("This is not a case in which [plaintiff] can have assumed that it was litigating on [defendant's] ticket [and plaintiff's] willingness to incur the costs must primarily have been based on what it believed was necessary and proper in an effort to prosecute its case.").

Although Magistrate Judge Richardson recognized the presumption of reasonableness applicable to fees paid by a sophisticated client, he nevertheless concluded that "a district court is <u>first</u> required to apply a presumption in favor of the forum rule" under the Second Circuit's decision in *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009). (ECF No. 453 at 14.)  This was error.  *Simmons* was a statutory fee-shifting case and therefore had no reason to apply the presumption of reasonableness applicable in cases involving paying clients. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (noting that a court's determination of a reasonable fee in the context of a fee-shifting statute "is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party").  The Second Circuit in *Simmons*

recognized, however, that "[t]he presumptively reasonable fee boils down to what a ***reasonable paying client*** would be willing to pay." *Simmons*, 575 F.3d at 174 (emphasis added) (internal quotation marks omitted).  It also held in *Arbor Hill* that a court may award out-of-district hourly rates "if it is clear that a ***reasonable, paying client*** would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191 (emphasis added).

Here, the hourly rates of Attorney McDevitt and K&L Gates are presumptively reasonable because WWE was a sophisticated corporate client that actually paid those rates, and the presumption of reasonableness has not been rebutted.  Magistrate Judge Richardson did not find that WWE acted *unreasonably* in paying the rates of Attorney McDevitt or his firm.  Nor could he make such a finding—as discussed below, it was eminently reasonable for WWE to retain Attorney McDevitt at his rate because (i) he had prior knowledge and expertise in CTE matters and in advising WWE on such matters that was not possessed by any Connecticut attorney, (ii) he had experience representing WWE in the CTE cases filed by Attorney Kyros in other jurisdictions prior to the transfer of such cases to the District of Connecticut, and (iii) he achieved the best possible result—dismissal of all of the cases with prejudice, affirmance of the dismissal by the Second Circuit, and entry of multiple sanctions orders against Attorney Kyros. (*See* Argument § IV, *infra*.)  Indeed, Magistrate Judge Richardson offered no reason for why the presumption of reasonableness to the fees paid by WWE should not apply in this case other than an inflexible adherence to the forum rule.

## IV.  An Exception To The Forum Rule Applies In Any Event Because Defendants' Selection of Out-of-District Counsel Was Likely to Produce A Substantially Better Result.

As Magistrate Judge Richardson noted, *Simmons* held that there is an exception to the forum rule if a party demonstrates that "a reasonable client would have selected out-of-district

counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).  A party can make that showing based on "experience-based, objective factors"—including whether counsel had "special expertise" for litigating the particular type of case that was not possessed by in-district counsel.  *Id.* at 176.  "[P]roving this 'substantially inferior result' prong does not require a distasteful presentation of either professional deficiencies or braggadocio; it requires a showing of subject matter specialization or law firm resources needed for the particular case which Connecticut firms could not adequately provide."  *Innis Arden Golf Club v. Bowes*, No. 3:06-CV-1352, 2012 WL 1108527, at *3 (D. Conn. Mar. 30, 2012).

Although disputing that the forum rule applied in this case, Defendants made the necessary showing under *Simmons* of experience-based, objective factors in the selection of lead counsel.  Each of the multiple cases filed by Attorney Kyros involved claims that WWE had failed to disclose to former performers the alleged risks of CTE from professional wrestling.  Attorney McDevitt submitted a detailed 11-page affidavit establishing that he had special expertise for litigating these cases that was not possessed by Connecticut counsel.  (ECF No. 449.)

- Attorney McDevitt, who is from Pittsburgh, has been lead counsel for WWE in virtually all litigation matters throughout the country since 1987 and has acquired a unique and extensive knowledge of its business practices, including in particular its concussion management protocols and talent education programs.  (*Id.* ¶¶ 6, 15-16.)

- Attorney McDevitt was retained by WWE to advise and represent its interests when, in September 2007, Dr. Bennet Omalu, a neuropathologist then also working in Pittsburgh, reportedly made the first diagnosis of CTE in a WWE wrestler in the case of Chris Benoit.  Attorney McDevitt advised WWE on the issues raised by Dr. Omalu's diagnosis and was involved in subsequent efforts to obtain full disclosure of the work supporting that diagnosis by Dr. Omalu.  The issues surrounding Dr. Omalu's diagnosis of Benoit were expressly raised in each of the cases filed by Attorney Kyros.  (*Id.* ¶¶ 7-10, 13-14, 17.)

