## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:15-cv-01074 |
| WORLD WRESTLING ENTERTAINMENT, INC., | Lead Case |
| Defendant. | |
| | |
| EVAN SINGLETON and VITO LOGRASSO, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:15-cv-00425 |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Defendant. | |
| | |
| JOSEPH M. LAURINAITIS, *et al.*, | |
| v. | Civil Action No. 3:16-cv-01209 |
| WORLD WRESTLING ENTERTAINMENT, INC., *et al.*, | Consolidated Case |
| Defendants. | |

## PLAINTIFF WRESTLERS' RESPONSE TO
## DEFENDANT'S OBJECTION TO RECOMMENDED RULING, DKT. 455.

Plaintiff Wrestlers and Their Counsel, Kyros Law, respectfully submit this Response to the Objections (the "Objections", Dkt. 455) filed by World Wrestling Entertainment, Inc. ("WWE") to Magistrate Judge Richardson's Recommended Ruling (the "Recommended Ruling", Dkt. 453).

## I.     INTRODUCTION

WWE's Objection stems from Judge Richardson awarding the amount of $312,143.55 in legal fees after considering WWE's Applications for Fees (Dkt. Nos. 379, 386, and 446), Plaintiffs' Opposition, and WWE's improper Affidavit.  In dispute now is the reduction of $143,970.89.[1]

Magistrate Judges have broad discretion to determine sanction awards. "Given such a highly deferential standard of review, magistrate judges are afforded broad discretion and reversal is appropriate only if that discretion is abused." *Bathrick v. Astrue*, No. 3:11-cv-00101-VLB, 2015 WL 3870268, at *2 (D. Conn., June 23, 2015 (Bryant, J.) (quoting *Beck v. Astrue*, 2013 WL 3853444 (D. Conn., July 24, 2013)).

Judge Richardson's decision to utilize the Forum Rule was based on the consolidation of all cases within this District, the *Laurinaitis* matter being filed in this District (the basis for the Rule 11 sanctions), and the fact that WWE itself compared its hourly rates to attorneys' rates in this District. *See* Recommended Ruling; *c.f. Legends are Forever, Inc. v. Nike, Inc.*, 2013 U.S. Dist. LEXIS 164091, *11 (NDNY, Nov. 18, 2013) (applying the forum rule because "based on all the circumstances of the instant application, using prevailing rates … is appropriate and will adequately serve the compensatory and deterrent objectives").

In *Simmons v. New York City Transit Authority*, 575 F.3d 170, 175-6 (2d Cir., Aug. 3, 2009), the Court summarized this Circuit's position on the forum rule:

> [W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result…. The party seeking the award must make a particularized showing, not only that the

---

[1] The initial amount sought was for $573,770.44. WWE does not dispute Judge Richardson's removal of "$39,844 in fees for work following the Second Circuit appeal and $77,812 in fees for work relating to the PowerPoint presentations", despite arguing vehemently for these fees previously. Opposition, at 19. WWE now seeks $456,114.44. *Id.*

selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.  Unless these limitations are observed, the award of attorney's fees would not respect what we described in *Arbor Hill* as the "touchstone" of the doctrine, "that district courts should award fees just high enough 'to attract competent counsel'".

*Id.*

WWE makes novel arguments to rehash this well-litigated matter and still fails to establish that the fees sought *in this case* are reasonable, whether national or within this District.  Instead, Counsel once again takes potshots at Attorney Kyros and pads Attorney McDevitt's credentials to the point of trotting him out as an expert witness.

## II.     ARGUMENT

A.  <u>Reasonableness of Fees</u>

Plaintiffs do not believe a complete rehashing of the arguments already extensively made by both sides are necessary here.  However, a few misstatements by WWE require brief recognition.

The fee award requested by WWE goes to the scope of the Order in Dkt. 383 at 38 that states "Attorney Kyros and his law offices shall pay all of the legal fees that the Defendant reasonably incurred in connection with both of their motions for sanctions Dkt. 262 and 228".  As such, the scope is limited to the work for these motions. Similarly, the Rule 37 Order uses language "Attorney Kyros and his law offices shall pay all of the legal fees that the Defendants reasonably incurred in connection with this motion for sanctions."

WWE contends it spent 254.30 hours on a motion seeking revised answers to interrogatories from injured wrestlers in the *Singleton Lograsso* matter.  WWE also contend they spent 599.35 hours on two Rule 11 motions in the *Laurinaitis* matter, for a total of 853.65 hours.

