# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSS MCCULLOUGH, ET AL.,<br>    *Plaintiffs,*<br><br>v.<br><br>WORLD WRESTLING<br>ENTERTAINMENT, INC.,<br>    *Defendant.* | No. 3:15-cv-1074 (JAM)<br>CONSOLIDATED CASE |
| EVAN SINGLETON AND VITO<br>LOGRASSO,<br>    *Plaintiffs,*<br><br>v.<br><br>WORLD WRESTLING<br>ENTERTAINMENT, INC.,<br>    *Defendant.* | No. 3:15-cv-425 (JAM)<br>CONSOLIDATED CASE |
| JOSEPH LAURINAITIS, ET AL.,<br>    *Plaintiffs,*<br><br>v.<br><br>WORLD WRESTLING<br>ENTERTAINMENT, INC., ET AL.,<br>    *Defendants.* | No. 3:15-cv-1209 (JAM)<br>CONSOLIDATED CASE |

## ORDER ADOPTING RECOMMENDED RULING
## ON DEFENDANTS' MOTIONS FOR SANCTIONS

This is a case involving the calculation of an award of attorney's fees and costs as a

sanction against an attorney who was previously determined to have engaged in pleading and

discovery abuses in violation of Rules 11 and 37 of the Federal Rules of Civil Procedure. For the

reasons set forth below, I adopt the recommended ruling of Magistrate Judge Robert A.

Richardson to award $312,143.55.

These consolidated cases involve personal injury claims by professional wrestlers against World Wrestling Entertainment, Inc. (WWE), Vincent K. McMahon, and other defendants. The case was previously assigned to Judge Vanessa Bryant, and she entered orders in 2018 dismissing the plaintiffs' consolidated claims and granting motions by WWE and McMahon for sanctions under Rules 11 and 37 against the plaintiffs' attorney, Konstantine W. Kyros, and his law firm, Kyros Law P.C.[1] These sanctions orders required Kyros and his law firm to pay the legal fees and costs incurred by the defendants in litigating the motions for sanctions.

The plaintiffs appealed, and the Second Circuit affirmed Judge Bryant's order of dismissal in relevant part but ruled that it did not have jurisdiction to consider plaintiffs' challenges to Judge Bryant's sanctions orders before the amount of sanctions had been determined. *See Haynes v. World Wrestling Ent., Inc.*, 827 F. App'x 3 (2d Cir. 2020), *cert. denied*, 2021 WL 1602662 (U.S. Apr. 26, 2021).

The defendants filed motions seeking a total award of legal fees and costs in the amount of $573,770.44.[2] Judge Bryant referred these motions to Magistrate Judge Richardson for a recommended ruling.[3] Pursuant to Fed. R. Civ. P. 54(d)(2)(D), a district judge "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."

In the meantime, this action was transferred to my docket in September 2019.[4] Judge Richardson has now issued a ruling recommending that I grant an award in the amount of

---

[1] Doc. #376 (adopting Magistrate Judge Richardson's recommended ruling for discovery sanctions under Fed. R. Civ. P. 37, Doc. #371); Doc. #383 (granting motion for pleadings sanctions under Fed. R. Civ. P. 11).
[2] Docs. #378, 386; Doc. #446 at 3.
[3] Docs. #384, #387.
[4] Doc. #409.

$312,143.55.[5] The defendants have filed objections to the recommended ruling and claim that they should receive an award of $456,114.44.[6] Attorney Kyros has filed a response to the defendants' objections but has not otherwise objected to Judge Richardson's calculation of the award.[7]

Upon receiving a party's objections to a Magistrate Judge's recommended ruling, I must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). In this ruling, I address each of the objections raised by the defendants to Judge Richardson's ruling.

D<small>ISCUSSION</small>

Most of the defendants' objections relate to Judge Richardson's application of the "forum rule" to calculate the total fee award. The Second Circuit's "forum rule" generally requires a district court to calculate awardable attorney's fees by reference to the hourly rates employed by counsel in the district in which the reviewing court sits, absent evidence that a reasonable, paying client would have paid higher out-of-district rates and absent evidence of special factors warranting a choice of out-of-district counsel. *See Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017); *Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 289–90 (2d Cir. 2011).

