21-3127-cv (L)
Kyros Law P.C. v. World Wrestling Entertainment, Inc.

# In the
# United States Court of Appeals
## For the Second Circuit

———————————

August Term, 2022
Nos. 21-3127-cv (L), 21-3136-cv (XAP)

KYROS LAW P.C., KONSTANTINE W. KYROS,
*Appellants-Cross-Appellees,*

MICHELLE JAMES, as mother and next friend of M.O., a minor child,
and T.O, a minor child, JIMMY SNUKA, "SUPERFLY," by and through
his guardian, CAROLE SNUKA, SALVADOR GUERRERO, IV, a/k/a CHAVO
GUERRERO, JR., CHAVO GUERRERO, SR., a/k/a CHAVO CLASSIC, BRYAN
EMMETT CLARK, JR., a/k/a ADAM BOMB, DAVE HEBNER, EARL HEBNER,
CARLENE B. MOORE-BEGNAUD, a/k/a JAZZ, MARK JINDRAK, JON
HEIDENREICH, LARRY OLIVER, a/k/a CRIPPLER, BOBBI BILLARD, LOU
MARCONI, BERNARD KNIGHTON, KELLI FUJIWARA SLOAN, on behalf of
Estate of HARRY MASAYOSHI FUJIWARA, WILLIAM ALBERT HAYNES, III,
RODNEY BEGNAUD, a/k/a RODNEY MACK, RUSS MCCULLOUGH,
individually and on behalf of all others similarly situated, a/k/a BIG
RUSS MCCULLOUGH, RYAN SAKODA, individually and on behalf of all
others similarly situated, MATTHEW ROBERT WIESE, individually and
on behalf of all others similarly situated, a/k/a LUTHER REIGNS, EVAN
SINGLETON, VITO LOGRASSO, CASSANDRA FRAZIER, individually and
as next of kin to her deceased husband, NELSON LEE FRAZIER, JR.
a/k/a MABEL a/k/a VISCERA a/k/a BIG DADDY V a/k/a KING MABEL, and
as personal representative of Estate of NELSON LEE FRAZIER, JR.,
deceased, SHIRLEY FELLOWS, on behalf of Estate of TIMOTHY ALAN
SMITH a/k/a REX KING, JOSEPH M. LAURINAITIS, a/k/a ROAD WARRIOR

ANIMAL, PAUL ORNDORFF, a/k/a MR. WONDERFUL, CHRIS PALLIES, a/k/a KING KONG BUNDY, ANTHONY NORRIS, a/k/a AHMED JOHNSON, JAMES HARRIS, a/k/a KAMALA, KEN PATERA, BARBARA MARIE LEYDIG, BERNARD KNIGHTON, as personal representative of Estate of BRIAN KNIGHTON, a/k/a AXL ROTTEN, MARTY JANNETTY, TERRY SZOPINSKI, a/k/a WARLORD, SIONE HAVIA VAILAHI, a/k/a BARBARIAN, TERRY BRUNK, a/k/a SABU, BARRY DARSOW, a/k/a SMASH, BILL EADIE, a/k/a AX, JOHN NORD, JONATHAN HUGGER, a/k/a JOHNNY THE BULL, JAMES BRUNZELL, SUSAN GREEN, ANGELO MOSCA, a/k/a KING KONG MOSCA, JAMES MANLEY, a/k/a JIM POWERS, MICHAEL ENOS, a/k/a MIKE, a/k/a BLAKE BEVERLY, BRUCE REED, a/k/a BUTCH, SYLAIN GRENIER, OMAR MIJARES, a/k/a OMAR ATLAS, DON LEO HEATON, a/k/a DON LEO JONATHAN, TROY MARTIN, a/k/a SHANE DOUGLAS, MARC COPANI, a/k/a MUHAMMAD HASSAN, MARK CANTERBURY, a/k/a HENRY GODWIN, VICTORIA OTIS, a/k/a PRINCESS VICTORIA, JUDY HARDEE, JUDY MARTIN, TIMOTHY SMITH, a/k/a REX KING, TRACY SMOTHERS, a/k/a FREDDIE JOE FLOYD, MICHAEL R. HALAC, a/k/a MANTAUR, RICK JONES, a/k/a BLACK BART, KEN JOHNSON, a/k/a SLICK, GEORGE GRAY, a/k/a ONE MAN GANG, FERRIN JESSE BARR, a/k/a J.J. FUNK, ROD PRICE, DONALD DRIGGERS, RONALD SCOTT HEARD, on behalf of Estate of RONALD HEARD a/k/a OUTLAW RON BASS, BORIS ZHUKOV, DAVID SILVA, JOHN JETER, a/k/a JOHNNY JETER, GAYLE SCHECTER, as personal representative of Estate of JON RECHNER a/k/a BALLS MAHONEY, ASHLEY MASSARO, a/k/a ASHLEY, CHARLES WICKS, a/k/a CHAD WICKS, PERRY SATULLO, a/k/a PERRY SATURN, CHARLES BERNARD SCAGGS, a/k/a FLASH FUNK, CAROLE M. SNUKA, on behalf of Estate of JAMES W. SNUKA,

*Consolidated-Plaintiffs,*

*v.*

2

WORLD WRESTLING ENTERTAINMENT, INC.,
*Consolidated Plaintiff-Defendant-Appellee-Cross-Appellant*,

VINCENT K. MCMAHON, individually and as the Trustee of the
Vincent K. McMahon Irrevocable Trust u/t/a dtd. June 24, 2004, as
the Trustee of the Vincent K. McMahon 2008, and as Special Trustee
of the Vincent K. McMahon 2013 Irrev. Trust u/t/a dtd. December 5,
2013 and as Trust,
*Consolidated Defendant-Appellee-Cross-Appellant,*

ROBERT WINDHAM, THOMAS BILLINGTON, JAMES WARE, OREAL
PERRAS, JOHN DOES, various,

*Consolidated-Defendants.*\*

―――――――――――――

On Appeal from a Judgment of the United States District Court
for the District of Connecticut.