-13-

- By September 2007, Attorney McDevitt had also been retained as lead defense counsel for Dr. Cyril Wecht, the famous Pittsburgh medical examiner, in a federal criminal trial in Pennsylvania.  During that trial, Attorney McDevitt cross-examined Dr. Omalu, who had worked under Dr. Wecht in the Allegheny County Medical Examiner's Office headed by Dr. Wecht and was a key prosecution witness at the trial.  As a result of that experience, Attorney McDevitt acquired extensive knowledge of the means, methods, and practices of Dr. Omalu that would be beneficial in any CTE case, in which Dr. Omalu was a possible witness.  (*Id.* ¶¶ 11-13, 18-20.)

- Attorney McDevitt also provided legal advice to WWE in connection with the development of its Wellness Program following the Benoit matter, including advice relating to the retention of leading concussion expert, Dr. Joseph Maroon (also of Pittsburgh), and the education of talent regarding the risks of head injuries.  The steps taken by WWE to reduce the risks associated with concussions and to educate talent regarding those risks were issues in each of the cases brought by Attorney Kyros and were a key factor considered by Judge Bryant in entering summary judgment in the *LoGrasso* case.  (*Id.* ¶¶ 15-16.)

- Attorney McDevitt was retained to represent WWE in each of the five cases brought by Attorney Kyros in other jurisdictions prior to the transfer and consolidation of the cases in the District of Connecticut, his law firm K&L Gates had offices in each of the jurisdictions in which those cases were brought except for Tennessee, and he had devised a strategy for defending and had been defending those cases prior to the filing of the *Laurinaitis* case in July 2016.  (*Id.* ¶¶ 25-35.)

No Connecticut attorney had the specific knowledge or expertise of Attorney McDevitt in CTE matters, in providing legal advice to WWE on CTE matters, or in representing WWE in CTE litigation in other jurisdictions prior to the transfer of such cases to the District of Connecticut.  (*Id.* ¶ 30; ECF No. 450 ¶ 8.)  At the time, CTE litigation was a novel and emerging area of the law that began with the NFL cases that settled for $1 billion—a result that Attorney Kyros was seeking to replicate when he initiated an internet solicitation scheme aimed at recruiting former WWE performers to serve as plaintiffs in CTE cases.  Indeed, a recent Westlaw search conducted after Magistrate Judge Richardson's ruling was issued revealed that there are ***no reported cases*** where any Connecticut attorney previously litigated CTE claims in any Connecticut court or has litigated such claims since these cases.

-14-

Moreover, no Connecticut attorney could have improved upon the results achieved by Attorney McDevitt.  Indeed, the results achieved by Attorney McDevitt were better than the results achieved by large Manhattan-based firms with higher billing rates in the CTE cases brought against other sports leagues, including the cases brought against the NFL that resulted in the $1 billion settlement.  (ECF No. 449 ¶¶ 22, 37.)  All six of the cases brought by Attorney Kyros against WWE were ***dismissed with prejudice***, the dismissals were upheld by the Second Circuit, and certiorari was denied by the Supreme Court.  The only payments that will be owed as a result of these cases are the attorney's fees that *Attorney Kyros* must pay to *WWE* as a result of his sanctionable conduct.  The evidence establishes not only that WWE's selection of Attorney McDevitt and his law firm as lead counsel was likely to produce a substantially better result, but also that the result could not have been improved upon by any lawyer in any jurisdiction.  Defendants therefore have met their burden of overcoming the forum rule even if it applied in this case.  *See Restivo v. Hessemann*, 846 F.3d 547, 590–91 (2d Cir. 2017) (noting that "litigation results can inform whether obtaining out-of-district counsel was likely to produce a substantially better net result" and holding that the presumption in favor of the forum rule was overcome by evidence that out-of-district counsel had necessary experience litigating wrongful conviction suits, achieved an excellent result in a complex case, and no lawyers in the forum had obtained a successful jury verdict in a similar case); *United States ex rel. Rai v. KS2 TX, P.C.*, No. 3:17-CV-834, 2019 WL 1397290, at *5 (D. Conn. Mar. 27, 2019) (holding the hourly rates of out-of-district counsel were reasonable because "given the breadth and complexity of this case, a reasonable, paying client would likely hire national counsel experienced in the type of investigation and litigation implicated here"); *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-CV-60, 2012 WL 4092515, at *2 (D. Conn. Sept. 17, 2012) (awarding

hourly rate of $850/hour for out-of-district counsel in a decision *nine years ago* because "the Court is persuaded that a national rate is warranted here because of the high stakes, the technical complexity, and multiplicity of claims and defenses regarding multiple patents and multiple products" and because the case raised issues "of which Plaintiffs' trial counsel was already familiar").