3

K&L Gates and co-counsel therefore claim their legal team spent the equivalent of months of full-time legal work to draft these three motions.

WWE's Counsel's decision to file the over encumbered sanctions' motions should not be rewarded. Much of the "voluminous exhibits" and "lengthy briefing" went to irrelevant and unnecessary matters. The fact WWE paid for such over-the-top litigation, as further described below, could indicate unreasonableness or at least ulterior motives. Regardless, the excessiveness of the filings and the staggering number of hours spent on these sanctions' motions are unreasonable and deserving of significant reduction.

On September 2, 2021, Judge Richardson found "the number of hours spent on the motions was excessive." Dkt. 453, at 31. The Court should affirm the excessive nature of their Application for Fees.

B. Reasonableness of Attorney McDevitt's Fees

WWE argues against the application of the forum rule because "no Connecticut attorney could have improved upon the results achieved by Attorney McDevitt". Dkt. 455, at 15. This special expertise apparently involves experience and knowledge surrounding the science of Chronic Traumatic Encephalopathy ("CTE"). "No Connecticut attorney had the specific knowledge or expertise of Attorney McDevitt in CTE matters…". *Id.*, at 14.

This expertise is perhaps overstated because when interviewed by the Connecticut Law Tribune as to whether wrestlers could get CTE, Mr. McDevitt replied "no comment" and in December 2016, when asked whether wrestling over time causes brain damage, he replied "we are not scientists" and "the evidence is not clear". Dkt. 363, at 108.

On July 1, 2015, Mr. McDevitt told the Associated Press: "Before this guy [Attorney Kyros] started trolling around looking for people to sue, we didn't have one person, none, claiming

they had any kind of traumatic brain injuries, dementia or ALS or any kind of stuff you see associated with the NFL". <u>WWE Seeking to Block Concussion-related Lawsuits</u>, Pat Eaton-Robb, Associated Press, June 1, 2015.

By the time the Amended Complaint was filed in the *Laurinaitis* matter, Dkt. 363, in November 2017, dozens of former WWE wrestlers were alleging these injuries. Famed plaintiffs such as Jimmy Snuka, Mr. Fuji, Balls Mahoney, and Rex King had already donated their brains and been diagnosed with CTE. Since that time, many more plaintiffs and their families have donated their brains for CTE study which will hopefully be published as a comprehensive study of the disease in professional wrestlers. This heroic group of athletes likely would not have learned about this disease but for this lawsuit. *See, generally*, Dkt. 363, at 106-110.

Although the cases were dismissed, the Court did rule in favor of the Plaintiff Wrestlers' tolling arguments and denied the Motion to Dismiss in the *Singleton / Lograsso* matter. On March 21, 2016, Dkt. 116, at 26-37, the Court held "Plaintiff's may have discovered 'some injury', but not 'actual harm' because of their inability to tie head trauma that they knew they were sustaining to another party's breach of a duty to disclose increased risks for latent, permanent neurological conditions". *Id.*, at 32. The Court also ruled that Connecticut's Statute of Repose may be tolled by the continuing course of conduct doctrine (Dkt. 116, at 35-43) and Connecticut law was identified to toll Repose under the Plaintiff's Fraudulent Concealment theory. *Id.*, at 44-47.

Notably, this reported decision by Judge Bryant was cited extensively by the Ohio Court of Appeals in Ohio. *Steven Schmidt, et al. v. National Collegiate Athletic Association, et al.*, 2016 Ohio App. LEXIS 4914 (Ohio App., Dec. 8, 2016) (tolling the statute of limitations for a 1970s Notre Dame player who alleged a CTE diagnosis (when he was still alive) in 2012). This case was later affirmed by the Ohio Supreme Court.

Additionally, Attorney McDevitt's own behavior should be considered when affirming or denying the fee award. *Woodcrest Hursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Serv. Union*, 788 F.2d 894, 899 (2d Cir. 1986) (affirming denial of sanctions when litigation tactics of party seeking sanctions "hardly represented a model of propriety").  In a September 15, 2020 interview with The Wrestling Inc. Daily Podcast, Mr. McDevitt characterized Bill Jack Haynes, a Plaintiff Wrestler in the consolidated cases, as "sort of a known sociopath". *See* The Wrestling Inc. Daily Podcast, Interview, September 15, 2020.  In that same interview, Mr. McDevitt allegedly stated "Kyros should be disbarred", along with a long, unprofessional narrative attacking Plaintiff Counsel and the Plaintiffs, while also misstating the facts of the case and established law.  Such behavior has been emblematic of Mr. McDevitt's scorched earth tactics both in and out of court throughout this litigation.