The defendants argue that it was reasonable to retain relatively expensive out-of-district counsel—Attorney Jerry McDevitt of Kirkpatrick & Lockhart Gates—because he had "unique connections to the medical examiner's office where the initial [chronic traumatic

---

[5] Doc. #453.
[6] Doc. #455.
[7] Doc. #456.

encephalopathy] discovery was made" and because he was "uniquely situated to implement a coordinated defense" through his law firm's offices in each of the jurisdictions where the underlying cases were filed.[8] They further contend that it was economical to retain Attorney McDevitt because he was involved in defending and obtaining dismissals in several early cases and had "devised a strategy for obtaining dismissal or summary judgment in the remaining cases, and knew of the previous serial misconduct of Attorney Kyros and the series of previous admonitions given to him by Judge Bryant."[9] I will address each argument in turn.

*First*, the defendants argue that the forum rule should not apply because the underlying consolidated cases originated in other jurisdictions outside of Connecticut.[10] I do not agree that the forum rule should not apply simply because some of the actions that were consolidated in this case originated outside of Connecticut. Notably, none of those actions were originally filed in Attorney McDevitt's home district: the Western District of Pennsylvania.[11] The first of the consolidated actions was filed in Oregon in 2014.[12] Other actions followed in the Eastern District of Pennsylvania, the Western District of Tennessee, the Central District of California, the Northern District of Texas, and in this District. *See Haynes*, 827 F. App'x at 7–8 & n.2.

After this action was consolidated in the District of Connecticut, local counsel was at least as well-positioned to defend this litigation as Attorney McDevitt and K&L Gates. Notably, local counsel and out-of-district counsel appeared together before this Court in July 2015.[13] By September 2015, the various out-of-state actions had been consolidated in the District of

---

[8] Doc. #455 at 10.
[9] *Id*. at 11.
[10] *Id*. at 9-12.
[11] One action was originally filed in the Eastern District of Pennsylvania, but that district is not contiguous with the Western District—in fact, it would require a drive of about 5 hours to travel from one seat of court to the other.
[12] *See* Doc. #48 at 3 (notice of related case).
[13] Doc. #30 (Jeffrey Mueller of Day Pitney); Doc. #34 (*pro hac vice* motion of Jerry McDevitt of K&L Gates).

Connecticut.[14] There was thus no period of time in which Attorney McDevitt was solely responsible for the Connecticut litigation such that handing over the case to local counsel would have required going back to the proverbial drawing board.

Further, consolidation of these cases in Connecticut was eminently foreseeable to the defendants, because it was the defendants who sought consolidation in their home district. In each action, the defendants moved to transfer venue to the District of Connecticut based on mandatory forum-selection clauses in their contracts with the various plaintiffs.[15] Those clauses required claims against WWE to be brought "only in the State of Connecticut" or to be submitted "exclusively to the jurisdiction of the United States District Court of Connecticut."[16] In its motion to transfer, WWE also noted that its corporate headquarters are in Stamford, Connecticut, and that all of its executives reside and work in Connecticut.[17] Thus, the defendants had every reason to anticipate that this litigation would be consolidated and litigated to its conclusion in the District of Connecticut.

*Second*, WWE argues that the forum rule is ordinarily applied in the strictly compensatory context of attorney fee-shifting awards and does not apply in the sanctions context, which involves promoting deterrence as well as compensation for the moving party.[18] WWE relies on *On Time Aviation, Inc. v. Bombardier Cap., Inc.*, 354 F. App'x 448, 452 (2d Cir. 2009), in which the Second Circuit noted that Rule 11 awards are not "precisely analogous" to fee-shifting provisions that compensate plaintiffs challenging discriminatory conduct under federal law. But *On Time Aviation* is a non-precedential summary order, and it stops short of

---

[14] Doc. #41 (consolidation); Doc. #48.
[15] Doc. #16.
[16] Doc. #16-1 at 12-13.
[17] *Id*. at 14.
[18] Doc. #455 at 12-15.

ruling that the forum rule should not apply at all to sanctions awards. *See Field Day, LLC v. Cty. of Suffolk*, 2010 WL 5490990, at *3 (E.D.N.Y. 2010) (similarly distinguishing *On Time Aviation*).