―――――――――――――

ARGUED: MARCH 30, 2023
DECIDED: AUGUST 28, 2023

―――――――――――――

Before: LIVINGSTON, *Chief Judge*, and NARDINI, *Circuit Judge*. †

―――――――――――――

―――――――――――――

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

† Judge Rosemary S. Pooler, originally a member of the panel, died on August 10, 2023. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b)*; United States v. Desimone*, 140 F.3d 457, 458-59 (2d Cir. 1998).

Appellants-Cross-Appellees Konstantine W. Kyros and his law firm, Kyros Law P.C. (together, "Kyros"), appeal from a judgment of the United States District Court for the District of Connecticut imposing sanctions for litigation misconduct under Rules 11 and 37 of the Federal Rules of Civil Procedure. In 2014 and 2015, Kyros brought several lawsuits against Appellees-Cross-Appellants World Wrestling Entertainment, Inc. and Vincent K. McMahon (together, "WWE"). These cases were initially filed in various jurisdictions across the country but were eventually consolidated in the District of Connecticut. This Court previously affirmed the district court's dismissal of one of Kyros's cases against WWE and dismissed the rest for lack of appellate jurisdiction. Kyros also previously challenged orders entered by the district court (Vanessa L. Bryant, *Judge*) determining that he should be sanctioned under Rules 11 and 37, but we also dismissed that appeal for lack of jurisdiction because the amount of sanctions had not yet been determined. Subsequently, the district court (Jeffrey A. Meyer, *Judge*) imposed sanctions against Kyros in the amount of $312,143.55—less than the full amount requested by WWE. Kyros now appeals these final sanctions determinations. On cross-appeal, WWE challenges the district court's reduction of the requested fee award by application of the "forum rule," under which a court calculates attorney's fees with reference to the prevailing hourly rates in the forum in which the court sits. Finding no abuse of discretion, we AFFIRM the judgment.

---

KONSTANTINE W. KYROS, Kyros Law Offices, Hingham, MA, *for Appellants-Cross-Appellees*.

CURTIS B. KRASIK, K&L Gates LLP, Pittsburgh, PA (Jerry S. McDevitt, K&L

Gates LLP, Pittsburgh, PA, Jeffrey P. Mueller, Day Pitney LLP, Hartford CT, *on the brief*), *for Appellees-Cross-Appellants.*

————————————————

WILLIAM J. NARDINI, *Circuit Judge*:

Over the course of several months in 2014 and 2015, Appellants-Cross-Appellees Konstantine W. Kyros and his law firm, Kyros Law P.C. (together, "Kyros") filed, in jurisdictions across the country, class action lawsuits and wrongful death lawsuits against Appellees-Cross-Appellants World Wrestling Entertainment, Inc. and Vincent K. McMahon (together, "WWE"), asserting various tort claims that related to chronic traumatic encephalopathy ("CTE") in former wrestlers. In 2016, Kyros filed an additional mass action lawsuit on behalf of fifty-three former wrestlers, asserting a wide range of tort claims. *See Laurinaitis v. World Wrestling Entm't, Inc.*, No. 3:16-cv-1209-VLB (D. Conn.) ("*Laurinaitis*"). These lawsuits were all eventually transferred to the United States District Court for the District of Connecticut. We previously affirmed the district court's

dismissal of the *Laurinaitis* complaint and dismissed Kyros's appeals of the other consolidated cases against WWE for lack of jurisdiction. *See Haynes v. World Wrestling Entm't, Inc.*, 827 F. App'x 3 (2d Cir. 2020)**.**

The present appeal concerns only the district court's awards of sanctions in *Laurinaitis* and *Singleton v. World Wrestling Entertainment, Inc.*, No. 3:15-cv-425-VLB (D. Conn.) ("*Singleton*"), one of the class action lawsuits.  At an earlier stage of the case, the district court (Vanessa L. Bryant, *Judge*) ruled that Kyros had repeatedly engaged in pleading and discovery misconduct and decided to impose sanctions in *Laurinaitis* under Rule 11 of the Federal Rules of Civil Procedure, and in *Singleton* under Rule 37.  Although Kyros challenged these orders in the previous appeal, we dismissed that portion of his appeal because the district court had not yet entered a final order that fixed the amount of sanctions.  *See Haynes*, 827 F. App'x at 11.  Following our decision, the district court (Jeffrey A. Meyer, *Judge*) adopted a recommended ruling of a magistrate judge

(Robert A. Richardson, *Magistrate Judge*) and awarded sanctions to WWE in the amount of $312,143.55—less than WWE's requested amount of $533,926.44. *McCullough v. World Wrestling Ent., Inc.*, 2021 WL 4472719, at *1, *4–5 (D. Conn. Sept. 30, 2021).[2] With the amount of sanctions calculated, we now consider Kyros's appeal of the Rule 11 and Rule 37 sanctions and WWE's cross-appeal, which challenges the district court's application of the forum rule to award less than the requested amount of sanctions.