Although Magistrate Judge Richardson purportedly considered the supplemental affidavit submitted by Attorney McDevitt, he found that Defendants did not meet their burden to overcome the presumption in favor of the forum rule.  (ECF No. 453 at 11, n.3.)  But Magistrate Judge Richardson did not address most of the evidence in Attorney McDevitt's affidavit demonstrating that he had the special expertise necessary to litigate these cases that Connecticut counsel did not possess.  Indeed, if the evidence before Magistrate Judge Richardson was insufficient to overcome the presumption in favor of the forum rule, it is difficult to imagine *any* case in which a litigant ever could do so.[3]

## V.    The Number of Hours Expended on the Motions for Sanctions Was Reasonable.

Magistrate Judge Richardson also erred in finding that "the number of hours spent on the motions for sanctions is excessive" and discounting them by 15%.  (ECF No. 453 at 31.)  Magistrate Judge Richardson offered no explanation for his finding or the across-the-board

---

[3] In reducing Attorney McDevitt's hourly rate to $550 hour, Magistrate Judge Richardson also erroneously found that there was no Connecticut ruling that awarded a rate higher than $535 hour.  (ECF No. 453 at 21.)  A Connecticut court awarded out-of-state counsel $850 an hour in a case decided *nine years ago*.  *See Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-CV-60, 2012 WL 4092515, at *2 (D. Conn. Sept. 17, 2012).  A Connecticut court awarded $595 an hour for out-of-state counsel and $590 an hour for Connecticut counsel in a case decided *over seven years ago*.  *See Wells Fargo Bank, NA v. Konover*, No. 3:05-CV-1924, 2014 WL 3908596 (D. Conn. Aug. 8, 2014); Motion for Attorney Fees at 12-13, *Wells Fargo Bank, NA v. Konover*, No. 3:05-CV-1924 (Feb. 19, 2013), ECF No. 1069-1.  A Connecticut court awarded out-of-state counsel $625 an hour in a case decided *six years ago*.  *See Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10-CV-1827, 2015 WL 5787019, at *2–3, (D. Conn. Sept. 30, 2015), *vacated and remanded on other grounds*, 866 F.3d 1330 (Fed. Cir. 2017).  A Connecticut court also awarded $525 an hour for Connecticut counsel in a case decided *over 11 years ago*.  *See Innis Arden Golf Club v. Pitney Bowes, Inc.*, No. 3:06-CV-1352, 2010 WL 11561319, at *19 (D. Conn. May 21, 2010).  In any event, the application of outdated rates from past decisions rendered years ago fails to take into account that hourly rates—like everything else—increase over time.

reduction other than noting the actual number of hours spent on the motions. The presumption of reasonableness applicable to fees paid by a sophisticated client "***applies to the hours worked as well as the hourly rates charged.***" *Wells Fargo Bank*, 2014 WL 3908596, at \*10 (emphasis added). That presumption cannot be rebutted here because the amount of time Defendants expended on the three motions for sanctions was reasonable given the breadth and extent of the misconduct by Attorney Kyros that the motions needed to expose:

- The motion for sanctions in the *LoGrasso* case required WWE to prepare and file a 41-page memorandum of law in support of the motion with 62 pages of exhibits to demonstrate that Attorney Kyros had defied the Court's prior compulsion order; prepare for and attend a lengthy hearing of over three hours before Judge Richardson involving detailed presentations by both parties; and engage in another round of briefing before Judge Bryant after Attorney Kyros unsuccessfully objected to Judge Richardson's ruling awarding sanctions.

- The motion for sanctions concerning the original *Laurinaitis* complaint required Defendants to analyze a 214-page and 667-paragraph complaint asserting 17 claims on behalf of each of 53 plaintiffs; prepare and serve a Rule 11 motion and supplemental Rule 11 motion; engage in extensive briefing, including a 46-page memorandum of law in support of the motion cataloging plaintiffs' massive plagiarism of allegations from the NFL complaint, numerous other patently false allegations, and frivolous legal claims, including the assertion of non-existent causes of action, time-barred claims, and released claims; prepare and file 40 exhibits in support of the motion; and prepare for and attend a full-day hearing on the motion before Judge Richardson at which both sides made extensive oral arguments and presentations.