C.  WWE's Payment of Bills is Not Grounds for Vacating the Forum Rule or Increasing the Fees

WWE argues because the bills were paid, there is no need to determine their reasonableness. This is simply not the case.  There can be countless reasons why a corporation would pay exorbitantly unreasonable fees, including a simple "David and Goliath" situation.  Here, WWE's Vincent McMahon's personal relationship with lead counsel Attorney McDevitt is also important.

This relationship is well documented. In the book Chokehold, Wilson, Johnson (Xlibris, 2003) p. 533, "McMahon admitted "ruthless aggression" is an endearing quality for his lawyer Jerry S. McDevitt of Kirkpatrick & Lockhart of Pittsburgh who represents McMahon at a cost of about a million dollars a year".

In this vein, a June 2008 Pennsylvania Super Lawyers magazine profile explains that Mr. McDevitt has represented the Defendants since 1987. "A prosperous tag team it has been too, as

6

evidenced by the red Ferrari convertible sitting in the garage of McDevitt's home…." "This is what you get when you represent Vince McMahon well", he says, "It's my indulgence". (In the Ring with Jerry McDevitt, Kathryn DeLong, June 2008, Pennsylvania Super Lawyers).

This profile continues "McDevitt works closely with McMahon and his wife, Linda, chief executive officer of the Connecticut-based company. "I'm kind of like a family consigliere", McDevitt says. "McMahon wholeheartedly agrees with that comparison… In McDevitt, he has found a trusted advisor and friend who's willing to be 'totally in the same boat, whether it sinks or not'". *Id.*

The Court should consider this relationship to determine whether WWE exercised sound business judgment as a "sophisticated client" or even whether it was attentive to these billing practices.

Just because WWE encourages scorched earth tactics to bully opponents financially into submission does not mean the fees meet the "reasonableness" standard required here.  Simply put, the fees themselves and the number of hours billed are patently unreasonable and must be reduced dramatically.

D.  Crime Fraud Exception and Perjury Arguments Should Remain Excluded

WWE argues that "[r]easonable paying clients may agree to pay their lawyers for advancing *plausible* though ultimately unsuccessful arguments". (Doc. 455, at *19) (*emphasis added*).  The inclusion of baseless allegations of crime-fraud and perjury were not and are not plausible, needlessly increased costs of litigation, and created a further divisive environment between counsel.  WWE was correct that these allegations were unsuccessful.  However, the conduct and decision to bring these filings to bear should not be rewarded and should not be

included in a fee award. *Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Serv. Union*, 788 F.2d at 899.

### III.    CONCLUSION

Courts may decline to award fees where the amount requested is exorbitant. *See Budget-Rent-A-Car Sys., Inc. v. Consol. Equity LLC*, 428 F.3d 717, 718 (7th Cir. 2005) ("When an award of fees is permissive, denial is an appropriate sanction for requesting an award that is not merely excessive, but so exorbitant as to constitute an abuse of the process of the court asked to make the award").

Ultimately, Plaintiffs "should not be required to pay for a limousine when a sedan could have done the job." *Simmons*, 575 F.3d at 177.  As Judge Richardson's Recommended Ruling decided, WWE did not meet its burden showing out-of-state rates were necessary to make them whole (or avoid a substantially inferior result) and to deter future sanctionable misconduct.  Judge Richardson's careful decision appropriately considered the significant fees sought, the conduct at issue, and the reasonableness of the result in this District or otherwise.

In addition to the arguments stated herein, Plaintiffs additionally rely on their previous filings in this matter as Judge Richardson addressed the forum rule, addressed the overly excessive fees for basic sanctions motions, and reduced the fees accordingly.

WHEREFORE, Plaintiffs and Kyros Law request the Court drastically reduce WWE's Application for Fees and adopt a fair and just resolution to this matter.

September 23, 2021.

Respectfully Submitted,

/s/ Konstantine W. Kyros
Konstantine W. Kyros, Esq.
Kyros Law
17 Miles Road

Hingham, Massachusetts 02043
Telephone: (617) 833-3727
Email: kon@kyroslaw.com

Anthony M. Norris, Esq.
Kyros Law
17 Miles Road
Hingham, Massachusetts 02043
Telephone: (617) 396-4159
Email: anorris@kyroslaw.com

**CERTIFICATE OF COMPLIANCE**

I hereby certify that on September 23, 2021, a copy of the foregoing was served via this Court's electronic case filing system.

/s/ Konstantine Kyros
Konstantine W. Kyros. Esq.