WWE also relies on *Ceglia v. Zuckerberg*, 2012 WL 503810 (W.D.N.Y. 2012), which ruled that "strict adherence to the forum rule is unjustified in calculating a sanctions-based attorney's fee award pursuant to Rule 37," because such awards "are intended to penalize the offending or noncompliant party in order to achieve an efficient civil litigation system for the federal courts." *Id.* at *9–10. But other courts have declined to follow *Ceglia*, recognizing that applying the forum rule may dually satisfy the interests of compensation and deterrence. *See Legends Are Forever, Inc. v. Nike, Inc.*, 2013 WL 6086461, at *3 (N.D.N.Y. 2013); *246 Sears Rd. Corp. v. Exxon Mobil Corp.*, 2013 WL 4506973, at *11 (E.D.N.Y. 2013). Indeed, a later ruling in the *Ceglia* litigation acknowledged that a departure from the forum rule for sanctions cases is a matter of discretion rather than mandatory. *See Ceglia*, 2013 WL 2535849, at *4 (W.D.N.Y. 2013). I agree with Judge Richardson that, in this case, a sanctions award of more than $300,000 against plaintiffs' counsel is sufficient to serve not only the purposes of compensating WWE but also the purposes of deterring further misconduct by Attorney Kyros.[19]

*Third*, the defendants argue that, as a sophisticated paying client, the fees they paid should be deemed presumptively reasonable, such that no lodestar calculation was required.[20] That begs the question. The fact that the defendants paid Attorney McDevitt and K&L Gates for their legal services does not make those fees reasonable. Instead, I must decide based on the exceptions the Second Circuit has articulated to the forum rule whether WWE's decision to hire more expensive out-of-district counsel was "reasonable under the circumstances." *Simmons v.*

---

[19] *See* Doc. #453 at 10.
[20] Doc. #455 at 15-17.

*New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009).[21] That is, I must ascertain whether a reasonable client in WWE's shoes would have retained Attorney McDevitt in this action "because doing so would likely (not just possibly) produce a substantially better net result." *Id*. Only then can the defendants defeat the presumption "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id*. at 174 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).

The defendants argue that *Simmons* was a statutory fee-shifting case and therefore does not govern a case like this one involving a sophisticated paying client.[22] But *Simmons* stated the general rule that "when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Id*. That presumption is not displaced by an "actual billing arrangement," which is "a significant, though not necessarily controlling, factor in determining what fee is reasonable." *Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc*., 246 F.3d 142, 151 (2d Cir. 2001). Even giving significant weight to the defendants' decision to retain out-of-district counsel McDevitt, I do not conclude that the defendants reasonably paid much higher fees to McDevitt rather than paying competent local counsel to represent them in this action.

The defendants argue that they reasonably believed McDevitt's representation would likely produce a substantially better net result than the services of local counsel, such that the award should include the full amount of McDevitt's out-of-district fee.[23] But the defendants have

---

[21] While some district judges have questioned the propriety of *Simmons*'s forum-fee presumption in cases where counsel has merely crossed from the Southern District of New York into the Eastern District of New York, one cannot similarly describe the line between Connecticut and Pittsburgh, Pennsylvania—where Attorney McDevitt practices—as "uniquely permeable." *Gutman v. Klein*, 2009 WL 3296072, at *2 n.1 (E.D.N.Y. 2009), *aff'd,* 515 F. App'x 8 (2d Cir. 2013); *see also Thomas v. City of New York*, 2017 WL 6033532, *4 & n.2 (E.D.N.Y. 2017).
[22] Doc. #455 at 11.
[23] *Id*. at 17-21.