## I.    Background

Two former wrestlers filed the *Singleton* complaint in January 2015 as a putative class action in the Eastern District of Pennsylvania, alleging that they suffered from, or were at increased risk of developing, degenerative neurological conditions as a result of traumatic brain injuries sustained while wrestling for WWE.  The Pennsylvania district court transferred the action to the District of

---

[2] The consolidated cases were transferred to Judge Meyer's docket on September 5, 2019.

Connecticut in March 2015. The *Laurinaitis* complaint, which was filed in the District of Connecticut in July 2016, included a wide range of tort claims and sought relief under various statutes on the ground that WWE had misclassified the plaintiffs as independent contractors. We discuss below the facts and procedural history of *Singleton* and *Laurinaitis* to the extent they are relevant to the challenged sanctions orders.

### A.      Rule 37 Sanctions in *Singleton*

At a *Singleton* status conference in June 2015, WWE provided the district court with updates on Kyros's various class actions and raised concerns about apparent defects in the complaint, including untimeliness and glaringly false allegations. As an example, WWE pointed to the allegation that CTE had caused the plaintiffs' "untimely death" when, in fact, the plaintiffs were still very much alive. Supp. App'x at 73–74. The district court admonished Kyros for filing a complaint that failed to satisfy fundamental pleading

standards and instructed him to re-file "without a lot of superfluous, hyperbolic, inflammatory opinions and references to things that don't have any relevance."  Supp. App'x at 127–28.  A week later, Kyros filed a second amended complaint.

In March 2016, the district court dismissed all claims but one in the second amended complaint.  Specifically, the district court allowed the plaintiffs' fraudulent omission claim to proceed because the complaint, as amended, alleged that WWE was aware of the link between repeated head trauma and degenerative neurological conditions at a time when the plaintiffs were still active as wrestlers for WWE.[3]  In dismissing the rest of the claims, the district court again admonished Kyros for, among other things, making "patently false," "copied and pasted" allegations in the complaint; "repeatedly

---

[3] WWE later moved for summary judgment as to the fraudulent omission claim, and the district court granted the motion in March 2018, concluding that Kyros failed to establish that WWE was aware of a link between wrestling and CTE during the relevant time period.  The district court noted, "[o]nce again," that Kyros had "asserted facts and advanced legal theories for which there is no reasonable evidentiary and legal basis," and "caution[ed] that such conduct subjects counsel to Rule 11 sanctions."  Supp. App'x at 990.

misrepresent[ing] both the substance and the meaning" of certain testimony; and failing to include specific and substantive allegations. Special App'x at 7–9, 58.

During discovery on the fraudulent omission claim, WWE served the plaintiffs with interrogatories. The plaintiffs responded, and, after the parties met and conferred, WWE filed a motion to compel, claiming that the plaintiffs' responses were incomplete or evasive. In May 2016, the district court granted in part the motion to compel and ordered the plaintiffs to submit supplemental responses to certain of the interrogatories. The district court instructed that, where the plaintiffs were "unable to identify a statement or speaker in response to an interrogatory," they "must state that fact." Supp. App'x at 248.

On August 8, 2016, WWE moved for Rule 37 sanctions, arguing that the plaintiffs failed to comply with the district court's May 2016 order. The district court referred the Rule 37 motion to a magistrate

judge.   In February 2018, the magistrate judge issued a recommended ruling on the motion.   He concluded that the plaintiffs' interrogatory responses were insufficient.   For example, he noted that, rather than identifying specific "deceptive public statement[s]" WWE had made, the plaintiffs' responses directed WWE to an "entire book" along with "random publications and documents with little specificity or guidance."   Special App'x at 175, 178.   Accordingly, the magistrate judge recommended sanctioning Kyros "to dissuade further abuse of the discovery process and promote thorough compliance with court orders moving forward."   Special App'x at 179–80.

Additionally, the magistrate judge observed that Kyros "ha[d] been on notice that plaintiffs need to comply with Court orders and the Federal Rules of Civil Procedure throughout this litigation," *id.* at 180, and clarified that "plaintiffs and their counsel are now on notice that any further noncompliance during the remainder of this litigation may result in the dismissal of the case," *id.* at 183.   The

magistrate judge also recommended that Kyros pay WWE's legal fees in connection with the sanctions motion. In July 2018, the district court adopted the magistrate judge's recommended ruling.

### B. Rule 11 Sanctions in *Laurinaitis*

Kyros filed the *Laurinaitis* complaint in July 2016 on behalf of fifty-three former WWE wrestlers. The complaint was 214 pages long and contained 667 paragraphs, including seventeen causes of action that were each asserted on behalf of all plaintiffs. Shortly thereafter, WWE notified Kyros of its intention to move for Rule 11 sanctions. Specifically, on two occasions in August 2016, WWE served Kyros with draft Rule 11 motions setting forth as grounds for sanctions, among other things, the issues of time-barred claims in the complaint and the lack of a good-faith basis for allegations regarding WWE's knowledge.

The draft Rule 11 motions asserted that many of the allegations in the complaint appeared to have been indiscriminately cut and

pasted from a complaint filed in the National Football League ("NFL") concussion litigation. For example, the complaint alleged that one purported wrestler (who was, instead, an NFL football player) "sustained repeated and disabling head impacts while a wrestler for the Steelers"—Pittsburgh's NFL team. Special App'x at 205 (internal quotation marks omitted). Similarly, the complaint alleged that various studies had warned of the danger that a concussion would pose to a "football wrestler." Supp. App'x at 346.

On October 17, 2016, after Kyros failed to withdraw or correct the complaint, WWE filed in the district court its first motion for Rule 11 sanctions against Kyros and his co-counsel, premised on the two draft motions it had served on Kyros in August 2016. WWE pointed to purported "false allegations," "frivolous legal claims," and "bad faith," and sought dismissal of the complaint. Supp. App'x at 466. The district court referred this first Rule 11 motion to the magistrate judge.

Kyros responded in two ways. On November 9, 2016, he filed a first amended complaint, which added numerous plaintiffs, pages, and paragraphs. Then, in December 2016, Kyros filed an opposition to WWE's October sanctions motion, arguing that certain "improper" allegations in the complaint were attributable to editing mistakes and that the rest of the complaint contained plausible allegations made in good faith.

Later in December 2016 WWE filed a second motion for Rule 11 sanctions, arguing that the first amended complaint was just as deficient as the original one. Kyros opposed WWE's December sanctions motion, arguing that there was a good faith basis for the plaintiffs' allegations, that any plagiarism from the NFL litigation was not sanctionable, and that the allegations were sufficient with respect to tolling and knowledge.

In September 2017, the district court issued an interim order on WWE's pending motions to dismiss and for Rule 11 sanctions.

14

Admonishing Kyros for failing to comply with the Federal Rules of Civil Procedure and its own prior instructions, the district court listed several of the "numerous allegations" in the "335 page complaint with 805 paragraphs . . . that a reasonable attorney would know are inaccurate, irrelevant, or frivolous." Special App'x at 150. The district court concluded that the first amended complaint "remain[ed] unnecessarily and extremely long, with an overwhelming number of irrelevant allegations," such that parsing the claims as they stood "would be both a waste of judicial resources [and] unduly prejudicial to the WWE." *Id.* at 162–63. Ultimately, the district court reserved judgment on the pending motions for Rule 11 sanctions and to dismiss, pending the filing of a second amended complaint and the *in camera* submission of sworn affidavits by each *Laurinaitis* plaintiff that would "set[] forth facts within each plaintiff's . . . personal knowledge that form[ed] the factual basis of their claim." *Id.* at 163. The district court also warned Kyros that it would grant the motion to dismiss

and "pursuant to Rule 11(c)(3) . . . *sua sponte* revisit whether to award attorney's fees as a sanction," if Kyros failed to comply with the order. *Id.* at 165. Kyros subsequently filed a second amended complaint and submitted affidavits on behalf of the plaintiffs.

In September 2018, the district court issued its final order in the consolidated cases. The order first concluded that dismissal was warranted because the second amended complaint and the affidavits that Kyros had filed did not comply with its September 2017 order. The district court reviewed Kyros's "repeated failures to comply with the clear, and unambiguous provisions of the Federal Rules of Civil Procedure and this Court's repeated instructions and admonitions, which has resulted in a considerable waste of the Court's and the Defendants' time and resources." *Id.* at 196–97. It commented that "despite second, third, and fourth chances to submit pleadings that comply with Rules 8, 9, and 11, Attorney Kyros has persisted in asserting pages and pages of frivolous claims and allegations for

which he lacked any factual basis." *Id.* at 230–31. And it added that Kyros "offered the Court no reason to believe that if given a fifth, sixth, or seventh chance, he would prosecute this case in a manner consistent with the Federal Rules of Civil Procedure." *Id.* at 231.

The district court further concluded that an award of attorney's fees and costs was necessary to deter Kyros from violating Rule 11 and ordered Kyros to pay all legal fees that WWE reasonably incurred in connection with the sanctions motions. "[I]n order to protect the public," the district court also ordered Kyros to send a copy of its ruling to each of the *Laurinaitis* plaintiffs and any other future, current, or former WWE wrestler who retained Kyros to sue WWE. *Id.* Kyros appealed from that judgment.

On October 22, 2020, we affirmed the district court's dismissal of the *Laurinaitis* complaint. *See Haynes*, 827 F. App'x at 10. But we dismissed as premature the appeal as to the Rule 11 sanctions—and

17

the Rule 37 sanctions in *Singleton*—because the amount of sanctions had not yet been determined.  *Id.* at 11.

## C.  Determination of the Amount of the Sanctions

The amount of sanctions was calculated in subsequent proceedings.  WWE asked for $533,926.44, which were the attorney's fees and costs it had incurred in connection with its three sanctions motions.  The district court referred WWE's application to a magistrate judge for a recommended ruling.  On September 2, 2021, the magistrate judge recommended an award of $312,143.55, which included the Rule 37 sanctions in *Singleton* and the Rule 11 sanctions in *Laurinaitis*.  In reaching that number, the magistrate judge reduced the amount of attorneys' fees sought, based in part on a fifteen-percent, "across-the-board" reduction, *id.* at 272, and in part on the "forum rule," under which a court calculates attorney's fees with reference to the prevailing hourly rates in the forum in which the court sits, *id.* at 258.

WWE objected to the magistrate judge's recommended ruling on the ground that he erroneously applied the forum rule. Kyros did not object to the recommended ruling. On September 30, 2021, the district court overruled WWE's objections and adopted the magistrate judge's recommendation, awarding WWE $312,143.55. In particular, the district court rejected WWE's argument that the forum rule should not apply where certain of the consolidated cases had originated in jurisdictions outside the forum, reasoning that local counsel in Connecticut was at least as well positioned to defend the litigation as the out-of-district counsel WWE retained. The district court also noted that it was foreseeable that the cases would be consolidated in Connecticut, in light of mandatory forum-selection clauses in WWE's contracts with the plaintiffs and the Connecticut location of WWE's corporate headquarters.

The district court also rejected WWE's broader arguments that the forum rule does not apply in the sanctions context and that the

fees WWE paid should be deemed presumptively reasonable. It concluded that WWE failed to show that experienced civil litigators in Connecticut could not have obtained the same result as out-of-district counsel. And it endorsed the fifteen-percent, across-the-board recommended reduction, reasoning that the magistrate judge's approach to trimming excess fees was a practical one.

Kyros appealed from the judgment imposing sanctions, and WWE cross-appealed as to the application of the forum rule.

## II.  Discussion

On appeal, Kyros argues that the district court should not have imposed any Rule 11 and Rule 37 sanctions at all. On cross-appeal, by contrast, WWE argues that the award should have been higher; specifically, it challenges the application of the forum rule to award a lower amount of attorney's fees than it actually paid. We address each argument in turn and, as set forth below, find no abuse of discretion in the district court's imposition of sanctions or its application of the forum rule.

## A.    Rule 11 Sanctions

This Court "review[s] the imposition of sanctions for abuse of
discretion." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir.
2021) (internal quotation marks omitted).  "An abuse of discretion
occurs when a district court bases its ruling on an erroneous view of
the law or on a clearly erroneous assessment of the evidence, or
renders a decision that cannot be located within the range of
permissible decisions." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d
42, 53 (2d Cir. 2018) (internal quotation marks omitted).  "This
deferential standard is applicable to the review of Rule 11 sanctions
because . . . the district court is familiar with the issues and litigants
and is thus better situated than the court of appeals to marshal the
pertinent facts and apply the fact-dependent legal standard mandated
by Rule 11." *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 103
(2d Cir. 2015) (alteration and internal quotation marks omitted).  Still,
our review of sanctions "is more exacting than under the ordinary
abuse-of-discretion standard" because "sanctions proceedings are

unique, placing the district judge in the role of accuser, fact finder and sentencing judge all in one." *Liebowitz*, 6 F.4th at 280 (internal quotation marks omitted).

Federal Rule of Civil Procedure 11 provides that, "[b]y presenting to the court a pleading, written motion, or other paper," an attorney "certifies that to the best of [her] knowledge, information, and belief," formed after a reasonable inquiry, the filing is: (1) "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) supported by available evidence, or evidence likely to be discovered on further investigation. Fed. R. Civ. P. 11(b). A court may sanction an attorney who violates Rule 11(b) if the court first provides notice and a reasonable opportunity to respond. *See* Fed. R. Civ. P. 11(c)(1).

A party must move for sanctions in a filing that is "separate[] from any other motion" and that "describe[s] the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Such a motion may not be presented to the court until the expiration of a twenty-one-day "safe harbor" period, during which the alleged violator has the chance to withdraw or correct the challenged filing. *See id.* The court may also initiate sanctions *sua sponte* by issuing an order "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). When a court initiates Rule 11 sanctions *sua sponte* and the opportunity to correct or withdraw the challenged submission is unavailable, the court must make a finding of bad faith on the part of the attorney before imposing the sanctions. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 91–92 (2d Cir. 2003).

Kyros argues that the district court abused its discretion by failing to follow the procedures set out in Rule 11 and by failing to

satisfy the requirements of due process. Characterizing the district court's Rule 11 sanctions order as having been imposed *sua sponte*, Kyros contends that the district failed to issue the show-cause order required by Rule 11(c)(3) and to provide him with notice and an opportunity to be heard. By the same token, Kyros claims that the district court failed to make the requisite finding of bad faith before imposing *sua sponte* sanctions.

WWE asserts that Kyros's characterization of the sanctions order ignores the district court's repeated admonitions and interim order putting him on notice that his conduct risked punishment. Noting the oppositions and sur-reply Kyros filed in response to its Rule 11 motions as to the original and first amended *Laurinaitis* complaints, WWE argues that Kyros cannot now claim that he lacked notice of the grounds for sanctions. In particular, WWE suggests that the district court gave Kyros "a last chance to avoid sanctions . . . by complying with the Court's detailed order regarding the

information to include in each plaintiff's affidavit and filing amended pleadings in accordance with the Federal Rules and the Court's prior instructions," but Kyros did not comply.  Appellees' Br. at 47.

On the record before us, we find no abuse of discretion because the district court ordered sanctions based on pleading defects that WWE had identified in their motions seeking Rule 11 sanctions.  As detailed above, WWE first notified Kyros of its intention to seek Rule 11 sanctions in August 2016, raising the issues of time-barred claims and the lack of a good-faith basis for allegations in the original complaint regarding WWE's knowledge.   In October 2016, WWE filed a motion for Rule 11 sanctions in the district court that incorporated precisely those claims it had flagged in August.   Days after the Rule 11(c)(2) safe harbor period passed, Kyros filed a first amended complaint, adding plaintiffs and new allegations without addressing the issues of which WWE had complained in its sanctions motion.   As WWE notes, Kyros then opposed the October 2016

sanctions motion as well as WWE's December 2016 motion for sanctions as to the first amended complaint—even filing a sur-reply in connection with the latter.   These filings were all responsive to the issues raised in WWE's sanctions motions.   As Kyros acknowledged in a filing below, the district court's September 2017 order reserved judgment on these two sanctions motions, providing Kyros with an opportunity to file yet another amended pleading in order to comply with the Federal Rules.   And, once Kyros filed yet another deficient complaint (the second amended version), the district court sanctioned Kyros under Rule 11 on the same timeliness and lack-of-good-faith grounds that WWE had asserted in its earlier sanctions motions.

It is therefore clear from the record that the district court's sanctions order was based on WWE's two motions for Rule 11 sanctions, not on some new and spontaneous initiative of the district court.   Kyros argues that the district court's order was issued "*sua sponte*," but this misreads the record.   The district court did state in its

September 2017 order that it would "*sua sponte* revisit" the sanctions issue "pursuant to Rule 11(c)(3)," Special App'x at 165, but that language appears in a ruling that merely reserved decision on WWE's already-filed sanctions motions. And the district court did not ultimately follow the path of imposing *sua sponte* sanctions based on the independent content of the second amended complaint. In its September 2018 order granting sanctions, the court based its findings on precisely the same conduct about which WWE had complained in its two Rule 11 motions, including "factually unsupportable allegations," "frivolous claims," and lack of a good-faith basis. Special App'x 228–31. The decretal language of the September 2018 order likewise confirmed that the court was granting in part WWE's December 2016 sanctions motion—which was based entirely on the original and first amended complaints—"to the extent it sought the award of attorney's fees and costs," Special App'x at 232. And the amount later awarded was premised entirely on attorney's fees and

costs that WWE had expended on those two motions—that is, before Kyros filed the second amended complaint.  In other words, it makes no difference that the district court had earlier suggested that it might follow the route of considering sanctions *sua sponte*; its actual decision was explicitly framed as a decision on WWE's earlier-filed motions.  Accordingly, we reject Kyros's argument that the sanctions order was imposed *sua sponte* such that the district court was bound by the procedural requirements of Rule 11(c)(3).[4]

For much the same reasons, we reject Kyros's argument that the district court violated his due process rights by depriving him of

_____

[4] Kyros also argues that the district court erred in granting a sanctions motion addressed to the original and first amended complaints, well after Kyros had later filed a second amended complaint.  Given the purpose of the safe harbor provision under Rule 11, we agree that district courts should ordinarily not reach back in time to sanction filings that were later superseded, because doing so risks the same lack of notice associated with truly "*sua sponte*" sanctions.  We read *In re Pennie & Edmonds*, however, to impose a check on such a possibility by requiring a finding of subjective bad faith in the absence of "an explicit 'safe harbor' protection or an equivalent opportunity" to correct a deficient filing.  323 F.3d at 93.  Here, because the WWE's earlier motions gave Kyros the explicit benefit of the Rule's safe harbor provision, no such finding was necessary.  And even had WWE's motions *not* provided this benefit, the district court's repeated warnings to Kyros in this case would have likewise provided an "equivalent opportunity" to correct his filings—an opportunity he did not take.

notice and an opportunity to be heard before imposing sanctions. Here, Kyros had abundant notice of the risk of, and the potential grounds for, sanctions based on WWE's Rule 11 motions and the district court's interim order reserving judgment. Indeed, Kyros took advantage of multiple opportunities to be heard in his responses to those sanctions motions and within the window the district court gave him to amend his complaint. *See, e.g.*, *Margo v. Weiss*, 213 F.3d 55, 63–64 (2d Cir. 2000) (concluding that "the district court was not required to give appellants notice of grounds for sanctions that were clearly expressed in defendants' Rule 11 motion papers" and noting that the appellants "took advantage of the notice they received from the defendants' Rule 11 papers" by submitting a declaration in opposition to the motion). Under such circumstances, even our "more exacting . . . abuse-of-discretion standard," *Liebowitz*, 6 F.4th at 280, does not require us to craft new procedural hurdles for district courts to clear before sanctioning attorneys who violate Rule 11(b).

We have considered the remainder of Kyros's Rule 11 arguments and find them unpersuasive. *See Int'l Ore & Fertilizer Corp. v. SGS Control Services, Inc.*, 38 F.3d 1279, 1286–87 (2d Cir. 1994) ("Appellants raise numerous objections on the merits to the imposition of sanctions, but, even viewing the record in the light most favorable to them, we cannot say that the district court abused its discretion."). Accordingly, we hold that the district court did not abuse its discretion by imposing Rule 11 sanctions on Kyros.

### B.   Rule 37 Sanctions

As with Rule 11 sanctions, we review the imposition of Rule 37 sanctions for abuse of discretion. *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020). Just as a district court has broad discretion to manage discovery, it likewise has wide discretion to impose sanctions for abusing that process. *See, e.g., S.E.C. v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

Rule 37 gives a district court the authority to impose "just" sanctions on a party who fails to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(A). In evaluating a district court's exercise of its discretion to impose such sanctions, we weigh factors like: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance," *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks omitted). But "these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion." *Id.*

The district court properly imposed Rule 37 sanctions on Kyros based on its finding that he failed to make a good-faith effort to comply with its order to supplement his responses to certain of

WWE's interrogatories.   For example, rather than identifying specific "deceptive public statement[s]" in response to one of the interrogatories, Kyros's supplemental responses directed WWE to an "entire book" and, in general terms, various previously provided documents and records.   Special App'x at 186 (internal quotation marks omitted).   Like the district court, we find no error in the magistrate judge's thorough analysis.   We agree that Kyros's discovery responses were insufficient and that Rule 37 sanctions were warranted.

Kyros argues that the district court abused its discretion by imposing Rule 37 sanctions on only him and his law firm because WWE's Rule 37 motion was directed to both "Plaintiffs and their counsel."   Kyros Br. at 56 (quoting App'x at 67).   He claims that an order imposed under Rule 37(b) must be "directed at the party against whom the sanctions are sought to be imposed."   *Id.* (internal quotation marks omitted) (citing *Daval Steel Prods.*, 951 F.2d at 1364).   Kyros

made a similar argument below, and the district court rejected it, relying in part on Rule 37(b)(2)(C), which requires the court to order "the disobedient party, *the attorney advising that party, or both* to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with the district court's discovery order]." Special App'x at 189 (emphasis added) (quoting Fed. R. Civ. P. 37(b)(2)(C)). We agree with the district court. Both logic and the text of Rule 37(b)(2)(C) dictate that a court may impose sanctions in a targeted way against the actors whom it identifies as responsible for misconduct, whether those be parties, their attorneys, or both. On appeal, Kyros points to no authority that supports his argument that sanctions had to be imposed jointly on his clients as well as himself (and his firm). *Daval*, the lone case Kyros cites, stands merely for the proposition that one party's violation of a discovery order directed only to that party is not a sufficient basis for a court to impose sanctions on *another party* to which no such discovery order had been

directed. *See* 951 F.2d at 1364. It does not suggest that a disobedient party's *counsel* is not covered by an order directed at that same party.

Kyros also argues that the district court abused its discretion by imposing Rule 37 sanctions because WWE was not prejudiced by the plaintiffs' failure to provide sufficient responses to WWE's interrogatories. Specifically, Kyros makes the bare assertion that the interrogatories were irrelevant and assigns particular significance to the order of operations as it played out below—namely, that the case was dismissed under Rule 56 before the plaintiffs provided their responses to the interrogatories and that the district court issued the sanctions order one year after the magistrate judge held a hearing on the sanctions motion.

Once again, Kyros points to no authority that supports his arguments. The Fifth Circuit case Kyros cites, *FDIC v. Conner*, 20 F.3d 1376, 1381–82 (5th Cir. 1994), suggests only that *dismissal* for failure to comply with a discovery order is not justified where discovery

violations do not substantially prejudice defendants.  But here, the sanction imposed by the district court for the *Singleton* discovery was an order to pay attorney's fees and costs, not dismissal of the complaint.  (Dismissal did occur, to be sure; but that was on the merits, not as a result of sanctions.)  And the district court acted well within its discretion when it ordered Kyros to supplement discovery responses that, for example, directed WWE to "random publications and documents with little specificity or guidance."  Special App'x at 178.  In the magistrate judge's words, the sanctions were imposed "to dissuade further abuse of the discovery process and promote thorough compliance with court orders moving forward"—not as a means of disposing of the case.  *Id.* at 179–80.

We decline to consider Kyros's conclusory argument, already considered and rejected below, that WWE's interrogatories were irrelevant.  *See Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005)

(deeming argument waived where "only a single conclusory sentence" was devoted to it).

Accordingly, we find no abuse of discretion in the district court's imposition of Rule 37 sanctions on Kyros for his failure to make a good-faith effort to comply with the court's order compelling responses to WWE's interrogatories.

## C. The Forum Rule

Finally, we turn to WWE's cross-appeal, which challenges the district court's decision to award sanctions in an amount less than requested by WWE, based on application of the forum rule. We review for abuse of discretion a district court's calculation of the amount of attorney's fees to be awarded. *Holick v. Cellular Sales of New York, LLC*, 48 F.4th 101, 109 (2d Cir. 2022). "Our review is highly deferential in this area because of the district court's inherent institutional advantages in determining attorneys' fees." *H.C. v. New York City Dep't of Ed.*, 71 F.4th 120, 125 (2d Cir. 2023) (internal quotation marks omitted). In conducting our review, we also bear in

36

mind that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

One methodology district courts employ to determine the amount of attorney's fees to award involves the "forum rule," under which courts are directed to calculate fees based on the prevailing rates in the forum in which the litigation was brought. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009). In *Simmons*, we clarified that, "when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Id.* at 175. "[T]o overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* Among the "experience-based, objective factors" district courts should consider in making that

determination is "counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." *Id.* at 175–76. Litigants must also "make a particularized showing . . . of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176.

WWE argues that the district court abused its discretion by applying the forum rule for four main reasons. We consider each in turn. First, WWE notes that the underlying consolidated cases began in jurisdictions outside Connecticut, and asserts that the forum rule "does not apply to a case that was initially brought in another district but subsequently transferred to the forum." WWE Br. at 49. For support, WWE relies on our decision in *Polk v. New York State Department of Correctional Services*, 722 F.2d 23 (2d Cir. 1983). But *Polk* is inapposite. *Polk* concerned the fees awarded to an attorney who initially filed a suit in his home district, after which the case was transferred to the forum district—"not the typical situation in which

a lawyer from one district files suit in another district." 722 F.2d at

25. In that case, where a class action relating to the plaintiff was

pending in the attorney's home district, the *Polk* Court concluded the

district court had discretion to award fees based on the prevailing rate

in *either* an attorney's home district *or* the forum district. *Id.* It also

reaffirmed a district court's "broad discretion" to determine

reasonable fees, "[s]o long as unwarranted windfalls are not

awarded." *Id.* Here, of course, the underlying cases were filed in

jurisdictions across the country—none of which was the home district

of out-of-district counsel—and were eventually consolidated in the

District of Connecticut, where the district court sits. Accordingly, *Polk*

does not control the outcome here. *Polk*, in any event, did not purport

to create an inflexible rule as to fees in transferred cases. On its own

terms, *Polk* described only what a district "normally" "will consider,"

as well as "special circumstance[s]." *Id.* Here, the district court

properly considered a number of such circumstances: that the

defendants themselves sought consolidation and had crafted forum-selection clauses accordingly, and that out-of-district counsel was never solely responsible for the Connecticut litigation such that it could not have been handed over to local counsel. Special App'x at 277–78. The district court neither strayed outside its broad discretion nor afforded an unwarranted windfall in its application of the forum rule to reduce WWE's award.

Second, WWE argues that district courts are "not constrained to apply the forum rule where the attorney's fees are awarded as sanctions." WWE Br. at 52. WWE cites *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 F. App'x 448 (2d Cir. 2009), a non-precedential summary order that included the observation that "[t]he reasoning behind the calculation of awards under fee-shifting statutes . . . is not . . . precisely analogous to that applicable to Rule 11 awards." 354 F. App'x at 452. We do not read *On Time*, however, to suggest that any difference between statutory fee-shifting and Rule 11

awards would preclude application of the forum rule in the sanctions context. Indeed, we see no reason why the rule should not presumptively apply in each context. *On Time* suggests only that, even after applying the forum rule, a district court may still act within its discretion in ordering a larger award to serve the purpose of deterrence under Rule 11. In this case, in any event, WWE points to no evidence in the record indicating that the district court found itself "constrained" to apply the forum rule. And the fact that fee-shifting statutes and Rule 11 sanctions serve different purposes does not mean that a district court abuses its discretion by applying the forum rule to reduce a Rule 11 award. We will not disturb the district court's discretionary determination that the principal objectives of the imposition of Rule 11 sanctions—"the deterrence of baseless filings and the curbing of abuses," *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994)—were furthered even after it applied the forum rule to reduce the award.

Third, WWE argues that the forum rule does not apply because WWE is a sophisticated paying client. In WWE's view, "[b]ecause there was an actual paying client" to serve as a touchstone, there was "no need to perform a lodestar calculation to arrive at a presumptively reasonable fee award." WWE Br. at 55 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). As we have previously noted, an "actual billing arrangement" is a significant factor in determining what fee is reasonable, but it is "not necessarily controlling." *Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001). It does not, therefore, create a presumption of reasonableness, nor displace the initial application of the forum rule. Here, the district court gave significant weight to WWE's decision to retain more expensive out-of-district counsel, but concluded that WWE failed to overcome *Simmons*'s presumption in favor of the application of the forum rule. Specifically, the district court noted that the case was dismissed pre-trial based on deficiencies

in Kyros's pleadings and discovery requests, and reasoned that such matters are "within the general expertise of civil litigators." Special App'x at 281 (citing *Simmons*, 575 F.3d at 177 (reasoning that the party bearing the cost of attorney's fees "should not be required to pay for a limousine when a sedan could have done the job")). We find no abuse of discretion in that determination.

Fourth, WWE argues that, even if the forum rule applies, WWE is subject to an exception under *Simmons* because out-of-district counsel "likely (not just possibly) produce[d] a substantially better net result" than local counsel would have. 575 F.3d at 172. Citing out-of-district counsel's extensive experience representing WWE and litigating CTE matters, WWE asserts that no local counsel had comparable specific knowledge, nor could local counsel have improved upon the results achieved below. The district court acknowledged out-of-district counsel's "longstanding involvement in defending claims brought by former wrestlers," Special App'x at 281,

43

but, as discussed above, concluded that WWE failed to show that out-of-district counsel likely produced a substantially better net result, especially where the case was dismissed based on deficient pleadings and conduct during discovery—that is, egregious litigation misconduct that in-district counsel would have been equally well placed to identify and oppose. Once again, we see no reason to fault that determination, made within the district court's broad discretion.

Having carried out our "highly deferential," *H.C.*, 71 F.4th at 125, review of the district court's efforts to achieve "rough justice," *Fox*, 563 U.S. at 838, in keeping with the goals of fee-shifting, we affirm the district court's application of the forum rule under the circumstances of this case.

## III. Conclusion

In sum, we hold as follows:

1. The district court did not abuse its discretion by imposing Rule 11 sanctions on Kyros. WWE's sanctions motions and the district court's order that reserved ruling on those

motions gave abundant notice to Kyros of the repeated pleading deficiencies that risked imposition of sanctions, and he was afforded sufficient opportunity to be heard.

2. The district court did not abuse its discretion by imposing Rule 37 sanctions on Kyros because Kyros failed to make a good-faith effort to comply with the district court's order compelling responses to WWE's interrogatories.

3. The district court did not abuse its discretion by applying the forum rule to award WWE less than the requested amount of sanctions.

We therefore **AFFIRM** the judgment of the district court.