- The motion for sanctions concerning the amended *Laurinaitis* complaint required Defendants to analyze a 305-page and 805-paragraph complaint asserting 19 claims on behalf of each of 60 plaintiffs; prepare and serve another Rule 11 motion; engage in further extensive briefing, including another 46-page memorandum of law in support of the motion cataloguing plaintiffs' continued pattern of making false allegations (including allegations that the Court previously found to be false and that plaintiffs knew were false from prior discovery), making numerous irrelevant and inflammatory allegations, and asserting frivolous legal claims, including claims on behalf of 20 plaintiffs who signed releases and 18 plaintiffs who continued wrestling even after the filing of the complaint alleging they had brain damage; and prepare and file 81 exhibits in support of the motion.

Given the substantial amount of work involved in connection with litigating the three motions for sanctions that was necessitated by the misconduct of Attorney Kyros, the hours expended by Defendants were not excessive.

## VI.    The Time Spent on the Perjury and Crime-Fraud Arguments Was Compensable.

Magistrate Judge Richardson also erred in excluding time "explicitly related" to the perjury and crime-fraud argument in their motion for Rule 37 sanctions in the *LoGrasso* case merely because he "rejected" that argument.  (ECF No. 453 at 26-27.)  As part of their motion for sanctions resulting from false and evasive interrogatory responses provided by the plaintiffs in the *LoGrasso* case which did not comply with the Court's prior compulsion order, WWE sought discovery of communications between the plaintiffs and Attorney Kyros concerning those responses under the crime-fraud exception.   In his recommended ruling on that motion, Magistrate Judge Richardson found that the "timing surrounding the answers and the provision of the verifications [for] the interrogatories raises questions regarding what [the plaintiffs] knew about their sworn interrogatory responses."  (ECF No. 371 at 3, n.2.)  He did not recommend application of the crime-fraud exception, however, because Attorney Kyros "will be subject to significant sanctions in the hope of deterring further abuses of the discovery process" and had been warned that "any further suggestion of dishonesty throughout this litigation could, and likely should, result in much more dramatic sanctions up to and including the dismissal."  (*Id.*)

To the extent that Magistrate Judge Richardson rejected WWE's argument, reduction of the fee award was not appropriate.   Reasonable clients often pay for lawyers advancing arguments that do not ultimately prove successful.  *See Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir. 1980) ("[W]e do not approve the deduction for work on legal theories that proved 'unfruitful' but were not found to have been frivolous.");  *Research Commc'ns, Ltd. v. Meredith*

*Corp.*, No. 3:00-CV-2179, 2008 WL 4183440, at *6 n.14 (D. Conn. Sept. 10, 2008) ("Reasonable paying clients may agree to pay their lawyers for advancing plausible though ultimately unsuccessful arguments.") (internal quotation marks and alteration marks omitted) Magistrate Judge Richardson offered no reason other than the fact that the perjury and crime-fraud argument was "rejected" for excluding the time "explicitly related" to that argument. (ECF No. 453 at 26-27.)  He did not conclude that it was *unreasonable* for WWE to pursue such an argument.  Even if the argument did not serve as the basis for the sanctions award, it was plainly reasonable for WWE to advance it given the established falsity of the interrogatory responses supplied by Attorney Kyros.

## CONCLUSION

For the reasons set forth above, the Court should sustain Defendants' objections to Magistrate Judge Richardson's recommended ruling and award Defendants a total of $456,114.44 in fees (which represents the $573,770.44 in fees they sought in their applications minus the $39,844 in fees for work following the Second Circuit appeal and $77,812 in fees for work relating to the PowerPoint presentations excluded in the portions of Magistrate Judge Richardson's ruling to which WWE has not objected).[4]

---

[4] Magistrate Judge Richardson excluded 50.7 hours of time spent on the PowerPoint presentation in connection with the Rule 37 motion for sanctions and 103.85 hours of time spent on the PowerPoint presentation related to the Rule 11 motions for sanctions.  (ECF No. 453 at 25-26, n.14.)  WWE's calculation of fees related to that time is set forth in Exhibit A.

DEFENDANTS WORLD WRESTLING
ENTERTAINMENT, INC. and VINCENT K.
McMAHON,

By: */s/ Jerry S. McDevitt*
    Jerry S. McDevitt (*pro hac vice*)
    Curtis B. Krasik *(pro hac vice)*
    K&L GATES LLP
    K&L Gates Center
    210 Sixth Avenue
    Pittsburgh, PA 15222
    Phone: (412) 355-6500
    Fax: (412) 355-6501
    Email: jerry.mcdevitt@klgates.com
    Email: curtis.krasik@klgates.com

    Jeffrey P. Mueller (ct27870)
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jmueller@daypitney.com

    Their Attorneys

## CERTIFICATE OF SERVICE

    I hereby certify that, on September 16, 2021, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      */s/ Jeffrey P. Mueller*
      Jeffrey P. Mueller (ct27870)