not shown that McDevitt possessed "special expertise beyond the competence of forum district law firms" such that his "attendance was necessary at the proceedings." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 2021 WL 1222159, at \*17 (S.D.N.Y. 2021). While the defendants dedicate considerable attention to McDevitt's longstanding involvement in defending claims brought by former wrestlers, they have not shown that experienced civil litigators in Connecticut—working in tandem with WWE executives—could not have adequately defended them in this action to reach the same result. That conclusion is reinforced by the fact that this case was dismissed before going to trial based on the deficiency of Attorney Kyros's pleadings and discovery requests—matters that are within the general expertise of civil litigators. As *Simmons* put it, the party bearing the cost of attorney's fees "should not be required to pay for a limousine when a sedan could have done the job." 575 F.3d at 177.

The defendants next fault Judge Richardson's application of the forum rule to reduce Attorney McDevitt's hourly rate to $550, noting some cases in which higher rates have been awarded in this District.[24] But $550 remains on the very high end of attorney's fee awards, and I accept that hourly rate as appropriate only for a very senior and experienced litigator in a complex case. *See Bruce Kirby, Inc. v. LaserPerformance (Eur.) Ltd.,* 2020 WL 502653, at \*5 (D. Conn. 2020) (noting prior caselaw finding that "$450/hour is on the high end and is generally reserved for particularly distinguished attorneys successfully taking on difficult or novel cases").

The defendants next contend that Judge Richardson erred in applying a 15% across-the-board reduction to the hours billed by Attorney McDevitt and K&L Gates to file three motions for sanctions against Attorney Kyros.[25] The Supreme Court has warned that "the determination of fees should not result in a second major litigation," and has instructed that the goal of an

---

[24] *Id.* at 21 n.3.
[25] *Id.* at 21-23.

attorney's fees award is "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

Judge Richardson appropriately applied the "percentage deduction as a practical means of trimming" the over 853 hours billed by Attorney McDevitt and other attorneys at K&L Gates on three sanctions motions.[26] *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). While those motions may have required substantial investment by WWE's attorneys, the commitment of more than 850 hours to litigate sanctions motions was excessive, and Judge Richardson's proposed 15% across-the-board reduction is an appropriate means to restrict the fee award to those hours "reasonably expended" on the motions for sanctions. *See Hensley v. Eckerhart,* 461 U.S. 424, 434–35 (1983).

Finally, the defendants argue that they should be compensated for time spent by counsel on pursuing an unsuccessful argument that Attorney Kyros suborned perjury such that they should have been permitted to obtain discovery under the crime-fraud exception to otherwise attorney-client privileged communications.[27] Judge Richardson declined to award fees for the 17.1 hours that counsel devoted exclusively to this aspect of its sanctions motion.[28] He reasoned that the subornation-of-perjury argument as a basis for allowing the defendants to obtain discovery of otherwise privileged communications had been previously rejected in connection with the litigation of the sanctions.[29]

---

[26] Doc. #453 at 31-32.
[27] Doc. #455 at 23-24.
[28] Doc. #453 at 26-27.
[29] *Id*. at 27; Doc. #371 at 3 n.2.

It is a basic rule of attorney's fees awards that an award should not be granted for attorney time devoted to unsuccessful claims or arguments, because "the most critical factor is the degree of success obtained," although "[t]here is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. Fees should be awarded for unsuccessful claims only if they are inextricably intertwined with and involve a common core of facts or related legal theories. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). I conclude that the defendants' argument to breach the attorney-client privilege was not only unsuccessful but also too tenuous and distinct from their successful arguments for sanctions to warrant an award of attorney's fees for the 17.1 hours of time specifically devoted to making this argument.

## CONCLUSION

For the reasons stated above, the Court adopts the recommended ruling (Doc. #453) and GRANTS in part defendants' motions for sanctions (Docs. #378, #386) in the amount of $312,143.55. Consistent with the recommended ruling, the Court DENIES as moot plaintiffs' motion to strike (Doc. #451).

It is so ordered.

Dated at New Haven this 30th day of September 2021.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge